Ryan Q. Keech (SBN 280306)
Ryan.Keech@klgates.com
Gabriel M. Huey (SBN 291608)
Gabriel.Huey@klgates.com
Stacey Chiu (SBN 321345)
stacey.chiu@klgates.com
Rebecca Makitalo (SBN 330258)
rebecca.makitalo@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

Attorneys for Defendant
CHECKMATE.COM INC.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>CHECKMATE.COM, INC.,<br><br>　　　　　Defendant. | Case No. 2:25-CV-00765-MEMF-JPR<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**DEFENDANT CHECKMATE.COM, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>[*Filed concurrently with Declaration of Vishal Agarwal, Declaration of Amy Brown, Declaration of Stacey Chiu, Request for Judicial Notice [Proposed] Order,]*<br><br>Hearing Date: May 22, 2025<br>Time: 10 a.m.<br>Courtroom: 8B<br><br>Complaint Filed: January 28, 2025 |

509121130.9

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

I.    **INTRODUCTION** .................................................................................2

II.   **STATEMENT OF FACTS** ...............................................................4

   A.   The Parties and the VoiceBite Acquisition .....................................4

   B.   The Governing Agreements Contain an Enforceable, Mandatory Forum Selection Clause................................................................................4

   C.   Plaintiff Moves to Texas Shortly After the Merger to Avoid Paying California State Income Taxes ......................................................5

   D.   Disputes Following the Merger and Plaintiff's Resignation.......................7

III.  **ARGUMENT**................................................................................8

   A.   **The Case Should Be Dismissed for Improper Venue Under Rule 12(b)(3) and 28 U.S.C. §1391(b)** ................................................8

      1.   Venue Is Improper Because Checkmate Is Not a Resident of the Central District of California..................................................................9

      2.   Venue Is Improper Because the Alleged Events Giving Rise to Plaintiff's Claims Occurred Outside California .................................................11

      3.   Venue Is Improper Because the Action Could Have Been – and Should Have Been—Brought in Texas or New York...................................................13

      4.   This Action Must Be Dismissed or, in the Alternative, Transferred to a Proper Venue ...........................................................................13

   B.   **The Case Should Be Transferred to New York Based on the Binding Forum Selection Clause in the Agreement**....................................14

      1.   The Forum Selection Clause Is Presumptively Valid and Enforceable ...15

      2.   Enforcement of the Forum Selection Clause Is Reasonable ...................16

      3.   Public Interest Factors Overwhelmingly Support Transfer.....................18

      4.   Cal. Lab. Code § 925 Does Not Invalidate the Forum Selection Clause .20

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

**C.    Alternatively, a Traditional § 1404(a) Analysis Compels Transfer to
New York or Texas**.......................................................................................**22**

    1.    Convenience to the Parties and Witnesses, and Sources of Proof Favors
New York or Texas..........................................................................................23

    2.    Transfer Will Conserve Judicial and Party Resources............................24

    3.    The Parties' Contacts with this District Are Minimal.............................25

**IV.  CONCLUSION** ...........................................................................................**26**

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Argueta v. Banco Mexicano, S.A.*,
    87 F.3d 320 (9th Cir. 1996) .................................................................................. 15

*Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*,
    571 U.S. 49 (2013) ........................................................................................... 8, 18

*Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972) ................................................................................................ 15

*Bristol-Myers Squibb Co. v. Superior Court of Cal.*,
    137 S. Ct. 1773 (2017) ....................................................................................... 11

*Bromlow v. D & M Carriers, LLC*,
    438 F. Supp. 3d 1021 (N.D. Cal. 2020)............................................................... 24

*Cal-State Bus. Prods. & Servs., Inc. v. Ricoh*,
    12 Cal. App. 4th 1666 (1993) ............................................................................. 17

*Campbell v. FaF, Inc.*,
    2019 U.S. Dist. LEXIS 108023 (S.D. Cal.16 2019) ........................................... 20

*Cleanview Dist. Grp. LLC v. LGL Holdings, LLC*,
    No. 21-cv-3197, 2021 WL 5969502 *(C.D. Cal. Nov. 12, 2021)* ........................ 18

*CollegeSource, Inc. v. AcademyOne, Inc.*,
    653 F.3d 1066 (9th Cir. 2011) ............................................................................ 10

*Color Switch LLC v. Fortafy Games DMCC*,
    377 F.Supp.3d 1075 (2019) ................................................................................ 19

*Dahdoul Textiles, Inc. v. Zinatex Imports, Inc.*,
    No. 2:15-cv-4011, 2015 WL 5050514 (C.D. Cal. Aug. 25, 2015) .................... 24

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014) ............................................................................................. 9

*Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*,
    557 F.2d 1280 (9th Cir. 1977) ............................................................................ 25

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

*eBay Inc. v. Digital Point Sols., Inc.*,
    608 F. Supp. 2d 1156 (N.D. Cal. 2009)................................................................9

*Fireman's Fund Ins. Co. v. M.V. DSR Atl.*,
    131 F.3d 1336 (9th Cir. 1997), *as amended* (Mar. 10, 1998) ....................15, 16

*Injen Technology Co., Ltd. v. Advanced Engine Management* ................................9

*Jang v. Boston Sci. Scimed, Inc.*,
    No. CV 10-3911 ODW, 2010 WL 11463889 (C.D. Cal. Aug. 9,
    2010) ................................................................................................................23, 24

*Jones v. GNC Franchising, Inc.*,
    211 F.3d 495 (9th Cir. 2000) .............................................................................23

*Kem v. Strike Advisory, LLC*,
    No. 2:23-cv-07459-CAS(SKx), 2023 WL 7021172 (C.D. Cal. Oct.
    23, 2023) ..............................................................................................................21

*L.A. Printex Indus., Inc. v. Le Chateau, Inc.*,
    No. CV 10-4264 ODW, 2011 WL 2462025 (C.D. Cal. June 20,
    2011) ....................................................................................................................23

*LaCross v. Knight Transp. Inc.*,
    95 F. Supp. 3d 1199 (C.D. Cal. 2015).............................................................16, 18

*Lewis v. Liberty Mut. Ins. Co.*,
    953 F.3d 1160 (9th Cir. 2020) ...........................................................................17

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
    858 F.2d 509 (9th Cir. 1988) .........................................................................15, 20

*Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*,
    60 F. Supp. 3d 1109 (E.D. Cal. 2014)................................................................20

*Newthink LLC v. Lenovo (U.S.) Inc.*,
    No. 2:12-cv-5443, 2012 WL 6062084 (C.D. Cal. Dec. 4, 2012).......................23

*Parr v. LPL Fin. LLC, No. 18-cv-06031*,
    2019 WL 4933583 (N.D. Cal. Oct. 7, 2019).......................................................19

*Piedmont Label Co. v. Sun Garden Packing Co.*,
    598 F.2d 491 (9th Cir. 1979) ...............................................................................8

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

*Piper Aircraft Co. v. Reyno*,
    454 U.S. 235 (1981) ........................................................................................ 19

*Ponomarenko v. Shapiro*,
    287 F. Supp. 3d 816 (N.D. Cal. 2018)............................................................. 20

*Rio Properties, Inc. v. Rio Int'l Interlink*,
    284 F.3d 1007 (9th Cir. 2002) ......................................................................... 10

*Sarmiento v. BMG Ent.*,
    326 F. Supp. 2d 1108 (C.D. Cal. 2003)................................................. 15, 16, 17

*Signifi Sols., Inc v. SmartWay Techs., Inc.*,
    921 F. Supp. 2d 999 (C.D. Cal. 2013) .............................................................. 17

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*,
    926 F.2d 865 (9th Cir. 1991) ........................................................................... 15

*United Tactical Sys. LLC v. Real Action Paintball, Inc.*,
    108 F. Supp. 3d 733 (N.D. Cal. 2015)............................................................. 11

*Van Dusen v. Barrack*,
    376 U.S. 612 (1964) ........................................................................................ 23

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

**TO THE COURT, ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on May 22, 2025 at 10 a.m. or as soon thereafter as counsel may be heard by the Honorable Maame Ewusi-Mensah Frimpong in Courtroom 8B, 8th Floor of the above-entitled court located at 350 West First Street, Los Angeles, CA, 90012, Defendant Checkmate.com, Inc. ("Checkmate" or "Defendant") will and hereby does move this Court for an order dismissing this case for improper venue pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure. Checkmate seeks dismissal on the ground that the Central District of California is an improper venue for this dispute under 28 U.S.C. §§ 1391(b) and 1406(a). Alternatively, Checkmate seeks to transfer the case to the Southern District of New York or Western District of Texas pursuant to 28 U.S.C. § 1404(a).

This Motion is based upon this Notice of Motion and Motion, the Memorandum of Points and Authorities in support, the Declarations of Vishal Agarwal, Amy Brown, and Stacey Chiu and exhibits thereto filed concurrently herewith, the Request for Judicial Notice, the [Proposed] Order, as well as all papers and pleadings on file herein, and such argument as properly may be presented at the hearing. This motion is made following the conference of the parties pursuant to L.R. 7-3. *See* Declaration of Stacey Chiu ¶¶ 2-4.

Dated: March 26, 2025                          K&L GATES LLP


By: _____
Gabriel M. Huey
Stacey Chiu

Attorneys for Defendant
CHECKMATE.COM, INC.

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.  INTRODUCTION

Plaintiff Arjun Vasan ("Plaintiff") cannot have his cake and eat it too.  When Plaintiff sold VoiceBite, a company he co-founded and owned to Defendant Checkmate.com, Inc. ("Checkmate"; Plaintiff and Checkmate collectively as the "Parties") for millions of dollars and began working for Checkmate, the Parties agreed to resolve any and all disputes against each other in New York.  Yet despite the negotiated binding forum selection clause, Plaintiff improperly filed this action ("Action") in the Central District of California ("District").

Additionally, while Plaintiff now seeks to portray himself as a California resident, avail himself to the benefits of California law, and litigate in this forum, he in fact relocated to Texas shortly after joining Checkmate.  He deliberately moved to Texas to avoid paying California state income taxes on what he is characterizing as his "bonus" as well as his salary through the end of his separation.

This case is a textbook example of forum shopping. This District has no meaningful connection to the operative facts or Checkmate. Plaintiff's allegations arise from his employment with Checkmate, which was formed as part of a larger merger transaction between Checkmate and VoiceBite. But despite Plaintiff's short-lived residence in California at the outset of that relationship, the relevant events, decisions, and agreements all occurred elsewhere. Furthermore, after learning that VoiceBite's technology had not been developed or owned exclusively by Plaintiff, Checkmate has since filed suit against Plaintiff in the Supreme Court of the State of New York in accordance with the parties' agreement. (See Request for Judicial Notice ("RJN"), Ex. A.)

This action should be dismissed under Federal Rule of Civil Procedure 12(b)(3) because venue is improper under 28 U.S.C. § 1391(b). Checkmate does not reside in this District, and none of the relevant conduct giving rise to Plaintiff's claims occurred here. Alternatively, the case should be transferred either to the

1  Southern District of New York—as required by the parties' agreement—or to the

2  Western District of Texas, where Plaintiff lived and worked for the majority of his

3  employment. Transfer is warranted under either the enforceable forum selection

4  clause or a traditional discretionary analysis under 28 U.S.C. § 1404(a).

5      First, venue is improper under § 1391(b) for several independent reasons.

6  Checkmate is a Delaware corporation headquartered in New York and has no

7  physical presence in California.  The events giving rise to Plaintiff's claims occurred

8  overwhelmingly outside California, primarily in New York and Texas. Furthermore,

9  this action could have—and should have—been brought in New York or Texas, both

10 of which have far stronger factual, legal, and jurisdictional ties to the dispute.

11     Second, Plaintiff's claims arise directly out of the Merger Agreement and

12 related transactional documents, which include a mandatory forum selection clause

13 designating courts in New York County, New York as the exclusive forum for

14 disputes. This action is an attempt to circumvent that clear, bargained-for contractual

15 obligation. The forum selection clause is presumptively valid and enforceable, it is

16 reasonable under the circumstances, and public interest factors overwhelmingly

17 support its enforcement.

18     Third, assuming *arguendo* that the forum selection clause does not apply, a

19 traditional transfer analysis under § 1404(a) would reach the same result. The

20 convenience of the parties and witnesses, the location of relevant documents and

21 decisionmakers, and the absence of meaningful contact with this District all favor

22 transfer to either the Southern District of New York or the Western District of Texas.

23     For these reasons, the Court should dismiss this action for improper venue or,

24 in the alternative, transfer the case to a proper venue in accordance with federal law

25 and the parties' agreement.

26

27

28

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

## II. STATEMENT OF FACTS

### A. The Parties and the VoiceBite Acquisition

Checkmate is a technology company serving the restaurant industry by integrating first-party ordering platforms, third-party services, menu management, accounting reconciliation, and loyalty systems. *See* Declaration of Vishal Agarwal ("Agarwal Decl.") ¶ 3. There is no dispute that Checkmate is a Delaware corporation with its principal place of business in New York, New York. Compl. ¶ 8, 12; Agarwal Decl. ¶ 3. Checkmate also maintains a physical office at 111 East 4th Street, Suite 325, Alton, Illinois, but largely operates as a distributed company with most of its workforce operating remotely. Agarwal Decl. ¶ 4. Checkmate does not maintain any physical office in California. *Id.*

In early 2024, as part of its strategic expansion into the voice AI space, Checkmate pursued the acquisition of VoiceBite, an early-stage startup focused on AI-powered voice ordering. Compl. at ¶ 2; Agarwal Decl. ¶ 5. Plaintiff, a co-founder of VoiceBite, represented that VoiceBite owned proprietary source code essential to its voice technology platform. Compl. ¶ 2; Agarwal Decl. ¶ 5.) Based on these representations, Checkmate pursued a merger with VoiceBite to accelerate its entry into the nascent but promising voice AI ordering market. Agarwal Decl. ¶ 5.

The merger transaction between Checkmate and VoiceBite closed on April 30, 2024. Compl. ¶ 2; Agarwal Decl. ¶ 6. Plaintiff and his co-founders executed the Merger Agreement and various related documents, including a Retention Bonus Agreement (Schedule 2.3(b)(ix)), a Non-Competition Agreement (Schedule 2.3(b)(vi)), and an employment offer letter for Plaintiff to serve as Vice President of AI Technology, effective May 1, 2024 (Schedule 2.3(b)(viii)). Agarwal Decl. ¶ 7.)

### B. The Governing Agreements Contain an Enforceable, Mandatory Forum Selection Clause

The Merger Agreement and the Non-Competition Agreement both include broad, mandatory forum selection clauses requiring that any legal action "relating to"

or "based on" those agreements or the transactions contemplated therein must be brought in federal or state courts located in New York County, New York. Agarwal Decl. ¶¶ 12-13, Ex. A, B.  Section 9.7 of the Merger Agreement provides that "[a]ny legal action or other Legal Proceeding relating to this Agreement or the enforcement of any provision of this Agreement will be brought or otherwise commenced exclusively in any state or federal court located in the County of New York, State of New York." Agarwal Decl. ¶ 12, Ex. A.  Likewise, the Non-Competition Agreement, which was included as Schedule 2.3(b)(vi) of the Merger Agreement, includes an identical forum selection clause in Section 11(b), affirming that "[a]ny proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in any federal court located in New York County." Agarwal Decl. ¶ 13, Ex. B.  Both agreements as well as the Retention Bonus Agreement are governed by Delaware law. Agarwal Decl. ¶¶ 14-16, Ex. A, B, C.

### C. Plaintiff Moves to Texas Shortly After the Merger to Avoid Paying California State Income Taxes

Around the time that Plaintiff started working at Checkmate, he was residing in Cerritos, California. *See* Declaration of Amy Brown ("Brown Decl.") ¶ 4.  Only three months later, on August 3, 2024, Plaintiff relocated to 1106 Godfrey Street in Midland, Texas to avoid paying California state income taxes on his wages and the bonus:





Brown Decl. ¶¶ 5-8, Ex. A.  Plaintiff's payroll and tax records demonstrate that he resided in Texas after August 3, 2024. Brown Decl. ¶¶ 6-10, Ex. B, C.  His 2024 W-2 was issued to his Texas address, and pay statements reflected no California state tax or unemployment insurance withholdings as of at least September 7, 2024. *Id.* Plaintiff was also reimbursed by Checkmate for prior California withholdings after he notified Checkmate he should have been coded as a Texas employee from the beginning.  Brown Decl. ¶ 8.  While residing in Texas for the majority of his employment with Checkmate, he did not return to California for work purposes nor was he asked to.  Brown Decl. ¶ 11.  As Checkmate was a fully remote company, Plaintiff was never assigned to or reported to any California office—indeed, Checkmate does not operate any physical office in California. Agarwal Decl. ¶ 4.

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE

**D. Disputes Following the Merger and Plaintiff's Resignation**

Following the merger, concerns about Plaintiff's behavior began to arise. Plaintiff became increasingly disruptive in team communications, often sending long, argumentative messages via Slack at odd hours. Agarwal Decl. ¶ 18; Brown Decl. ¶ 12. He was also confrontational in meetings and repeatedly demonstrated insubordination when decisions did not align with his personal preferences. Brown Decl. ¶ 12. In May 2024, Plaintiff traveled to Chicago to attend a national restaurant convention. *Id.* During a meeting at Checkmate's booth, he had a disruptive outburst that caused the meeting to end prematurely. *Id.* This pattern of behavior continued through the summer and fall of 2024. *Id.* On October 14, 2024, Plaintiff sent a barrage of over 40 Slack messages to Checkmate leadership in a single morning, prompting a formal final warning. Agarwal Decl. ¶ 18; Brown Decl. ¶ 12. Many of these and prior hostile messages were sent to one of Plaintiff's supervisor and Checkmate's CEO and founder, Vishal Agarwal, who resides in New York. Agarwal Decl. ¶¶ 1, 2, 18; Brown Decl. ¶ 12.

Separately, Plaintiff refused to provide Checkmate access to the proprietary code that he had represented was VoiceBite's core asset. Agarwal Decl. ¶ 19. When Checkmate's technical team was finally able to examine the codebase, it discovered that the material predated VoiceBite's formation and contained references to a prior company founded by Plaintiff, CyborgOps, which had been acquired by a third party. Agarwal Decl. ¶ 20. Checkmate also uncovered the existence of another third-party contributor whose rights to the code had not been disclosed. *Id.* These findings contradicted the warranties Plaintiff had made and cast serious doubt on his ability to assign the rights he purported to transfer as part of the merger. Agarwal Decl. ¶¶ 5, 20.

On October 22, 2024, Checkmate leadership held a Zoom call with Plaintiff to inform him that he was no longer fit to serve in a management role. Agarwal Decl. ¶ 21; Brown Decl. ¶ 13. However, he was offered the opportunity to remain as an

individual contributor. Agarwal Decl. ¶ 13; Brown Decl. ¶ 13. The next day, October 23, 2024, Plaintiff requested medical leave. Brown Decl. ¶ 14. Checkmate approved a personal medical leave, granting Plaintiff two weeks of paid time off. *Id*. During this period, Plaintiff continued to send disruptive messages to the team, leading to a request from a co-founder to suspend his access. Agarwal Decl. ¶ 24; Brown Decl. ¶ 15.

On or around November 7 and 8, 2024, while on leave, Plaintiff contacted a competitor of Checkmate to discuss the possibility of joining their company—and bringing two Checkmate engineers with him. Agarwal Decl. ¶ 25, Ex. D. This conduct was a direct violation of the Non-Competition Agreement. Agarwal Decl. ¶¶ 9, 25, Ex. B. Checkmate learned of this breach on November 9, 2024, when it was informed by an industry contact. Agarwal Decl. ¶ 25. On November 14, 2024, Checkmate met with Plaintiff via Zoom to address his actions. Agarwal Decl. ¶ 26; Brown Decl. ¶ 16. Shortly after the meeting, Plaintiff sent an email stating that he was resigning. Agarwal Decl. ¶ 16, Ex. E; Brown Decl. ¶ 16.

Subsequently, on February 18, 2025, Checkmate filed a lawsuit against Plaintiff in New York County Court, Case No. 650913/2025. (See RJN, Ex. A.)

## III.    ARGUMENT

### A. The Case Should Be Dismissed for Improper Venue Under Rule 12(b)(3) and 28 U.S.C. §1391(b)

Under Rule 12(b)(3) and 28 U.S.C. § 1406(a), a case must be dismissed – or transferred – if it has been brought in the wrong venue. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 55 (2013). Here, venue is improper because Plaintiff has filed this action in a judicial district that has no meaningful connection to the parties or the operative facts.

Plaintiff bears the burden to show that venue is proper. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). Conclusory allegations of venue are insufficient. On a Rule 12(b)(3) motion, courts may look

509121130.9

1  beyond the complaint and consider extrinsic evidence. *See eBay Inc. v. Digital Point*
2  *Sols., Inc.*, 608 F. Supp. 2d 1156, 1161 (N.D. Cal. 2009).

3      Venue in federal court is governed by 28 U.S.C. § 1391(b), which provides
4  that a civil action may only be brought in: (1) a district "in which any defendant
5  resides, if all defendants are residents of the State in which the district is located;"
6  (2) a district "in which a substantial part of the events or omissions giving rise to the
7  claim occurred, or a substantial part of property that is the subject of the action is
8  situated;" or (3) if there is "no district in which an action may otherwise be brought,"
9  any district "in which any defendant is subject to the court's personal jurisdiction
10 with respect to such action." 28 U.S.C. §1391(b).  As explained below, none of these
11 provisions are satisfied.  Checkmate does not reside in this District, and the events
12 underlying Plaintiff's claims occurred predominantly in New York and Texas, not
13 California.  Accordingly, venue in the Central District of California is improper, and
14 the case should be dismissed under Rule 12(b)(3) – or, in the alternative, transferred
15 to a proper venue pursuant to § 1406(a).

16      1. <u>Venue Is Improper Because Checkmate Is Not a Resident of the</u>
17         <u>Central District of California</u>

18      Venue cannot be proper in this District under § 1391(b)(1) because Checkmate
19 does not "reside" here for venue purposes. Under 28 U.S.C. § 1391(c)(2), a
20 corporation is deemed to reside only in those districts where it is subject to the court's
21 personal jurisdiction with respect to the civil action. Courts have interpreted this to
22 mean that venue is proper only where the corporate would be subject to general or
23 specific jurisdiction. *Injen Technology Co., Ltd. v. Advanced Engine Management*,
24 Inc., 270 F.Supp.2d 1189, 1194 (2003).  Here, Plaintiff cannot prove that this District
25 has general or specific jurisdiction over Checkmate.

26      General jurisdiction exists only where a corporation is "at home," meaning its
27 state of incorporation or its principal place of business. *Daimler AG v. Bauman*, 571
28 U.S. 117, 137 (2014).   Here, as Plaintiff's Complaint admits, Checkmate is

incorporated in Delaware and maintains its principal place of business in New York City. *See* Compl. ¶ 8. These are the only two jurisdictions where Checkmate may be considered "at home" for general jurisdiction purposes.

Although Checkmate is a distributed company and offers technology services nationwide, including to customers in California, these facts do not render it "at home" for venue purposes. See *Dailmer.* at 139 n.20 (a corporation "that operates in many places can scarcely be deemed at home in all of them"). Furthermore, Checkmate does not maintain a headquarters, office, or other centralized operations in California, including within this District. Agarwal Decl. ¶ 4. Accordingly, Checkmate is not subject to general jurisdiction in this District, and cannot be deemed to "reside" here for purposes of determining the proper venue.

This District is also not proper because Plaintiff cannot establish specific jurisdiction over Checkmate. Specific jurisdiction arises where *all* of the following criteria are satisfied: (1) the defendant has performed some act or consummated some transaction with the forum by which it purposefully availed itself of the privilege of conducting business in California; (2) the plaintiff's claims arise out of or result from the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1019 (9th Cir. 2002), *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985). The plaintiff bears the burden of proving the first two elements. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).

Plaintiff's Complaint fails to allege facts showing that Checkmate directed relevant activities toward California in connection with his employment. Plaintiff was hired as part of a merger transaction governed by Delaware law, and the parties agreed to resolve any disputes in New York. Agarwal Decl. ¶¶ 7-16. Plaintiff was a remote employee, and shortly after his start date, he relocated to Midland, Texas, where he lived and worked for the duration of his employment. Brown Decl. ¶ 5. His address was updated in HR records, his pay statements reflected Texas residency,

and his W-2 was issued to a Texas address. Brown Decl. ¶ 6-10.  Plaintiff was not assigned to any California office, and Checkmate does not maintain a physical office in California.   Agarwal Decl. ¶ 4.   Plaintiff's job duties were not tied to any California-based operation. Brown Decl. ¶ 11.   Importantly, the majority of the allegedly unlawful conduct at issue in the Complaint—including events surrounding the retention bonus (Compl. ¶¶ 28–32), performance targets (Compl. ¶¶ 34–35), performance pressure (Compl. ¶¶ 36–38), alleged interference with medical leave (Compl. ¶¶ 39–47), end of his employment (Compl. ¶¶ 48–49), and severance discussions (Compl. ¶¶ 50–52)—occurred primarily after Plaintiff had relocated to Texas, and involved decisionmakers based outside California, primarily in New York. Agarwal Decl. ¶¶ 1-2, 18-26; Brown Decl. ¶¶ 12-16.  Accordingly, Plaintiff's claims do not arise from any forum-related activity by Checkmate, and there is no "direct nexus" between this District and the dispute. See *Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S. Ct. 1773, 1782 (2017).

Because Checkmate is not subject to general or specific jurisdiction in this District, it does not reside here and venue is improper under § 1391(b)(1).

### 2. Venue Is Improper Because the Alleged Events Giving Rise to Plaintiff's Claims Occurred Outside California

Venue is also improper under § 1391(b)(2) because the events giving rise to Plaintiff's claims occurred primarily in New York and Texas, not California. Under § 1391(b)(2), venue is proper only in a district where "a substantial part of the events or omissions giving rise to the claim occurred." Courts evaluating this standard focus on the defendant's conduct giving rise to the claim, not the plaintiff's location. *United Tactical Sys. LLC v. Real Action Paintball, Inc.*, 108 F. Supp. 3d 733, 752 (N.D. Cal. 2015) (citation omitted).

The claims in this case stem from a series of internal employment decisions made by Checkmate executives outside of California—including decisions about Plaintiff's bonus eligibility, performance expectations, disciplinary actions, medical

leave, and separation from employment. Plaintiff expressly alleges that these decisions form the basis for his FMLA retaliation and interference, retaliation, wrongful termination, breach of contract, and wage theft claims. Plaintiff alleges that Checkmate misclassified his leave as not protected under the FMLA and wrongfully terminated him while he was on protected leave, giving rise to his claims for FMLA interference and retaliation. Compl. ¶ 62. He further asserts that he engaged in protected activity by "[a]dvocating for payment of his . . . bonuses", which he claims triggered unlawful retaliation. *Id*. ¶ 69. He also contends that his termination violated California Labor Code § 1102.5's public policy against retaliation (*id*. ¶ 76), that Checkmate unlawfully withheld earned wages (*id*. ¶¶ 85–89), and that he satisfied all conditions precedent to payment of performance bonuses and severance. *Id*. ¶ 92. Each of these claims is rooted in conduct and decisions made by Checkmate personnel who were located outside California—primarily in New York, where Checkmate is headquartered. These decisions were not made in, or directed from, California, nor were they connected to any California-based operations.

While Plaintiff was temporarily located in California at the start of his employment, this limited contact is not sufficient to establish venue. The employment relationship was remote from the outset, and Plaintiff relocated to Texas just three months later, where he remained for the rest of his employment. Brown Decl. ¶¶ 4-6. The majority of the allegedly unlawful conduct occurred when Plaintiff had already relocated to Texas. The decisions Plaintiff challenges were made remotely by company leadership operating outside of California, with no material connection to this District. Agarwal Decl. ¶¶ 1-2, 18-26; Brown Decl. ¶¶ 12-16. Further, Plaintiff never returned to California for work-related purposes, and Checkmate does not operate a physical office in California.

Accordingly, no "substantial part" of the relevant events occurred in this District, and venue cannot be sustained under § 1391(b)(2).

509121130.9

### 3. Venue Is Improper Because the Action Could Have Been – and Should Have Been—Brought in Texas or New York

Section 1391(b)(3) applies only when there is no other district in which the action may be brought. That is not the case here. This action could—and under the governing contracts, should—have been brought in New York, where Checkmate maintains its principal place of business and where the parties contractually agreed to litigate disputes arising from the merger and related agreements.

The Merger Agreement and Non-Competition Agreement, both executed by Plaintiff, contain broad, mandatory forum selection clauses requiring that any proceeding "relating to" or "based on" those agreements must be brought in federal or state court in New York County, New York. Agarwal Decl. ¶¶ 8-9, 12-13, Ex. A, B. Plaintiff's employment relationship with Checkmate arose from these transaction documents, including the offer letter, and his claims are inextricably tied to the performance and enforcement of those agreements.

Alternatively, the action could have been brought in Texas, where Plaintiff lived and worked for the majority of his employment. His pay records, HR profile, and conduct all reflect his Texas residency and that his work was performed remotely from Texas after August 3, 2024. Brown Decl. ¶ 6-8, Ex. B, C. As such, venue is proper there as well.

Because multiple proper venues exist outside California, § 1391(b)(3) does not apply, and this fallback provision offers no basis for retaining the case in this District.

### 4. This Action Must Be Dismissed or, in the Alternative, Transferred to a Proper Venue

Because venue in this District is improper under all three prongs of § 1391(b), and Plaintiff has failed to carry his burden to show otherwise, the case must be dismissed or transferred under 28 U.S.C. § 1406(a). That provision provides that a court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

Here, both the Southern District of New York and the Western District of Texas, Midland Division, would be proper and far more convenient forums for all parties and witnesses. Checkmate is headquartered in New York, and Plaintiff lived and worked in Texas during most of his employment. Agarwal Decl. ¶ 3; Brown Decl. ¶ 5.  By contrast, this District has no meaningful connection to the operative events, and Plaintiff's brief pre-employment and early employment stay in California is insufficient to justify keeping the case here.

Accordingly, the Court should either dismiss the Complaint for improper venue or, in the interest of justice, transfer the case to the Southern District of New York, in accordance with the parties' contractual agreement—or to the Western District of Texas, where Plaintiff resided and worked.

**B. The Case Should Be Transferred to New York Based on the Binding Forum Selection Clause in the Agreement**

Even if venue were somehow proper in this District—which it is not—the case should still be transferred to the Southern District of New York pursuant to the parties' binding forum selection clause. Plaintiff's employment arose directly from a broader merger transaction, and the governing agreements—including the Merger Agreement and Non-Competition Agreement—contain clear and mandatory provisions requiring that any legal action arising out of or relating to those agreements be brought exclusively in New York County.  Specifically, the Merger Agreement provides:

> "[A]ny legal action or other Legal Proceeding relating to this Agreement or the enforcement of any provision of this Agreement will be brought or otherwise commenced exclusively in any state or federal court located in the County of New York, State of New York."

Agarwal Decl. ¶ 12.  Likewise, the Non-Competition Agreement confirms:

> "Any proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in any federal court

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE

located in New York County in the State of New York or any New
York state court located in New York County."

Agarwal Decl. ¶ 13.

These clauses are enforceable and govern this dispute. Accordingly,
Checkmate respectfully requests that the Court transfer this case to the Southern
District of New York in accordance with the parties' contractual agreement.

1. The Forum Selection Clause Is Presumptively Valid and
Enforceable

Federal law governs the enforceability of forum selection clauses in federal
court, and such clauses are presumptively valid and enforceable. *Argueta v. Banco
Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996); *Manetti-Farrow, Inc. v. Gucci
America, Inc.*, 858 F.2d 509, 514 (9th Cir. 1988). A forum-selection clause is "prima
facie valid and should be enforced unless enforcement is shown by the resisting party
to be unreasonable under the circumstances." *Fireman's Fund Ins. Co. v. M.V. DSR
Atl.*, 131 F.3d 1336, 1338 (9th Cir. 1997), *as amended* (Mar. 10, 1998), *citing Bremen
v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, (1972). The Supreme Court has made clear
that a party challenging a forum selection clause bears a "heavy burden" of showing
that enforcement would be "unreasonable and unjust," or that the clause is invalid
due to fraud or overreaching. *M/S Bremen*, 407 U.S. at 17; *see also Spradlin v. Lear
Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 867 (9th Cir. 1991). Courts in this District
routinely enforce such clauses, even when enforcement results in inconvenience to
the plaintiff, so long as doing so would not contravene a strong public policy. *See
Sarmiento v. BMG Ent.*, 326 F. Supp. 2d 1108, 1110 (C.D. Cal. 2003). Enforcement
is only "unreasonable" where it would contravene a strong public policy of the
transferor forum—a narrow exception not implicated in this case. *Id.*

Here, Plaintiff does not allege—nor could he plausibly allege—any facts
challenging the validity or enforceability of the forum selection clauses contained in
the governing agreements. Both the Merger Agreement and the Non-Competition

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

Agreement, which Plaintiff executed in connection with the VoiceBite acquisition and his subsequent employment, contain mandatory forum selection provisions. Agarwal Decl. ¶¶ 8-9, 12-13, Ex. A, B. These provisions are unequivocally mandatory, not permissive. They reflect a clear, bargained-for agreement that disputes relating to Plaintiff's employment and the underlying merger transaction must be litigated in New York. Plaintiff's claims in this action arise directly from the transaction documents— including his offer letter, compensation terms, retention bonus, role and performance expectations, and obligations related to his resignation and post-employment compensation.

Because Plaintiff does not—and cannot—challenge the validity of these provisions, and because their language is mandatory and enforceable under binding precedent, the forum selection clause must be honored. The case should be transferred accordingly.

2. <u>Enforcement of the Forum Selection Clause Is Reasonable</u>

The forum selection clause in the parties' agreements is not only valid and mandatory—it is also entirely reasonable. Under established Ninth Circuit precedent, forum selection clauses are presumptively valid and enforceable unless the resisting party can meet a "heavy burden of proof" showing that enforcement would be unreasonable under the circumstances. *See Sarmiento*, 326 F. Supp. 2d at 1110; *Fireman's Fund Ins. Co.,* 131 F.3d at 1338. The limited and exclusive grounds on which enforcement may be found unreasonable include:

> (1) if the inclusion of the clause in the agreement was the product of fraud or overreaching; (2) if the party wishing to repudiate the clause would effectively be deprived of his day in court were the clause enforced; and (3) if enforcement would contravene a strong public policy of the forum in which suit is brought.

*See LaCross v. Knight Transp. Inc.,* 95 F. Supp. 3d 1199, 1203 (C.D. Cal. 2015).

Plaintiff cannot meet any of these criteria. There is no suggestion—much less evidence—that the forum selection clause was the product of fraud or overreaching.

The agreements at issue were entered into as part of an arms-length merger transaction involving multiple co-founders and supported by detailed schedules and exhibits. Agarwal Decl. ¶ 7.  Plaintiff is not a consumer or unsophisticated party; to the contrary, he is a startup co-founder with prior experience in technology and M&A transactions, including a previous company acquisition. Agarwal Decl. ¶¶ 5-7, 20. There is no basis to argue that he lacked the opportunity to review or understand the forum selection language.  Even if Plaintiff were to argue that he did not read the clause, that argument would fail. Courts in this District have held that the opportunity to read a clearly identified and intelligible forum selection clause before signing the agreement is sufficient notice. *See Sarmiento*, 326 F. Supp. 2d at 1110 ("The opportunity to read a clearly identified and intelligible forum selection clause before accepting the contract provides sufficient notice to plaintiff.").

Nor can Plaintiff demonstrate that enforcing the forum selection clause would deprive him of his "day in court" or otherwise impose grave inconvenience. The Southern District of New York is a major commercial forum and fully capable of resolving employment-related disputes. Federal courts have upheld forum selection clauses requiring litigation in far more distant locations.  *See, e.g., Lewis v. Liberty Mut. Ins. Co.*, 953 F.3d 1160, 1168-70 (9th Cir. 2020) (enforcing commercial forum selection clause requiring litigation in Australia rather than California); *Signifi Sols., Inc v. SmartWay Techs., Inc.*, 921 F. Supp. 2d 999, 1008 (C.D. Cal. 2013) (enforcing commercial selection clause requiring litigation in Canada rather than California). The designated venue is not so inconvenient or hostile to Plaintiff's claims that Plaintiff will be deprived of a remedy (or his "day in court") if the forum selection clause is enforced.

Finally, enforcement of the forum selection clause does not contravene the public policy of California, much less a "strong public policy." To the contrary, California courts routinely uphold forum selection clauses, particularly in commercial and negotiated agreements. *See Cal-State Bus. Prods. & Servs., Inc. v.*

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

*Ricoh*, 12 Cal. App. 4th 1666, 1679 (1993) ("No satisfying reason of public policy has been suggested why enforcement should be denied a forum selection clause appearing in a contract entered into freely and voluntarily by parties who have negotiated at arms' length."). Courts in this District have likewise found that enforcement of a valid forum selection clause does not violate public policy absent a total foreclosure of remedy, which is not the case here. *See, e.g., LaCross*, 95 F. Supp. 3d at 1205 (finding a forum selection clause does not violate California public policy "absent a total foreclosure of remedy in the transferee forum").

In short, the forum selection clause was entered into voluntarily, governs the present dispute, and is fair, logical, and enforceable. Plaintiff cannot show otherwise, and therefore the case should be transferred to the Southern District of New York in accordance with the parties' agreement.

### 3. Public Interest Factors Overwhelmingly Support Transfer

Even assuming venue in this District were otherwise proper, the existence of a valid and enforceable forum selection clause fundamentally alters the transfer analysis. Under the Supreme Court's decision in *Atlantic Marine Construction Co. v. United States District Court*, 571 U.S. 49 (2013), when parties have agreed to a valid forum selection clause, that agreement must be "given controlling weight in all but the most exceptional cases." *Id.* at 63 (quotation omitted). The Court in *Atlantic Marine* explained that the usual § 1404(a) balancing of private and public interests "changes when the parties' contract contains a valid forum-selection clause." *Id.* at 58–59. In such cases, the court must disregard the plaintiff's choice of forum, and the private interests of the parties "weigh entirely in favor of the preselected forum." *Id.* at 64. The only relevant consideration is whether public interest factors overwhelmingly disfavor transfer—a high burden that lies with the party opposing enforcement of the clause. *Id.* at 67.

Here, Plaintiff cannot satisfy that burden. The relevant public interest factors— such as court congestion, the local interest in the controversy, and the forum's

509121130.9

familiarity with the governing law—either favor transfer or are neutral.  This is not a localized California controversy.  It is a private dispute between a Delaware corporation headquartered in New York and a Texas resident.  *See Cleanview Dist. Grp. LLC v. LGL Holdings, LLC,* No. 21-cv-3197, 2021 WL 5969502, at *3 (C.D. Cal. Nov. 12, 2021)* ("This is a private dispute between sophisticated parties that agreed to litigate their disputes in New York. There is no public interest at stake that would override the right of private parties to freely enter into contracts on lawful terms."); *Cf. Parr v. LPL Fin. LLC, No. 18-cv-06031, 2019 WL 4933583, at 4 (N.D. Cal. Oct. 7, 2019)* (rejecting argument that California's interest in enforcing its labor laws precluded transfer under § 1404(a) and noting that if it did, "every nationwide trucking company would find themselves in all fifty states defending against similar lawsuits").  The key events at issue—including Plaintiff's onboarding, performance issues, leave request, and separation—were driven primarily by executives operating from New York, and Plaintiff worked remotely from Texas for the majority of his employment. Agarwal Decl. ¶¶ 1-2, 18-26; Brown Decl. ¶¶ 12-16.

Moreover, the governing agreements explicitly provide that Delaware law shall apply, and that any litigation must proceed in New York courts. Agarwal Decl. ¶¶ 8-16, Ex. A, B, C, D. While federal courts are competent to apply foreign law, the Supreme Court has noted that public interest favors "having the trial of a diversity case in a forum that is at home with the law." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981). Here, the Court will be required to interpret and apply Delaware law regardless of venue.  Remaining in California will not avoid that burden.  Accordingly, this factor weighs in favor of transfer to New York, where the forum courts routinely apply Delaware law in disputes.

Although Plaintiff's offer letter contains a California choice-of-law provision, that clause does not alter the transfer analysis. Courts routinely enforce forum selection clauses even when doing so requires the transferee court to apply a different state's law. *See generally Piper Aircraft Co.,* 454 U.S. 235 (1981). Moreover, courts

have recognized that forum selection clauses are governed by federal procedural law, not the chosen substantive law of the contract. *See Color Switch LLC v. Fortafy Games DMCC,* 377 F.Supp.3d 1075 (2019) (*citing Manetti-Farrow, Inc. v. Gucci America*, 858 F.2d 509, 513 (9th Cir. 1988)). In any event, Plaintiff's claims arise not solely from the offer letter, but from a broader set of agreements and a merger transaction governed by Delaware law and containing mandatory forum selection clauses designating New York as the proper forum. Agarwal Decl. ¶¶ 6-7. Courts routinely enforce the forum selection clause in the primary or more comprehensive agreement—particularly where the claims arise out of or relate to that overarching relationship. *See Manetti-Farrow, Inc.*, 858 F.2d at 514 n.5 (9th Cir. 1988) (forum clause applies to "non-signatories where the alleged conduct of the non-parties is so closely related to the contractual relationship"); *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 835–36 (N.D. Cal. 2018) (broad and mandatory forum selection clause in primary agreement covered claims relating to a secondary agreement); *Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1117–18 (E.D. Cal. 2014) (enforcing forum clause where incorporated into later agreement through course of dealing). Thus, the existence of a California choice-of-law provision in a subsidiary agreement does not undermine the parties' contractual commitment to litigate their disputes in New York.

### 4. Cal. Lab. Code § 925 Does Not Invalidate the Forum Selection Clause

Checkmate anticipates that Plaintiff may attempt to invoke California Labor Code § 925 to avoid enforcement of the parties' forum selection clause. But as a threshold matter, it is far from clear that § 925 applies to Plaintiff at all. To invoke the protection of § 925, a plaintiff must put forth evidence to demonstrate he "primarily resides and works in California." See *Campbell v. FaF, Inc.,* 2019 U.S. Dist. LEXIS 108023 *17 (S.D. Cal.16 2019)(declining to apply §925 where Plaintiff only alleged he "would regularly engage in Defendants' business in the city and

county of San Diego, California"). Here, Plaintiff does not—and cannot—make such a showing. Although Plaintiff alleges that he was a California citizen and references his "Offer Letter, employment, termination and residence in California" (Compl. ¶ 9), these assertions are belied by the factual record. Plaintiff relocated to Midland, Texas on August 3, 2024, updated his residential address in Checkmate's systems, and worked remotely from Texas during nearly the entire time period relevant to his claims. Brown Decl. ¶¶ 5-16.  His W-2 and payroll records confirm his Texas residency, and Checkmate did not assign him to any office in California. (Brown Decl. ¶¶ 6-11, Ex. B, C. Accordingly, § 925 does not apply and does not bar enforcement of the forum selection clause.

Even if Plaintiff could establish that he primarily resided and worked in California – which he cannot – Section 925 still does not apply where the employee was represented by legal counsel in negotiating the terms of the employment agreement. Cal. Lab. Code § 925(a), (e). Here, Plaintiff was represented by legal counsel, including employment counsel, during the negotiation and execution of the Merger Agreement and the related employment documents that governed his role at Checkmate. Agarwal Decl. ¶ 7. As reflected in the Merger Agreement itself, Plaintiff executed these agreements, including his offer letter, as part of the sale of VoiceBite to Checkmate, with the involvement of counsel representing each of the VoiceBite co-founders. Agarwal Decl. ¶ 7, Ex. A.  That transaction involving the multimillion-dollar acquisition of VoiceBite, pursuant to which Plaintiff received equity in Checkmate, along with stock options and additional compensation negotiated as part of a tailored retention package. Agarwal Decl. ¶ 6.  Because Plaintiff was represented by legal counsel in negotiating the these agreements, including the forum selection provision, Section 925 does not apply.

Moreover, even if Plaintiff had not been represented by counsel in negotiating the Employment Agreement, the forum selection clause is still enforceable because it was not a condition of employment within the meaning of Section 925.  Courts

have declined to apply Section 925 where the employee had sufficient negotiating power or an executive-level position that allowed them to bargain over contract terms. *See, e.g., Kem v. Strike Advisory, LLC*, No. 2:23-cv-07459-CAS(SKx), 2023 WL 7021172, at *4 (C.D. Cal. Oct. 23, 2023). In *Kem*, the court enforced a forum selection clause in an employment agreement despite the plaintiff's Section 925 argument, noting that the plaintiff—who had served as vice president and president— was not a "mere employee" and would have had the ability to negotiate the clause if he wanted to, and therefore the clause was not a "condition of his employment." *Id.* As such, Section 925 did not preclude enforcement of the forum selection clause. *Id.*

The same is true here. Plaintiff was not a rank-and-file employee—he was a co-founder of the company acquired by Checkmate and was appointed Vice President of AI Technology following the merger. Agarwal Decl. ¶¶ 5, 7. He held a senior leadership position, had bargaining leverage in the context of a negotiated merger, and was in a position to negotiate the forum selection clause had he wished to do so. As in *Kem*, this establishes that the clause was not a condition of employment, and Section 925 therefore does not preclude enforcement of the parties' agreed-upon forum.

Because Plaintiff cannot demonstrate that public interest factors overwhelmingly disfavor transfer, and because the forum selection clause is valid, enforceable, and controlling, this case should be transferred to the Southern District of New York under § 1404(a).

## C. Alternatively, a Traditional § 1404(a) Analysis Compels Transfer to New York or Texas

Even setting aside the binding forum selection clause, the traditional discretionary analysis under 28 U.S.C. § 1404(a) leads to the same conclusion: this case should be transferred to either the Southern District of New York or a federal court in Texas. Plaintiff has not disaffirmed the agreements at issue, but even if the

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

Court were to disregard the forum selection clause entirely, the relevant convenience and interest-of-justice factors still point strongly away from this District.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action" to any other district where the case could have been brought. The statute is designed "to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  Courts in the Ninth Circuit apply a flexible, case-by-case analysis considering both statutory and judicially recognized factors, including:

> (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of
> action in the chosen forum, (6) the differences in the costs of litigation…, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, (8) the ease of access to sources of proof, (9) the presence of a forum selection clause, and (10) the relevant public policy of the forum state.

*See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000); *Newthink LLC v. Lenovo (U.S.) Inc.*, No. 2:12-cv-5443, 2012 WL 6062084, at *1 (C.D. Cal. Dec. 4, 2012).

### 1. Convenience to the Parties and Witnesses, and Sources of Proof Favors New York or Texas

The convenience of witnesses is "the most important factor" in the § 1404(a) analysis. *Newthink LLC*, 2012 WL 6062084, at *1; *see also L.A. Printex Indus., Inc. v. Le Chateau, Inc.*, No. CV 10-4264 ODW (FMOx), 2011 WL 2462025, at *3 (C.D. Cal. June 20, 2011); *Jang v. Boston Sci. Scimed, Inc.*, No. CV 10-3911 ODW (VBKx), 2010 WL 11463889, at *3 (C.D. Cal. Aug. 9, 2010).

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

Here, Plaintiff's claims concern employment-related decisions made by Checkmate personnel based in New York. The overwhelming majority of other relevant witnesses—including those who made decisions about Plaintiff's leave, performance, and role—are located in or near Checkmate's New York headquarters. Agarwal Decl. ¶¶ 1-4; Brown Decl. ¶ 3. For these witnesses, the Southern District of New York is clearly the most convenient forum. Additionally, Plaintiff himself resides in Texas, where he lived and worked for the majority of his employment. Brown Decl. ¶ 5. Litigating this case in California imposes unnecessary travel and logistical burdens on all parties and non-party witnesses, especially where the material witnesses are located in New York, Kansans, and Texas. As courts have recognized, the most convenient forum is the one where most witnesses and decisionmakers are located. *See Jang v. Boston Sci. Scimed, Inc.*, No. CV 10-3911, 2010 WL 11463889, at *3 (C.D. Cal. Aug. 9, 2010).

### 2. Transfer Will Conserve Judicial and Party Resources

Litigating this case in New York or Texas would be significantly more efficient. Checkmate's headquarters is in New York, where relevant documents, HR records, and executive witnesses are located. To the extent former employees or third-party witnesses are unwilling to testify voluntarily, a New York court will be better positioned to compel their attendance. *See Dahdoul Textiles, Inc. v. Zinatex Imports, Inc.*, No. 2:15-cv-4011, 2015 WL 5050514, at *4 (C.D. Cal. Aug. 25, 2015).

Furthermore, Checkmate has already initiated a related action against Plaintiff in New York state court, involving overlapping legal and factual issues. Transferring this case would allow for coordination or consolidation, minimizing duplicative litigation and the risk of inconsistent rulings.

Plaintiff, by contrast, cannot identify any material evidence or non-party witness located in California, aside from Mr. Bell. That one fact does not outweigh the totality of circumstances pointing toward the Southern District of New York or the Western District of Texas as more appropriate venues.

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE

1

### 3. The Parties' Contacts with this District Are Minimal

Plaintiff briefly resided in California when he signed his offer letter, but did not perform significant work in California and was never assigned to a California office. *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1029 (N.D. Cal. 2020) (finding that the plaintiff did not work primarily in California when less than 20% of the plaintiff's work for the company occurred in California). Checkmate does not operate a physical office in California, and Plaintiff did not return to California for work after relocating to Texas in early August 2024. Agarwal Decl. ¶ 4; Brown Decl. ¶ 11.

The key decisions giving rise to Plaintiff's claims—concerning his leave request, job reassignment, and eventual resignation—were largely made by Checkmate personnel located outside California, through remote communication platforms. The decisions at issue were made collectively by Checkmate leadership, including executives based in New York. Agarwal Decl. ¶¶ 1-2, 18-26; Brown Decl. ¶¶ 12-16. In addition, Texas has a stronger public interest than California in this dispute. Plaintiff resided in Texas during most of his employment and allegedly suffered harm while living and working there. Brown Decl. ¶ 5. Texas, not California, has a regulatory interest in employment relationships affecting its residents.

Even under a traditional § 1404(a) analysis, this case does not belong in the Central District of California. The convenience of the parties and witnesses, the interests of justice, and the location of relevant events and decisionmakers all point to New York or Texas as the more appropriate forum. Accordingly, the Court should transfer this action to the Southern District of New York, or alternatively, to a federal court in Texas.

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE

1    **IV.    CONCLUSION**

2    For each of the foregoing reasons, Checkmate respectfully requests that this

3    Court dismiss this case for improper venue or, alternatively, transfer this case to

4    Southern District of New York or the Western District of Texas.

5    To the extent the Court finds that a factual dispute precludes resolution of this

6    motion, Defendant respectfully requests the opportunity to conduct limited

7    jurisdictional discovery and/or present evidence at an evidentiary hearing. See *Data*

8    *Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977).

9

10

11    Dated:        March 26, 2025                K&L GATES LLP

12

13                                              By: _____

14                                              Gabriel M. Huey
                                                Stacey Chiu

15                                              Attorneys for Defendant
16                                              CHECKMATE.COM, INC.

17

18

19

20

21

22

23

24

25

26

27

28

509121130.9

DEFENDANT CHECKMATE.COM, INC.'S
MOTION TO DISMISS OR, IN THE
ALTERNATIVE, TRANSFER VENUE