Arjun Vasan
arjun.vasan@gmail.com
12615 193rd Street
Cerritos, CA 90703
562-900-6541
Plaintiff in Pro Per

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **Arjun Vasan**, <br>         Plaintiff, <br> vs. <br> **Checkmate.com, Inc.**, <br> (dba "Checkmate"), <br>         Defendant. | Case No.: 2:25−cv−00765−MEMF−JPR <br><br> **DECLARATION OF ARJUN VASAN IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR TRANSFER** |

**I, Arjun Vasan, declare as follows:**

1. I am the Plaintiff in this action. I make this declaration in support of my Opposition to Defendant Checkmate.com, Inc.'s Motion to Dismiss or Transfer Venue. I have personal knowledge of the facts set forth herein and could and would testify competently thereto if called as a witness.

2. I have resided in California for over 25 years. I am a long-time California resident and consider it my permanent home. I grew up here, went to school here, college here, founded four startups here and intend to stay here.

3. In August 2023, I co-founded VoiceBite Corporation in Cupertino, CA, where I lived and worked at the time. Four out of the five founding team members of VoiceBite were California residents.

4. On or about December 2023, I sent a LinkedIn Message to Vishal Agarwal, proposing a partnership to provide Voice AI services for Checkmate's customer base. Checkmate escalated to proposing a merger, and negotiations began with Agarwal and Chief of Strategy Michael Bell ("Mr. Bell").

5. On January 31, 2024, Mr. Bell personally visited the VoiceBite team in Cupertino, from where we worked during merger negotiations. We later personally visited him at his home in Manhattan Beach on March 16, 2024.

6. We signed an exclusive Letter of Intent (LOI) in February 2024, marking the start of intensive negotiations, the vast majority of which were employment related. By April, VoiceBite's team had spent four months without pay, and Checkmate used coercive tactics to force us into unfavorable terms.

7. Near the end of February, 2024, I relocated to my family residence in Cerritos, California. My cofounder Christopher Lam ("Chris"), flew down from Canada and stayed with me during the month of March.

8. We closed the merger on April 30th, and I began employment under the direct supervision of Mr. Bell, despite my written objections due to threats he had made during negotiations.

9. I remained in California throughout the entire merger negotiation period, and during the post-merger onboarding and employment phases. Most key events related to the merger and my employment occurred while I was in California, where I began working on May 1st, 2024 as VP AI Technology.

10. My Offer Letter states that California law governs my employment. The forum selection clause Checkmate relies on was included in the merger documents, not my individual employment agreement. My claims arise from my employment relationship with Checkmate.

11. Mr. Bell was my direct supervisor, and the Checkmate executive most involved in my day to day activities. Agarwal was also involved.

12. On May 2, 2024, just my second day of employment, I raised concerns about Checkmate's 'Bring Your Own Device' policy potentially violating California Labor Code § 2802. In response, CEO Agarwal forwarded my private request to a team Slack channel, labeled me a 'problem,' and stated 'I'm happy to fire you' and that 'we won't hire people who are stickler for the law.' **Exhibit M** contains a true and correct copy of this Slack conversation.

13. Throughout my tenure at Checkmate, I faced retaliation for insisting on legal and contractual compliance. Agarwal repeatedly threatened to terminate me for raising issues related to promised compensation, including back pay and retention bonuses. In a meeting on July 23rd, 2024, he stated that one more demand, even if justified, would result in my dismissal.

14. During that same meeting, and thereafter, both Agarwal and Bell advised me and Robert Nessler (the other California based founder, "Robert") to move out of state for tax purposes ahead of our expected bonuses.

15. After 3 months of employment, on or about August 3rd, 2024, I relocated to Midland, Texas for a period of approximately 56 days. As a first-time participant in fully remote work, I was curious to explore living outside of California and spend some time with my brother, with whom I stayed. Within a month I began to feel a strong sense of homesickness, and by the end of the two-month period I had determined that Texas was not for me.

16. As can be determined in my Slack conversation with Amy Brown, shared by Checkmate in its Motion, I did not ask to change my tax withholdings for several weeks after moving to Texas. I never asked for or expected reimbursement for prior to changing my address on file. This was a surprise.

17. In total, I was physically present in and working from California for 70%+ of my time as a Checkmate employee. Including the time immediately

preceding the merger while I was working full-time as a co-founder of VoiceBite, the percentage rises to 88%.

18. Contrary to Checkmate's assertions, California state taxes were withheld on over 62%+ of my income as an employee, including any reimbursements. This is reflected in my W2, exhibited by Checkmate (ECF No. 18-2).

19. I returned to California on September 30, 2024 and remained in California from that point forward, including when I was terminated.

20. In late September, Agarwal expressed to me the importance of what he called a "make or break" customer demo with Popeye's, a major Checkmate customer. I promised him that no matter what, I would not drop the ball.

21. During this period I worked nights and weekends and successfully delivered the demo on time, contributing on technical fronts, working with, leading and inspiring my team to put in extra time alongside with me. Eventually, this relentless schedule was not sustainable and I began experiencing serious burnout, insomnia and other health issues.

22. I began inpatient treatment in California on October 23, 2024, where I remained until after I was terminated by Checkmate on November 14, 2024.

23. I have continuously resided in California since my return. I have other records and witnesses who can confirm my return to and continued presence in California since September 30, 2024.

24. I submitted the form for FMLA/CFRA leave provided by Amy Brown, Checkmate's Vice President of Human Relations ("Brown"), certifying a serious health condition requiring inpatient treatment by a California physician. I was treated in a Costa Mesa, CA facility. **Exhibit P** contains a true and accurate copy of the medical certification I provided.

25. While on leave, I notified Checkmate that I had limited access to my devices as part of the treatment protocol. On November 14, 2024, while still

DECLARATION IN OPPOSITION OF DEFENDANT"S MOTION TO DISMISS OR TRANSFER

      undergoing this inpatient treatment, I was terminated "with immediate effect"during a Zoom meeting with CEO Agarwal, Brown, and Mr. Bell.

26. The termination was recorded, and an AI summarizer service, under a Checkmate account, inadvertently provided me with access to both the recording and transcript, which captures executives acknowledging they terminated me and discussing a 'final settlement.'

27. I was not informed, and did not consent to being recorded, especially while I was in a medical facility discussing sensitive topics.

28. **Exhibit H** contains a true and accurate copy of the email notifying me of the completed meeting summary and link to the recording.

29. **Exhibit I** contains a true and correct transcription of the recording available at the link in Exhibit H.

30. **Exhibit J** contains true and accurate screenshots of the User Interface available at the link in Exhibit H.

31. The link is referenced in Exhibits H, I and J, and is publicly available without password protection as of today, April 09, 2024.

32. Approximately two hours after being terminated, while in a medically vulnerable state without access to my employment agreements, I sent an email that Checkmate now mischaracterizes as a 'resignation.

33. On December 6, 2024, Checkmate served a legal Notice that misstated the date of my "resignation" email as November 13, 2024—the day before my actual termination. It has withheld over $120,000 in guaranteed severance payments by falsely claiming I had resigned before being terminated, when the documented timeline proves the opposite.

34. **Exhibit K** contains a true and accurate copy of this Notice.

35. I have multiple accounts, including written, from my VoiceBite teammates of being told that any contact with me would be grounds for dismissal. There

DECLARATION IN OPPOSITION OF DEFENDANT"S MOTION TO DISMISS OR TRANSFER

was an immediate and notable drop in communications from them after my termination that continues til this day.

36. Despite knowing I was living in California, Checkmate filed a lawsuit against me in New York Supreme Court on February 18, 2025, identifying me incorrectly as another "Arjun Vasan" residing in Sugar Land, Texas. A web search for "Arjun Vasan Sugar Land" brings up an unrelated student at the University of Texas with no connection to Checkmate or to this case.

37. These search results are reproducible, and a true and accurate copy as of April 9, 2024, is provided as **Exhibit D**.

38. My address of record as per the Merger Agreement (ECF No. 18-4 at 47) and defective "nail and mail" service attempt to my California address despite failing to correct its Summons—demonstrates that Checkmate itself recognizes California as my true and primary residence.

39. My claims in this case arise from conduct that occurred almost entirely in California, including but not limited to (ECF No. 10):
    1. Fraudulent Inducement. Compl ¶¶ 15-20, 104-127;
    2. Retaliation for asserting California labor rights. *Id*. ¶¶ 24-27, 39-47, 58-59 and 68-74;
    3. Failure to pay wages earned under California law. *Id*. ¶¶ 84-90;
    4. Interference with and retaliation for exercising medical leave rights protected by the FMLA and CFRA. *Id*. ¶¶ 60-67;
    5. Wrongful Termination while in California Id. ;

40. While VoiceBite had corporate counsel, I was never individually represented by counsel during the merger and employment negotiations. True and correct copies of communications confirming this lack of individual representation and Checkmate's express knowledge of this fact are presented as:

41. **Exhibit N** - December 13, 2024 - VoiceBite counsel Alan Foster email disclaiming expertise in Employment Law, and expressing a conflict of interest issue as he was former VoiceBite counsel.

42. **Exhibit Q** - December 20, 2024 - Ryan Keech of K&L Gates email thread, threatening to compel disclosure of conversations with VoiceBite corporate counsel, expressing that Checkmate owns post merger relationship.

43. **Exhibit G** - Charles Tea email re K&L Gates Ethics Issues: Deputy General Counsel response to my ethics inquiry about misrepresentations in the course of their representation of Checkmate. In this, Tea asserts that Checkmate owns any pre-closing communications VoiceBite counsel.

44. To the extent that Checkmate attempts to characterize me or the VoiceBite team as "sophisticated parties," I dispute that characterization. None of us truly understood how to handle bad faith conduct. Moreover, Checkmate's interference with our relationship to legal counsel—which ultimately led to our attorney's resignation days before closing—left us without the legal guidance we needed during a critical phase. Their conduct rendered us effectively unsophisticated and unsupported in the negotiation process.

45. I worked hard, in good faith, to deliver value for Checkmate, before the merger and during my employment as well.

46. I respectfully submit this declaration to affirm that California is my primary place of residence and the proper forum for the adjudication of this matter.

*I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct.*

Executed on **Wednesday, April 9, 2025**, in Cerritos, California.

*Signed by:*

/s/ Arjun Vasan
51FCFFB2A73C49E...
_____

**Arjun Vasan**

DECLARATION IN OPPOSITION OF DEFENDANT'S MOTION TO DISMISS OR TRANSFER