Arjun Vasan

arjun.vasan@gmail.com

12615 193rd Street

Cerritos, CA 90703

562-900-6541

Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**Arjun Vasan**,

    Plaintiff,

vs.

**Checkmate.com, Inc.**,

(dba "Checkmate"),

    Defendant.

Case No.: 2:25−cv−00765−MEMF−JPR

Hon. Maame Ewusi-Mensah Frimpong

**PLAINTIFF'S SUR-REPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS OR, IN THE ALTERNATIVE, TRANSFER VENUE**

Hearing date: June 5th, 2025
Time: 10 am
Complaint Filed: January 28, 2025

[Filed concurrently with [Proposed] Order, Supplemental Declaration of Arjun Vasan]

## I. INTRODUCTION

Defendant's positions remain deeply self-contradictory. In its Reply, Defendant finally admits what the factual record has long established: Plaintiff was terminated—while on medical leave. Yet in its concurrently filed evidentiary objections, Defendant repeatedly seeks to exclude Plaintiff's own sworn statements characterizing his separation as a termination, along with irrefutable documentary evidence supporting that fact. This is not a fact in legitimate dispute as Defendant's Reply acknowledges—perhaps inadvertently. (ECF 32, fn. 5; RJN C)

Defendant's claim that § 7.4 of the merger agreement applies only to "pre-merger" claims is plainly unsupportable. The provision expressly includes claims that arise concurrently with the merger—in language that squarely encompasses the employment-related claims at issue here. Moreover, Defendant argues that Plaintiff is a "sophisticated" party capable of understanding complex agreements. If that is so, then Plaintiff's interpretation—offered as a reasonable reading by a sophisticated party—must be given weight. At a minimum, this creates ambiguity. And under established California contract law, any ambiguity must be construed against the drafter—which, in this case, is Defendant. (RJN G, "re lack of pre-merger employment")

Equally unpersuasive is Defendant's argument that Plaintiff had "individual representation" within the meaning of Labor Code § 925(e). Fundamental to legal representation is the right to confidentiality, continuity, and access to attorney work product. Defendant—through its legal counsel, *including the General Counsel of K&L Gates*—has repeatedly asserted dominion over the legal relationship with former VoiceBite counsel. If Plaintiff had no access to work product, no continuity of advice, and no ability to rely on counsel independently of the company, there was no "individual representation" in any meaningful legal sense. Accordingly, Plaintiff remains within the core protections of § 925. (see Pg. 8, Fn. 4)

Defendant's attempt to construct its factual narrative through a set of selectively tailored Declarations is further undermined by its sweeping objections to nearly every paragraph of Plaintiff's own sworn Declarations. It now contends, in effect, that Plaintiff is not even permitted—under penalty of perjury—to describe plain facts about his own lived experience, or to rebut new positions raised for the first time in Reply. Nor has Plaintiff been afforded a meaningful meet and confer, such that he could anticipate and address these arguments earlier.

At its core, Defendant's position is that Plaintiff is not entitled to any protections—statutory, contractual, procedural, constitutional or otherwise. That he is not entitled to represent himself. That he is not entitled to due process. This Court should not countenance such tactics. The Motion to Dismiss or Transfer Venue should be denied in its entirety.

**II. § 7.4 Carves Employment Out of § 9.7—No Matter How the Forum Clause Is Read**

MEMORANDUM ISO PLAINTIFF'S REPLY ISO MOTION FOR LEAVE TO FILE SUR-REPLY

Defendant's Reply misconstrues the relationship between § 7.4 and § 9.7 of the Merger Agreement. Properly interpreted, § 7.4 explicitly carves out employment-related claims from § 9.7's forum-selection provisions. This carve-out applies regardless of whether the Court accepts Defendant's characterization of the employment documents as part of the merger transaction.

**A. Established Principles Mandate That § 7.4's Employment Specific Carve-Out[1] Controls Over § 9.7's General Forum Provision**

Ninth Circuit precedent establishes frameworks to guide this Court's analysis:

**Specific Controls the General**: When specific and general provisions appear to conflict, the specific provision prevails. Here, § 7.4(ii) pin-points employee-compensation claims, while § 9.7 speaks broadly to "any legal action."

**Courts Must Avoid Surplusage**: Courts reject interpretations that "would render portions of the contract superfluous." Defendant's reading nullifies the phrase "accrued but unpaid wages, salary, compensation, bonuses..." in § 7.4(ii).

**Narrow Construction of "Arising Under" Language**: The Ninth Circuit consistently gives narrow scope to clauses using "arising under." Section 9.7's reach over actions "relating to this Agreement or the enforcement of any provision" stops where § 7.4 removes employment claims from the Agreement's ambit.

***Contra proferentem*:** Even in sophisticated transactions, ambiguities are construed against the drafter, in this case Checkmate, the Defendant.

---

[1] Courts consistently apply these key interpretive principles when contract provisions conflict. The specific-over-general canon establishes that specific provisions control over general ones (*Prouty v. Gores Technology Group*, 121 Cal. App. 4th 1225; *Sanserino v. Shamberger*, 245 Cal. App. 2d 630), which means § 7.4(ii)'s specific employment carve-out prevails over § 9.7's general forum provision. Courts must interpret contracts to avoid rendering any provision superfluous (Cal. Civ. Code §1641; *LaSalle Bank v. Nomura Asset Capital Corp.*, 424 F.3d 195; *Galli v. Metz*, 973 F.2d 145), making Defendant's interpretation untenable as it renders § 7.4(ii) meaningless. When carve-outs exist in contracts, they preserve both substantive and procedural rights (*Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436; *Ronderos v. USF Reddaway, Inc.*, 66 F.4th 1114), supporting the conclusion that § 7.4(ii) preserves both compensation rights and the forum to enforce them. Forum selection clauses cover only disputes with a significant nexus to the contract (*Manetti-Farrow v. Gucci America*, 858 F.2d 509; *Cape Flattery v. Titan Maritime*, 647 F.3d 914), confirming that employment claims arising from Plaintiff's "capacity as a service provider" fall outside § 9.7's scope. Finally, any remaining ambiguities must be construed against the drafter (*United States v. Seckinger*, 397 U.S. 203; *Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52; Cal. Civ. Code §1654), which means uncertainties must be resolved against Defendant Checkmate.

**B. The Plain Text of § 7.4 Preserves Both Substantive and Procedural Rights for Employment Claims**

Section 7.4 explicitly preserves from release:

(i) **any right** ... **arising under ... any Transaction Document**, including *claims arising hereunder or thereunder*;

(ii) to the extent ... an employee ... **any right** ... to receive **accrued but unpaid** wages, salary, compensation, bonuses, accrued vacation and any other accrued but unpaid compensation and/or benefits **(other than any equity-based compensation)** owed to Stockholder Releasor in **its capacity as a service provider to the Company**;

(iii) any right to indemnification ….; and

(iv) any claim that, as a matter of Applicable Law, **cannot be released**…

The preservation of "**any right**" in § 7.4(ii) necessarily encompasses both substantive rights (to receive compensation) and procedural rights (to enforce those rights in an appropriate forum) and is distinct from rights "arising under" the merger agreement § 7.4(i).

**C. Section 7.4 Distinguishes Between Merger and Employment Claims**

Critically, § 7.4 draws a clear distinction between claims arising under the Merger Agreement itself (subsection i) and employment-related claims (subsection ii). By separating these categories, the provision makes clear that employment claims exist independently from claims "under or related to the agreement or transaction."

The parenthetical exclusion in § 7.4(ii)—"(other than any equity-based compensation)"— confirms that the drafters knew exactly how to fence certain claims back into the general forum clause when they wanted to. This surgical drafting demonstrates:

1. Wages, commissions, and bonuses (the claims at issue) are expressly carved out.
2. Equity-based pay (RSUs, options, merger-consideration shares) remains subject to § 9.7.
3. This precision defeats Defendant's surplusage argument and shows that honoring the carve-out still leaves plenty for § 9.7 to govern.

**D. Employment Claims' Source Distinguishes Them from Claims Under the Merger**

There is a distinction in the source of rights between § 7.4(ii) and other provisions:

4

- **Employment claims** under § 7.4(ii) arise from Plaintiff's "capacity as a service provider" to the Company—these are employment rights external to the Merger Agreement itself.
- Once preserved, these employment rights no longer "relate to" the Agreement (making § 9.7 inapplicable).
- By contrast, rights in § 7.4(i) are contractual remedies arising under the Agreement itself. Those are precisely the types of claims § 9.7 governs.

The Ninth Circuit supports this distinction. In *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914 (9th Cir. 2011), the court held that a forum-selection clause "does not apply to claims that do not arise out of or relate to the contract." Here, § 7.4 makes clear that post-closing employment compensation does not arise out of the merger transaction—it arises from Plaintiff's role as an employee. As such, the Merger Agreement—and its forum clause—do not apply.

### E. § 7.4(ii)'s Language Can Only Be Understood as Applying to Post-Closing Claims

Defendant's argument that § 7.4 applies only to pre-merger claims defies both logic and the plain text of the provision. Section 7.4(ii) specifically addresses the rights of a "Stockholder Releasor in its capacity as a service provider to the Company" to receive "accrued but unpaid wages, salary, compensation, bonuses...". This language is only reasonably understood as applying to post-Closing employment—the only employment Plaintiff has had with Defendant.

1. The reference to "service provider to the Company" contemplates an ongoing relationship post-Closing, which did not yet exist at Closing. See ECF No 27 at Ex. C, "Key Events".
2. The phrase "accrued but unpaid" necessarily includes compensation that accrues after Closing—precisely the types of claims at issue in this litigation.
3. Any pre-Closing employment claims would have been addressed at Closing as part of the transaction, making § 7.4(ii) entirely superfluous under Defendant's reading.

In short, Defendant's reading strips § 7.4(ii) of any operative force. Plaintiff's interpretation is not only more consistent with the text—it is the only one that gives § 7.4(ii) a practical, non-superfluous function.

### F. The Ninth Circuit's Contract Interpretation Framework Leads to a Clear Result

Following the Ninth Circuit's roadmap:

1. **Identify the narrower clause**. § 7.4(ii) is the narrower, claim-specific provision.
2. **Apply the surplusage canon**. Reading § 9.7 to swallow § 7.4(ii) turns the employee-compensation carve-out into dead letter.
3. **Resolve any remaining ambiguity**. Any lingering doubt is resolved against the drafter.

*The result:* Post-closing employment claims are outside § 9.7's mandatory New York venue and may proceed in California. Other merger-related disputes may remain subject to § 9.7, preserving the parties' original bargain. Because § 7.4 explicitly and reasonably preserves both the substantive and procedural rights associated with Plaintiff's post-merger employment claims, the Court should find that § 9.7's forum-selection clause does not reach these claims. Accordingly, the motion to dismiss or transfer must be denied on contract grounds alone.

### III. Plaintiff Must Be Protected by § 925 as All Criteria are Met

1. <u>Plaintiff was *primarily* a California resident and employee</u>

Defendant continues to misstate the facts to establish Plaintiff as a Texas resident, even refusing to retract an indefensible misidentification in its New York Summons (RJN D). Under any accounting, Plaintiff was *primarily* a California resident who worked from California:

(a) **Physical Location**: Plaintiff has provided evidence and sworn Declarations showing over 70% of his days—while a bona fide Checkmate employee—were spent working from and living in California. Defendant has not and cannot refute this number.

(b) **Address on File**: Defendant admits, and its exhibits shows, that until September 7th, 2024, the official address on file for payroll was Plaintiff's current California address. This tallies to 129 of 197 days from the start of employment on May 1st, 2024, until his termination on November 14th, 2024, or 65%+ of days.

(c) **Tax Withholdings**: Defendant's exhibits indicate, that after all accounting, including any refunds initiated by Defendant itself, 60% of Plaintiff's 2024 income was taxed as a California resident—once again establishing he was *primarily* a California employee.

Defendant has not provided a single citation to support its arguments that its own address on file is a dispositive factor. Taken to the extreme, Defendant's new claim that Plaintiff was "in

part" a Texas resident according to its records would mean that if Plaintiff's address on file changed *one day* before his termination, he would lose protection from § 925. Clearly this is why Courts have established *primarily* lived and worked in to mean the majority of time[2].

### 2. The Merger was In Substance a Condition of Employment

Under California law, courts look to the **economic reality** and **substance over form** when evaluating contractual relationships—particularly in the employment context. See *Dynamex Ops. W. v. Superior Ct.*, 4 Cal.5th 903 (2018); *S. G. Borello & Sons, Inc. v. Dep't of Indus. Rels.*, 48 Cal.3d 341 (1989). Labels and formal distinctions yield to the underlying realities of the relationship.

Defendant's *own stated position* is that the merger and employment constitute "one bargained-for transaction"—a position it has relied on to interpret contractual provisions in its favor. Yet it now seeks to decouple the merger from employment for purposes of avoiding Labor Code § 925. That contradiction is unsustainable. (See RJN G).

To the extent the Court finds that the merger agreement is the "more comprehensive agreement" governing the parties' relationship, it must likewise conclude that the merger was a **condition of employment**[3]. Under Labor Code § 925, this triggers California's venue protections, regardless of the recitals in the Merger Agreement.

### 3. Defendant is Estopped from Asserting the 925(e) Exception

Defendant's own legal conduct bars it from invoking the exception under California Labor Code § 925(e), which permits enforcement of a forum-selection clause only where the employee was "in fact and individually represented by legal counsel."

---

[2] Plaintiff's day-by-day accounting mirrors the *Bromlow* Court's methodology to determine if California law applies.
[3] Courts consistently hold that agreements signed concurrently with employment paperwork constitute "conditions of employment," particularly when presented as mandatory for employment to commence. In cases such as *Baxter v. Genworth North America Corp.* (16 Cal.App.5th 713 (2017)) and *Nguyen v. Applied Medical Resources Corp.* (4 Cal.App.5th 232 (2016)), California courts have emphasized that timing is significant—documents presented together during hiring create a presumption that all are conditions of employment, regardless of being in separate documents. The courts examine whether the agreement was mandatory, signed during the hiring process, and whether employment was contingent on signing. As articulated in *Armendariz v. Foundation Health Psychcare Services, Inc.* (24 Cal.4th 83 (2000)), such agreements are considered adhesive when employees must sign to obtain or keep their jobs, even when technically separate from the primary employment agreement. This interpretation is particularly relevant under Labor Code § 925, where courts look beyond document structure to the practical reality of the hiring process, as seen in *Salgado v. Carrows Restaurants, Inc.* (33 Cal.App.5th 356 (2019)) and *Serafin v. Balco Properties Ltd.* (235 Cal.App.4th 165 (2015)).

Legal representation necessarily includes a continuing right to attorney-client privilege and access to work product—without which candid advice is impossible. (RJN I, re "Individual Counsel"). Plaintiff has conceded only that VoiceBite, as a corporate entity, was represented during the merger. But that representation was not individual, nor meaningful: Plaintiff has alleged with specificity and evidence, and Defendant has not contested, that this corporate counsel relationship was **interfered with and ultimately absorbed** by Defendant.

Indeed, Defendant has—through multiple legal communications—asserted control over all attorney-client relationships, privileges, and work product associated with VoiceBite's corporate counsel. Those same attorneys have since confirmed that:

(a) they cannot assist Plaintiff in this matter due to **conflicts of interest**, and

(b) they lacked the **employment law expertise** necessary to advise on the issues at hand.

These facts render it impossible for Plaintiff to have been "*in fact* and *individually* represented*" within the meaning of § 925(e)[4]. If Defendant now claims the benefit of those attorneys past involvement, while denying Plaintiff post-transaction access to their advice, it defeats the very notion of individualized representation. *Id*.

Defendant is therefore **equitably estopped** from invoking § 925(e). A party cannot claim attorney-client privilege over a legal relationship while simultaneously asserting that the opposing party was independently represented by that same counsel. Such contradictory and self-serving conduct is precisely the type of inequity that § 925 was enacted to prevent.

---

[4] Under well-established legal and ethical rules, an attorney representing a corporation owes duties to the entity itself, not to individual constituents. See *La Jolla Cove Motel v. Superior Court*, 121 Cal.App.4th 773, 784 (2004) ("An attorney's client is the corporate entity, not individual shareholders or directors, and the individual shareholders or directors cannot presume that corporate counsel is protecting their interests."). The attorney-client privilege belongs to the corporation, and control of it passes with corporate authority. *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348–49 (1985). Pre-merger communications between a company's counsel and its principals ordinarily transfer to the acquirer. *Great Hill Equity Partners IV, LP v. SIG Growth Equity Fund I, LLLP*, 2013 WL 6037329, at *3 (Del. Ch. Nov. 15, 2013).

Individual representation, by contrast, entails core rights and duties that cannot be presumed from mere corporate affiliation. These include the right to confidentiality (*Upjohn Co. v. United States*, 449 U.S. 383, 389–90 (1981)), undivided loyalty and continued access to legal advice (*People ex rel. Dep't of Corps. v. SpeeDee Oil Change Sys.*, 20 Cal.4th 1135, 1145–46 (1999)), and freedom from conflicted representation (Cal. Rules of Prof. Conduct 1.6, 1.7). California Labor Code § 925(e) expressly limits its exception to employees who were "individually represented by legal counsel," which requires more than prior access to company counsel—it requires actual representation of the individual's interests.

To enforce the forum-selection clause here would not only conflict with the statutory text but also endorse a process that was procedurally **unconscionable** and **legally untenable**.

### IV. Defendant's Continued Factual Distortions Bely its Motion

Defendant has not rebutted, or even attempted to rebut, any of Plaintiff's claims refuting the factual foundation of its motion. It continues to deny, and moreover *objects profusely* to Plaintiff's right to even provide evidence regarding, key facts including:

Plaintiff was terminated while on medical leave in California, a separation Defendant has repeatedly and under the penalty of perjury falsely characterized as a "resignation" (RJN C).

Plaintiff was directly supervised by Michael Bell (RJN E), a long-established resident of this District, who made or was directly involved in all the decisions leading to Plaintiff's claims—a key fact undermining its false argument that "all key decisions were made in New York or Texas". In reality, if Defendant's decisions were the dispositive factor, *none of these decisions were made in Texas*—where Defendant has no operations or executives.

Defendant *has not paid* the $1.5 million[5] in what it suddenly calls "merger consideration" and has asserted forfeiture of these bonuses (of which only a third were to be paid to Plaintiff) as well as the equity the agreement itself defines as merger consideration[6]. Defendant's selective reliance on contract language—sacrosanct in terms of the forum clause, but fungible in terms of anything else—is a fundamental flaw in its position.

These unrebutted contradictions, its refusal to retract its misidentification of Plaintiff as a resident of Sugar Land, Texas in official court documents (RJN D), its failure to comply with L.R. 7-3 and its general conduct in this dispute evince a profound and unacceptable disrespect for Plaintiff's rights as an employee and good faith participant in this process. This alone is grounds to deny the motion on grounds of inequity and unconscionability.

---

[5] See ECF No. 27 at Exhibit F, Notice of Claim served on VoiceBite shareholders asserting forfeiture of the $1.5M in unpaid bonuses and all merger equity consideration (worth $131,825). Plaintiff's share of this consideration was 1/3, so in any case "millions of dollars" was never even at stake for Plaintiff personally.

[6] Defendant's claim that the equity is "in his name" falls flat given that it has explicitly asserted said equity to be forfeited, whether or not it has done so on paper is not relevant to the fact that Plaintiff cannot reasonably expect it to remain in his name. (ECF 27, RJN ¶ 2, "Notice of Claim" to VoiceBite Shareholders)

## V. CONCLUSION

To grant this Motion would undermine California's hard-won public policies. Labor Code § 925 was enacted to protect California workers from being forced to litigate disputes in distant jurisdictions — where they would be denied the benefit of the state's robust workplace protections. Defendant's interpretation of the Merger Agreement similarly seeks to erase "bargained for" provisions that expressly carve out employment claims from its purview.

At every turn, Defendant has sought to avoid engagement on the merits — resorting instead to factual distortions, procedural gamesmanship, and repeated mischaracterizations of the record. It frivolously objects to every paragraph of Plaintiff's sworn declarations while relying on self-serving testimony of its own. It claims a "multi-million dollar merger" while withholding every cent of Plaintiff's compensation. It insists on New York venue while ignoring the California executive who drove the key decisions. And it claims Plaintiff had individual counsel — while asserting control over the very attorneys it now cites as evidence of such.

**These tactics don't reflect the behavior of a party seeking justice — they embody the conduct of a party seeking to avoid it.**

The record is clear: Plaintiff is a California resident, who worked primarily in California, whose employment contract stipulates California law, who reported to a California based supervisor, who was terminated while on protected medical leave in California, and who had no individual legal representation in negotiating the terms now being used against him.

Both contract principles (under § 7.4(ii)'s specific carve-out) and statutory protections (under Labor Code § 925) support denial of the Motion. So do the doctrines of Equitable and Judicial Estoppel. This Court has more than sufficient grounds to find that Plaintiff's claims belong here — in the Central District of California — where he primarily lived and worked, and where California's public policies can be fully honored.

**Accordingly, Plaintiff Respectively Requests that Defendant's Motion to Dismiss or Transfer Venue be Denied in its Entirety.**

Respectfully Submitted,

**Dated**: Friday, April 25, 2025

*/s/ Arjun Vasan*

*By:* _____

**Arjun Vasan**
Plaintiff In Pro Per

MEMORANDUM ISO PLAINTIFF'S REPLY ISO MOTION FOR LEAVE TO FILE SUR-REPLY