Arjun Vasan

arjun.vasan@gmail.com

12615 193rd Street

Cerritos, CA 90703

562-900-6541

Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Arjun Vasan**, <br><br> Plaintiff, <br><br> vs. <br><br> **Checkmate.com, Inc.**, <br> (dba "Checkmate"), <br><br> Defendant. | Case No.:  2:25−cv−00765−MEMF−JPR <br> Hon. Maame Ewusi-Mensah Frimpong <br><br> **PLAINTIFF'S NOTICE OF CLARIFICATION RE: DEFENDANT'S NOTICE OF VIOLATION** <br><br> Complaint Filed: January 28, 2025 |

**TO THE HONORABLE COURT, ALL PARTIES AND COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on June 17, 2026, Defendant Checkmate.com, Inc. ("Defendant") filed an inaccurate and prejudicial Notice of Violation which acknowledged that Plaintiff had committed no violation. The Notice is the latest in a string of improper emails and court filings here and in the related New York action, that amount to a campaign of intimidation seeking to chill Plaintiff's lawful and vigorous self-advocacy. See ECF No. 63.

Plaintiff respectfully submits this Notice so that the Court may be aware of the extent of Defendant's conduct in this regard, and the risks such conduct poses to Judicial Integrity.

MEMORANDUM OF POINTS AND AUTHORITIES

## I.   RESPONSE TO NOTICE OF VIOLATION

Defendant, perhaps unhappy with the Court's tentative ruling, insecure in its hearing performance or increasingly aware that the facts and the law are not on its side, deemed it necessary to report to this Court the following "violation": (1) Plaintiff informed Defendant of his intent to request a short administrative stay of its New York action; (2) Defendant objected and alleged that the proposed filing violated this court's instructions; and (3) Plaintiff disagreed but to minimize distraction, removed the allegedly offending material prior to filing the request.

The Notice follows a concerning sequence of events, some documented in its attached email thread. After this thread concluded, Plaintiff still had the courtesy to copy Defendant on his filing email with the SDNY *Pro Se* Intake unit. Attorney Ryan Q. Keech took the chance to reply to a purely administrative office, in language strikingly like the Notice, and demanded that non-judicial staff reject the filing on their own accord. This email is attached as Exhibit A.

## II.   RESPONSE TO ARTIFICIAL INTELLIGENCE ALLEGATIONS

Defendant's fixation on Plaintiff's alleged use of Artificial Intelligence ("AI") predates this litigation. Mr. Keech in particular has sent several emails alleging misuse of AI in scathing terms, dating back to December 2024. Plaintiff has never denied that he uses tools that are available, including AI, and indeed builds his own tools to suit his needs. Plaintiff is, after all, an AI engineer. Indeed, upon learning of the vast numbers of fellow pro se litigants, Plaintiff has taken a special interest in building technology to aid future litigants who may be in his position.

Plaintiff, in fact, doesn't merely not deny using AI, *he affirmatively represents that he does so*. This is a stark contrast to Defendant's Counsel, K&L Gates LLP, several attorneys of whom—including at least one of record here, the unfortunate Mr. Keech—were sanctioned in a recent federal case for not merely using AI, but after being questioned about certain citation errors, failing to disclose their reliance on AI as the source of those errors. See Exhibit B.

## III.   RAMIFICATIONS FOR PRO SE LITIGATION

The Court should be aware that this pattern of intimidation, threats, condescension, and unfounded accusations—particularly regarding Plaintiff's use of available technology—serves not merely to distract from the merits, but to chill the robust exercise of the right to self-

2

representation. Facing such tactics from experienced counsel would understandably deter many from fully and zealously asserting their rights for fear of reprisal or sanction.

Such behavior, if tolerated, risks not only prejudice in this case, but also broader harm to the integrity of the civil justice system, where access and fairness for all parties—represented and self-represented alike—are foundational principles. Courts have repeatedly affirmed that *pro se* litigants are entitled to advocate vigorously and to utilize all lawful tools available to them—just as represented parties do—so long as they comply with the applicable rules and orders.

If the Constitution guarantees the right to self-representation, it must necessarily include the right to *zealous self-representation*. Qualified attorneys are aware of the risks of violating any rules, yet they still walk up to and sometimes over the line, as we have seen in this dispute. Further, if the courts ask *pro se* litigants to follow the same rules, it must necessarily follow that they have access to the same tools. The reality is that *pro se* litigants are *affirmatively denied* the same tools represented parties have benefited from for decades—in many cases barred from even registering for services such as WestLaw or LexisNexus.

Widely available Artificial Intelligence promises to level the playing field and provide access to justice to millions who have never had it before. As an engineer and founder, a reluctant *pro se* litigant, and for the public record, Plaintiff affirms his use of AI as one of many tools without which his constitutional rights cannot be protected.

Respectfully Submitted,

**Dated**: Saturday, May 31, 2025,

In Cerritos, CA

/s/ *Arjun Vasan*

By:   _____

**Arjun Vasan**
Plaintiff In Pro Per

MEMORANDUM OF POINTS AND AUTHORITIES

# EXHIBIT A



Arjun Vasan <arjun.vasan@gmail.com>

---

## Letter Motion for Temporary Stay – Checkmate.com, Inc. v. Vasan, No. 25-CV-3181 (JMF)

2 messages

---

**Arjun Vasan** <arjun.vasan@gmail.com>                                        Sun, Jun 15, 2025 at 10:01 PM
To: prose@nysd.uscourts.gov
Cc: "Keech, Ryan Q." <ryan.keech@klgates.com>, "Warns, Tom A." <tom.warns@klgates.com>, "Makitalo, Rebecca I." <rebecca.makitalo@klgates.com>

Dear Clerk of Court,

I am the pro se defendant in Checkmate.com, Inc. v. Vasan, No. 25-CV-3181 (JMF).

Attached please find my **Letter Motion for Temporary Stay of Proceedings** for filing on the docket.

The document has been served on opposing counsel via email contemporaneously with this submission.

Thank you for your assistance.

Best regards,
**Arjun Vasan**
Defendant *Pro Se*
arjun.vasan@gmail.com
562-900-6541

---

📄 **letter-motion-for-temporary-stay-flat.pdf**
835K

---

**Keech, Ryan Q.** <Ryan.Keech@klgates.com>                                        Sun, Jun 15, 2025 at 11:17 PM
To: Arjun Vasan <arjun.vasan@gmail.com>, "prose@nysd.uscourts.gov" <prose@nysd.uscourts.gov>
Cc: "Warns, Tom A." <Tom.Warns@klgates.com>, "Makitalo, Rebecca I." <Rebecca.Makitalo@klgates.com>, "Huey, Gabriel M." <Gabriel.Huey@klgates.com>, "Chiu, Stacey G." <Stacey.Chiu@klgates.com>

Dear Sir/Madam:

We write on behalf of Plaintiff in the above-referenced action to request that this document be rejected for filing and returned to Mr. Vasan.

By way of background, Mr. Vasan is a pro se party who is using generative AI in a vexatious effort to, in his words, "crush" our client. Tonight, in the latest example of one of these AI filings, Mr. Vasan has asked that he be permitted to file a document, which he calls a "letter motion," that makes reference to portions of a tentative ruling in the Central District of California that Mr. Vasan was expressly ordered not to provide to any other court. To that extent, Mr. Vasan's proposed filing violates a court order.

Because the portions of Mr. Vasan's proposed filing referencing the content of that document are a violation of that order and because Mr. Vasan's proposed filing does not otherwise comply with the Court's rules and procedures, Plaintiff respectfully requests that this filing be rejected and Mr. Vasan directed to submit a document that makes whatever request he wishes to make in a compliant manner.

Respectfully,

**Ryan Q. Keech**
Partner
K&L Gates LLP
10100 Santa Monica Blvd., 8th Floor
Los Angeles, California 90067
Phone: 310.552.5070
Mobile: 646.510.3630
ryan.keech@klgates.com
www.klgates.com

---

**From:** Arjun Vasan <arjun.vasan@gmail.com>
**Sent:** Sunday, June 15, 2025 10:04 PM
**To:** prose@nysd.uscourts.gov <prose@nysd.uscourts.gov>
**Cc:** Keech, Ryan Q. <Ryan.Keech@klgates.com>; Warns, Tom A. <Tom.Warns@klgates.com>; Makitalo, Rebecca I.
<Rebecca.Makitalo@klgates.com>
**Subject:** Letter Motion for Temporary Stay – Checkmate.com, Inc. v. Vasan, No. 25-CV-3181 (JMF)

---

**This Message Is From an External Sender**

This message came from outside your organization. [Quoted text hidden]

This electronic message contains information from the law firm of K&L Gates LLP. The contents may be privileged and confidential and are intended for the use of the intended addressee(s) only. If you are not an intended addressee, note that any disclosure, copying, distribution, or use of the contents of this message is prohibited. If you have received this e-mail in error, please contact me at Ryan.Keech@klgates.com.

# EXHIBIT B

```
                                    F I L E D
                              CLERK, U.S. DISTRICT COURT

                                     5/6/25

                              CENTRAL DISTRICT OF CALIFORNIA
                              BY:      V. Figueroa        DEPUTY
```

## IN THE UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELYN "JACKIE" LACEY, et al., <br><br>            Plaintiffs, <br><br>       v. <br><br> STATE FARM GENERAL INSURANCE CO., <br><br>            Defendant. | Case No. CV 24-5205 FMO (MAAx) <br><br> **ORDER OF SPECIAL MASTER IMPOSING NON-MONETARY SANCTIONS AND AWARDING COSTS** <br><br> **FRCP 53** |

## SUMMARY OF RULING

1.     The attorneys representing Plaintiff in this civil action submitted briefs to the Special Master[1] that contained bogus AI-generated research. After additional proceedings and considerable thought, I conclude that an award combining litigation sanctions against Plaintiff and financial payments from the lawyers and law firms is appropriate to address this misconduct.

---

[1]     Hon. Michael R. Wilner, former United States Magistrate Judge for the Central District of California.

2.      I also conclude that additional financial or disciplinary sanctions against the individual attorneys are not warranted.  This was a collective debacle, and is properly resolved without further jeopardy.

## RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

### Discovery Proceedings Before the Special Master

3.      In January 2025, the Court appointed me as Special Master in this insurance-related civil action.  Central to the reason for my appointment was an ongoing dispute between the parties regarding the insurer's assertion of various privileges in discovery.  (Docket # 70, 73.)

4.      After handling intervening legal issues, I met with the parties in early April to discuss the insurer's privilege invocations.  The parties provided me with detailed letter briefs regarding the discovery issue in advance of the meeting.  When we met, the parties agreed to provide supplemental briefing on a discrete issue regarding the propriety of <u>in camera</u> review of some of the disputed documents.

### The Briefs with AI Research

5.      As recounted in detail in orders I issued on April 15 and 20 (attached to the Appendix to this order), Plaintiff's supplemental brief contained numerous false, inaccurate, and misleading legal citations and quotations.  According to my after-the-fact review – and supported by the candid declarations of Plaintiff's lawyers – approximately nine of the 27 legal citations in the ten-page brief were incorrect in some way.  At least two of the authorities cited do not exist at all.  Additionally, several quotations attributed to the cited judicial opinions were phony and did not accurately represent those materials.[2]  The lawyers' declarations ultimately made clear

---

[2]      Some "pincites" were not correctly reported.  While this could certainly impede research and review, I consider those errors to be at the mild end of the AI hallucination spectrum.

that the source of this problem was the inappropriate use of, and reliance on, AI tools.

6.     Here's an abbreviated summary of the events.  Plaintiff is represented by a large team of attorneys at two law firms (a lawyer moved from the Ellis George firm to K&L Gates during the course of the state court litigation underlying the insurance coverage action; the representation in the present case is shared between the two firms).[3]  The lawyers admit that Mr. Copeland, an attorney at Ellis George, used various AI tools to generate an "outline" for the supplemental brief.  That document contained the problematic legal research.

7.     Mr. Copeland sent the outline to lawyers at K&L Gates.  They incorporated the material into the brief.  No attorney or staff member at either firm apparently cite-checked or otherwise reviewed that research before filing the brief with the Special Master.  Based on the sworn statements of all involved (which I have no reason to doubt), the attorneys at K&L Gates didn't know that Mr. Copeland used AI to prepare the outline; nor did they ask him.

8.     A further wrinkle.  During my initial review of Plaintiff's brief, I was unable to confirm the accuracy of two of the authorities that the lawyers cited.  I emailed the lawyers shortly after receiving the brief to have them address this anomaly.  Later that day, K&L Gates re-submitted the brief without the two incorrect citations – but with the remaining AI-generated problems in the body of the text.[4]  An associate attorney sent me an innocuous

---

[3]     Although it's necessary to identify some parties involved here, I decline to name-and-shame all of the lawyers in this order.  They know who they are, and don't need further notoriety here.

[4]     Copies of the Original Brief and the Revised Brief (identified as Versions 1 and 3 in my initial OSC) are attached in the Appendix.  I've marked the bogus citations in both briefs in red.  I noted that there was an intervening iteration of the brief submitted to me that contained the bogus AI research and an odd

(continued. . .)

3

e-mail thanking me for catching the two errors that were "inadvertently included" in the brief, and confirming that the citations in the Revised Brief had been "addressed and updated."

9.    ==I didn't discover that Plaintiff's lawyers used AI – and re-submitted the brief with considerably more made-up citations and quotations beyond the two initial errors – until I issued a later OSC soliciting a more detailed explanation.  The lawyers' sworn statements and subsequent submission of the actual AI-generated "outline" made clear the series of events that led to the false filings.  The declarations also included profuse apologies and honest admissions of fault.==

10.    I subsequently set the matter for a hearing on the OSC.  My April 20 order gave the parties notice of the specific types of sanctions and fee-shifting awards that I was considering based on Federal Rule of Civil Procedure 11 and 37, along with my inherent (and Court-delegated) authority.  Plaintiff's lawyers responded to the OSC and addressed me during our recent hearing.  I also received a submission from the defense estimating the cost of the preparation of their brief on the privilege issue.  This order follows.

**RELEVANT LEGAL AUTHORITY**

11.    The district court's order appointing me as Special Master authorized me to "take all appropriate measures to perform the assigned duties fairly and efficiently."  I possess the Court's authority to "regulate all proceedings" before me pursuant to the Federal Rules of Civil Procedure.  This expressly includes the ability to impose "any noncontempt sanction provided by Rule 37" or other authority.  (Docket # 70.)

---

typographical error in one of the challenged citations.  I don't understand the significance of that additional submission, but I don't believe that it adds much to the sanctions analysis.

## ANALYSIS

17.     I conclude that the lawyers involved in filing the Original and Revised Briefs collectively acted in a manner that was tantamount to bad faith.  Fink, 239 F.3d at 994.  The initial, undisclosed use of AI products to generate the first draft of the brief was flat-out wrong.  Even with recent advances, no reasonably competent attorney should out-source research and writing to this technology – particularly without any attempt to verify the accuracy of that material.  And sending that material to other lawyers without disclosing its sketchy AI origins realistically put those professionals in harm's way.  Mr. Copeland candidly admitted that this is what happened, and is unreservedly remorseful about it.

18.     Yet, the conduct of the lawyers at K&L Gates is also deeply troubling.  They failed to check the validity of the research sent to them.  As a result, the fake information found its way into the Original Brief that I read.  That's bad.  But, when I contacted them and let them know about my concerns regarding a portion of their research, the lawyers' solution was to excise the phony material and submit the Revised Brief – still containing a half-dozen AI errors.  Further, even though the lawyers were on notice of a significant problem with the legal research (as flagged by the brief's recipient: the Special Master), there was no disclosure to me about the use of AI.  Instead, the e-mail transmitting the new brief merely suggested an inadvertent production error, not improper reliance on technology.  Translation: they had the information and the chance to fix this problem, but didn't take it.  Cohen, 724 F.Supp.3d at 259.

19.     I therefore conclude that (a) the initial undisclosed use of AI, (b) the failure to cite-check the Original Brief, and (perhaps most egregiously), (c) the re-submission of the defective Revised Brief without adequate

disclosure of the use of AI, taken together, demonstrate reckless conduct with the improper purpose of trying to influence my analysis of the disputed privilege issues.  The Ellis George and K&L Gates firms had adequate opportunities – before and after their error had been brought to their attention – to stop this from happening.  Their failure to do so justifies measured sanctions under these circumstances.

20.    Those sanctions are as follows.  I have struck, and decline to consider, any of the supplemental briefs that Plaintiff submitted on the privilege issue.  From this, I decline to award any of the discovery relief (augmenting a privilege log, ordering production of materials, or requiring in camera review of items) that Plaintiff sought in the proceedings that led up to the bogus briefs.  I conclude that these non-monetary sanctions will suffice to "deter repetition of the conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4).  If the undisclosed use of AI and the submission of fake law causes a client to lose a motion or case, lawyers will undoubtedly be deterred from going down that pointless route.[5]

21.    The district judge's order appointing me initially required Defendant to pay the costs of the Special Master.  However, that order expressly authorized me to shift fees when I deemed appropriate. (Docket # 70 at ¶ 7.)  It's certainly appropriate here.  I've calculated that the fees for dealing with this issue (reviewing the various iterations of the defective briefs, issuing various orders and reviewing the responses, conducting the OSC hearing, and issuing this sanctions order) were approximately $26,100 (including service fees from the provider).  Because

---

[5]    At our recent hearing, Mr. Copeland movingly asserted that neither he nor his colleagues would engage in similar conduct in the future; exposure of these events was therefore sufficient to deter them from doing this again.  I completely agree.  But under the Rule, I also have to consider the goal of deterring other members of the legal community.  In my estimation, more is required.

1  this issue. The lawyers told me at the hearing that they already disclosed this

2  information to their client; that's sufficient for me. I recognize that

3  Mrs. Lacey is clearly not at fault for the AI debacle, but will bear this outcome

4  as a consequence of her lawyers' actions. She will <u>not</u>, however, be financially

5  responsible for the monetary awards described in this order. Those will fall

6  solely on the lawyers and their firms.

7      25.    In a further exercise of discretion, I decline to order any sanction

8  or penalty against any of the individual lawyers involved here. In their

9  declarations and during our recent hearing, their admissions of responsibility

10 have been full, fair, and sincere. I also accept their real and profuse apologies.

11 Justice would not be served by piling on them for their mistakes.

12 **CONCLUSION**

13     A final note. Directly put, Plaintiff's use of AI affirmatively misled me.

14 I read their brief, was persuaded (or at least intrigued) by the authorities that

15 they cited, and looked up the decisions to learn more about them – only to find

16 that they didn't exist. That's scary. It almost led to the scarier outcome (from

17 my perspective) of including those bogus materials in a judicial order. Strong

18 deterrence is needed to make sure that attorneys don't succumb to this easy

19 shortcut.

20     For these reasons, Plaintiff's supplemental briefs are struck, and no

21 further discovery relief will be granted on the disputed privilege issue.

22 Additionally, Plaintiff's law firms are ordered (jointly and severally) to pay

23 compensation to the defense in the aggregate amount of $31,100.

24

25 Dated: May 5, 2025                    /s/ Judge Wilner

26                                     _____

27                                     HON. MICHAEL R. WILNER
                                       U.S. MAGISTRATE JUDGE (RET.)
28                                     SPECIAL MASTER

## APPENDIX OF MATERIALS

1.      Special Master's Order to Show Cause re: Sanctions (April 15, 2025).

2.      Special Master's Notice of Intended Sanctions and Fee Orders (April 20, 2025).

3.      Plaintiff's Brief in Support of Obtaining Relevant, Non-Privileged Documents from Defendant (Original Brief, as marked by Special Master) (filed April 14, 2025).

4.      Plaintiff's Brief in Support of Obtaining Relevant, Non-Privileged Documents from Defendant (Revised Brief, as marked by Special Master) (filed April 14, 2025).

5.      E-mail transmitting Revised Brief to Special Master (April 14, 2025).

6.      Declaration of Trent Copeland (filed April 18, 2025) plus a version of the AI outline sent to K&L Gates (referenced in declaration, received separately).

7.      Declaration of Ryan Keech (filed April 18, 2025).

8.      Declaration of Keian Vahedy (filed April 18, 2025).

9.      Plaintiff's Response to Special Master's Notice of Intended Sanctions and Fee Orders.

Appendix 7

1  ELLIS GEORGE LLP
   Eric M. George (SBN 166403)
2    egeorge@ellisgeorge.com
   Trent Copeland (SBN 136890)
3    tcopeland@ellisgeorge.com
   2121 Avenue of the Stars, 30th Floor
4  Los Angeles, California 90067
   Telephone: (310) 274-7100
5  Facsimile:  (310) 275-5697

6  K&L GATES LLP
   Ryan Q. Keech (SBN 280306)
7    Ryan.Keech@klgates.com
   Kevin S. Asfour (SBN 228993)
8    Kevin.Asfour@klgates.com
   Keian Vahedy (SBN 316708)
9    Keian.Vahedy@klgates.com
   10100 Santa Monica Blvd., 8th Floor
10 Los Angeles, California 90067
   Telephone: (310) 552-5000
11 Facsimile:  (310) 552-5001

12 Attorneys for Plaintiff JACQUELYN
   "JACKIE" LACEY, in her individual
13 capacity; and JACQUELYN "JACKIE"
   LACEY as trustee of the D and J Lacey
14 Family Trust dated November 23, 2016

15

16              UNITED STATES DISTRICT COURT

17        CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

18 JACQUELYN "JACKIE" LACEY,          Case No. 2:24-cv-05205-FMO-MAA
   in her individual capacity; and
19 JACQUELYN "JACKIE" LACEY           *Judge: Fernando M. Olguin*
   as trustee of the D and J Lacey Family
20 Trust dated November 23, 2016,     **DECLARATION OF RYAN Q.**
                                      **KEECH IN RESPONSE TO THE**
21           Plaintiffs,              **SPECIAL MASTER'S ORDER TO**
                                      **SHOW CAUSE RE: SANCTIONS**
22      vs.

23

24 STATE FARM GENERAL
   INSURANCE COMPANY, an Illinois
25 corporation, and DOES 1-50, inclusive,

26      Defendants.

27

28
   _____
   **DECLARATION OF RYAN Q. KEECH IN RESPONSE TO THE SPECIAL MASTER'S**
   **ORDER TO SHOW CAUSE RE: SANCTIONS**

## DECLARATION OF RYAN Q. KEECH

I, Ryan Q. Keech, declare as follows:

1.     I am an attorney licensed to practice law in this court and all courts of the State of California.  I am a partner at the law firm of K&L Gates LLP, attorneys of record for Plaintiffs Jacquelyn "Jackie" Lacey and Jacquelyn "Jackie" Lacey as trustee of the D and J. Lacey Family Trust Dated November 23, 2016 (collectively, "Plaintiff"), in this action.

2.     I submit this Declaration pursuant to the Special Master's April 15, 2025 Order to Show Cause re: Sanctions (the "OSC").  I have personal knowledge of each of the matters set forth herein, and would testify competently thereto if called upon to do so.

3.     To begin, I have the utmost faith in and respect for the professional conduct and integrity of Mr. Copeland and his firm – with whom I have had the great privilege of working and from whom I have had the great privilege of learning as a partner and as co-counsel for years.  His and their professionalism and ethics are beyond reproach.

4.     As described herein, Mr. Copeland and Mr. Vahedy have been primarily responsible for the briefing associated with the privilege issue addressed by the Court on April 7, 2025.  I had limited involvement in the preparation and did not sign, file or provide final approval of the contents of any of the three versions of the brief addressed in the OSC prior to filing.

5.     However, I understand and take seriously the critical importance of accuracy in case citations in order for the process to function and know that my colleagues and co-counsel have a similar view.  I apologize that these versions of the brief contained the inaccuracies initially identified by the Special Master, apologize further that I did not personally catch and correct those inaccuracies, and respectfully request, because – as discussed herein and as confirmed by the declarations of my

DECLARATION OF RYAN Q. KEECH IN RESPONSE TO THE SPECIAL MASTER'S
ORDER TO SHOW CAUSE RE: SANCTIONS