```
 1                    UNITED STATES DISTRICT COURT

 2           CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3

 4  ARJUN VASAN,                      ) Case No.  LA CV 25-00765-
                                      )                 MEMF-(JPRx)
 5          Plaintiff,                )
                                      )
 6  vs.                               ) Los Angeles, California
                                      )
 7  CHECKMATE.COM, INC.,              ) Thursday, June 5, 2025
                                      )
 8          Defendant.                ) (11:11 a.m. to 11:32 a.m.)
   _____)
 9
           TRANSCRIPT OF DEFENDANT'S MOTION TO DISMISS [18]
10         PLAINTIFF'S MOTION FOR LEAVE TO FILE SUR-REPLY [48]
          BEFORE THE HONORABLE MAAME EWUSI-MENSAH FRIMPONG
11                    UNITED STATES DISTRICT JUDGE

12

13 Appearances:                  See next page.

14 Court Reporter:               Recorded; CourtSmart

15 Courtroom Deputy:             Damon Berry

16 Transcribed by:               Chinago Okonta
                                 Echo Reporting, Inc.
17                               9711 Cactus Street, Suite B
                                 Lakeside, California 92040
18                               (858) 453-7590

19

20

21

22

23

24

25 Proceedings recorded by electronic sound recording;
   transcript produced by transcription service.
```

*Echo Reporting, Inc.*

```
                                                                    2

 1   APPEARANCES:

 2   For the Plaintiff:           AUJUN VASAN, PRO SE
                                  12615 193rd Street
 3                                Cerritos, California 90703
                                  (562) 900-6541
 4
     For the Defendant:           BRIAN GABRIEL M. HUEY, ESQ.
 5                                STACEY G. CHIU, ESQ.
                                  K & L Gates, LLP
 6                                10100 Santa Monica Boulevard
                                  Floor 8
 7                                Los Angeles, California 90067
                                  (310) 552-5000
 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

*Echo Reporting, Inc.*

1  <u>Los Angeles, California; Thursday, June 5, 2025 11:11 a.m.</u>
2                              --o0o--
3                         (Call to order.)
4           THE CLERK:  Now calling item number 6, case number
5  LACV25-00765, Arjun Vasan versus Checkmate.com,
6  Incorporated.
7           Counsel, please stand and state your appearances,
8  starting with Plaintiff.
9           MR. VASAN:  Hi, I'm Arjun -- hi, your Honor.  I'm
10 Arjun Vasan, appearing Plaintiff pro se.
11          MR. HUEY:  Gabriel Huey of K and L Gates on behalf
12 of Defendant.
13          THE COURT:  Thank you.
14          MS. CHIU:  Stacey Chiu of K and L Gates on behalf
15 of Defendant as well.
16          THE COURT:  Thank you.
17          Did the parties receive the Court's tentative?
18          MR. VASAN:  Yes, your Honor.
19          THE COURT:  Okay.  Since it's the Defense motion,
20 I will let the Defense be heard.  And I'll give the parties
21 10 minutes each for their argument.
22          MR. HUEY:  Thank you, your Honor.
23          Your Honor, on footnote three of your tentative
24 ruling, you've asked for an explanation as to why
25 Checkmate's Counsel did not meet and confer more than seven

1 days in advance of the filing of the motion to dismiss or
2 transfer.  So I would like to address that point first.
3          THE COURT:  Thank you.
4          MR. HUEY:  Your Honor, I'm lead counsel for this
5 matter, and I apologize for the oversight, and the
6 responsibility lies with me.
7          In March of 2025 when I was brought onto this case
8 and shortly before the motion to dismiss and transfer was
9 filed, my wife and I were expecting our first child, but we
10 ended up losing the baby.
11          THE COURT:  I'm sorry to hear that, Counsel.
12          MR. HUEY:  Thank you.  So -- and I was sick and
13 out of the country mourning that loss in March.  When I
14 realized that we had not reached out to Mr. Vasan to meet
15 and confer more than seven days in advance of the filing, I
16 asked my colleague, Ms. Chiu, to do so, which she did.  When
17 she reached out to Mr. Vasan, Mr. -- they met and conferred
18 in full regarding the substance of the anticipated motion to
19 dismiss and transfer.
20          It was clear, based on the meet and confer call
21 with Mr. Vasan, that the parties were at an impasse.  If
22 that were not the case, your Honor, Ms. Chiu would have
23 requested an extension of time to file the responsive
24 pleading to Mr. Vasan's complaint.  But that did not seem
25 useful, given that it was clear that Mr. Vasan had no

1  intention of transferring -- dismissing his case or
2  transferring it to New York in accordance with the forum
3  selection clause in the merger agreement and the
4  non-competition agreement.
5           THE COURT:  Thank you.
6           MR. HUEY:  We wanted to address two main points in
7  your Honor's tentative ruling.
8           The first concerns the Court's tentative ruling
9  with regard to California Labor Code Section 925.  The
10 general rule is that an employee cannot invalidate an
11 out-of-state forum selection clause under Section 925 unless
12 that employee primarily resides and works in California, the
13 forum selection clause was not a condition of employment,
14 and, three, the employee is not individually represented by
15 counsel in negotiating the agreement containing the forum
16 selection clause.
17          I would like to focus your Honor in on two points.
18 Putting aside whether Mr. Vasan primarily resided and work
19 in California, the first point relates to the condition of
20 employment.  As that term is used in the statute, your
21 Honor, the crux is the employee's ability to negotiate terms
22 in the contract with the forum selection clause.
23          The tentative ruling on page 13, lines 19 through
24 page 14, line two finds that it is logical to construe the
25 merger agreement as a condition of employment.  That

1  language in the tentative ruling, your Honor, incorrectly
2  focuses on the merger agreement and not the forum selection
3  clause.  The issue is whether the forum selection clause was
4  a condition of the employee's employment, not the merger
5  agreement itself.  But that said, the merger agreement
6  provides -- and the other related documents provide context
7  to whether or not the forum selection clause was a condition
8  of Mr. Vasan's employment with Checkmate.
9          Checkmate cited Kem in its briefing, your Honor,
10 as an analogous case to the circumstances that we have here.
11 Footnote 20 of your Honor's tentative states, "The Court
12 finds Kem v. Strike Advisory, LLC, relied on by Checkmate,
13 distinguishable," and then provides a citation in
14 parenthetical to Kem.  But there is no explanation from the
15 Court as to why it finds Kem distinguishable.  And we would
16 submit to the Court that Kem is not distinguishable from
17 this case.  And the reason for that is because in Kem, the
18 plaintiff was the vice president of Strike Advisory.  He was
19 negotiating -- he was negotiating an agreement that would
20 lead to his promotion from vice president to president.  In
21 that agreement, he negotiated compensation terms, including
22 commission and equity.  The court held that the plaintiff in
23 that case, that -- excuse me, the court held that the forum
24 selection clause in that case was not a condition of the
25 plaintiff's employment with Strike Advisory.  That is

1  analogous to what we have here.  Mr. Vasan was the founder
2  and CTO of VoiceBite.  In connection with that transaction
3  -- in connection with Checkmate's acquisition of VoiceBite,
4  Mr. Vasan negotiated a position with Checkmate as VP of AI
5  Technology.  In addition to that, as explained by Mr.
6  Agarwal in his declaration, Mr. Vasan negotiated IP terms,
7  licensing terms, reimbursement terms, open source code, and
8  compensation terms.  This is undisputed by Mr. Vasan.
9           Additionally, your Honor, I would point you to the
10 declaration that Mr. Vasan filed at the New York action.
11 Checkmate filed a request for judicial notice last night,
12 your Honor, requesting judicial notice of that declaration.
13 The reason for that is because the declaration that Mr.
14 Vasan filed in the New York action that was submitted under
15 penalty of perjury admits that the primary founders of
16 VoiceBite were Robert Nessler, the CEO, Christopher Lam, the
17 COO, and Mr. Vasan, the CTO.  And this is a direct quote,
18 your Honor, "We jointly negotiated the deal with full
19 transparency and advice of counsel."  Mr. Vasan's admissions
20 that he negotiated deal terms as set forth in the merger
21 agreement, as well as his title, the fact that he was the
22 founder of VoiceBite, shows that this was not a contract
23 that was forced upon Mr. Vasan.  Mr. Vasan had the ability
24 and, in fact, did negotiate specific terms in the merger
25 agreement.  He had the ability to negotiate the forum

1  selection clause.  He chose not to.  That forum selection
2  clause is binding on him, your Honor, because it was not a
3  condition of his employment with Checkmate.
4          The second point that we want to make, your Honor,
5  with regard to Labor Code Section 925.  The exception in
6  Labor Code Section 925, Subsection E states that where an
7  employee is individually represented by counsel in
8  negotiating the terms of an agreement that contains an
9  out-of-state forum selection clause, the employee cannot
10 invalidate the forum selection clause based on this Labor
11 Code section.
12         The key term here, your Honor, is "individually
13 represented," and, unfortunately, there's not a lot of case
14 law out there interpreting this term as it is used in this
15 statute.  However, the key here, based on the case law that
16 we do have, which we have cited to the Court in our moving
17 papers, which is Kem, and our reply brief, which is Perry
18 (phonetic), the key in determining what constitutes
19 individual representation is that the employee, in this case
20 Mr. Vasan, has separate counsel from Checkmate, the
21 employer.  Whether Mr. -- the Court's tentative ruling
22 focuses on whether or not Mr. Vasan had separate counsel
23 from VoiceBite.  But that is immaterial.  Mr. Vasan admits
24 that he and his co-founders, as well as VoiceBite, had
25 counsel in connection with the negotiation of the merger

9

agreement with Checkmate.  There is no dispute --

THE COURT:  And, Counsel, your time is up.  I should have asked you if you wanted to reserve any time for rebuttal.  But let's turn to Mr. Vasan at this time.  Thank you.

MR. VASAN:  Thank you, your Honor, for the opportunity to speak.  I'm, of course, content with the tentative ruling and will only briefly address Defendant's new arguments.  Of course happy to answer any questions.

Defendant now seeks judicial notice of what it calls "admissions" in the related New York case.  I would note that only last week, Defendant not only opposed, but actually moved to strike my own request for judicial notice of events in that case, insisting that the two cases were entirely separate.

I agree with Defendant's latest position.  The cases are certainly related.  The New York Defendant seeks a declaration that would disentitle me from what I am earned (sic) and owed.  That's the very same compensation that I seek in this Court.  In California, that is called wage theft.  The real question is whether Defendant can agree with itself from week to week.  That said, I welcome judicial notice of these filings.  As usual, I have no objection.  These filings simply confirm the consistency of my position.  From my original complaint onwards, I have

1 made clear that VoiceBite was represented by corporate
2 counsel, never the founders by individual counsel, and that
3 Defendant's interference in VoiceBite's corporate counsel
4 relationship was itself coercive.
5         I draw the Court's attention to paragraphs six,
6 seven, 10, 11, 19, and 20 of my declaration, to better
7 understand the tenor of the negotiations.
8         THE COURT:  The declaration that they're seeking
9 judicial notice of?  Okay.
10         MR. VASAN:  Correct.  If you want me to repeat the
11 numbers, I'm happy to do so, your Honor.
12         THE COURT:  No, I have them.  Thank you.
13         MR. VASAN:  This is not an arm's length commercial
14 transaction.  This is an acquihire executed under real
15 duress.
16         THE COURT:  And I must admit I don't know what you
17 mean by acquihire.
18         MR. VASAN:  Oh, sorry.  An acquihire in startup
19 community or technology community is when a company is
20 essentially buying your company for the employees.
21         THE COURT:  Understood.
22         MR. VASAN:  So in our case, it's not like -- we
23 were two months old.  We weren't, let's say, five years with
24 significant amount of, you know, built up technology or any
25 business.  We had no customers, no revenue.  So they were

                                                                  11

1  buying us for our team, essentially.  That's an acquihire.
2           THE COURT:  Thank you.
3           MR. VASAN:  If Defendant is content to treat my
4  declaration as factually accurate, then the record is clear,
5  we did not have individual representation and we hardly had
6  proper corporate representation, and thus the protections of
7  Section 925 apply.
8           THE COURT:  And when you say you did not have
9  proper corporate representation, what do you mean?
10          MR. VASAN:  So if you read paragraphs -- the
11 paragraphs I mentioned -- unfortunately, I don't have it on
12 me -- you will see that -- so, basically, indeed the same
13 filing has an exhibit, Exhibit U to the declaration, and
14 that's a screenshot of Michael Bell pressuring us to fire
15 Mr. Foster.  And this is a constant theme.  They were always
16 pushing back anytime that we were trying to negotiate.  And
17 our lawyer would step in and tell us, "Hey, this is not a
18 good idea."  Bell and Agarwal, especially Mr. Bell, would
19 step in and basically try to -- you know, override our own
20 counsel and, in fact, split the co-founders in doing so.  So
21 -- yeah, so that's what I mean by we did not have proper
22 corporate counsel --
23          THE COURT:  And I'm not sure that I understand.
24 The fact that they were pressuring you to fire your
25 attorney --

*Echo Reporting, Inc.*

1          MR. VASAN:  Uh-huh.
2          THE COURT:  -- how does that show that you didn't
3   have a proper attorney?
4          MR. VASAN:  It -- just because it divided the
5   team.  And then on April 27th, 2024, our attorney actually
6   resigned and basically complained about the ethical conduct
7   of Checkmate.  So three days before closing, we had to, you
8   know, really search and find a new attorney.  That new
9   attorney did not have the history of the deal in his mind.
10  You know, we kind of went into the deal with our eyes closed
11  and, you know, hopes that Checkmate was going to -- was
12  acting in good faith.
13         THE COURT:  And a question about that, because it
14  would seem, for 925 purposes, the Court is not looking at
15  whether your attorney did a good job for you or anything of
16  that nature.  If you had an attorney, the Court is going to
17  assume that that attorney was acting in your best interests.
18         MR. VASAN:  Uh-huh.
19         THE COURT:  So I'm not sure that -- so I don't
20  know if there's anything else you want to add on that --
21         MR. VASAN:  Yeah.  I want --
22         THE COURT:  -- issue?
23         MR. VASAN:  -- I want to -- I'm sorry, your Honor.
24  Sorry to interrupt you.
25         THE COURT:  No, it's okay.  Go ahead.

1        MR. VASAN:  The main point I would make is the
2   word "individual" -- "in fact" and "individual."  Now, it is
3   not -- so your Honor cited, I think, La Jolla Cove Shore,
4   which is definitely one of the cases in California, but
5   there are several, you know, cases in California.  And one
6   of the -- one of the points that Defendant counsel makes is
7   that there aren't a lot of cases on the application of that
8   word in the context of 925.  So if there aren't -- if there
9   isn't significant precedent, it's my understanding that
10  courts will look to the plain language of the statute.  So
11  now we look at the plain language of the statute, and it
12  says very clearly "in fact, individual."  So the real
13  question are what do those words mean?  Individual
14  representation is well -- I mean, well studied by courts and
15  academics, and I have several cases in my surreply,
16  including the La Jolla Cove Motel vs. Superior Court, but
17  also Commodity Futures Trading v. Weintraub, and all the way
18  up to the Supreme Court, Upjohn Company vs. United States,
19  that's a 1981 case which shows that you need undivided
20  loyalty and continued access to legal advice.
21       Now, this is very critical.  So if you look at
22  Exhibit G.3 of my declaration, it's a formal letter sent to
23  me by the K and L Gates general counsel, Charles Tea, which
24  I previously requested notice of.  And Mr. Tea states, I
25  quote,

14

1        "Any pre-closing communications you and
2        others had with counsel for VoiceBite
3        belong to VoiceBite, which is now owned
4        by our client, Checkmate, and as is any
5        privilege that previously belonged to
6        VoiceBite."
7        So I would submit that this assertion forecloses
8   Defendant's argument that I was in any way in fact and
9   individually represented by counsel in negotiating the terms
10  of the agreement.
11       One final point.  They talked about -- the
12  Defendant mentioned the negotiation of the forum selection
13  clause.  If this provision was truly bargained for, as
14  Defendant claims, one would have expected Defendant to
15  produce even one mention as evidence, whether that is in
16  negotiations, e-mails, even between the founders, or
17  correspondence between counsel.
18       THE COURT:  Well, to be fair, he's saying you
19  could have negotiated it and you didn't, and that's on you.
20       MR. VASAN:  I understand that's his position.  I
21  wasn't aware of it.  The only clause that I was aware of
22  related to that was the Delaware choice of law clause that
23  was applied to the non-competition agreement.  And, in fact,
24  one of Defendant's other exhibits actually shows that -- you
25  know, that meeting of the minds sort of document where they

1  -- it essentially outlines, like, what are the key, you
2  know, terms remaining in the deal?  And amongst those key
3  terms was the Delaware choice of law for a non-compete.  And
4  this was non-negotiable.  These are the words of the CEO.
5  The words he used were, "This is non-negotiable.  We have to
6  use Delaware law."  Nothing was ever mentioned about the
7  forum selection clause.
8          So -- again, I don't believe that these filing --
9  that these filings or any statements that I made in there --
10 and, in fact, I've talked at length about our relationship
11 with the VoiceBite corporate counsel in my complaint.  And,
12 you know, the -- it's very, very much at the core of my
13 allegations.
14         So I think as the Court's tentative ruling
15 recognizes, the agreements were executed together.  Each was
16 contingent on each other.  No founder was offered
17 alternative employment separate from the merger, hence it
18 was a condition of employment.  There was no other option
19 for us.
20         So I don't believe that these arguments alter the
21 legal or factual analysis in the Court's tentative ruling,
22 which, you know, I respectfully submit should stand.
23         THE COURT:  Thank you.
24         MR. VASAN:  Nothing further.
25         THE COURT:  Thank you.

```
                                                              16
 1          MR. HUEY:  Your Honor, may I make a few points in
 2  rebuttal?
 3          THE COURT:  No, you've used up your time, and we
 4  have to move on.  But thank you.
 5      (Proceedings concluded.)
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/Chinago Okonta                    7/08/2025
Transcriber                          Date

FEDERALLY CERTIFIED TRANSCRIPT AUTHENTICATED BY:

/s/L.L. Francisco
L.L. Francisco, President
Echo Reporting, Inc.