Arjun Vasan

12615 193rd Street

Cerritos, CA 90703

(562) 900-6541

arjun.vasan@gmail.com

Plaintiff In Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>CHECKMATE.COM, INC<br>(dba "Checkmate"),<br><br>　　　　　　　Defendant. | Case No.:  2:25-CV-00765-MEMF-JPR<br><br>**PLAINTIFF'S NOTICE OF DEFENDANT'S CONTINUED RETALIATION AGAINST AND INTIMIDATION OF KEY WITNESSES AND DECLARATION OF ARJUN VASAN** |

**TO THE HONORABLE COURT:**

　　　Plaintiff and Counter-Defendant Arjun Vasan respectfully submits this Notice to apprise the Court of a grave and ongoing pattern of **retaliation and witness intimidation** by Defendant Checkmate.com, Inc. ("Checkmate") and its counsel, K&L Gates LLP. Such conduct does not merely prejudice an individual litigant—it threatens the integrity of these proceedings and the Court's fundamental duty to discover truth through unimpeded testimony. Justice demands that the voice of every witness be heard, not silenced through reprisal.

## I. RETALIATION AND WITNESS INTIMIDATION: HOLDER REPRESENTATIVE

On **July 25, 2025**, Robert Nessler—former CEO and cofounder of VoiceBite, current VP, AI Operations at Checkmate, and the appointed Holder Representative for all VoiceBite shareholders—submitted a declaration in support of Plaintiff's post-dismissal sanctions motion in the related Southern District of New York action. This declaration, attached hereto as **Exhibit A**, was transmitted to the SDNY pro se filing address late on Friday, July 25, 2025, with defense counsel copied, and was not docketed until the next business day (Monday, July 28). Yet, on Sunday, July 27, 2025—**before public docketing**—Checkmate's CEO, Vishal Agarwal, abruptly cancelled all of Mr. Nessler's weekly scheduled one-on-one meetings. On information and belief, management learned of the declaration not from any public source, but directly from defense counsel.

Mr. Nessler's declaration is neither inflammatory nor defamatory. His testimony is strictly factual, recounting contemporaneous events and contractual terms, and was offered solely to clarify the historical record before the SDNY Court. Critically, Mr. Nessler submitted this declaration not merely in his personal capacity, but as **Holder Representative** pursuant to § 9.1 of the merger agreement, thereby acting on behalf of all pre-closing VoiceBite equity holders—including Christopher Lam, Paul Garcia, Isamu Aoki, and Plaintiff himself.[1]

Accordingly, Mr. Nessler's sworn declaration *carries the same legal force and effect as if each pre-closing shareholder had testified directly*. Any attempt to punish, intimidate, or chill his lawful participation is, in substance and effect, an effort to silence the collective voice of the entire group, and to obstruct the mechanism by which their rights are presented to the Court.

Importantly, Mr. Nessler's declaration—while originally submitted in support of Plaintiff's motion for post-dismissal sanctions in the related New York action—also directly undermines and discredits the counterclaim filed in this Court. Defendant's counterclaim here is a nearly verbatim copy of the same pleading dismissed in New York, now refuted by the sworn testimony of the very Holder Representative designated to speak for all pre-closing shareholders.

---

[1] The declaration was reviewed and expressly approved by **Christopher Lam** and **Grant Thomas** (shareholder counsel), ensuring it reflects the **unified position of all three primary founders** (Nessler, Lam, and Vasan) and the team.

In addition to these adverse employment actions, Checkmate's Chief of Strategy, **Michael Bell,** and CEO**, Vishal Agarwal,** recently threatened both Mr. Nessler and Mr. Lam that communications with Plaintiff could and would be subpoenaed, as attested in Plaintiff's attached declaration. The clear and unambiguous intent of these threats was to chill cooperation, deter testimony, and intimidate witnesses from engaging in lawful participation in this litigation.

Such conduct—threatening to subpoena internal communications, privileged under common interest doctrine, solely for the purpose of deterring witness cooperation—constitutes classic witness intimidation and unlawful retaliation. It is fundamentally incompatible with the Court's truth-seeking function and with the ethical obligation not to obstruct evidence or intimidate witnesses.

This is not an isolated lapse. Rather, it exemplifies the deeply ingrained retaliatory culture at Checkmate that is at the very heart of Plaintiff's operative complaint. The targeted reprisal against Mr. Nessler, acting in fulfillment of his obligations as Holder Representative, vividly demonstrates how Checkmate's leadership and counsel respond to lawful participation in the judicial process: not with respect for the rule of law, but with intimidation and punishment. Such episodes are not only symptoms of a broader pattern, but their culmination—efforts to subvert the fair administration of justice through coercion and fear, rather than reasoned argument and evidence.

## II. PRIVILEGE IMPLICATIONS & PRESERVATION

Plaintiff notes, <u>without seeking relief at this time</u>, that the above events raise significant privilege and work-product concerns that may warrant judicial scrutiny:

- **Common Interest Privilege:** As Holder Representative, Mr. Nessler's communications with Plaintiff and other founding shareholders are privileged and protected under the common-interest doctrine and *are not subject to subpoena or discovery by Checkmate*.
- **Business vs. Legal Advice:** Communications are privileged only if their primary purpose is legal. If Checkmate's counsel facilitated retaliation by relaying witness declarations and catalyzing adverse employment action, such communications are not privileged.
- **Crime–Fraud Exception:** Privilege does not shield communications made to further witness intimidation, fraud or retaliation. A continued pattern may warrant in camera review. See, e.g., *United States v. Zolin*, 491 U.S. 554 (1989); Cal. Evid. Code § 956.

- **At-Issue Waiver:** Should Checkmate invoke advice of counsel to justify actions toward witnesses, privilege on that subject will be waived.
- **Preservation:** Plaintiff expects all relevant emails, messages, and records to be preserved and will seek appropriate remedies if they are not.

Plaintiff places Defendant and their counsel *on notice* that continued conduct of this kind will compel him to seek appropriate measures—including in camera review, targeted discovery, and sanctions—to protect witnesses and the integrity of these proceedings.

### III. CONCLUSION

Plaintiff files this Notice to create a clear and contemporaneous record of retaliation and interference with witnesses—acts that threaten not only the rights of individuals, but the very rule of law and authority of this Court. Plaintiff expressly reserves all rights to seek targeted remedies, including sanctions, protective measures for witnesses and testing of privilege assertions.[2]

### IV. DECLARATION OF ARJUN VASAN

I, Arjun Vasan, declare:

1. **On or about July 20, 2025,** I received a text message from Robert Nessler (VP, AI Operations at Checkmate and former CEO/cofounder of VoiceBite), and subsequently spoke with him by phone, in which Robert informed me that Michael Bell (Chief of Strategy) and Vishal Agarwal (CEO) had threatened both him and fellow VoiceBite cofounder Christopher Lam that any communications related to this dispute between myself, Mr. Nessler, and Mr. Lam would be subpoenaed by Checkmate. It was clear from the context that the purpose of these threats was to deter Mr. Nessler and Mr. Lam from cooperating with me in this litigation and to intimidate them from participating as witnesses.

2. Prior to this, I have, in numerous emails alerted Checkmate's counsel that Mr. Nessler and Mr. Lam are represented parties with regards to this dispute, and that any related contact must proceed through shareholder counsel Grant Thomas.

---

[2] Plaintiff previously placed Defendant and this Court on explicit notice of these risks and their context. In his **Notice of Intent to Submit Witness Declarations and Defendant's Representations Concerning Retaliation Risk** (see ECF No. 39, April 21, 2025), Plaintiff not only warned of the potential for retaliation—especially against Mr. Lam and Mr. Nessler—but also quoted Defendant's own counsel, who expressly assured the Court that such concerns were "entirely speculative".

3. **On July 25, 2025,** Mr. Nessler filed a declaration in support of my post-dismissal sanctions motion in the related Southern District of New York case. I participated in drafting this declaration. Mr. Lam reviewed and made suggestions, which were incorporated. Mr. Thomas also reviewed the declaration with me and Mr. Nessler by phone and approved it for filing. The motion, including Mr. Nessler's declaration, was transmitted via email to the SDNY pro se filing address, with defense counsel copied out of courtesy.

4. **On July 27, 2025,** Mr. Nessler informed me and the other pre-closing holders via text message that Vishal Agarwal had cancelled their weekly one-on-one meetings. Based on my personal knowledge, this action occurred before Mr. Nessler's declaration was publicly docketed, and shortly after it was transmitted to the court and defense counsel.

5. **On July 28, 2025,** the sanctions motion and Mr. Nessler's Declaration were docketed in the SDNY case (**ECF No. 58** in Case No. **1:25-cv-03181-JM**). A true and correct copy of the executed Declaration is attached as Exhibit A.

6. I have retained copies of the relevant text messages and am prepared to produce them to the Court if requested. I understood the threats and subsequent cancellation of meetings to be part of a pattern of conduct intended to chill lawful cooperation and participation in this litigation by key witnesses, including and especially Mr. Nessler and Mr. Lam.

7. *I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing statements are true and correct.*

**Respectfully Submitted**,

Executed on **August 4, 2025**     */s/ Arjun Vasan*

In **Laguna Hills, CA**

**Arjun Vasan**

Plaintiff In Pro Per

5

# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- X
CHECKMATE.COM, INC.,

      Plaintiff,

                 25-CV-03181 (JMF)

                DECLARATION OF ROBERT NESSLER
                IN SUPPORT OF DEFENDANT'S
 -against-           MOTION FOR POST-DISMISSAL COSTS,
                FEES AND SANCTIONS

ARJUN VASAN,

      Defendant.
------------------------------------------------------- X

I, **Robert Nessler**, declare as follows:

**Capacity and Authority**

1. I am over 18 years of age, competent to testify, and the Holder Representative designated pursuant to Section 9.1 of the Merger Agreement dated April 30, 2024, between Checkmate.com, Inc. ("Checkmate") and VoiceBite Corporation. ("VoiceBite"). I submit this declaration in my official capacity as Holder Representative, fully authorized and empowered to act and speak on behalf of all pre-closing equity holders and founding team members of VoiceBite, including myself, Arjun Vasan, Christopher Lam, Isamu Aoki, and Paul Garcia, as expressly provided in the Merger Agreement.

**Contradictions in Amended Complaint Allegations**

-1-

2. **Paragraph 1 (***"No matter what" and Alleged Fraudulent Intent***)**

    **This statement is categorically false.** The phrase "no matter what" refers to a negotiating position shared by the three primary founders (myself, Arjun Vasan, and Christopher Lam) during joint negotiations. It referred specifically to the requirement for guaranteed retention bonuses for the founding team as a condition of the transaction—*not* as a scheme for personal gain. The deal would not have proceeded absent these guaranteed bonuses, as all founders were giving up their upside in VoiceBite for what was represented as stability and security with Checkmate. No founder, including Mr. Vasan, stood to "ride off into the sunset" with "millions of dollars"; in fact, none of the founders, including myself, ever received these bonuses.

3. **Paragraph 2** (*Vasan individually sought to convince Checkmate to pay "millions"*)

    **This statement is categorically false.** All negotiations were conducted jointly and at no point did "Vasan" individually attempt to convince Checkmate of anything. The negotiation team consisted of the three primary founders (myself, Vasan, and Lam), working for the benefit of all VoiceBite equity holders. At no time were "millions of dollars" at stake for any individual founder. Instead, $1.5 million in guaranteed retention bonuses were negotiated to be shared pro rata by all five pre-closing holders according to their percentage ownership in VoiceBite. This was transparent and discussed repeatedly.

4. Though not detailed here, several other paragraphs in Checkmate's complaint are categorically false or misleading.

**Facts and Statements**

5. At no point did Checkmate pay the Founding Team or other VoiceBite equity holders the $1.5 million in bonuses promised as part of the merger and employment agreements.

6. All material representations regarding were known to all founders prior to the merger and were discussed with legal counsel, and all material representations were in good faith determined to be true and accurate.

-2-

7. On November 14th, 2024, at 9AM, our team was informed that Arjun Vasan was terminated due to a breach of the non-solicitation clause in his non-competition agreement. Checkmate proceeded to interview the team after his termination.

8. At no point did Arjun Vasan attempt to recruit me, and to my knowledge, any of the "same employees sold to checkmate" to work for any competitor. No such employee reported any such solicitation to Checkmate leadership, as it did not occur. Therefore, the allegation in ¶50 is categorically and knowingly false.

9. On or about January 29, 2025, I was served a "Notice of Direct Claim" against the VoiceBite pre-closing shareholders, asserting forfeiture of more than $1.5 million in guaranteed employment bonuses and all equity pursuant to the parties' agreements.

10. The Notice alleged Fraud and misrepresentations by VoiceBite and its associates.

11. In my capacity as Holder Representative, I engaged counsel Grant Thomas of Thomas Whitelaw LLP to respond to the Notice of Direct Claim.

12. On or about February 7, 2025, after discussions with myself, Christopher Lam and Arjun Vasan, Mr. Thomas determined an appropriate response to the Notice, distinguishing the disputed functional code from VoiceBite's intellectual property.

13. *At no point did I authorize the joint response to be attributed to Arjun Vasan in his individual capacity* or agree to Checkmate doing so. Therefore ¶¶ 33-34 of the Complaint are knowingly and entirely false and these statements were never made by Arjun Vasan.

14. At no point did we or Mr. Thomas state, or imply, that VoiceBite's entire codebase was a "valueless non-asset". Indeed, the team continues to build on and evolve the codebase.

15. On or about February 14th, 2025, we were informed that Checkmate would be suing Arjun Vasan in his individual capacity.

16. Since then, the pre-closing shareholders of VoiceBite have been told that they will not receive their unpaid bonuses due to a "legal dispute".

17. At no point was I ever informed of any 3rd party claim against Checkmate due to any of the purported disputed code.

18. The Voice Project continues to progress and is actively deployed at Checkmate customers, including Popeye's Louisiana Kitchen. Checkmate stands to gain immensely from the work of Arjun Vasan and the rest of the VoiceBite team.

**Conclusion**

19. I reserve all rights and authorities as Holder Representative under the Merger Agreement and make this declaration solely in that official capacity.

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

**Executed on**: Friday, July 25, 2025,

In Cupertino, CA

Signed by:
*Robert Nessler*
6F3B9EAD576B457...

*By:* **Robert Nessler**
Holder Representative of the VoiceBite Pre-Closing Shareholders and former Chief Executive Officer of VoiceBite