1 Arjun Vasan

2 12615 193rd Street

3 Cerritos, CA 90703

4 (562) 900-6541

5 arjun.vasan@gmail.com

6 Plaintiff In Pro Per

7

8

9

10

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>                         Plaintiff,<br><br>      v.<br><br>CHECKMATE.COM, INC<br>(dba "Checkmate"),<br><br>                    Defendant. | Case No: 2:25-CV-00765-MEMF-JPR<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>*[Filed along with Declaration of Arjun Vasan, Request for Judicial Notice* and *[Proposed] Order,]*<br><br>Hearing date: September 18, 2025<br>Time: 10 am<br><br>Complaint Filed: January 28, 2025 |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on September 18th, 2025, at 10:00 a.m., or as soon thereafter as the matter may be heard in Courtroom 8B of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, CA 90012, before the Honorable Maame Ewusi-Mensah Frimpong, Plaintiff and Counter-Defendant Arjun Vasan ("Plaintiff") will and hereby does move the Court for an order dismissing with prejudice all counterclaims asserted by Checkmate.com, Inc. ("Checkmate") in its Answer to Plaintiff's First Amended Complaint (ECF Nos. 10 & 72), pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(7), and 19.

1    Plaintiff respectfully requests that this motion be heard concurrently with the Scheduling

2    Conference currently set for September 4, 2025, in the interest of judicial economy. Plaintiff will

3    gladly comply with any alternative date or briefing schedule the Court may prefer, but respectfully

4    submits either a continuance of the scheduling conference until September 18, 2025, or that the

5    hearing on this Motion be scheduled for September 4, in the best interest of all involved.

6    Plaintiff seeks dismissal with prejudice on the grounds that Defendant's counterclaims are (1)

7    legally insufficient and foreclosed by the law of the case, controlling state and federal authority, and

8    the record before the Court; (2) fail to state a claim upon which relief can be granted under Rule

9    12(b)(6); and/or (3) are subject to dismissal for failure to join necessary and indispensable parties as

10    required by Rule 19 and Rule 12(b)(7). Plaintiff further requests that the Court dismiss all such

11    counterclaims with prejudice, or without leave to amend absent a showing by Defendant of specific

12    facts warranting amendment, and to consider sanctions for frivolous and retaliatory pleading as set

13    forth in the accompanying Memorandum of Points and Authorities.

14    This Motion is based on this Notice, the attached Memorandum of Points and Authorities, the

15    Declaration of Arjun Vasan, the pleadings and records on file in this action, and upon such other

16    written or oral argument as may be presented at or before the hearing on this matter. Plaintiff

17    certifies that he met and conferred in good faith with Defendant regarding the basis for this motion

18    as required by L.R. 7-3. See Declaration of Arjun Vasan ¶¶.

19    '

20

21

22

23    **Respectfully Submitted**,

24

25    Dated: **August 6, 2025**                    /s/ *Arjun Vasan*

26    In **Cerritos, CA**                    _____

27    **Arjun Vasan**

28    Plaintiff In Pro Per

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>TABLE OF CONTENTS</u>

**TABLE OF CONTENTS** ............................................................................................ **III**

**TABLE OF AUTHORITIES** ...................................................................................... **V**

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................ **2**

   I.     INTRODUCTION .................................................................................... 2

   II.    FACTUAL BACKGROUND ................................................................... 3

   III.   PROCEDURAL HISTORY (SINCE TENTATIVE RULING) ................ 3

   IV.   LEGAL STANDARDS .......................................................................... 5

       *A.*   *Law of the Case and Prior Rulings* ............................................... *5*

       *B.*   *California Law and Public Policy* .................................................. *5*

       *C.*   *Allegations Contradicted by Admissible Evidence* ....................... *8*

       *D.*   *Implication of California Law on the Parties' Agreements* ........... *8*

       *E.*   *Rule 12(b)(7) and Rule 19: Failure to Join Indispensable Parties* ................ *10*

       *F.*   *Rule 12(b)(6): Failure to State a Claim* ...................................... *11*

       *G.*   *Rule 9(b): Heightened Standards for Fraud Claims* ................... *11*

   V.    LEGAL ARGUMENT ......................................................................... 11

       *A.*   *The Evidentiary Record Admissible for this Motion is Substantial* ................ *12*

       *B.*   *Each Contract at issue in the Counterclaims are Invalid, Inapplicable Voided, Unenforceable or Favor Plaintiff's Position Under Cal. Law and Public Policy* .................... *12*

       1. Merger Agreement – Favors Plaintiff ........................................... 13

       2. Non-Competition Agreement – Unenforceable Under Cal. Bus. Prof. Code 16600 ........ 13

       3. IP Acknowledgment Letter – Fatally Defective and Voidable ............... 14

       4. IP Assignment Agreements – Inapplicable and Lack of Standing ................... 14

       *C.*   *Non-Compete Counterclaims Are Barred by Law and the Record* ............... *14*

       1. Plaintiff's Two Emails Demonstrate Compliance, Not Breach ................ 14

       2. The Terms of the Non-Compete Agreement Foreclose Breach ................ 15

       3. The Agreement Is Void and Unenforceable Under Delaware and New York Law ......... 15

       4. No Legitimate Business Interest to Protect ................................. 16

       6. Mutual Non-Disparagement—Checkmate's Breach ...................... 16

       7. Dismissal with Prejudice is Warranted due to the Evidence on Record ........... 16

       8. The Non-Competition Agreement is Void Under its Own Terms ................. 16

       *D.*   *Fraud Counterclaims Fail Under Rule 9(b) and Are Evidence of Retaliation* .......... *17*

       1. Complete Failure to Satisfy Rule 9(b)'s Particularity Requirements ............... 17

2. Checkmate's Own Allegations Prove the Absence of Fraud ............................................. 18

3. Checkmate Misattributes Team Conduct to Individual Defendant ................................... 18

4. No Material Misrepresentation ....................................................................................... 19

5. No Cognizable Damages ................................................................................................ 19

6. No Reasonable Reliance ................................................................................................ 20

7. The Negligent Misrepresentation Claim Fails for the Same Reasons ............................. 20

8. Plaintiff's Fraud Allegations are Evidence of its Own Fraudulent Conduct ................... 20

E.    *Breach Counterclaims Are Legally and Contractually Defective* ..................................... 21

F.    *Declaratory Relief Counterclaim Seeks to Endorse Wage Theft* ...................................... 21

G.    *Failure to Allege Satisfaction of Condition Precedent and Join Indispensable Parties* .. 22

H.    *Dismissal With Prejudice and Sanctions Are Warranted* .................................................. 24

VI.    CONCLUSION ............................................................................................................... 24

# TABLE OF AUTHORITIES

**CASES**

*Am. Title Ins. Co. v. Lacelaw Corp.*,

   861 F.2d 224, 226–27 (9th Cir. 1988) ........................................................................12

*Armendariz v. Foundation Health*,

   24 Cal. 4th 83, 114-23 (2000) ...................................................................................10

*Ashcroft v. Iqbal*,

   556 U.S. 662, 678 (2009) ..........................................................................................11

*Bell Atl. Corp. v. Twombly*,

   550 U.S. 544, 570 (2007) ..........................................................................................11

*Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*,

   547 F.3d 962, 970–71 (9th Cir. 2008) ......................................................................11

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,

   637 F.3d 1047, 1055 (9th Cir. 2011) ..........................................................................8

*Chambers v. NASCO, Inc.*,

   501 U.S. 32, 45–46 (1991)........................................................................................24

*Chavarria v. Ralphs Grocery Co.*,

   733 F.3d 916, 921-28 (9th Cir. 2013) .......................................................................10

*Cooter & Gell v. Hartmarx Corp.*,

   496 U.S. 384, 395–97 (1990)....................................................................................24

*Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*,

   276 F.3d 1150, 1155–56 (9th Cir. 2002) ..................................................................11

*EEOC v. Peabody W. Coal Co.*,

   610 F.3d 1070, 1078 (9th Cir. 2010) ........................................................................11

*Fink v. Gomez*,

   239 F.3d 989, 991–94 (9th Cir. 2001) ......................................................................24

*Goodyear Tire & Rubber Co. v. Haeger*,

   581 U.S. 101, 108–09 (2017)....................................................................................24

**Iqbal v. Ashcroft**,

   556 U.S. 662, 678 (2009........................................................................................21

*Knievel v. ESPN*,

   393 F.3d 1068, 1076 (9th Cir. 2005) ..........................................................................8

v

*Lazy Y Ranch Ltd. v. Behrens*,

  546 F.3d 580, 588 (9th Cir. 2008) ................................................................8

*Leadsinger, Inc. v. BMG Music Publ'g*,

  512 F.3d 522, 532 (9th Cir. 2008) ..............................................................24

*Leeper v. Beltrami*,

  53 Cal. 2d 195, 204–05 (1959 .....................................................................9

*Medidata Sols., Inc. v. Veeva Sys. Inc.*,

  2021 WL 467110, at *3 (S.D.N.Y. Feb. 9, 2021) ......................................21

**MedImmune, Inc. v. Genentech, Inc.**,

  549 U.S. 118, 126–27 (2007)......................................................................22

*Narayan v. EGL, Inc.*

  616 F.3d 895, 899–904 (9th Cir. 2010 .........................................................7

*Nedlloyd Lines B.V. v. Superior Court*,

  3 Cal. 4th 459, 465–66 (1992) ......................................................................7

*Odorizzi v. Bloomfield School District*,

  246 Cal. App. 2d 123, 131-34 (1966 ............................................................9

*Phillips v. U.S.*,

  356 F.2d 297, 301 (9th Cir. 1966) ..............................................................12

*Rich & Whillock, Inc. v. Ashton Dev., Inc*,

  157 Cal. App. 3d 1154, 1158–60 (1984) .......................................................9

*Sanchez v. Valencia Holding*,

  61 Cal. 4th 899, 910-12 (2015)...................................................................10

See *Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*,

  2019 WL 1768618, at *2 (N.D. Cal. Apr. 22, 2019) ..................................20

*Washington Mutual Bank v. Superior Court*,

  24 Cal. 4th 906, 915–17 (2001) ....................................................................7

**STATUTES**

Cal. Business & Professions Code § 16600 ......................................................5

Cal. Labor Code § 925.......................................................................................5

**Cal. Labor Code §§ 201, 202, 203, 204, 221, 223**........................................8

**RULES**

Fed. R. Civ. P. 19(a) ..................................................................................................6

Fed. R. Evid. 801(d)(2) ..............................................................................................7

*Fed. R. Evid. 801(d)(2)(C)-(D)* ................................................................................7

Federal Rule of Civil Procedure 12(b)(7) ..................................................................6

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiff and Counter-Defendant Arjun Vasan ("Plaintiff") and his cofounders (together "the founders") built VoiceBite on innovation, partnership, and the conviction that California's laws protect those who create. Defendant and Counter-Claimant Checkmate.com, Inc. ("Checkmate"), aided by its counsel at K&L Gates, saw opportunity—not for mutual benefit, but in exploitation.

Checkmate's counterclaims, a verbatim copy of its now dismissed complaint in the Southern District of New York ("SDNY"), are meritless and contradicted by the record before both this Court and the SDNY, and stand as the latest act in a fraudulent and retaliatory scheme that originated during merger negotiations, continued through Plaintiff's employment, and now culminates in this *desperate* effort to abuse judicial process and evade its legal and contractual obligations.[1]

Checkmate's non-compete claims are foreclosed by its own submitted evidence and by California law, which this Court has established governs every aspect of this dispute.[2] Its fraud theories not only fail to satisfy Rule 9(b)'s heightened pleading standard but are compelling evidence of Plaintiff's own claims of fraud and retaliation. Its breach claims rest on invalid or inapplicable agreements, and its request for declaratory relief seeks nothing less than judicial endorsement of wage theft—directly contravening California public policy and statutory protections. In sum, none of the counterclaims rises to the level of a bona fide dispute; each is as revealing as it is unfounded.

In reality, Checkmate structured the agreements at issue—if its present interpretations are credited—to create the illusion of a mutually beneficial transaction, while secretly reserving every advantage for itself and stripping the founders of every promised benefit and protection, including the "millions of dollars" it so loudly touts but never paid. The phantom cash dangled to lure the founders is now cynically invoked to mislead this Court and fabricate damages that do not exist.

But Checkmate's contractual interpretations cannot withstand scrutiny. Its counterclaims fail to comply with a mandatory, bargained-for condition precedent: the Merger Agreement ("MA")'s dispute resolution procedure, requiring dismissal under Rule 12(b)(6). Its counterclaims further fail

---

[1] See Plaintiff's First Amended Complaint ("FAC") at ECF No. 10.

[2] As established by this court's Order denying Checkmate's Motion to Dismiss or Transfer, Cal. Labor Code § 925 applies to this dispute, and therefore every Delaware choice of law clause is voidable and voided by Plaintiff's election (ECF No. 72)

under Rules 12(b)(7) and 19 for failure to join indispensable parties—namely, the other founders and signatories whose legal and financial interests are directly implicated, and who have themselves suffered intimidation and retaliation as employees for their support of Plaintiff in this dispute.

*This* Court should not indulge or excuse Checkmate's abuse of process. For these reasons, and those detailed below, Plaintiff respectfully requests that this Court dismiss all counterclaims in their entirety, *with prejudice*, award such sanctions as are necessary to deter further misconduct, and establish for the record—here in California and as an example to the Nation—that our courts ought to protect founders, workers, and innovators, not those who seek to exploit them.

## II.      FACTUAL BACKGROUND

Plaintiff incorporates by reference the detailed factual allegations set forth in the operative First Amended Complaint (ECF No. 10) and his judicially noticed[3] Motion to Dismiss, Transfer or Stay in SDNY (SDNY ECF No. 21, Case No. 25-CV-03181-JMF), which together describe the origins, negotiation, and consummation of the VoiceBite–Checkmate merger, the subsequent employment relationship, and the events giving rise to this action.

## III.     PROCEDURAL HISTORY (SINCE TENTATIVE RULING)

1. **Tentative Ruling on Venue (June 4, 2025, email notice from MEMF Chambers):**

The Court issued its tentative ruling on Checkmate's Motion to Dismiss or Transfer, circulated to all parties via email in advance of the hearing.

2. **Hearing on Venue and Minute Order (June 5, 2025, CD Cal ECF No. 80):**

The Court conducted a hearing on Checkmate's Motion to Dismiss or Transfer. Plaintiff welcomed Checkmate's untimely Request for Judicial Notice, filed the night before (ECF No. 78). During the hearing, Checkmate relied on purported "admissions" "under penalty of perjury" in Plaintiff's declarations, thereby waiving objections to admissibility and, as Plaintiff argued, thereby acknowledging the truth of Plaintiff's sworn statements and evidentiary submissions in SDNY.

3. **Checkmate's Opposition Filed in SDNY (June 16, 2025, SDNY ECF Nos. 40, 41):**

---

[3] See Order Denying Checkmate's Motion to Dismiss or Transfer (ECF No.72), and granting Judicial Notice of Plaintiff's SDNY Motion at Checkmate's request.

Checkmate filed its opposition to Plaintiff's motion in SDNY, attaching the Warns Declaration and operative agreements—including two which Plaintiff had never seen, and repeatedly asked for and never been provided in the months leading up to the Motion.

4. **Plaintiff's Reply in Support of Motion to Dismiss/Transfer in SDNY (June 23, 2025, SDNY ECF No. 50):**

Plaintiff filed his reply, addressing all arguments and evidentiary issues raised by Checkmate, and addressing fatal flaws in the two newly disclosed agreements—which Checkmate alleges he breached, and yet expected to respond to without ever having seen.

5. **Voluntary Dismissal by Checkmate in SDNY (July 10, 2025, SDNY ECF No. 55):**

After full briefing, Checkmate voluntarily dismissed its SDNY action without prejudice. Plaintiff had filed over 40 pages of briefing between his Motion and Reply, spent substantial time and effort researching and verifying 2nd Circuit and SDNY Authorities when apparently this forum, where Plaintiff filed and served first, was perfectly convenient to Checkmate all the while. Plaintiff requested leave to file a post-dismissal sanctions motion which was endorsed by Judge Furman.

6. **Plaintiff's Motion for Sanctions in SDNY (July 14, 2025, SDNY ECF No. 56):**

Plaintiff moved for sanctions following Checkmate's voluntary dismissal, supported by the Nessler Declaration (submitted in his official capacity as Holder Representative).

7. **Plaintiff's Hospitalization and Stipulation (July 10, 2025, CD Cal ECF No. 65):**

Due to an acute medical condition, Plaintiff was hospitalized, and the parties stipulated to adjust certain deadlines. Plaintiff relayed his appreciation to opposing counsel for this stipulation.

8. **Checkmate's Delay in Pre-Scheduling Meet and Confer (July 2025):**

Checkmate repeatedly delayed responding to Plaintiff's request for a pre-scheduling meet and confer, originally made upon filing of the scheduling order on June 26th, 2025. Checkmate counsel waited until a month later, and when Plaintiff was still hospitalized, and suggested a date of August 14th, 2025—the very last day for the meet and confer to be timely. After some contentious back and forth, a date of August 7th, 2025, was agreed to by the parties for the meet and confer.

9. **Checkmate's Answer Filed (July 9, 2025, CD Cal ECF No. 71):**

Checkmate filed its Answer and Affirmative Defenses—a near-verbatim copy of its SDNY pleadings, asserting forty-six affirmative defenses and failing to address the sweeping implications of this Court's final order.

## IV.    LEGAL STANDARDS

### A.    Law of the Case and Prior Rulings

This Court's Order Denying Checkmate's Motion to Dismiss or Transfer (CD Cal ECF No. 80) adopted Plaintiff's arguments in briefing and at hearing, establishing that: (1) Plaintiff was an employee of Checkmate who primarily lived and worked in California; (2) the key agreements at issue—the Merger and Non-Compete Agreements—were "conditions of employment," as the founders lacked individual choice to sign some (e.g., the bonus agreement or offer letter) but not others; and (3) Checkmate's effort to recast VoiceBite's corporate counsel as Plaintiff's individual representative was unpersuasive; and (4) therefore Cal. Lab. Code § 925 applies, and every choice-of-law or forum-selection clause in any of the contracts executed as part of "the transaction" is voidable and voided by Plaintiff's unambiguous election in favor of California law and this forum.

In short, Checkmate's own strategy—arguing that all agreements constituted a single integrated transaction—now binds it: if every contract was part of one "bargain", each is a "condition of employment," and every founder was compelled to execute all agreements to receive the promised benefits. As this Court has now ruled, Checkmate is precluded, under the law of the case, from invoking any Delaware choice-of-law or New York forum-selection clause to evade the protections of California law—whether as to Plaintiff's claims or the counterclaims at issue in this instant Motion—a pleading copied substantially verbatim from Checkmate's SDNY complaint.

### B.    California Law and Public Policy

Where California's statutory and decisional law reflect a strong, long-standing policy favoring employee mobility and rejecting contractual restraints that would deprive California workers of California protections. This Court's broad application of § 925 has sweeping implications to nearly every aspect of dispute—based as it is on a set of agreements relying on Delaware law.

**1. Non-competes and related restraints are void in employment.**

California Business & Professions Code § 16600 declares void "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business," subject only to narrow sale-of-business exceptions (§§ 16601, 16602, 16602.5). The California Supreme Court in *Edwards v. Arthur Andersen*, 44 Cal. 4th 937, 946–50 held that employee non-competes are invalid even if "narrowly drawn," rejecting any "rule of reason" in the employment context. (2008).  California courts have applied *Edwards* to invalidate post-employment restraints beyond classic non-competes, including employee non-solicitation covenants.[4]  California appellate authority likewise recognizes that use of void restraints can support UCL liability.[5]

In 2023–24, the Legislature strengthened this policy. AB 1076 codified *Edwards* and added **§ 16600.1**, making it *unlawful* to include a noncompete in an employment contract and requiring individualized notice to current and recent former employees that any such covenants are void; failure to notify is actionable (and subject to civil penalties). **SB 699** added **§ 16600.5**, creating a private right of action and specifying that void restraints are unenforceable "regardless of where and when the contract was signed," with fee-shifting for prevailing employees. These amendments reinforce that inclusion or attempted enforcement of non-competes is itself unlawful conduct under California law.

### 2. California Labor Code § 925 bars out-of-state forum and law in California employment disputes.

For employees who primarily reside and work in California, **Labor Code § 925** makes voidable any clause requiring adjudication outside California or depriving the employee of California substantive protections, unless the clause was "individually negotiated" while the employee was represented by counsel. While most argument during briefing on the Motion to Dismiss or Transfer for improper venue was focused on venue, the real implications especially with regards to Checkmate's counterclaims lie in § 925's equally powerful voiding of any non-California choice-of-law clauses at Plaintiff's election—as he has also unambiguously elected.

---

[4] (*AMN Healthcare, Inc. v. Aya Healthcare Servs., Inc.*, 28 Cal. App. 5th 923, 938–41 (2018)) and broad "no-rehire" provisions that substantially restrain practice (*Golden v. Cal. Emergency Physicians Med. Grp.*, 896 F.3d 1018, 1024–27 (9th Cir. 2018))

[5] . *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575–77 (2009).

### 3. California's choice-of-law framework protects its fundamental policy.[6]

When a contract purports to apply non-California law, California courts apply Restatement (Second) of Conflict of Laws § 187 under *Nedlloyd* and *Washington Mutual*. A chosen law will not be applied if it would contravene a fundamental California policy and California has a materially greater interest. As § 925 applies here, any such clauses are voided by Plaintiff's election regardless.

### 4. Limited carve-outs do not apply here.

While *Ixchel Pharma, LLC v. Biogen, Inc*. clarifies that § 16600 claims in *business-to-business* settings follow a ***rule-of-reason***, it reaffirms the per se invalidity of restraints in the *employment* and sale-of-business contexts recognized by *Edwards* and §§ 16601–16602.5. 9 Cal. 5th 1130, 1143–51 (2020).  Where (as here) California law applies: (i) noncompetes, no-rehire, and employee non-solicit provisions are void in employment; (ii) clauses selecting foreign law or fora that would dilute California protections are voidable under § 925; and (iii) California's fundamental policy favoring worker mobility and its statutory regime control notwithstanding contrary boilerplate. Courts must therefore decline to enforce any provision inconsistent with these statutes and authorities. *Bremen*/*Atlantic Marine* do not compel a different result because they presuppose a *valid* forum clause; California law renders such clauses void or voidable in this setting. *DePuy*, 28 F.4th at 963–66. Plaintiff nonetheless anticipates Checkmate will rely on the § 16601 exception.

But, as the Court's ruling also implies, there is a substantial question of whether an acquihire type arrangement is more akin to employment or two a *bona fide sale* of business. The exception to § 16600's general prohibition of non-competes was meant to protect legitimate business interests. Can a company with no customers, revenue or investors, a few months of code written by 2-3 engineers in a Cupertino garage, have legitimate interests to protect. This is not a case of Plaintiff selling "Arjun's Pizza Parlor" and opening up "Arj's Pizza Parlor" next door—what § 16601 was specifically designed to protect—a legitimate and reasonable business interest.[7]

---

[6] *Narayan v. EGL, Inc.* 616 F.3d 895, 899–904 (9th Cir. 2010) applied California wage laws despite a Texas choice-of-law clause, refusing to allow employer-drafted labels to defeat California protections for workers.; see *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 465–66 (1992); *Washington Mutual Bank v. Superior Court*, 24 Cal. 4th 906, 915–17 (2001)

[7] What Checkmate claims is that Plaintiff has no right to compete, anywhere in the world, in a market he played a significant role in establishing as real—all while never having paid him a dime more than salary.

### C. Allegations Contradicted by Admissible Evidence[8]

While the Court must accept well-pled factual allegations as true, this principle does not apply where allegations are directly contradicted by documents properly before the Court—including those subject to or already judicially noticed. The Ninth Circuit has repeatedly held that the Court need not accept as true allegations contradicting documents that are referenced in the complaint or that are properly subject to judicial notice.[9] On a Rule 12(b)(6) motion, the Court may consider not only the complaint but also documents attached to the complaint, incorporated by reference, or on which the complaint necessarily relies.[10] In contract disputes, courts routinely consider contemporaneous documents essential to contract formation, scope, and effect, even at the motion to dismiss stage.

Furthermore, the record before this Court is exceptionally robust—due in large part to the parties' extensive documentary submissions and repeated requests for judicial notice of one another's pleadings, contracts, and correspondence. Notably, Checkmate itself has sought and obtained judicial notice of numerous documents central to both its claims and defenses, vastly expanding the evidentiary landscape available at the pleadings stage. As a result, the operative record encompasses not only the parties' allegations, but also a substantial documentary record from both sides, permitting the Court to resolve legal and factual questions with unusual clarity and completeness.[11] In this posture, further factfinding or discovery is unnecessary to adjudicate the sufficiency—or, as here, the fundamental defects—of Checkmate's counterclaims.

### D. Implication of California Law on the Parties' Agreements

Interpretation and enforcement of the parties' agreements must proceed under California contract law. This includes principles governing offer, acceptance, consideration, performance, breach, waiver, and the effect of any conditions precedent or subsequent. Any ambiguity should be

---

[8] Checkmate's approach in this dispute is to object reflexively—even when confronted with its own filings and evidence. Plaintiff, by contrast, welcomes the full record, has never objected to any filing or exhibit in this action on technical grounds and—in fact—has repeatedly relied on Checkmate's own filings to undermine its arguments and establish contradictions.

[9] *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011).

[10] See *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

[11] See, e.g., *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1002 (9th Cir. 2018) (court may consider documents incorporated by reference and properly noticed at the Rule 12 stage where their authenticity and relevance are undisputed).

construed against Checkmate as drafter, and agreements violating public policy are unenforceable. Plaintiff offers further analysis relevant to the two IP agreements Checkmate alleges he breached, in particular given the particularized allegations in his operative complaint regarding these agreements:

1. **Free consent is the cornerstone of enforceability.**

California contract formation requires "free, mutual consent." Civil Code § 1567 enumerates circumstances—*duress, menace, fraud, undue influence, or mistake*—that vitiate apparent consent, rendering the agreement merely voidable rather than void.    Where any such factor taints assent, the injured party may rescind under Civil Code § 1689(b)(1), which expressly authorizes rescission when consent was "obtained through duress, menace, fraud, or undue influence." Section 1689 provides the statutory gateway, but courts still look to common-law doctrines to decide whether the facts satisfy one of those grounds.

2. **Duress—including modern "economic duress"—renders contracts voidable.**

California recognizes both *traditional* duress (wrongful threats to person or property) and *economic* duress (wrongful acts that leave the victim "no reasonable alternative" but to acquiesce).[12]

3. **Undue influence focuses on unfair persuasion in a position of dominance or trust.**

*Odorizzi v. Bloomfield School District*[13] is the leading California case: a school-teacher's resignation tendered after an all-night police interrogation was rescinded because officials overbore his will at a moment of acute vulnerability. The decision synthesizes Civil Code §§ 1575 (undue influence) and 1567, emphasizing that excessive pressure applied at a moment of weakness can invalidate consent even absent overt threats.

4. **Fraud and misrepresentation provide parallel bases for rescission or damages.**

Actual fraud (Civil Code § 1572) and constructive fraud (§ 1573) both permit rescission under § 1689(b)(1). California courts treat fraudulent inducement as an independent ground for voidability,

---

[12] The Supreme Court first articulated economic-duress rescission in *Leeper v. Beltrami*, 53 Cal. 2d 195, 204–05 (1959), holding that threats to impair property rights can defeat genuine consent. Later, *Rich & Whillock, Inc. v. Ashton Dev., Inc,* 157 Cal. App. 3d 1154, 1158–60 (1984) confirmed that a settlement exacted under imminent business collapse is unenforceable. Both decisions echo the Restatement (Second) of Contracts § 175: a contract induced by an "improper threat" that leaves no reasonable alternative is voidable.

[13] *Odorizzi v. Bloomfield School District*, 246 Cal. App. 2d 123, 131-34 (1966)

1  and, when coupled with duress or undue influence, it often justifies complete rescission of the

2  underlying bargain.

3      5.  **Unconscionability (Civ Code § 1670.5) polices both bargaining process and substantive**

4          **terms.**

5      Section 1670.5 empowers courts to refuse enforcement, sever, or limit clauses found

6  "unconscionable at the time [the] contract was made." The doctrine employs a *sliding-scale*: a lesser

7  showing of procedural unconscionability (oppression or surprise) can be offset by a greater showing

8  of substantive unfairness, and vice-versa.[14]

9      6.  **Severance is discretionary and turns on the clause's centrality.**

10     Section 1670.5 allows a court to excise or limit an unconscionable provision, but California

11 Supreme Court precedent cautions against "blue-penciling" when the offending term permeates the

12 agreement's basic purpose. *Armendariz* 24 Cal. 4th at 124-25 sets out three guideposts: (i) the

13 presence of multiple illegitimate terms, (ii) whether severance would require re-writing rather than

14 deletion, and (iii) the drafter's systemic overreach.

15     7.  **Public-policy illegality renders a contract void, not merely voidable.**

16     Under Civil Code § 1598, agreements that contravene explicit legislative policy (e.g., statutes

17 protecting employee mobility) are illegal and unenforceable *ab initio*—no showing of duress or

18 unconscionability is required. When a court finds both illegality and separate defenses like duress or

19 unconscionability, it may rescind and order restitution (Civ. Code § 1691) while declining to lend

20 judicial aid to enforcement.

21     **E.  Rule 12(b)(7) and Rule 19: Failure to Join Indispensable Parties**

22     Federal Rule of Civil Procedure 12(b)(7) authorizes dismissal for "failure to join a party under

23 Rule 19." Rule 19 sets forth the standards for determining when a party is "required" or

24 "indispensable" to the litigation. Under Rule 19(a), a party must be joined if "complete relief"

---

26 [14] *Armendariz v. Foundation Health*, 24 Cal. 4th 83, 114-23 (2000) crystallized the analysis in the employment context, holding a
   mandatory arbitration clause unenforceable where it was adhesive and one-sided. *Sanchez v. Valencia Holding,* 61 Cal. 4th 899,
27 910-12 (2015) reaffirmed that both procedural and substantive elements must be present, but only some degree of each is
   required. Federal courts applying California law follow the same framework. In *Chavarria v. Ralphs Grocery Co.,* 733 F.3d 916,
28 921-28 (9th Cir. 2013), the Ninth Circuit invalidated an employment arbitration policy as "shockingly one-sided," holding
   that the FAA does not preempt California's unconscionability doctrine when applied even-handedly to all contracts.

cannot be accorded among existing parties, or if the absent party claims an interest relating to the subject of the action and resolution in their absence may impair their ability to protect that interest or leave existing parties at risk of inconsistent obligations.[15]

If joinder is not feasible, Rule 19(b) requires the court to determine whether "in equity and good conscience" the action should proceed among the existing parties or be dismissed.[16] The purpose of these rules is to protect both absent parties and those before the court, and to ensure fair and efficient adjudication of the claims at issue. Where, as here, the claims are premised on alleged group actions or collective decisions, and key parties or witnesses are omitted or unable to participate due to intimidation or retaliation, dismissal or other appropriate relief under Rule 12(b)(7) and Rule 19 is especially warranted.

### F. Rule 12(b)(6): Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a pleading must allege sufficient facts to state a claim for relief that is plausible on its face. The Court accepts well-pleaded factual allegations as true, but does not credit legal conclusions, unwarranted inferences, or allegations contradicted by documents properly before the Court. Claims must be supported by factual content sufficient to draw a reasonable inference of liability; conclusory or speculative allegations do not suffice.[17]

### G. Rule 9(b): Heightened Standards for Fraud Claims

Claims sounding in fraud are subject to the heightened pleading requirements of Rule 9(b), which mandate that the circumstances constituting fraud be stated with particularity. This standard requires the pleading to specify the "who, what, when, where, and how" of the alleged misconduct. General or conclusory allegations, or group pleading that fails to identify specific conduct by specific parties, is insufficient to state a claim for fraud.

## V.    LEGAL ARGUMENT

---

[15] Fed. R. Civ. P. 19(a); *EEOC v. Peabody W. Coal Co.*, 610 F.3d 1070, 1078 (9th Cir. 2010); *Dawavendewa v. Salt River Project Agric. Improvement & Power Dist.*, 276 F.3d 1150, 1155–56 (9th Cir. 2002).

[16] *Cachil Dehe Band of Wintun Indians of Colusa Indian Cmty. v. California*, 547 F.3d 962, 970–71 (9th Cir. 2008).

[17] A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a pleading. To survive such a motion, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts accept well-pled factual allegations as true, they reject "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555.

**A.  The Evidentiary Record Admissible for this Motion is Substantial**

Checkmate requested judicial notice of Plaintiff's SDNY Motion to Dismiss, Transfer or Stay, and accompanying declarations of Arjun Vasan and Vasan Varadarajan, argued in open court that their contents were "admissions" "under penalty of perjury" and true, and the Court expressly accepted both declarations as judicially noticed and unopposed, as Plaintiff expressly welcomed judicial notice of his own SDNY filings at hearing.[18] Judicial estoppel, the incorporation-by-reference doctrine, and the party admission rule all preclude selective reliance. **Accordingly, the Court may consider these sworn declarations for their truth on this motion.[19]**

The Nessler declaration, submitted under penalty of perjury in his capacity as Holder Representative (as designated in the Merger Agreement filed by Checkmate in both SDNY and CD Cal), is directly admissible on Rule 12(b)(7) and Rule 19 analysis. A representative's statements are binding as to all pre-closing equity holders he is authorized to represent. See *Fed. R. Evid. 801(d)(2)(C)-(D)*; *Phillips v. U.S.*, 356 F.2d 297, 301 (9th Cir. 1966). The Court may consider such representative declarations not only as factual evidence, but also to resolve issues of indispensable parties and the scope of the "transaction."[20]

**B.  Each Contract at issue in the Counterclaims are Invalid, Inapplicable Voided, Unenforceable or Favor Plaintiff's Position Under Cal. Law and Public Policy**

Each of the agreements at issue in Checkmate's counterclaims—detailed below—has been expressly referenced in Checkmate's counterclaims, and was filed as exhibits by Checkmate in reply to Plaintiff's Motion to Dismiss the SDNY action.[21] Critically, by Checkmate's own admission, all

---

[18] See *Order Denying Motion to Dismiss or Transfer* at 6 ("The Court notes that Vasan does not object to any evidentiary submissions made by Checkmate.")

[19] See *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001); *Khoja v. Orexigen*, 899 F.3d 988, 1002–03 (9th Cir. 2018); Fed. R. Evid. 801(d)(2).

[20] While the Nessler declaration was submitted in his capacity as Holder Representative, to the extent it describes facts within his personal knowledge as a current Checkmate VP—those statements are independently admissible as party admissions. See *Fed. R. Evid. 801(d)(2)(D)* ("a statement by the party's agent or employee on a matter within the scope of that relationship while it existed"); *Am. Title Ins. Co. v. Lacelaw Corp.*, 861 F.2d 224, 226–27 (9th Cir. 1988).

[21] As the Warns Declaration was filed after this court's judicial notice of Plaintiff's SDNY filings, Plaintiff now brings it before this Court by way of his own Request for Judicial Notice, filed herewith, so that the full operative record is before the Court for consideration on this motion. These documents are therefore properly before the Court as materials incorporated by reference and are admissible as party admissions under Federal Rule of Evidence 801(d)(2) with respect to Rule 12(b)(6).

contracts at issue were "required" as a condition of closing—that is, as a condition of employment—bringing them within the scope of California Labor Code § 925. Under the law of the case, any argument that Delaware law applies is foreclosed and California law governs all relevant issues.

### 1. Merger Agreement – Favors Plaintiff

Checkmate Forum Selection arguments under the Merger Agreement (MA) §9.7 are no longer sustainable under the law of this case. However, equally mandatory from the same contract are (1) §9.1, which explicitly designates a shareholder representative to jointly pursue and defend all related claims on their behalf; (2) §8 defines and *caps*[22] indemnification as the exclusive remedy for any MA related claims; and (3) §9.8, waiving jury trials.[23]

### 2. Non-Competition Agreement – Unenforceable Under Cal. Bus. Prof. Code 16600

The Non-Competition Agreement (NCA) was found by this court to be an express condition of employment subject to § 925. The NCA purports to prohibit competition, solicitation, and disparagement against "the Company"[24] for two years, but suffers from inconsistent drafting and circular ambiguity regarding the identity of the "Company" being protected.[25]

---

[22] The indemnification cap in the Merger Agreement contains a fraud exception, which Checkmate has invoked to justify its withholding of earned wages (see ECF No. 23, Ex. N, Notice of Claim). However, the Merger Agreement expressly defines "fraud" as "common law fraud under the laws of the State of Delaware." (Warns Decl. Ex. A § 1.1 [Definitions].) As set forth above, the law of the case requires the application of California law to all substantive issues, and any attempt to import Delaware's definition of fraud is both voidable and has been voided by Plaintiff pursuant to Labor Code § 925.

By accepting the jurisdiction of this Court and its ruling on § 925, Checkmate is now openly admitting that it has withheld earned compensation from all California-resident VoiceBite pre-closing equity holders—conduct that constitutes wage theft under California law. See **Labor Code §§ 201, 202, 203, 204, 221, 223**. Such conduct cannot be justified by reference to an out-of-state definition of "fraud," nor by any contract provision contrary to California's fundamental public policy.

[23] Plaintiff originally demanded a jury trial with respect to his core employment claims. However, because Checkmate's counterclaims now put the Merger Agreement ("MA") and complex IP issues at the center of this litigation, Plaintiff believes those counterclaims are best resolved by the Court—as a lay jury—given their technical and legal complexity. The parties expressly waived any right to a jury trial in MA § 9.8, and Plaintiff will shortly file Notice revoking his jury demand and invoking § 9.8 with respect to all remaining issues, in the interest of predictability, efficiency, and judicial economy.

[24] The NCA expressly defines "Company" as VoiceBite, an entity that ceased operations upon merger close. Nevertheless, throughout the agreement, "Company" is used in a manner that appears to refer interchangeably to VoiceBite and Checkmate, creating significant ambiguity about whose interests are being protected and what conduct is prohibited. If "Company" means VoiceBite, the provision is meaningless, as VoiceBite ceased operating post-closing and had no ongoing business interests to protect. If "Company" is intended to mean Checkmate, the definition of "business" as the "Company's current business of providing artificial intelligence powered voice systems for phone answering or for restaurant drive through order processing" also nullifies the NCA—as Checkmate had no such business. This vagueness is fatal to any such restrictive covenant under California law, where such ambiguity must be construed strictly against the drafter—**checkmate**!

[25] The non-disparagement provision is ***mutual***, also prohibiting executives of the company from disparaging VoiceBite's stockholders—which include Defendant.

### 3. IP Acknowledgment Letter – Fatally Defective and Voidable

The IP Acknowledgment Letter is invalid and unenforceable under California law for multiple, independent reasons. First, it is not addressed to Plaintiff at all; rather, it is addressed to Christopher Lam. By signing, Plaintiff merely verified that Christopher Lam acknowledged the referenced clauses, not that Plaintiff agreed to any substantive terms or that this defective agreement imposes any obligations on him. This is not a mere scrivener's error—it is compelling evidence of a hurried and coercive process the day before the merger, in which *neither the signatory nor the drafter had the opportunity to meaningfully review or negotiate the final terms*.

Second, the document was introduced only after all material terms of the merger had been finalized, and there is no independent consideration to support it. As a contract of adhesion, imposed without meaningful negotiation or review, any ambiguity or lack of material terms must be construed strictly against Checkmate as drafter. See **Cal. Civ. Code § 1654**. The context and execution of the acknowledgment letter render it not only voidable, but evidence of procedural unfairness in the transaction as a whole.

### 4. IP Assignment Agreements – Inapplicable and Lack of Standing

These were agreements introduced at the 11th hour of negotiations, *without consideration*, after the deal terms had been agreed, prompting VoiceBite's counsel to resign in protest of Plaintiff's negotiation practices.[26]

**C. Non-Compete Counterclaims Are Barred by Law and the Record**

### 1. Plaintiff's Two Emails Demonstrate Compliance, Not Breach

In the first, Plaintiff expressly conditions his availability on specific terms of the agreement, showing intent to comply: "I have a short window to decide to leave and *nullify my non-compete…* and I ***can*** bring over 2 additional 10x engineers ...". (Ex. I, "Lunchbox Emails")

In the second, Plaintiff shows *caution* in selecting demo recordings not from Checkmate or VoiceBite, but from 2021-2022, prior to any active obligations to any operating entity: "Ok, I

---

[26] Defendant alleges with particularity in the California Action that Plaintiff's actions in imposing these agreements constituted fraud and coercion, thereby rendering them voidable.

figured it's safer to send some older recordings so there's no potential risk … these are from Cyborg (my earlier company) and from 2021-2022.". *Id.*

### 2. The Terms of the Non-Compete Agreement Foreclose Breach

The agreement's operative restriction is defined in its ¶¶ 2 and 3: *during the "Restricted Period" of two years, the Stockholder (i.e. Plaintiff), shall not*:

> **Non-Competition** (a) engage or participate in, or acquire any financial or beneficial interest in, any business that competes with the Business in the Restrictive Territory; ¶ **2;**

> **Non-Solicitation** (a) solicit or attempt to solicit any of employees of Acquirer or the Company or induce any of employees of Acquirer or the Company to resign from their employment by Acquirer or the Company, as applicable; ¶ **3.**

> (**For Both**) (b) induce or assist any other Person to engage in any of the activities described in subparagraph (a) ¶¶ **2, 3**

Critically, Plaintiff took no further actions beyond these emails (Vasan Decl.). He did not accept a job offer, engage or participate in a competing business, attempt to solicit any Checkmate employees or customers, share confidential information or disparage the company. Plaintiff has not alleged any facts beyond these emails, so there is simply no basis for any claim of breach nor any damages for Plaintiff to calculate from the defectively alleged breach.

### 3. The Agreement Is Void and Unenforceable Under Delaware and New York Law

The agreement defines Checkmate as "Acquirer" and VoiceBite as "Company" at the outset, but alternates between using "Company" to refer to VoiceBite and at times seemingly to Checkmate itself—often within the same section or even sentence. This shifting and circular usage renders it impossible to determine which entity's business or interests are being protected, defeating any claim to a clear and enforceable restriction. This ambiguity is fatal.

Under California law, restrictive covenants are strictly construed, and any ambiguity is resolved against enforcement.[27] The agreement conditions enforceability on employment by "Company." Plaintiff was only employed by Checkmate, not "Company." Where, as here, a

---

[27] See *FP UC Holdings, LLC v. Lanard*, 2024 WL 1305894, at *7 (Del. Ch. 2024); Brown & Brown, Inc. v. Johnson*, 25 N.Y.3d 364, 371 (2015).

condition precedent fails, the agreement is unenforceable.[28] Moreover, Plaintiff provided no separate consideration in exchange, rendering the agreement void regardless.[29]

### 4. No Legitimate Business Interest to Protect

The agreement defines "Business" as "the Company's current business of providing artificial intelligence powered voice systems." Neither VoiceBite nor Checkmate had any business operations, customers, or goodwill in the voice AI market at the time of agreement. With no legitimate interest to protect, the agreement fails under any applicable governing law.[30]

### 6. Mutual Non-Disparagement—Checkmate's Breach

From the outset of employment, Checkmate executives singled out Plaintiff for advocating for his team's legal and contractual rights (see Exhibit M, "BYOD Retaliation"). This conduct escalated when Plaintiff demanded timely payment of back pay and earned bonuses[31].

By any reasonable interpretation, these actions constitute a direct breach of the *mutual* non-disparagement provision. Thus, not only is Checkmate unable to articulate a colorable breach by Defendant, but it is also itself in violation of the very agreement it seeks to invoke.

### 7. Dismissal with Prejudice is Warranted due to the Evidence on Record

Checkmate's continued prosecution of this claim, in light of dispositive evidence to the contrary, is improper and should not be tolerated by this Court. Where, as here, amendment would be futile and no colorable claim can be pleaded, dismissal with prejudice is required to preserve judicial resources and protect Plaintiff from further abusive litigation.

### 8. The Non-Competition Agreement is Void Under its Own Terms

Under its *bargained for* terms, the Agreement terminates under its own accord if the Stockholder (Plaintiff) is terminated without Cause or if he resigned for Good Reason:

---

[28] See *Miller v. HCP & Co., LLC*, 2018 WL 656378 (Del. Ch. 2018) (Courts will not enforce restrictive covenants where conditions precedent to enforceability are not met)

[29] See *Schroeder v. Silverman*, 179 A.D.2d 624, 625 (N.Y. App. Div. 1992). ("A covenant not to compete lacking adequate consideration is unenforceable.")

[30] Defendant notes this issue is typically Summary Judgment territory and preserves it here.

[31] Checkmate's pattern of conduct included regular threats of termination and public shaming in front of his teammates, including referring to Defendant as "a problem." These actions persisted through his termination and beyond. After Defendant's termination meeting, Checkmate executives Michael Bell and Amy Brown can be heard discussing their ongoing efforts to isolate and disparage Defendant in order to justify the termination to the team.

> The Restrictive Period shall terminate if Stockholder terminates his employment for Good Reason or the Company terminates Stockholder's employment other than for Cause. ¶ 1

Moreover, "Cause" is to be determined by a specified process: good faith negotiation followed by mediation/arbitration if required:

> Any controversy, dispute or claim regarding whether a termination is for Cause shall first be settled through good faith negotiation. If the dispute cannot be settled... the parties agree to attempt in good faith to settle... by mediation administered by JAMS... ¶ 12

At no time did Checkmate invoke or initiate this process. Instead, having cited the emails as "cause" at time of termination, it subsequently repudiated its own rationale—repeatedly asserting in demand letters and official court filings that Defendant had *resigned*[32]. See RJN C.

Under these circumstances, Checkmate is ***estopped*** from asserting any theory of "cause" and the contract's post-termination restrictions—including the non-compete, non-disparagement, non-solicit and forum selection provisions are void and unenforceable as a matter of law.

### D.  Fraud Counterclaims Fail Under Rule 9(b) and Are Evidence of Retaliation

Checkmate's fraud claims (Fourth and Fifth Causes of Action) fail catastrophically under both Rule 9(b)'s heightened pleading standards and Rule 12(b)(6)'s basic requirements. These claims represent a fundamental misunderstanding of what constitutes fraud under the law.

#### 1. Complete Failure to Satisfy Rule 9(b)'s Particularity Requirements

Checkmate's counterclaim falls short of the heightened threshold on multiple fronts:

**No Temporal Specificity**: Checkmate uses vague, conclusory phrases: "throughout the Transaction" (¶57) and "by way of numerous representations made to Checkmate throughout the Transaction" (*Id*.) without identifying when any specific representation was allegedly made. Rule 9(b) requires "the time" of each statement, not sweeping references to multi-month periods.

---

[32] This tactic was no oversight: by claiming resignation, Plaintiff sought to evade its contractual obligation to pay severance totaling over $120,000—only to belatedly claim "for cause" when its ruse was up.

**No Geographic Specificity**: Checkmate fails entirely to identify where any alleged oral misrepresentations were made. For written representations, Plaintiff provides no document dates, meeting locations, or other indicia of place required by Rule 9(b)[33].

**No Particularized Scienter**: Checkmate makes only generic, conclusory allegations that "Vasan knew they were false when he was making them" (¶19) without any factual allegations about what Defendant specifically knew, when he knew it, or how Plaintiff can prove his mental state. Rule 9(b) requires more than threadbare assertions of intent.

These failures require dismissal under Rule 9(b) and are incurable as a matter of law.

### 2. Checkmate's Own Allegations Prove the Absence of Fraud

Moreover, Checkmate has pleaded facts that affirmatively negate the essential elements of fraud. The "evidence" Checkmate cites proves transparency and good faith, not deception.

If Plaintiff were actually attempting to conceal his father's contributions, he obviously would have removed his father's name from the code—a task requiring a simple search-and-replace. The fact that "Vasan Varadarajan" remained clearly visible in the code proves the exact opposite: there was no intent to hide anything because there was nothing meaningful to hide.

Checkmate concedes that Plaintiff "discussed with his co-founders the possibility of disclosing to Checkmate the fraudulent representations he made concerning VoiceBite's AI technology". Cmpl. ¶35. This allegation is dispositive. Fraudsters do not discuss disclosure with others—they hide their conduct. The fact that Plaintiff <u>advocated transparency</u> but ultimately accepted the *team's consensus* on what constituted appropriate disclosure, shows good faith and collaboration, not intent to deceive—and highlights the collective nature of the negotiations.

### 3. Checkmate Misattributes Team Conduct to Individual Defendant

Plaintiff's fraud theory treats Defendant as a sole rogue actor, when in fact VoiceBite had three co-founders with shared responsibilities, who negotiated and acted jointly.

**Wrong Person for Disclosure Duties**: Plaintiff provides no allegations about who was responsible for data room management, disclosure updates, or documentation during closing.

---

[33] Plaintiff's failure to identify where any alleged misrepresentations were made is not accidental—it is strategic. Every location where negotiations occurred, every meeting where representations were allegedly made, and every discussion about the technology took place in California. Plaintiff cannot comply with Rule 9(b)'s basic requirement to plead 'where' without undermining their jurisdiction arguments and proving this case belongs in California, not New York.

1    Defendant cannot have fraudulent intent for duties that were not his responsibility. If there were any
2    material disclosure deficiencies—which Defendant disputes—they would represent collective team
3    oversights in a complex transaction, not individual fraud.

4        **Misattribution of Statements**: The most egregious example appears at Cmpl. ¶ 33, where
5    Checkmate attributes to Plaintiff statements that were made by joint shareholder counsel in response
6    to Checkmate's Notice of Claim against all VoiceBite founders. Counsel's nuanced legal argument
7    that functional code did not constitute intellectual property under recent Supreme Court precedent
8    was distorted into an alleged "admission" by Plaintiff. This demonstrates fundamental confusion—or
9    deliberate deception—about who said what and when.

10        4. No Material Misrepresentation

11        Checkmate's fraud claim fails under Rule 12(b)(6) and Rule 9(b) because it does not plead
12   facts showing a material misrepresentation. It alleges, at most, that certain statements about
13   authorship or "originality" of certain functional code modules were inaccurate. But it nowhere
14   alleges, except in wholly conclusory terms, that these statements were material to its decision to
15   enter the transaction or would have altered the value, functionality, or marketability of what was
     acquired. Rule 9(b) requires particularized factual allegations of materiality; none are provided.

16        In reality, the disputed code consists of functional modules that Plaintiff co-wrote with his
17   father over many years, not the large language model AI voice ordering that was VoiceBite's core
18   innovation and continues to be used and developed by Checkmate. Checkmate acquired exactly what
19   it bargained for: a fully formed Voice AI team and technological foundation to develop Voice AI
20   products. The existence of the disputed modules did not change VoiceBite's technical capabilities,
21   market value, or business prospects. You cannot commit fraud over immaterial technical details that
22   affect neither the product's functionality nor its value.

23        5. No Cognizable Damages

24        Here, Checkmate does not allege with any particularity that it failed to receive the value it
25   bargained for. The allegations are wholly conclusory: Checkmate admits it acquired the full
26   VoiceBite team, technical foundation, and product roadmap, which are currently being used to
27   develop and launch successful voice AI products—including with major customers such as
28   Popeye's. There are no non-conclusory allegations that any alleged omission or misstatement caused

loss of value, loss of functionality, or other cognizable harm. On the contrary, Checkmate has received and profited from exactly what it sought to acquire.

Because Checkmate has not pled facts showing any actual injury resulting from the alleged fraud, the claim fails as a matter of law and must be dismissed.[34]

### 6. No Reasonable Reliance

Checkmate cannot claim reasonable reliance while simultaneously claiming it was duped by obvious, easily discoverable information. Checkmate had every opportunity to ask for a code walk-through with technical members of its team. Rather than insist on overbroad IP agreements, unsuitable for a young unfunded startup, it could have required a code review before proceeding.

### 7. The Negligent Misrepresentation Claim Fails for the Same Reasons

Checkmate's negligent misrepresentation claim fails for all the same reasons as the fraud claim, plus the additional unfulfilled requirement that Plaintiff owed Checkmate a duty of care. Checkmate has called the merger an "arm's length commercial transaction between sophisticated parties with counsel". In such a transaction, no such special duty exists.

### 8. Plaintiff's Fraud Allegations are Evidence of its Own Fraudulent Conduct

The IP Letter and Assignment Agreements were coerced at the 11th hour, after negotiations had explicitly concluded[35]. Checkmate has not provided the executed copies of these agreements— alone fatal to its claims—but moreover, cannot allege with specificity actual consideration provided in exchange for the *personal* liability it purports they confer. Checkmate's wholly conclusory assertions of the validity of these agreements cannot survive rule 9(b).

Checkmate's counterclaim relies on vast leaps of logic. The mere presence of a name in a codebase does not justify an inference of infringement or misappropriation.[36] All use of legacy code was expressly authorized. But even assuming infringement—which is denied—this does not, without

---

[34] *See, e.g., Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996); *Nicolet, Inc. v. Nutt*, 525 A.2d 146, 149 (Del. 1987).

[35] See CA Cmpl. ¶¶ and Exhibit P, "IP Letter Summary".

[36] See *Cadence Design Sys., Inc. v. Pounce Consulting, Inc.*, 2019 WL 1768618, at *2 (N.D. Cal. Apr. 22, 2019)* (Similarity in file headers or code structure, without more, does not plausibly allege misappropriation or fraud.).

particularized allegations, support an inference of fraud.[37] *Even* if Plaintiff could plead fraud, all code was transferred by VoiceBite to Checkmate, not by Defendant personally.

### E. Breach Counterclaims Are Legally and Contractually Defective

To state a viable counterclaim for breach of contract, a party must plausibly allege: (1) the existence of a valid and enforceable contract; (2) the party's own substantial performance or excuse for nonperformance; (3) the opposing party's material breach; and (4) resulting damages.[38]

Checkmate's breach counterclaims fail under each element. First, as detailed above, the contracts at issue are void or voidable in whole or in part under California public policy and the specific doctrines of duress, unconscionability, and statutory illegality.[39] Second, Checkmate fails to plausibly allege its own substantial performance under the purported agreements—a required element under California law.[40] Third, the counterclaims ignore fundamental defenses such as waiver, estoppel, and prior material breach, all of which bar recovery when the party asserting breach has itself failed to perform.[41] Moreover, any attempt to recover under contract in violation of California wage statutes is independently barred.[42] Because the breach counterclaims are fatally defective both as a matter of law and under the operative contracts, they must be dismissed.[43]

### F. Declaratory Relief Counterclaim Seeks to Endorse Wage Theft

---

[37] See Vasan Decl. ¶ 4-5; Varadarajan Decl. ¶ 3; *Medidata Sols., Inc. v. Veeva Sys. Inc.*, 2021 WL 467110, at *3 (S.D.N.Y. Feb. 9, 2021)* ([T]hat code or data originated elsewhere is not, without more, evidence of misappropriation or fraud. A complaint must allege facts—beyond technical artifacts—connecting the defendant to wrongful conduct.).

[38] See **Reiniger v. W.L. Gore & Assocs., Inc.**, 2024 WL 353429, at *3 (C.D. Cal. Jan. 30, 2024) (applying California law; quoting **Oasis W. Realty, LLC v. Goldman**, 51 Cal. 4th 811, 821 (2011)); **Iqbal v. Ashcroft**, 556 U.S. 662, 678 (2009) (plausibility standard applies to all pleadings, including counterclaims); **Miller v. Glenn Miller Prods., Inc.**, 454 F.3d 975, 988 (9th Cir. 2006).

[39] See **Edwards v. Arthur Andersen LLP**, 44 Cal. 4th 937, 945–46 (2008); **Narayan v. EGL, Inc.**, 616 F.3d 895, 899–902 (9th Cir. 2010).

[40] **See Oasis W. Realty, 51 Cal. 4th at 821; Restatement (Second) of Contracts § 237.**

[41] See **Brown v. Grimes**, 192 Cal. App. 4th 265, 277–78 (2011).

[42] See **Lab. Code § 1194(a)** (employee may recover unpaid wages "notwithstanding any agreement to work for a lesser wage"), **Section 16600 et seq.** (voiding restrictive covenants), and **Lab. Code § 925** (voiding forum selection and choice-of-law clauses that deprive California employees of California protections).

[43] See **Iqbal**, 556 U.S. at 678; **Pineda v. Sun Valley Packing, L.P.**, 2021 WL 3466899, at *5 (C.D. Cal. May 4, 2021) (dismissing contract-based counterclaims incompatible with statutory rights).

It is well-settled that a declaratory judgment claim may not be used to evade statutory protections or to obtain a declaration that would contravene fundamental public policy.[44] The Ninth Circuit has repeatedly cautioned that courts should decline to entertain declaratory relief claims that would merely rubber-stamp conduct prohibited by controlling law or public policy.[45]

Here, Checkmate's counterclaim for declaratory judgment effectively seeks an order authorizing its refusal to pay wages and bonuses earned under California law. Such relief would directly violate the fundamental policies embodied in the California Labor Code, including §§ 201–203 (timely payment), § 204 (regular paydays), and § 1194 (right to recover unpaid wages). Federal courts sitting in California have repeatedly refused to entertain declaratory claims that would enable wage theft or undermine employees' statutory rights.[46]

Accordingly, this Court should dismiss Checkmate's counterclaim for declaratory relief, as it seeks a judicial endorsement of conduct that would violate core statutory protections and well-established public policy against wage theft.

### G. Failure to Allege Satisfaction of Condition Precedent and Join Indispensable Parties

The requirement to join all indispensable parties in this case is not only a matter of procedural formality—it is a core protection expressly *bargained for* by the VoiceBite founders, and one democratically codified in state and federal law. The merger agreement reflects the parties' deliberate choice to structure rights and responsibilities collectively, anticipating that any dispute or claim would be resolved with the participation and protection of all pre-closing equity holders. This bargained-for protection is itself reinforced by the *voted-for* safeguards of Rules 12(b)(7) and 19, as well as fundamental principles of California contract and employment law. Checkmate's attempt to circumvent both sets of protections—by isolating Plaintiff while withholding benefits from the entire

---

[44] See **MedImmune, Inc. v. Genentech, Inc.**, 549 U.S. 118, 126–27 (2007) (declaratory relief must present an actual controversy and cannot be used as an instrument to undermine substantive law); **Wilton v. Seven Falls Co.**, 515 U.S. 277, 288 (1995) (declaratory relief is discretionary and must serve the interests of justice, not frustrate statutory mandates).

[45] **United States v. State of Wash.**, 759 F.2d 1353, 1357 (9th Cir. 1985);

[46] See, e.g., **Pineda v. Sun Valley Packing, L.P.**, 2021 WL 3466899, at *4 (C.D. Cal. May 4, 2021) (dismissing declaratory counterclaim that would "circumvent statutory wage rights"); **O'Brien v. Cam West, Inc.**, 2016 WL 1555659, at *4 (C.D. Cal. Apr. 14, 2016) (no declaratory relief to negate statutory wage protections).

team—is fundamentally unjust, and precisely the type of litigation conducts these rules were designed to prevent. This unfairness manifests itself in two distinct, yet closely intertwined ways:

**First**, Plaintiff cannot possibly receive a fair trial when isolated from Mr. Nessler and Mr. Lam. As affirmed in the Nessler Decl. ¶¶2-3, all key decisions and negotiations were made collectively as equal partners—and in the interest of the five pre-closing equity holders. This collective process was explicitly bargained for as a core protection against the kind of divide-and-conquer litigation tactic at issue in this dispute. The founders were induced to believe that any dispute or attempt to deny the agreed-upon benefits would force Checkmate to act against all of them, not just one, and to risk sacrificing its entire Voice AI product in the process. If there were any liability arising from the team's good-faith actions—which the founders categorically deny[47]—it was always intended to be shared pro rata, as set forth in the Merger Agreement.

**Second**, Mr. Lam, Mr. Nessler, Mr. Aoki, and Mr. Garcia have also been denied their hard-earned wages—even as they continue working for the benefit of Checkmate. They subsist in an untenable position: their participation in this litigation, in support of their teammate and their own financial interests, directly risks retaliation under Checkmate's transparent strategy to unwind the very merger it claims was "bargained for." Three of these pre-closing equity holders are lifelong California residents. Yet rather than facing the team collectively with their shared knowledge, strategy and resources, Checkmate isolates and targets Plaintiff alone, seeking to deny benefits to all by litigating against one. This attempt to play both sides—using litigation against Plaintiff as a pretext to deny payment to the entire founding team—is not just a violation of the parties' bargain; it is a dangerous and novel legal theory that, if endorsed, would permit any employer to withhold wages indefinitely from entire acquired teams by initiating litigation against a single member.

These abusive tactics, now also being contested through shareholder counsel Mr. Thomas, amount to a transparent attempt to turn a supposedly fair bargain into a swindle of a California startup—one founded in a Cupertino garage by its original team, who devoted themselves to building Checkmate's Voice AI product, now live in major national brands like Popeye's Louisiana

---

[47] See Nessler Declaration on Behalf of the VoiceBite Pre-Closing Equity Holders

Kitchen. The continued progress and viability of the VoiceBite project independently refute any
claim of fraud or any attempt to circumvent contractual indemnification caps.

### H. Dismissal With Prejudice and Sanctions Are Warranted

Dismissal with prejudice is not only justified but required in light of the extraordinary record
before this Court. Rule 12(b)(6) mandates dismissal where, as here, a party fails to state any
plausible claim for relief, and amendment would be futile.[48] Each of Checkmate's counterclaims is
not merely defective, but rests on legal theories and factual assertions already rejected by this Court,
contradicted by controlling California law, and further refuted by the record, including Checkmate's
own admissions, judicially noticed filings in the SDNY action and party witness declarations.

Moreover, sanctions are warranted under both the Court's inherent authority and 28 U.S.C. §
1927. A federal court may impose sanctions where a party's conduct demonstrates bad faith, abuse
of process, or a pattern of frivolous and retaliatory litigation.[49] Here, Checkmate's counterclaims are
not a good faith attempt to vindicate rights or recover damages, but a desperate effort to intimidate,
retaliate, and delay final resolution through meritless pleadings. Its copy-pasted counterclaims,
refusal to join clearly indispensable parties, and pursuit of claims barred by law and by its own
evidence all reflect a broader scheme to weaponize process and punish those who insist on their
statutory and contractual rights. Courts routinely issue sanctions for such conduct, both to
compensate the injured party and to deter further abuse.[50]

## VI.    CONCLUSION

The VoiceBite team worked together in close collaboration for over six years, across five
companies, pioneering practical voice AI for restaurant ordering. At least three of the space's most
prominent competitors were either founded directly by Plaintiff and Mr. Nessler or built from
companies acquired from them—most notably Kea, which became the first widely deployed AI-

---

[48] See *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008) (dismissal with prejudice appropriate where amendment would be futile, or claims are legally deficient).

[49] See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45–46 (1991); *Fink v. Gomez*, 239 F.3d 989, 991–94 (9th Cir. 2001).

[50] See *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 108–09 (2017) (a sanction must be compensatory rather than punitive when imposed pursuant to civil procedures); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395–97 (1990).

powered phone ordering service for restaurants,[51] and Presto, which transitioned from a "tablet on the table" startup to a Voice AI leader and went public, substantially due to the acquisition of CyborgOps and the visionary leadership of Plaintiff, Mr. Nessler, Mr. Lam—then Voice PM at Presto.[52] Mr. Varadarajan—the "third party" in Checkmate's complaint, and fellow CyborgOps cofounder—has expressly refuted any 3rd party claims to VoiceBite's IP or any liability to Checkmate (see Varadarajan Decl., judicially noticed at Checkmate's request).

Plaintiff, Mr. Nessler, and Mr. Lam left Presto when new management refused to pursue true automation with emerging Large Language Model (LLM) AI technology. Their vision—LLM-powered voice AI—was the core of what they built at VoiceBite and ultimately "sold" to Checkmate. The deal was never about a static codebase, but about their vision, roadmap, track record, and the novel AI codebase they were actively developing. Checkmate CEO Vishal Agarwal himself acknowledged this via an official merger press release:[53]

> In the coming Q3 or Q4 of this year, Agarwal anticipates the addition of an AI-voice drive-thru product. VoiceBite was founded just last year. When asked what attracted Checkmate to go all-in with the startup, he said the three co-founders, Robert Nessler, Arjun Vasan and Chris Lam, have extensive experience in developing successful voice AI solutions. With former roles in companies such as kea and Presto, the trio has helped create products for hundreds of quick-service restaurants. – Food on Demand Press Release, June 12, 2024

Checkmate's claims about buying VoiceBite "for the code" are therefore facially unsustainable. Nevertheless, the founding team—and two consultants, including a star engineer who joined Checkmate along with the founders—developed their LLM based product after Plaintiff

---

[51] Kea, which has by now raised over $45 million in venture funding, was co-founded by Plaintiff as President and CTO, with Mr. Nessler as first employee and operations lead, and became the first widely deployed AI-powered phone ordering service for restaurants, rolling out at hundreds of Domino's locations and outcompeting Domino's own partnership with Google for franchisee customers—all built on an innovative human-in-the-loop (HITL) assisted AI system co-invented and operated by Plaintiff and Mr. Nessler.

[52] Plaintiff, Nessler, and Plaintiff's father (Mr. Varadarajan) advanced their HITL+AI concept at CyborgOps, collaborating with OpenAI engineers on early integration with what would become ChatGPT, and pioneering multilingual AI ordering with clients ranging from small Chinese restaurants to pizza giant Marco's Pizza. Presto acquired CyborgOps where Mr. Lam was Voice Product Manager of a yet-to-launch product. Presto recognized their drive-thru ordering ambitions required HITL as existing AI technology was insufficiently advanced. This acquisition, and collaboration with Mr. Lam, paved the way for Presto's public listing and rollout at major chains like Carl's Jr., Del Taco, and Wienerschnitzel.

[53] Official merger press release and party admission, posted at Food On Demand—a prominent industry publication—on June 12, 2024: https://foodondemand.com/06122024/checkmate-steps-out-with-a-new-identity-and-expanded-ordering-solutions/. Admissible under Fed. R. Evid. 801(d)(2); see *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).

messaged CEO Agarwal over LinkedIn, seeking partnership and customers, not to sell their startup (then just two months old). During merger negotiations—*initiated by Checkmate and resisted strongly by Plaintiff*—the team was determined to build technology of real value, a goal openly discussed among themselves and with Agarwal and Bell. The codebase and product roadmap developed during negotiations continues to serve as the foundation for Checkmate's Voice AI ambitions to this day (Nessler Decl. ¶¶ 12–14, 18).

To reduce these efforts to a dispute over "ownership of code," without any plausible theory of damages, is not only baseless—it is an affront to both the team's legacy and the spirit of California innovation. To pretend as if Plaintiff built and sold VoiceBite entirely on his own—or as some sort of solo mastermind—is an injustice to his cofounders—an injustice compounded by Checkmate's inexcusable misrepresentations[54] presented in the SDNY and now polluting this esteemed Court. Through abuse of process—including repeated and ongoing witness intimidation and retaliation—and indeed fraud upon two federal courts, Checkmate seeks to turn the parties' purported "bargain" into a swindle. California public policy demands more. The founders deserve more. Plaintiff respectfully requests that the Court grant relief as set forth in the concurrently filed [Proposed] Order, and award such further relief as the Court deems just and proper.

**Respectfully Submitted**,

Dated: **August 06, 2025**                                            */s/ Arjun Vasan*

    In **Cerritos, CA**

    _____

                                                                **Arjun Vasan**

                                                                Plaintiff In Pro Per

---

[54] See Plaintiff's Post-Dismissal Motion for Sanctions filed in SDNY (submitted for Judicial Notice concurrently with this motion) and his Motion to Strike Affirmative Defenses and Counterclaim Allegations also filed concurrently herewith.