**ARJUN VASAN**

PLAINTIFF IN PRO PER

12615 193RD STREET

CERRITOS, CA 90703

562-900-6541

ARJUN.VASAN@GMAIL.COM

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>        Plaintiff and Counter-Defendant,<br><br>   v.<br><br>CHECKMATE.COM, INC.,<br><br>        Defendant and Counterclaimant. | Case No.: 2:25-cv-00765-MEMF-JPR<br><br>**MEMORANDUM IN REPLY TO DEFENDANT'S 6(b)(1)(B) REQUEST FOR AN EXTENSION OF TIME**<br><br>Complaint filed: January 28, 2025<br><br>Hearing Date: October 9, 2025<br><br>Hearing Time: 10 a.m. |

**TO THE HONORABLE COURT**:

   Defendant Checkmate.com, Inc. ("Checkmate") asks the Court to excuse oppositions that were due August 29, 2025, under the Court's Standing Order. The request should be denied and Plaintiff Arjun Vasan ("AV")'s motions deemed unopposed under C.D. Cal. L.R. 7-12 because under Rule 6(b)(1)(B) and Pioneer, Checkmate (i) created concrete prejudice by using the three-week lapse to press non-party discovery on its counterclaims, (ii) seeks a material twenty-day reset, (iii) offers no reason outside its control despite three designated trial counsel and prior adherence to the Standing Order, and (iv) exhibits email gamesmanship that undermines good faith. If the Court permits late oppositions, it should condition leave to cure the prejudice caused by Checkmate's delay and to prevent the use of non-party discovery to backfill a deficient pleading.

1

I.   **The Standing Order Governs; L.R. 7-12 Applies**

The Standing Order requires oppositions 14 days after the motion is filed and expressly states that a continuance does not alter the briefing schedule. Checkmate did not file by August 29 and did not seek relief before the deadline. Notably Checkmate has, prior to this lapse, filed according to the modified schedule. It is hard to believe that it "forgot". Under L.R. 7-12, the failure to file a required paper within the deadline "may be deemed consent" to the motion. The Court should enforce both directives here and deem the motions unopposed.

II.   **Checkmate has not shown "Excusable Neglect" under Pioneer**

The Pioneer factors — (1) prejudice to the non-movant, (2) length/impact of the delay, (3) the reason and whether within control, and (4) good faith—all cut against relief on this record.

   A.   **Prejudice is Substantial and Concrete**

While the opposition clock ran (Aug. 25–29) and after it lapsed, Checkmate was actively corresponding with Plaintiff and pressing counterclaim-related discovery, including broad non-party subpoenas. That conduct leverages the missed deadline in an attempt to manufacture plausibility for counterclaims it chose not to defend, burdening Plaintiff and third parties (including a subpoena for an in-person deposition to Plaintiff's 70-year-old father with health issues). This is not an abstract timing complaint; it is real prejudice in cost, burden, and litigation leverage.

   B.   **Material Length of Delay**

Checkmate proposes to file on September 18—20 days late, disrupting the schedule that AV followed, and further proposes even further delay by continuance. This is not a brief calendaring slip; it is a three-week reset during which Checkmate continued discovery efforts.

   C.   **The Delay was within Counsel's Control**

Checkmate offers shifting explanations: a mistaken reliance on L.R. 7-9 and a late-arising family emergency (which occurred *after* the deadline had passed). But Checkmate repeatedly told AV (and the Court) it had multiple trial counsel covering this case:

- July 24 email identifying Rebecca Makitalo, Ryan Keech, and Stacey Chiu as the attorneys for case correspondence (Ex. A).

- During the Aug. 7 Rule 26(f) Conference, AV asked multiple times about the new lead counsel, getting the same evasive answer. Ms. Makalito finally named Mr. Keech as the lead.
- After the call, however, Mr. Keech accused AV of gender bias for allegedly not believing a "woman lawyer" could be the lead, and stated Ms. Makalito was the actual lead. Ex. B.
  - Due to this baseless accusation, AV has requested that all the meetings be mutually recorded, which Checkmate refuses to consent to, and insists instead that AV must foot the bill for any court reporter if he wishes to document the meetings.
- The Aug. 14 Joint 26(f) Report states, however: "Trial counsel for Defendant will be Ryan Q. Keech, Stacey Chiu, and Rebecca I. Makitalo." (Dkt. 78 at 15, § O, ¶ 24)

Any one of these designated lawyers could have (i) filed a two-paragraph Rule 6(b) request before August 29, (ii) sought a short stipulation, or (iii) alerted the Court. None did. Choosing a conflicting Local Rule over the judge-specific Standing Order—and then doing nothing until well after the miss—is not "neglect"; it is noncompliance by choice within counsel's control.

*Capacity matters*. If a four-lawyer team can stack individual "personal emergencies" to excuse a missed, judge-specific deadline while a single pro se litigant has only his own bandwidth, the Pioneer calculus would systemically reward the better-resourced party. Rule 6(b) does not create a "one-attorney exception" for multi-counsel litigants.

### D. Good Faith is Undermined by Sequence of Events and Email Gamesmanship

Checkmate did not mention any emergency when it sought a stipulation; instead, it tried to extract one by asserting that <u>AV's reply was "late"</u> despite not filing anything to reply to. This was yet another failure to actually read the Standing Order, which clearly states that a Reply is due seven days <u>after the Opposition</u>. In a prior episode (the OSC for L.R. 7-3 failures), Checkmate similarly offered a late-breaking personal-emergency explanation only at argument. AV does not wish to question personal circumstances but suggests that the post-hoc Aug. 30 emergency here is not relevant, as the other attorneys received the same message and none did anything. AV further notes the only autoreply stated, "in trial" (not "out of office"), and came on Sept. 3, not Aug. 30. Ex F.

Moreover, Checkmate has repeatedly tried to script a record of "uncooperative" conduct by engineering email threads. Representative tactics include (i) opening new threads mid-discussion so

later exhibits omit AV's responses; (ii) refusing to provide a Word version of a joint filing, then demanding one and threatening to "tell the Court" when AV returns the document in PDF (Aug. 14) (Ex. C); (iii) imposing unilateral meet-and-confer demands while rejecting AV's reasonable request to combine topics and to record the conference given its past misrepresentations (Aug. 25–29) (Ex. D); and (iv) rejecting any meeting that addressed AV's concerns and brandishing Rule 37 while threatening to bypass the Local Rule 37 joint-stipulation process (Sept. 10) (Ex. D).

Checkmate has thus far declined to discuss its subpoena to AV's 70-year-old father, who has objected to the overbroad document requests (including "all communications" with AV for nearly three years, sweeping in personal, health related and other privileged documents). Checkmate has, to date, insisted on an in-person deposition for a witness with significant health issues.

The complete threads of the emails cited to show AV's "intransigence" reveal Checkmate's scheme. The pattern is not a good-faith effort to resolve disputes; it is a paper trail designed to paint AV as uncooperative (or threaten such to achieve concessions, as it attempted here); this further counsels against excusing Checkmate's deliberate noncompliance with the Standing Order.

### III. AV's Conduct has been Diligent and Fair

AV has never missed a deadline. When additional time was needed earlier due to inpatient medical care (July 9–Aug. 4, 2025), AV notified counsel and the Court well before any due date, <u>timely filed</u> on August 6, noted the planned filings in the Aug. 14 Joint 26(f) Report (Dkt. 78, ¶ 13) and then amended on August 15 as promised. Here, by contrast, Checkmate neither informed AV nor sought relief before the lapse. Indeed, if AV had not informed Checkmate, it would have presumably filed its untimely oppositions without seeking leave.

To minimize burden while allowing merits testing, AV also offered a fair stipulation:

(1) A freeze on counterclaim discovery, holding existing subpoenas in abeyance pending the ruling on AV's Motion to Dismiss.

(2) A prompt amendment within 7 days that (a) attaches any document containing the statements Checkmate alleges AV made in full context; and (b) trims and particularizes the forty-six affirmative defenses to a manageable number with supporting facts—upon

which AV would withdraw his motion to strike and timely file a new Motion to Dismiss or Answer the counterclaims.

Checkmate has declined, confirming its aim to use discovery to backfill its pleading. This is precisely why Twombly/Iqbal require the "doors of discovery" remain closed pending plausibility.

### IV. Their Authorities Don't Help Them.

The cases Checkmate cites (e.g., Ahanchian, Pincay, Bateman, and district-court exercises of discretion) involve prompt pre-deadline requests or brief, credibly explained lapses without prejudice to the non-movant. None condones ignoring a judge-specific order after notice, with multiple counsel available, while leveraging the gap for discovery. None concerns a litigation that has already been through several rounds of briefing. Keech, Chiu and Makitalo have all been on Checkmate's captions since the start of this dispute. <u>Until now, Checkmate has adhered to the Court's schedule</u>. It simply cannot be the case that Checkmate's counsel forgot, conveniently. And its assertion that denying leave "could be futile [read: fatal] to [their] claims and defenses" is legally irrelevant: Pioneer asks why the deadline was missed and whether the equities justify forgiveness— not whether enforcing the Court's deadline harms the strategic priorities of a party who ignored it.

### V. Requested Disposition

The Court should enforce its Standing Order and deem AV's motions unopposed under L.R. 7-12; take them under submission or grant them. Alternatively, the Court may impose conditions that prevent "fish-first, plead-later" tactics that unduly burden AV's friends and family. With a freeze on counterclaim-related discovery, AV too prefers the motions be decided on the merits.[1]

/s/ *Arjun Vasan*

**Dated**: September 16, 2025

**Arjun Vasan**, Plaintiff In Pro Per

---

[1] AV regrets burdening the court with the lengthy email exhibits, which are but a sample of the relevant threads, but has no alternative way to demonstrate Checkmate's email gamesmanship.