Ryan Q. Keech (SBN 280306)
 Ryan.Keech@klgates.com
Stacey Chiu (SBN 321345)
 Stacey.Chiu@klgates.com
Rebecca Makitalo (SBN 330258)
 Rebecca.Makitalo@klgates.com
Jacob R. Winningham (SBN 357987)
 Jacob.Winningham@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Defendant and Counter-Claimant*
*CHECKMATE.COM INC.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>             Plaintiff,<br><br>      v.<br><br>CHECKMATE.COM INC.,<br><br>             Defendant.<br><br>CHECKMATE.COM INC.,<br><br>             Counterclaim-Plaintiff,<br><br>      v.<br><br>ARJUN VASAN,<br><br>             Counterclaim-Defendant. | Case No. 2:25-CV-00765-MEMF-JPR<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**DEFENDANT CHECKMATE.COM INC.'S OPPOSITION TO PLAINTIFF'S SECOND MOTION TO DISMISS COUNTERCLAIMS**<br><br>[*Filed concurrently with Declaration of Rebecca Makitalo*]<br><br>Complaint Filed: January 28, 2025<br>Amended Complaint Filed: February 21, 2025 |

# **TABLE OF CONTENTS**

**Page**

I.  INTRODUCTION ...................................................................................................1

II.  ARGUMENT .......................................................................................................2

III.  PLAINTIFF'S SECOND MOTION TO DISMISS VIOLATES THE
     RULES ................................................................................................................2

IV.  CHECKMATE HAS ADEQUATELY ALLEGED ITS CLAIMS ..................4

     A.  Breach of Contract ...................................................................................4

     B.  Fraud .........................................................................................................9

     C.  Negligent Misrepresentation .................................................................13

     D.  Declaratory Judgment ...........................................................................14

V.  PLAINTIFF FAILS TO MEET HIS BURDEN TO SHOW
    INDISPENSABILITY .......................................................................................15

VI.  NONE OF PLAINTIFF'S OTHER ARGUMENTS SUPPORT
     DISMISSAL ......................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aetna Life Ins. Co. v. Alla Med. Servs. Inc.*,
   855 F.2d 1470 (9th Cir. 1988) ............................................................................. 3

*Albert's Organics, Inc. v. Holzman*,
   445 F.Supp.3d 463 (E.D. Cal. 2020) ................................................................. 4, 5

*Barkhordar v. Century Park Place Condo. Ass'n*,
   Case No. 2:16-cv-03071-CAS(Ex), 2016 WL 4367226 (C.D. Cal.
   Aug. 11, 2016) ..................................................................................................... 16

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .............................................................................................. 6

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) .................................................................................. 2

*Chilicky v. Schweiker*,
   796 F.2d 1131 (9th Cir. 1986), *rev'd on other grounds* 487 U.S. 412
   (1988) .................................................................................................................... 3

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ................................................................................ 2

*Edwards v. Arthur Andersen LLP*,
   44 Cal.4th 937 (2008) ........................................................................................... 8

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) .............................................................................. 2

*Erickson v. Pardus*,
   551 U.S. 89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007) ...................................... 2

*ESG Cap. Partners, LP v. Stratos*,
   828 F.3d 1023 (9th Cir. 2016) ............................................................................ 11

*Friedman v. Merck & Co.*,
    107 Cal. App. 4th 454 (2003) ............................................................................ 13

*Hybrid Fin. Ltd. v. Hammitt, Inc.*,
    CV 22-8635 DSF (MRWx), 2023 WL 3150092 (C.D. Cal. Mar. 6,
    2023) ..................................................................................................................... 2

*Interserve, Inc. v. Fusion Garage PTE. Ltd.*,
    No. C 09-5812 RS (PSG), 2011 WL 500497 (N.D. Cal. Feb. 9,
    2011) ................................................................................................................... 13

*Interstate Restoration, LLC v. Seaman*,
    No. SA CV 13-706 DOC, 2014 WL 562643 (C.D. Cal. Feb. 11,
    2014) ................................................................................................................... 14

*Ixchel Pharma, LLC v. Biogen, Inc.*,
    9 Cal.5th 1130 (2020) .......................................................................................... 8

*Lateral Link Grp., LLC v. Springut*,
    Case No. LA CV14-05695 JAK (JEMx), 2016 WL 11785094 (C.D.
    Cal. Dec. 19, 2016) ............................................................................................ 13

*Lazar v. Super. Ct.*,
    12 Cal.4th 631 (1996) ........................................................................................... 9

*Malinak v. Kramer*,
    C.A. No. CPU6-11-002145, 2012 WL 174958 (Del. Com. Pl. Jan. 5,
    2012) ................................................................................................................... 18

*Maverick Gaming LLC v. United States*,
    123 F.4th 960 (9th Cir. 2024) ............................................................................ 15

*Oasis W. Realty, LLC v. Goldman*,
    51 Cal.4th 811 (2011) ........................................................................................... 4

*Pineda v. Sun Valley Packing, L.P.*,
    No. 1:20-cv-00169-DAD-EPG, 2022 WL 1308141 (E.D. Cal. May
    2, 2022) ................................................................................................................. 4

*SCI CA. Funeral Servs., Inc. v. Westchester Fire Ins. Co.*,
    288 F.R.D. 450 (C.D. Cal. 2013) ...................................................................... 16

*Soderberg v. McKinney*,
    44 Cal. App. 4th 1760 (1996) ............................................................................ 14

*Steen v. Am. Nat'l Ins. Co.*,
   609 F. Supp. 3d 1066 (C.D. Cal. 2022) ................................................................ 15

*Swartz v. KPMG LLP*,
   476 F.3d 756 (9th Cir. 2007) ................................................................ 10

*Tatung Co. v. Shu Tze Hsu*,
   43 F.Supp.3d 1036 (C.D. Cal. 2014) ................................................................ 16

*Temple v. Synthes Corp.*,
   498 U.S. 5 (1990) ................................................................ 16

*Union Paving Co. v. Downer Corp.*,
   276 F.2d 468 (9th Cir. 1960) ................................................................ 16

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003) ................................................................ 2

*Vitiosus v. Alani Nutrition, LLC*,
   No. 21-CV-2048-MMA (MDD), 2022 WL 2441303 (S.D. Cal. July
   5, 2022) ................................................................ 10, 11

*Ward v. Nat'l Ent. Collectibles Ass'n, Inc.*,
   Case No. CV 11-06358 MMM, 2012 WL 12885073 (C.D. Cal. Oct.
   29, 2012) ................................................................ 13

*Wilcox v. EMC Mortg. Corp.*,
   No. SACV 10-1923 DOC (JCGx), 2011 WL 10065501 (C.D. Cal.
   July 25, 2011) ................................................................ 12

*Yagman v. Kelly*,
   Case No. CV 17-6022-MWF, 2018 WL 2138461 (C.D. Cal. Mar.
   20, 2018) ................................................................ 18

**Statutes**

28 U.S.C. § 2201(a) ................................................................ 15

Cal. Civ. Proc. Code § 1060 ................................................................ 15

Cal. Labor Code § 2870(a)(1) ................................................................ 20

**Other Authorities**

C.D. Cal. L.R. 11-6 ................................................................ 4

Fed. R. Civ. P. 8(a)(2)................................................................................................2

Fed. R. Civ. P. 8(c)(1)................................................................................................5

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Plaintiff Arjun Vasan ("Plaintiff" or "Vasan")'s spaghetti-at-the-wall motion should be denied. Plaintiff co-founded VoiceBite, a Delaware-incorporated, customer-service based company that leveraged artificial intelligence ("AI") to automate the voice ordering process for restaurants.   (Dkt. 71, Counterclaims ("Counterclaims" or "CC") at ¶ 14.)[1]  Defendant Checkmate.com Inc. ("Checkmate" or "Defendant") is a technology company that offers a variety of technology and services to restaurants, helping them with first-party ordering, third-party integrations, menu management, loyalty programs, and more.  (CC at ¶ 13.)

As alleged in Checkmate's Counterclaims, Checkmate was duped by Plaintiff into paying significant amounts of money for worthless assets when Plaintiff made numerous false representations about the proprietary code for VoiceBite's voice ordering AI application.  Still trying to avoid accountability for his egregious conduct, Plaintiff obtained a stipulated extension to respond to August 6, 2025, and on that date, filed a first Motion to Dismiss Checkmate's Counterclaims (Dkt. 75, the "First Motion to Dismiss"), replete with citations to miscited or possibly-hallucinated caselaw.  *See* n.2 *infra*.[2]  Thereafter, Plaintiff then filed a second, untimely, Motion to Dismiss Checkmate's Counterclaims (Dkt. 81, the "Motion" or the "Second Motion to Dismiss"), which Plaintiff characterized as superseding the First Motion to Dismiss, as well as a Motion to Strike Affirmative Defenses (Dkt. 79), both in violation of Rule 12's requirement to consolidate defenses and objections and with the word limits of this Court.  Each remains replete with incomplete sentences and thrown-off citations to statutes and case law (sometimes spanning up to ten pages of a case in a single citation).  To the extent the randomized and baseless arguments that

---

[1] All citations to paragraph numbers within the Counterclaims specifically refer to the paragraph numbers of Checkmate's Counterclaims, beginning on page 37 of Dkt. 71.
[2] On September 18, 2025, the Court denied this motion as moot.  (Dkt. 93.)

1  are dispersed throughout Plaintiff's Motion are understandable (many are not), all

2  lack merit.  For the reasons described herein, it should be denied.

3  **II.    ARGUMENT**

4      A complaint need only contain a "short and plain statement of the claim

5  showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

6      When ruling on a Rule 12(b)(6) motion, the Court "must accept as true all of

7  the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89,

8  94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). "[Q]uestion[s] of fact [are]

9  inappropriate for resolution on a motion to dismiss." *Hybrid Fin. Ltd. v. Hammitt,*

10 *Inc*., CV 22-8635 DSF (MRWx), 2023 WL 3150092, at *1 (C.D. Cal. Mar. 6, 2023)

11 (quoting *Greenwich Ins. Co. v. Rodgers*, 729 F.Supp.2d 1158, 1164 (C.D. Cal. 2010)).

12 The court must, rather, accept all allegations of material fact as "true and construed

13 in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co*.,

14 80 F.3d 336, 337-38 (9th Cir. 1996). A court should "'assume the [] veracity' of 'well

15 pleaded factual allegations' and 'determine whether they plausibly give rise to an

16 entitlement of relief.'" *Eclectic Props. E., LLC v. Marcus & Millichap Co*., 751 F.3d

17 990, 996 (9th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (internal

18 citations omitted)).

19     Furthermore, even where a court determines that a motion to dismiss should be

20 granted, such dismissal should be made with leave to amend the pleading. *See*

21 *Eminence Cap., LLC v. Aspeon, Inc*., 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal

22 with prejudice and without leave to amend is not appropriate unless it is clear on de

23 novo review that the complaint could not be saved by amendment"); *Vess v. Ciba-*

24 *Geigy Corp. USA*, 317 F.3d 1097, 1108 (9th Cir. 2003) (stating that dismissals under

25 Rule 12(b)(6) and Rule 9(b) "should ordinarily be without prejudice").

26 **III.   PLAINTIFF'S SECOND MOTION TO DISMISS VIOLATES THE**

27 **RULES**

28     As an initial matter, Plaintiff's successive Rule 12 motions are procedurally

improper and should not be considered. On August 6, 2025, pursuant to Checkmate's stipulation to an extension of time (Dkt. 72), Vasan filed a motion styled as "Motion to Dismiss Checkmate's Counterclaims." (Dkt. 75, the "First Motion to Dismiss.") Seemingly unsatisfied with his filings, Plaintiff then submitted an improper *Ex Parte* Application for Extension of Time to Amend the First Motion to Dismiss, among other requested relief. (Dkt. 76.) On August 10, 2025, he withdrew that application. (Dkt. 77) On August 15, 2025, Plaintiff submitted filings entitled Motion to Strike Affirmative Defenses (Dkt. 79) and Second Motion to Dismiss Counterclaims (Dkt. 81, the "Motion" or "Second Motion to Dismiss") (together with Motion to Dismiss, the "Rule 12 Motions") and set them for hearing on September 18, 2025. Putting aside that Plaintiff's Rule 12 Motions were not compliant with the Court's Civil Standing Order requiring that a motion must be filed no less than forty-two (42) days before the hearing date, pursuant to the consolidation requirements of Rule 12(g), Plaintiff was required to raise his defenses and objections presented in his Second Motion to Dismiss and Motion to Strike at the same time as his Motion to Dismiss in a single motion or obtain leave of Court to file separate Rule 12 Motions.

Given Plaintiff's failure to properly raise his defenses and objections, public policy supports the application of the plain language of Rule 12(g) in this case (*see Chilicky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir. 1986) ("Fed.R.Civ.P. 12, and specifically subdivisions (g) and (h), promote the early and simultaneous presentation and determination of preliminary defenses"), *rev'd on other grounds* 487 U.S. 412 (1988); *Aetna Life Ins. Co. v. Alla Med. Servs. Inc*., 855 F.2d 1470, 1475 n.2 (9th Cir. 1988) (The philosophy underlying  [Rule 12(g)] is… a series of motions should not be permitted because that results in delay and encourages dilatory tactics") (citation omitted). Plaintiff's seriatim motions are improper and should not be considered.

Plaintiff also blatantly disregards Local Rule 11-6.1, which sets a 7,000 word limit (including headings, footnotes, and quotations) for memoranda of points and authorities and requires parties to file a certificate of compliance.  C.D. Cal. L.R. 11-

3

6. This Court's Civil Standing Order incorporates the same rule. *See* Civil Standing Order at 6. Plaintiff's Second Motion to Dismiss ignores both requirements. No L.R. 11-6.2 Certificate of Compliance was included on the last page of the document. There is a reason for this: the word count for the Second Motion to Dismiss is well over *12,000 words*, almost double the word limit imposed by the Local Rules and this Court's Civil Standing Order and a significant increase from his First Motion to Dismiss. *Compare* Dkt. 75 with Dkt. 81. Because this has done nothing other than increase the burden on Checkmate and the Court, the arguments presented in Plaintiff's Second Motion to Dismiss should not be considered.

## IV.  CHECKMATE HAS ADEQUATELY ALLEGED ITS CLAIMS

### A. Breach of Contract

Showing the troubling implications of Plaintiff's AI-generated litigation campaign, Plaintiff relies on inapposite and sometimes outright hallucinated[3] case law to support his argument that Checkmate's various Counterclaims for Breach of Contract are "legally and contractually defective" (Dkt. 81 at 21:1). Under California law, the elements of a cause of action for breach of contract are "(1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *Albert's Organics, Inc. v. Holzman*, 445 F.Supp.3d 463, 475-76 (E.D. Cal. 2020) (citation omitted); *see also Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th 811, 821 (2011) (citation omitted).

---

[3] Plaintiff cites "*Reiniger v. W.L. Gore & Assocs., Inc.*, 2024 WL 353429, at *3 (C.D. Cal. Jan. 30, 2024)" in support of his rule statement for the elements of a breach of contract claim. (Dkt. 81 at 21:4 n.56.) There is no case found at that Westlaw citation; while there is a 2010 Arizona case by that name, it does not apply California law. Similarly, Plaintiff cites "*Pineda v. Sun Valley Packing, L.P.*, 2021 WL 3466899, at *5 (C.D. Cal. May 4, 2021)" for the parenthetical proposition that that opinion dismissed "contract-based counterclaims incompatible with statutory rights." (Dkt. 81 at 21:13 n.61.) Again, there is no case found at that Westlaw citation. A 2022 California case by that name can be distinguished, because that opinion dismissed a party's counterclaim where it failed to allege that the opposing party was a state actor as required by statute and that failure could not be amended by allegations of additional facts. *See Pineda v. Sun Valley Packing, L.P.*, No. 1:20-cv-00169-DAD-EPG, 2022 WL 1308141, at *5 (E.D. Cal. May 2, 2022).

Checkmate sufficiently pleads that all four relevant contracts—the Merger Agreement, the Non-Compete Agreement, the IP Acknowledgement Letter, and the IP Assignment Agreement—are valid and enforceable agreements. Moreover, Checkmate has sufficiently pled all required elements for its Counterclaims arising out of the breaches of each contract. Checkmate has identified each valid contract; described, in detail, its own performance under the contracts; described, in detail, Plaintiff's various breaches of those contracts; and identified the damages suffered by Checkmate as a result of Plaintiff's breaches. No more is required at this stage. *See Albert's Organics*, 445 F.Supp.3d at 475-477 (denying a party's motion to dismiss a claim for breach of contract where the pleading party identified the "material obligations" that were allegedly breached, identified the bases for finding breach of contract, and alleged that it had "been damaged by the breach of contract").

Plaintiff's remaining arguments are unavailing. Contrary to Plaintiff's assertions, Checkmate has sufficiently alleged its own performance by describing, in detail, its own sufficient performance under each of the contracts. (CC at ¶¶ 13-15, 19, 41-44.) Plaintiff also argues that Checkmate's own counterclaims against Plaintiff must argue "fundamental defenses" on Plaintiff's behalf. *See* Dkt. 81 at 21:9-11 ("[T]he counterclaims ignore fundamental defenses such as waiver, estoppel, and prior material breach, all of which bar recovery when the party asserting breach has itself failed to perform"). While Checkmate denies that any such "fundamental defenses" are applicable here, Plaintiff provides no support for the implicit claim that Checkmate must raise Plaintiff's defenses for him in bringing counterclaims against Plaintiff. Indeed, the Federal Rules of Civil Procedure state that such affirmative defenses (including, explicitly, the same defenses of "waiver" and "estoppel" mentioned by Plaintiff) and must be affirmatively stated by the party "responding to a pleading." Fed. R. Civ. P. 8(c)(1). Checkmate's counterclaims are not subject to dismissal because they "fail" to allege Plaintiff's own affirmative defenses.

Plaintiff's arguments to dismiss Checkmate's counterclaims based on

Checkmate's alleged violation of the Non-Compete Agreement, again, raise issues of fact and are similarly unavailing. Plaintiff does not couch his arguments in any language referring to the proper standard for a motion to dismiss, instead choosing to repurpose the arguments found in his FAC while simultaneously relying on inapposite cases.

The Counterclaims allege that Plaintiff breached the Non-Compete Agreement by contacting a competitor of Checkmate for the purpose of attempting to solicit interest in acquiring the same code and employees provided to Plaintiff as part of the VoiceBite Transaction. Those allegations are sufficient at this stage, where the Counterclaims must plead "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

It bears noting that Plaintiff's *own Motion to Dismiss* acknowledges the plain facts alleged in support of Checkmate's second counterclaim—i.e., that Plaintiff breached the Non-Compete Agreement by contacting one or more of Checkmate's competitors in November 2024 for the purpose of attempting to sell the very same code it sold to Checkmate as part of the Transaction and solicit Checkmate's employees to leave Checkmate. (CC at ¶ 52.) Instead, Plaintiff argues that those same, uncontested facts "demonstrate compliance, not breach," as he puts it. (Dkt. 81 at 13:19.) This framing both strains credulity and is inappropriate on a motion to dismiss. The Non-Compete Agreement required Plaintiff to refrain from (among other actions) assisting any other person in an attempt to solicit or induce any of Checkmate's employees to resign from their employment. (Declaration of Rebecca I. Makitalo (the "Makitalo Decl.") at ¶ 3, Ex. B.) Despite this clear prohibition, Checkmate emailed a competitor offering to leave Checkmate and "bring over 2 additional engineers." (Dkt. 81 at 13:21-22.) These facts—initially alleged in Checkmate's Counterclaims (CC at ¶ 23) and confirmed by Plaintiff himself in his pending Motion to Dismiss Counterclaims (Dkt. 81 at 13:20-22)—are uncontested and show a clear attempt to assist one of Checkmate's competitors in inducing two of

Checkmate's employees to resign from their employment with Checkmate. These actions are clearly prohibited by the terms of the Non-Compete Agreement. Plaintiff's implausible, post-hoc rationalization that these emails show an "intent to comply" or "caution" should not be countenanced. Plaintiff, in his own words and as stated in his own briefing, violated the Non-Compete Agreement.

Plaintiff further claims that the Non-Compete Agreement uses the word "Company" "in a manner that appears to refer interchangeably to VoiceBite and Checkmate, creating significant ambiguity about whose interests are being protected," and characterizes this purported "vagueness" as "fatal." (Dkt. 81 at 11:6 n.34; *see also id.* at 14:14-18.) Plaintiff makes this argument without quoting any of the Non-Compete Agreement's language and without providing any legal support. Plaintiff's conclusory, unsupported argument is revealing—a brief review of the Non-Compete Agreement's relevant language shows that any reasonable person would understand that a signatory is barred from improperly competing with, soliciting the employees of, or disparaging Checkmate. Moreover, for any avoidance of doubt regarding the "Company" and the "Acquirer," the Non-Solicitation portion of the Non-Compete Agreement forbids the solicitation of employees of *both* "Acquirer [and] the Company." (Makitalo Decl. at ¶ 3, Ex. B.)

Plaintiff's subsequent argument concerning the supposed insufficiency of Checkmate's Counterclaim for Breach of the Non-Compete Agreement relies on inapposite caselaw.[4]  In support of his claim that "[u]nder California law, even valid

---

[4] While Plaintiff's Second Motion to Dismiss (Dkt. 81) removes some of the citations found in his First Motion to Dismiss (Dkt. 75), it should be noted that the First Motion to Dismiss includes a number of references to **additional** cases that do not appear to exist.  For example, in the First Motion to Dismiss, Plaintiff cites to a case titled "*FP UC Holdings, LLC v. Lanard*, 2024 WL 1305894, at *7 (*Del. Ch. 2024*)." (Dkt. 75 at 15:23 n.27) (italicization in original).  This case does not appear to exist.  A search for "2024 WL 1305894" on Westlaw does not return a case by the above name (instead, that search brings up a "Patent Status File" for a vaccine patent).  Similarly, there does not appear to be any case by the name of "*FP UC Holding, LLC v. Lanard*."  While there is a 2020 Delaware Chancery Court case named *FP UC Holdings, LLC v. Hamilton*, it does not stand for the proposition for which Plaintiff has cited the non-existent *FP UC Holdings, LLC*

restrictive covenants are strictly construed, and any ambiguity is resolved against enforcement," Plaintiff cites to *Edwards v. Arthur Andersen* and *Ixchel Pharma*. (Dkt. 81 at 14:19-20 n.44.)   Despite Plaintiff's reliance on these cases, neither case discusses how courts should interpret or resolve "ambiguity" in relation to restrictive covenants.   *See generally Edwards v. Arthur Andersen LLP*, 44 Cal.4th 937 (2008) *and Ixchel Pharma, LLC v. Biogen, Inc.*, 9 Cal.5th 1130 (2020).   Ambiguity doesn't resolve the issue in Plaintiff's favor.   Quite the contrary, it supports that Plaintiff's motion should be denied as it permits the introduction of extrinsic evidence, thus creating issues of ***fact*** inappropriate for resolution on a motion to dismiss.   For instance, Plaintiff argues "[w]here, as here, a condition precedent fails, the agreement is unenforceable" and that "[Plaintiff] provided no separate consideration in exchange, rendering the agreement void regardless." (Dkt. 81 at 14:21-23.)   Plaintiff further fails to identify what condition precedent "failed," and provides no detail regarding his claim that he did not provide any "separate consideration," all of which raise issues of fact inappropriate for resolution on a motion to dismiss.     As demonstrated above, Checkmate has shown that the underlying contracts—including the Non-Compete Agreement—are valid.   Without legal or factual support, Plaintiff's arguments to the contrary are little more than conclusory statements of Plaintiff's own lay opinions.     Such arguments cannot support the dismissal of Checkmate's sufficiently-pled Counterclaims.

---

*v. Lanard* case.   Plaintiff's further assertion in the First Motion to Dismiss that the Non-Compete Agreement is void for lack of "separate consideration" provided by Plaintiff is ostensibly supported by his citation to "*Schroeder v. Silverman*, 179 A.D.2d 624, 625 (N.Y. App. Div. 1992)." (Dkt. 75 at 16:1-2 n.29.)   This case does not appear to exist.   A search for that citation instead brings up a 1992 New York case named *Lebron v. Allstate Ins. Co.*, which deals with punitive damages in the context of an action to recover the proceeds of a fire insurance policy. *See Lebron v. Allstate Ins. Co.*, 179 A.D.2d 623 (N.Y. App. Div. 1992).   Similarly, a Westlaw search for "Schroeder v. Silverman" did not bring up any results.   These citations continue a worrying trend of Plaintiff's reliance upon miscited—or potentially AI-hallucinated—case law. *See, for example*, Dkt. 32 at 4:16-23 (detailing previous instances of Plaintiff citing non-existent or completely inapposite case law).

May of his other scattershot arguments simply muddy the waters regarding the proper standard for a motion to dismiss.  Plaintiff, for instance, argues that Checkmate has "no legitimate [business] interest to protect," and therefore "the [Non-Compete] agreement fails under any applicable governing law." Plaintiff offers no legal support for this conclusion, and in fact explicitly notes that this argument is "typically Summary Judgment territory."  (Dkt. 81 at 14:24-15:4 n.45.)  Plaintiff then argues that Checkmate in fact breached the "mutual non-disparagement provision"—an assertion that Checkmate denies and one that, in any event, has little impact on whether Checkmate has sufficiently pled its Counterclaims at this stage.  Plaintiff further asserts that "amendment would be futile" and therefore, "dismissal with prejudice is required."  (*Id.* at 15:5-15.)  Plaintiff does not and cannot explain *why* amendment would be futile here.

Equally infirm is Plaintiff's argument that the Non-Compete Agreement is void because the Agreement allegedly terminates thanks to Checkmate's purported failure to initiate the negotiation and arbitration process required to settle any "controversy, dispute, or claim regarding whether a termination is for Cause." (Dkt. 81 at 15:16-16:7.)  Again, that is an issue of fact.  Not of law.  Whether or not Plaintiff is right—he is not—his factual assertion cannot and does not support dismissal.

### B. <u>Fraud</u>

The Court can similarly dispense with Plaintiff's attempt to claim that the requirements for pleading a case for fraud have not been satisfied.  The truth is that Checkmate's well-pleaded allegations adequately allege fraud under California law. In California, a fraud claim is properly pleaded under the heightened pleading requirements of Rule 9(b) when the party asserting fraud alleges the following: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud; (4) justifiable reliance; and, (5) resulting damage. *Lazar v. Super. Ct.*, 12 Cal.4th 631, 638 (1996). "To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud

1  charged so that they can defend against the charge and not just deny that they have

2  done anything wrong." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)

3  (citation omitted).

4      Checkmate's fourth counterclaim adequately pleads these elements. Plaintiff

5  represented that he and VoiceBite were the original author and exclusive owner of the

6  VoiceBite application code, that the code was not subject to any claim or rights of any

7  third party, and that no source code for VoiceBite had been delivered or made

8  available to any person who was not an employee of VoiceBite. (CC at ¶¶ 18.) All of

9  those representations were false: Plaintiff and VoiceBite were not the original author

10 of the code, they were not the exclusive owner of the code, and third parties had claims

11 to the code as a result of Plaintiff previously selling them the code. (*Id.* at ¶¶ 19, 24-

12 29.) Plaintiff actively concealed the source code from Checkmate. (*Id.* at ¶¶ 19, 24-

13 29, 31-35.) Checkmate's fraud counterclaim alleges that Plaintiff knew these

14 representations were false when made, (*Id.* at ¶¶ 18, 19, 60) and that Plaintiff

15 reasonably relied on the representations when entering into the agreement to purchase

16 VoiceBite. (*Id.* at ¶¶ 19, 34, 59-60, 62.) Finally, Checkmate's claim for fraud alleges

17 that Checkmate was injured by paying millions of dollars for a company—more

18 specifically, for what Checkmate believed to be the company's proprietary code—

19 that ended up being worthless, as neither Plaintiff nor VoiceBite were actually the

20 exclusive owner or rights holder to the code. (*Id.* at ¶¶ 6, 19, 34, 62.)

21      Plaintiff asserts numerous additional undeveloped arguments in his quest to

22 avoid the clear and specific allegations of his fraud. None has merit.

23      ***First***, Plaintiff contends that Checkmate's claim for fraud lacks temporal and

24 geographic specificity. (Dkt. 81 at 16:16-23.) "To satisfy Rule 9(b), a plaintiff need

25 not plead dates, times, and places with absolute precision, so long as the complaint

26 gives fair and reasonable notice to defendants of the claim and the grounds upon

27 which it is based." *Vitiosus v. Alani Nutrition, LLC*, No. 21-CV-2048-MMA (MDD),

28 2022 WL 2441303, at *11 (S.D. Cal. July 5, 2022) (quoting *Rana v. Islam*, 305 F.R.D.

53, 58 (S.D.N.Y. 2015)).  Here, Checkmate's claim clearly alleges that Plaintiff made the  material misrepresentations (or omissions) in the spring of 2024, leading up to Checkmate acquiring VoiceBite on April 30, 2024.  (CC at ¶¶ 13-19.)  That timeframe is more than sufficient to give fair and reasonable notice to Plaintiff of the misrepresentations and omissions that underlie Checkmate's claim. *See Vitiosus*, 2022 WL 2441303, at *11 ("To satisfy Rule 9(b), a plaintiff need not plead dates [and] times with absolute precision") (citing *Rana*, 305 F.R.D. at 58).

**Second**, Plaintiff incorrectly claims that Checkmate's fraud claim fails to include particularized allegations of scienter.  (Dkt. 81 at 17:1-4.)  The claim, however, alleges that Plaintiff "knew" his representations were false "when he was making them." (CC at ¶ 19.)  It further alleges that Plaintiff's "misrepresentations regarding the originality and ownership of the code were knowing falsehoods that he told with full awareness of their materiality to Checkmate's decision to acquire VoiceBite." (*Id.* at ¶ 34.)  Indeed, Checkmate's fraud counterclaim asserts that, despite knowing his representations were false and that Checkmate would rely on them, he "intended" at the time of the transaction to be paid "no matter what." (*Id.* at ¶ 60.)  Plaintiff also actively concealed the code from Checkmate because he knew that his representations were false. (*Id.* at ¶¶ 17-21.)  These allegations more than meet the requirements of Rule 9(b), which provides that "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1032 (9th Cir. 2016) (quoting Fed. R. Civ. P. 9(b)).

**Third**, according to Plaintiff, Checkmate's fraud counterclaim does not allege that the misrepresentations were material to Checkmate's decision to enter the transaction or would have altered the value of VoiceBite's business. (Dkt. 81 at 19:4-7.)  That is false. Checkmate specifically alleges that the VoiceBite code was "a key asset material to Checkmate's decision to pursue the acquisition because it would provide Checkmate with the ability to be a very early mover into the nascent but

11

1  potentially enormous AI-assisted restaurant ordering space." (CC at ¶ 16.)
2  Checkmate further asserts that the VoiceBite code was the very "heart of VoiceBite,"
3  and that Checkmate would not have agreed to acquire VoiceBite of its core technology
4  (the code) was not what Plaintiff claimed it to be. (*Id*. at ¶¶ 21, 33-34.)

5  **Fourth**, Plaintiff asserts that Checkmate cannot claim reasonable reliance.
6  (Dkt. 81 at 20:3-8.) Plaintiff pretends that Checkmate claims it was duped by
7  "obvious, easily discoverable information," and that Checkmate "could have required
8  a code review before proceeding." (*Id.*) But Plaintiff's factual claim is inappropriate
9  for resolution on a motion to dismiss. Plaintiff is simply ignoring the allegations of
10  Checkmate's Counterclaims. The Counterclaims asserts that, *inter alia*, Plaintiff was
11  "evasive about allowing [Checkmate] to review what he claimed to be VoiceBite's
12  proprietary code," and that Plaintiff's evasiveness is what prompted Checkmate to
13  obtain express representations and warranties from Plaintiff regarding his ownership
14  and authorship of the code. (CC at ¶ 18.) It also alleges that the code was a key asset
15  and was material to Checkmate's decision to acquire VoiceBite (*Id.* at ¶ 16), that
16  Checkmate relied on Plaintiff's representations and warranties when deciding to
17  acquire VoiceBite (*Id.* at ¶ 62), and that Plaintiff's "intentional misrepresentations
18  and fraudulent statements were material and intended to induce Checkmate into
19  paying [Plaintiff] millions of dollars" (*Id.* at ¶ 61). It is more than reasonable to infer
20  that Checkmate relied on Plaintiff's statements as to his ownership and authorship of
21  the code—which was at the core of VoiceBite's business—when deciding to purchase
22  VoiceBite. And, in any event, "[e]xcept in rare cases where the undisputed facts leave
23  no room for a reasonable difference of opinion, the question of whether a plaintiff's
24  reliance is reasonable is a question of fact, not amenable to resolution by way of a
25  motion to dismiss." *Wilcox v. EMC Mortg. Corp.*, No. SACV 10-1923 DOC (JCGx),
26  2011 WL 10065501, at *7 (C.D. Cal. July 25, 2011) (citation and internal quotation
27  marks omitted).

28  **Fifth**, Plaintiff asserts that the Checkmate's fraud claim does not assert

12

cognizable damages.  (Dkt. 81 at 19:19-20:2.)  But it does. Checkmate specifically alleges that, because of Plaintiff's misrepresentations as to the code, Checkmate "had been duped into acquiring a valueless non-asset," and paid millions of dollars for it. (CC at ¶¶ 33, 61-62.)  While the exact amount of damages will be proved at trial, at this stage, Checkmate has met its pleading obligations. While Rule 9(b) requires pleading the circumstances of fraud with particularity, Plaintiff cites no case law requiring that fraud damages be pled with more specificity than required under normal notice pleading. This is because "[t]here is no authority within the Ninth Circuit that 'fraud damages be pled with more specificity than required under normal notice pleading.'" *Lateral Link Grp., LLC v. Springut*, Case No. LA CV14-05695 JAK (JEMx), 2016 WL 11785094, at *5 (C.D. Cal. Dec. 19, 2016) (quoting *Andrews Farms v. Calcot, Ltd*., 527 F.Supp.2d 1239, 1252 (E.D. Cal. 2007)); *see also Ward v. Nat'l Ent. Collectibles Ass'n, Inc*., Case No. CV 11-06358 MMM (CWx), 2012 WL 12885073, at *6 (C.D. Cal. Oct. 29, 2012) ("Several courts have held, however, that damages caused by fraud need not be pled with the specificity required by Rule 9(b)"); *Interserve, Inc. v. Fusion Garage PTE. Ltd*., No. C 09-5812 RS (PSG), 2011 WL 500497, at *3 (N.D. Cal. Feb. 9, 2011) ("Rule 9(b) may not apply to the reliance and damages elements of a fraud claim").

## C. <u>Negligent Misrepresentation</u>

Plaintiff also asserts that Checkmate's claim for negligent misrepresentation (Claim 5) fails because Plaintiff did not owe Checkmate a duty of care.  (Dkt. 81 at 20:8-12.)  This argument is unavailing. Under California law, "[a] cause of action for negligent misrepresentation will also exist where information is given in a business or professional capacity for such a purpose." *Friedman v. Merck & Co*., 107 Cal. App. 4th 454, 481 (2003). "California courts have recognized a cause of action for negligent misrepresentation, i.e., a duty to communicate accurate information, in two circumstances ... The second situation arises where information is conveyed in a commercial setting for a business purpose." *Id*. at 477; *see also Interstate Restoration*,

13

1  *LLC v. Seaman*, No. SA CV 13-706 DOC (RNBx), 2014 WL 562643, at *11 (C.D.
2  Cal. Feb. 11, 2014) ("[A] party engaged in a commercial or business interaction
3  generally owes a duty of care to other parties engaged in the same commercial
4  endeavor or course of business dealings."); *Soderberg v. McKinney*, 44 Cal. App. 4th
5  1760, 1766 (1996) ("[O]ne who negligently supplies false information 'for the
6  guidance of others in their business transactions' is liable for economic loss suffered
7  by the recipients in justifiable reliance on the information") (citing Rest.2d Torts, §
8  552).

9       It is clear from Checkmate's allegations that Checkmate was injured as a result
10  of its reliance upon Plaintiff's false representations made for a business purpose – to
11  induce Checkmate into acquiring VoiceBite for its proprietary code. Specifically,
12  Checkmate alleges that, at the outset of the negotiations to purchase VoiceBite,
13  Plaintiff "represented himself … as the owner of proprietary code for VoiceBite's
14  ordering AI application." (CC at ¶ 16.) It then alleges that Plaintiff knew that
15  Checkmate would rely on Plaintiff's material representations and warranties when
16  deciding whether to enter into the Merger Agreement with VoiceBite and whether to
17  pay Vasan significant amounts of money. (*Id*. at ¶¶ 19, 66-67.) And Checkmate also
18  asserts that, as part of the Transaction, Checkmate would be given an executive role
19  at Checkmate. (*Id*. at ¶ 17.) These allegations are more than sufficient to establish
20  that Plaintiff failed his duty to provide Checkmate with accurate information
21  regarding the true ownership and authorship of the VoiceBite code for the purposes
22  of inducing Checkmate to entering into the Merger Agreement. Thus, Checkmate has
23  adequately pled a cause of action against Plaintiff for negligent misrepresentation.

24            **D. <u>Declaratory Judgment</u>**

25       Under the Declaratory Judgment Act, "[i]n a case of actual controversy within
26  its jurisdiction, ... any court of the United States, upon the filing of an appropriate
27  pleading, may declare the rights and other legal relations of any interested party
28  seeking such declaration, whether or not further relief is or could be sought." 28

14

U.S.C. § 2201(a). Under California's parallel act, courts "may make a binding declaration of ... rights or duties, whether or not further relief is or could be claimed at the time." Cal. Civ. Proc. Code § 1060. "Courts in the Ninth Circuit have observed that the 'two statutes are broadly equivalent.'" *Steen v. Am. Nat'l Ins. Co.*, 609 F. Supp. 3d 1066, 1072 (C.D. Cal. 2022) (quoting *In re Adobe Sys. Privacy Litig.*, 66 F. Supp. 3d 1197, 1219 (N.D. Cal. 2014) (acknowledging that federal Declaratory Judgment Act governs analysis of claims seeking declaratory relief even if brought under California Declaratory Relief Act)).

Plaintiff seemingly asserts that Checkmate's claim for declaratory relief somehow endorses wage left, though failing to state a legal basis for such a grossly confusing assertion. (Dkt. 81 at 21:14.) Checkmate's declaratory relief claim instead seeks to resolve the parties' future legal rights and duties not otherwise resolved by its breach of contract claims, including, but not limited to, that Plaintiff is disentitled to further compensation under the Transaction and related agreements, and that Plaintiff is required to indemnify Checkmate for losses incurred as a result of his misconduct, as detailed in Checkmate's Counterclaims. Accordingly, Plaintiff's declaratory relief claim does not seek to violate the California Labor Code, as Plaintiff wrongly suggests, but instead seeks an order from the Court to determine the parties' respective rights and duties that may otherwise result in future litigation.

## V.    PLAINTIFF FAILS TO MEET HIS BURDEN TO SHOW INDISPENSABILITY.

Plaintiff's attempt to dismiss Checkmate's Counterclaims based on an alleged failure to join indispensable parties is without merit. To succeed on a Rule 12(b)(7) motion to dismiss, the court must first "determine whether the absent party is 'required' under Rule 19(a). If the absent party is required, [the court must then] 'determine whether joinder of that party is feasible.' If joinder is infeasible, [the court] must then 'determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed.'" *Maverick Gaming LLC*

15

1    *v. United States*, 123 F.4th 960, 972 (9th Cir. 2024) (internal citations omitted).

2    "When seeking dismissal on this basis, the movant bears the burden of adducing

3    evidence in support of the motion." *Tatung Co. v. Shu Tze Hsu*, 43 F.Supp.3d 1036,

4    1065 (C.D. Cal. 2014) (citing *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th

5    Cir.1990).

6         Here, Plaintiff has not carried his burden to show even one of the required steps

7    under Rule 19. All Plaintiff has done is claim that certain parties are required in the

8    interest of fairness "with their shared knowledge, strategy and resources."   (Dkt. 81

9    at 23:17-18.)  Further, he claims that because "key decisions and negotiations were

10   made collectively," liability should be shard "pro rata." (*Id.* at 23:10-11.)  This attempt

11   to point the proverbial finger at others should not be credited, as joint tortfeasors are

12   not required to be joined as parties to comply with the requirements of Rule 19. *See*

13   *Temple v. Synthes Corp.*, 498 U.S. 5, 7 (1990) ("It has long been the rule that it is not

14   necessary for all joint tortfeasors to be named as defendants in a single lawsuit");

15   *Barkhordar v. Century Park Place Condo. Ass'n,*, Case No. 2:16-cv-03071-CAS(Ex),

16   2016 WL 4367226, at *3 n.1 (C.D. Cal. Aug. 11, 2016) ("[S]imply because a party

17   may be a joint tortfeasor does not make them a necessary party"); *see also Union*

18   *Paving Co. v. Downer Corp.*, 276 F.2d 468, 471 (9th Cir. 1960) ("[I]t is well

19   established that a joint tortfeasor is not an indispensable party").

20        Above everything else, even if these parties are indispensable (they are not),

21   Plaintiff has proffered no evidence concerning the second inquiry required by Rule

22   19—whether it is feasible to join the necessary parties. "Joinder is not feasible, for

23   example, when venue is improper, when the absentee is not subject to personal

24   jurisdiction, or when joinder would destroy subject matter jurisdiction." *SCI CA.*

25   *Funeral Servs., Inc. v. Westchester Fire Ins. Co.*, 288 F.R.D. 450, 452 (C.D. Cal.

26   2013) (citing *E.E.O.C. v. Peabody W. Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005)).

27   Plaintiff ignores this requirement and has not made any attempt to join the allegedly

28   indispensable parties to this action, even though he boldly asserts that "[t]hree of the[]

16

pre-closing equity holders are lifelong California residents," implying that because they are alleged California citizens, this Court would have personal jurisdiction over them. (Dkt. 81 at 23:16-17.) Plaintiff has failed to present any evidence showing that joining these parties is not feasible. As such, Plaintiff cannot meet his burden of demonstrating that dismissal of Checkmate's Counterclaims is warranted under Rules 12(b)(7) and 19.

## VI.   <u>NONE OF PLAINTIFF'S OTHER ARGUMENTS SUPPORT DISMISSAL</u>

The smorgasbord of additional arguments raised by Plaintiff should also be rejected. Plaintiff argues that each of the contracts giving rise to Checkmate's Counterclaims—the Merger Agreement, the Non-Compete Agreement, the IP Acknowledgment Letter, and the IP Assignment Agreements—are invalid, voided, or otherwise unenforceable under California law. (Dkt. 81 at 10:6-7.) None of these arguments support dismissal.

Plaintiff *first* argues that the Merger Agreement "does not support personal liability" because it purportedly designates a shareholder representative to "jointly pursue and defend all related claims on behalf of the shareholders." (Dkt. 81 at 10:14-11:1.) This reflects a serious misunderstanding as to the purpose of the Holder Representative. § 9.1 of the Merger Agreement provides that "the parties agree that it is desirable to designate a representative to act on behalf of the Pre-Closing Holders [the shareholders of VoiceBite] with respect to all matters arising under this Agreement." (Makitalo Decl. at ¶ 2, Ex. A.) Further, § 9.1 (b) states that the Holder Representative has the power to represent the Pre-Closing Holders, "including the right to defend, settle, compromise or take any other action with respect to any matter for which Indemnified Parties seek indemnification under Section 8…." (*Id.*) The Holder Representative is not a means for Plaintiff to obtain a release for his individual fraud and other misconduct. The Holder Representative provision of the Merger Agreement is simply not relevant.

17

Plaintiff, **next**, argues that the Merger Agreement limits recovery for any claims arising out of the Merger Agreement to indemnification. (Dkt. 81 at 10:17-11:1.) Plaintiff asserts that the indemnification provision's fraud exception is voidable (in part because the Merger Agreement defines fraud as "common law fraud under the laws of the State of Delaware"), and that Checkmate has admitted to "wage theft" under California law "by accepting the jurisdiction of this Court." (*Id.* at 10:15 n.30; 10:17 n.31.) But that "fraud" is defined in the Merger Agreement as "common law fraud under the laws of the State of Delaware" is immaterial: California (Plaintiff's preferred law) and Delaware (the law purportedly required by the Merger Agreement) share functionally identical pleading elements.[5] Plaintiff's indemnification argument also ignores that the same provision of the Merger Agreement also excepts from its coverage any breach of § 5.9, which contains a number of representations relating to the intellectual property at the heart of Checkmate's Counterclaims. (Makitalo Decl. at ¶ 2, Ex. A.) Checkmate has sufficiently pled that Plaintiff misrepresented the authorship and ownership of the VoiceBite code. Those misrepresentations by Plaintiff include and provide foundation for the language found in the Merger Agreement. Finally, Plaintiff provides no specific support for his claim that Checkmate has somehow admitted to wage theft beyond a wide reference to six sections of the California Labor Code. Rather than raising a valid argument, Plaintiff's argument appears to be yet another instance of Plaintiff utilizing his Motion to Dismiss to reiterate as much of the facts in his own FAC as possible.

**Next**, Plaintiff argues that the Non-Compete Agreement is "unenforceable" due in part to "ambiguity." (Dkt. 81 at 11:4-6 n.34.) The bulk of Plaintiff's argument takes the form of a winding footnote asserting that because (in Plaintiff's view) the Non-Compete Agreement is ambiguous about whether the term "Company" refers to

---

[5] *Compare, e.g.*, *Yagman v. Kelly*, Case No. CV 17-6022-MWF (PJWx), 2018 WL 2138461, at *11 (C.D. Cal. Mar. 20, 2018) *with Malinak v. Kramer*, C.A. No. CPU6-11-002145, 2012 WL 174958, at *2 (Del. Com. Pl. Jan. 5, 2012).

DEFENDANT CHECKMATE.COM INC.'S OPPOSITION TO PLAINTIFF'S SECOND MOTION TO DISMISS COUNTERCLAIMS

VoiceBite or Checkmate as used therein, the entire Non-Compete is somehow invalid. (*Id.*) Plaintiff fails to support his argument with any case law and asserts no valid basis for a finding that the Non-Compete Agreement is unenforceable.

**Further**, as with the Merger Agreement and the Non-Compete Agreement, Plaintiff concludes that the IP Acknowledgement Letter he signed is "fatally defective and voidable," again without citing to case law to support this conclusion. (Dkt. 81 at 11:15-12:13.) Plaintiff raises the curious argument that, by signing the IP Acknowledgement Letter, he was not agreeing to the terms therein. Plaintiff asserts he "merely verified" that Christopher Lam—the addressee of the IP Acknowledgement Letter—acknowledged the "referenced clauses." (*Id.* at 12:2-3.) Plaintiff provides no support for this conclusion, which is an obvious **factual** attempt to avoid the obligations of an agreement that Plaintiff himself reviewed and signed. Plaintiff further argues that IP Acknowledgement Letter is voidable because "[a]s a contract of adhesion … imposed without meaningful negotiation or review, any ambiguity or lack of material terms must be construed strictly against Checkmate as a drafter," though failing to explain a sufficient basis to find that the IP Acknowledgement Letter is a contract of adhesion or offer sufficient support for his claim that such ambiguity and lack of material terms renders the letter voidable. (*Id.* at 12:10-12) (citing Cal. Civ. Code § 1654.) This section is inapposite: moreover, whether or not "meaningful negotiation or review" exists itself raises issues of fact that are inappropriate for resolution on a motion to dismiss.

**Finally**, Plaintiff addresses the IP Assignment Agreements with a harried and disjointed collection of citations, arguing that those contracts are an "unenforceable employment condition." (Dkt. 81 at 12:14.) In particular, Plaintiff relies on California Labor Code § 2870 for the proposition that the IP Assignment Agreements are void inasmuch as they require the assignment of "inventions developed entirely on an employee's own time without employer resources." (*Id.* at 12:20-13:5.) Yet again, that law does not support Plaintiff's position. As Plaintiff himself notes,

19

California Labor Code § 2870 excepts from its coverage any inventions that "[r]elate at the time of conception … to the employer's business." Cal. Labor Code § 2870(a)(1). The "invention" in question—the VoiceBite code—clearly relates to Checkmate's business in the Voice AI sphere. As such, California Labor Code § 2870 does not render the IP Assignments Agreements void. Plaintiff's AI-generated argument cannot support a finding that the IP Assignment Agreements are inapplicable to Checkmate's sufficiently-pled counterclaims.

## VII.   CONCLUSION

For all of the reasons described above, Checkmate respectfully requests that Plaintiff's motion be denied in its entirety.

Date: September 18, 2025                Respectfully submitted,
                                        K&L GATES LLP

                                        _____

                                        Ryan Q. Keech (SBN 280306)
                                        Stacey Chiu (SBN 321345)
                                        Rebecca I. Makitalo (SBN 330258)
                                        Jacob R. Winningham (SBN 357987)
                                        10100 Santa Monica Boulevard, 8th Floor
                                        Los Angeles, California 90067
                                        Telephone: 310.552.5000
                                        Facsimile: 310.552.5001

                                        *Attorneys for Defendant and Counter-Claimant CHECKMATE.COM INC.*

1

## <u>CERTIFICATE OF WORD COUNT</u>

The undersigned, counsel of record for Defendant certifies that this brief contains 6,726 words, which complies with the word limit of L.R. 11-6.1.

Date: September 18, 2025

Respectfully submitted,

K&L GATES LLP

_____

Ryan Q. Keech (SBN 280306)
Stacey Chiu (SBN 321345)
Rebecca I. Makitalo (SBN 330258)
Jacob R. Winningham (SBN 357987)
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

*Attorneys for Defendant and Counter-Claimant CHECKMATE.COM INC.*

1