# EXHIBIT B

**CHECKMATE.COM INC.**

**NON-COMPETITION AGREEMENT**

This NON-COMPETITION AGREEMENT (this "***Agreement***"), dated April 30, 2024 is made by and between Arjun Vasan (the "***Stockholder***") and Checkmate.com Inc., a Delaware corporation ("***Acquirer***"). For purposes of this Agreement, "Company" shall be deemed to include Company and its direct and indirect subsidiaries.

**BACKGROUND**

A.  Acquirer and VoiceBite Corporation, a Delaware corporation (the "***Company***") are parties to an Agreement and Plan of Merger dated as of the date hereof (the "***Merger Agreement***"), pursuant to which Acquirer will acquire the Company (the "***Merger***"). Capitalized terms used, but not defined herein, shall have the meanings assigned to such terms in the Merger Agreement. Capitalized terms used, but not defined herein, shall have the meanings assigned to such terms in the Merger Agreement.

B.  Stockholder beneficially holds a substantial amount of the Company's capital stock, and will receive substantial consideration as a result of Stockholder's stock ownership in the Company upon the closing of the Merger (the "***Closing***").

C.  Stockholder understands and agrees that as a Company Employee and a key member of the Company's management and technical workforce, Stockholder will obtain, extensive and valuable knowledge, technical expertise, confidential information and other trade secrets concerning the Business.

D.  Stockholder will be hired as an at-will employee of Company, and Stockholder will derive significant value from Company's agreement to provide Stockholder with confidential and proprietary information relating to the business and operation of the Company in the course of Stockholder's duties to Company.

E.  This Agreement is necessary to protect Company's legitimate interests, including its legitimate interests in its confidential information and trade secrets. Stockholder understands and acknowledges that the execution and delivery of this Agreement by Stockholder is a material inducement to the willingness of Company to offer Stockholder employment by Company and is a condition of such employment, for the purpose of protecting Company's legitimate interests in its confidential information and trade secrets.

**NOW, THEREFORE,** in consideration of the foregoing premises and for good and valuable consideration, receipt of which is hereby acknowledged, Stockholder, intending to be legally bound, agrees as follows:

1.  **Certain Defined Terms**. As used herein:

"***Business***" means the Company's current business of providing artificial intelligence powered voice systems for phone answering or for restaurant drive through order processing.

"***Good Reason***" means: (i) a material reduction in Stockholder's job responsibilities, job title or duties, taken in the aggregate, provided that Good Reason to terminate employment shall not exist after any acquisition of the Company (by merger or otherwise) because Stockholder will be employed by a subsidiary of the parent company or because of reasonable changes in responsibilities, job title or duties resulting from

any such acquisition; (ii) without Stockholder's prior written consent, the Company requires Stockholder to relocate to a facility or location more than thirty (30) miles away from the location at which Stockholder was working immediately prior to the required relocation; or (iii) a reduction of more than ten percent (10%) in Stockholder's then-current base salary (other than as part of an across-the-board, proportional salary reduction applicable to all executive officers), provided that no change in job title after the first anniversary of the Closing shall constitute Good Reason, and provided further that none of the foregoing events or conditions will constitute Good Reason unless Stockholder provides the Company with written objection to the event or condition within 30 days following the initial occurrence thereof, the Company does not reverse or otherwise cure the event or condition within 30 days of receiving that written objection, and Stockholder resigns his employment within 30 days following the expiration of that cure period.

"***Restrictive Period***" means the period commencing on the date hereof and ending on the date that is two years from the date hereof, provided that the Restrictive Period shall terminate if Stockholder terminates his employment for Good Reason or the Company terminates Stockholder's employment other than for Cause; provided that in the event that it is judicially determined that Stockholder has breached any provision of this Agreement, the Restrictive Period shall be automatically extended by a number of days equal to the total number of days in the period from the date on which such breach shall have first occurred through the date as of which such breach shall have been fully cured.

"***Cause***" means (i) Stockholder's failure or refusal to perform his duties to the Company in any material way after specific instruction from the Company which failure or refusal, if curable (in the reasonable determination of the Company), is not cured to the reasonable satisfaction of the Company within thirty (30) days after delivery of written notice thereof; (ii) Stockholder's failure to cooperate in any internal or external investigation involving the Company; (iii) Stockholder's indictment for, conviction of, or plea of guilty or nolo contendere to, any felony (whether or not any right to appeal has been or may be exercised) or any crime of moral turpitude; (iv) Stockholder's commission of fraud, embezzlement, dishonesty, misappropriation or reckless or willful destruction of the Company's property; (v) any act or omission constituting willful malfeasance, gross negligence or willful or gross misconduct relating to the business of the Company, in either case resulting in harm to the Company; (vi) Stockholder's breach of any statutory or common law duty of loyalty to the Company; or (vii) Stockholder's breach of this Agreement, the Merger Agreement, the Transaction Documents, Offer Letter, Confidential Information and Inventions Agreement, or other signed agreement with or for the benefit of the Company.

"***Restrictive Territory***" means the United States, the European Union and Canada and each other jurisdiction in which the Company has any customers, employees or operations during the Restrictive Period.

2.     **Agreement Not to Compete**. During the Restrictive Period and except as otherwise provided herein or unless approved by Company in writing, Stockholder agrees that Stockholder will not, as an employee, agent, consultant, advisor, independent contractor, general partner, officer, director, Stockholder, investor, lender or guarantor of any corporation, partnership or other entity, or in any other capacity, directly or indirectly, for himself or on behalf of any other Person (other than Company or any of its affiliates):

(a)     engage or participate in, or acquire any financial or beneficial interest in, any business that competes with the Business in the Restrictive Territory; or

(b)     induce or assist any other Person to engage in any of the activities described in subparagraph (a).

Notwithstanding the foregoing, Stockholder may own, directly or indirectly, solely as an investment, up

2

to 1% of any class of "publicly traded securities" of any business that is competitive or substantially similar to the Business. The term "publicly traded securities" shall mean securities that are traded on a national securities exchange or on the over-the-counter market.

3. **Agreement Not to Solicit**. Stockholder further agrees that during the Restrictive Period, Stockholder will not, as an employee, agent, consultant, advisor, independent contractor, general partner, officer, director, Stockholder, investor, lender or guarantor of any corporation, partnership or other entity, or in any other capacity, directly or indirectly, for himself or on behalf of any other Person (other than Company or any of its affiliates):

(a) solicit or attempt to solicit any of employees of Acquirer or the Company or induce any of employees of Acquirer or the Company to resign from their employment by Acquirer or the Company, as applicable; or

(b) induce or assist any other Person to engage in any of the activities described in subparagraph (a).

4. **Agreement Not to Disparage**. During the term of this Agreement and during the Restrictive Period, Stockholder agrees that Stockholder will not directly or indirectly or induce others to disparage Company or the Company in any manner that is harmful to the business, business reputation or reputation of Company or the Company. The executive team of Company will not make any statement of a disparaging nature about Stockholder. Nothing in this paragraph shall prohibit a party from providing truthful information in response to a subpoena or other legal process, or otherwise required by law.

5. **Acknowledgment**. Stockholder hereby acknowledges and agrees that:

(a) this Agreement is necessary for the protection of the legitimate business interests of Company in acquiring the Company, including but not limited to trade secrets, valuable confidential business or professional information that otherwise does not qualify as trade secrets, substantial relationships with specific prospective or existing customers, patients, or clients, and/or customer or client goodwill associated with an ongoing business;

(b) the covenants set forth herein are separately bargained-for consideration, and the execution and delivery and continuation in force of this Agreement is a material inducement to Company to enter into employment with Stockholder, without which Company would not offer or enter into such employment;

(c) the scope of this Agreement is reasonable in duration, geographic scope and in the types of restricted activities;

(d) Stockholder's expertise and capabilities are such that his obligations under this Agreement (and the enforcement thereof by injunction or otherwise) will not prevent him from earning a livelihood;

(e) Stockholder represents and warrants that neither the execution and delivery nor the performance of this Agreement will result directly or indirectly in a violation or breach of any agreement or obligation by which Stockholder is or may be bound, the violation of which would impair Stockholder's ability to perform Stockholder's obligations under this Agreement; and

(f) Stockholder has read and understands California Business and Professions Code Section 16601 regarding the enforceability of covenants not to compete. Stockholder acknowledges and

3

agrees that the covenants contained in this Agreement are a valid restraint on trade pursuant to Section 16601 and are binding and enforceable against Stockholder in accordance with their terms.

6. **Remedy**. Stockholder acknowledges and agrees that (a) the rights of Company under this Agreement are of a specialized and unique character and that immediate and irreparable damage will result to Company if Stockholder fails to or refuses to perform his obligations under this Agreement and (b) Company shall be entitled, in addition to any other remedies and damages available, to obtain an injunction in a court of competent jurisdiction to restrain any such failure or refusal without posting bond or other security, and without the necessity of proving actual damages. No single exercise of the foregoing remedies shall be deemed to exhaust Company's right to such remedies, but the right to such remedies shall continue undiminished and may be exercised from time to time as often as Company may elect.

7. **Severability**. If any provisions of this Agreement as applied to any part or to any circumstances shall be adjudged by a court to be invalid or unenforceable, the same shall in no way affect any other provision of this Agreement, the application of such provision in any other circumstances, or the validity or enforceability of this Agreement. Company and Stockholder intend this Agreement to be enforced as written. If any provision, or part thereof, however, is held to be unenforceable because of the duration thereof or the area covered thereby, all parties agree that the court making such determination shall have the power to reduce the duration and/or area of such provision, and/or to delete specific words or phrases and in its reduced form such provision shall then be enforceable.

8. **Amendment**. This Agreement may not be amended except by an instrument in writing signed by Company's duly authorized representative, or his designee, and Stockholder.

9. **Waiver**. No waiver of any nature, in any one or more instances, shall be deemed to be or construed as a further or continued waiver of any breach of any other term or agreement contained in this Agreement.

10. **Headings**. The headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement.

11. **Governing Law**.

(a) This Agreement shall be construed and interpreted and its performance shall be governed by the laws of the state of Delaware without regard to conflicts of law principles of any jurisdiction.

(b) The parties hereto agree that any proceeding seeking to enforce any provision of, or based on any matter arising out of or in connection with, this Agreement or the transactions contemplated hereby shall be brought in any federal court located in New York County in the State of New York or any New York state court located in New York County, and each of the parties hereby irrevocably consents to the jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may now or hereafter have to the laying of the venue of any such proceeding in any such court or that any such proceeding brought in any such court has been brought in an inconvenient forum. Process in any such proceeding may be served on any party anywhere in the world, whether within or without the jurisdiction of any such court.

12. **Dispute Resolution**. Any controversy, dispute or claim regarding whether a termination is for Cause shall first be settled through good faith negotiation. If the dispute cannot be settled through negotiation, the parties agree to attempt in good faith to settle the dispute by mediation administered by JAMS. At the conclusion of the mediation, the mediator shall, if requested by either party, provide a non-binding reasoned opinion on the issue of whether a termination was for "Cause" as defined in this

Agreement (the "<u>Mediator Opinion</u>").  The Mediator Opinion shall be confidential and may not be used in any subsequent litigation, arbitration or other proceeding.  The mediation shall not involve mandatory discovery and neither the mediator nor any party shall have the ability to require or compel disclosure of any information or materials. All offers, promises, conduct and statements, whether oral or written, made in the course of the negotiation or mediation by any of the parties, their agents, employees, experts and attorneys are confidential, privileged and inadmissible for any purpose, including impeachment, in arbitration or other proceeding involving the parties, provided that evidence that is otherwise admissible or discoverable shall not be rendered inadmissible or non-discoverable as a result of its use in the negotiation.

13.     **<u>Entire Agreement</u>**. This Agreement constitutes the entire agreement of the parties with respect to the subject matter of this Agreement and supersedes all prior agreements and undertakings, both written and oral, between the parties, with respect to the subject matter of this Agreement (but does not in any way merge or supersede the Stockholder's Offer Letter and or Confidential Information and Inventions Agreement with Company).

*[SIGNATURE PAGES FOLLOW.]*

**IN WITNESS WHEREOF**, Company and Stockholder have executed this Non-Competition Agreement on the day and year first above written.

**STOCKHOLDER:**

*Arjun Vasan*

box SIGN          1R7VP2L6-4YYQ33YR

**Arjun Vasan**

**IN WITNESS WHEREOF**, Company and Stockholder have executed this Agreement on the day and year first above written.

**CHECKMATE.COM INC**.
a Delaware corporation

By: _/s/ Vishal Agarwal_
    (DocuSigned by: Vishal Agarwal, E86E90D5BFCD434...)

Name: Vishal Agarwal
Title:  Chief Executive Officer