ARJUN VASAN

PLAINTIFF IN PRO PER

ARJUN.VASAN@GMAIL.COM

(562) 900-6541

12615 193RD STREET

CERRITOS, CA 90703

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>CHECKMATE.COM, INC.,<br>(dba "Checkmate")<br><br>    Defendant and Counterclaimant. | Case No.: CV-00765-MEMF-JPR<br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**OBJECTION TO UNTIMELY OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE; [PROPOSED] MEMORANDUM IN REPLY**<br><br>Complaint Filed: January 28, 2025<br>Hearing: ~~10:00 a.m. on October 9, 2025~~<br>Courtroom: 8B |

**TO THE HONORABLE COURT**:

    Plaintiff Arjun Vasan ("AV") objects to the untimely opposition (Dkt. 95) filed by Defendant Checkmate.com, Inc. ("Checkmate") and requests that Checkmate be admonished for filing such without leave. See L.R. 7-12, 7-13, Dkt. 89. In the case the Court is inclined to consider the papers, AV lodges his [Proposed] Memorandum in Reply herewith.

Dated: **September 25, 2025**

In: **Cerritos, California**

                           **Respectfully submitted**,

                           /s/ *Arjun Vasan*

                           **Arjun Vasan**, Plaintiff *In Pro Per*

i

# [PROPOSED] MEMORANDUM IN REPLY

## I. INTRODUCTION

Checkmate boldly accuses AV of seeking to manufacture expense while itself pleading a facially absurd forty-seven[1] "affirmative defenses." AV proposed—repeatedly—to narrow those defenses in meet-and-confers; Checkmate refused. Rule 12(f) exists for exactly this problem: to "avoid the expenditure of time and money that must arise from litigating spurious issues." *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

Checkmate misstates this Court's precedent. It cites *Accu Casting Co. v. Zou* to suggest boilerplate survives. But *Zou* applied the Ninth Circuit's fair-notice standard to strike 18 of 19 such defenses, 10 without leave. What this Court did in *Zou* is what it can and should do here.

Checkmate's procedural objections are an effort to mask its own much more egregious failure to timely oppose. AV filed a Rule 12(b)(6)-(7) motion directed to counterclaims and a Rule 12(f) motion directed to affirmative defenses. Both were filed on the same day, not sequentially—no delay resulted. Noting the Standing Order was updated after filing, AV complied with the limits of the then-current Standing Order (25 pages for motions/oppositions; 10 pages for replies). Moreover, the need for extensive briefing was itself *caused* by Checkmate's expansive pleading.

Finally, allowing all forty-seven labels to stand would prejudice AV and burden the Court and the parties with needless discovery and trial complexity. The efficient course is to do what Rule 12(f) and this Court's practice contemplate: strike non-defenses and duplicates without leave, and require minimal, case-specific facts for any truly affirmative defense that remains. This narrows the case now and avoids the very expense and delay Checkmate attributes to AV.

## II. PROCEDURAL ISSUES

### A. Rule 12(g) Does Not Bar this Motion

Rule 12(g)(2) prevents serial Rule 12 motions that raise "available" defenses omitted from an earlier Rule 12 motion; it is aimed at piecemeal delay, not at forbidding a contemporaneous Rule 12(f) motion directed to a different pleading and seeking different relief. The Ninth Circuit's

---

[1] Checkmate asserts two "Forty-third Affirmative Defenses", which it notably did not address in opposition. AV's motion labeled them as 43A and 43B in Exhibit A—he maintains that distinction in the updated table.

guidance confirms courts should not elevate 12(g) formalism over practical case-management when Rule 12 motions are used to narrow issues efficiently. In *In re Apple iPhone Antitrust Litig.*, Apple filed a Rule 12(f) motion (to strike) together with a later Rule 12(b)(6) challenge; plaintiffs invoked Rule 12(g)(2). The Ninth Circuit held that even assuming a 12(g)(2) problem, the district court's choice to hear the later Rule 12(b)(6) issue was at most harmless because it "materially expedited" resolution on the merits—endorsing a pragmatic approach to Rule 12 sequencing. 846 F.3d 313, 319–21 (9th Cir. 2017) (discussing 12(g)(2), 12(h)(2) and approving district court's efficiency-focused handling) quotes general statements that Rules 12(g)/(h) promote early, consolidated resolution and avoid delay (e.g., *Chilicky v. Schweiker*, 796 F.2d 1131, 1136 (9th Cir. 1986), *rev'd on other grounds*, 487 U.S. 412 (1988)*, Aetna*). But there is no delay concern here: the two motions were noticed together and briefed on the same schedule, and—again—address different pleadings. Those cases do not hold that a 12(f) challenge to an Answer must be bundled with a 12(b)(6) challenge to a counterclaim (nor could they, given Rule 12(f)(2)'s separate timetable).

That principle applies *a fortiori* here. AV's Rule 12(b)(6)-(7) motion addresses the counterclaims; his Rule 12(f) motion addresses affirmative defenses in the Answer. Different targets, different standards, different remedies—and both noticed together—defeat any suggestion of sandbagging or delay that animates Rule 12(g). See *Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*, 855 F.2d 1470, 1474–76 (9th Cir. 1988) (Rule 12's consolidation/waiver provisions aim to prevent gamesmanship and delay, not to obstruct efficient resolution of issues).

Finally, Ninth Circuit law on Rule 12(f) underscores that striking insufficient defenses is a proper, independent case-narrowing tool—not a disguised 12(b)(6). See *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–75 (9th Cir. 2010) (defining the proper scope of Rule 12(f) and its distinct role). And when the Court reaches the sufficiency of what Checkmate pled, the governing standard is "fair notice," satisfied only if the defense is described in general terms that apprise the plaintiff of its nature. *Kohler v. Flava Enters., Inc.*, 779 F.3d 1016, 1019 (9th Cir. 2015); *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 827 (9th Cir. 1979).

Bottom line: Rule 12(g)(2) does not bar a contemporaneous Rule 12(f) motion directed at a different pleading and noticed with the 12(b)(6). Even if it did, *Apple iPhone* teaches the Court may hear the motion where, as here, it streamlines the case and advances efficient resolution.

### B.   AV's Motion Was Under the then Current Standing Order Page Limit

Checkmate devotes 170+ words to assert a violation of the 7000-word limit adopted by the Aug. 27 Standing Order—overlooking that a different order was in effect at time of filing. AV acknowledges the order was updated (after filing) to require compliance with the limitations of L.R. 11-6. The earlier version cited *page limits* of 25 (motions and oppositions) and 10 (replies), not word count limits. AV's motion was *compliant*. Furthermore, neither party (prior to instant briefing) had filed certificates of compliance, and Checkmate's own Motion to Dismiss was over 8000 words (Dkt. 18). Henceforth, AV will of course comply with the updated instructions (as he does here).

### C.   Any Untimeliness was Due to Excusable Neglect and in Good Faith

AV's Notice of Motion acknowledged the Aug. 15 filing was nine days after the stipulated due date of Aug. 6—and requested it be considered under excusable neglect due to his delayed discharge from inpatient care on Aug. 4. AV reiterated his intent to amend the motion to dismiss and file this motion to strike at the Aug. 7 Rule 26(f) Conference—Checkmate did not object. On Aug. 14, AV represented in the Rule 26(f) report that he would file the motions on Aug. 15 and did so. At every point, AV kept opposing counsel and the Court apprised. At every point, AV tried to avoid filing this motion, requesting Checkmate trim its defenses. At every point, it declined to do so.

AV also acknowledged that he noticed the motions for less than 42 days before the hearing in the interest of efficiency and invited the Court to continue if needed—which it did. No party was prejudiced as this Court's schedule runs from the filing of the initial motion, not the hearing date.

Checkmate's argument seems to be "he broke the rules, so we can too". Setting aside the obvious non-sequitur here, the nature of the alleged violations matter. Here, Checkmate does not even attempt to allege it was prejudiced, and the court's filing driven timelines ensured that it was not. By contrast, Checkmate's violations have forced the Court to take the motions off-calendar, and delayed AV's planned summary judgment motion on his affirmative wage claims. Moreover, its leave request (made in opposition to AV's Notice/Request to Deem the Aug. 15 motions unopposed)

acknowledges that its failure was within counsel's control and posited a family emergency of *one* of its four attorneys that occurred <u>after the deadline had passed</u>.

It took 10 days, and AV filing Notice for Checkmate to even acknowledge that it had missed the deadline, despite multiple private notices from AV on email threads with all four attorneys. Meanwhile, Checkmate continued to press discovery on its counterclaims to exploit tactical advantage prior to any ruling on plausibility of its counterclaims—an intent confirmed by its refusal to stipulate to freeze such discovery in exchange for AV stipulating consent to its late oppositions.

Finally, <u>*the Court did not grant leave*</u>, despite issuing a minute order on September 18, 2025, that took the motions off calendar and suggested they may be taken under submission. Checkmate's opposition is clearly an unauthorized filing, and its procedural arguments should thus be disregarded.

### III. ARGUMENT

#### D. This Court Strikes Boilerplate Affirmative Defenses

Checkmate's reliance on *Accu Casting Co. v. Elizabeth Yunhong Zou*, No. 2:22-cv-05377-MEMF (C.D. Cal. May 19, 2023, ECF No. 105) (Frimpong, M.) ("*Zou*"), backfires. In *Zou*, <u>this Court struck 18 of 19 affirmative defenses</u>, holding that label-only "defenses" and non-defenses must be stricken, and that even under the Ninth Circuit's "fair notice" standard, some factual context is required when it is not apparent how a defense applies. (*Zou* at 9:7–25, 10:3–6, 16:11–15)

##### 1. <u>The standard is "fair notice," but boilerplate still fails.</u>

Upon review, AV concedes that Judge Frimpong held that affirmative defenses are judged by fair notice (not *Twombly*/*Iqbal*)—but notes she emphasized that "under the fair notice rule, some factual support may be required" where it's not clear how the defense fits. (*Zou* at 9:8–14, 10:3–6)

##### 2. <u>Non-defenses are struck—often without leave.</u>

"A defense which demonstrates that plaintiff has not met its burden of proof is not an affirmative defense," and courts commonly strike such purported defenses. (*Zou* at 10:8–17) Accordingly, the Court struck "failure to state a claim" as not an affirmative defense—without leave to amend—and likewise for other element-negating refrains (e.g., "standing"). (*Zou* at 11:14–19 (failure-to-state-a-claim section); 12:1–5 (standing—"STRICKEN without leave to amend").). Here,

1  Checkmate admits to asserting several such non-defenses, and begs that they should be preserved,
2  citing non-binding authority—directly contradicting the Court's logic in *Zou*.

3          3.    <u>Potentially cognizable defenses must say which one and why.</u>

4      For defenses like estoppel, waiver, laches, unclean hands, res judicata, collateral estoppel, the
5  Court required minimal specifics—what conduct, which statute/decision—so the opponent can
6  prepare. Where that context was missing, the Court struck with leave to supply targeted facts. (*Zou*
7  at 12:6–12 (estoppel needs factual support); 14:1–6 (res judicata); 14:7–12 (collateral estoppel);
8  13:4–10 (unclean hands).) Likewise, the "consent" defense (No. 19) was stricken with leave for lack
9  of detail. (*Zou* at 16:1–9). Here, Checkmate (for example)

10          4.    <u>Defenses that "cannot possibly apply" are foreclosed.</u>

11      *Zou* also notes that courts commonly strike any defense that cannot possibly apply to the
12  claims at hand (*Zou* at 11:1-4). Here, many such defenses are asserted. For example, Checkmate
13  asserts that AV's claims are barred by applicable statutes of limitations (AD #3), but the statutes
14  cited (CCP § 337-340 and 29 U.S.C. § 2617(c)) have time periods ranging from 1-4 years. This
15  action was filed 3 months after AV's termination, and immediate request for payment. The earliest
16  possible event in AV's complaint (the signing of the LOI) occurred in Feb. 2024, less than a year
17  before this action was filed. AD #2 claims failure to exhaust administrative remedies, citing L.C. §
18  98.7—but L.C. § 244(a) expressly removes any such requirement from the claims at issue, with the
19  exception of CFRA (now moot, as AV attaches his right-to-sue as Ex. B).

20          5.    <u>Bottom line from Zou: shotgun boilerplate gets struck; only truly affirmative
21      defenses survive with minimal facts.</u>

22      The Court concluded by striking defenses 1–17 and 19—**18 of 19** (10 without leave)—
23  allowing amendment only as specifically described. (*Zou* at 16:11–15)

24      Checkmate's 46 "affirmative defenses" replicate *Zou*'s condemned defects: (i) numerous
25  non-defenses that merely negate elements (e.g., "failure to state a claim," "standing," "no
26  damages")—strike without leave; (ii) defenses that "cannot possibly apply" to these claims—strike
27  as a matter of law (*Zou* at 11:1–6); and (iii) catch-alls (e.g. waiver, estoppel, laches, unclean hands,
28  res judicata, collateral estoppel) with no facts—strike with leave limited to short, factual statements

supplying fair notice, if they can plead them. (*Zou* at 12:8–16, 13:3–10, 14:1–14) The Court should do here exactly what it did in *Zou*: trim Checkmate's 46 down to the few that are both cognizable and sufficiently supported, striking the rest consistent with the *Zou* Order. (*Zou* at 16:11–15). AV attaches a table mapping each defense to one of these categories, with a brief description, and updated to account for the "fair notice" standard rather than *Twombly/Iqbal*. See Exhibit A.

### E. Rule 12(f) May be Disfavored, but is Warranted Here

Rule 12(f) exists to prune "redundant, immaterial, impertinent, or insufficient" matter and to prevent exactly this problem: a shotgun list of defenses that obscures the issues, explodes discovery, and wastes judicial resources. See *Barnes v. AT&T Pension Benefit Plan*, 718 F. Supp. 2d 1167, 1173–74 (N.D. Cal. 2010) (striking boilerplate defenses because they "clutter the docket" and "create unnecessary work"); *Qarbon.com Inc. v. eHelp Corp.*, 315 F. Supp. 2d 1046, 1049–50 (N.D. Cal. 2004) (bare labels deprive plaintiff of fair notice); *Perez v. Gordon & Wong Law Grp.*, No. 11-03323, 2012 WL 1029425, at *10 (N.D. Cal. Mar. 26, 2012) (prejudice where plaintiff must "spend time and money" litigating legally insufficient defenses); *Rosales v. County of Kern*, No. 1:05-cv-00829, 2009 WL 3612687, at *4 (E.D. Cal. Oct. 28, 2009) (same); *Heller Fin., Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989) (affirmative defenses that are 'nothing but bare bones conclusory allegations' or omit necessary elements are meritless and may be stricken)

### F. Checkmate's Shotgun Pleading Burdens the Court and Prejudices AV

AV has already suffered prejudice from the sheer volume of asserted defenses—he has been forced to spend time as a single pro se litigant on filing this motion. Checkmate's assertion that AV filed to increase delay and expense is contrary to common sense—and contrary to the multiple meet and confers in which AV beseeched Checkmate to trim the defenses to those it actually believes in. Allowing these defenses to stand is what has and will cause needless burden on AV and the Court.

This Court has already made the point in *Zou*: even under the Ninth Circuit's fair notice standard, when "it is not apparent how the defense applies," the defendant must supply at least minimal facts, and non-defenses are struck—often without leave. Zou ultimately struck 18 of 19 defenses for being <u>label-only</u>, <u>duplicative</u>, or <u>obviously inapplicable</u>. (Zou at 16:11–15)

Checkmate's forty-seven "affirmative defenses" present all three prejudicial features:

<u>They force needless discovery and motion practice</u>. Each label ("waiver," "estoppel," "unclean hands," "laches," multiple statute-of-limitations variants, etc.) invites custodians, RFPs, depositions, and Daubert skirmishes—without indication what conduct, which statute/decision, or which party supposedly triggers the defense. That is prejudice under *Barnes*, *Perez*, and *Rosales*.

<u>They obscure the issues for Rule 16 and trial</u>. Local Rule 16 requires the parties to crystallize triable issues in the pretrial order; a 47item grab bag makes that task unmanageable, multiplies in limine disputes, and risks jury confusion. See *Barnes*, 718 F. Supp. 2d at 1173–74 (boilerplate "clutter[s]" the case and "unnecessarily increase the duration and expense of litigation").

<u>Many are non-defenses or cannot possibly apply</u>. "Failure to state a claim," "standing," "no damages," and other element-negating refrains are not affirmative defenses and should be stricken with prejudice. (Zou at 10:13–18; 11:13–18; 12:1–6.) Others are facially inapplicable given California's governing statutes (e.g., defenses premised on enforcing post-employment restraints under §§ 16600/16600.5) and should be stricken as a matter of law. (Zou at 11:1–6).

Pleading 47 defenses is inherently prejudicial, especially when a large number appear facially impossible (e.g. statute of limitations when this action was filed less than 3 months after AV's termination). AV would have to expend time and effort (including the inevitable discovery disputes) procuring admissible evidence to disprove such defenses. Streamlining now would be in the interest of all parties—including Checkmate, which can then focus on actually viable defenses.

### G.    Checkmate's "AI Generated" Smear is Projection and Diversion

Checkmate's counsel's fixation on AV's alleged use of AI is *projection*. Just months ago, K&L Gates attorneys—including Mr. Keech here—were subject to a federal order to show cause for not just misusing AI but <u>failing to reveal such use upon direct questioning</u>. The firm was sanctioned for its conduct on May 6, in which a third of its citations were found to be fabricated (in whole or in part).[2] AV raises this case solely for context on Checkmate's "AI Generated" label.

Checkmate does not identify a single problematic citation, let alone fabricated one, in the instant motion. In its opposition to the Motion to Dismiss, Checkmate includes two lengthy footnotes

---

[2] See *Lacey v. State Farm Gen. Ins. Co.*, No. 2:24-cv-05205-FMO-MAA, ECF No. 119 (C.D. Cal. May 6, 2025) (Order of Special Master Imposing Non-Monetary Sanctions and Awarding Costs).

addressing citations in the earlier superseded motion—*which AV expressly amended and replaced,* and that the Court mooted accordingly. AV spent time researching each cited case, and if there were any errors in the Aug. 15 motions (due to searching by the case name and forgetting to update the citation), these were slip ups in a substantial and good faith effort by a <u>first time</u> pro se litigant.

The Court should strike or disregard the "AI-Generated" smear as asserted without any evidence other than counsel's subjective beliefs. AV uses AI responsibly and transparently as he uses any other tool. Counsel's fixation and transparent try to prejudice the Court represents its very real worry that AV's arguments will be taken seriously. AV notes that Checkmate has previously tried such tactics and *<u>failed comprehensively</u>*. See Dkt. 67 (ruling on motion to dismiss/transfer, where the Court prefers, *inter alia*, AV's plain language reading of Labor Code § 925 over Checkmate's legal spin).

## IV.   CONCLUSION

AV now recognizes that this Court applies the Ninth Circuit's fair-notice standard. But even under that forgiving rule, Checkmate's defenses fall. In *Zou*, this Court struck 18 of 19 such defenses—10 without leave—as label-only pleading gives no notice and wastes resources (Zou at 9, 10, 11, 12, 16)—such pruning is warranted here.

The pleading itself confirms overreach. Checkmate—represented by four attorneys from a national firm—has already withdrawn its *<u>first</u>* defense ("failure to state a claim") after conceding it is not an affirmative defense. That misstep, coupled with a 47-item shotgun list, underscores why Rule 12(f) exists: to prevent gamesmanship that forces a sole litigant—and the Court—to sift through dozens of "affirmative defenses" for substance that isn't there. Moreover, its untimeliness has forced the Court to take the motion off calendar—disrupting AV's plans to seek summary judgment on his affirmative claims to recover earned and unpaid wages. It should not be allowed to benefit from this.

AV therefore requests an admonishment under L.R. 7-13 and the Court's inherent authority, or, if the Court prefers, issuance of a Rule 11(c)(3) order to show cause regarding counsel's filing of a shotgun answer that included non-defenses and its failure to timely oppose the instant motion.

Finally, AV acknowledges that his opening request to "strike all 46 defenses with prejudice" was rhetorical (Mot. at 7:3-4). The actual relief sought (Mot. at 23:11–16) has always been narrower:

(1) strike non-defenses and legally unavailable defenses with prejudice; and (2) strike the remainder with 14 days' leave to plead concrete facts. AV also provided a detailed table and [proposed] order categorizing the defenses accordingly; and updates that table in Exhibit A filed herewith.

    Checkmate's opposition failed to address the sloppy/duplicated numbering of its forty-third defense—given that AV's earlier table had already distinguished these into 43A and 43B, he maintains that numbering here. Accordingly, AV respectfully requests the Court strike Checkmate's Affirmative Defenses consistent with the relief detailed in Exhibit A.

# CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6

Plaintiff Arjun Vasan certifies that this brief contains 3,175 words, which complies with the 7000-word limit of L.R. 11- 6.1 and the Court's Civil Standing Order dated Aug. 27, 2025.

Dated: **September 25, 2025**

In: **Cerritos, California**

**Respectfully submitted**,

/s/ *Arjun Vasan*

**Arjun Vasan**, Plaintiff *In Pro Per*