# EXHIBIT D-1

November 20, Early Settlement Outreach after November 14 Termination

 Gmail                                                                                           Arjun Vasan <arjun.vasan@gmail.com>

## Settlement Proposal
1 message

**Arjun Vasan** <arjun.vasan@gmail.com>                                                                 Wed, Nov 20, 2024 at 7:54 PM
To: Vishal Agarwal <vishal@itsacheckmate.com>, Mike Bell <michaelb@itsacheckmate.com>
Cc: Pietari Grohn <pietari@gcpluslaw.com>

Vishal, Mike,

To resolve this matter amicably and expeditiously, I propose the following settlement terms:

1. Retention Bonus: ~$475k, but please provide the deductions agreed upon and calculations. I only had those on my checkmate email.

2. Severance: $72,000, equivalent to 3 months of severance pay.

3. Performance Bonus: $140,000 for performance targets achieved, as outlined in the Q3 company-approved leadership slide.

4. Reimbursements: Full reimbursement for all technology fees that were charged to my personal accounts until recently, as well as unfiled expenses related to conferences (estimated total: $2,000–$3,000).

5. Legal Fees: Reimbursement for legal fees incurred, ranging from [estimated range].

Total Settlement Amount: Approximately $690,000–$700,000 (depending on the final total of reimbursements and legal fees).

Payment Terms:

• Half of the total fixed amount ($345k) to be paid no later than November 30th, 2024.

• The remaining half ($345k) plus the to be determined amount for reimbursements and legal fees no later than Jan 15th, 2025.

Again, for the record, there is no evidence that I violated the non-solicitation agreement, as simply reaching out to competitors doesn't constitute a breach of non-solicitation or non-compete clauses. I explored backup options with good reason to anticipate termination or demotion, and did not solicit or encourage anyone to leave Checkmate.

Speculation or contact alone does not establish cause or breach of contract.

I remain open to resolving this matter in good faith and hope we can move forward constructively and without escalation or headache for all parties.

Best regards,

Arj


Sent from Gmail Mobile

# EXHIBIT D-2

December 6, 2025 (First) Notice of Claim

# K&L GATES

December 6, 2024

Ryan Q. Keech
Partner
Ryan.Keech@klgates.com

T +1 310 552 5070
F +1 310 552 5001

**VIA ELECTRONIC MAIL ONLY**

Pietari Grohn, Esq.
GC+ Law Group
101 The Embarcadero, Suite 211
San Francisco, California 94110
pietari@gcpluslaw.com

Re:    **VoiceBite/Arjun Vasan – Notice of Direct Claim**

Dear Mr. Grohn:

We understand that you represent Arjun Vasan. Pursuant to Section 8.3(c) of the Agreement and Plan of Merger ("Merger Agreement") entered into by and between our client Checkmate.com Inc. ("Checkmate") in connection with Checkmate's April 2024 acquisition of VoiceBite Corporation ("VoiceBite"), we write to (a) inform you that we have been retained to investigate claims and defenses against your client arising out of his conduct in connection with such transaction and his recently-ended service as a Checkmate employee; and (b) provide you with notice of our client's Direct Claim for indemnification for certain Company losses against your client, Arjun Vasan.[1] We ask that you please direct all correspondence regarding this matter to our attention.

By way of background: as you know, Mr. Vasan became an employee of Checkmate as a result of a series of transactions that closed on or about April 30, 2024, whereby Checkmate acquired a controlling interest in VoiceBite. As you also know, VoiceBite was co-founded by Mr. Vasan and held itself out to Checkmate, the market and the public as holding the rights in certain software enabling the provision of highly valuable AI-based phone ordering solutions. Much of the reason for Checkmate's agreement to acquire a controlling interest in VoiceBite AI was premised on VoiceBite's presumed ownership of its own intellectual property and your client's related express representations and warranties concerning same, which representations and warranties were backed up by several express indemnification provisions.

As part of the Checkmate/VoiceBite transaction, your client – as a "Pre-Closing Holder" – guaranteed the accuracy of the following:

---

[1] Such notice will also be provided to additional parties, as may be appropriate and required.

K&L GATES LLP
10100 SANTA MONICA BOULEVARD   EIGHTH FLOOR   LOS ANGELES   CA 90067
T +1 310 552 5000  F +1 310 552 5001  klgates.com

- That your client was the "owner, inventor and/or author" of certain assigned intellectual property related to VoiceBite software (namely, a "comprehensive set of components of an AI voice ordering system" (*see* Company Disclosure Schedule, Section 5.9)), and that such intellectual property was not subject to "any dispute, claim, prior license or other agreement, assignment, lien or rights of any third party" or "any claim of any prior employer or third party client" of your client (Arjun Assignment Agreement, Section 3);
- That VoiceBite "owns, free and clear of any Encumbrances (other than Permitted Encumbrances), or has a valid and enforceable right to use, all Intellectual Property used or proposed to be used in connection with the operation and conduct" of its business (Checkmate/VoiceBite Merger Agreement, Section 5.9(c));
- That neither VoiceBite "nor any of its current or proposed products or services have infringed upon, misappropriated or are currently infringing upon, misappropriating or otherwise violating any Intellectual Property rights of any Person" (*Id*., Section 5.9(f));
- That "no source code for any Company Proprietary Software has been delivered, licensed, or made available" to any person "who is not an employee of the Company" (*Id*., Section 5.9(h));
- That your client would "not bring onto [VoiceBite]'s premises" any "property belonging to a former employer or any other person to whom I have an obligation of confidentiality unless that former employer or person has consented in writing" (Vasan Trade Secret Acknowledgement);
- That "[n]either this Agreement nor any agreement, attachment, schedule, exhibit, certificate or other statement delivered pursuant to this Agreement or in connection with the transactions contemplated hereby omits to state a material fact necessary in order to make the statements and information contained herein or therein, not misleading." (Checkmate/VoiceBite Merger Agreement, Section 5.19); and
- That your client was "not aware of any information necessary to enable a prospective purchaser of the Company Shares or the business of the Company and its Subsidiaries to make an informed decision with respect to the purchase of such Company Shares or business that has not been expressly disclosed herein." (*Id*).

The importance of ensuring complete and unassailable rights to purported VoiceBite intellectual property – again, a primary reason for the transaction – was repeatedly and explicitly made crystal-clear to your client. He agreed, among other things, that in the event any of these representations and warranties turned out to be inaccurate, he would take on several responsibility for "any and all claims, liabilities, obligations, damages, losses, penalties, judgments, costs and expenses (including amounts paid in settlement, costs of investigation and reasonable attorney's fees and expenses), whenever arising or incurred" arising therefrom or relating thereto. (Checkmate/VoiceBite Merger Agreement, Section 8.1(a)).

You can thus imagine that Checkmate has been beyond disturbed to learn that Mr. Vasan was much less than truthful in many of his key transaction-related representations. Rather than reflecting, as Mr. Vasan told VoiceBite and VoiceBite told Checkmate, original, proprietary and enforceable intellectual property contributions owned by your client and/or VoiceBite, much of the core VoiceBite code that is critical for the operation of its systems has instead proven to be littered with elements that have been re-used, warmed-over, registered and otherwise owned by various ***third-party*** companies and individuals.

For example:

- ***Deployment.txt.***  This code describes how to deploy the VoiceBite application.  ***The entirety of the document refers to the application as being called "Cyborg"*** – one of your client's previous employers.  A representative sample of that code is provided below.

- ***Deepgram.txt.***  This code provides credentials for using the Deepgram TTS, and ***also explicitly refers to Cyborg.***

- ***Env.json.***  This code provides configuration settings for the application and ***makes dozens of references to "friendlycyborg,"*** a representative example of which is set forth below.

- ***Globals.py.***  This code provides the configurations to the rest of the application, ***incorporating the Env.json structure above.***

Even more brazenly, there are several user interfaces within VoiceBite that have copyright headers ***changed from CyborgOps to VoiceBite*** in a commit.  A representative example is provided below.



3

December 6, 2024

And still more troubling evidence has come to light indicating that portions of VoiceBite code appear to have been authored and by and subject to ownership claims by yet another *third party*: Vasan Varadarajan.

```
#!/usr/bin/env python
# -*- coding: utf-8 -*-

__author__ = 'Arjun Vasan, Vasan Varadarajan'
__copyright__ = 'Copyright 2018.'
```

The import of all of this is clear. When your client assured Checkmate and VoiceBite in so many words that they were the *exclusive* and *rightful* owners of all of the *original* code at the heart of VoiceBite's technology, Mr. Vasan was either knowingly lying or was recklessly untruthful in a way that suggests not only breaches of the relevant agreements, but serious civil or even criminal misconduct. None of this is consistent with your client's obligations under his agreements and all, taken together, entitle Checkmate to compensation and disentitle your client to claim that he is owed the compensation that he claims to be owed for what he appears to consider to be some kind of "Good Reason" resignation.

We would be remiss if we did not directly address just how misguided your client is on that last point: as you know, on November 13, 2024, your client claimed that he was "resign[ing] from [Checkmate], with good reason, due to the demand made in late October that I accept a demotion, despite exceptional performance." Email from Vasan to Agrarwal dated November 24, 2024. He subsequently claimed entitlement to a "Retention Bonus" of "~475K," $72,000 in severance, $140,000 in a "Performance Bonus," certain "estimated" "Reimbursements" and "Legal Fees," for a total settlement amount of "[a]pproximately $690,000-$700,000." Your client well knows that he did not exemplify "exceptional performance" during his time with Checkmate. To the contrary, his time with Checkmate was marred by a consistent failure to demonstrate the professionalism and conduct expected of company executives and to comply with the company's culture of courtesy and professionalism. The end of your client's employment came as a result of his own inability to conduct himself with appropriate professionalism; it is *your client* that owes Checkmate significant funds arising out of his obligation to indemnify Checkmate for losses arising out of his conduct, and it is your client who must and will pay for those losses and do so immediately. For these and other reasons, Checkmate (a) rejects your client's "Good Reason" resignation; and (b) further rejects the purported "settlement" demand as outrageous and unsupported under the circumstances.

In light of the results of Checkmate's ongoing investigation into the foregoing significant concerns regarding your client's conduct, together with the misrepresentations regarding the ownership of and rights to VoiceBite's intellectual property, Checkmate has no intention to make any more payments to your client at this time. *See* Checkmate/VoiceBite Merger Agreement, Section 3.3 ("Each of Purchaser, Merger Sub and the Surviving Corporation will be entitled to deduct and withhold from the consideration otherwise payable pursuant to this Agreement such amounts as it reasonably determines in good faith it is required to deduct and withhold with respect to the making of such payment under the Code, or any other applicable Law."). Rather, Checkmate expects *your client* to provide *Checkmate* with immediate reimbursement for all of Checkmate's related out-of-pocket expenses associated with the Merger Agreement and otherwise including, but not limited to, attorney's fees, reimbursement expenses, and other related costs incurred.

Please let us know if you have any questions regarding the foregoing. Otherwise, nothing herein is intended to be, nor should it be construed as, a waiver or limitation of any of Checkmate's or VoiceBite's rights, claims or defenses in this matter, all of which are and will remain expressly reserved.

Very truly yours,

Ryan Q. Keech

# EXHIBIT D-3

December 15, 21 - Formal Requests for Executed Agreements



Arjun Vasan <arjun.vasan@gmail.com>

---

## VoiceBite / Arjun Vasan - Final Notice Before Legal Action

**Arjun Vasan** <arjun.vasan@gmail.com>　　　　　　　　　　　　　　　　Sun, Dec 15, 2024 at 4:12 PM
To: ryan.keech@klgates.com

Ryan,

I would like to formally request my personnel file, as well as any documents I signed in relation to my employment at Checkmate, as well as the fully executed set of documents signed in conjunction with the merger. Please request these from your clients and provide them in a timely manner.

Additionally, I must point out that your reference to November 13th as the date of my supposed "resignation", in this context, is a material misstatement of fact that calls into question the credibility of your clients' narrative. Given the context, it strongly suggests an attempt to mislead for financial gain, i.e. commit fraud.

I look forward to your prompt provision of the requested documents and your acknowledgment of these material inaccuracies.

Best regards,
Arjun
[Quoted text hidden]

 Arjun Vasan <arjun.vasan@gmail.com>

## Demand for personnel documents and preservation of evidence.
2 messages

---

**Arjun Vasan** <arjun.vasan@gmail.com>                                         Sat, Dec 21, 2024 at 2:10 PM
To: "Keech, Ryan Q." <ryan.keech@klgates.com>, Vishal Agarwal <vishal@itsacheckmate.com>, Mike Bell <michaelb@itsacheckmate.com>, Amy Brown <amy.brown@itsacheckmate.com>

Dear Mr. Keech, [CC: Relevant Parties]

As you are aware, California Labor Code **§ 432** and **§ 1198.5** entitle me to receive executed copies of any documents I've signed and access to my personnel file as a whole.

It is highly concerning that your clients continue to refuse to provide these documents, despite repeated requests over the past month. These documents are material to both your clients' Notice of Claim and my own claims against the company. Worse still, these requests have not even been acknowledged. I am left to wonder what it is they don't want me to see or have available for my legal needs.

It has become clear that your clients are determined to deprive me of my due compensation, manufacturing a shifting series of allegations to do so. First, it was unprofessionalism. Then solicitation. Then IP misuse. First, it was demotion. Then termination. And when that wasn't enough, *resignation*. Really?

The progression of these claims demonstrates a clear pattern. When none of these allegations proved sufficient to deny my severance benefits, your clients resorted to fabrication—despite the very clear statement by the CEO during the November 14th meeting at 8AM, that I was "completely terminated with immediate effect," repeated multiple times for clarity.

Could it really be true that the CEO, Chief of Strategy, and Head of HR would collectively conspire to promote such a blatant falsehood over $122,000 in severance? Putting aside everything else, there is no question that one core company value I epitomized was **hard work.** This, I'm sure, at least I hope, even your clients would acknowledge. Is this treatment the expected reward for hard work at Checkmate?

Just six weeks ago, I was a valued colleague, working into the nights and weekends to inspire my team and share my best ideas with the company. The worst I was accused of was a slack rant now and then. And now, I am cast as a scoundrel capable of every sort of malevolence—stealing employees away from Checkmate while stealing IP to benefit Checkmate.

These optics do not compute. No employees were stolen, and no one has made an IP claim against Checkmate. I am the only party who has suffered measurable damages.

I urge your clients to consider another type of loss .. Was it really worth debasing their culture in order to throw me under the bus; to crush me like a bug? Or perhaps that's why they are so keen on this strategy: the only way to justify such actions, is to project even more hideous allegations upon a defenseless employee when they knew he was in his most vulnerable state.

I respectfully reiterate my request for signed agreements and access to my personnel file, as required under California law. I have also attached the latest updated demand for evidence preservation. I have copied your clients, since you have yet to acknowledge these demands have been circulated and are being addressed.

Please confirm and remit the requested documents.

Best regards,
Arjun

---

📄 **preserve-evidence-dec-21.pdf**
54K

**Arjun Vasan** <arjun.vasan@gmail.com> Thu, Dec 26, 2024 at 12:45 PM
To: "Keech, Ryan Q." <ryan.keech@klgates.com>, Vishal Agarwal <vishal@itsacheckmate.com>, Mike Bell <michaelb@itsacheckmate.com>, Amy Brown <amy.brown@itsacheckmate.com>

Mr. Keech, [Relevant Parties],

Please see attached updated Demand for evidence preservation. Added are any communications from Vishal Agarwal with Lunchbox employees related to private emails I sent that he improperly acquired.

Further added are any communications related to the recruiting and hiring of Michael Mayernick.

- Arjun

Sent from Gmail Mobile

[Quoted text hidden]

 **preserve-evidence-4.pdf**
23K

# EXHIBIT D-4

January 22, 2025, (Second) Notice of Claim

# K&L GATES

January 22, 2025

**VIA ELECTRONIC MAIL ONLY**

Arjun Vasan
arjun.vasan@gmail.com

Ryan Q. Keech
Partner
Ryan.Keech@klgates.com

T +1 310 552 5070
F +1 310 552 5001

Re:     **VoiceBite/Arjun Vasan – Second and Final Notice of Direct Claim**

Dear Mr. Vasan:

As we note for the record, your failure to provide any explanation for your conduct or to agree to answer questions regarding same, this letter serves as our client's final follow-up to our initial correspondence dated December 6, 2024, regarding misrepresentations and fraudulent conduct in connection with the transactions entered into by and between Checkmate and VoiceBite Corporation ("VoiceBite") in connection with Checkmate's acquisition of VoiceBite in or around April 2024 (the "Transaction").[1]

==Despite nearly a month and a half, you have attempted to deflect by mischaracterizing this issue as an employment dispute.  It is not.==  You have failed and refused to address the core issue: the transactional damage caused to our client by the reality that as co-founder of VoiceBite, you misrepresented to Checkmate the authorship, ownership, and originality of the intellectual property that you claimed, falsely, was owned by VoiceBite.  Put simply, you claimed that critical, core assets of the VoiceBite business belonged to VoiceBite when you *knew* that was not true.

We remind you once again that you expressly represented and warranted, among other things, that:

- You are "owner, inventor and/or author" of certain assigned intellectual property related to VoiceBite software (namely, a "comprehensive set of components of an AI voice ordering system" (*see* Company Disclosure Schedule, Section 5.9)), and that such intellectual property was not subject to "any dispute, claim, prior license or other agreement, assignment, lien or rights of any third party" or "any claim of any prior employer or third party client" of yours (Arjun Assignment Agreement, Section 3);
- VoiceBite "owns, free and clear of any Encumbrances (other than Permitted Encumbrances), or has a valid and enforceable right to use, all Intellectual Property used or proposed to be used in

---

[1] We understand, based on your communications, that you are currently unrepresented by counsel. Please let us know if your circumstances have changed and if we should direct any further communication to engaged counsel.

K&L GATES LLP
10100 SANTA MONICA BOULEVARD   EIGHTH FLOOR   LOS ANGELES   CA 90067
T +1 310 552 5000  F +1 310 552 5001  klgates.com
508921633.4

69 of 92

- connection with the operation and conduct" of its business (Checkmate/VoiceBite Merger Agreement, Section 5.9(c));
- That neither VoiceBite "nor any of its current or proposed products or services have infringed upon, misappropriated or are currently infringing upon, misappropriating or otherwise violating any Intellectual Property rights of any Person" (*Id*., Section 5.9(f));
- That "no source code for any Company Proprietary Software has been delivered, licensed, or made available" to any person "who is not an employee of the Company" (*Id*., Section 5.9(h));
- That you would "not bring onto [VoiceBite]'s premises" any "property belonging to a former employer or any other person to whom I have an obligation of confidentiality unless that former employer or person has consented in writing" (Vasan Trade Secret Acknowledgement);
- That "[n]either this Agreement nor any agreement, attachment, schedule, exhibit, certificate or other statement delivered pursuant to this Agreement or in connection with the transactions contemplated hereby omits to state a material fact necessary in order to make the statements and information contained herein or therein, not misleading." (Checkmate/VoiceBite Merger Agreement, Section 5.19); and
- VoiceBite "is not aware of any information necessary to enable a prospective purchaser of the Company Shares or the business of the Company and its Subsidiaries to make an informed decision with respect to the purchase of such Company Shares or business that has not been expressly disclosed herein." (*Id*).

Our client's investigation has revealed that this was wrong and that you, personally, made several material misrepresentations contrary to those representations identified above in the Transaction agreements. Rather than constituting original, VoiceBite-owned intellectual property, the evidence strongly suggests that the intellectual property you represented as exclusively owned and authored by VoiceBite involves authorship and/or ownership from an undisclosed third-party individual and entity, constituting a clear breach of the Transaction agreements.

As but one example, you have failed to explain that references within the code point to authorship and ownership claims by an individual named Vasan Varadarajan, as well as another entity, Cyborg, which we know was previously founded and thereafter sold by you, not merely a common term used in the English language, as you now represent. Online resources identify this undisclosed author to be "Founder & President" of CyborgOPS, further confirming evidence of your knowledge of your misrepresentations to Checkmate. There is absolutely no way this is a coincidence, and your failure to disclose your knowledge of this third-party authorship and/or ownership exposes our client to actual and potential claims and constitutes actionable breach and misrepresentation.



Your misguided and inadequate (frankly, non-existent) response to our December 6, 2024, letter identifying your misrepresentations regarding the ownership, authorship, and rights to VoiceBite's intellectual property is further evidence of your bad faith and deliberate intent to mislead Checkmate in the Transaction and underscores the seriousness of your breaches as well as the gravity of your misrepresentations.

You were fully aware during the negotiation of the Transaction that VoiceBite's ownership of the intellectual property was, quite reasonably, critical for Checkmate, and you made the above misrepresentations with the intent of misleading Checkmate in order to cause Checkmate to move forward with the deal and to increase the amount that Checkmate would pay you and the other stockholders in the Transaction. Checkmate relied on your misrepresentations and has been significantly damaged as a result.

==For these and other reasons, in addition to pursuing claims regarding breach of your intellectual property representations and warranties, consider yourself on notice of the reality that our client intends to fully explore and potentially litigate claims of fraud, including both civil and criminal liability, and any other relevant claims arising from your egregious conduct.==

Were you represented by counsel – and we reiterate that you should engage such counsel and have that counsel contact us immediately – you would be advised that your conduct renders you liable for claims that include the following that our client intends to pursue against you: breach of contract (*see Greenstar, LLC v. Heller*, 934 F. Supp. 2d 672, 687-690 (D. Del. 2013) (finding breach of contract where the seller failed to disclose material facts that would have influenced the buyer's decision-making process); breach of the implied covenant of good faith and fair dealing (*see Chamison v. HeathTrust, Inc.*, 735 A.2d 912, 920 (Del. Ch. 1999) (finding that "parties are liable for breaching the covenant when their conduct frustrates the 'overarching purpose' of the contract by taking advantage of their position to control implementation of the agreement's terms"); fraud (*see Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 62 (Del. Ch. 2015) (holding that for a fraud claim "a plaintiff need only point to factual allegations making it reasonably conceivable that the defendants charged with fraud knew the statement was false"); negligent misrepresentation (*see Lincoln Nat. Life Ins. Co. v. Snyder,* 722 F. Supp. 2d 546, 564 (D. Del. 2010*) (quoting Grunstein v. Silva*, Civ. No. 3932–VCN, 2009 WL 4698541, at *14 (Del.Ch.

Dec. 8, 2009) (determining that negligent misrepresentation only requires: "(1) a pecuniary duty to provide accurate information; (2) the supplying of false information; (3) failure to exercise reasonable care in obtaining or communicating the information; and (4) a pecuniary loss caused by justifiable reliance upon the false information") and exposes you to claims of copyright infringement (*see Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc*., 307 F.3d 197, 206 (3d Cir. 2002) (finding copyright infringement of computer software where a plaintiff establishes ownership of a valid copyright and unauthorized copying of original elements of the plaintiff's work); trademark infringement (*see Sanofi-Aventis v. Advancis Pharm. Corp*., 453 F. Supp. 2d 834, 847 (D. Del. 2006) (*citing Checkpoint Sys. v. Check Point Software Tech*., 269 F.3d 270, 279 (3d Cir.2001) ("A plaintiff proves trademark infringement by demonstrating that: "(1) the mark is valid and legally protectable; (2) plaintiff owns the mark; and (3) the defendant's use of its mark to identify goods or services is likely to create confusion concerning the origin of the goods or services."); and trade secret misappropriation (*see Agilent Techs., Inc. v. Kirkland*, No. CIV.A. 3512-VCS, 2010 WL 610725, at *18 (Del. Ch. Feb. 18, 2010) (holding defendant liable for trade secret misappropriation under the Delaware Uniform Trade Secrets Act (DUTSA), where the trade secret "has been disclosed or used without authorization").

We also remind you of the Non-Competition Agreement you executed on April 30, 2024, as part of the Transaction. This Non-Competition Agreement explicitly prohibits you from engaging in any business activities that compete with Checkmate's within the United States, the European Union, and Canada for a restrictive period of two years following the termination of your employment by you or Checkmate.  We also remind you that, as provided in the Merger Agreement and your Confidential Information and Inventions Agreement, you are legally prohibited from using and are obligated to maintain the strictest confidentiality regarding all information related to VoiceBite or the Transaction[2] or that you learned or developed while at Checkmate. These obligations remain in full force and effect even after the termination of your employment. We also note that any Inventions developed by you while at Checkmate, including any software code, belong to Checkmate and are protected by trade secret, copyright, and other laws.  Any unauthorized use or disclosure of Checkmate's confidential or proprietary information by you will result in immediate legal action to protect our client's interests.  Because of your previous attempts to engage in activities that directly compete with our client, and your blatant effort to use and sell intellectual property that did not belong to you, we emphasize that our client is fully committed to enforcing the terms of these agreements, including through injunctive relief, and will not tolerate any attempts by you or anybody working in conjunction with you to violate its terms.

---

[2] Confidential Information under the Merger Agreement includes "any data or information concerning [VoiceBite] (including trade secrets), without regard to form, regarding (for example and including) (a) business process models, (b) proprietary software, (c) research, development, products, services, marketing, selling, business plans, budgets, unpublished financial statements, licenses, prices, costs, Contracts, suppliers, customers, and customer lists, (d) the identity, skills and compensation of employees, contractors, and consultants, (e) specialized training or (f) discoveries, developments, trade secrets, processes, formulas, data, lists, and all other works of authorship, mask works, ideas, concepts, know-how, designs, and techniques, whether or not any of the foregoing is or are patentable, copyrightable, or registrable under any intellectual property Laws or industrial property Laws in the United States or elsewhere."

Absent any reasonable explanation, let alone mitigation, for your conduct, we thus reiterate our client's position that it make no further payments to you at this time. ³ Moreover, in light of your unwillingness to submit to an interview, we demand a detailed and accurate written response addressing the aforementioned allegations, supported by evidence, **by no later than February 5, 2025**. Our client is open to resolution of this matter; however, failure to provide an adequate response within this time frame will leave Checkmate no choice but to pursue legal action against you to protect its rights and interests in the appropriate forum.

Nothing herein is intended to be, nor should it be construed as, a waiver or limitation of any of Checkmate's or VoiceBite's rights, claims or defenses in this matter, all of which are and will remain expressly reserved.

Very truly yours,

Ryan Q. Keech

---

³ Among the blunderbuss claims in your various missives, you claim that Checkmate has not made a valid claim for indemnification and that Checkmate is not entitled to withhold any amounts beyond those identified in the Bonus Agreement for potential claims. We disagree: putting aside that Checkmate's claims against you are not limited to those for contractual indemnification, Checkmate is pursuing all appropriate claims for contractual indemnification against you. Checkmate reserves the right to withhold Final Payment Amounts that exceed those initial limits in accordance with the terms outlined in the Merger Agreement in the event of claims for fraud, which you are on notice has been and will be pursued against you. *See* Checkmate/VoiceBite Merger Agreement, Section 8.5(a) ("No Indemnifying Pre-Closing Holder shall be liable pursuant to Section 8.1(a) for amounts in excess of the Merger Consideration received by such Indemnifying Pre-Closing Holder (based on the Purchaser Share Value) plus the Final Payment Amounts under such Indemnifying Pre-Closing Holder's Bonus Agreement except in the event of Fraud by the Company or such Indemnifying Pre-Closing Holder").