# EXHIBIT F

CCs Allegations to Sources Mapping

**Exhibit F – Allegation – Source Map**

| CCs ¶ | | Source | |
|---|---|---|---|
| 4, 6, 35 | 4. [AV] debated with his co-founders whether to disclose his concealment in fear he would be discovered and exposed by Checkmate…<br><br>6. [AV] has recently admitted that he intentionally concealed his misrepresentations concerning VoiceBite's technology to Checkmate in part because he allegedly feared an adverse response from Checkmate …<br><br>35. Then again in February 2025, Plaintiff brazenly made the excuse that he actually discussed with his co-founders the possibility of disclosing to Checkmate the fraudulent representations … | Cmpl. ¶ 16; (misrepresents source text) | 16. … Defendant utilized the one-sided exclusivity to pressure them to accept terms that undermined their interests (¶ 112):<br>• April 2, 2024: The founders agree on a plan to disclose personal legacy code —some of it co-authored by Plaintiff's father ("VV"), who had given his full consent to its use for VoiceBite. …<br>• April 3, 2024: During a meeting …<br>- Post-meeting, the founders debate disclosing the legacy code, citing Bell's hostility to changes and Agarwal's reassurances ….<br>….. (See Dkt. 10 at ¶ 16 for full context) |
| 30, 31 | 30. Checkmate confronted Plaintiff with its findings. On December 6, 2024, Checkmate, through counsel, sent a letter to Plaintiff's legal counsel, detailing…<br>31. Plaintiff's excuses became increasingly bizarre and implausible. He falsely characterized the numerous "Cyborg" references embedded in the VoiceBite application code. | Dec 6 "notice of claim" and AV's response Exhibit D-1, 2; (inadmissible under FRE 408/coerced) | The first notice lists the same reps/warranties as in CCs ¶¶ 59, 65; alleges "serious civil or even criminal misconduct"; claims to "disentitle" AV from the compensation he "claims to be owed"; demands AV immediately pay for its out of pocket merger costs; rejects AV's settlement outreach; misstates the IPAL (replacing "Checkmate" with "VoiceBite"), while refusing to provide the document for AV to review. |
| 1, 5, 32 60 | 1. "No matter what." These three words, written by Plaintiff …") in January 2025 …<br>5. …Plaintiff's "no matter what" expectations …<br>32. In January 2025, …. sought to negotiate payment … to himself "no matter what" while all the while hiding the true state … | Jan 22 "notice of claim"; AV's responses; Exhibit D-4; (inadmissible under FRE 408/coerced) | The second notice repeats the list of reps; threatens to "litigate" "both civil and criminal liability"; claims Checkmate will seek injunctive relief to enforce the non-compete; demands submission to an interview or detailed written response, "supported by evidence"; client will not make payments—but is open to resolving the matter. |

**Exhibit F – Allegation – Source Map**

| | | | |
|---|---|---|---|
| | 60. … Plaintiff, who ==admits in writing that he intended at the time that he would be paid "no matter what,"== knew of their falsity … | | (See Ex. E (Nessler Declaration ¶ 2-3)) re "No Matter What" phrase—used by all founders to refer to retention bonuses being negotiated) |
| 28, 29 | 28. … ==on or around January 23, 2025==, Plaintiff admitted in writing that Varadarajan …– had developed the property …<br>29. The truth was thus becoming clear: ==Arjun Vasan did not have the rights he claimed to have==. … VoiceBite … could not assign: … | *Id.* (inadmissible under FRE 408/coerced) | |
| 59, 65; Bullet 1 | Plaintiff was "owner, inventor and/or author" of certain assigned intellectual property related to VoiceBite software (namely, a "comprehensive set of components of an AI voice ordering system") and that such intellectual property was not subject to "any dispute, claim, prior license or other agreement, assignment, lien or rights of any third party" or "any claim of any prior employer or third party client" of Plaintiff; | IPAA § 3 | 3. Assignor Representations and Warranties. The Assignor represents and warrants to the Company that, to the best of Assignor's knowledge, (a) the Assignor is the owner, inventor and/or author of, and can grant exclusive right, title and interest in and to, each of the Assigned Assets transferred by the Assignor hereunder; (b) none of the Assigned Assets are subject to any dispute, claim, prior license or other agreement, assignment, lien or rights of any third party, or any other rights that might interfere with the Company's use, or exercise of ownership of, any of the Assigned Assets; (c) the Assigned Assets are free of any claim of any prior employer or third party client of the Assignor or any school, university or other institution the Assignor attended; and (d) the Assignor is not aware of any claims by any third party to any rights of any kind in or to any of the Assigned Assets. The Assignor agrees to immediately notify the Company upon becoming aware of any such claims. |

**Exhibit F – Allegation – Source Map**

|  |  |  | *Note – "comprehensive set of components of an AI voice ordering system" is not defined here, but in Exhibit D-2,4, (notices of claim), it is asserted this comes from the Company Disclosure Schedule – which remains undisclosed and was not attached. Nowhere is the comprehensive set detailed. |
|---|---|---|---|
| Id. Bullet 2 | Plaintiff had provided to VoiceBite "all worldwide patents, patent applications, patent rights, copyrights, copyright registrations, moral rights, trade names, trademarks, service marks, domain names and registrations and/or applications for all of the foregoing, trade secrets, know-how, mask work rights, rights in trade dress and packaging, goodwill and all other intellectual property rights and proprietary rights relating in any way to the Technology, any Derivative or any Embodiment, whether arising under the laws of the United States of America or the laws of any other state, country or jurisdiction" related to VoiceBite's technology; | IPAA § 1(e) | (e) "Intellectual Property Rights" means, collectively, all worldwide patents, patent applications, patent rights, copyrights, copyright registrations, moral rights, trade names, trademarks, service marks, domain names and registrations and/or applications for all of the foregoing, trade secrets, know-how, mask work rights, rights in trade dress and packaging, goodwill and all other intellectual property rights and proprietary rights relating in any way to the Technology, any Derivative or any Embodiment, whether arising under the laws of the United States of America or the laws of any other state, country or jurisdiction. |
| Id. Bullet 3 | That VoiceBite owned or had valid and enforceable right to use, all intellectual property used or proposed to be used in connection with its business; | MA § 5.9(c) | Qualified by Company Disclosure Schedule |
| Id. Bullet 4 | That neither VoiceBite "nor any of its current or proposed products or services have infringed upon, misappropriated or are currently infringing upon, misappropriating or otherwise violating any Intellectual Property rights of any Person;" | MA § 5.9(f) | Qualified by Company Disclosure Schedule |

**Exhibit F – Allegation – Source Map**

| | | | |
|---|---|---|---|
| Id. Bullet 5 | That "no source code for any VoiceBite Proprietary Software has been delivered, licensed, or made available" to any person "who is not an employee" of VoiceBite; | MA § 5.9(h) | Qualified by Company Disclosure Schedule |
| Id. Bullet 6 | That Plaintiff had not "omitted to state a material fact necessary in order to make the statements and information contained herein or therein, not misleading;" and | MA § 5.19 | Neither this Agreement nor any agreement, attachment, schedule, exhibit, certificate or other statement delivered pursuant to this Agreement or in connection with the transactions contemplated hereby omits to state a material fact necessary in order to make the statements and information contained herein or therein, not misleading |
| Id. Bullet 7 | That Plaintiff "is not aware of any information necessary to enable a prospective purchaser of VoiceBite" to "make an informed decision with respect to the purchase of such Company Shares or business that has not been expressly disclosed herein." | Id. | The Company is not aware of any information necessary to enable a prospective purchaser of the Company Shares or the business of the Company and its Subsidiaries to make an informed decision with respect to the purchase of such Company Shares or business that has not been expressly disclosed herein. |