Ryan Q. Keech (SBN 280306)
Ryan.Keech@klgates.com
Stacey Chiu (SBN 321345)
Stacey.Chiu@klgates.com
Rebecca Makitalo (SBN 330258)
Rebecca.Makitalo@klgates.com
Jacob R. Winningham (SBN 357987)
Jacob.Winningham@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Defendant and Counter-Claimant*
*CHECKMATE.COM INC.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>    Plaintiff,<br><br>  v.<br><br>CHECKMATE.COM, INC.,<br><br>    Defendant.<br><br>CHECKMATE.COM, INC.,<br><br>    Counterclaim-Plaintiff,<br><br>  v.<br><br>ARJUN VASAN,<br><br>    Counterclaim-Defendant. | Case No. 2:25-CV-00765-MEMF-JPR<br><br>Hon. Jean P. Rosenbluth<br><br>DISCOVERY MATTER<br><br>**CHECKMATE.COM INC.'S MOTION TO ENFORCE AND COMPEL COMPLIANCE WITH SUBPOENA TO VASAN VARADARAJAN AND FOR CONTEMPT**<br><br>*[Filed concurrently herewith Declaration of Rebecca I. Makitalo and [Proposed] Order]*<br><br>Hearing Date: November 13, 2025<br>Time: 10 a.m.<br>Courtroom: 880<br><br>Complaint Filed: January 28, 2025<br>Amended Complaint Filed: February 21, 2025 |

1603059467.8

1  **TO THE COURT, ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS**
2  **OF RECORD:**

3      **PLEASE TAKE NOTICE** that on November 13, 2025 at 10 a.m. or as soon
4  thereafter as counsel may be heard by the Honorable Jean P. Rosenbluth in
5  Courtroom 880, on the 8th Floor of the Edward R. Roybal Federal Building and
6  United States Courthouse, 255 E. Temple Street, Los Angeles, CA 90012, the
7  Honorable Jean P. Rosenbluth presiding, Defendant Checkmate.com Inc.
8  ("Checkmate" or "Defendant") will, and hereby does, move this Court for an order
9  enforcing the August 14, 2025 subpoena issued to Vasan Varadarajan by Checkmate
10 commanding him to produce documents and appear for deposition on September 22,
11 2025 at the offices of K&L Gates LLP pursuant to Federal Rule of Civil Procedure
12 45. Checkmate further requests that the Court find Mr. Varadarajan in contempt
13 pending his compliance with Checkmate's Subpoena and order Mr. Varadarajan to
14 pay sanctions, pursuant to Federal Rule of Civil Procedure 45(g). This Motion has
15 been necessitated because Mr. Varadarajan is an indisputably relevant witness who
16 has supplied sworn declaration testimony in support of Plaintiff Arjun Vasan
17 ("Plaintiff" or "Vasan") – testimony which Plaintiff repeatedly relies upon in his
18 support of his Second Motion to Dismiss. (Dkt. 81).  Mr. Varadarajan was served
19 with a valid Subpoena commanding him to appear for deposition to explore the
20 veracity of his sworn statements and to provide documents relevant to the same.
21 Despite Checkmate's repeated efforts to secure his voluntary compliance, Mr.
22 Varadarajan has not done so and has only furnished unreasonable demands in an
23 effort, surely coordinated with Plaintiff himself, to thwart Checkmate's right to
24 obtain relevant discovery.

25      This Motion is based upon this Notice of Motion and Motion, the
26 Memorandum of Points and Authorities in support, the Declaration of Rebecca I.

1 | Makitalo and exhibits thereto filed concurrently herewith the [Proposed] Order and
2 | such argument as properly may be presented at the hearing.

3

4 | Date: October 14, 2025                    Respectfully Submitted,

5 | K&L GATES LLP

6 |

7 | _____

8

9 | Ryan Q. Keech (SBN 280306)
   | Stacey Chiu (SBN 321345)
10 | Rebecca I. Makitalo (SBN 330258)
   | Jacob R. Winningham (SBN 357987)
11 | 10100 Santa Monica Boulevard, 8th Floor
   | Los Angeles, California 90067
12 | Telephone: 310.552.5000
   | Facsimile: 310.552.5001
13

14

15 | *Attorneys for Defendant and Counter-
    | Claimant CHECKMATE.COM INC*

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.    **INTRODUCTION** ............................................................................... 1

II.   **STATEMENT OF FACTS** ................................................................ 2

    A.    **Mr. Varadarajan Possesses Information Directly Relevant To Both Plaintiff And Checkmate's Claims And Defenses** ........... 2

    B.    **Checkmate Serves Mr. Varadarajan With A Subpoena** ................. 6

    C.    **Plaintiff Attempts To Interfere With Checkmate's Right To Relevant Discovery From Mr. Varadarajan, Including Filing An *Ex Parte* Application Denied By This Court** ............................. 6

    D.    **Plaintiff Asserts No Valid Privilege; Checkmate Makes Significant Good Faith Efforts To Secure Mr. Varadarajan's Compliance With The Subpoena** ................................................... 7

III.  **ARGUMENT** ..................................................................................... 10

    A.    **The Court Should Enforce The Subpoena** .................................... 10

    C.    **The Court Should Hold Mr. Varadarajan In Contempt Pending Compliance** ............................................................... 14

    D.    **The Court Should Issue Sanctions For Mr. Varadarajan's Failure To Comply With The Subpoena** .................................... 17

IV.  **CONCLUSION** ................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bademyan v. Receivable Mgmt. Servs. Corp.*,
  No. CV 08-00519 MMM, 2009 WL 605789 (C.D. Cal. Mar. 9, 2009) ...........................................................................14, 16, 18, 19

*In re Crystal Palace Gambling Hall, Inc.*,
  817 F.2d 1361 (9th Cir. 1987) ...........................................................19

*Cunningham v. Connecticut Mut. Life Ins.*,
  845 F. Supp. 1403 (S.D. Cal. 1994) ...................................................14

*In re Dyer*,
  322 F.3d 1178 (9th Cir. 2003) ...........................................................16

*HI.Q, Inc. v. ZeetoGroup, LLC*,
  Misc. Action No.: 22cv1440-LL-MDD, 2022 WL 17345784, at *5 (S.D. Cal. Nov. 29, 2022) ...................................................................15

*McKeon v. Cent. Valley Cmty. Sports Found.*,
  No. 1:18-CV-00358-BAM, 2019 WL 1208986 (E.D. Cal. Mar. 14, 2019)...................................................................................................14

*Oppenheimer Fund, Inc. v. Sanders*,
  437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) .....................11

*Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*,
  No. 2:19-mc-00049-PSG(KSx), 2019 WL 4267764 (C.D. Cal. July 31, 2019)..........................................................................................15, 18

*Surfvivor Media, Inc. v. Survivor Prods.*,
  406 F.3d 625 (9th Cir. 2005) .............................................................11

*Tee Turtle, LLC v. Abmask*,
  Case No. 2:21-CV-03572-CMB-E(x), 2021 WL 4812947 (C.D. Cal. July 8, 2021)................................................................................18

*Thoma v. VXN Grp., LLC.*,
  No. CV-23-04901-WLH, 2024 WL 4406947 (C.D. Cal. July 9, 2024)...................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 26(b)(1) .......................................................................................... 11

Fed. R. Civ. P. 30(a), 45(a) ..................................................................................... 11

Fed. R. Civ. P. 45(a)(1)(A)(iii), (c)(1)(A), (c)(2)(A) ............................................. 14

Fed. R. Civ. P. 45(a)(3)............................................................................................ 14

Fed. R. Civ. P. 45(d)(2)(B)(i) .................................................................................. 11

Federal Rule of Civil Procedure 45(c)(3)(A) .......................................................... 15

Federal Rule of Civil Procedure 45(g) .............................................................. 16, 18

Rule 26(c) ................................................................................................................. 15

Rule 30(b)(4)........................................................................................................ 8, 16

Rule 34 ...................................................................................................................... 11

Rule 45 .................................................................................................. 2, 11, 14, 15

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

By his own admission, Vasan Varadarajan undeniably possesses information relevant to this case, which he conveniently acknowledges only when it benefits Plaintiff Arjun Vasan ("Plaintiff" or "Vasan"). Sworn declaration testimony from Mr. Varadarajan, submitted and repeatedly relied on by Plaintiff in this action, confirms that he is the core of Plaintiff's defenses to Checkmate's claims and a relevant witness to Plaintiff's claims: he not only claims to be a percipient witness with respect to the negotiation of Plaintiff's relationship with Checkmate, but holds himself out as the co-author of VoiceBite Corporation ("VoiceBite")'s so-called "proprietary" code, which Plaintiff falsely claimed as exclusively owned and authored by him and sold to Checkmate.

Mr. Varadarajan is thus an unquestionably core witness who has already voluntarily inserted himself into this case. A subpoena was personally served on him on September 14, 2025, commanding his appearance for an in-person deposition at the offices of K&L Gates LLP and to produce documents on September 22, 2025, directly pertinent to **his own testimony** and Plaintiff's claims of wrongful treatment at the hands of Checkmate and Checkmate's defenses and counterclaims. Declaration of Rebecca I. Makitalo ("Makitalo Decl.") ¶¶ 2-3, Ex. A.

But though Mr. Varadarajan once seemed eager to insert himself in this case, he – and Plaintiff, who claims that a declaration is all that Checkmate is entitled to – now have attempted to backtrack and refuse to comply with relevant discovery. Despite Checkmate's persistent good faith attempts to coordinate with Mr. Varadarajan to secure his voluntary compliance with the validly served subpoena to him on September 14, 2025, accommodate his legitimate scheduling issues, and discuss the scope of his production to reduce any undue burden, Mr. Varadarajan has explicitly said that he will not comply with his obligations absent the issuance of an *additional* order over and above the subpoena. The law does not permit Mr.

Varadarajan to simultaneously position himself as a witness for Plaintiff to rely upon, while refusing to comply with the strictures of Rule 45. This Court should issue an order compelling compliance with the subpoena, holding Mr. Varadarajan in contempt pending his compliance and ordering other sanctions.

## II.    STATEMENT OF FACTS

### A. Mr. Varadarajan Possesses Information Directly Relevant To Both Plaintiff And Checkmate's Claims And Defenses

Plaintiff's *entire case* – both affirmative and defensive – thus far turns in large part on the testimony of Mr. Varadarajan, a former Founder and President of Plaintiff's prior company, CyborgOPS – who evidence submitted by Plaintiff shows was (or may have been) the actual author, developer and owner of the code falsely misrepresented by Plaintiff and sold to Checkmate. In sworn testimony submitted and repeatedly relied on by Plaintiff in this action,[1] Mr. Varadarajan claims that he is the "longtime technical advisor and collaborator of [Plaintiff] Arjun Vasan." *Checkmate.com, Inc. v. Vasan*, Dkt. 36 ¶ 4, Case No. 1:25-CV-03181(JMF) (S.D.N.Y. Apr. 12, 2025). He further declared to "have worked professionally with every member of the VoiceBite founding team at past companies, including CyborgOps and Presto" and that as the "VoiceBite team w[as] finalizing the merger with Checkmate" he observed the co-founders while "negotiat[ing] and discuss[ing] every issue thorough and transparently." *Id*. ¶¶ 5, 9-10. He also readily admitted that he is the "co-author, with Arjun, of the functional code at question" (*Id*. ¶ 6), the very code that is the subject of Checkmate's Counterclaims and referenced in Plaintiff's claims as alleged in his Amended Complaint. (Dkt. 10). Mr. Varadarajan further

---

[1] Plaintiff makes numerous references to Mr. Varadarajan's Declaration throughout his Second Motion to Dismiss. *See* Dkt. 81 at 19 ("Mr. Varadarajan's Declaration, also judicially noticed successfully by Checkmate, expressly refutes the CCs ¶ 28 allegation that he was "another 3rd party with claims to the code".); *Id*. at 20 n.54 ("*See* (SDNY) Vasan Decl. ¶ 4-5; Varadarajan Decl. ¶ 3."); *Id*. at 24 ("Mr. Varadarajan—one of two "third parties" named in Checkmate's complaint—has expressly refuted any claims to VoiceBite's IP or any liability to Checkmate.); *Id*. at 25 n.71 ("*See* Varadarajan Decl. from AV's SDNY Motion to Dismiss, judicially noticed at Checkmate's unopposed request."); *Id*., Ex. C at 3.

1603059467.2

makes claims with regard to his allegedly-granted permission to Plaintiff to use any code he had authored for VoiceBite and describes the alleged nature of the code he authored:

> 11. Arjun had my full and complete support and authorization to use any personal code I had co-authored with him over the years, for VoiceBite or any other venture.
>
> 12. This code was functional and unrelated to the Large Language Model AI that Arjun and team were rapidly developing and offering to Checkmate.
>
> 13. None of this code was subject to any encumbrances from any other entity. It evolved from our shared personal interest in Voice AI starting in 2018.

The entirety of these statements in support of Plaintiff were made under penalty of perjury by Mr. Varadarajan.

> *I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*
>
> **Executed on**: Monday, June 2, 2025,
>
> In Cerritos, CA
>
> By: 
>
> **Vasan Varadarajan**

*Id*. at 2-3, ¶¶ 11-13.

Plaintiff has made Mr. Varadarajan's knowledge a core issue in this case. He asserts in his Amended Complaint that Checkmate served a "Notice of Claim" which "den[ied] him $122,000 in severance" and "allege[d] Fraud and IP Misue to justify withholding other owed payments, including $450,000 in earned bonuses, without specifying actual damages." (Dkt. 10 ("Amended Complaint") ¶ 50). Plaintiff also repeatedly references the "IP" and "technology" VoiceBite sold to Checkmate, which includes the VoiceBite code authored and owned by Mr. Varadarajan, in his claims, including for Unjust Enrichment (*See id*. ¶ 99 ("Defendant received substantial benefits from Plaintiff's efforts, and those of the team he had assembled, including

CHECKMATE.COM INC.'S MOTION TO ENFORCE AND COMPEL COMPLIANCE WITH SUBPOENA TO VASAN VARADARAJAN AND FOR CONTEMPT

1603059467.2

but not limited to: . . . Proprietary technology developed by Plaintiff and team, which accelerated time to market for the Voice AI product."); *Id*. ¶ 102 ("Regardless of contract enforceability, it is unjust for Defendant to benefit from Plaintiff's labor, IP, and relationships without fair compensation.")) and Civil Conspiracy: Fraudulent Inducement, Concealment and Extortion (*Id*. ¶ 113 ("Plaintiff and his team performing substantial integration work and building IP that would accrue exclusively to Defendant upon merger close."); *Id*. ¶ 124 ("[T]he entire merger was fraudulent—engineered to extract the founders' technology, goodwill, and expertise without delivering the agreed compensation.")).

Plaintiff also makes numerous representations throughout his Amended Complaint characterizing VoiceBite's negotiations with Checkmate prior to entering into the Merger Agreement and related documents. These references include accusations to support his claims for Promissory Fraud and Estoppel (*Id*. ¶ 108 ("The founders went into merger negotiations with greatly reduced leverage.") and Civil Conspiracy: Fraudulent Inducement, Concealment and Extortion (*Id*. ¶ 112 ("[T]the founders found themselves having to repeatedly renegotiate agreed terms (both explicit and promised), reducing their leverage and placing them under significant duress while finalizing the merger"); *Id*. ¶ 113 ("During the four months of pre-merger negotiations, Defendant pressured the founders by refusing their request for a consulting agreement.")), among others.

Checkmate, for its part, alleges in its counterclaims (Dkt. 71) that it was fraudulently deceived by Plaintiff into paying significant amounts of money to acquire VoiceBite for its "proprietary" code. Plaintiff falsely represented and warranted exclusive ownership and authorship of what was claimed to be VoiceBite's world-class voice ordering AI technology. The truth was far different. Checkmate discovered that Plaintiff made numerous false representations about VoiceBite's intellectual property, including the code for VoiceBite's voice ordering AI application, knowing that VoiceBite's ownership of its intellectual property was

critical to Checkmate's interest in acquiring VoiceBite for the purpose of expanding its technology and supplementing its presence in the voice ordering space within the restaurant industry. Upon further investigation into Plaintiff's misrepresentations, in late 2024, Checkmate's review of the code revealed that the copyright in the VoiceBite code dated back to as early as 2018, well before Plaintiff's co-founding of VoiceBite, which was not formed until on or around August 4, 2023. Further investigation established that the code in the VoiceBite application also contained numerous references to "Cyborg," referring to Plaintiff's previous company, CyborgOps, and a third party "author," Vasan Varadarajan, the former "Founder & President" of CyborgOPS, as confirmed by Mr. Varadarajan's LinkedIn.





Mr. Varadarajan's alleged role in the creation or authorship of the "proprietary" code sold to Checkmate was neither disclosed by Plaintiff in the Merger Agreement or related documents, nor was his authorship or any claim of ownership to the VoiceBite code acknowledged in the representations and warranties made by Plaintiff.

## B. Checkmate Serves Mr. Varadarajan With A Subpoena

Seeking to examine the veracity of this testimony, Checkmate has diligently pursued Mr. Varadarajan's documents and deposition.  As detailed below, Plaintiff has resisted.  On August 14, 2025, Mr. Varadarajan was personally served with a subpoena to testify at a deposition and produce documents, signed by Checkmate's counsel (the "Subpoena"). *See* Makitalo Decl. ¶¶ 2-3, Ex. A. Mr. Varadarajan was served with the Subpoena at his home residence in Cerritos, California, commanding him to produce documents and appear for deposition at the offices of K&L Gates LLP, located in Los Angeles, California, within 100 miles of his residence. *Id.*  The Subpoena clearly provided for Mr. Varadarajan's expected compliance on September 22, 2025.  *Id.*

The documents and communications sought in the Subpoena were narrowly tailored and included, among other things, documents directly related to the VoiceBite Transaction, authorship and ownership of the VoiceBite code, Mr. Varadarajan's professional relationship with Plaintiff, including his role at Plaintiff's prior companies, as well as documents and communications relating to the above-captioned action and the parties thereto. *Id.* ¶ 3, Ex. A.

## C. Plaintiff Attempts To Interfere With Checkmate's Right To Relevant Discovery From Mr. Varadarajan, Including Filing An *Ex Parte* Application Denied By This Court

On August 15, 2025, Plaintiff was provided with notice of the Subpoena. *Id.* ¶¶ 6-7, Ex. C (the "Notice"). Immediately – apparently concerned about this discovery – Plaintiff fired off several angry emails to Checkmate's counsel, asserting that Mr. Varadarajan "***has already submitted a declaration; a broad deposition now is cumulative and harassing***" and otherwise attempting to interfere with Checkmate's entitlement to obtain discovery from Mr. Varadarajan in this action. *Id.* ¶¶ 4-5, Ex. B. He further demanded Checkmate "[w]ithdraw or hold in abeyance the subpoena to Vasan Varadarajan" (*id.*) until the Court sets phasing of discovery as

1  requested by Plaintiff in the Joint Report (Dkt. 78 at 11), a request which Honorable
2  Frimpong denied. (Dkt. 88).

3      In a further attempt to circumvent the discovery process and obstruct
4  Checkmate's right to gather relevant evidence to support its claims and defenses,
5  Plaintiff – clearly lacking standing and a basis to seek emergency relief – brought an
6  *Ex Parte* Application for a Temporary Protective Order to (1) Stay Nonparty
7  Subpoenas and (2) Quash Non-Compliant Subpoenas to Robert Nessler and Vasan
8  Varadarajan ("*Ex Parte* Motion") before this Court. (Dkt 80).    Recognizing
9  Plaintiff's failure to demonstrate standing to challenge Mr. Varadarajan's subpoena
10  or present actual evidence that the documents sought in the Subpoena implicated
11  Plaintiff's privilege, this Court denied Plaintiff's *Ex Parte* Motion. (Dkt. 85).

12      **D. Plaintiff Asserts No Valid Privilege; Checkmate Makes**
13          **Significant Good Faith Efforts To Secure Mr. Varadarajan's**
14          **Compliance With The Subpoena**

15      On August 28, 2025, Mr. Varadarajan served objections to the Subpoena.
16  Makitalo Decl. ¶¶ 8-9, Ex. D (the "Objections"). Among Mr. Varadarajan's
17  Objections, included demands that his deposition "proceed remotely," "be limited to
18  no more than 90-120 minutes on the record," and "be rescheduled to a mutually
19  agreeable date" and further indicated he "would not appear for any deposition absent
20  a court order." *Id*. Mr. Varadarajan also provided written objections to Checkmate's
21  document requests and claimed his "[w]ritten objections suspend any duty to produce
22  unless and until the Court orders otherwise." *Id*.

23      Upon receipt of his Objections, Checkmate's counsel emailed Mr. Varadarajan
24  requesting his availability to meet and confer regarding his Objections to the
25  Subpoena on multiple occasions. *Id*.  ¶¶ 10-15, Exs. E-G. Following Checkmate's
26  third request for availability, on September 13, 2025, Mr. Varadarajan finally
27  responded, contradicting his own declaration and ***now*** claiming he "***ha[s] no relevant***
28  ***relationship to Voicebite or checkmate. I had retired much before that and was***

*only peripherally aware of Voicebite formation, and its transactions with Checkmate*." *Id*. ¶¶ 16-17, Ex. H. He further indicated that he is "occupied in [his] personal matters" and "would have difficulty traveling for an in person deposition due to health reasons," which he did not specify, and maintained his position that "*no production will occur absent court order*." *Id*. He also requested that his deposition "*be continued to (at minimum) 21 days after the Court rules on Plaintiff's Motion to Dismiss Counterclaims and that any deposition proceed remotely under Rule 30(b)(4) from my city*." *Id*. On September 17, 2025, Checkmate's counsel communicated to Mr. Varadarajan a willingness to accommodate legitimate scheduling conflicts and discuss the scope of the requests for production of documents in the Subpoena and that Checkmate's counsel would reach out to confirm scheduling for his deposition and document production. *Id*. ¶¶ 18-19, Ex. I.

On September 19, 2025, counsel for Checkmate called Mr. Varadarajan to discuss his availability to comply with Checkmate's Subpoena. *Id*. ¶ 20. Mr. Varadarajan answered: once Checkmate's counsel identified herself, he hung up. *Id*. Checkmate's counsel again attempted to call Mr. Varadarajan and was immediately sent to voicemail, where she left a message stating that she was calling to confirm his appearance for deposition and document production scheduled for September 22, 2025 at K&L Gates LLP's Los Angeles office. *Id*. Checkmate's counsel followed up in writing to Mr. Varadarajan summarizing her attempt to contact him, confirm his appearance at his scheduled deposition, as well as indicated Checkmate's "willing[ness] to accommodate scheduling changes and provide for different scopes of production in order to alleviate any undue burden." *Id*. ¶¶ 20-21, Ex. J. Later that day, on September 19, 2025, Mr. Varadarajan only then indicated that he "ha[s] family obligations and health constraints, and will be available only after Mid November" for deposition, which he again demanded be "remote and time limited and pertaining only in reference to the business transaction as outlined in the case." *Id*. ¶¶ 22-23, Ex. K.

1603059467.2

Thereafter, Checkmate's counsel continued their efforts to meet and confer with Mr. Varadarajan indicating that his "attempt to put off any obligation to respond until an undefined time 'after Mid November' is not acceptable" and requested that Mr. Varadarajan provide an explanation for his condition preventing him from attending a deposition in person but participating in other activities outside his home and city. *Id*. ¶¶ 24-25, Ex. L. Checkmate's counsel further stated its willingness to accommodate any medical condition he may have, including, among other things, frequent breaks during the deposition. *Id*. Checkmate also indicated Checkmate's willingness to work with Mr. Varadarajan to minimize any burden with respect to the document requests in the Subpoena. *Id*.

Appearing to again echo Plaintiff, Mr. Varadarajan provided no explanation for any medical condition limiting his ability to leave his home or to postpone his appearance for deposition until after mid-November, despite Checkmate's repeated requests. *Id*. ¶¶ 26-27, Ex. M. Moreover, Mr. Varadarajan further attempted to limit the scope of his deposition and document production, indicating "any deposition must only be remote with topics limited to 2024 onwards (before which Voicebite and Checkmate had no relationship) and to 5 keyword search terms with 1 month windows," in addition to other demands, including that "any attorney's fees required to respond to Checkmate's subpoena must be advanced prior to deposition." *Id*.

On September 22, 2025, Mr. Varadarajan failed to appear for his deposition scheduled for at 11 a.m. at K&L Gates LLP's office in Los Angeles and produce the documents requested in the Subpoena. *Id*. ¶ 28. Providing no explanation for his non-appearance or failure to produce the documents in the Subpoena, on September 23, 2025, Checkmate's counsel provided notice to Mr. Varadarajan of his failure to produce any documents or appear for his scheduled deposition on September 22, 2025, reminding him of the obligations imposed by Checkmate's Subpoena. *Id*. ¶¶ 29-30, Ex. N. Nonetheless, in further attempt to secure Mr. Vasan's compliance, Checkmate agreed to "postpone [Mr. Varadarajan's] deposition until November 14,

2025," at the offices of K&L Gates LLP in Los Angeles, and further indicated its agreement to provide necessary accommodations and frequent breaks upon Mr. Varadarajan's provision of information regarding his health condition. *Id*. Checkmate also agreed to continue Mr. Varadarajan's deadline to produce documents to November 10, 2025 and provided a deadline of November 11, 2025 for Mr. Varadarajan to provide a privilege log, while maintaining its willingness to meet and confer to address the scope of the requests to minimize burden. *Id*.

Despite Checkmate's good faith efforts to excuse Mr. Varadarajan's non-compliance with the Subpoena and provide alternative dates for compliance, on September 28, 2025, Mr. Varadarajan reiterated his previous insistence that he would not appear for deposition unless the deposition proceeded remotely and that "the remote session must be time limited to 2 hours maximum excluding any breaks which shall in total not exceed 15 minutes," despite Checkmate's previous offer to accommodate Mr. Varadarajan's alleged health condition by offering frequent breaks. *Id*. ¶¶ 31-33, Ex. O. He again asserted that he would not produce any documents other than those from "2024 onwards (before which voicebite and checkmate had no relationship) and limited to 5 keyword search terms with 1 month windows," among other additional demands. *Id*.

Recognizing that it had reached an impasse with Mr. Varadarajan and could no longer excuse his non-compliance with the Subpoena, Checkmate indicated to Mr. Varadarajan its intention to seek the Court's intervention and file the present motion. *Id*. ¶¶ 33-34, Ex. P. As of the date of the filing of this Motion, Mr. Varadarajan has made no further efforts to contact Checkmate's counsel. *Id*. ¶ 35.

## III.    ARGUMENT

### A. The Court Should Enforce The Subpoena

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (citation

1603059467.2

omitted) (The relevance standard is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."). Further, a party may depose "any person" by oral questions by serving a subpoena on the nonparty, commanding a nonparty "to attend and testify." Fed. R. Civ. P. 30(a), 45(a). "The scope of discovery of third parties under Rule 45 is the same as that applicable to Rule 34 and the other discovery rules." *Thoma v. VXN Grp., LLC*., No. CV-23-04901-WLH (AGRX), 2024 WL 4406947, at *1 (C.D. Cal. July 9, 2024) (citation omitted). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 635 (9th Cir. 2005). If a nonparty serves timely objections to a subpoena duces tecum, "the serving party may move the court for the district where compliance is required for an order compelling production." Fed. R. Civ. P. 45(d)(2)(B)(i).

The Subpoena served on Mr. Varadarajan is undeniably relevant to the core issues of this action. Makitalo Decl. ¶¶ 2-3, Ex. A. As previously detailed, Checkmate uncovered that Mr. Varadarajan possesses claims of authorship and ownership over the "proprietary" code that VoiceBite sold to Checkmate. Checkmate's discovery of Plaintiff's false representations, as it relates to the VoiceBite code, is corroborated by Mr. Varadarajan's sworn declaration filed in the Southern District of New York and repeatedly relied upon by Plaintiff in support of his Second Motion to Dismiss (Dkt. 81), wherein Mr. Varadarajan unequivocally states that he is in fact the "co-author, with Arjun, of the functional code at question." *Checkmate.com, Inc. v. Vasan*, Dkt. 36 ¶ 6, Case No. 1:25-CV-03181(JMF) (S.D.N.Y. Apr. 12, 2025). Furthermore, Mr. Varadarajan has openly acknowledged his role as the "longtime technical advisor and collaborator of Arjun Vasan" and further declared to "have worked professionally with every member of the VoiceBite founding team at past companies, including CyborgOps and Presto." *Id*. at ¶¶ 4-5. He also asserts that he witnessed the co-founders "negotiat[ing] and discuss[ing] every issue thorough and

transparently" while the "VoiceBite team w[as] finalizing the merger with Checkmate." *Id*. at ¶¶ 9-10.

The deposition testimony and documents requested in Checkmate's Subpoena are precisely aligned with the sworn testimony Mr. Varadarajan has already provided on behalf of Plaintiff – testimony which Plaintiff repeatedly relies upon in support of his claims and defenses to Checkmate's Counterclaims (*See* Dkt. 81) – and are directly pertinent to the fraudulent sale of the VoiceBite code to Checkmate, which is central to Checkmate's Counterclaims. The document requests in the Subpoena include, among other things, documents directly related to the VoiceBite Transaction, authorship and ownership of the VoiceBite code, and Mr. Varadarajan's professional relationship with Plaintiff (including his role at Plaintiff's prior companies) as well as documents and communications relating to the above-captioned action and the parties thereto. Makitalo Decl. ¶ 3, Ex. A.

As a representative example, Request No. 1 seeks "All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR creation, authorship, or development of THE VOICEBITE CODE." *Id*. This Request is clearly relevant to Checkmate's Counterclaims which include allegations that Plaintiff misrepresented the true authorship and ownership of the VoiceBite code and Plaintiff's claim that Checkmate's "Notice of Claim," alleging Plaintiff committed fraud on Checkmate, "den[ied] him $122,000 in severance" and was used to justify withholding other owed payments, including $450,000 in earned bonuses, without specifying actual damages," among many other allegations in his Amended Complaint. (Dkt. 10 ¶ 50). Document Request No. 6 is also directly relevant to Mr. Varadarajan's assertion that "Arjun had my full and complete support and authorization to use any personal code I had co-authored with him over the years, for VoiceBite or any other venture" and seeks "All DOCUMENTS and COMMUNICATIONS RELATING TO any agreements for THE VOICEBITE CODE INCLUDING licensing agreements, intellectual property assignments, or any transfers of ownership." Makitalo Decl. ¶

-12-

3, Ex. A. Similarly, Request No. 19 seeks "All DOCUMENTS and COMMUNICATIONS RELATING TO any agreements between YOU and ARJUN VASAN RELATING TO the transfer of any code authored by YOU." *Id*.

Mr. Varadarajan's unreasonable demands to effectively eliminate most of the document requests in the Subpoena are improper and are tantamount to a wholesale refusal to comply with the requests. Specifically, he demands that any document requests be limited to "5 keyword search terms with 1 month windows. For example "checkmate" and May 2024." *Id*. ¶¶ 26, 31, Exs. M, O. Mr. Varadarajan's Objections to the document requests and his attempts to unjustifiably narrow their scope do not absolve him of his duty to produce all responsive documents to which Checkmate is plainly entitled to under its right to obtain broad discovery pertinent to the claims and defenses of both Plaintiff and Checkmate. The documents and communications requested by Checkmate in the Subpoena are specifically tailored and directly relevant to the claims and defenses of both Plaintiff and Checkmate, as well as the assertions in Mr. Varadarajan's Declaration, as detailed above. Therefore, the Court should compel Mr. Varadarajan to comply fully with the Subpoena and produce responsive documents.

## B. Checkmate's Subpoena Was Validly Issued And Served On Mr. Varadarajan

Federal Rule of Civil Procedure 45 permits Checkmate to serve a subpoena on a third-party commanding attendance at a deposition and to produce documents. Fed. R. Civ. P. 45; *Cunningham v. Connecticut Mut. Life Ins*., 845 F. Supp. 1403, 1410 (S.D. Cal. 1994) ("A subpoena duces tecum may be served on a party to the lawsuit or a third person."). A valid subpoena must "command each person to whom it is directed to ... attend and testify," or "produce designated documents" at "a specified time and place," within 100 miles of where the person resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(a)(1)(A)(iii), (c)(1)(A), (c)(2)(A). Additionally, "[a]n attorney may...issue and sign a subpoena if the attorney

is authorized to practice in the issuing court." *See* Fed. R. Civ. P. 45(a)(3); *Bademyan v. Receivable Mgmt. Servs. Corp.*, No. CV 08-00519 MMM (RZx), 2009 WL 605789, at *2 (C.D. Cal. Mar. 9, 2009) ("Even though subpoenas are issued by attorneys, they are issued on behalf of the Court and should be treated as orders of the Court."); *McKeon v. Cent. Valley Cmty. Sports Found.*, No. 1:18-CV-00358-BAM, 2019 WL 1208986, at *2 (E.D. Cal. Mar. 14, 2019) ("Proper subpoenas issued by attorneys on behalf of the court are treated as orders of the Court.").

The Subpoena was indisputably validly issued and served upon Mr. Varadarajan in accordance with Federal Rule of Civil Procedure 45. Signed by Checkmate's counsel, it was issued from the Central District of California, where the above-captioned action is pending. Makitalo Decl. ¶¶ 2-3, Ex. A The Subpoena was personally served upon Mr. Varadarajan at his residence in Cerritos, California, with a clear compliance date of September 22, 2025, to appear for deposition and produce responsive documents at K&L Gates LLP's offices in Los Angeles, California, well within the 100-mile requirement of his residence. *Id.* Thus, the Subpoena was properly issued and served on Mr. Varadarajan.

### C. The Court Should Hold Mr. Varadarajan In Contempt Pending Compliance

While Mr. Varadarajan served Checkmate with Objections, they did not relieve Mr. Varadarajan from his required compliance with Checkmate's Subpoena to appear for his deposition on September 22, 2025. "While a nonparty may challenge a subpoena duces tecum via written objection, a deposition subpoena may only be challenged by moving to quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or by moving for a protective order pursuant to Rule 26(c)." *HI.Q, Inc. v. ZeetoGroup, LLC*, Misc. Action No.: 22cv1440-LL-MDD, 2022 WL 17345784, at *5 (S.D. Cal. Nov. 29, 2022) (citing 9 James Wm. Moore, Moore's Federal Practice § 45.30 (2007) ("The written objection procedure is available only for a subpoena commanding production or inspection ...")).

Mr. Varadarajan failed to file a motion to quash or modify the Subpoena or a motion for a protective order challenging Checkmate's Subpoena to appear for deposition on September 22, 2025 at K&L Gates LLP's offices in Los Angeles, California. Mr. Varadarajan's disregard of Checkmate's validly issued Subpoena to appear for deposition is itself a refusal to comply with a court order and a basis for the Court to find contempt. *See Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*, No. 2:19-mc-00049-PSG(KSx), 2019 WL 4267764, at *6-7 (C.D. Cal. July 31, 2019) (quoting *Salt v. Corona Regional Medical Center*, 884 F.3d 1218, 1224 (9th Cir. 2018) ("A Rule 45 subpoena 'obligate[s] the nonparty to appear at the scheduled deposition at pain of being held in contempt.'")).

"Courts have inherent power to enforce their orders through civil contempt." *Bademyan*, 2009 WL 605789, at *1 (citing *Spallone v. United States*, 493 U.S. 265, 276, 110 S.Ct. 625, 107 L.Ed.2d 644 (1990)). Pursuant to Federal Rule of Civil Procedure 45(g), "[t]he court for the district where compliance is required ... may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena of an order related to it." To hold a party in contempt, a court must find by clear and convincing evidence that the party violated a definite and specific order and that the party had sufficient notice of its terms and that sanctions would issue for a failure to comply. *See In re Dyer*, 322 F.3d 1178, 1190-91 (9th Cir. 2003). "Once the moving party shows by clear and convincing evidence that the contemnor has violated a specific and definite order of court, the burden shifts to the contemnor to demonstrate that he or she took every reasonable step to comply, and to articulate reasons why compliance was not possible." *Bademyan*, 2009 WL 605789, at *2 (citing *Donovan v. Mazzola*, 716 F.2d 1226, 1240 (9th Cir. 1983)).

Mr. Varadarajan failed to appear for his deposition, disregarding Checkmate's validly issued Subpoena served upon him, indicating a clear compliance date of September 22, 2025 – ***more than a month after service***. Makitalo Decl. ¶¶ 2-3, 28, Ex. A.  ***Mr. Varadarajan never once articulated any valid scheduling conflict***.

Instead, throughout Checkmate's repeated efforts to meet and confer with Mr. Varadarajan regarding his obligations pursuant to the Subpoena, Mr. Varadarajan offered several excuses for his planned non-appearance at his deposition including, among others, that he is "occupied *in my personal matters* and would have difficulty traveling for an in person deposition due to health reasons," the deposition should "be continued to (at minimum) 21 days after the Court rules on Plaintiff's Motion to Dismiss Counterclaims and that any deposition proceed remotely under Rule 30(b)(4) from my city," and that he "ha[s] *family obligations* and *health constraints*, and will be available only after Mid November" – conveniently echoing Plaintiff's own preferred timeline for resolution of his motion to dismiss. *Id*. ¶¶ 16-17, 22, Exs. H, K. **To this date**, Mr. Varadarajan has provided no explanation for any medical condition limiting his ability to leave his home or to postpone his appearance for deposition until after mid-November, despite Checkmate's repeated requests. *Id*. ¶¶ 24-27, 29-32, Exs. L-O. Even so, Checkmate has communicated its willingness to accommodate Mr. Varadarajan's legitimate scheduling conflicts to alleviate any undue burden.  Nonetheless, providing no explanation, Mr. Varadarajan maintained his insistence that "any deposition must only be remote with topics limited to 2024 onwards (before which Voicebite and Checkmate had no relationship)" and be limited to two hours. *Id*. ¶¶ 31-32, Ex. O.

Mr. Varadarajan's failure to appear and comply with the Subpoena for his deposition testimony on September 22, 2025, is utterly inexcusable. *Id*. ¶ 26. Despite repeated requests from Checkmate, he failed to provide any justification for his non-compliance or any details about his alleged medical condition that supposedly prevented him from attending the deposition at K&L Gates LLP's offices. *Id*. ¶¶ 24-27, 29-32, Exs. L-O. Further, despite Checkmate's offer to continue Mr. Varadarajan's compliance date to appear for deposition at the offices of K&L Gates LLP to November 14, 2025 and offer of frequent breaks to accommodate any health condition he may have, with his provision of information related thereto, it is clear

based on Mr. Varadarajan's insistent and unreasonable limiting demands he has no intention of complying with the Subpoena. *See Id.* ¶¶ 31-32, Ex. O ("The remote session must be time limited to 2 hours maximum excluding any breaks which shall in total not exceed 15 minutes."); *Id.* ¶¶ 22-23, Ex. K ("[A]ny deposition must only be remote and time limited and pertaining only in reference to the business transaction as outlined in the case."); *Id.* ¶¶ 26-27, Ex. M ("[A]ny deposition must only be remote.")).

Mr. Varadarajan's unreasonable and restricting demands constitute a wholesale refusal to comply with the Subpoena, despite Checkmate's good faith and diligent attempts to secure compliance and its willingness to provide necessary accommodations and frequent breaks. Checkmate is legally entitled to conduct discovery on the veracity of Mr. Varadarajan's statements, given his status as a relevant witness who has voluntarily inserted himself into this litigation. The law does not permit Mr. Varadarajan to unilaterally serve as a witness solely for Plaintiff's advantage by supplying declarations but evade his obligations under the Subpoena and Checkmate's legal right to obtain discovery. As detailed above, Checkmate has provided clear and convincing evidence that Mr. Varadarajan blatantly violated the Subpoena and made no reasonable effort to comply with a court order. Accordingly, the Court should find Mr. Varadarajan in contempt pending his compliance with Checkmate's Subpoena.

### D. The Court Should Issue Sanctions For Mr. Varadarajan's Failure To Comply With The Subpoena

As part of this Court's contempt powers under Rule 45(g), the Court may also impose monetary sanctions against Mr. Varadarajan for his failure to comply with the Subpoena, including the fees and costs incurred by Checkmate to compel compliance. *Bademyan*, 2009 WL 605789, at *3 (citing *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04, 67 S.Ct. 677, 91 L.Ed. 884 (1947) ( "Sanctions for civil contempt are imposed to coerce compliance with a court order,

to compensate the party pursuing contempt for injuries resulting from the contemptuous behavior, or both.")); *Pac. Coast Surgical Ctr.*, 2019 WL 4267764, at *4 (citing *Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1481 (9th Cir. 1992) ("A sanction for civil contempt is intended to coerce the party in contempt to comply with the court's order in the future, with the sanction conditioned on continued noncompliance."); *see also Tee Turtle, LLC v. Abmask*, Case No. 2:21-CV-03572-CMB-E(x), 2021 WL 4812947, at *2 (C.D. Cal. July 8, 2021) (quoting *In re Dyer*, 322 F.3d at 1193) ("A district court may award 'compensatory sanctions' for civil contempt 'in the form of costs and attorneys' fees.'"); *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1366-67 (9th Cir. 1987) (quoting *Falstaff Brewing Corp. v. Miller Brewing Co.*, 702 F.2d 770, 778 (9th Cir. 1983)) ("[A] sanction for '[c]ivil contempt is characterized by the court's desire to ... compensate the contemnor's adversary for the injuries which result from the noncompliance.'").

Checkmate has incurred significant time and expense bringing the present Motion. Further, as set forth above, Mr. Varadarajan's conduct was and continues to be coordinated with Plaintiff in clear violation of Checkmate's validly issued Subpoena. These are precisely the types of considerations that render a fees award appropriate. *See, e.g., Bademyan*, 2009 WL 605789, at *4 (quoting *Donovan v. Burlington Northern, Inc.*, 781 F.2d 680, 682 (9th Cir. 1986) ("[C]ourts in civil contempt proceedings *must* award attorney's fees when such fees have actually been incurred by the prevailing party and are otherwise allowable") (emphasis in original)). Thus, Checkmate is entitled to be compensated for the attorneys' fees incurred in enforcing Mr. Varadarajan's compliance with the Subpoena. As set forth in the concurrently filed Declaration of Rebecca I. Makitalo, Checkmate has and will incur, at a minimum, $15,000 in attorney's fees and costs in bringing the present Motion, which Checkmate is entitled to recover under the law. Makitalo Decl. ¶ 36. Checkmate seeks reimbursement for $5,000 of that amount here.

1603059467.2

## IV.    CONCLUSION

For the foregoing reasons, the motion should be granted in its entirety with the subpoena enforced and Mr. Varadarajan held in contempt pending compliance, and an order of $5,000 in sanctions for his willful noncompliance.

Date: October 14, 2025                    Respectfully Submitted,

K&L GATES LLP

_____

Ryan Q. Keech (SBN 280306)
Stacey Chiu (SBN 321345)
Rebecca I. Makitalo (SBN 330258)
Jacob R. Winningham (SBN 357987)
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

*Attorneys for Defendant and Counter-Claimant* CHECKMATE.COM IN

1603059467.2

1

## **CERTIFICATE OF WORD COUNT**

2       The undersigned, counsel of record for Checkmate certifies that this brief

3   contains 5,638 words, which complies with the word limit of L.R. 11-6.1.

4

5   Date: October 14, 2025                    Respectfully submitted,

6                                             K&L GATES LLP

7

8                                             _____

9

10                                            Ryan Q. Keech (SBN 280306)
                                              Stacey Chiu (SBN 321345)
11                                            Rebecca I. Makitalo (SBN 330258)
                                              Jacob R. Winningham (SBN 357987)
12                                            10100 Santa Monica Boulevard, 8th Floor
                                              Los Angeles, California 90067
13                                            Telephone: 310.552.5000
                                              Facsimile: 310.552.5001
14

15                                            *Attorneys for Defendant and Counter-*
                                              *Claimant CHECKMATE.COM INC.*
16

17

18

19

20

21

22

23

24

25

26

27

28

1603059467.8                                -1-

CHECKMATE.COM INC.'S MOTION TO ENFORCE AND COMPEL COMPLIANCE WITH SUBPOENA TO
VASAN VARADARAJANAND FOR CONTEMPT

1603059467.2