Arjun Vasan

arjun.vasan@gmail.com

12615 193rd Street

Cerritos, CA 90703

(562) 900-6541

Plaintiff In Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**Arjun Vasan**,

    Plaintiff and Counter-Defendant

vs.

**Checkmate.com, Inc.**,

(dba "Checkmate"),

    Defendant and Counterclaimant

Case No.: 2:25−cv−00765−MEMF−ASx

Hon. Alka Sagar | DISCOVERY MATTER

**RESPONSE IOT MOTION TO COMPEL AND FOR CONTEMPT (DKT. 101); AND REQUEST FOR PROTECTIVE RELIEF AND PHASED DISCOVERY; DECLARATION OF ARJUN VASAN; DECLARATION OF ROBERT NESSLER**

Complaint Filed: January 28, 2025
Hearing Date: November 13, 2025
Hearing Time: 10:00 A.M.
Courtroom: 540

FILED WITH [PROPOSED] ORDER

TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

    Plaintiff Arjun Vasan ("AV") respectfully opposes Defendant Checkmate.com, Inc. ("Checkmate")'s Motion to Compel and Contempt as it raises matters concerning his interests, were directed at him and only he could address. AV requests the Court deny the Motion, or at minimum set reasonable protections and cost-shifting to protect non-parties and himself alike.

**PLAINTIFF'S MEMORANDUM IN RESPONSE**

## I. CHECKMATE'S LACK OF CANDOR IS CONCERNING

Checkmate misstates the record in demanding contempt sanctions for a non-party, Vasan Varadarajan, who filed a declaration in its voluntarily dismissed action in the Southern District of New York ("SDNY")—not "in this litigation". Checkmate sought and received judicial notice of AV's SDNY motion to dismiss which attached it. Dkt. 60, 67. Checkmate then abandoned its claims there to assert as counterclaims here. It again quoted and screenshotted the declaration in its instant motion to compel. These were *Checkmate's choices*, not AV's or his father's.

Several other statements/assertions it makes (or omits) are misleading, *inter alia*:

1. Hon. Judge Frimpong did not deny phasing. Checkmate's motion states that the Court denied phasing—this is untrue. See Dkt. 101 at 13:1-2. The neutral order stated, "The parties should raise their disputes with respect to phasing of discovery and other limitations on discovery with the assigned Magistrate Judge." See Dkt. 88 at 2:15-17. AV attempted to meet and confer on this matter, but Checkmate refused. See Ex. A.

2. Checkmate claims to seek "pertinent discovery", but the Court has found otherwise. Judge Rosenbluth denied AV's hastily-filed motion to quash for technical reasons but wrote: "Plaintiff is **correct** that many of Defendant's document requests are overly broad and could be more narrowly tailored…" See Dkt. 85 at 4, fn.2. Mr. Varadarajan since served timely 45(d)(2)(B) objections, but 8 weeks later, Checkmate seeks to enforce the subpoena as is. While AV's *ex parte* may have appeared premature, he was correct that Checkmate was and would remain unreasonable.

3. Mr. Varadarajan did not stake any claim to VoiceBite's proprietary code. Rather, he stated he co-authored code "in question" in its pleading (the exhibited module bearing his name), which AV had permission to use "for VoiceBite, or any other venture", and was *unrelated* to the LLM codebase being offered by VoiceBite (its "proprietary code"). Mr. Nessler's declaration, filed herewith, confirms Mr. Varadarajan's relation to VoiceBite was peripheral—an observer, not a participant. See Nessler Decl. ¶¶ 2-6. Checkmate bears the burden to show any material relevance, given the record here.

2

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER

## II. CHECKMATE SEEKS CONTEMPT SANCTIONS AGAINST A NON-PARTY FOR WHAT IT PURPORTS WERE *PLAINTIFF'S* ACTIONS

If AV's motion lacked standing to challenge his father's subpoena, certainly *Checkmate's* does not have standing to demand disproportionate measures *on account of AV's actions*—taken in good faith to limit undue burden on a 70-year-old non-party with health issues and without current income to cover costs/fees in responding. Contempt is an extreme measure—Courts do not impose it lightly. The Court, and parties, have a duty to *prevent* non-party burden—a matter AV takes seriously but Checkmate disregards. The Court further is obligated to sanction parties that impose such burden. By pairing the motion to compel with a request for contempt sanctions, Checkmate is expressly asking the Court to *impose undue burden on a non-party* contra Rule 45.

Moreover, while AV made technical errors filing the *ex parte*, it is not inconceivable that a *pro se* party, in his first litigation, would make such mistakes in good faith when his *father* and his good friend were both subpoenaed on the same day—without prior party notice required by Rule 45(a). Put simply, AV panicked. Noting, as Judge Rosenbluth, the compliance date afforded insufficient time for the Rule 37 process, he filed *ex parte* without studying the standards for a Motion to Quash: namely that he needed to raise his own privacy/privilege issues, not those of the non-parties—and that Mr. Nessler's subpoena must be addressed in N.D. Cal., not here.

Checkmate's demand for sanctions against AV's father—a retired senior citizen who has never been in litigation—cannot be explained as a good-faith effort to secure discovery. It is an attempt to do indirectly what it cannot do directly: to inflict financial and emotional pressure on AV through his family. Having failed to intimidate AV with tactical maneuvers, falsehoods and acerbic rhetoric, Checkmate now seeks to weaponize fee-shifting against a vulnerable non-party. The tactic is not merely disproportionate; it is antithetical to Rule 45's protective purpose.

Mr. Varadarajan should not be penalized for AV's good faith actions. AV researching and making suggestions to avoid burden is not improper coordination. As a non-party who submitted timely objections, production is expressly halted until Court order, as he noted. Courts have emphasized that timely objections defeat contempt, and that Mr. Varadarajan's request for Checkmate to cover production costs—including attorney's fees, is reasonable.

### III. CHECKMATE IMPROPERLY ASSERTS ITS CLAIMS AS PROVEN TRUE

Checkmate's motion proceeds as though its counterclaims were already proven and its factual allegations entitled to deference. <u>They are not</u>. On a discovery motion, the moving party bears the burden to establish relevance and proportionality under Rule 26(b)(1), not to rely on the assumed truth of its own pleadings. <u>Courts</u> do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). *Bell Atl. Corp. v. Twombly* cautions "a plaintiff with 'a largely groundless claim' … to take up the time of a number of other people". 550 U.S. 544, 558 (2007) (quotation marks omitted). This applies with greater force to a non-party, who enjoys the heightened protections of Rule 45(d).

AV's pending motion to dismiss disputes a foundational premise on which Checkmate's fraud theory relies—that legacy code *co-authored* years earlier with his father was ever "sold" to Checkmate, or the subject of any representations. The "Assignment of IP and Other Assets" (addressing pre-VoiceBite code), only assigns technology created "*on behalf of*" VoiceBite—not every line of code "used for VoiceBite". <u>If otherwise, it would not be compliant with Labor Code § 2870</u>. See Dkt. 98 §§ II.B.4, II.C, II.I; Vasan Decl. ¶ 8. The question of relevance is squarely before the Court—Checkmate cannot expect it assumed prior to any ruling. Here, Checkmate asks the Court to treat rhetoric as fact—that Mr. Varadarajan "authored the proprietary VoiceBite code", which "[AV] sold" and "misrepresented". <u>Those are (false) allegations, not findings</u>.

In sum, Checkmate asks the Court to treat its counterclaims as *proven* and to punish a non-party for declining to concede them. The Federal Rules and controlling precedent demand the opposite: <u>discovery must follow plausibility</u>, not precede it. The Court should therefore reject any argument that presupposes the truth of mere allegations as a predicate for discovery and should defer or phase any discovery concerning the disputed legacy code until the pending motion to dismiss resolves whether those allegations have any legal footing at all.

### IV. CHECKMATE'S SUBPOENA IS DISPROPORTIONATE UNDER 26(b)(1)

Rule 26(b)(1) defines the scope of discovery as matters "relevant to any party's claim or defense and proportional to the needs of the case," considering importance of the issues, amount in controversy, access to information, resources available, importance of the discovery to issues,

and whether burden outweighs likely benefit—especially for non-parties. Fed. R. Civ. P. 45(d)(1); *In re NCAA Student-Athlete Name & Likeness Licensing Litig.*, 2012 WL 4846522, at *3 (N.D. Cal. Oct. 9, 2012) ("The court must be particularly sensitive to the burden on non-parties."). Where, as here, a party receives <u>notice from the Court</u> that its requests are overbroad, yet changes nothing, it has failed to meet its burden. See Dkt. 85 at 4, fn.2.

**The pending motion to dismiss may moot the subpoena**. Checkmate is wrong that AV's father has material relevance to his affirmative claims. AV's claims regard <u>his employment with Checkmate</u>: relevant witnesses are coworkers, and supervisors. For his fraud claims, his cofounders and Checkmate's executives are relevant. See Vasan Decl. ¶ 7, Ex. C. The deposition is only needed to create "plausibility" to amend its counterclaims post dismissal. <u>That is not a reasonable, or proper, use of the subpoena power</u>. Its repeatedly expressed desire to "examine the veracity of this testimony" (Dkt. 101 at 2, 12, 23) cautions restraint until plausible relevance.

**No damages theory has been substantiated**. Checkmate invokes "millions of dollars paid for the code", without evidence—but its own filed contracts and evidence submitted by AV refute this refrain entirely. See Dkt. 98 § II.G. It also failed to disclose a computation of damages in the Rule 26(f) Report (Dkt. 78 § D), or its initial disclosures. Courts deny expansive discovery where damages are speculative. See *United States ex rel. Brown v. Celgene Corp*. (C.D. Cal. July 24, 2015) (limiting discovery where damages "remain hypothetical at best").

**No party discovery has been taken**. Checkmate has deposed no one else—not its own executives or employees, not its Rule 30(b)(6) witness, not even AV. It has served no requests for production, no interrogatories and no requests for admission. Courts require party discovery to be substantially completed before burdening non-parties. *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 410 (C.D. Cal. 2014)* (quashing subpoena where "party discovery has barely begun"); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005)* ("Non-party discovery should be employed only after the requesting party has first sought the information from its opponent."). <u>Less-intrusive, party sources abound</u>. See Fed. R. Civ. P. 26(b)(2)(C)(i) (requiring courts to limit discovery obtainable from "a more convenient, less burdensome, or less expensive source")

## V. CHECKMATE'S GAMESMANSHIP DISREGARDS THE COURT'S ORDERS

Checkmate has disregarded Judge Frimpong's directive for the parties seek guidance on phasing and discovery limitations from the Magistrate Judge. AV has thus not had the chance to argue for reasonable protections that might have averted this motion entirely. Checkmate *chose* to abandon its preferred forum, <u>where it faced a pending adverse ruling</u>, to bootstrap discovery in *AV's* chosen forum prior to any adjudication of the plausibility of its claims. The Court should not permit Checkmate to benefit from such forum-shopping and tactical maneuvering.

Mr. Varadarajan's declared in SDNY as the operative IP papers were withheld, and AV had to assume Checkmate's representations were accurate. The papers were filed in opposition to AV's motion to dismiss in SDNY (never here) and limit assignment/representation to IP created <u>on VoiceBite's behalf</u>. His testimony was (and is) unnecessary. Dkt. 97-1, 98 §§ II.B.4, II.C, II.I.

<u>The Court should also note the imbalance of fee shifting</u>. Checkmate has benefited from AV's *pro se* status thus far—saving tens of thousands of dollars it would have owed for losing on AV's Labor Code § 925 challenge. Yet it will certainly seek fees if it prevails on any discovery motion—compensation for time that AV is not entitled to. Rule 37(a)(5)(A)(iii) expressly authorizes the Court to deny fee-shifting where, as here, "other circumstances make an award of expenses unjust." The Court should exercise its discretion accordingly to ensure a fair playing field and limit any benefit from such technical asymmetry in this dispute.

<u>Checkmate has brought AV's discovery to a standstill</u>—refusing to meet on any issues he has raised (including phasing, and on the overbroad subpoenas at issue), and serving boilerplate objections to requests for admissions contra Judge Sagar's civil procedures. AV has further sent a request for an informal discovery conference as a final attempt at resolution.

## VI. REQUEST FOR PROTECTIVE RELIEF AND PHASED DISCOVERY

Judge Frimpong directed that phasing and discovery limitations be presented to the assigned Magistrate Judge. Dkt. 88 at 2:15–17. AV attempted to meet and confer on a reasonable phasing plan and protections; counsel declined to participate. In particular, counsel repeatedly refused to meet unless AV first accepted a one-way meeting on what it purports are "deficient" witness disclosures—prioritizing its own issues over the Court's express guidance, and further

6

refusing to meet on both parties' issues as repeatedly requested by AV. Given Checkmate's overreach on the two witnesses who declared in SDNY, AV is reluctant to involve any other witnesses without protections in place. See Vasan Decl. ¶¶ 5-6, Ex. A, B.

Here, AV seeks relief from Magistrate Judge Sagar on phasing and discovery limits, as prescribed by Judge Frimpong. Specifically, he requests Judge Sagar take a "preliminary peek"[1] at the Reply ISO his Motion to Dismiss, and the contract at issue—the "Assignment of IP and Other Assets" (IPAA). Dkt. 97-1 (Ex. A-2), 98 §§ II.B.4, II.C, II.I. This is the sole contract Checkmate purports to link Mr. Varadarajan to its counterclaims, which concern—exclusively— pre-VoiceBite code. It is re-attached for convenience as Exhibit D and states "WHEREAS, prior to the date of this Agreement, the Assignor has developed certain technology and intellectual property *on behalf of the Company*" and continues "WHEREAS the Assignor desires *such technology and intellectual property* ... to be assigned and owned by the Company". "Assignor" transfers the "assigned assets" for $100.00 and represents "to the best of [their] knowledge", they can grant exclusive title. This is not a blanket attestation to every line of code at VoiceBite—it is limited to that work is reasonably assignable (created "on behalf of" VoiceBite). Checkmate *alleges* the code it disputes was developed "on behalf of" other entities and that it was conceived years prior to VoiceBite's formation. At the 12(b)(6) stage, *taking its allegations as true requires dismissing any claim relying on this assignment*. This includes most of the counterclaims.

Even, *arguendo*, if Checkmate's misreading were to be credited, such an assignment is barred by California Labor Code § 2870—which does not permit assignment of work created on an employee's time without the employer's equipment—unless related to the business at time of conception. Checkmate's own counterclaims preclude any such relation, as discussed in the Reply (Dkt. 98 § II.C). This is the argument currently before Judge Frimpong on the pending

---

[1] Courts in this Circuit frequently take a "preliminary peek" at the merits of a pending dispositive motion when deciding whether to stay or limit discovery. See, e.g., *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 603 (D. Nev. 2011) (purpose is to evaluate limiting discovery consistent with Rule 1); *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013) ((1) motion potentially dispositive; (2) resolvable without discovery; and (3) after a preliminary peek, the court is convinced plaintiff cannot state a claim). See *In re Nexus 6p Prods. Liab. Litig.*, 2017 WL 3581188, at *2 (N.D. Cal. Aug. 18, 2017) ("preliminary peek" at a motion to dismiss when considering a limited stay of discovery).

1. Motion to Dismiss. Here, AV does not seek a merits ruling from Judge Sagar—only a finding that the contract, which is not in dispute (belatedly filed and authenticated by Checkmate in SDNY), is sufficient grounds to stay burdensome discovery on his 70-year-old father.

Checkmate's subpoena expressly targets "private family communications", as seen in the meet and confer emails exhibited in the motion. See Dkt. 101-15 at 2, 'no otherwise relevant and responsive documents may be withheld because they are "private family communications"'. This necessarily brings AV's brother and mother into scope, who lack even his father's minimal (and conditional) relevance and violates 26(c)'s protection against "annoyance, embarrassment, [and] undue burden," and 45(d)(1)'s duty to avoid burdening non-parties. It would include every argument between close family, concern of parents for their children or vice versa, medical emergencies, financial concerns and so on. Judge Rosenbluth held that AV had not established personal privacy rights in denying his ex parte application—here *Checkmate admits* it seeks material that would violate such rights. The subpoena confirms—"ALL COMMUNICATIONS" with AV from 2023 onwards. As Judge Rosenbluth stated, these overbroad requests should be narrowed—but as *any* relevance is conditional on a dispositive legal contention that will be soon adjudicated, the entire subpoena should be held in abeyance or phased until a ruling.

Accordingly, AV respectfully requests the Court (1) defer compliance with the subpoena and phase non-party discovery on the counterclaims until a ruling on the motion to dismiss and until after party discovery is substantially complete—including depositions of Checkmate party witnesses and AV; (2) substantially narrow the requests to target only material that is relevant even if the claims survive; (3) require Checkmate to advance reasonable costs/fees for review should the subpoena ever be enforced—as set forth in the [Proposed] Order filed herewith. AV will shortly file a motion under L.R. 37. His father has not consented to email service and is not an ECF user. He is seeking counsel—and objected on grounds of insufficient notice via EDSS.

Dated: **October 23, 2025**

In: **Cerritos, California**

**Respectfully submitted**,

/s/ *Arjun Vasan*

**Arjun Vasan**, Plaintiff *In Pro Per*

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6**

Plaintiff Arjun Vasan certifies that this brief contains 2,725 words, which complies with the 7000-word limit of L.R. 11- 6.1 and the Court's Civil Standing Order dated Aug. 27, 2025.

Dated: **October 23, 2025**

In: **Cerritos, California**

**Respectfully submitted**,

/s/ *Arjun Vasan*

**Arjun Vasan**, Plaintiff *In Pro Per*

# DECLARATION OF ARJUN VASAN

I, Arjun Vasan, declare:

1. I am the Plaintiff in this action. I submit this declaration in support of my Statement in Response to Checkmate's Motion to Compel and Enforce Subpoena against my father, non-party Vasan Varadarajan. I have personal knowledge of the facts herein, and if called to testify, could and would do so competently.

2. On August 14th, 2025, at around 10:00 P.M. I was informed by my father that a process server had served him outside our family residence. On August 15th, 2025, at around 9:00 A.M., Robert Nessler called and informed me that he too had just been served.

3. Both message streams (with Mr. Nessler and my father) contain years of personal or privileged information—including health, financial, attorney-client privileged matters.

4. I was not provided prior party notice of either subpoena.

5. True and correct copies of email threads where Checkmate refuses to meet on discovery matters, I have raised, are attached as Exhibit A. These matters include the subpoenas, phasing, damages computations and boilerplate objections to requests for admissions.

6. Exhibit B is a true and correct copy of a recent email thread, where Checkmate suddenly demands in-person meetings at counsel's office. All prior meet and confers were remote. I requested parity, but Checkmate has not followed up since this request.

7. Exhibit C is a table, compiled from my operative Complaint, counting appearances of relevant witnesses thereto, earlier filed in opposition to Checkmate's motion to dismiss.

8. My father filed a declaration in the SDNY action, not here. Checkmate withheld the IP relevant to his statements—true and correct copies of which are attached as Exhibit D.

9. *I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed on: October 23, 2025                    /s/ Arjun Vasan

In Cerritos, California                    **Arjun Vasan**, Plaintiff In Pro Per

## DECLARATION OF ROBERT NESSLER

I, Robert Nessler, declare:

1. I am the former CEO of VoiceBite Corporation, and its cofounder with Arjun Vasan and Christopher Lam. I submit this declaration to clarify Vasan Varadarajan's relation to VoiceBite. I am over 18 years of age, have personal knowledge of the facts asserted herein, and if called to testify, could and would do so competently.

2. Mr. Varadarajan had no role in VoiceBite, was never paid by and held no equity in the company. He did not participate in our meetings, operations or product development.

3. At most, Mr. Varadarajan, known to the team from prior work, was an informal advisor.

4. Mr. Varadarajan observed parts of the VoiceBite-Checkmate negotiations, as Mr. Lam stayed with Arjun Vasan's family for a month leading up to closing, and Mr. Lam and Arjun Vasan attended the meetings together from Mr. Varadarajan's Cerritos residence.

5. Several individuals, including the VoiceBite founders, Checkmate executives, and attorneys from both sides, have participatory knowledge of the negotiations and were operationally involved, unlike Mr. Varadarajan.

6. To my knowledge, none of these individuals have been deposed.

7. *I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed on: October 23, 2025

In Cupertino, California

*Robert Nessler*

**Robert Nessler**, Former VoiceBite CEO