Arjun Vasan

arjun.vasan@gmail.com

12615 193rd Street

Cerritos, CA 90703

(562) 900-6541

Plaintiff In Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Arjun Vasan**,<br><br>        Plaintiff and Counter-Defendant<br><br>        vs.<br><br>**Checkmate.com, Inc.**,<br>(dba "Checkmate"),<br><br>        Defendant and Counterclaimant | Case No.:  2:25−cv−00765−MEMF−ASx<br>Hon. Alka Sagar \| DISCOVERY MATTER<br><br>**PLAINTIFF'S RESPONSE IOT MOTION TO COMPEL (DKT. 101); REQUEST FOR PROTECTIVE RELIEF AND PHASING OF DISCOVERY; DECLARATION OF ARJUN VASAN; DECLARATION OF ROBERT NESSLER**<br><br>Complaint Filed: January 28, 2025<br>Hearing Date: November 20, 2025<br>Hearing Time: 11:00 A.M.<br>Courtroom: 540<br><br>FILED WITH [PROPOSED] ORDER |

TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

Plaintiff Arjun Vasan ("AV") respectfully joins non-party Vasan Varadarajan ("VV") in opposing Defendant Checkmate.com, Inc. ("Checkmate")'s Motion to Compel. AV requests the Court deny the Motion and set reasonable protections to protect non-parties and himself alike. This brief addresses matters concerning ***AV's interests*** or that only he could reasonably address.

This includes, *inter alia*, (1) phasing of discovery; (2) a preliminary peek at the pending 12(b)(6-7) motion to justify phasing; (3) Checkmate's misstating of the record and the Court's orders, and conduct making relief inequitable; (4) its use of AV's actions as the primary reason for contempt against VV; and (5) AV's privacy and privilege concerns regarding the subpoena.

## **TABLE OF CONTENTS**

TABLE OF CONTENTS..................................................................................................**II**

TABLE OF AUTHORITIES ...........................................................................................**III**

PLAINTIFF'S MEMORANDUM IN RESPONSE......................................................... **1**

   I.    CHECKMATE MISSTATES THE RECORD AND COURT ORDERS ................................. 1

   II.   THE SUBPOENA IMPLICATES AV'S PRIVACY RIGHTS AND PRIVILEGE ................................ 2

   III.  ARGUMENT - PRELIMINARY PEEK DETERMINES RELEVANCE ................................ 2

      A. CHECKMATE IMPROPERLY ASSERTS ITS ALLEGATIONS AS PROVEN TRUE ............................... 2

      B. IP ASSIGNMENT IS DISPOSITIVE AS TO MR. VARADARAJAN'S RELEVANCE............................... 3

      C. "MILLIONS OF DOLLARS PAID FOR CODE" IS UNPERSUASIVE AND CONTRADICTED.............................. 5

      D. CHECKMATE'S PROBLEMS GO BEYOND 12(B) AND 9(B) AND IMPLICATE RULE 11 ................................ 5

   IV.  ARGUMENT – DISPROPORTIONALITY AND BAD FAITH ................................. 6

      A. THE SUBPOENA IS DISPROPORTIONAL UNDER RULE 26(B)(1) ................................. 6

      B. CHECKMATE'S POSTURE DISREGARDS THE COURT'S GUIDANCE ................................. 7

      C. CHECKMATE'S COERCIVE TACTICS POISON THIS LITIGATION ................................. 8

      D. CHECKMATE SEEKS TO HOLD A NON-PARTY IN CONTEMPT FOR A PARTY'S ACTIONS.............................. 9

      E. PRE-PLAUSIBILITY, BROAD DISCOVERY ON AV'S FATHER IS MANIFESTLY UNJUST.............................. 9

   V.    REQUEST FOR PROTECTIVE RELIEF AND PHASED DISCOVERY ........................... 10

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6 .......................................... **12**

DECLARATION OF ROBERT NESSLER ........................................................... **12**

DECLARATION OF ARJUN VASAN............................................................... **14**

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER

## **TABLE OF AUTHORITIES**

### **CASES**

*Ashcroft v. Iqbal,*

   556 U.S. 662, 678–79 (2009) ................................................................................. 3

*Bell Atl. Corp. v. Twombly,*

   550 U.S. 544, 558 (2007) ...................................................................................... 3

*Brockmeier v. Solano Cty. Sheriff's Dep't,*

   No. CIV S-05-2090 MCE EFB at 4–6 (E.D. Cal. Jan. 12, 2010) ............................... 2

*Harris v. KM Indus., Inc.,*

   980 F.3d 694, 701 (9th Cir. 2020) .......................................................................... 7

*Hickman v. Taylor,*

   329 U.S. 495, 507–08 (1947) ............................................................................ 2, 6

*In re U.S. Department of Education,*

   25 F. 4th 692 (9th Cir. 2022) ................................................................................. 3

*Kannan v. Apple Inc.,*

   No. 17-cv-07305-EJD (VKD), at 2–3 (N.D. Cal. Oct. 30, 2019) ............................... 2

*Kor Media Group, LLC v. Green,*

   294 F.R.D. 579, 581 (D. Nev. 2013) ....................................................................... 3

*Little v. City of Seattle,*

   863 F.2d 681, 685 (9th Cir. 1988) .......................................................................... 3

*Mattel Inc. v. Walking Mountain Productions,*

   353 F.3d 792 (9th Cir. 2003) (quashing "all documents" subpoena as "abusively drawn") ....... 7

*Mount Hope Church v. Bash Back!,*

   705 F.3d 418, 425–28 (9th Cir. 2012) ..................................................................... 7

*Mujica v. AirScan Inc.,*

   771 F.3d 580, 593–94 (9th Cir. 2014) ..................................................................... 3

*Seattle Times Co. v. Rhinehart,*

   467 U.S. 20, 34–36 (1984) ............................................................................................. 6

*Tradebay, LLC v. eBay, Inc.,*

   278 F.R.D. 597, 603 (D. Nev. 2011) .......................................................................... 3

*United States v. C.B.S., Inc.,*

   666 F.2d 364, 371–72 (9th Cir. 1982) ...................................................................... 7

*Wood v. McEwen,*

   644 F.2d 797, 801 (9th Cir. 1981) ............................................................................ 3

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER

**PLAINTIFF'S MEMORANDUM IN RESPONSE**

**I.  CHECKMATE MISSTATES THE RECORD AND COURT ORDERS**

Checkmate misstates the record in demanding contempt sanctions for a non-party, Vasan Varadarajan ("VV"), who declared in the Southern District of New York ("SDNY") —not "in this action" (June 2, 2025). **It** sought (June 4) and received (June 24) judicial notice of AV's SDNY motion that attached it. Dkt. 60, 67. **It** withheld the allegedly breached IP papers until its June 16 SDNY opposition (and never filed them here). **It** abandoned SDNY to file counterclaims ("CCs") here on July 9. Dkt. 71. **It** quoted VV's declaration in its motion to compel (Oct. 15). Dkt. 101. All *Checkmate's choices*, not AV's or VV's. AV's Sep. 24 Reply (Dkt. 98) ISO his 12(b)(6) motion does not rely on VV's declaration—or on his Aug. 15 motion (Dkt. 81); but on the IP papers he finally had access to. VV is irrelevant to AV's claims and defenses at this stage.

Several other statements/assertions it makes (or omits) are misleading, *inter alia*:

1. <u>Hon. Judge Frimpong did not deny phasing.</u> Checkmate's motion states that the Court denied phasing—<u>this is untrue</u>. See Dkt. 101 at 13:1-2. The neutral order stated, "The parties should raise their disputes with respect to phasing of discovery and other limitations on discovery with the assigned Magistrate Judge." See Dkt. 88 at 2:15-17. Checkmate repeatedly refused to confer on this matter. <u>AV raises it here.</u> See Ex. A.

2. <u>Checkmate claims to seek "pertinent discovery", but the Court has found otherwise.</u> Judge Rosenbluth denied AV's hastily-filed *ex parte* for technical reasons but stated he "is **correct** that many of Defendant's document requests are <u>overly broad</u> and could be more narrowly tailored…" See Dkt. 85 at 4, fn.2. VV timely objected, but 8 weeks later, <u>Checkmate seeks to enforce the subpoena as is</u>. AV's *ex parte* may have appeared premature, but he was **correct** that Checkmate <u>would remain unreasonable</u>.

3. <u>VV did not make claims to "VoiceBite proprietary code"</u>; he stated he "**co**-authored" the code "in question" (exhibited in the CCs); which was *unrelated* to the LLM code "being offered" (e.g. "proprietary code"). The Nessler Decl. ¶¶ 2-6 confirms VV was <u>observer, not participant</u>. The parties' initial disclosures list five ***shared*** witnesses, all much more relevant to both sides' claims, but <u>none has yet been deposed</u>. See Ex. F.

1

## II.    THE SUBPOENA IMPLICATES AV'S PRIVACY RIGHTS AND PRIVILEGE

Checkmate expressly seeks "private family communications". See Dkt. 101-15 at 2. This brings AV's brother and mother into scope, who lack even VV's (conditional) relevance; violates 26(c) for "annoyance, embarrassment, [and] undue burden,"; and 45(d)(1) for unduly burdening non-parties. It would include family disputes, concern of parents for children and vice versa, medical and financial issues and so on. It directly targets AV's health: 'with respect to "health matters,"…your son, however, has put his health condition at issue' *Id*. Judge Rosenbluth held that AV had not raised personal rights in his *ex parte*—here, Checkmate expressly seeks material implicating these rights: "ALL COMMUNICATIONS" with AV from 2023 onwards. See Dkt. 101-4 at 11. Checkmate, thus, has conceded AV's standing. As the judge stated, overly broad requests should be narrowed—but as relevance is conditioned on a dispositive legal contention that will soon be adjudicated, Checkmate can and should be made to wait. See Vasan Decl. ¶ 4.

Many categories concern prior employer, transaction or financial information that may be attorney-client or accountant-privileged: for AV, VV and others. More troubling is the request for litigation materials, which include opinion work-product and would confer collateral benefit unrelated to claims or defenses. Checkmate has made repeated threats to seek his work-product and punish AV with sanctions untethered to any standard: for allegedly "using AI" and assisting friends and family it has dragged into this dispute[1]. See Ex. A-4. It is settled law that, *inter alia*, mental impressions, drafts, research notes, and other material that reveals the mind of an attorney[2] is virtually undiscoverable. See *Hickman v. Taylor*, 329 U.S. 495 (1947).

## III.    ARGUMENT - PRELIMINARY PEEK DETERMINES RELEVANCE

### A.  Checkmate Improperly Asserts its Allegations as Proven True

Checkmate's motion proceeds as if its CCs were proven and entitled to deference. They are not. On a discovery motion, the moving party bears the burden to establish relevance and

---

[1] Checkmate conflates improper actions (pretending to be an attorney, manipulating witnesses, filing papers without reasonable investigation) with legitimate ones (providing case-details, coordinating logistics, using technology).

[2] See *Kannan v. Apple Inc*., No. 17-cv-07305-EJD (VKD), Dkt.164 at 2–3 (N.D. Cal. Oct. 30, 2019) ("work-product protection regardless of whether he is represented by counsel,"); *Brockmeier v. Solano Cty. Sheriff's Dep't*, No. CIV S-05-2090 MCE EFB at 4–6 (E.D. Cal. Jan. 12, 2010) (pro se mental impressions/legal strategies protected).

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER

proportionality under Rule 26(b)(1). Courts do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). As *Bell Atl. Corp. v. Twombly* cautions, "a plaintiff with 'a largely groundless claim'" could take up "the time of a number of other people". 550 U.S. 544, 558 (2007) (quotation marks omitted). This applies especially to a non-party, who enjoys the protections of Rule 45(d).

Checkmate asks the Court to treat rhetoric as fact—that, *inter alia*, VV "authored the proprietary VoiceBite code"; that AV "sold" and "misrepresented"; and it suffered "substantial damages" as a result. See Dkt. 101 at (§ I, Introduction, 7:11-12), (§ II, Statement of Facts, 8:11-12, 9:24-26). Gloss aside, these are (false) allegations, not findings. Relevance hangs on a single dispositive question: does the IP Assignment at issue, and the representation thereto, include the *disputed* code? If not, discovery on VV is irrelevant as *this code* would not have been "sold" and could not be "misrepresented" **as a matter of law**. Moreover, contracts Checkmate filed show it paid a total of $100 for *pre-VoiceBite code*, including the subset it disputes.[3] These facts merit a "preliminary peek"[4] at the 12(b)(6) papers before burdensome discovery. See Dkt. 81, 98 §§ II.

The 12(b)(6) motion has been fully briefed. That fact alone supports an unprejudicial and short stay. The Court should reject arguments presupposing the truth of allegations as a predicate for discovery and should defer or phase any discovery concerning the disputed legacy code until the pending motion resolves if those allegations have any legal footing at all. See Dkt. 81, 97, 98.

## B. IP Assignment is Dispositive as to Mr. Varadarajan's Relevance

---

[3] AV does not concede relevance in any case, but the IPAA § 3 representation is limited to "assigned assets".

[4] Courts in this Circuit may take a "preliminary peek" at a pending dispositive motion when deciding whether to stay or limit discovery. See, e.g., *Tradebay, LLC v. eBay, Inc.*, 278 F.R.D. 597, 603 (D. Nev. 2011) (purpose to evaluate limiting discovery consistent with Rule 1); *Kor Media Group, LLC v. Green*, 294 F.R.D. 579, 581 (D. Nev. 2013) ((1) motion potentially dispositive; (2) resolvable without discovery; and (3) after a preliminary peek, the court is convinced a claim cannot be stated). *Wood v. McEwen*, 644 F.2d 797, 801 (9th Cir. 1981) (Courts may stay when convinced a claim cannot be stated); *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988) (limiting discovery while dispositive issues were addressed); *In re U.S. Department of Education*, 25 F. 4th 692 (9th Cir. 2022) (motion is dispositive if its effect is to deny the ultimate relief sought or foreclose a defense of a party). *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987) (purpose of 12(b)(6) is for pleadings to be challenged prior to discovery). *Mujica v. AirScan Inc.*, 771 F.3d 580, 593–94 (9th Cir. 2014) (discovery not authorized to find a plausible claim; legal issues can be resolved without opening discovery). While AV does not seek a full stay—only phasing of non-party discovery until the 12(b)(6-7) motion is decided, the Ninth Circuit standards for a full stay are perhaps even more applicable to lighter weight relief.

3

The subpoena defines "THE VOICEBITE CODE" as "proprietary code CHECKMATE acquired from VOICEBITE"—most requests rely on or derive from this. See Dkt. 101-4 at 8. As an initial matter, a non-party without the transaction papers would have no way of knowing what was acquired. As Checkmate yet withholds the disclosure schedules, even AV is not sure. But a careful review of the operative contracts indicates *the exhibited code was not acquired*.

AV's Reply analyzes the "Assignment of IP and Other Assets" (the "IPAA", Dkt. 98 §§ II.B.4, II.C, II.I; Ex. D)—the sole contract relating VV to its CCs, which concern—as alleged— *pre-VoiceBite* code. Its authenticity is undisputed—(filed under sworn declaration by Checkmate in SDNY). It states: "prior to the date of this Agreement, the Assignor has developed certain technology and intellectual property on behalf of the Company"; "the Assignor desires such technology and intellectual property ... to be assigned and owned by the Company"; "Assignor" transfers these "assigned assets" **for $100.00**; and represents "to the best of [their] knowledge", they can grant exclusive title. This is reasonably limited to IP that is assignable (created "on behalf of" VoiceBite). The IPAA attaches no schedule of "assigned assets", lacks reference to the Merger Agreement ("MA"), and vice versa.[5] It is a popular industry "stock-for-IP" exchange for founders[6] at incorporation, not a pre-employment sale for $100 as it was used here.

Checkmate *alleges* the disputed code was developed "on behalf of" "other entities" and conceived years prior to VoiceBite's formation. AV disputes any IP is subject to any third-party risks—but agrees this code was not developed "on behalf of" VoiceBite. At the 12(b)(6) stage, *taking allegations as true requires dismissing claims relying on the IPAA. Even if, arguendo*, a

---

[5] The MA and IPAA are between different parties (VoiceBite and Checkmate; AV and VoiceBite; respectively), and Checkmate fails to allege any non-conclusory facts establishing standing to enforce the latter under relevant law.

[6] The IPAA is a founder "stock for IP" purchase instrument (title "Assignment of IP and other Assets"). The drafter, **Stripe Inc.**, describes Atlas as enabling founders to purchase initial shares using their intellectual property instead of cash, *if the IP is valued at $100 or less*. See "How to issue stock to founders" and related ("Cashless founder stock purchase" and the $100 IP limit). https://support.stripe.com/questions/atlas-purchasing-stock-with-ip-faq. (filed for judicial notice herewith, to inform the commercial purpose). Ordinarily this is signed as part of a packet (from Orrick/Stripe, Ex. E, Vasan Decl. ¶ 11) with a Common Stock Purchase Agreement. (CSPA). It may be weighed on discovery matters. **Notably**, the CSPA references the IPAA template by name "Assignment of IP..". This contrasts the MA, which lacks any such reference—indicating the drafters (Stripe/Orrick), knew one was needed for proper assignment. The packet's template matches the executed IPAA nearly verbatim, but the latter notably lacks a stock trade recital. Use as an *independent liability instrument* is dangerous without any detail or schedule. Unless qualified by "on behalf of"—the ambiguous "relates to" could be read to sweep in a life's work, **for $100**.

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER

broad reading was to be credited, the assignment is barred by Labor Code § 2870 as IP created on employee time and equipment cannot be assigned—unless related to the employer's business at time of conception. The CCs preclude any such relation. See Reply Dkt. 98 § II.C.

Checkmate expressly accepts that § 2870 governs and pins its response on the exception. Its asserts the "invention … clearly relates to **Checkmate's** business in the Voice AI sphere," so § 2870 "does not render the IP Assignment Agreements void." See Dkt. 94 at 26:1-7. But CCs ¶ 24 alleges *conception* years before VoiceBite existed—much less employment with *Checkmate*. As the CCs do not allege any anticipated Voice AI R&D and describe a business in ¶ 13 lacking Voice AI pre-merger, § 2870(a)(1) is categorically unavailable. As *this* code did not "result from work performed for the employer" § 2870(a)(2) is out as well. Later employer use cannot satisfy the statute's time-of-conception requirement. Plain language controls. Dkt. 67 at 15:18-27.

### C. "Millions of Dollars Paid for Code" is Unpersuasive and Contradicted

Whether assigned or not, the disputed code is a *subset* of pre-VoiceBite code—purported to be "sold" for a **$100** "aggregate purchase price". This figure cannot be supplemented by the MA, with no reference from or to the IPAA. Checkmate asks the Court to accept its self-serving contract interpretations—and ignore what the papers say and what is permitted by California or Delaware law. It alleges no breach of the MA purported to govern the parties' bargain, seeking to avoid triggering MA indemnities, yet asserts *transaction-related* damages. The bargain means, in its view, **what it wants it to**. On the papers, *even with transaction damages*, "millions of dollars paid for code" is not possible; unless "paid" means "*withheld*" and "for code" means "*for future work for Checkmate by five founders*". With its sole damages theory precluded by filed contracts not in dispute, its fraud claims fail Rules 12(b) and 9(b). See Dkt. 98 § II.B, II.G; 94 at 16:17-18.

### D. Checkmate's Problems Go Beyond 12(b) and 9(b) and Implicate Rule 11

The CCs show Checkmate's awareness of the IPAA's vulnerabilities. The first bulleted "misrepresentation" in its fraud claims stich a phrase from the MA disclosure schedules into the IPAA rep: "A comprehensive set of components …". The "set" is not detailed, nor is the source disclosed in the CCs. AV is only aware of the source from Checkmate's pre-suit "notices", sent

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER

in response to post-termination settlement outreach. These "notices" are attached to AV's reply. Compare bullets: Dkt. 97-5 at 5 to CCs ¶ 65. <u>The CCs thus put words into AV's mouth</u>.

Checkmate's litigation scheme consists of (1) extortionate demand letters, which misstate contract clauses and demand answers for "representations" never made; (2) repurposing replies in a compromise context as material for its pleading; (3) withholding documents so neither AV nor the Court can verify <u>what was said</u> or <u>who said what</u>. Dkt. 98 § H. These tactics violate all three prongs of Rule 11(b), and without them, the CCs clearly fail Rule 12(b) and 9(b).

Notably, Checkmate has never filed (in this court) the IP papers it alleges AV breached; (anywhere) the disclosure schedules, *despite alleging omissions from them*; and any source of statements it alleges support intent or scienter. Accordingly, under FRE 106, the Court may, and should, require production of documents construed as evidence of relevance or proportionality in justifying the non-party subpoena at issue, before burdening VV, AV and their family.

## IV.    ARGUMENT – DISPROPORTIONALITY AND BAD FAITH

Rule 26(b)(1) limits discovery to matters "relevant to any party's claim or defense and proportional to the needs of the case," considering importance *of* issues, amount in controversy, information access, resources available, importance *to* issues, and if burden outweighs benefit— especially for non-parties. See Fed. R. Civ. P. 45(d)(1); *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–36 (1984) (broad discretion to protect non-parties); *Hickman v. Taylor*, at 507–08 (1947) (no fishing expeditions). If a party receives <u>notice from the Court</u> its requests are "overly broad", yet changes nothing, it has failed to meet its burden. See Dkt. 85 at 4, fn.2.

### A.  The Subpoena is Disproportional Under Rule 26(b)(1)

**The pending motion to dismiss may moot the subpoena**. Checkmate is wrong that VV is core to AV's affirmative claims. For his <u>employment claims</u>: key witnesses are coworkers, and supervisors; for his fraud claims: cofounders and Checkmate's executives. See Vasan Decl. ¶ 9, Ex. C. Checkmate's real goal in deposing VV is to manufacture "plausibility" to amend post dismissal. <u>That is not a reasonable, or proper, use of the subpoena power</u>. Its fervently expressed desire to "examine the veracity of this testimony" (Dkt. 101 at 2, 12, 23) <u>cautions restraint</u>.

**No damages have been computed**. See § B, Dkt. 98 § II.G. Checkmate failed to disclose a computation of damages in the Rule 26(f) Report (Dkt. 78 § D), or its initial disclosures (Ex. F). The Ninth Circuit is clear: dollar figures (e.g. "millions") must be "tested by" "real evidence and the reality of what is at stake … using reasonable assumptions," and "cannot be pulled from thin air." Checkmate yet to put forth non-conclusory *allegations*—and the record refutes it "paid millions for code". A court need not credit unsupported and unreasonable calculations presented with "no evidence." See *Harris v. KM Indus., Inc.*, 980 F.3d 694, 701 (9th Cir. 2020)

**No party discovery yet taken**. The parties' initial disclosures list five shared witnesses, all clearly more relevant than VV. Both parties detailed, with high specificity, how each relates to AV's employment claims—and fraud claims of both parties. Checkmate has deposed none of these witnesses. Nessler Decl. ¶¶ 5, 6. AV attempted to notice depositions of three, notice was ignored for a month and then called "deficient". His three sets of requests for admission, were all returned with boilerplate. Checkmate has served no interrogatories, requests for production, or for admission. It has served no documents from the categories it disclosed. Vasan Decl. ¶ 12.

VV's subpoena was served on the *day* discovery opened. Checkmate's initial disclosures, two weeks later, lacked, *inter alia*, any computation of damages. See Ex. F. Courts require party discovery to be substantially complete *before* burdening non-parties. Checkmate did not even pretend here, its aim is to burden AV's friends and family. *Mattel Inc. v. Walking Mountain Productions*, 353 F.3d 792 (9th Cir. 2003) (quashing "all documents" subpoena as "abusively drawn"); see also Fed. R. Civ. P. 26(b)(2)(C)(i). *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 425–28 (9th Cir. 2012) (restraint for overbroad or tactical subpoenas); *United States v. C.B.S., Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982) (non-party a heavy factor).

**B. Checkmate's Posture Disregards the Court's Guidance**

Checkmate has disregarded Judge Frimpong's directive for the parties seek guidance on phasing and discovery limitations from the Magistrate Judge. Dkt. 88 at 2:15–17. AV seeks this here. Counsel has prioritized non-party discovery and refused to discuss issues raised by AV: computation of damages; overbroad subpoenas; phasing and limitations; boilerplate responses to requests for admission. No party discovery is yet taken. See Vasan Decl. ¶¶ 7-8, Ex. A, B.

Checkmate *chose* to abandon its preferred forum, to dodge a potential adverse ruling, and bootstrap discovery in *AV's* chosen forum, prior to adjudication of the plausibility of its claims. Checkmate should not benefit from such forum-shopping and tactical maneuvering.

VV declared in SDNY as the IPAA at issue was withheld, and AV assumed Checkmate's characterization was accurate. Filed in opposition to AV's motion to dismiss in SDNY (never here), the IPAA limits assignment to IP created *on VoiceBite's behalf* and is otherwise barred by the labor code. VV's testimony is and was unnecessary. Dkt. 97-1, 98 §§ II.B.4, II.C, II.I. AV's Motion cited the declaration after Checkmate judicially noticed it (Dkt. 60, 67, 69). AV's Reply is self-contained and tethered to Rule 12(b)(6) under incorporation by reference. The declaration is not cited. On a "preliminary peek", the Court may consider the Reply alone. See Dkt. 97-1 to 97-6, and 98. The Court should suspect a party withholding the contracts it sues under. Here, *AV* had to file the IPAA in C.D. Cal.—in reply, after Checkmate failed to do so in opposition.

The Court should also note the imbalance of fee shifting. Checkmate has benefited from AV's *pro se* status—saving tens of thousands of dollars it would have owed for losing on AV's Lab. Code § 925 challenge. Yet it will certainly seek fees if it prevails on a discovery motion—compensation for time that AV is not entitled to. Rule 37(a)(5)(A)(iii) authorizes denial of fee-shifting where "other circumstances make an award of expenses unjust." The Court may exercise its discretion to ensure a fair playing field and limit any benefit from this technical asymmetry.

Checkmate has brought AV's discovery to a standstill—refusing to meet on issues he has raised (including phasing, and the overbroad subpoenas at issue), serving boilerplate objections to requests for admissions contra Judge Sagar's civil procedures. AV has requested an informal discovery conference as a final attempt at resolution. Checkmate is yet to respond. Ex. A-5.

## C. Checkmate's Coercive Tactics Poison This Litigation

From the start of this dispute, Checkmate's conduct sounded in bad faith. It responded to AV's settlement outreach with threats of "criminal liability" and disgrace, demanded "immediate reimbursement" for its merger costs while withholding earned pay in violation of state law. This conduct, paired with "open to resolution *if*" language, was compromise dialog, if aggressive and

potentially extortionate. AV attempted in good faith to reach a resolution; providing answers and explanations; and requesting his signed contracts to evaluate—which it never provided.

It then turned AV's responses into its CCs. Dkt. 98 § II.H. A competent attorney knows compromise dialog is inadmissible as to merits elements, but Checkmate was not deterred. While not a pleading, this motion was thus engineered—and should be denied for that reason alone. AV does not doubt counsel's competence—but this is a reason to suspect bad faith. VV, familiar with this case—is reasonably wary of the same. Checkmate's meet and confer efforts tell a story of incivility and intimidation. Such conduct makes its demand for an in-person deposition, for a 70-year-old with health concerns, unreasonable, inequitable and troubling.

### D.  Checkmate Seeks to Hold a Non-Party in Contempt for a Party's Actions

Contempt is an extraordinary measure. Checkmate's demand to hold a retired non-party, who has never been subpoenaed, in contempt—is disproportionate and not a good-faith effort to secure discovery. It is an attempt to inflict financial and emotional pressure on AV through his family. This demand is justified primarily on the basis of AV's purported interference and coordination: AV's *ex parte* filing and shared desire to defer until 12(b)(6) resolution.

 While AV made technical errors filing the *ex parte*, it is not inconceivable that a *pro se* party, in his first litigation, would make such mistakes in good faith when his *father* and his good friend were served on the same day—without prior party notice required by Rule 45(a)(4). Put simply: AV panicked at an ambush—and failed to assert his own privacy rights and privilege for standing to challenge the subpoena. This does not *waive* AV's rights—he asserts them here.

If the CCs are dismissed, VV's subpoena is moot. Deferring avoids unnecessary burden and is efficient. For non-parties who timely object, production is halted until Court order, as he noted. VV's request for costs is reasonable, as is a remote deposition under Rule 30(b)(4). More worryingly, Checkmate has burdened VV with a 6,000-word motion and little time to secure counsel. AV has called several attorneys for VV, and none can help in time at a suitable price. Its zeal to prevent AV from aiding proves an intent to win outside the merits. See Exhibit A-4.

### E.  Pre-Plausibility, Broad Discovery on AV's Father is Manifestly Unjust

9

Did AV defraud by signing the IP papers or did Checkmate fraudulently induce them for this very purpose? Dkt. 10 ¶¶ 15–19, 50–52, 57, 112-127. With dueling fraud theories, courts must ensure the fraudster does not tactically benefit from its actions. Staying non-party discovery until plausibility prejudices no party, regardless of theory. Conversely, if AV's theory is true, <u>the CCs are part of the fraud</u>, and proceeding now risks a manifestly unjust burden on his family.

## V.    REQUEST FOR PROTECTIVE RELIEF AND PHASED DISCOVERY

Binding precedent, governing law, the facts, the rules and the subpoena support denying this motion: (1) the Court found the subpoena overbroad; (2) non-party burden must be limited; (3) a pending 12(b)(6) motion might dispose of the CCs; (4) party discovery is not yet taken, and Checkmate has failed to compute damages and produce key documents; (5) AV's own privacy and privilege is also at issue; (6) the request for contempt is meant to pressure its opponent; and (7) the coercive tactics it has used from the outset weigh against any equitable relief.

<u>Checkmate's failure to disclose damage computations is dispositive</u>. The breadth of its subpoena and request for contempt lines with a party demonstrating actual losses. Here, it seeks declaratory relief from "further compensation" owed to AV, who has sued for unpaid wages. Mr. Nessler declared no founder was paid their retention bonus. This was "acquihire" not an IP sale. Checkmate bought a team, refused to pay promised bonuses and seeks contempt for a non-party witness while refusing to cover costs for the fishing expedition it proposes. <u>This is unpersuasive</u>.

Finally, <u>Checkmate opposed 20 days late without leave</u>, and the Court suggested it may take the motion under submission. See Dkt. 89, 91, 92. Its refusal to confer on phasing, damage disclosures, its boilerplate responses and premature prioritization of subpoenas to friends and family have brought AV's discovery to a standstill. On this record, Checkmate has not met its burden to justify broad non-party discovery. Even if the Court finds VV a relevant witness at this time—it should not—there is no prejudice to defer compliance and protect AV from a subpoena that threatens undue "annoyance, embarrassment, oppression" ***to him*** and *his family*.

Accordingly, AV respectfully requests Judge Sagar to weigh phasing of and limitations on discovery as per the Court's scheduling order, deny the motion and grant such other and further relief as set forth in the [Proposed] Order filed herewith.

1

2                                                          Respectfully submitted,

3    Dated: **October 31, 2025**

4        In: **Cerritos, California**                      /s/ **Arjun Vasan**

5                                                          Arjun Vasan,

6                                                          Plaintiff *In Pro Per*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6

Plaintiff Arjun Vasan certifies that this brief contains 4,258 words, which complies with the 7,000-word limit of L.R. 11- 6.1 and the Court's Civil Standing Order dated Aug. 27, 2025.

Dated: **October 31, 2025**

In: **Cerritos, California**

**Respectfully submitted**,

/s/ **Arjun Vasan**

**Arjun Vasan**,

Plaintiff *In Pro Per*

## DECLARATION OF ROBERT NESSLER

12

## DECLARATION OF ROBERT NESSLER

I, Robert Nessler, declare:

1. I am the former CEO of VoiceBite Corporation, and its cofounder with Arjun Vasan and Christopher Lam. I submit this declaration to clarify Vasan Varadarajan's relation to VoiceBite. I am over 18 years of age, have personal knowledge of the facts asserted herein, and if called to testify, could and would do so competently.

2. Mr. Varadarajan had no role in VoiceBite, was never paid by and held no equity in the company. He did not participate in our meetings, operations or product development.

3. At most, Mr. Varadarajan, known to the team from prior work, was an informal advisor.

4. Mr. Varadarajan observed parts of the VoiceBite-Checkmate negotiations, as Mr. Lam stayed with Arjun Vasan's family for a month leading up to closing, and Mr. Lam and Arjun Vasan attended the meetings together from Mr. Varadarajan's Cerritos residence.

5. Several individuals, including the VoiceBite founders, Checkmate executives, and attorneys from both sides, have participatory knowledge of the negotiations and were operationally involved, unlike Mr. Varadarajan.

6. To my knowledge, none of these individuals have been deposed.

7. *I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed on: October 23, 2025

*Robert Nessler*
_____

In Cupertino, California

**Robert Nessler**, Former VoiceBite CEO

11

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND MOTION FOR PROTECTIVE ORDER

Doc ID: 471548a4f9e01b37207495269bcf175fcfdd1b08

 **Dropbox** Sign

Audit trail

| | |
|---|---|
| **Title** | Declaration to oppose checkmate's motion to compel |
| **File name** | nessler-declaration-motion-to-compel.pdf |
| **Document ID** | 471548a4f9e01b37207495269bcf175fcfdd1b08 |
| **Audit trail date format** | MM / DD / YYYY |
| **Status** | ● Signed |

## Document History

| | | |
|---|---|---|
| **SENT** | 10 / 24 / 2025<br>00:03:45 UTC | Sent for signature to Robert Nessler (robert.nessler@gmail.com) from arjun.vasan@gmail.com<br>IP: 47.145.108.124 |
| **VIEWED** | 10 / 24 / 2025<br>00:19:04 UTC | Viewed by Robert Nessler (robert.nessler@gmail.com)<br>IP: 69.110.136.247 |
| **SIGNED** | 10 / 24 / 2025<br>00:22:57 UTC | Signed by Robert Nessler (robert.nessler@gmail.com)<br>IP: 69.110.136.247 |
| **COMPLETED** | 10 / 24 / 2025<br>00:22:57 UTC | The document has been completed. |

Powered by **Dropbox** Sign

I, Arjun Vasan, declare:

1. I am the Plaintiff in this action. I submit this declaration in support of my Statement in Response to Checkmate's Motion to Compel. I have personal knowledge of the facts herein, and if called to testify, could and would do so competently.

2. On August 7th, 2025, I met with counsel for Checkmate for our Rule 26(f) conference. On August 14th, while working with counsel to finalize the 26(f) report, I was informed by my father that he had been served by a process server outside our family residence. My mother indicated that there had been several prior attempts that week. That night I sent an L.R. 37 letter regarding the matter at 9:22 P.M., counsel did not respond.

3. On August 15th, 2025, at around 9:00 A.M., Robert Nessler called and informed me that he had just been served, with many prior attempts over the week.

4. Both message streams (with Mr. Nessler and my father) contain years of personal or privileged information—including health, financial, attorney-client matters. Mr. Nessler and I founded three companies together and sold two. One of these was cofounded with my father as well. Therefore, privileged discussions with counsel and accountants are included in the requests. In addition, confidential information of 3rd parties—our former employers, may be implicated. Finally, Mr. Nessler and I have both experienced medical issues in recent years—as close friends, these issues are detailed in correspondence from the relevant period. Likewise, my father and I discussed private health and finance matters throughout the time period of the requests. The messages between us also often include my mother and brother. Their privacy is also implicated. "All Communications" with me from 2023 onwards would sweep in all the aforementioned.

5. I was not provided notice of either subpoena until after service on the witnesses. After I was informed by the witnesses, I emailed counsel asking why I did not get notice. I sent an L.R. 37 letter immediately to discuss holding the subpoenas in abeyance. Counsel refused to discuss them with me. Exhibit G is a true and correct copy of this email thread, as well as the letter sent the night before—noting that party discovery had not begun.

15

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER

6. When I filed the Aug. 15 *ex parte*, I did not assert personal privacy and privilege, as I did not understand that requirement. I believed in good faith that my Aug. 14 and Aug. 15 L.R. 37-1 letters, and pre-filing voicemail, satisfied the meet and confer requirement.

7. True and correct copies of email threads where Checkmate refuses to meet on discovery matters, I have raised, are attached as Exhibit A. These matters include the subpoenas, phasing, damages computations and boilerplate objections to requests for admissions.

8. Exhibit B is a true and correct copy of a recent email thread, where Checkmate suddenly demands in-person meetings at counsel's office. All prior meet and confers were remote. I requested parity, but Checkmate has not followed up since this request.

9. Exhibit C counts mentions of relevant witnesses in my operative complaint. This is not altered from my filing in opposition to Checkmate's motion to dismiss. Dkt. 18, 27.

10. My father declared in the SDNY action, not here. Checkmate withheld the IP contracts relevant to his statements—true and correct copies of which are attached as Exhibit D.

11. Exhibit E is a true and correct copy of the Stripe/Orrick founder packet with the IPAA template, that I downloaded in the ordinary course of business and have maintained. The template includes reference to a stock purchase that is not present in the executed version.

12. Exhibit F-1 is a true and correct copy of the initial disclosures served on me by Checkmate. Exhibit F-2 is a true and correct copy of my own initial disclosures.

13. My father played me multiple voicemails from Checkmate counsel attempting to meet and confer by phone. The attorneys began the call with a "recorded line" notice.

*I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.*

Executed on: October 31, 2025

In Cerritos, California

*/s/ Arjun Vasan*

**Arjun Vasan**,
Plaintiff In Pro Per

16

RESPONSE IN OPPOSITION TO MOTION TO COMPEL AND REQUEST FOR PROTECTIVE ORDER