Ryan Q. Keech (SBN 280306)
Ryan.Keech@klgates.com
Stacey Chiu (SBN 321345)
Stacey.Chiu@klgates.com
Rebecca Makitalo (SBN 330258)
Rebecca.Makitalo@klgates.com
Jacob R. Winningham (SBN 357987)
Jacob.Winningham@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Defendant and Counter-Claimant*
*CHECKMATE.COM INC.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>            Plaintiff,<br><br>    v.<br><br>CHECKMATE.COM, INC.,<br><br>            Defendant.<br>―――――――――――――――<br>CHECKMATE.COM, INC.,<br><br>            Counterclaim-Plaintiff,<br><br>    v.<br><br>ARJUN VASAN,<br><br>            Counterclaim-Defendant. | Case No. 2:25-cv-00765-MEMF-AS<br><br>Hon. Alka Sagar<br><br>DISCOVERY MATTER<br><br>**CHECKMATE.COM INC.'S OPPOSITION TO VASAN VARADARAJAN'S MOTION FOR PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENA**<br><br>*[Filed concurrently herewith Declaration of Rebecca I. Makitalo]*<br><br>Hearing Date: November 20, 2025<br>Time: 11 a.m.<br>Courtroom: 540<br><br>Complaint Filed: January 28, 2025<br>Amended Complaint Filed: February 21, 2025 |

1603769942.5

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS ................................................................................. 2

      A.    Checkmate Serves Mr. Varadarajan With The Subpoena .................. 2

      B.    Plaintiff Acknowledges And Immediately Objects To The
            Subpoena Served On Mr. Varadarajan ............................................... 3

      C.    Checkmate Engages In Continuous Good Faith Efforts To Meet
            And Confer And Secure Mr. Varadarajan's Compliance With
            The Subpoena ...................................................................................... 4

      D.    Checkmate Moves To Compel Compliance With Subpoena To
            Vasan Varadarajan And For Contempt ............................................... 5

III.  ARGUMENT ...................................................................................................... 6

      A.    Checkmate's Subpoena Seeks Tailored Discovery From Mr.
            Varadarajan ......................................................................................... 6

      B.    Mr. Varadarajan's Motion Seeks Untimely Relief After The
            Date Of Compliance Indicated By Checkmate's Subpoena ............... 9

      C.    Mr. Varadarajan Fails To Show Good Cause For A Protective
            Order .................................................................................................. 12

      D.    There Is No Basis To Quash Or Modify The Subpoena ................... 13

      E.    Cost-Shifting Is Not Justified Under Rule 45 .................................. 16

IV.   CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
　300 F.R.D. 406 (C.D. Cal. 2014) ................................................................. 6

*Anderson v. Abercrombie & Fitch Stores, Inc.*,
　No. 06CV991-WQH(BLM), 2007 WL 1994059 (S.D. Cal. July 2,
　2007) ......................................................................................................... 11

*Berry v. Baca*,
　No. CV01-02069 DDP (SHX), 2002 WL 1777412 (C.D. Cal. July
　29, 2002) ................................................................................................... 11

*BNSF Ry. Co. v. Alere, Inc.*,
　No. 18-CV-291-BEN-WVG, 2018 WL 2267144 (S.D. Cal. May 17,
　2018) ......................................................................................................... 10

*Brown v. City of Needles*,
　No. 5:23-CV-01118-AB-SSC, 2024 WL 5185327 (C.D. Cal. Nov.
　4, 2024) ..................................................................................................... 10

*Cadent Ltd. v. 3M Unitek Corp.*,
　232 F.R.D. 625 (C.D. Cal. 2005) .............................................................. 13

*Canton v. U.S. Foods, Inc.*,
　No. 22CV04226TLTLJC, 2023 WL 4053798 (N.D. Cal. June 16,
　2023) ......................................................................................................... 10

*Checkmate.com, Inc. v. Vasan*,
　Dkt. 36, Case No. 1:25-CV-03181(JMF) (S.D.N.Y. Apr. 12, 2025) ........... 2, 7, 9

*Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp.*,
　307 F.3d 1206 (9th Cir. 2002) .................................................................. 12

*Freed v. Home Depot U.S.A., Inc.*,
　No. 18CV359-BAS (LL), 2019 WL 183833 (S.D. Cal. Jan. 14,
　2019) ......................................................................................................... 10

*Fujikura Ltd. v. Finisar Corp.*,
    No. 15MC80110HRLJSC, 2015 WL 5782351 (N.D. Cal. Oct. 5,
    2015) ............................................................................................................... 15

*Goodman v. United States*,
    369 F.2d 166 (9th Cir. 1966) ......................................................................... 13

*Green v. Baca*,
    226 F.R.D. 624 (C.D. Cal. 2005) ................................................................... 14

*Gulf Oil Co. v. Bernard*,
    452 U.S. 89, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) ................................... 12

*HI.Q, Inc. v. ZeetoGroup, LLC*,
    No.: MC 22cv1440-LL-MDD, 2022 WL 17345784 (S.D. Cal. Nov.
    29, 2022) ................................................................................................... 10, 11

*Hickman v. Taylor*,
    329 U.S. 495, 67 S. Ct. 385, 91 L. Ed. 451 (1947) .................................. 8, 16

*Lee v. Glob. Tel*Link Corp.*,
    No. CV152495ODWPLAX, 2017 WL 10575166 (C.D. Cal. Sept.
    6, 2017) ........................................................................................................... 14

*Legal Voice v. Stormans Inc.*,
    738 F.3d 1178 (9th Cir. 2013) ....................................................................... 16

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005) ............................................................ 13, 14

*Moore v. Chase, Inc.*,
    No. 1:14-CV-01178-SKO, 2015 WL 4393031 (E.D. Cal. July 17,
    2015) ............................................................................................................... 11

*Mount Hope Church v. Bash Back!*,
    705 F.3d 418 (9th Cir. 2012) ......................................................................... 14

*Oppenheimer Fund, Inc. v. Sanders*,
    437 U.S. 340, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) .................................. 6

*In re Request for Judicial Ass. From Embassy of Arab Rep. of Egypt*,
    2021 WL 6112131 (E.D. Mich. Dec. 27, 2021) ............................................. 15

1603769942.5

CHECKMATE.COM INC.'S OPPOSITION TO VASAN VARADARAJAN'S MOTION FOR PROTECTIVE
ORDER AND TO QUASH OR MODIFY SUBPOENA

1603059467.2

*S.L. v. Upland Unified Sch. Dist.*,
    No. EDCV182122JGBKKX, 2019 WL 8163805 (C.D. Cal. Oct. 4,
    2019) ......................................................................................................... 10

*Seminara v. City of Long Beach*,
    68 F.3d 481 (9th Cir. 1995) ....................................................................... 11

*Solis v. Forever 21, Inc.*,
    No. CV 12-09188 MMM MRWX, 2013 WL 1319769 (C.D. Cal.
    Mar. 7, 2013) ............................................................................................ 12

*Surfvivor Media, Inc. v. Survivor Prods.*,
    406 F.3d 625 (9th Cir. 2005) ....................................................................... 6

*Thoma v. VXN Grp., LLC.*,
    No. CV-23-04901-WLH, 2024 WL 4406947 (C.D. Cal. July 9,
    2024) ........................................................................................................... 6

*United States v. McGraw-Hill Companies, Inc.*,
    302 F.R.D. 532 (C.D. Cal. 2014) ............................................................. 16

*Vondersaar v. Starbucks*,
    2013 WL 1915746 (N.D. Cal. May 8, 2013) ............................................ 15

*Younger Mfg. Co. v. Kaenon, Inc.*,
    247 F.R.D. 586 (C.D. Cal. 2007) ....................................................... 12, 13

**Other Authorities**

Fed. R. Civ. P. 26 ............................................................................................ 6, 11

Fed. R. Civ. P. 26(b)(1) ......................................................................................... 6

Fed. R. Civ. P. 26(c) ..................................................................................... 10, 12

Fed. R. Civ. P. 30(a) .............................................................................................. 6

Fed. R. Civ. P. 34 .................................................................................................. 6

Fed. R. Civ. P. 45 ........................................................................... 1, 6, 10, 16

Fed. R. Civ. P. 45(a) .............................................................................................. 6

Fed. R. Civ. P. 45(c)(3) ....................................................................................... 13

Fed. R. Civ. P. 45(c)(3)(A) ................................................................................................ 10

Fed. R. Civ. P. 45(d)(2)(B)(ii) ........................................................................................... 16

Fed. R. Civ. P. 45(d)(3)(A) ............................................................................................... 10

Fed. R. Civ. P. 45(d)(3)(A)(iii) ......................................................................................... 10

1603769942.5

CHECKMATE.COM INC.'S OPPOSITION TO VASAN VARADARAJAN'S MOTION FOR PROTECTIVE
ORDER AND TO QUASH OR MODIFY SUBPOENA

1603059467.2

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

There is no reasonable dispute that Checkmate.com Inc. ("Checkmate")'s subpoena, validly issued and served on Vasan Varadarajan *months* ago, seeks to obtain documents and testimony directly relevant to both Plaintiff Arjun Vasan ("Plaintiff")'s and Checkmate's claims and defenses in this action.  Mr. Varadarajan himself has inserted himself as a witness in sworn written testimony relied upon by Plaintiff, in which he not only admits to possessing relevant information, but urges the Court to accept his version of events.  That is far more than is sufficient to compel Mr. Varadarajan's production and testimony under Rule 45.

Nevertheless, Mr. Varadarajan has refused to comply with Checkmate's subpoena and, in his latest attempt to skirt his obligations, belatedly seeks a court order to excuse his non-compliance *nearly a month after failing to appear at his scheduled deposition*. His fundamentally flawed and untimely motion does not absolve him from the consequences of his blatant refusal to comply with the subpoena – equivalent, as the Court is aware, to a court order – to appear for deposition on September 22, 2025. If he sought to be excused from compliance, he was required to make his motion *before* the compliance date passed. Instead, coordinating strategy with Plaintiff, he obfuscated and delayed until *after* Checkmate had already moved to compel and for contempt. (Dkt 101).

As described in the papers already before the Court, in the month leading up to his deposition, Checkmate's counsel made multiple attempts to accommodate Mr. Varadarajan's  legitimate scheduling issues and address the scope of production to alleviate any undue burden. Despite Checkmate's repeated efforts, Mr. Varadarajan explicitly refused to comply without an additional court order and failed to appear for his deposition.

Not only is his failure to appear at his deposition a defiance of a court order and his motion to "excuse" it untimely, but it is also baseless and unsupported by

1603769942.5

CHECKMATE.COM INC.'S OPPOSITION TO VASAN VARADARAJAN'S MOTION FOR PROTECTIVE
ORDER AND TO QUASH OR MODIFY SUBPOENA

1603059467.2

evidence. In support of his belated motion, Mr. Varadarajan vaguely cites "health and logistical constraints" (Dkt. 106 at 3:5, 5:6) without providing any specific facts. He fails to supply this Court with the requisite "good cause" for a protective order to issue and similarly, fails to identify an evidentiary basis for the nature and extent of the "undue burden" he claims to support his motion to quash or modify the subpoena. Mr. Varadarajan's Motion for Protective Order and to Quash or Modify Subpoena should be denied.

## II.    STATEMENT OF FACTS

### A. Checkmate Serves Mr. Varadarajan With The Subpoena

On August 14, 2025, Mr. Varadarajan was personally served with a subpoena at his home residence in Cerritos, California. *See* Declaration of Rebecca I. Makitalo ("Makitalo Decl.") at ¶¶ 2-3, Ex. A (the "Subpoena"). The Subpoena commanded him to produce documents and appear for deposition at the offices of K&L Gates LLP, located in Los Angeles, California, well within 100 miles of his residence. *Id*. The Subpoena clearly provided for Mr. Varadarajan's expected compliance date of September 22, 2025. *Id*.

The Subpoena served on Mr. Varadarajan seeks discovery directly relevant to the claims and defenses of both Plaintiff and Checkmate in this action. *See generally* Dkts. 10 ("Amended Complaint"), 71 ("Counterclaims"). Specifically, the documents sought in the Subpoena included, among other things, documents directly related to the VoiceBite Transaction, the authorship and ownership of the VoiceBite code, Mr. Varadarajan's professional relationship with Plaintiff, including his role at Plaintiff's prior companies, as well as documents and communications relating to the above-captioned action and the parties thereto. Makitalo Decl. at ¶ 3, Ex. A.

The testimony and documents sought in the Subpoena are also relevant to Mr. Varadarajan's sworn declaration filed in the Southern District of New York in support of Plaintiff's Motion to Dismiss, Transfer, or Stay. *See Checkmate.com, Inc. v. Vasan*, Dkt. 36, Case No. 1:25-CV-03181(JMF) (S.D.N.Y. Apr. 12, 2025).

1603769942.5

1603059467.2

Specifically, Mr. Varadarajan explicitly states that he is in fact the "coauthor, with Arjun, of the functional code at question." *Id*. at ¶ 6. Mr. Varadarajan also acknowledges his role as the "longtime technical advisor and collaborator of Arjun Vasan" and further declares to "have worked professionally with every member of the VoiceBite founding team at past companies, including CyborgOps and Presto." *Id*. at ¶¶ 4-5. He also asserts that he witnessed the co-founders "negotiat[ing] and discuss[ing] every issue thorough and transparently" while the "VoiceBite team w[as] finalizing the merger with Checkmate." *Id*. at ¶¶ 9-10.

The deposition testimony and documents requested in Checkmate's Subpoena are also aligned with the sworn testimony Mr. Varadarajan has already provided on behalf of Plaintiff. This testimony, which Plaintiff consistently relies upon to support his own claims and defenses against Checkmate's Counterclaims (*see* Dkt. 81), is directly relevant to the fraudulent sale of the VoiceBite code to Checkmate, a central issue in Checkmate's Counterclaims. Furthermore, Checkmate's Subpoena is not only pertinent to its Counterclaims, but Plaintiff has also made Mr. Varadarajan's knowledge of VoiceBite's proprietary code sold to Checkmate a central issue in this case through the allegations contained in his own Amended Complaint. (*See* Dkt. 10 at ¶¶ 50, 99, 102, 108, 112, 113, and 124).

### B. Plaintiff Acknowledges And Immediately Objects To The Subpoena Served On Mr. Varadarajan

Immediately after Mr. Varadarajan was served at his home residence, where Plaintiff also resides, Plaintiff fired off several angry emails to Checkmate's counsel, asserting that Mr. Varadarajan "***has already submitted a declaration; a broad deposition now is cumulative and harassing***" and otherwise attempting to interfere with Checkmate's entitlement to obtain discovery from Mr. Varadarajan in this action. Makitalo Decl. at ¶¶ 4-5, Ex. B. He further demanded Checkmate "***[w]ithdraw or hold in abeyance the subpoena to Vasan Varadarajan***" (*id*.) until the Court sets phasing of discovery, as mentioned by Plaintiff in the Joint Report (Dkt. 78 at 11), a

1603769942.5

-3-

1603059467.2

request which Honorable Frimpong denied. (Dkt. 88). On August 15, 2025 – less than 24 hours after Mr. Varadarajan was served with the Subpoena – Plaintiff was provided with notice of the Subpoena. Makitalo Decl. at ¶¶ 6-7, Ex. C (the "Notice").

Shortly after his slew of demanding emails, in a further attempt to circumvent the discovery process and obstruct Checkmate's right to gather relevant evidence to support its claims and defenses, Plaintiff – clearly lacking both standing and a basis to seek emergency relief – brought an *Ex Parte* Application for a Temporary Protective Order to (1) Stay Nonparty Subpoenas and (2) Quash Non-Compliant Subpoenas to Robert Nessler and Vasan Varadarajan ("*Ex Parte* Motion") before this Court. (Dkt 80). Recognizing Plaintiff's failure to demonstrate standing to challenge Mr. Varadarajan's Subpoena or present actual evidence that the documents sought in the Subpoena implicated Plaintiff's privilege, Magistrate Judge Jean P. Rosenbluth denied Plaintiff's *Ex Parte* Motion. (Dkt. 85).

### C. Checkmate Engages In Continuous Good Faith Efforts To Meet And Confer And Secure Mr. Varadarajan's Compliance With The Subpoena

On August 28, 2025, clearly coordinating his strategy with Plaintiff, somebody purporting to be Mr. Varadarajan provided objections to the Subpoena via email correspondence to Checkmate's counsel. Makitalo Decl. at ¶¶ 8-9, Ex. D (the "Objections"). Among Mr. Varadarajan's Objections, included demands that his deposition "proceed remotely," "be limited to no more than 90-120 minutes on the record," and "be rescheduled to a mutually agreeable date" and further indicated he "*would not appear for any deposition absent a court order*." *Id*. Mr. Varadarajan also provided written objections to Checkmate's document requests and claimed that his "*[w]ritten objections suspend any duty to produce unless and until the Court orders otherwise*." *Id*.

In the month leading up to the compliance date, Checkmate's counsel attempted to accommodate Mr. Varadarajan's legitimate scheduling issues and

discuss the scope of production to reduce any undue burden. *Id.* at ¶¶ 10-34, Exs. E-P. Despite Checkmate's repeated efforts, Mr. Varadarajan explicitly refused to comply with the Subpoena absent an additional court order. *Id.* at ¶¶ 8-9, Ex. D.

On September 22, 2025, Mr. Varadarajan failed to appear for his deposition scheduled at 11 a.m. at K&L Gates LLP's offices in Los Angeles and produce the documents as requested in the Subpoena. *Id.* at ¶ 28. Thereafter, Checkmate continued its efforts to meet and confer with Mr. Vasan in good faith to secure his compliance with the Subpoena and provided alternative dates for compliance, which were unsuccessful. *Id.* at ¶¶ 29-34, Exs. N-P. Recognizing that it had reached an impasse with Mr. Varadarajan and could no longer excuse his non-compliance with the Subpoena, Checkmate indicated to Mr. Varadarajan its intention to seek the Court's intervention and file a motion to compel compliance with the Subpoena and for contempt. *Id.* ¶¶ 33-34, Ex. P.

## D. Checkmate Moves To Compel Compliance With Subpoena To Vasan Varadarajan And For Contempt

On October 14, 2025, Checkmate filed its Motion to Compel Compliance with Subpoena to Vasan Varadarajan and for Contempt (Dkt. 101 ("Motion to Compel Compliance with Subpoena")) before Magistrate Judge Jean P. Rosenbluth and served Mr. Varadarajan with its Motion to Compel Compliance with Subpoena on October 15, 2025 via email correspondence (the sole method by which Mr. Varadarajan had served his Objections to the Subpoena) and also by U.S. mail. (Dkt. 102). Thereafter, on October 20, 2025, the above-captioned action was reassigned to Magistrate Judge Alka Sagar (*see* Dkt. 103) and the hearing date for Checkmate's Motion to Compel Compliance with Subpoena was continued to November 20, 2025. (Dkt. 105). On October 20, 2025 – only after Checkmate first filed its Motion to Compel Compliance with Subpoena – did Mr. Varadarajan file his Motion for Protective Order and to Quash or Modify Subpoena (Dkt. 106 ("Motion for Protective Order")). On October 27, 2025, the Court advanced Mr. Varadarajan's

hearing date on his Motion for Protective Order to November 20, 2025, the same date as Checkmate's hearing on its Motion to Compel Compliance with Subpoena.

## III.   ARGUMENT

### A. Checkmate's Subpoena Seeks Tailored Discovery From Mr. Varadarajan

As an initial matter, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (citation omitted) (The relevance standard is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case."). Further, a party may depose "any person" by oral questions by serving a subpoena on the nonparty, commanding a nonparty "to attend and testify." Fed. R. Civ. P. 30(a), 45(a). "The scope of discovery of third parties under Rule 45 is the same as that applicable to Rule 34 and the other discovery rules." *Thoma v. VXN Grp., LLC*., No. CV-23-04901-WLH (AGRX), 2024 WL 4406947, at *1 (C.D. Cal. July 9, 2024) (citation omitted); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc*., 300 F.R.D. 406, 409 (C.D. Cal. 2014) ("The same broad scope of discovery set out in Rule 26 applies to the discovery that may be sought pursuant to Rule 45."). "District courts have broad discretion in determining relevancy for discovery purposes." *Surfvivor Media, Inc. v. Survivor Prods*., 406 F.3d 625, 635 (9th Cir. 2005).

The Subpoena served on Mr. Varadarajan seeks discovery that is undeniably relevant to the core issues of this case. As outlined in Checkmate's Counterclaims (Dkt. 71) and as ***Mr. Varadarajan has testified in writing and under oath***, Mr. Varadarajan has sworn to authorship and ownership over the "proprietary" code that VoiceBite sold to Checkmate. The document requests in the Subpoena are directly related to these Counterclaims, encompassing documents that relate directly to, among other things, the VoiceBite Transaction, the authorship and ownership of the

1603769942.5

1603059467.2

VoiceBite code, and Mr. Varadarajan's professional relationship with Plaintiff (including his role at Plaintiff's prior companies), as well as documents and communications relating to the above-captioned action and the parties thereto. Makitalo Decl. at ¶ 3, Ex. A.

Mr. Varadarajan's assertion that his "only asserted relevance is that the counterclaims name him in connection with alleged claims to 'VoiceBite proprietary software,' and that a single 2018 file header (e.g., the counterclaim-exhibited audio.py) lists him as a co-author" (Dkt. 106 at 5:24-26) flies in the face of his own testimony. His own declaration, which Plaintiff repeatedly relies upon in this action (*see* Dkt. 81 "Second Motion to Dismiss"), explicitly states that he is indeed the "***co-author, with Arjun, of the functional code at question***." *Checkmate.com, Inc. v. Vasan*, Dkt. 36 at ¶ 6, Case No. 1:25-CV-03181(JMF) (S.D.N.Y. Apr. 12, 2025). Furthermore, Mr. Varadarajan openly acknowledges his role as the "***longtime technical advisor and collaborator of Arjun Vasan***" and further declares to "***have worked professionally with every member of the VoiceBite founding team at past companies, including CyborgOps and Presto***." *Id*. at ¶¶ 4-5. He also asserts that he witnessed the co-founders "***negotiat[ing] and discuss[ing] every issue thorough and transparently***" while the "***VoiceBite team w[as] finalizing the merger with Checkmate***." *Id*. at ¶¶ 9-10.

Mr. Varadarajan's attempt to avoid his discovery obligations and characterize Plaintiff's reliance upon his declaration in the action pending before this Court as "not relevant" is absurd. (Dkt. 106 at 6:4). Again echoing Plaintiff, Mr. Varadarajan himself admits that Checkmate's Counterclaims before this Court are the same claims that Checkmate brought against Plaintiff before the court in New York (*see id.* at 6:4-6 ("Checkmate voluntarily dismissed the SDNY case after full briefing on a motion to dismiss and then re-pled the same theories as counterclaims in this Court.")) and the same claims for which Mr. Varadarajan voluntarily submitted sworn testimony in support of Plaintiff's Motion to Dismiss, Transfer, or Stay filed in the New York

action. Plaintiff continues to rely on Mr. Varadarajan's ***very same declaration*** in this action in support of his Second Motion to Dismiss Checkmate's Counterclaims. (Dkt. 81). The law does not permit Mr. Varadarajan to unilaterally serve as a witness solely for Plaintiff's advantage by supplying testimony while evading his obligations under the Subpoena and Checkmate's legal right to obtain discovery on the veracity of Mr. Varadarajan's sworn statements. *See Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.").

Moreover, Checkmate's Subpoena is not only relevant to Checkmate's Counterclaims, but Plaintiff has also made Mr. Varadarajan's knowledge a central issue in this case. Specifically, Plaintiff asserts in his Amended Complaint that Checkmate served a "Notice of Claim" which "den[ied] him $122,000 in severance" and "allege[d] Fraud and IP Misue to justify withholding other owed payments, including $450,000 in earned bonuses, without specifying actual damages." (Dkt. 10 at ¶ 50). Plaintiff also repeatedly references the "IP" and "technology" VoiceBite sold to Checkmate, which includes the VoiceBite code authored and owned by Mr. Varadarajan, in his claims, including for Unjust Enrichment *(see id.* at ¶ 99 ("Defendant received substantial benefits from Plaintiff's efforts, and those of the team he had assembled, including but not limited to: . . . Proprietary technology developed by Plaintiff and team, which accelerated time to market for the Voice AI product."); *Id.* at ¶ 102 ("Regardless of contract enforceability, it is unjust for Defendant to benefit from Plaintiff's labor, IP, and relationships without fair compensation.")) and Civil Conspiracy: Fraudulent Inducement, Concealment and Extortion (*id.* at ¶ 113 ("Plaintiff and his team performing substantial integration work and building IP that would accrue exclusively to Defendant upon merger close."); *Id.* at ¶ 124 ("[T]he entire merger was fraudulent—engineered to extract the founders' technology, goodwill, and expertise without delivering the agreed compensation.")).

Plaintiff also makes numerous representations throughout his Amended Complaint characterizing VoiceBite's negotiations with Checkmate prior to entering into the Merger Agreement and related documents – negotiations which Mr. Varadarajan claims to have been a witness to. *See Checkmate.com, Inc. v. Vasan*, Dkt. 36 at ¶¶ 9-10, Case No. 1:25-CV-03181(JMF) (S.D.N.Y. Apr. 12, 2025) ("From observing, it was clear that Arjun, Christopher and Robert Nessler were equal partners in the negotiation and discussed every issue thoroughly and transparently."). These references include accusations to support Plaintiff's claims for Promissory Fraud and Estoppel (Dkt. 10 at ¶ 108 ("The founders went into merger negotiations with greatly reduced leverage.") and Civil Conspiracy: Fraudulent Inducement, Concealment and Extortion (*id.* at ¶ 112 ("[T]the founders found themselves having to repeatedly renegotiate agreed terms (both explicit and promised), reducing their leverage and placing them under significant duress while finalizing the merger"); *Id.* at ¶ 113 ("During the four months of premerger negotiations, Defendant pressured the founders by refusing their request for a consulting agreement.")), among others.

Thus, the testimony and documents commanded by Checkmate from Mr. Varadarajan are directly relevant to the claims and defenses of both Plaintiff and Checkmate and are well-within Checkmate's entitlement to discovery pursuant to the Rules.

## B. Mr. Varadarajan's Motion Seeks Untimely Relief After The Date Of Compliance Indicated By Checkmate's Subpoena

Mr. Varadarajan's Motion requesting relief from Checkmate's Subpoena commanding his appearance for deposition on September 22, 2025 should *independently* be denied as untimely. On August 14, 2025, Mr. Varadarajan was personally served with Checkmate's Subpoena to testify at a deposition and produce documents. Makitalo Decl. at ¶¶ 2-3, Ex. A. The Subpoena commanded his appearance for deposition on September 22, 2025 at the offices of K&L Gates LLP. *Id.* While Mr. Varadarajan may have served Checkmate with objections, such

objections did not excuse Mr. Varadarajan from his required compliance with a court order to appear for his deposition on September 22, 2025. This is because "[w]hile a nonparty may challenge a subpoena duces tecum via written objection, *a deposition subpoena may only be challenged by moving to quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or by moving for a protective order pursuant to Rule 26(c)*." *HI.Q, Inc. v. ZeetoGroup, LLC*, No. MC 22cv1440-LL-MDD, 2022 WL 17345784, at *5 (S.D. Cal. Nov. 29, 2022) (citing 9 James Wm. Moore, Moore's Federal Practice § 45.30 (2007) ("The written objection procedure is available only for a subpoena commanding production or inspection ...")); *BNSF Ry. Co. v. Alere, Inc*., No. 18-CV-291-BEN-WVG, 2018 WL 2267144, at *7 (S.D. Cal. May 17, 2018) ("When a nonparty wishes protection by the Court, the nonparty must seek out such protection, and the proper method to seek the Court's assistance after being served with a subpoena to testify at a deposition is to file a motion to quash or modify the subpoena.").

Rule 45(d)(3)(A) requires that a subpoena be quashed or modified on certain grounds where a *timely motion* is filed. Fed. R. Civ. P. 45(d)(3)(A). Courts have interpreted this to mean the motion must be made *before compliance with the subpoena is required*. *See Brown v. City of Needles*, No. 5:23-CV-01118-AB-SSC, 2024 WL 5185327, at *1 (C.D. Cal. Nov. 4, 2024) (citation omitted) ("[I]n Rule 45, it is reasonable to assume that the motion to quash should be brought before the noticed date of the scheduled deposition"); *S.L. v. Upland Unified Sch. Dist*., No. EDCV182122JGBKKX, 2019 WL 8163805, at *2 (C.D. Cal. Oct. 4, 2019) (citation omitted) ("Courts have generally interpreted 'timely' to mean within the time set in the subpoena for compliance."); *Canton v. U.S. Foods, Inc*., No. 22CV04226TLTLJC, 2023 WL 4053798, at *3 (N.D. Cal. June 16, 2023) ("[M]any courts in this Circuit have read Rule 45(d)(3)(A) to mean a motion is "timely" if filed before the compliance date designated in the subpoena."); *Freed v. Home Depot U.S.A., Inc*., No. 18CV359-BAS (LL), 2019 WL 183833, at *4 (S.D. Cal. Jan. 14,

2019) ("Motions to quash under Rule 45(d)(3)(A)(iii) are required to be filed in a "timely" fashion, which courts have read to mean before the compliance date designated in the subpoena.").

Similarly, "[w]hile the express language of Rule 26 does not set time limits within which a motion for a protective order must be made, there is an implicit requirement that the motion be timely or reasonable." *Berry v. Baca*, No. CV01-02069 DDP (SHX), 2002 WL 1777412, at *2 (C.D. Cal. July 29, 2002) (citation omitted). Generally, "[a] motion for protective order is timely if made ***prior to the date set for the discovery***." *Seminara v. City of Long Beach*, 68 F.3d 481 (9th Cir. 1995) (citation omitted) (emphasis added); *see also HI.Q, Inc.*, 2022 WL 17345784, at *6 (citation omitted) ("A motion to quash or modify must be made promptly, allowing it to be heard *and granted before* the scheduled deposition.") (emphasis in original); *Anderson v. Abercrombie & Fitch Stores, Inc*., No. 06CV991-WQH(BLM), 2007 WL 1994059, at *8 (S.D. Cal. July 2, 2007) ("To excuse compliance, a motion to quash must be made before the production or deposition date identified in the subpoena."); *Moore v. Chase, Inc*., No. 1:14-CV-01178-SKO, 2015 WL 4393031, at *6 (E.D. Cal. July 17, 2015) ("A party objecting to a subpoena must file a motion to quash the subpoena before the deposition date identified in the subpoena (when relevant) or the actual date of production of the requested documents, as is required by the Federal Rules.").

Mr. Varadarajan cannot and does not dispute that he failed to file a timely motion to quash the Subpoena, nor did he seek a protective order before the compliance date of September 22, 2025, requiring his appearance for deposition at K&L Gates LLP's offices in Los Angeles, California. Instead, he delayed until October 20, 2025, ***nearly a month after the deadline for compliance and more than two months after having been served***, to seek a protective order and an order quashing or modifying the Subpoena at issue. *See* Dkt. 106; Makitalo Decl. at ¶¶ 2-3, Ex. A. Mr. Varadarajan was required to seek his requested relief ***before the***

1603769942.5

-11-

1603059467.2

1  *compliance date to appear for deposition* as clearly indicated in Checkmate's

2  Subpoena.

3       No good cause exists for this delay.  Indeed, Mr. Varadarajan fails to cite any

4  authority for the proposition that his Objections alone were legally sufficient for his

5  failure to appear at his scheduled deposition or delay in seeking a court order for

6  relief from same – because there is none. His motion should be denied on this basis

7  alone.

8       **C. Mr. Varadarajan Fails To Show Good Cause For A Protective**

9           **Order**

10       Federal Rule of Civil Procedure 26(c) provides that a "court may, *for good*

11  *cause*, issue an order to protect a party or person from annoyance, embarrassment,

12  oppression, or undue burden or expense." Fed. R Civ. P. 26(c) (emphasis added).

13  "For good cause to exist, the party seeking protection bears the burden of showing

14  specific prejudice or harm will result if no protective order is granted." *Phillips ex*

15  *rel. Ests. of Byrd v. Gen. Motors Corp*., 307 F.3d 1206, 1211 (9th Cir. 2002). "Broad

16  allegations of harm, unsubstantiated by specific examples or articulated reasoning,

17  do not satisfy the Rule 26(c) test." *Younger Mfg. Co. v. Kaenon, Inc*., 247 F.R.D.

18  586, 588 (C.D. Cal. 2007) (quoting *Beckman Indus., Inc. v. International Ins. Co*.,

19  966 F.2d 470, 476 (9th Cir.1992)); *see also Solis v. Forever 21, Inc.,* No. CV 12-

20  09188 MMM MRWX, 2013 WL 1319769, at \*7 (C.D. Cal. Mar. 7, 2013) (citation

21  omitted) ("The request for a protective order must be based on a specific

22  demonstration of facts rather than speculative statements about the need for a

23  protective order and generalized claims of harm"); *Gulf Oil Co. v. Bernard*, 452 U.S.

24  89, 102 n.16, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981) (internal quotations and citation

25  and omitted) ("To establish 'good cause' for a protective order under [Federal Rule

26  of Civil Procedure] 26(c), [t]he courts have insisted on a particular and specific

27  demonstration of fact, as distinguished from stereotyped and conclusory

28  statements.").

1603769942.5

CHECKMATE.COM INC.'S OPPOSITION TO VASAN VARADARAJAN'S MOTION FOR PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENA

1603059467.2

Mr. Varadarajan has failed to meet his burden to justify the issuance of a protective order. He has "presented absolutely no evidence showing a specific and particular need for such protective order, [his] request is without merit." *Cadent Ltd. v. 3M Unitek Corp*., 232 F.R.D. 625, 629 (C.D. Cal. 2005) (denying protective order seeking to have depositions take place at deponents' places of business); *Younger Mfg. Co.,* 247 F.R.D. at 588 (denying protective order because the party seeking the protective order "has not met its burden to show plaintiff's deposition of [deponent] is for harassment or that all of the information plaintiff seeks from [deponent] is protected by the attorney-client privilege or work product doctrine."). Further, Mr. Varadarajan fails to allege that any specific prejudice or harm will result if his motion for a protective order is denied, only asserting vague and unsupported statements of health constraints and caretaking duties. (Dkt. 106 at 6:24-7:1). He claims he "should not be forced to disclose health details publicly" and asserts only generalized statements including that "in-person testimony at counsel's office is unnecessary and unduly burdensome for a non-party and his family." (*Id.* at 7:2). These vague and conclusory statements are insufficient to meet the requirement for "a specific demonstration of facts" necessary for a court to issue a protective order. As no such showing has been made, or even attempted here, the Court should deny Mr. Varadarjan's request for a protective order.

## D. There Is No Basis To Quash Or Modify The Subpoena

No basis exists to quash or modify the subpoena. "As an initial matter, the party who moves to quash a subpoena has the 'burden of persuasion' under Rule 45(c)(3)." *Moon v. SCP Pool Corp*., 232 F.R.D. 633, 637 (C.D. Cal. 2005) (citations omitted); *see also Goodman v. United States*, 369 F.2d 166, 169 (9th Cir. 1966) (citing *Sullivan v. Dickson*, 283 F.2d 725 (9th Cir.1960) ("The burden of showing that a subpoena is unreasonable and oppressive is upon the party to whom it is directed."). "The party issuing the subpoena must demonstrate[, in turn,] that the information sought is relevant and material to the allegations and claims at issue in

1603769942.5

-13-

1603059467.2

the proceedings." *Green v. Baca*, 226 F.R.D. 624, 654 (C.D. Cal. 2005) (citing *Night Hawk Ltd. v. Briarpatch Ltd*., L.P., No. 03 Civ.1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)).

While courts "are sensitive to the imposition of large discovery costs on non-parties and recognize the special need to protect them," the Ninth Circuit has declined to "read 'undue burden' differently just because a non-party was subpoenaed." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012); *Lee v. Glob. Tel*Link Corp.,* No. CV152495ODWPLAX, 2017 WL 10575166, at *3 (C.D. Cal. Sept. 6, 2017) (citation omitted) ("Undue burden in the context of third-party discovery is the same standard as used regarding discovery served on parties to the litigation."). In order "[t]o meet its burden, the objecting party **must provide specific facts that indicate the nature and extent of the burden**." *Lee*, 2017 WL 10575166, at *3 (emphasis added). "An evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party." *Moon*, 232 F.R.D. at 637 (citation and quotations omitted) (finding this evaluation "requires the court to consider: such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.").

Mr. Varadarajan has not met his burden of persuasion to support a basis to quash the Subpoena. As detailed above, Checkmate has clearly demonstrated that the information sought in the Subpoena is relevant and material to both parties' claims and defenses at issue in this action. Mr. Varadarajan has not provided any evidentiary basis to support his speculative claim that Checkmate's Subpoena imposes an "undue burden" or should otherwise be quashed.[1] His motion is filled with vague and

---

[1] Mr. Varadarajan also claims that the Subpoena should be quashed because Checkmate did not provide the required prior notice. Dkt. 106 at 3:16-18. Mr. Varadarajan explicitly acknowledges, however, that Checkmate did provide Plaintiff with notice of the Subpoena and in fact, Plaintiff learned of the Subpoena after his father had been served. *Id.* at 3:16-17. Furthermore, shortly after, Plaintiff brought

conclusory statements, such as the assertion that Checkmate's Subpoena "document categories are facially overbroad and duplicative of party discovery" (Dkt. 106 at 6:17-18) and merely alludes to the need to perform "expansive document searches" (*Id.* at 7:5-6). These statements fail to meet the requirement that he must provide specific facts indicating the nature and extent of the burden. Furthermore, he fails to specify the time, effort, or cost that would be required to produce the documents. Though his motion clearly lacks organization as to what generalized statements he relies upon for each individual request for relief, to the extent Mr. Varadarajan relies upon unsubstantiated statements regarding his health constraints and caretaking duties (*id.* at 6:24-7:1) as a basis to quash the Subpoena, they equally fail.

Without factual support, Mr. Varadarajan also asserts that, in the alternative to quashing, the Court should "narrow[] and ***sequenc[e] discovery here***" (*id.* at 5:18) – a strange statement that again ***clearly*** indicates that his strategy of noncompliance is being coordinated with Plaintiff – and modify the Subpoena "[g]iven health and logistical constraints and the nonparty status." *Id.* at 5:6-7. He offers no rationale or explanation for this request. He baselessly contends that his deposition should be conducted remotely and limited to a single three-hour session. (*Id.* at 5:8-9). There is no justification for modifying the Subpoena or limiting the deposition time. As the

---

an *Ex Parte* Application for a Temporary Protective Order to (1) Stay Nonparty Subpoenas and (2) Quash Non-Compliant Subpoenas to Robert Nessler and Vasan Varadarajan (Dkt. 80), which was then denied by Magistrate Judge Jean P. Rosenbluth. (Dkt. 85). Plaintiff also filed an Opposition to Checkmate's Motion to Enforce and Compel Compliance with the Subpoena to Vasan Varadarajan and for Contempt (Dkt. 104). The fact that Checkmate served notice of the Subpoena less than 24 hours after it was served is not a basis to quash the Subpoena as Plaintiff was immediately aware and emailed Checkmate's counsel objecting to the Subpoena served on his father at the same residence where Plaintiff resides. *See In re Request for Judicial Ass. From Embassy of Arab Rep. of Egypt*, 2021 WL 6112131, at *2 (E.D. Mich. Dec. 27, 2021) (declining to quash subpoena based on lack of notice where allegedly impacted party "eventually obtained notice, had the opportunity to raise objections, and did raise objections"); *Vondersaar v. Starbucks*, 2013 WL 1915746, at *2 (N.D. Cal. May 8, 2013) (declining to quash subpoenas where notice was given days after service); *Fujikura Ltd. v. Finisar Corp.*, No. 15MC80110HRLJSC, 2015 WL 5782351, at *4 (N.D. Cal. Oct. 5, 2015) (finding no basis to quash the subpoena for failure to provide pre-service notice when the defect did not result in prejudice to the opposing party).

1603769942.5

-15-

Supreme Court has emphasized, "deposition-discovery rules are to be accorded a broad and liberal treatment." *Hickman*, 329 U.S. at 507, 67 S. Ct. 385.

As detailed above, Checkmate is entitled to broad and relevant discovery. The subpoenaed documents and testimony from Mr. Varadarajan are directly related to the core issues of this case, including the authorship and ownership of the VoiceBite code, relevant contractual rights, and the VoiceBite merger transaction, and should not be limited in any respect.

### E. Cost-Shifting Is Not Justified Under Rule 45

"Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a subpoena, ***if those costs are significant***." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (emphasis added). "[O]nly two considerations are relevant to the cost-shifting inquiry: (1) whether the subpoena imposes expenses on the non-party, and (2) whether those expenses are significant." *United States v. McGraw-Hill Companies, Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014) (internal quotations and citation omitted). If those expenses are considered "significant," "the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder 'non-significant.'" *Legal Voice.*, 738 F.3d at 1184 (citation omitted).

As detailed above, Mr. Varadarajan fails to assert ***with any specificity*** the time, effort, or cost that would be required to comply with Checkmate's Subpoena, let alone evidence that any expense would rise to level of "significant." Thus, there is no basis for the Court to order that Checkmate should bear any of the costs associated with Mr. Varadarajan's compliance with the Subpoena. *See McGraw-Hill Companies, Inc.*, 302 F.R.D. at 536 ("Without knowing what the non-parties intend to claim, it would be premature for the Court to catalogue the types of expenses that fall on either side of the line between expenses and non-expenses.").

## IV.    CONCLUSION

For the foregoing reasons, Mr. Varadarajan's Motion for Protective Order and to Quash or Modify Subpoena should be denied in its entirety.

Date: October 31, 2025                    Respectfully Submitted,

                                          K&L GATES LLP


                                          _____

                                          Ryan Q. Keech (SBN 280306)
                                          Stacey Chiu (SBN 321345)
                                          Rebecca I. Makitalo (SBN 330258)
                                          Jacob R. Winningham (SBN 357987)
                                          10100 Santa Monica Boulevard, 8th Floor
                                          Los Angeles, California 90067
                                          Telephone: 310.552.5000
                                          Facsimile: 310.552.5001

                                          *Attorneys for Defendant and Counter-Claimant* CHECKMATE.COM IN

1603769942.5

CHECKMATE.COM INC.'S OPPOSITION TO VASAN VARADARAJAN'S MOTION FOR PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENA

1603059467.2

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Checkmate certifies that this brief contains 5,447 words, which complies with the word limit of L.R. 11-6.1.

Date: October 31, 2025

Respectfully submitted,

K&L GATES LLP

_____

Ryan Q. Keech (SBN 280306)
Stacey Chiu (SBN 321345)
Rebecca I. Makitalo (SBN 330258)
Jacob R. Winningham (SBN 357987)
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

*Attorneys for Defendant and Counter-Claimant CHECKMATE.COM INC.*

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California, over the age of eighteen years, and not a party of the within action.  My business address is 10100 Santa Monica Blvd. 8th Floor Los Angeles, CA 90067.

On **October 31, 2025** , I served the foregoing document(s) described as:

- **CHECKMATE.COM INC.'S OPPOSITION TO VASAN VARADARAJAN'S MOTION FOR PROTECTIVE ORDER AND ORDER QUASHING OR MODIFYING THE SUBPOENA**
- **DECLARATION OF REBECCA MAKITALO, EXHIBITS A-P**

on the interested parties in this action as follows:

Vasan Varadarajan
12615 193rd Street
Cerritos, CA 90703
Email: vsvconsult@gmail.com

☑ **(BY ELECTRONIC MAIL)**  Pursuant to C.R.C. 2.251 or agreement by all parties, I served the described document(s) by emailing it to each of the aforementioned electronic mail addresses and the transmission was reported as complete and without error.  My email address is Rebecca.makitalo@klgates.com.

☑ **(VIA U.S. MAIL)**  In accordance with the regular mailing collection and processing practices of this office, with which I am readily familiar, by means of which mail is deposited with the United States Postal Service at Los Angeles, California that same day in the ordinary course of business, I deposited such sealed envelope, with postage thereon fully prepaid, for collection and mailing on this same date following ordinary business practices, addressed as set forth above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on **October 31, 2025,** at Los Angeles, California.

/s/ Rebecca Makitalo

Rebecca Makitalo