# EXHIBIT N

1  ARJUN VASAN

2  PLAINTIFF IN PRO PER

3  ARJUN.VASAN@GMAIL.COM

4  (562) 900-6541

5  12615 193RD STREET

6  CERRITOS, CA 90703

7

8                    UNITED STATES DISTRICT COURT

9                    CENTRAL DISTRICT OF CALIFORNIA

10

11  ARJUN VASAN,                      Case No.:  CV-00765-MEMF-JPR
                                       Hon. Maame Ewusi-Mensah Frimpong
12            Plaintiff and Counter-Defendant,
                                      **PLAINTIFF'S THIRD SET OF REQUESTS**
13        v.                          **FOR ADMISSION TO DEFENDANT**
                                      **CHECKMATE.COM, INC.; "BYOD (Bring**
14                                    **Your Own Devices) Policy Dispute"**

15  CHECKMATE.COM, INC.,
                                      Complaint Filed: January 28, 2025
16  (dba "Checkmate")

17            Defendant and Counterclaimant.

18

19

20

21  **TO DEFENDANT CHECKMATE.COM, INC. AND ITS COUNSEL OF RECORD**:

22        Pursuant to Federal Rule of Civil Procedure 36, Plaintiff propounds the following Requests

23  for Admission ("RFAs"). Each admission is to be answered in writing, under oath, within **30 days**

24  after service unless the parties stipulate or the Court orders otherwise.

25  **I.       DEFINITIONS**

26    1.  **"You/Checkmate"** = Defendant Checkmate.com, Inc., its executives, its agents, its counsel

27        or any other person acting on its behalf.

28    2.  **"Plaintiff"** = Plaintiff Arjun Vasan.

1

3.  "**Michael Bell**" = Checkmate Chief of Strategy and Plaintiff's Supervisor

4.  "**Vishal Agarwal**" = Checkmate CEO

5.  "**Amy Brown**" = Checkmate Vice President of Human Relations

6.  "**Robert Nessler**" = VoiceBite cofounder & VP of AI Operations at Checkmate

7.  "**Christopher Lam**" = VoiceBite cofounder & VP of AI Product at Checkmate

8.  "**#voicemate**" = Slack channel including Plaintiff, Christopher Lam, Robert Nessler, Michael Bell and Vishal Agarwal.

9.  "**BYOD Policy**" = Checkmate's policy requiring use of a personal device for work and/or installation of monitoring or mobile device management (MDM) software.

10. "**May Slack Thread**" = the May 1–2, 2024 Slack exchange starting as a private thread between Plaintiff and CEO Vishal Agarwal, later escalating to a group thread.

11. "**Oct. 14 DM**" = Plaintiff's October 14, 2024, Slack direct message to Agarwal raising, *inter alia*, BYOD Policy.

12. "**Oct. 14 Meeting**" = the Zoom meeting later that day among Agarwal, Plaintiff, Michael Bell, and Robert Nessler.

13. "**HR Write-Up**" = the written disciplinary notice sent by Michael Bell on October 14, 2024, cc'ing Amy Brown.

14. "**Closing Spreadsheet**" = Spreadsheet of expenses to be reimbursed as well as back pay, provided by VoiceBite to Checkmate on merger close; referenced in the Merger Agreement.

## II.    INSTRUCTIONS

A.  Answer each RFA separately and fully as required by Rule 36. If Checkmate cannot admit or deny, state the reasons and describe the reasonable inquiry made.

B.  If an RFA is admitted in part and denied in part, specify which part is admitted and which is denied.

C.  These RFAs are continuing; if Checkmate later obtain information requiring amendment, promptly serve amended answers under Rule 26(e).

## III.    REQUESTS FOR ADMISSION

**Background / Policy**

1.  Admit that Vishal Agarwal was CEO between May-November 2024 and had authority over hiring, discipline, and termination decisions.

2.  Admit that Michael Bell was Chief of Strategy between May-November 2024 and was Plaintiff's direct supervisor.

3.  Admit that the BYOD Policy applied to Plaintiff in 2024.

4.  Admit that under the BYOD Policy, Plaintiff was required to use his personal device for work and to install monitoring/MDM software.

5.  Admit that during May-November 2024, Checkmate did not provide Plaintiff a company-owned laptop.

6.  Admit that during May-November 2024, Checkmate did not reimburse Plaintiff for the purchase of a separate device for exclusive work use.

7.  Admit that upon close of the merger, VoiceBite provided a Closing Spreadsheet that detailed, among other things, expenses of the VoiceBite founders to be reimbursed for VoiceBite property they personally purchased upon closing.

8.  Admit that this spreadsheet listed VoiceBite laptops for Robert Nessler and Christopher Lam, but Plaintiff did not have a VoiceBite laptop and did not expense his personal laptop.

**Protected Activity**

9.  Admit that on Plaintiff's first day as a Checkmate employee, he raised the issue of the BYOD Policy conflicting with California Law in a private Slack thread with Agarwal.

10. Admit that Plaintiff stated in the thread: "in california it's not even legal though… california employers must provide the work equipment for employees."

11. Admit that Plaintiff stated he was not comfortable installing monitoring software on his personal computer and raised concerns about privacy and exposure of personal devices.

12. Admit that Plaintiff requested a company device rather than installing monitoring software on his personal device.

13. Admit that in the follow-up email, Plaintiff again requested a company device and explained the basis for his request.

3

14. Admit that Amy Brown emailed or slacked Plaintiff stating that Michael Bell had stated that the entire VoiceBite's teams' laptops were reimbursed.

15. Admit that Plaintiff clarified that only Christopher Lam and Robert Nessler had VoiceBite company laptops and had been reimbursed for them.

16. Admit that Checkmate's management did not offer to purchase or reimburse a work laptop.

17. Admit that in the Oct. 14 DM, Plaintiff again raised BYOD legality/compliance and the need for a company device.

**Adverse Actions / Timing (May 1-2 Slack Thread)**

18. Admit Agarwal rejected Plaintiff's request for a work laptop, and stated, among other things "Alright then you can't work for the company.", "we won't hire people who are stickler for the law… Is that clear?".

19. Admit Agarwal escalated the private discussion to the #voicemate group channel.

20. Admit after escalating to #voicemate, Agarwal stated the following:
> @channel I'm moving a 1:1 conversation I am having with Arjun here and documenting it here for everyone. Arj's point is that we need to provision equipments and computers in order to hire good engineers. And that this is also a California law. We at this point cannot do that because we have over 300 employees and that cash outlay is huge. The tone from @arj is absolutely in the spirit of creating a problem and creating a confrontation, rather than having a mutual conversation and trying to find a solution with a company he just joined. I wanted to make sure everyone is aware and ask if everyone shares Arj's belief. If that continues to be the case, I won't mind having a difficult conversation with the individual at whatever stage of the company to make sure we build a cohesive company for long term benefits.

21. Admit Agarwal stated in the #voicemate channel "I can also promise if this is how it is going to be going ahead, I'd rather cut my losses right now. No employee is indispensable and I can put that in a formal notice."

22. Admit that Agarwal stated in the #voicemate channel "The situation is quite clear Arj - you don't want to use your personal computer for work reasons. We don't provide work computers. The only solution is for you to quit. Do you know of any other alternative?"

23. Admit Agarwal stated in the #voicemate channel "Sure, then we will consult with security and if there is no other alternative, then I am happy to fire you"

24. Admit that Plaintiff stated in response or shortly thereafter: "so you will terminate me for pointing out a violation of the law?"

25. Admit that Plaintiff continued, stating "i think there are laws against that"

26. Admit that Agarwal responded "sure, if that's the route you want to go I'd rather deal with that headache than the conversation we are having here"

**Adverse Actions / Timing (October 14 HR Write-Up**

27. Admit that Plaintiff re-raised the BYOD issue in a Slack DM to Agarwal on October 14, 2024.

28. Admit that Agarwal called a meeting with Plaintiff, Michael Bell and Robert Nessler.

29. Admit that this was a recorded Zoom meeting.

30. Admit that after the Oct. 14 Meeting, Bell issued the HR Write-Up to Plaintiff and cc'd HR.

31. Admit that the HR Write-Up demanded Plaintiff's signature.

32. Admit that the HR Write-Up used the word "rant" or stated that conduct "that could be construed as a rant" could lead to dismissal.

33. Admit that as of Oct. 14, 2024, Checkmate still had not provided Plaintiff a company laptop.

34. Admit that Plaintiff asked to defer responding to the HR Write-Up due to his workload preparing for the October 23 Popeyes demo.

35. Admit that Plaintiff mentioned that he hadn't slept in days and stated words to the effect that he was "going crazy" preparing for the demo.

36. Admit that you did not agree to postpone responding to the HR Write-Up.

37. Admit that you did not acknowledge or address Plaintiff's expressed health issues.

38. Admit that Plaintiff was terminated on November 14, 2024, within one month of the Oct. 14 DM and HR Write-Up.

**Judicial Admissions**

39. Admit that in Checkmate's Answer, you admitted that Plaintiff raised BYOD issues.

40. Admit that in declarations filed by Agarwal and/or Brown, you stated that the Oct. 14 meeting was convened due to a "barrage of over 40 Slack messages".

41. Admit that Plaintiff re-raised the BYOD issue in these Slack messages.

5

42. Admit that in declarations filed by Agarwal and/or Brown, you acknowledged issuance of a final warning / formal write-up to Plaintiff on October 14, 2024.

**Causation Adjacent**

43. Admit that the May Slack Thread termination statements immediately followed Plaintiff's message objecting to BYOD legality.

44. Admit that the HR Write-Up was issued the same day Plaintiff sent the Oct. 14 DM regarding BYOD.

45. Admit that Checkmate did not offer a company laptop or reimburse a separate device at any time between May 1 and October 14, 2024.

46. Admit that the attached Exhibit A is an accurate transcript of the May Slack threads.

**<u>VERIFICATION (for Responding Party)</u>**

I am authorized to respond to these Requests for Admission on behalf of Defendant. I have read the foregoing responses and, based on a reasonable inquiry, the matters stated therein are true and correct to the best of my knowledge and belief.

Dated: _____    Signature: _____

Name: _____    Title: _____

for Defendant Checkmate.com, Inc.

# EXHIBIT A

**May 1-2nd, 2024 Slack Conversation**
- DM between Plaintiff and Defendant Agarwal and
- Group Conversation between VoiceBite founders, Defendants Bell and Agarwal

arj
 4:52 PM
hey
@vishal
 i understand your policy has been BYOD. but it will be very difficult to recruit engineers with this policy, it's pretty much a standard expectation in silicon valley that you get a top of the line laptop. i'm not going to fight it now, but perhaps lets change this after raising the round.

4:53
i'm already fretting over explaining this to pranav once we are able to onboard him as a full time

vishal
 6:59 PM
Hey Arj, we have recruited over 70 engineers over the last 7 years. It won't be a problem :slightly_smiling_face:
7:00
That is why we don't have to hire from Silicon valley. We can hire from literally anywhere in the world. And it's not a small consideration - it'll be a massive outlay for the company. Remember we have over 300 employees
7:01
If this is a deal breaker for some, what we can do is offer them a one time signing bonus of $1,500 or so but overall, this has not been a problem

arj
 7:37 PM
it's a massive outlay that most of our competitors are willing to make though. i don't think doordash thinks one second about this. they want the best and to provide the best tools for the job.

vishal
 7:38 PM
Not something we are considering right now Arj. We are different than others, we don't have to do what they do and we are still able to hire and retain the best. In the last 6 years, I have not had a problem with it. And like I said, if this is an absolute problem, we can add some initial signing bonus but not in all cases. Let's make sure to keep that as a last resort
7:39
*I'm willing to compete with others on this and I'm confident we will win. If someone does not want to join us for an initial expense of a few thousand dollars, I don't think they are the right fit anyway*

arj
 7:40 PM
**in california it's not even legal though, and it's a security risk. california employers must provide the work equipment for employees.**

vishal
 7:40 PM
*That's not true*

7:40
We have hired tons of people in California

arj
 7:40 PM
yes but this is the law

vishal
 7:41 PM
It's a very serious cost consideration Arj, it can't be taken lightly

arj
 7:47 PM
https://www.employmentlawfirms.com/resources/can-my-employer-require-me-buy-my-own-laptop-work.htm
there are dozens of articles like this. it is the law, whether or not it is costly.

www.employmentlawfirms.comwww.employmentlawfirms.com
Can my employer require me to buy my own laptop for work?
Find out if employers can require employees to provide and work on their own laptops. Learn the meaning of BYOD policies and if they are legal in the workplace.

vishal
 7:47 PM
Got it

arj
 1:39 AM
even beyond this law, the types of people I want to hire are going to immediately be turned off if they knew they would have to use their personal computer for work. they will believe in strict separation between their personal projects and data and work projects and data. i know because I myself feel this way. i'm not comfortable putting monitoring software on my personal computer (neither are sam and paul, while robert and chris have voicebite computers separate from personal, so they don't mind as much). nor would we be comfortable with employer security going through our personal computer and clearing it out if we separate. nor are we ok with the possibility that our personal computers could be subpoenaed if there is a lawsuit or investigation of checkmate. all of these are real, legitimate fears and reasons not to mix work and personal.
it's also cleaner for checkmate to know it fully owns the work computer, and there is no liability, security risk etc.
instead of thinking of this as the employees getting a computer courtesy of checkmate, it would be better to think of it as an investment in checkmate employees, making sure they have the best tools for the job possible. rather than saying "If someone does not want to join us for an initial expense of a few thousand dollars, I don't think they are the right fit anyway", think of the flip side "If you aren't willing to invest a few thousand dollars in someone's productivity, are they a good fit for checkmate?"

vishal
 7:56 AM
Arj - noted on all points. Let's keep in mind that we have been running this way for 6 years with no problems in hiring and retaining employees.  You are coming on too strong on this without a realization about the larger business and cost impact. There is no intent to start providing equipment from our side as of now.
7:57

I'd like to end this conversation here for now. If anything changes in the future, I'll reconsider.

arj
 8:11 AM
So you are ok with us not installing this monitoring software.
8:13
Yes but you also did not hire the types of people i think are right for voicebite. Many great people but i need creative hackers
8:13
The cost impact for voicebite team alone is not that high

vishal
 8:14 AM
Sorry, there are no exceptions. I can't just allow for the AI team not to follow the company process or have equipment just for AI team
8:14
If you think you can't develop a great product with the company policies we have now, you are really restricting your thinking and scope

arj
 8:14 AM
Well then you have to follow california law and get us equipment to install the software on

vishal
 8:15 AM
Arj - I seriously can't continue to have this same conversation. Let's take everyone's opinion on the call we have coming up

arj
 8:15 AM
Bc we arent doing it on our personal computers as i explained above

vishal
 8:15 AM
Alright then you can't work for the company
8:15
We haven't had a problem up until now, so we are good

arj
 8:15 AM
its the law

vishal
 8:16 AM
**Alright, we can't afford to give out equipment so we won't hire people who are stickler for the law**
8:16
Is that clear?

arj
 8:16 AM
Employers have to follow the law

vishal
  8:16 AM
It's about what we can afford to do, and comparing us to DoorDash is ridiculous
8:17
Arj - I'm ending this conversation now

arj
  8:23 AM
Right so we can not install the software and you can provision us computers after the fundraiser

vishal
  10:11 AM
Noted Arjun. At this point you are just being difficult and looking to create problems rather than solutions for a company you just joined. I'm moving this conversation to the common channel so that everyone is aware. And I promise you I won't bother having a difficult conversation with you at whatever point in our journey. That is not the kind of conversation you have with a company you just joined and the tone is absolutely ridiculous

arj
  11:55 AM
why would you make this a group conversation. we could have figured it out. this is not the kind of conversation you should have with a company you just acquired either. you said before you would be empowering us.

[in group thread with my voicebite co-founders, vishal and mike]

@channel I'm moving a 1:1 conversation I am having with Arjun here, and documenting it here for everyone. Arj's point is that we need to provision equipments and computers in order to hire good engineers. And that this is also a California law. We at this point cannot do that because we have over 300 employees and that cash outlay is huge. The tone from
@arj
 is absolutely in the spirit of creating a problem and creating a confrontation, rather than having a mutual conversation and trying to find a solution with a company he just joined. I wanted to make sure everyone is aware and ask if everyone shares Arj's belief. If that continues to be the case, I won't mind having a difficult conversation with the individual at whatever stage of the company to make sure we build a cohesive company for long term benefits.
10:15
If there are any exceptions to be made with regards to installing company software, then it has to be run through Security. They are responsible for SOC2 compliance which is required to win large corporate accounts. If the individual can't comply, then they can't work with us. There is no grey area here.
10:16
Through multiple conversations, I have maintained that we cannot just decide on issuing equipments to a select group. It has to be for the entire company, and is a huge cash outlay which Arj is refusing to acknowledge and understand

arj
  10:16 AM
Yes, so buy us laptops to install the security software on

vishal
  10:17 AM
image.png

image.png

arj
  10:17 AM
Bc its an invasion of privacy
10:17
Otherwise

vishal
  10:17 AM
This is the last discussion, which is telling us what to do instead of having a constructive conversation
10:18
This is not going to be a discussion on this channel. If need be, we'll take a collective call and make a final decision. Rest of the team to chime in please

arj
  10:18 AM
Bc companies have to follow the law there are no exceptions to that either in california, just like you are saying there are no exceptions to the policy
10:19
You can double check the law, at the minimum employer has to reimburse purchase of equipment needed to do the job

Robert Nessler
  10:22 AM
I do not need a new computer and am fine without it. I did find it strange that there was no option to have a CM issued laptop that you return whenever you leave the company, but that isn't a  big deal to me.
Arjun does need more compute power and resources at his disposal but I would agree his way of going about it is not effective or tactful.  I'm not sure what the best solution moving forward is, I think we should meet with Luke and see what resources we have and then go from there.

arj
  10:23 AM
Yes but
@Robert Nessler
 has a voicebite work computer i didnt buy one
10:24
He has a separate personal computer

Chris L
  10:42 AM
I think this has blown up a little bit more than it should, but I can understand both viewpoints. Frankly speaking, I would not feel comfortable using my personal machine for work either (I like to make sure there's a separation), let alone install additional software on it. I'm not an expert on security/compliance implications, but having the physical separation is probably good for everyone. Luckily, I have a laptop from VoiceBite so I can maintain that separation.
On the other hand, I also understand the large commitment for Checkmate this represents. It wouldn't be fair to make exceptions just for the VoiceBite team as it wouldn't be fair to the rest of the employees. We also don't want to start off having the rest of the company look at us and wonder why we got special treatment with laptops, while everyone else gets neglected.

Feelings should be left aside, and we should consider the facts at hand. Does Arj need more compute power - probably, and future ML engineers we bring on may too. Is this a legal issue - in California, it might very well be. Can we afford to procure laptops for everyone - no. Do we want to start making exceptions at this point - probably not. Are there alternative solutions - possibly, and we should focus on brainstorming these.

arj
  10:45 AM
its not about being fair. there's a legitimate business use case for ML engineers to have high end work comptuers

Chris L
  10:45 AM
Arj, just to double check, are you asking for a machine for your own personal use or just for work use?

arj
  10:45 AM
work use only, it's to separate work from personal
10:45
obviously. i need to have my own personal computer for personal reasons.
10:48
and also, i'm ok waiting until fundraising finishes, but in the meanwhile not OK installing monitoring software on my personal computer.

Chris L
  10:56 AM
An idea… rather than calling it an exception for Arjun, can we position this as a business need and have Luke/IT review needs on a case-by-case basis? I'm sure cases like this have come up before and this probably won't be the last. Specialized roles may require specialized tools. For example, designers may need to procure an Adobe Photoshop or Illustrator license. Or a hardware engineer may need a soldering iron and other prototyping equipment to build a new product.
:white_check_mark:
1

vishal
  11:03 AM
Hi
@Chris L

@Robert Nessler
 thank you for engaging in a more civil and professional conversation, that is what I was hoping for. Arj's tone on Day 2 is absolutely the last thing I was expecting, giving me an ultimatum. I agree, we have a situation and my main problem is the tone and confrontational nature instead of saying we are a team, let's solve this together. I have been going back and forth with Arj since last evening to try and answer his questions but there is nothing that I am saying is helping answer his question. And ultimately we are being given an ultimatum, which is not where we want to be.
When we joined the company, we knew this is a bring your own device company.
We are also talking about two different things. One is compute power for which we can absolutely provide a computer. But if we are simply asking for a company provided laptop on which you can do your basic job, that is not what we will be providing. ***For the 7th time, I'm***

*repeating this - it is not funding dependent. Funding will not change this, but Arj keeps coming back to the same point.*
11:04
**I can also promise if this is how it is going to be going ahead, I'd rather cut my losses right now. No employee is indispensable and I can put that in a formal notice. This is not a problem solving approach**

arj
  11:06 AM
we understood bring your own device as relating to mobile phones
11:06
we have never heard of a tech company that does not provide work computers

vishal
  11:08 AM
*The situation is quite clear Arj - you don't want to use your personal computer for work reasons. We don't provide work computers. The only solution is for you to quit. Do you know of any other alternative?*

arj
  11:08 AM
yes you buy me a work computer so we can win voice ordering
11:09
that is the smart solution

vishal
  11:09 AM
Ok. And I'm saying No.
11:09
Anything else?

arj
  11:09 AM
then i'm saying no to installing monitoring software. i am not a quitter though.

vishal
  11:10 AM
**Sure, then we will consult with security and if there is no other alternative, then I am happy to fire you**
11:10
**We will resolve this one way or the other**
11:10
**And I promise you we will win Voice ordering one way or another. That is not dependent on you**

arj
  11:10 AM
I will win voice ordering one way or another
11:11
not dependent on checkmate

Robert Nessler

11:11 AM
Maybe let's calm down a bit, go for a walk and revisit this in a few hours.

vishal
**11:11 AM**
**Super. Next steps:**
**Going to reach out to Security to see what the policy is. If there are no other alternatives,**
**then we go through HR and let you go**

Chris L
11:12 AM
Perhaps I am speaking out of line here - but I think we should all take a breather and a step
back. We've overcome much bigger issues in the past (I'm glad all the negotiation is done)
while on other sides of the table. Now we're on the other side of the table and there's
absolutely no reason we can't figure something out together
:white_check_mark:
1

vishal
11:12 AM
Robert - I've been going back and forth in a loop since last night. I promise I'm calm, I just
don't see an answer
11:12
I'll leave it up to you guys to suggest options, I'm at the end of my rope here

Chris L
11:12 AM
Yah, just talk to Luke. We haven't even gone down that path yet.

vishal
11:12 AM
Chris - you are an equal partner, nothing is out of line.

Chris L
11:12 AM
*Luke / security

vishal
11:13 AM
Sure. Not installing the software is not an option, so I'll wait for Security to let me know
11:13
Again - to be clear, we will provide compute power whether through cloud or a separate
machine
11:13
What we will not be providing is a work laptop

arj
**11:13 AM**
**so you will terminate me for pointing out a violation of the law?**
**11:13**
**i think there are laws against that**

Chris L

11:13 AM
Well there's our solution. Talk to Luke, make a case, and see if we can get you a separate machine with more power.
:white_check_mark:
1

vishal
  11:13 AM
Cause that has bigger implications
11:14
@arj
 **sure, if that's the route you want to go I'd rather deal with that headache than the conversation we are having here**

Chris L
  11:23 AM
I've went ahead and sent a DM with Luke/Arj. Let's try exploring this path first

vishal
  **12:32 PM**
**Noted Chris. I'm very clear on the rationale here and the final approval will have to go through me. Reposting this here**
**12:32**
**Again - to be clear, we will provide compute power whether through cloud or a separate machine**
**What we will not be providing is a work laptop**





Sorry, there are no exceptions. I can't just allow for the ____ the company process or have equipment just for AI team

**May 2nd at 8:14:54 AM**   ____ 't develop a great product with the company policies we have now, you are really ____

**arj**  8:14 AM
Well then you have to follow california law and get us equipment to install the software on

**vishal**  8:15 AM
Arj - I seriously can't continue to have this same conversation. Let's take everyone's opinion on the call we have coming up

**arj**  8:15 AM
Bc we arent doing it on our personal computers as i explained above

**vishal**  8:15 AM
Alright then you can't work for the company

We haven't had a problem up until now, so we are good

**arj**  8:15 AM
its the law

**vishal**  8:16 AM
Alright, we can't afford to give out equipment so we won't hire people who are stickler for the law

Is that clear?

**arj**  8:16 AM
Employers have to follow the law

**vishal**  8:16 AM
It's about what we can afford to do, and comparing us to DoorDash is ridiculous

Arj - I'm ending this conversation now

**arj**  8:23 AM



**voicemate** ⌄

that is the smart solution

**vishal**  11:09 AM
Ok. And I'm saying No.

Anything else?

**arjun**  11:09 AM
then i'm saying no to installing monitoring software. i am not a quitter though.

**vishal**  11:10 AM
Sure, then we will consult with security and if there is no other alternative, then I am happy to fire you

We will resolve this one way or the other

And I promise you we will win Voice ordering one way or another. That is not dependent on you

**arjun**  11:10 AM
I will win voice ordering one way or another

not dependent on checkmate

**Robert Nessler**  11:11 AM
Maybe let's calm down a bit, go for a walk and revisit this in a few hours.

**vishal**  11:11 AM
Super. Next steps:

1. Going to reach out to Security to see what the policy is. If there are no other alternatives, then we will ____ HR and let you go

**Chris Lam**  11:12 AM
Perhaps I am speaking out of line here - but I think we should all take a breather and a step back. We've overcome much bigger issues in the past (I'm glad all the negotiation is done) while on other sides of the table. Now we're on the other side of the table and there's absolutely no reason we can't figure something out together

✅ 1



+ Add a bookmark

**Chris Lam**  11:12 AM
Yah, just talk to Luke. We haven't even gone down that path yet.

Today ⌄

**vishal**  11:12 AM
Chris - you are an equal partner, nothing is out of line.

**Chris Lam**  11:12 AM
*Luke / security

**vishal**  11:13 AM
Sure. Not installing the software is not an option, so I'll wait for Security to let me know

Again - to be clear, we will provide compute power whether through cloud or a separate machine

What we will not be providing is a work laptop

**arjun**  11:13 AM
so you will terminate me for pointing out a violation of the law?

11:13  i think there are laws against that

**Chris Lam**  11:13 AM
Well there's our solution. Talk to Luke, make a case, and see if we can get you a separate machine with more power.

✅ 1    😊

**vishal**  11:13 AM
Cause that has bigger implications

@arjun sure, if that's the route you want to go I'd rather deal with that headache than the conversation we are having here

**Chris Lam**  11:23 AM
I've went ahead and sent a DM with Luke/Arj. Let's try exploring this path first

## CERTIFICATE OF SERVICE (Rule 5(b)(2)(E))

I certify that on **September 10, 2025**, I served **Plaintiff's Third Set** of Requests for Admission to Defendant Checkmate.com, Inc. (Set Three — "BYOD (Bring Your Own Devices) Policy Dispute") by sending a true and correct copy via email to counsel of record at the addresses below:

Rebecca Makitalo
K&L Gates LLP
rebecca.makitalo@klgates.com

Ryan Q. Keech
K&L Gates LLP
ryan.keech@klgates.com

Stacey Chiu
K&L Gates LLP
stacey.chiu@klgates.com

10100 Santa Monica Blvd., 8th Floor
Los Angeles, California 90067
Phone: 310.552.5070

This Service was made by email pursuant to Fed. R. Civ. P. 5(b)(2)(E) (consent).

*I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.*

/s/ ***Arjun Vasan***

Dated: **September 10, 2025**        _____

Arjun Vasan

Plaintiff In Pro Per

1  Ryan Q. Keech (SBN 280306)
    Ryan.Keech@klgates.com
2  Stacey Chiu (SBN 321345)
    Stacey.Chiu@klgates.com
3  Rebecca I. Makitalo (SBN 330258)
    Rebecca.Makitalo@klgates.com
4  Jacob R. Winningham (SBN 357987)
    Jacob.Winningham@klgates.com
5  K&L GATES LLP
   10100 Santa Monica Boulevard
6  Eighth Floor
   Los Angeles, California 90067
7  Telephone: +1 310 552 5000
   Facsimile: +1 310 552 5001
8
   *Attorneys for Defendant and Counterclaimant*
9  *CHECKMATE.COM INC.*

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

12

13

14  ARJUN VASAN,                          Case No. 2:25-CV-00765-MEMF-JPR

15                                         Magistrate Judge Jean P. Rosenbluth
                Plaintiff,
16                                         **CHECKMATE.COM, INC.'S
           v.                              RESPONSES TO PLAINTIFF
17                                         ARJUN VASAN'S THIRD SET OF
                                           REQUESTS FOR ADMISSIONS**
18  CHECKMATE.COM, INC.,

19
                Defendant.
20  ─────────────────────────              Complaint Filed: January 28, 2025
                                           Amended Complaint Filed: February
21  CHECKMATE.COM, INC.,                   21, 2025

22
                Counterclaim-Plaintiff,
23
           v.
24

25  ARJUN VASAN,

26
                Counterclaim-
27              Defendant.

28

1  PROPOUNDING PARTY: PLAINTIFF ARJUN VASAN

2  RESPONDING PARTY: DEFENDANT CHECKMATE.COM, INC.

3  SET NO.: THREE (3)

4      Defendant Checkmate.com, Inc. ("Defendant" or "Checkmate") hereby

5  responds to Plaintiff Arjun Vasan ("Plaintiff" or "Vasan")'s Third Set of Requests

6  for Admission (the "Requests"), as follows:

7                      **PRELIMINARY STATEMENT**

8      Checkmate's investigation of the facts relating to this case is still ongoing. As

9  such, Checkmate has not completed its investigation, has not completed discovery,

10 and has not completed preparation for trial. All of the answers contained herein are

11 based upon the information presently available, and specifically known, to

12 Checkmate. It is anticipated that further discovery and further independent

13 investigation will supply additional facts which may clarify and add meaning to facts

14 presently known, as well as establish new factual matters, all of which may lead to

15 substantial addition to, changes in, and variations from the responses set forth herein.

16 The following responses are given without prejudice to Checkmate's right to produce

17 evidence of any subsequently discovered fact or facts that Checkmate may later recall.

18     The responses contained herein are made in a good faith effort to supply as

19 much factual information as is presently known, but should in no way be to the

20 prejudice of these parties in relationship to further discovery, research, or analysis.

21 Checkmate reserves the right to alter, supplement, amend, or otherwise modify these

22 responses in any way and at any time, including at or during trial, in light of facts

23 revealed to them through discovery, further investigation, or further legal analysis.

24 Checkmate also reserves the right to amend or supplement these responses with any

25 information that has been inadvertently or unintentionally omitted and/or to introduce

26 such information into evidence at the time of hearing or trial.

27     Checkmate makes these responses to the Requests subject to, and without

28 waiving in any way any objections as to competence, relevance, materiality, propriety,

CHECKMATE.COM, INC.'S RESPONSES TO PLAINTIFF ARJUN VASAN'S THIRD SET OF REQUESTS FOR
ADMISSIONS

1603305600.2

1    and admissibility, and any and all other objections and grounds which would require

2    the exclusion of any statement herein if the Requests were asked of, or any statements

3    contained were made by, a witness present and testifying in Court, all of which

4    objections and grounds are reserved and may be interposed at time of trial.

5    ## **GENERAL OBJECTIONS**

6    1.    To the extent the Requests call for confidential communications between

7    Checkmate and any of its/his/her attorneys, or information that is otherwise covered

8    by the attorney-client privilege, the work-product doctrine, or any other right or

9    privilege recognized by California or federal law, Checkmate generally objects to the

10   Requests, and each request contained therein.

11   2.    Checkmate objects to the Requests, and each request contained therein,

12   to the extent that they seek information protected by the California or United States

13   constitutions, California or federal statutes or case law that establish a right of privacy

14   and forbid the discovery and dissemination of confidential, sensitive and financial

15   information. Checkmate will not reveal such information where doing so would

16   violate the privacy rights of Checkmate or of third parties.

17   3.    Checkmate objects to the Requests, and each request contained therein,

18   to the extent that they seek information that is not relevant and/or material to the

19   subject matter of this litigation or are not reasonably calculated to lead to the

20   discovery of admissible evidence.

21   4.    Checkmate objects to the Requests, and each request contained therein,

22   insofar as they are repetitive, redundant or overlapping.

23   5.    Checkmate objects to the Requests, and each request contained therein,

24   to the extent that they are unduly burdensome, oppressive, annoying or harassing.

25   6.    Checkmate objects to the Requests, and each request contained therein,

26   to the extent that they are vague and ambiguous, compound, confusing, unintelligible,

27   unclear and amenable to different meanings, understandings or interpretations.

28   Checkmate is responding to each Request as it interprets and understands that Request

2

with respect to the issues framed in connection with this litigation. If Checkmate asserts an interpretation of any part of a Request that differs from the understanding of Checkmate, Checkmate reserves the right to supplement, amend, or modify their responses or objections.

7.    Checkmate objects to the Requests, and to each request contained therein, to the extent they are unlimited in time or seek information beyond the time-frame relevant to this litigation on the grounds that they are overbroad and unduly burdensome and seek information that is irrelevant to the subject matter of this litigation.

8.    Checkmate objects to the Requests, and each request contained therein, to the extent they seek to impose duties or obligations different from, additional to, or otherwise beyond those required by the Federal Rules of Civil Procedure.

9.    Checkmate objects to the Requests, and each request therein, to the extent they seek information that is equally available to or within Plaintiff's possession, custody or control on the grounds that such Requests are unduly burdensome and oppressive.

10.    Checkmate objects to the definition of "You/Checkmate" in that it is vague, ambiguous, overbroad, and reflects an attempt to circumvent Federal Rule of Civil Procedure 45. It is also objectionable to the extent it intrudes upon the attorney/client privilege, work product, and/or other applicable privileges.

11.    Checkmate objects to the definition of "Separation Meeting" in that it is vague, ambiguous, overbroad, and unduly burdensome.

12.    Checkmate objects to the definition of "#voicemate" in that it is vague, ambiguous, overbroad, and unduly burdensome.

13.    Checkmate objects to the definition of "BYOD Policy" in that it is vague, ambiguous, and overbroad, and unduly burdensome.

14.    Checkmate objects to the definition of "May Slack Thread" in that it is vague, ambiguous, and overbroad, and unduly burdensome.

3

15.    Checkmate objects to the definition of "Oct. 14 DM" in that it is vague, ambiguous, and overbroad, and unduly burdensome.

16.    Checkmate objects to the definition of "HR Write-Up" in that it is vague, ambiguous, and overbroad, and unduly burdensome.

17.    Checkmate objects to the definition of "Closing Spreadsheet" in that it is vague, ambiguous, and overbroad, and unduly burdensome.

18.    The foregoing objections are incorporated by reference into each of the specific responses made herein. Notwithstanding the specific responses to any of the Requests, Checkmate does not waive any of the general or specific objections made herein.

19.    Subject to and without waiving the foregoing General Objections, Checkmate responds to Vasan's Third Set of Requests for Admissions as follows:

## RESPONSES TO REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 71:**

Admit that Vishal Agarwal was CEO between May-November 2024 and had authority over hiring, discipline, and termination decisions.

**RESPONSE TO REQUEST FOR ADMISSION NO. 71:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the terms "was CEO," "had authority," and "hiring, discipline, and termination decisions" are vague, ambiguous, and overbroad. Responding Party further objects that the Request is compound, containing multiple distinct inquiries within a single request, which is improper under the applicable Rules.

**REQUEST FOR ADMISSION NO. 72:**

Admit that Michael Bell was Chief of Strategy between May-November 2024 and was Plaintiff's direct supervisor.

**RESPONSE TO REQUEST FOR ADMISSION NO. 72:**

Responding Party hereby incorporates the General Objections as though fully

set forth herein. Responding Party objects to this Request on the grounds that the terms "direct supervisor" are vague, ambiguous, and overbroad. Responding Party further objects that the Request is compound, containing multiple distinct inquiries within a single request, which is improper under the applicable Rules.

**REQUEST FOR ADMISSION NO. 73:**

Admit that the BYOD Policy applied to Plaintiff in 2024.

**RESPONSE TO REQUEST FOR ADMISSION NO. 73:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the term "BYOD Policy," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects that the terms "applied to" are vague, ambiguous, and overbroad. Responding Party further objects that the Request calls for a legal conclusion rather than a factual response.

Without waiving the foregoing objections, Responding Party responds as follows: at all times during his employment, Plaintiff was subject to the policies and procedures of Responding Party, including the policies and procedures of Responding Party relating to the use of personal devices for work purposes.

**REQUEST FOR ADMISSION NO. 74:**

Admit that under the BYOD Policy, Plaintiff was required to use his personal device for work and to install monitoring/MDM software.

**RESPONSE TO REQUEST FOR ADMISSION NO. 74:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the term "BYOD Policy," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects that the terms "was required to use" and "and to install monitoring/MDM software" are vague, ambiguous, and overbroad. Responding Party further objects that the Request is compound, containing multiple distinct inquiries within a single request, which is improper under the applicable

5

1 Rules.

2 **REQUEST FOR ADMISSION NO. 75:**

3 Admit that during May-November 2024, Checkmate did not provide Plaintiff

4 a company-owned laptop.

5 **RESPONSE TO REQUEST FOR ADMISSION NO. 75:**

6 Responding Party hereby incorporates the General Objections as though fully

7 set forth herein. Responding Party objects to this Request on the grounds that the term

8 "Checkmate," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly

9 burdensome. Responding Party further objects to this Request to the extent it seeks

10 information protected from disclosure by the attorney-client privilege and/or the work

11 product doctrine. Responding Party further objects that the terms "company-owned"

12 are vague, ambiguous, and overbroad.

13 Without waiving the foregoing objections, Responding Party responds as

14 follows: Deny.

15 **REQUEST FOR ADMISSION NO. 76:**

16 Admit that during May-November 2024, Checkmate did not reimburse

17 Plaintiff for the purchase of a separate device for exclusive work use.

18 **RESPONSE TO REQUEST FOR ADMISSION NO. 76:**

19 Responding Party hereby incorporates the General Objections as though fully

20 set forth herein. Responding Party objects to this Request on the grounds that the term

21 "Checkmate," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly

22 burdensome. Responding Party further objects to this Request to the extent it seeks

23 information protected from disclosure by the attorney-client privilege and/or the work

24 product doctrine. Responding Party further objects that the terms "separated device"

25 and "exclusive work use" are vague, ambiguous, and overbroad.

26 Without waiving the foregoing objections, Responding Party responds as

27 follows: Deny.

28 ///

CHECKMATE.COM, INC.'S RESPONSES TO PLAINTIFF ARJUN VASAN'S THIRD SET OF REQUESTS FOR
ADMISSIONS

1603305600.2

1  **REQUEST FOR ADMISSION NO. 77:**

2      Admit that upon close of the merger, VoiceBite provided a Closing

3  Spreadsheet that detailed, among other things, expenses of the VoiceBite founders

4  to be reimbursed for VoiceBite property they personally purchased upon closing.

5  **RESPONSE TO REQUEST FOR ADMISSION NO. 77:**

6      Responding Party hereby incorporates the General Objections as though fully

7  set forth herein. Responding Party objects to this Request on the grounds that the term

8  "Closing Spreadsheet," as defined by Plaintiff, is vague, ambiguous, overbroad, and

9  unduly burdensome. Responding Party further objects that the terms "that detailed"

10  and "among other things" are so vague, ambiguous, and overbroad as to render the

11  Request unintelligible. Responding Party further objects that the terms "upon close of

12  the merger," "VoiceBite property," and "upon closing" are vague, ambiguous, and

13  overbroad. Responding Party further objects that the Request is compound, containing

14  multiple distinct inquiries within a single request, which is improper under the

15  applicable Rules.

16  **REQUEST FOR ADMISSION NO. 78:**

17      Admit that this spreadsheet listed VoiceBite laptops for Robert Nessler and

18  Christopher Lam, but Plaintiff did not have a VoiceBite laptop and did not expense

19  his personal laptop.

20  **RESPONSE TO REQUEST FOR ADMISSION NO. 78:**

21      Responding Party hereby incorporates the General Objections as though fully

22  set forth herein. Responding Party objects to this Request on the grounds that the

23  terms "this spreadsheet" are so vague, ambiguous, and overbroad as to render the

24  Request unintelligible. Responding Party further objects that the terms "listed

25  VoiceBite laptops" and "expense" are vague, ambiguous, and overbroad. Responding

26  Party further objects that the Request is compound, containing multiple distinct

27  inquiries within a single request, which is improper under the applicable Rules.

28  ///

CHECKMATE.COM, INC.'S RESPONSES TO PLAINTIFF ARJUN VASAN'S THIRD SET OF REQUESTS FOR ADMISSIONS

1603305600.2

**REQUEST FOR ADMISSION NO. 79:**

Admit that on Plaintiff's first day as a Checkmate employee, he raised the issue of the BYOD Policy conflicting with California Law in a private Slack thread with Agarwal.

**RESPONSE TO REQUEST FOR ADMISSION NO. 79:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the term "BYOD Policy," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects that the terms "raised the issue," "conflicting with California Law," and "in a private Slack thread" are so vague, ambiguous, and overbroad as to render the Request unintelligible.

Without waiving the foregoing objections, Responding Party responds as follows: Given that the Request is unintelligible, Responding Party lacks the ability to admit or deny it, and on that basis denies the Request.

**REQUEST FOR ADMISSION NO. 80:**

Admit that Plaintiff stated in the thread: "in california it's not even legal though… california employers must provide the work equipment for employees."

**RESPONSE TO REQUEST FOR ADMISSION NO. 80:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the terms "stated in the thread" are so vague, ambiguous, and overbroad as to render the Request unintelligible.

Without waiving the foregoing objections, Responding Party responds as follows: Given that the Request is unintelligible, Responding Party lacks the ability to admit or deny it, and on that basis denies the Request.

**REQUEST FOR ADMISSION NO. 81:**

Admit that Plaintiff stated he was not comfortable installing monitoring software on his personal computer and raised concerns about privacy and exposure

8

1  of personal devices.

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 81:**

3      Responding Party hereby incorporates the General Objections as though fully

4  set forth herein. Responding Party objects to this Request on the grounds that the

5  entirety of the Request is so vague, ambiguous, and overbroad as to render the Request

6  unintelligible. Responding Party further objects that the Request is compound,

7  containing multiple distinct inquiries within a single request, which is improper under

8  the applicable Rules.

9  **REQUEST FOR ADMISSION NO. 82:**

10      Admit that Plaintiff requested a company device rather than installing

11  monitoring software on his personal device.

12  **RESPONSE TO REQUEST FOR ADMISSION NO. 82:**

13      Responding Party hereby incorporates the General Objections as though fully

14  set forth herein. Responding Party objects to this Request on the grounds that the

15  terms "requested a company device" and "installing monitoring software" are vague,

16  ambiguous, and overbroad.  Responding Party further objects that the Request is

17  compound, containing multiple distinct inquiries within a single request, which is

18  improper under the applicable Rules.

19  **REQUEST FOR ADMISSION NO. 83:**

20      Admit that in the follow-up email, Plaintiff again requested a company device

21  and explained the basis for his request.

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 83:**

23      Responding Party hereby incorporates the General Objections as though fully

24  set forth herein. Responding Party objects to this Request on the grounds that the

25  terms "in the follow up-email" are so vague, ambiguous, and overbroad as to render

26  the Request unintelligible. Responding Party further objects that the terms "again

27  requested" and "explained the basis for his request" are vague, ambiguous, and

28  overbroad. Responding Party further objects that the Request is compound, containing

9

1  multiple distinct inquiries within a single request, which is improper under the
2  applicable Rules.

3  **REQUEST FOR ADMISSION NO. 84:**

4      Admit that Amy Brown emailed or slacked Plaintiff stating that Michael Bell
5  had stated that the entire VoiceBite's teams' laptops were reimbursed.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 84:**

7      Responding Party hereby incorporates the General Objections as though fully
8  set forth herein. Responding Party objects to this Request on the grounds that the
9  terms "emailed or slacked" and "stating that Michael Bell had stated that the entire
10 VoiceBite's teams' laptops were reimbursed" are so vague, ambiguous, and
11 overbroad as to render the Request unintelligible. Responding Party further objects
12 that the Request is compound, containing multiple distinct inquiries within a single
13 request, which is improper under the applicable Rules.

14 **REQUEST FOR ADMISSION NO. 85:**

15     Admit that Amy Brown emailed or slacked Plaintiff stating that Michael Bell
16 had stated that the entire VoiceBite's teams' laptops were reimbursed.

17 **RESPONSE TO REQUEST FOR ADMISSION NO. 85:**

18     Responding Party hereby incorporates the General Objections as though fully
19 set forth herein. Responding Party objects to this Request on the grounds that it is
20 duplicative of Request No. 14.

21 **REQUEST FOR ADMISSION NO. 86:**

22     Admit that Checkmate's management did not offer to purchase or reimburse a
23 work laptop.

24 **RESPONSE TO REQUEST FOR ADMISSION NO. 86:**

25     Responding Party hereby incorporates the General Objections as though fully
26 set forth herein. Responding Party objects to this Request on the grounds that the term
27 "Checkmate," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly
28 burdensome. Responding Party further objects to this Request to the extent it seeks

10

1  information protected from disclosure by the attorney-client privilege and/or the work

2  product doctrine. Responding Party further objects that the term "management" is

3  vague, ambiguous, and overbroad. Responding Party further objects that the Request

4  is compound, containing multiple distinct inquiries within a single request, which is

5  improper under the applicable Rules.

6  **REQUEST FOR ADMISSION NO. 87:**

7         Admit that in the Oct. 14 DM, Plaintiff again raised BYOD

8  legality/compliance and the need for a company device.

9  **RESPONSE TO REQUEST FOR ADMISSION NO. 87:**

10        Responding Party hereby incorporates the General Objections as though fully

11  set forth herein. Responding Party objects to this Request on the grounds that the term

12  "Oct. 14 DM," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly

13  burdensome. Responding Party further objects that the terms "again raised BYOD

14  legality/compliance" and "the need for a company device" is vague, ambiguous, and

15  overbroad. Responding Party further objects that the Request is compound, containing

16  multiple distinct inquiries within a single request, which is improper under the

17  applicable Rules.

18  **REQUEST FOR ADMISSION NO. 88:**

19        Admit Agarwal rejected Plaintiff's request for a work laptop, and stated, among

20  other things "Alright then you can't work for the company.", "we won't hire people

21  who are stickler for the law… Is that clear?".

22  **RESPONSE TO REQUEST FOR ADMISSION NO. 88:**

23        Responding Party hereby incorporates the General Objections as though fully

24  set forth herein. Responding Party objects to this Request on the grounds that the

25  terms "among other things" are so vague, ambiguous, and overbroad as to render the

26  Request unintelligible. Responding Party further objects that the terms "rejected

27  Plaintiff's request" are vague, ambiguous, and overbroad. Responding Party further

28  objects that the Request is compound, containing multiple distinct inquiries within a

11

1  single request, which is improper under the applicable Rules.

2  **REQUEST FOR ADMISSION NO. 89:**

3      Admit Agarwal escalated the private discussion to the #voicemate group

4  channel.

5  **RESPONSE TO REQUEST FOR ADMISSION NO. 89:**

6      Responding Party hereby incorporates the General Objections as though fully

7  set forth herein. Responding Party objects to this Request on the grounds that the

8  terms "the private discussion" and "#voicemate group channel" are so vague,

9  ambiguous, and overbroad as to render the Request unintelligible. Responding Party

10 further objects that the term "#voicemate," as defined by Plaintiff, is vague,

11 ambiguous, overbroad, and unduly burdensome. Responding Party further objects that

12 the term "escalated" is vague, ambiguous, and overbroad.

13     Without waiving the foregoing objections, Responding Party responds as

14 follows: Given that the Request is unintelligible, Responding Party lacks the ability

15 to admit or deny it, and on that basis denies the Request.

16 **REQUEST FOR ADMISSION NO. 90:**

17     Admit after escalating to #voicemate, Agarwal stated the following:

18 @channel I'm moving a 1:1 conversation I am having with Arjun here and

19 documenting it here for everyone. Arj's point is that we need to provision equipments

20 and computers in order to hire good engineers. And that this is also a California law.

21 We at this point cannot do that because we have over 300 employees and that cash

22 outlay is huge. The tone from @arj is absolutely in the spirit of creating a problem

23 and creating a confrontation, rather than having a mutual conversation and trying to

24 find a solution with a company he just joined. I wanted to make sure everyone is aware

25 and ask if everyone shares Arj's belief. If that continues to be the case, I won't mind

26 having a difficult conversation with the individual at whatever stage of the company

27 to make sure we build a cohesive company for long term benefits.

28 ///

**RESPONSE TO REQUEST FOR ADMISSION NO. 90:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the terms "after escalating to #voicemate" are so vague, ambiguous, and overbroad as to render the Request unintelligible. Responding Party further objects that the term "#voicemate," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects that the term "escalating" is vague, ambiguous, and overbroad.

Without waiving the foregoing objections, Responding Party responds as follows: Given that the Request is unintelligible, Responding Party lacks the ability to admit or deny it, and on that basis denies the Request.

**REQUEST FOR ADMISSION NO. 91:**

Admit Agarwal stated in the #voicemate channel "I can also promise if this is how it is going to be going ahead, I'd rather cut my losses right now. No employee is indispensable and I can put that in a formal notice."

**RESPONSE TO REQUEST FOR ADMISSION NO. 91:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the terms "#voicemate channel" are so vague, ambiguous, and overbroad as to render the Request unintelligible. Responding Party further objects that the term "#voicemate," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome.

Without waiving the foregoing objections, Responding Party responds as follows: Given that the Request is unintelligible, Responding Party lacks the ability to admit or deny it, and on that basis denies the Request.

**REQUEST FOR ADMISSION NO. 92:**

Admit that Agarwal stated in the #voicemate channel "The situation is quite clear Arj - you don't want to use your personal computer for work reasons. We don't provide work computers. The only solution is for you to quit. Do you know of any

1 other alternative?"

2 **RESPONSE TO REQUEST FOR ADMISSION NO. 92:**

3    Responding Party hereby incorporates the General Objections as though fully

4 set forth herein. Responding Party objects to this Request on the grounds that the

5 terms "#voicemate channel" are so vague, ambiguous, and overbroad as to render the

6 Request unintelligible. Responding Party further objects that the term "#voicemate,"

7 as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome.

8    Without waiving the foregoing objections, Responding Party responds as

9 follows: Given that the Request is unintelligible, Responding Party lacks the ability

10 to admit or deny it, and on that basis denies the Request.

11 **REQUEST FOR ADMISSION NO. 93:**

12    Admit Agarwal stated in the #voicemate channel "Sure, then we will consult

13 with security and if there is no other alternative, then I am happy to fire

14 you"

15 **RESPONSE TO REQUEST FOR ADMISSION NO. 93:**

16    Responding Party hereby incorporates the General Objections as though fully

17 set forth herein. Responding Party objects to this Request on the grounds that the

18 terms "#voicemate channel" are so vague, ambiguous, and overbroad as to render the

19 Request unintelligible. Responding Party further objects that the term "#voicemate,"

20 as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome.

21    Without waiving the foregoing objections, Responding Party responds as

22 follows: Given that the Request is unintelligible, Responding Party lacks the ability

23 to admit or deny it, and on that basis denies the Request.

24 **REQUEST FOR ADMISSION NO. 94:**

25    Admit that Plaintiff stated in response or shortly thereafter: "so you will

26 terminate me for pointing out a violation of the law?"

27 **RESPONSE TO REQUEST FOR ADMISSION NO. 94:**

28    Responding Party hereby incorporates the General Objections as though fully

14

set forth herein. Responding Party objects to this Request on the grounds that the terms "stated in response or shortly thereafter" are so vague, ambiguous, and overbroad as to render the Request unintelligible. Responding Party further objects that the Request is compound, containing multiple distinct inquiries within a single request, which is improper under the applicable Rules.

**REQUEST FOR ADMISSION NO. 95:**

Admit that Plaintiff continued, stating "i think there are laws against that"

**RESPONSE TO REQUEST FOR ADMISSION NO. 95:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the terms "Plaintiff continued, stating" are so vague, ambiguous, and overbroad as to render the Request unintelligible.

Without waiving the foregoing objections, Responding Party responds as follows: Given that the Request is unintelligible, Responding Party lacks the ability to admit or deny it, and on that basis denies the Request.

**REQUEST FOR ADMISSION NO. 96:**

Admit that Agarwal responded "sure, if that's the route you want to go I'd rather deal with that headache than the conversation we are having here"

**RESPONSE TO REQUEST FOR ADMISSION NO. 96:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the terms "Agarwal responded" are so vague, ambiguous, and overbroad as to render the Request unintelligible.

Without waiving the foregoing objections, Responding Party responds as follows: Given that the Request is unintelligible, Responding Party lacks the ability to admit or deny it, and on that basis denies the Request.

**REQUEST FOR ADMISSION NO. 97:**

Admit that Plaintiff re-raised the BYOD issue in a Slack DM to Agarwal on

15

Case 2:25-cv-00765-MEMF-AS    Document 113-16    Filed 11/03/25    Page 37 of 46
Page ID #:3039

1  October 14, 2024.

2  **RESPONSE TO REQUEST FOR ADMISSION NO. 97:**

3  Responding Party hereby incorporates the General Objections as though fully

4  set forth herein. Responding Party objects to this Request on the grounds that the

5  terms "Plaintiff re-raised," "BYOD issue," and "in a Slack DM" are so vague,

6  ambiguous, and overbroad as to render the Request unintelligible.

7  Without waiving the foregoing objections, Responding Party responds as

8  follows: Given that the Request is unintelligible, Responding Party lacks the ability

9  to admit or deny it, and on that basis denies the Request.

10  **REQUEST FOR ADMISSION NO. 98:**

11  Admit that Agarwal called a meeting with Plaintiff, Michael Bell and Robert

12  Nessler.

13  **RESPONSE TO REQUEST FOR ADMISSION NO. 98:**

14  Responding Party hereby incorporates the General Objections as though fully

15  set forth herein. Responding Party objects to this Request on the grounds that the

16  terms "called a meeting" are so vague, ambiguous, and overbroad as to render the

17  Request unintelligible.

18  Without waiving the foregoing objections, Responding Party responds as

19  follows: Given that the Request is unintelligible, Responding Party lacks the ability

20  to admit or deny it, and on that basis denies the Request.

21  **REQUEST FOR ADMISSION NO. 99:**

22  Admit that this was a recorded Zoom meeting.

23  **RESPONSE TO REQUEST FOR ADMISSION NO. 99:**

24  Responding Party hereby incorporates the General Objections as though fully

25  set forth herein. Responding Party objects to this Request on the grounds that the

26  entirety of the Request is so vague, ambiguous, and overbroad as to render the Request

27  unintelligible.

28  Without waiving the foregoing objections, Responding Party responds as

1  follows: Given that the Request is unintelligible, Responding Party lacks the ability
2  to admit or deny it, and on that basis denies the Request.

3  **REQUEST FOR ADMISSION NO. 100:**

4      Admit that after the Oct. 14 Meeting, Bell issued the HR Write-Up to Plaintiff
5  and cc'd HR.

6  **RESPONSE TO REQUEST FOR ADMISSION NO. 100:**

7      Responding Party hereby incorporates the General Objections as though fully
8  set forth herein. Responding Party objects to this Request on the grounds that the
9  terms "Oct. 14 Meeting" and "HR Write-Up" as defined by Plaintiff, is vague,
10 ambiguous, overbroad, and unduly burdensome. Responding Party further objects that
11 the terms "after" are vague, ambiguous, and overbroad. Responding Party further
12 objects that the Request is compound, containing multiple distinct inquiries within a
13 single request, which is improper under the applicable Rules.

14 **REQUEST FOR ADMISSION NO. 101:**

15     Admit that the HR Write-Up demanded Plaintiff's signature.

16 **RESPONSE TO REQUEST FOR ADMISSION NO. 101:**

17     Responding Party hereby incorporates the General Objections as though fully
18 set forth herein. Responding Party objects to this Request on the grounds that the term
19 "HR Write-Up" as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly
20 burdensome. Responding Party further objects that the terms "demanded Plaintiff's
21 signature" are vague, ambiguous, and overbroad.

22     Without waiving the foregoing objections, Responding Party responds as
23 follows: Deny.

24 **REQUEST FOR ADMISSION NO. 102:**

25     Admit that the HR Write-Up used the word "rant" or stated that conduct "that
26 could be construed as a rant" could lead to dismissal.

27 **RESPONSE TO REQUEST FOR ADMISSION NO. 102:**

28     Responding Party hereby incorporates the General Objections as though fully

17

set forth herein. Responding Party objects to this Request on the grounds that the term "HR Write-Up" as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects that the terms "or stated that conduct" "could lead to dismissal" are vague, ambiguous, and overbroad. Responding Party further objects that the Request is compound, containing multiple distinct inquiries within a single request, which is improper under the applicable Rules.

**REQUEST FOR ADMISSION NO. 103:**

Admit that as of Oct. 14, 2024, Checkmate still had not provided Plaintiff a company laptop.

**RESPONSE TO REQUEST FOR ADMISSION NO. 103:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the term "Checkmate," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Responding Party further objects that the terms "company laptop" are vague, ambiguous, and overbroad.

Without waiving the foregoing objections, Responding Party responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 104:**

Admit that Plaintiff asked to defer responding to the HR Write-Up due to his workload preparing for the October 23 Popeyes demo.

**RESPONSE TO REQUEST FOR ADMISSION NO. 104:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the term "HR Write-Up" as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects that the terms "asked to defer responding" and "the October 23 Popeyes demo" are vague, ambiguous, and

18

overbroad. Responding Party further objects that the Request is compound, containing multiple distinct inquiries within a single request, which is improper under the applicable Rules.

**REQUEST FOR ADMISSION NO. 105:**

Admit that Plaintiff mentioned that he hadn't slept in days and stated words to the effect that he was "going crazy" preparing for the demo.

**RESPONSE TO REQUEST FOR ADMISSION NO. 105:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the term the terms "mentioned" and "words to the effect" are vague, ambiguous, and overbroad. Responding Party further objects that the Request is compound, containing multiple distinct inquiries within a single request, which is improper under the applicable Rules.

**REQUEST FOR ADMISSION NO. 106:**

Admit that you did not agree to postpone responding to the HR Write-Up.

**RESPONSE TO REQUEST FOR ADMISSION NO. 106:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the term "HR Write-Up" and "You," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Responding Party further objects that the terms "agree to postpone responding" are vague, ambiguous, and overbroad.

Without waiving the foregoing objections, Responding Party responds as follows: Deny.

**REQUEST FOR ADMISSION NO. 107:**

Admit that you did not acknowledge or address Plaintiff's expressed health issues.

19

1  **RESPONSE TO REQUEST FOR ADMISSION NO. 107:**

2       Responding Party hereby incorporates the General Objections as though fully

3  set forth herein. Responding Party objects to this Request on the grounds that the

4  terms "HR Write-Up" and "You," as defined by Plaintiff, is vague, ambiguous,

5  overbroad, and unduly burdensome. Responding Party further objects to this Request

6  to the extent it seeks information protected from disclosure by the attorney-client

7  privilege and/or the work product doctrine. Responding Party further objects that the

8  terms "did not acknowledge or address" and "health issues" are vague, ambiguous,

9  and overbroad. Responding Party further objects that the Request is compound,

10  containing multiple distinct inquiries within a single request, which is improper under

11  the applicable Rules.

12  **REQUEST FOR ADMISSION NO. 108:**

13       Admit that Plaintiff was terminated on November 14, 2024, within one month

14  of the Oct. 14 DM and HR Write-Up.

15  **RESPONSE TO REQUEST FOR ADMISSION NO. 108:**

16       Responding Party hereby incorporates the General Objections as though fully

17  set forth herein. Responding Party objects to this Request on the grounds that the

18  terms "Oct. 14 DM" and "HR Write-Up," as defined by Plaintiff, is vague,

19  ambiguous, overbroad, and unduly burdensome. Responding Party further objects that

20  the terms "was terminated" are vague, ambiguous, and overbroad. Responding Party

21  further objects that the Request calls for a legal conclusion rather than a factual

22  response. Responding Party further objects that the Request is compound, containing

23  multiple distinct inquiries within a single request, which is improper under the

24  applicable Rules.

25  **REQUEST FOR ADMISSION NO. 109:**

26       Admit that in Checkmate's Answer, you admitted that Plaintiff raised BYOD

27  issues.

28  **RESPONSE TO REQUEST FOR ADMISSION NO. 109:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the term "Checkmate" and "You," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Responding Party further objects that the terms "BYOD issues" are vague, ambiguous, and overbroad. Responding Party further objects that the Request calls for a legal conclusion rather than a factual response.

**REQUEST FOR ADMISSION NO. 110:**

Admit that in declarations filed by Agarwal and/or Brown, you stated that the Oct. 14 meeting was convened due to a "barrage of over 40 Slack messages".

**RESPONSE TO REQUEST FOR ADMISSION NO. 110:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the terms "You" and "Oct. 14 Meeting," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Responding Party further objects that the terms "declarations filed" are vague, ambiguous, and overbroad. Responding Party further objects that the Request is compound, containing multiple distinct inquiries within a single request, which is improper under the applicable Rules.

**REQUEST FOR ADMISSION NO. 111:**

Admit that Plaintiff re-raised the BYOD issue in these Slack messages.

**RESPONSE TO REQUEST FOR ADMISSION NO. 111:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the terms "these Slack messages" are so vague, ambiguous, and overbroad as to render the Request unintelligible. Responding Party further objects that the terms "re-raised"

and "BYOD issue" are vague, ambiguous, and overbroad. Responding Party further objects that the Request calls for a legal conclusion rather than a factual response.

Without waiving the foregoing objections, Responding Party responds as follows: Given that the Request is unintelligible, Responding Party lacks the ability to admit or deny it, and on that basis denies the Request.

**REQUEST FOR ADMISSION NO. 112:**

Admit that in declarations filed by Agarwal and/or Brown, you acknowledged issuance of a final warning / formal write-up to Plaintiff on October 14, 2024.

**RESPONSE TO REQUEST FOR ADMISSION NO. 112:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the term "You," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects to this Request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine. Responding Party further objects that the terms "declarations filed" and "issuance of a final warning / formal write-up" are vague, ambiguous, and overbroad. Responding Party further objects that the Request is compound, containing multiple distinct inquiries within a single request, which is improper under the applicable Rules.

**REQUEST FOR ADMISSION NO. 113:**

Admit that the May Slack Thread termination statements immediately followed Plaintiff's message objecting to BYOD legality.

**RESPONSE TO REQUEST FOR ADMISSION NO. 113:**

Responding Party hereby incorporates the General Objections as though fully set forth herein. Responding Party objects to this Request on the grounds that the term "May Slack Thread," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly burdensome. Responding Party further objects that the terms "termination statements" and "Plaintiff's message objecting to BYOD legality" are vague,

22

1  ambiguous, and overbroad. Responding Party further objects that the Request calls

2  for a legal conclusion rather than a factual response.

3      Without waiving the foregoing objections, Responding Party responds as

4  follows: Deny.

5  **REQUEST FOR ADMISSION NO. 114:**

6      Admit that the HR Write-Up was issued the same day Plaintiff sent the Oct. 14

7  DM regarding BYOD.

8  **RESPONSE TO REQUEST FOR ADMISSION NO. 114:**

9      Responding Party hereby incorporates the General Objections as though fully

10  set forth herein. Responding Party objects to this Request on the grounds that the

11  terms "HR Write-Up" and "Oct. 14 DM," as defined by Plaintiff, are vague,

12  ambiguous, overbroad, and unduly burdensome. Responding Party further objects that

13  the terms "BYOD" are vague, ambiguous, and overbroad.

14      Without waiving the foregoing objections, Responding Party responds as

15  follows: Deny.

16  **REQUEST FOR ADMISSION NO. 115:**

17      Admit that Checkmate did not offer a company laptop or reimburse a separate

18  device at any time between May 1 and October 14, 2024.

19  **RESPONSE TO REQUEST FOR ADMISSION NO. 115:**

20      Responding Party hereby incorporates the General Objections as though fully

21  set forth herein. Responding Party objects to this Request on the grounds that the term

22  "Checkmate," as defined by Plaintiff, is vague, ambiguous, overbroad, and unduly

23  burdensome. Responding Party further objects to this Request to the extent it seeks

24  information protected from disclosure by the attorney-client privilege and/or the work

25  product doctrine. Responding Party further objects that the terms "company laptop"

26  and "reimburse a separate device" are vague, ambiguous, and overbroad. Responding

27  Party further objects that the Request is compound, containing multiple distinct

28  inquiries within a single request, which is improper under the applicable Rules.

1    **REQUEST FOR ADMISSION NO. 116:**

2        Admit that the attached Exhibit A is an accurate transcript of the May Slack

3    threads.

4    **RESPONSE TO REQUEST FOR ADMISSION NO. 116:**

5        Responding Party hereby incorporates the General Objections as though

6    fully set forth herein. Responding Party objects to this Request on the grounds that

7    the term "May Slack Threads," as defined by Plaintiff, is vague, ambiguous,

8    overbroad, and unduly burdensome. Responding Party further objects that the terms

9    "accurate transcript" are vague, ambiguous, and overbroad.

10        Without waiving the foregoing objections, Responding Party responds as

11    follows: Deny.

12

13

14    Date: October 10, 2025                    K&L GATES LLP

15

16                                              _____

17                                              Ryan Q. Keech (SBN 280306)
                                                Stacey Chiu (SBN 321345)
                                                Rebecca I. Makitalo (SBN 330258)

18                                              Jacob R. Winningham (SBN 357987)

19                                              10100 Santa Monica Boulevard, 8th Floor
                                                Los Angeles, California 90067

20                                              Telephone: 310.552.5000

21                                              Facsimile: 310.552.5001

22                                              *Attorneys for Defendant and Counter-*

23                                              *Claimant CHECKMATE.COM IN*

24

25

26

27

28

CHECKMATE.COM, INC.'S RESPONSES TO PLAINTIFF ARJUN VASAN'S THIRD SET OF REQUESTS FOR
ADMISSIONS

1603305600.2

**PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California, over the age of eighteen years, and not a party of the within action.  My business address is 10100 Santa Monica Blvd. 8th Floor Los Angeles, CA 90067.

On **October 10, 2025** , I served the foregoing document(s) described as:

- **CHECKMATE.COM, INC.'S RESPONSES TO PLAINTIFF ARJUN VASAN'S THIRD SET OF REQUESTS FOR ADMISSIONS**

on the interested parties in this action as follows:

Arjun Vasan
Email: arjun.vasan@gmail.com

*Plaintiff Pro Se*

☑    **(BY ELECTRONIC MAIL)** Pursuant to C.R.C. 2.251 or agreement by all parties, I served the described document(s) by emailing it to each of the aforementioned electronic mail addresses and the transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on **October 10, 2025,** at Los Angeles, California.


*/s/Nicole Adasha*
Nicole Adasha