```
FILED
CLERK, U.S. DISTRICT COURT
10/31/25
CENTRAL DISTRICT OF CALIFORNIA
BY        CS        DEPUTY
DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM
```

Vasan Varadarajan
vsvconsult@gmail.com
12615 193rd Street
Cerritos, CA 90703
(562) 448-2878
Non-Party

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Arjun Vasan**, <br><br> Plaintiff and Counter-Defendant <br><br> vs. <br><br> **Checkmate.com, Inc.**, <br> (dba "Checkmate"), <br> Defendant and Counterclaimant | Case No.: 2:25−cv−00765−MEMF−ASx <br> Hon. Alka Sagar \| DISCOVERY MATTER <br><br> **NON-PARTY VASAN VARADARAJAN'S OPPOSITION TO CHECKMATE.COM'S MOTION TO COMPEL; DECLARATION OF VASAN VARADARAJAN;** <br><br> Complaint Filed: January 28, 2025 <br> Hearing Date: November 20, 2025 <br> Hearing Time: 11:00 A.M. <br> Courtroom: 540 |

TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

I, non-party Vasan Varadarajan, respectfully file this opposition to Checkmate.com, Inc ("Checkmate")'s Motion to Compel and further join Plaintiff Arjun Vasan's opposition for the purposes of: (i) phasing, (ii) case-specific context (iii) a review of the pending Rule 12 motion to weigh relevance and proportionality. I adopt Dkt. 110 by reference to minimize any duplication of arguments. Relief sought here is confined to Rule 45/Rule 26.

i

As Checkmate is likely to accuse my son of "interference", I will clarify here that while he has assisted me, the arguments made are mine and in my interests. Without his aid I would be unable to reference relevant filings in this case—and have no experience filing in federal court. I have made efforts to secure counsel, but the due date of this opposition provided insufficient time to do so. See Declaration of Vasan Varadarajan ("Decl.") filed herewith at ¶ 2.

# TABLE OF CONTENTS

**TABLE OF CONTENTS** .......................................................................................................... III

**MEMORANDUM OF POINTS AND AUTHORITIES** ........................................................... 1

    I.    INTRODUCTION .......................................................................................................... 1

    II.   MY DECLARATION IN SDNY ON JUNE 2, 2025 ........................................................ 2

    III.  CHECKMATE'S SUBPOENA SERVED ON AUGUST 14, 2025 .................................. 3

    IV.  CORRESPONDANCE WITH COUNSEL .................................................................... 3

    V.   STANDARDS .................................................................................................................. 4

    VI.  ARGUMENT ................................................................................................................... 6

        A. CONTEMPT PREMATURE; ADEQUATE EXCUSE WAS PROVIDED; NO ORDER VIOLATED ............................. 6

        B. THE SUBPOENA IS VAGUE, OVERLY BROAD AND INCOMPREHENSIBLE TO A NON-PARTY ......................... 7

        C. THE SUBPOENA IS DISPROPORTIONATE, AND RELEVANCE IS CONDITIONAL ............................................ 8

        D. A REMOTE DEPOSITION LIMITS UNDUE BURDEN .................................................................................... 9

        E. CHECKMATE'S SANCTIONS MATH CONFIRMS UNREASONABLENESS ..................................................... 9

        F. JOINDER WITH PLAINTIFF'S OPPOSITION TO THE MOTION ..................................................................... 10

    VII. CONCLUSION ............................................................................................................. 10

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6** ......................................... 12

**DECLARATION OF VASAN VARADARAJAN** ................................................................. 13

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

I am a retired 70-year-old non-party with no relationship to VoiceBite or Checkmate. The latter says I have claims to code bearing my name. I don't. I said so under oath. Whether this code was even acquired in the merger is addressed in my son's opposition § III.A-C, but in any case, I did not "voluntarily insert" myself into this action. I declared in New York (not here) to disclaim rights that Checkmate was falsely alleging I had. See Counterclaims ("CC") ¶ 28.

Despite this absurdity, I did not ignore the subpoena. I timely served Rule 45(d)(2)(B) objections; asked for a remote deposition under Rule 30(b)(4) as in-person would be a hardship; proposed reasonable time limits; and proportionate document parameters. Counsel refused to narrow scope (which the Court found "overly broad"), insisted on an appearance at its office and made disrespectful remarks about my health. It now seeks contempt without a prior court order, with a fully briefed 12(b)(6) motion pending that could render my deposition moot.

With limited visibility in this case, I understand that Checkmate has not disclosed any damage computation and is yet to depose witnesses far more relevant to the parties' claims and defenses than myself. See Nessler Decl. ¶¶ 2-6; Dkt. 110. In sum, the Court may weigh if the motion is brought in good faith—or to frustrate my son by harassing me.

### II. MY PRESENCE IN THE COUNTERCLAIMS

CC ¶¶ 24-29 presents screenshots of various files leading up to the "smoking gun" of my LinkedIn profile. The dots do not connect nearly as well as Checkmate attempts to allege. First, the "evidence" consists of credentials, documentation and configuration—not code or IP—and a 2018 code file with "__author__ == Arjun Vasan, Vasan Varadarajan\\__copyright__==2018". The "cyborg" references—domain, server and account names, are even less persuasive.

A file-level "author" or "copyright" string does not establish or invalidate title without a written instrument. See 17 U.S.C. §§ 201(a)–(b) and § 204. The non-evidence presented does not begin to state a claim for IP misuse—the predicate here for fraud/breach—and does not justify fishing into my past employers for multi-year periods. What might? A lawsuit or demand letter from those employers. Otherwise, the proposed discovery is simply wasteful.

1

### III. MY DECLARATION IN SDNY ON JUNE 2, 2025

Checkmate claims I "voluntarily inserted" myself "in this action". This is false. I filed a declaration supporting my son's motion to dismiss its own action in the Southern District of New York ("SDNY"), to support his jurisdiction arguments and *extricate* myself from the allegation that I was "another third party with claims to the code". See CC ¶ 28. My *insertion* began in a demand letter, sent by Checkmate to my son on December 6, 2024, weeks after his termination. This it admits, but glosses over: 'Plaintiff has made Mr. Varadarajan['s] … a core issue in this case. He asserts … that Checkmate served a "Notice of Claim" which "den[ied] him $122,000 in severance'. See Dkt. 101 at 9:20-24. The "Notice" featured the screenshots now in CC ¶¶ 24-27. After I declared, Checkmate judicially noticed my son's SDNY motion and dismissed the SDNY action to file its counterclaims here on July 9, 2025. See Dkt. 60, 67, 69, 71.

My son, and his cofounders, informed Checkmate that I had no claims before it filed, but it did so anyway—featuring me, a non-party, in a public filing (initially in New York State Court on February 14, 2025, and later removed to SDNY by my son). I am the only person named not my son, and the only face pictured. See CC ¶ 27. I was publicly linked with inflammatory claims against my own son, which I knew were untrue regarding my alleged rights. I did not consent to this. Relevant or not, "voluntary" is not an accurate description of my presence in this litigation.

Checkmate says I contradict myself by claiming minimal and peripheral relevance. This is false. I made no claims on "proprietary code", only stating I **co-authored** the "personal code" "in question" in the CC (audio.py, naming me as co-author), that my son had permission to it and it was unrelated to Large Language Model ("LLM") code "being offered". I claimed no rights or relevance beyond the statements made. I have never seen the contracts or disclosure schedules (listing what was acquired). My relevance is minimal and peripheral in comparison to my son, his cofounders and Checkmate's executives, none of whom have been deposed. See Nessler Decl. ¶¶ 2-6. There is no contradiction. Dkt. 101 at 13:26-28 is wrong.

It is notable that at hearing on its own motion to dismiss or transfer, counsel's late request for notice of my son's SDNY filing (and my declaration) backfired, as it mischaracterized his statements as "admissions" and introduced his own evidence as undisputed. See Dkt. 69 at 9-15.

1  My son noted that his declaration was entirely consistent with his complaint, paragraph by
2  paragraph. He then cited a letter from K&L Gates general counsel—from his filing; arguing
3  VoiceBite's attorney privilege transferred—to reveal its inconsistency in later arguing he was
4  "individually represented" to skirt Labor Code Section 925. See *Id*. at 13-14. The Court's final
5  order adopted my son's plain language reading over counsel's rhetoric. See Dkt. 67 at 15:15-27.

### IV. CHECKMATE'S SUBPOENA SERVED ON AUGUST 14, 2025

On August 14, 2025, I was served the subpoena outside my home in Cerritos, California. I informed my son, who received no prior party notice (which the subpoena requires under Rule 45(a)(2)). Decl. ¶ 3. After he inquired, counsel sent untimely "notice" on August 15. This tactic repeated here—the motion was noticed with no time to seek counsel, or to draft and file as a non-party with no history in this case. A reasonable party would take circumstances into account, not try to gain procedural advantage by surprise. In any case, the subpoena was described by this Court as "overly broad", which it is. See Dkt. 85 fn.2. I timely objected under Rule 45.

### V. CORRESPONDANCE WITH COUNSEL

Checkmate counsel has persisted in a hostile manner throughout this process. I served timely Rule 45 objections, explained in-person appearance would be a hardship, and offered a remote, time-limited deposition with reasonable topic limits. *Id*. ¶ 5-8. Counsel never put forth any reason why a remote deposition was required, when the federal rules expressly allow this option. No topics were concretely narrowed, despite the Court's own finding that they were "overly broad". Counsel has also never offered a time-limit—only stating I would get "breaks", based on its own assessment of my health concerns—which I would have to disclose in detail. *Id*.

Checkmate repeatedly made rude and insensitive remarks—asserting entitlement to an immediate deposition due to an expectation that any health issue could only get "worse". I can only assume this remark was based on my age and intentionally aggressive. It stated that since I was "unemployed" I was not "otherwise occupied". I am retired, but in any case, this is presumptuous and offensive. Counsel does not hide these uncivil statements—it filed them (Dkt. 101-15 at 2)—showing disregard for the Court's standing order, which "expects everyone in [the] courtroom to treat each other with dignity and respect.". See Civil Standing Order § XVI.

3

NON-PARTY VASAN VARADARAJAN'S OPPOSITION TO CHECKMATE.COM, INC'S MOTION TO COMPEL

Checkmate's purported "willingness" to "work with" me to narrow scope is unavailing. It refused to put any reduction in scope in writing. Counsel left voicemails including a "recorded line" notice—with no prior agreement on recording any telephonic conferences. *Id*. ¶ 9. Needless to say, I declined to consent, which the motion cites as evidence of non-cooperation: "Once I identified myself, he hung up". See Makitalo Decl. ¶ 20 (Dkt. 101-1). In any case, I continued to communicate by email, so all parties would be on the record.

Counsel made unclear statements without any commitments. For example, stating that Checkmate would work around scheduling issues—but despite raising my unavailability until mid-November due to family obligations, now claiming I never raised a scheduling conflict. The (remote) November dates offered, were within the case timeline, and noted as acceptable by counsel—but only if I conceded every other point. If not, counsel threatened to seek contempt.

Counsel claims I am coordinating with my son since I noted its failure to timely oppose his pending motion to dismiss, and that if the counterclaims were dismissed, I would be entirely irrelevant to this case. My son stays at our family home currently. *Id*. ¶ 2. He has not purported himself to be an attorney. Any assistance was at my request, including in attempting to secure counsel. *Id*. But the subpoena is overly broad on its face, as the Court noted. It did not require "interference" to realize that responding would be a burdensome endeavor. My awareness of the case, and reluctance to expose my family to an undue invasion of their privacy—and mine—when the issue could be soon mooted, is not improper. See Dkt. 101 at 7:23, at 24:14-17.

Counsel refused my request for fees to cover responding to the subpoena. I was willing to cover the costs for my proposed search-term limited scope, given a remote deposition. Counsel did not make any counteroffer of partial coverage, or (as noted) agree to any reduction in scope to avoid significant costs (contra Rule 45). Instead, counsel asks the Court to hold a non-party in contempt and claims it spent $15,000 on this motion. See Dkt. 101 at 24:23-27. Any reasonable party, seeking essential discovery, would have first attempted to meet in the middle.

## VI.  STANDARDS

**Proportionality; protective orders**. Fed. R. Civ. P. 26(b)(1), 26(b)(2)(C), 26(c)(1). Courts have discretion to cabin discovery to avoid "annoyance, embarrassment, oppression, or undue burden or expense." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–36 (1984).

**Non-party subpoenas; undue burden; cost-shifting**. Fed. R. Civ. P. 45(d)(1) (serving party must avoid undue burden; court must enforce that duty); 45(d)(3)(A) (quash/modify for undue burden or privilege); 45(d)(2)(B)(ii) (when compelling compliance after objections, court must protect non-party from significant expense).

**Contempt requires a violated order; and district judge**. Timely Rule 45(d)(2)(B) objections halt any duty to comply until the court orders compliance; contempt under Rule 45(g) requires violation of a "specific and definite court order." *McCoy v. Sw. Airlines Co.*, 211 F.R.D. 381, 385 (C.D. Cal. 2002); *In re Plise*, 506 B.R. 870, 878–79 (B.A.P. 9th Cir. 2014). *Balla v. Idaho State Bd. of Corr.*, 869 F.2d 461, 465–66 (9th Cir. 1989) (clear and convincing evidence, definite court command); *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993) (same). Absent consent (not present here), a magistrate judge lacks authority for contempt rulings in these circumstances. The procedure is to certify facts to a district judge under 28 U.S.C. § 636(e)(6); the district judge then decides whether to issue an order to show cause and whether contempt is appropriate. See *Bingman v. Ward*, 100 F.3d 653, 656–57 (9th Cir. 1996) (magistrate lacked jurisdiction to enter contempt order); *DeLorme v. Big Think Capital, Inc.*, No. 2:23-mc-00037-FLA (MAR), ECF No. 11 (C.D. Cal. Apr. 26, 2023) (Rocconi, M.J.) (absent consent, magistrate may only certify under § 636(e)(6), rare to use contempt without first ordering compliance and affording a meaningful opportunity to be heard).

**Stay/phase discovery pending threshold issues**. Courts have wide latitude to stay or phase discovery while dispositive or threshold issues are addressed, as is the case here with a fully briefed 12(b)(6) motion. *Little v. City of Seattle*, 863 F.2d 681, 685 (9th Cir. 1988); *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *Jarvis v. Regan*, 833 F.2d 149, 155 (9th Cir. 1987); *Mujica v. AirScan Inc.*, 771 F.3d 580, 593–94 (9th Cir. 2014).

**Protection for non-parties; narrow tailoring**. Non-party discovery "limited to protect third parties" and must be narrowly tailored. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577 (N.D. Cal. 2007); *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637–38 (C.D. Cal. 2005).

**Remote depositions**. Rule 30(b)(4) (court may order depositions by remote means for good cause, including health and burden concerns).

**Fee-shifting on motions to compel**; To the extent motion-expense fee-shifting is sought, courts may deny fees where an award would be unjust, Fed. R. Civ. P. 37(a)(5)(A)(iii). For non-party subpoenas, cost protection and fair allocation are addressed primarily under Rule 45(d)(1) and 45(d)(2)(B)(ii). See *also Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (cost-shifting required to protect non-parties).

## VII. ARGUMENT

### A. Contempt Premature; Adequate Excuse Was Provided; No Order Violated

<u>Jurisdiction</u>. Checkmate's contempt request is not properly before a Magistrate Judge. Under 28 U.S.C. § 636, a magistrate judge lacks contempt authority absent consent (which both sides declined). The magistrate may certify facts to the district judge under § 636(e)(6)(B)(iii) for a possible order to show cause. Civil contempt requires clear and convincing evidence of a violation of a clear, specific, and definite court command. There is no such certainty here.

<u>Documents</u>. I timely served written objections under Rule 45(d)(2)(B), which ended any duty to produce "unless and until" the Court entered a compelling order; contempt lies only for disobeying such an order or a subpoena "without adequate excuse." Fed. R. Civ. P. 45(g).

<u>Deposition</u>. Checkmate characterizes the subpoena as a "court order." Even if the Court viewed it that way, contempt still requires a violation of a "specific and definite" directive, proven by clear and convincing evidence. Checkmate undermined any "clear command" by purporting a willingness to adjust scheduling. Dkt. 101-10 at 2, 101-11 at 2, 3. I explained an in-person appearance was difficult due to health constraints; that family obligations rendered me unavailable before mid-November; and I proposed a remote deposition on reasonable dates. A resolution seemed plausible. But the initial date passed, and counsel pivoted to threaten contempt unless I accepted all its conditions (in which case, mid-November was acceptable). Dkt. 101-13

at 2, 101-15 at 2. This back-and-forth defeats any clear, unequivocal directive on date, format, or location. See *Balla*, 869 F.2d at 465–66; *Dual-Deck*, 10 F.3d at 695.

**Adequate excuse & least-burdensome means**. I did not ignore the subpoena. I objected on time, continued to correspond, and offered concessions: (i) a Rule 30(b)(4) remote deposition on reasonable dates; and (ii) proportional production tied to any conditional relevance. I noted I would obtain a physician's note (Decl. ¶ 10) and that I have caregiver duties for my 92-year-old mother-in-law, who cannot be left alone; my wife works full time, so an in-person deposition burdens my family. *Id.* ¶¶ 11, 12. I am prepared to provide the documentation in camera to Chambers. *Id.* ¶¶ 10-11. The Rules require parties to avoid undue burden on non-parties and authorize protective conditions. See Rule 45(d)(1); Rule 26(c); Rule 30(b)(4).

**Cost protection.** I am a retired non-party living on savings and social security. *Id.* ¶ 13. If my testimony is truly critical, Checkmate should bear the significant expense of any compelled compliance; the Court must protect non-parties from such expense. Rule 45(d)(2)(B)(ii)*; Legal Voice*, 738 F.3d at 1184–85. The rules preclude fees in circumstances that would make such an award unjust. Even if the Court finds technical failure to comply—this is such a circumstance.

**Summary**. The contempt request should be denied (or not certified to the district judge). If a deposition proceeds, it should be remote under Rule 30(b)(4), set on reasonable dates once threshold issues are resolved by the 12(b)(6) motion, with permission for in camera submission of my medical/caregiver materials and appropriate cost-protection for any significant expense.

B.  **The Subpoena is Vague, Overly Broad and Incomprehensible to a Non-party**

The subpoena's "Schedule A" defines "THE VOICEBITE CODE" as "the proprietary code Checkmate acquired from VoiceBite by way of the VoiceBite Transaction," without any way to identify what code is meant, especially as a non-party. No appendix of files is provided—I am left in the dark beyond the screenshots in the counterclaims. Most categories depend on this definition—if not directly, by implication (prior company material where such conceivably may have been transferred). Finding my name in one file header (Dkt. 78 ¶ 24), Checkmate took a screenshot of my LinkedIn profile, slapped it into CC ¶ 27 as "evidence" and claims a right to comb through my personal and business life—and through me, my son's. Moreover, the file that

I attested to co-authoring is alleged to date 2018. Yet Checkmate seeks documents from where I worked from 2021-2023. No *link* between this file and the companies is alleged, other than the former bears my name, and I worked at the latter. That is not relevance.

The same "Schedule A" also seeks *all communications* with my son January 1, 2023, to the present—a demand that would expose personal, family, attorney-client, medical, and other irrelevant protected matter. When I objected, counsel insisted "private family communications" were fair game, and that I divulge my son's health-related material as "he has put [his health] at issue." Moreover, "to the present" is concerning, as is "all documents and communications" related "to this action". Counsel appears to seek insight into my son's litigation strategy, unrelated to any legitimate claims or defenses. See Dkt. 101-2 at 7-8 ¶¶ 17, 23; 101-13 at 2.

### C. The Subpoena is Disproportionate, and Relevance is Conditional

Such a "massively overbroad" and "patently unlawful" subpoena is expressly condemned by the Ninth Circuit in *Theofel v. Farey-Jones*, 359 F.3d 1066, 1072 (9th Cir. 2004), where the court held that an unlimited demand for "all emails" violated Rule 45 and constituted bad faith. As *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003) further explains, discovery "must be narrowly tailored and reasonably calculated to lead to admissible evidence," not "a vehicle for harassment or intrusion into private affairs." A subpoena that indiscriminately demands family communications and health records is no less "a piece of paper masquerading as legal process" and is precisely what Rule 45(d)(1) forbids. The Court has given notice that the requests are "overly broad". Despite this, and despite my objections, no narrowing was offered. Accordingly, sanctions (against Checkmate) are warranted under Rule 45(d)(1), which imposes an affirmative duty on counsel to take reasonable steps to avoid undue burden or expense on non-party witness. **Here, Checkmate affirmatively took steps to ensure undue burden.**

These allegations arose in the weeks after my son's termination. Counsel's December 4, 2024, letter attached these screenshots as purported "evidence". Counsel cannot rely on my June 2, 2025, SDNY declaration as a "voluntary insertion", when it dragged me into this dispute at the outset. I had no role at VoiceBite or Checkmate. *Id.* ¶ 3. Any relationship was with my son and his cofounders and was advisory at most during the relevant period. *Id.* Robert Nessler, one of

8

1  his cofounders, has clarified my VoiceBite ties. See Nessler Decl. ¶¶ 2-6. He also confirms none
2  of the founders or Checkmate's own executives have been deposed. Id. Courts require party
3  discovery to be complete, substantially, before burdening non-parties as Checkmate seeks.

4        Checkmate asserts my "sworn declaration testimony … submitted and repeatedly relied
5  on by Plaintiff in this action confirms that [I am] the core of Plaintiff's defenses," and then cites
6  the New York docket for the text it quotes. See Dkt. 101 at 2, 8–12 (describing my declaration
7  and attaching signature page while citing SDNY Dkt. 36). Moreover, "repeatedly relied on"
8  misleads. *Checkmate* judicially noticed the New York filings (e.g. "submitted" them here); my
9  son did not file a declaration from me here. A review of the motion finds two mentions, neither
10 particularly relied on, and the Reply expressly relies only on material incorporated by reference
11 in the CC. See Motion to Dismiss, Dkt. 81; Reply, Dkt. 98.

12       Finally, any relevance I may have is entirely conditional on the purported assignment of
13 pre-VoiceBite code. Nessler Decl. ¶ 2 confirms I had no role in VoiceBite itself—my relevance
14 is scoped to this decidable legal question. This is discussed in depth in my son's brief (Dkt. 110
15 §§ III.A-C) (referring to pending 12(b)(6) motion), so I will rely on the arguments there.

16       **D.  A Remote Deposition Limits Undue Burden**

17       A remote format is the least-burdensome way to obtain testimony and is authorized by
18 the Rules. See Fed. R. Civ. P. 30(b)(4) (court may order testimony "by telephone or other remote
19 means"); Rule 45(d)(1) (issuing party must avoid undue burden on a non-party); Rule 26(c)(1)
20 (court may set discovery terms to prevent burden). Health constraints and family obligations that
21 require me to stay home are good cause to order that any deposition, if required at all, proceed
22 remotely. If an in-person deposition is ordered, I respectfully request it be scheduled after the
23 New Year, when my mother-in-law will shift to another relative's home. *Id.* ¶ 16.

24       **E.  Checkmate's Sanctions Math Confirms Unreasonableness**

25       Checkmate claims it will spend over $15,000 on this motion and duly seeks $5,000. All
26 the same, it refuses my request for costs of production or to narrow scope to limit costs. First, if
27 it is to be awarded any amount as compensation, it should have to prove the predicate. But in any
28 case, this plainly unreasonable. If compliance will be so costly that $10,000 spent litigating is

1. cheaper, the Court must invoke 45(d)(2)(B)(ii) to protect a non-party. Or, the true purpose is harassment, and the Court must decline enforcement. A third possibility, irrationality, is no better. All three paths conclude: sanctions against me are unwarranted. See Dkt. 101 at 24:14-27.

### F. Joinder with Plaintiff's Opposition to the Motion

I respectfully join and incorporate by reference the arguments in Plaintiff's opposition to the motion (ECF 110, filed October 31, 2025), to the extent it addresses: (i) a preview of the pending 12(b)(6) motion to determine relevance; (ii) his privacy and privilege interests in the requested categories; (iii) proportionality and non-party protections; (iv) case-specific context unavailable to me; (v) the Nessler Declaration; and (vi) the availability of the same or better information from party sources and by less intrusive means. My lack of visibility into the case as a non-party precludes me from many defenses. Here, joinder limits duplicate briefing, promotes fairness and improves judicial economy.

## VIII. CONCLUSION

Checkmate cries wolf in sheep's clothing. Failing to subdue my son with intimidation and bluster, it now redirects its angst toward his retired non-party father, smelling blood. Its incivility is calibrated to be hurtful; its tactics are calculated sharp practice. This motion was noticed with a 29-day lead time—two short of the 31 required for mail service. We called many attorneys—all too costly; none available on such short notice. *Id.* ¶ 2. Checkmate's howls of 'interference' and 'coordination' show self-evident frustration that its predatory playbook may again be thwarted. This posture is meretricious. The Court should disregard this wolf's unbecoming cries.

I respectfully ask the Court to deny the motion, and (i) stay my deposition until threshold issues are resolved, (ii) require proportionality and evidentiary baselines if any claims survive (terms defined with specificity and supported; damages computed with evidence; material not directly related to surviving claims must be excluded); (iii) require a remote format with time and topic limits; (iv) scope document requests to relevant searchable topics; (v) shift significant compliance costs to Checkmate as Rule 45 requires; and (vi) admonish Checkmate for imposing undue burden on a non-party with a deterrent monetary sanction payable to the Clerk.

Dated: **October 31, 2025**

In: **Cerritos, California**

**Respectfully**,

/s/ *Vasan Varadarajan*

**Vasan Varadarajan**, Non-Party

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6**

Non-Party Vasan Varadarajan certifies that this brief contains 3,925 words, which complies with L.R. 11- 6.1 and the Court's Civil Standing Order dated Aug. 27, 2025.

Dated: **October 31, 2025**

In: **Cerritos, California**

**Respectfully submitted**,

/s/ *Vasan Varadarajan*

**Vasan Varadarajan**,
Non-party

# DECLARATION OF VASAN VARADARAJAN

I, Vasan Varadarajan, declare:

1. I am a non-party who was served a subpoena to produce documents and appear for deposition by Checkmate.com, Inc ("Checkmate"), Defendant in this action. I submit this declaration in support of my opposition to Checkmate's motion to compel compliance with the same. I am over 18 years of age, have personal knowledge of the facts asserted herein, and if called to testify, could and would do so competently.

2. I am the father of Plaintiff Arjun Vasan ("Arjun"). Arjun currently lives with me and assisted in preparing this document after I requested his help. He is not, and has never claimed to be an attorney, and we attempted to find one but could not do so in time.

3. I never had a role at VoiceBite or Checkmate. I did not own equity in VoiceBite and was never paid by VoiceBite. My only relationship was with Arjun and his cofounders.

4. I filed a declaration in the Southern District of New York ("SDNY"), in support of Arjun's motion to dismiss Checkmate's action on or about June 2, 2025. I did not file any declaration here, prior to this discovery matter.

5. I was served a subpoena on August 14, 2025. Arjun learned of the subpoena from me and was not provided prior party notice as the subpoena itself states is required. I timely objected to the document requests on or about August 27.

6. Over the course of several emails with Checkmate counsel, I attempted in good faith to come to a resolution. I noted health constraints making it difficult to travel and sit for an in-person deposition. I further noted family obligations, including as one of two caregivers for my 92-year-old mother-in-law who cannot be left alone at home.

7. I noted that I only had peripheral knowledge of VoiceBite, and the merger; that I had retired and had no role or involvement in the company or transaction with Checkmate. I have never communicated with Checkmate, other than regarding this subpoena.

8. Despite this, I made several offers to testify remotely, with time and topic limits. Counsel never provided any reason why in-person testimony would prejudice Checkmate.

NON-PARTY VASAN VARADARAJAN'S OPPOSITION TO CHECKMATE.COM, INC'S MOTION TO COMPEL

9. I received multiple voicemails from attorneys at K&L Gates containing a "recorded line" notice. I have never consented to recorded phone calls.

10. I will provide letters from two physicians, including my primary care doctor and one specialist, for in camera review by Chambers upon request. This documentation makes it clear that it would be a hardship to leave my home for more than a short time.

11. I am one of two caregivers, with my wife, for my 92-year-old mother-in-law. She cannot be left at home alone. In camera, I will also provide documentation, including from social services, on this caregiver situation regarding my mother-in-law.

12. My wife, the other caregiver, works full-time. She would be forced to take off from work, if I am away from home for a large part of the day, even aside from my own health.

13. I am retired, and my only income is social security.

*14. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed on: October 31, 2025                   /s/ **Vasan Varadarajan**

In Cupertino, California                        _____

**Vasan Varadarajan**,

Non-party

NON-PARTY VASAN VARADARAJAN'S OPPOSITION TO CHECKMATE.COM, INC'S MOTION TO COMPEL