Ryan Q. Keech (SBN 280306)
Ryan.Keech@klgates.com
Stacey Chiu (SBN 321345)
Stacey.Chiu@klgates.com
Rebecca Makitalo (SBN 330258)
Rebecca.Makitalo@klgates.com
Jacob R. Winningham (SBN 357987)
Jacob.Winningham@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Defendant and Counter-Claimant*
*CHECKMATE.COM INC.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>    Plaintiff,<br><br>  v.<br><br>CHECKMATE.COM, INC.,<br><br>    Defendant.<br><br>———————————————<br><br>CHECKMATE.COM, INC.,<br><br>    Counterclaim-Plaintiff,<br><br>  v.<br><br>ARJUN VASAN,<br><br>    Counterclaim-<br>    Defendant. | Case No. 2:25-cv-00765-MEMF-AS<br><br>Hon. Alka Sagar<br><br>DISCOVERY MATTER<br><br>**CHECKMATE.COM INC.'S REPLY TO VASAN VARADARAJAN'S OPPOSITION (DKT. 115) AND IN SUPPORT OF ITS MOTION TO ENFORCE AND COMPEL COMPLIANCE WITH SUBPOENA TO VASAN VARADARAJAN AND FOR CONTEMPT**<br><br>Hearing Date: November 20, 2025<br>Time: 11 a.m.<br>Courtroom: 540<br><br>Complaint Filed: January 28, 2025<br>Amended Complaint Filed: February 21, 2025 |

# **<u>TABLE OF CONTENTS</u>**

I.     INTRODUCTION ............................................................................1

II.    ARGUMENT ....................................................................................3

       A.     Checkmate's Subpoena Seeks Relevant Information...........................3

       B.     Checkmate's Subpoena is Proportionate and Narrowly Tailored.........6

       C.     Mr. Varadarajan has Failed to Show Undue Burden...........................8

       D.     Cost-Shifting Is Not Justified Under Rule 45......................................10

       E.     Mr. Varadarajan's Objections Did Not Relieve Him of His
              Obligation to Comply with Checkmate's Subpoena for
              Deposition .........................................................................................10

       F.     In Addition to Confirming Mr. Varadarajan's Contempt Until
              He Purges Same, Sanctions Are Warranted........................................ 12

III.   CONCLUSION ............................................................................. 14

# TABLE OF AUTHORITIES

**Page(s)**

Cases

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
   300 F.R.D. 406 (C.D. Cal. 2014) ................................................................. 3

*Bademyan v. Receivable Mgmt. Servs. Corp.*,
   No. CV 08-00519 MMM (RZx), 2009 WL 605789 (C.D. Cal. Mar.
   9, 2009) ........................................................................................................ 14

*Balla v. Idaho State Bd. Of Corrs.*,
   869 F.2d 461 (9th Cir. 1989) ...................................................................... 12

*Bingman v. Ward*,
   100 F.3d 653 (9th Cir. 1996) ...................................................................... 12

*DeLorme v. Big Think Cap., Inc.*,
   Dkt. 11, Case No. 2:23-mc-00037-FLA-MAR (C.D. Cal. Apr. 26,
   2023) ............................................................................................................ 13

*In re Dual-Deck Video Cassette Record Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) ........................................................................ 12

*HI.Q, Inc. v. ZeetoGroup, LLC*,
   Misc. Action No.: 22cv1440-LL-MDD, 2022 WL 17345784 (S.D.
   Cal. Nov. 29, 2022) ..................................................................................... 11

*Hickman v. Taylor*,
   329 U.S. 495 (1947) .................................................................................. 5, 9

*Lee v. Glob. Tel\*Link Corp.*,
   No. CV 15-2495-ODW (PLAx), 2017 WL 10575166 (C.D. Cal.
   Sept. 6, 2017) ............................................................................................. 8, 9

*Legal Voice v. Stormans Inc.*,
   738 F.3d 1178 (9th Cir. 2013) .................................................................... 10

*Mattel, Inc. v. Walking Mountain Prods.*,
   353 F.3d 792 (9th Cir. 2003) ........................................................................ 7

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) .......................................................... 6

*Mount Hope Church v. Bash Back!*,
   705 F.3d 418 (9th Cir. 2012) .................................................................. 8

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) .......................................................... 6

*Oppenheimer Fund, Inc. v. Sanders*,
   437 U.S. 340 (1978) ................................................................................ 3

*Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*,
   No. 2:19-mc-00049-PSG(KSx), 2019 WL 4267764 (C.D. Cal. July
   31, 2019) ................................................................................................ 11

*In re Pandora Media, LLC Copyright Litig.*,
   Case No. 2:22-cv-00809-MCS-MAR, 2023 WL 2661192 (C.D.
   Cal. Jan. 31, 2023) .................................................................................. 1

*Salt v. Corona Reg'l Med. Ctr.*,
   884 F.3d 1218 (9th Cir. 2018) .............................................................. 11

*Skellerup Indus. Ltd. v. City of Los Angeles*,
   163 F.R.D. 598 (C.D. Cal. 1995) .......................................................... 1

*Tardiff v. State Bar*,
   27 Cal. 3d 395 (1980) .............................................................................. 2

*Theofel v. Farey-Jones*,
   359 F.3d 1066 (9th Cir. 2004) ................................................................ 7

*Thoma v. VXN Grp., LLC.*,
   No. CV-23-04901-WLH, 2024 WL 4406947 (C.D. Cal. July 9,
   2024) ........................................................................................................ 3

*U.S. v. Clark*,
   4 F. Supp. 2d 940 (C.D. Cal. 1998) ....................................................... 2

*U.S. v. McGraw-Hill Cos., Inc.*,
   302 F.R.D. 532 (C.D. Cal. 2014) ......................................................... 10

*U.S. v. ScribeAmerica, LLC*,
 Case No. 2:21-CV-04324-FLA (ASx), 2024 WL 6085688 (C.D.
 Cal. Nov. 4, 2024) .................................................................................................. 1

*U.S. v. United Mine Workers of Am.*,
 330 U.S. 258 (1947) ............................................................................................. 14

**Statutes**

Fed. R. Civ. P. 26(b)(1) ............................................................................................ 3

**Other Authorities**

9 James Wm. Moore, Moore's Federal Practice § 45.30 (2007) ............................. 11

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Vasan Varadarajan's Opposition (the "Opposition," Dkt. 115)[1] to Defendant Checkmate.com Inc. ("Checkmate" or "Defendant")'s Motion to Enforce and Compel Compliance with Subpoena to Vasan Varadarajan and for Contempt (the "Motion to Compel," Dkt. 101) is little more than a repurposed filing of Plaintiff Arjun Vasan's ("Plaintiff" or "Vasan") pending Motions to Strike Affirmative Defenses (Dkt. 79), Dismiss Counterclaims (Dkt. 81), and to Compel Discovery (Dkt. 113), as well as Plaintiff's own Opposition to the Motion to Compel (Dkt. 111). This is unsurprising: Mr. Varadarajan concedes that Plaintiff "assisted" in preparing the Opposition. Dkt. 115 at ii:1-3; *see also id.* at 13:8-9 ("Arjun currently lives with me and assisted in preparing this document after I requested his help"). This is the latest example of Plaintiff's interference with the orderly progress of discovery – which is now putting his own father at risk by crossing the boundary of the unauthorized practice of law – and explains the Opposition's puzzling regurgitation of irrelevant arguments and language already raised in Plaintiff's pending Motions. *See, for example*, Dkt. 115 at 1:14-16, 3:1-5.[2]    Plaintiff has persisted in the

---

[1] Mr. Varadarajan also filed an "Objection" to the Motion to Compel, seeking a continuation of the noticed hearing on the Motion to Compel. (Dkt. 109). The Court thereafter entered a minute order coordinating the hearing dates for the Motion to Compel and Mr. Varadarajan's Motion for Protective Order and to Quash or Modify Subpoena. (Dkt. 107). As such, the Court's minute order appears to have largely mooted Mr. Varadarajan's "Objection." However, in the interest of clarity, Checkmate addresses the Objection's relevant arguments in the present briefing.

[2] Mr. Varadarajan also ineffectively attempts to "incorporate by reference" the arguments seeking a stay of discovery in Plaintiff's Opposition to the Motion to Compel. *See* Dkt. 115 at 9:12-15, 10:4-12; *see also* Dkt. 111 at 3:13-14 n.4 (arguing for a stay of discovery). "It is well-established that a party seeking a stay of discovery carries the heavy burden of making a strong showing why discovery should be denied." *U.S. v. ScribeAmerica, LLC*, Case No. 2:21-CV-04324-FLA (ASx), 2024 WL 6085688, at *1 (C.D. Cal. Nov. 4, 2024) (citation omitted). "The Federal Rules of Civil Procedure do not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending." *In re Pandora Media, LLC Copyright Litig.*, Case No. 2:22-cv-00809-MCS-MAR, 2023 WL 2661192, at *1 (C.D. Cal. Jan. 31, 2023) (citation omitted); see also *Skellerup Indus. Ltd. v. City of Los Angeles*, 163 F.R.D. 598, 601 (C.D. Cal. 1995) (concluding that staying discovery simply because a dispositive motion is pending would be "directly at

unauthorized practice of law despite explicit warnings from Checkmate's counsel regarding the consequences of these actions.  *See* Dkt. 116-1, Declaration of Rebecca Makitalo at ¶¶ 5-6, Ex. 2 ("Because it appears that you may be attempting to manipulate and provide pseudo-legal 'advice' to at least some third parties, we again remind you that you are not a lawyer, and that there are very serious consequences associated with behaving as if you are one.").  Plaintiff's *pro se* status does not confer any authority to represent, advise, or prepare filings on behalf of his family members. *See Tardiff v. State Bar*, 27 Cal. 3d 395, 402, 612 P.2d 919, 922 (1980) (holding that where a disbarred attorney "signed pleadings, made court appearances and entered into a settlement agreement as 'attorney' for his wife" and "helped a former neighbor prepare an answer in her eviction proceeding and phoned opposing counsel to obtain an extension of time for her to file her answer," such actions "constituted unauthorized practice of law").  Plaintiff's continued disregard of the applicable prohibitions regarding the unauthorized practice of law not only demonstrates willful interference with the discovery process, but is contrary to the public interest in ensuring Mr. Varadarajan is being ***properly*** advised as to the ***actual*** law by competent counsel in this matter. *See U.S. v. Clark*, 4 F. Supp. 2d 940, 943 (C.D. Cal. 1998) ("California has an interest in requiring attorneys to be licensed so the public is protected from being advised and represented by unqualified persons").

Beyond the deficiencies described above, the Opposition is also a months-late attempt by Mr. Varadarajan to avoid his clear obligation to comply with a validly-issued and -served subpoena.  The Opposition elides the basic facts of the party's correspondence by presenting Mr. Varadarajan's "counteroffer" as a reasonable compromise, when in fact the terms proposed by Mr. Varadarajan—a two-hour remote deposition and document production limited to "5 keyword search terms with

odds with the need for expeditious resolution of litigation") (internal quotation marks and citation omitted).  Mr. Varadarajan has clearly failed to meet his burden to justify a stay of discovery, presenting no basis for the Court to consider, and his request should be denied.

one month windows" from only "2024 onwards" (Dkt. 101-16)—directly contravene Checkmate's entitlement to broad-scope discovery. Mr. Varadarajan's Opposition fails to show *any* basis upon which the subpoena should not be enforced. The Court should hold Mr. Varadarajan in contempt pending compliance with Checkmate's subpoena, and order $5,000 in sanctions for his willful noncompliance.

## II.    ARGUMENT

### A. Checkmate's Subpoena Seeks Relevant Information

Parties are entitled to obtain discovery regarding any nonprivileged matter that is relevant to any party's claims or defenses. Fed. R. Civ. P. 26(b)(1); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978) (The relevance standard is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.") (citation omitted). "The scope of discovery of third parties under Rule 45 is the same as that applicable to Rule 34 and the other discovery rules." *Thoma v. VXN Grp., LLC*., No. CV-23-04901-WLH (AGRx), 2024 WL 4406947, at *1 (C.D. Cal. July 9, 2024) (citation omitted); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc*., 300 F.R.D. 406, 409 (C.D. Cal. 2014) ("The same broad scope of discovery set out in Rule 26 applies to the discovery that may be sought pursuant to Rule 45.") (citation omitted).

The subpoena served on Mr. Varadarajan touches upon topics that are, as shown in the papers already before this Court, clearly relevant to both parties' claims and defenses. Mr. Varadarajan declared under oath that he is in fact the "coauthor, with Arjun, of the functional code at question." *Checkmate.Com, Inc. v. Vasan*, Dkt. 36 at ¶ 6, Case No. 1:25-CV-03181(JMF) (S.D.N.Y. Apr. 12, 2025); *see also id.* at ¶¶ 9-10 (asserting that Mr. Varadarajan witnessed the VoiceBite co-founders "negotiat[ing] and discuss[ing] every issue thorough and transparently" while the "VoiceBite team w[as] finalizing the merger with Checkmate." Mr. Varadarajan further acknowledged his role as the "longtime technical advisor and collaborator of

Arjun Vasan" and declared to "have worked professionally with every member of the VoiceBite founding team at past companies, including CyborgOps and Presto." *Id*. at ¶¶ 4-5. Mr. Varadarajan has therefore—through his own sworn testimony—indicated that he has knowledge and documents that directly relate to the VoiceBite Transaction, the authorship and ownership of the VoiceBite code, Mr. Varadarajan's professional relationship with Plaintiff, Mr. Varadarajan's role at Plaintiff's prior companies, and other topics relating to this action and the parties thereto.

Not only did Mr. Varadarajan acknowledge his direct knowledge of the information described above—Plaintiff has also relied on Mr. Varadarajan's testimony to support Plaintiff's own claims and defenses. *See* Dkt. 10 at ¶¶ 50, 99, 102, 108, 112, 113, and 124; *see also* Dkt. 81. Plaintiff asserts in his Amended Complaint that Checkmate served a "Notice of Claim" which "den[ied] him $122,000 in severance" and "allege[d] Fraud and IP Misuse to justify withholding other owed payments, including $450,000 in earned bonuses, without specifying actual damages." Dkt. 10 at ¶ 50. Plaintiff also repeatedly references the "IP" and "technology" VoiceBite sold to Checkmate, which includes the VoiceBite code authored and owned by Mr. Varadarajan, in his claims, including for Unjust Enrichment (*see id.* at ¶ 99 ("Defendant received substantial benefits from Plaintiff's efforts, and those of the team he had assembled, including but not limited to: . . . Proprietary technology developed by Plaintiff and team, which accelerated time to market for the Voice AI product."); *Id*. at ¶ 102 ("Regardless of contract enforceability, it is unjust for Defendant to benefit from Plaintiff's labor, IP, and relationships without fair compensation.")) and Civil Conspiracy: Fraudulent Inducement, Concealment and Extortion (*id.* at ¶ 113 ("Plaintiff and his team performing substantial integration work and building IP that would accrue exclusively to Defendant upon merger close."); *Id*. at ¶ 124 ("[T]he entire merger was fraudulent—engineered to extract the founders' technology, goodwill, and expertise without delivering the agreed compensation.")).

Plaintiff makes further representations throughout his Amended Complaint characterizing VoiceBite's negotiations with Checkmate prior to entering into the Merger Agreement and related documents—negotiations which Mr. Varadarajan claims to have been a witness to. *See Checkmate.com, Inc. v. Vasan*, Dkt. 36 at ¶¶ 9-10, Case No. 1:25-CV-03181(JMF) (S.D.N.Y. Apr. 12, 2025) ("From observing, it was clear that Arjun, Christopher and Robert Nessler were equal partners in the negotiation and discussed every issue thoroughly and transparently."). These references include accusations to support Plaintiff's claims for Promissory Fraud and Estoppel (Dkt. 10 at ¶ 108 ("The founders went into merger negotiations with greatly reduced leverage.")) and Civil Conspiracy: Fraudulent Inducement, Concealment and Extortion (*id.* at ¶ 112 ("[T]the founders found themselves having to repeatedly renegotiate agreed terms (both explicit and promised), reducing their leverage and placing them under significant duress while finalizing the merger"); *Id.* at ¶ 113 ("During the four months of premerger negotiations, Defendant pressured the founders by refusing their request for a consulting agreement.")), among others. The subpoena therefore seeks discovery on topics which are directly relevant to both parties' claims and defenses. *See* Dkt. 112-1 at ¶ 3, Ex. A; *see generally* Dkts. 10 (the "Amended Complaint") and 71 (the "Counterclaims"). Checkmate is entitled to discovery on those topics.

Mr. Varadarajan's arguments that he is somehow now irrelevant to the parties' claims and defenses are unavailing. To take Mr. Varadarajan's argument at face value would require the Court to wholly accept Mr. Varadarajan's and Plaintiff's particular (and false) version of the events at issue as true without further fact-finding or discovery. The discovery process does not allow one party and its witnesses to unilaterally provide testimony on crucial issues while refusing to submit to any further questioning on that same testimony. Checkmate has a legal right to obtain discovery on the veracity and context of Mr. Varadarajan's sworn testimony. *See Hickman v. Taylor*, 329 U.S. 495, 507, 67 S. Ct. 385, 392, 91 L. Ed. 451 (1947)

5

("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."). Mr. Varadarajan's late-breaking argument that he has minimal relevance to the present issues[3]—even after he has submitted sworn testimony on those issues and after Plaintiff has relied on that testimony—should not be countenanced.

**B. Checkmate's Subpoena is Proportionate and Narrowly Tailored.**

Mr. Varadarajan argues that any discovery directed at him as a non-party must be "'limited to protect third parties' and must be narrowly tailored." Dkt. 115 at 6:1-3 (citations omitted).[4] However, the cases relied upon by Mr. Varadarajan are either plainly irrelevant or show that Checkmate's subpoena is properly tailored under Ninth Circuit precedent. In *Nidec Corp. v. Victor Co.* (Dkt. 115 at 6:1-3), the court quashed subpoenas that could "only be fairly characterized as generally fact discovery" but were served almost four months after the close of fact discovery. *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577, 580 (N.D. Cal. 2007). Checkmate's subpoena, on the other hand, was served well before the close of fact discovery and seeks discovery on a discrete set of targeted topics. Similarly, the improper subpoena in *Moon v. SCP Pool Corp.* (Dkt. 115 at 6:1-3) was quashed as overly broad in relevant part because it either sought information "for a ten year period" or contained "no temporal limitation." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637-638 n.4 (C.D. Cal. 2005) By contrast, Checkmate's subpoena is limited to

---

[3] Mr. Varadarajan further argues that Checkmate has failed to make a sufficient "link" between the code containing Mr. Varadarajan's name and his former companies, but concedes that "the former bears my name." Dkt. 115 at 8:1-3. Given that Checkmate's claims are based in part on Mr. Varadarajan's claims to the code in question—and given that Mr. Varadarajan and Plaintiff dispute the relevance of Mr. Varadarajan's ***specific and personal*** interest in the code—the relevance of the code as to both parties' claims and defense is apparent.

[4] As an initial matter, the language quoted by Mr. Varadarajan—"limited to protect third parties"—does not appear in either of the cited cases. *See* Dkt. 115 at 6:1-3. In falsely attributing quoted language to a case, the Opposition appears to be another example of Plaintiff's reliance on seemingly AI-hallucinated citations. *See, for example,* Dkt. 94 at 4:13 n.3 (identifying non-existent cases relied upon in Plaintiff's briefing) and Dkt. 32 at 4:16-23 (same).

topics relevant to the issues in dispute and documents that are expressly limited by defined time periods, reflecting clear and specific temporal constraints. *See* Dkt. 112-1 at ¶ 3, Ex. A; *see also* Dkt. 115 at 8:1-2 (noting that "Checkmate seeks documents from . . . 2021-2023."). Mr. Varadarajan's remaining case law citations on this topic are similarly unavailing. He relies upon *Theofel v. Farey-Jones* for the proposition that "an unlimited demand for 'all emails' violated Rule 45 and constituted bad faith" (Dkt. 115 at 8:12-14), without noting that the improper subpoena in that case sought the production of "[a]ll copies of emails sent or received ***by anyone*** [employed by the relevant company], with no limitation as to time or scope." *Theofel v. Farey-Jones*, 359 F.3d 1066, 1071 (9th Cir. 2004) (internal quotation marks omitted) (emphasis added). Checkmate's subpoena, in relevant part, only seeks a targeted set of documents and communications between two individuals—not the complete history of all emails sent by all employees of a corporation.

Finally, Mr. Varadarajan relies upon *Mattel, Inc. v. Walking Mountain Productions* for the proposition that "discovery 'must be narrowly tailored and reasonably calculated to lead to admissible evidence,' not 'a vehicle for harassment or intrusion into private affairs.'" Dkt. 115 at 8:15-17. Again, unsurprisingly as a result of Plaintiff's repeated abuse of AI to assist with preparing meritless legal filings on behalf of himself and others, the "quoted" language does not appear in the cited case. *See* n.4 *supra*. Invented quotations aside, the case nevertheless fails to help Mr. Varadarajan's cause. In *Mattel*, the Ninth Circuit upheld a trial court's decision to quash a subpoena which improperly sought document and testimony on "various topics that have no relation to [the] litigation or to [the expert to be impeached]." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813 (9th Cir. 2003). This is inapposite to the case here. As shown above and detailed in Checkmate's Motion to Compel, Checkmate's subpoena is narrowly tailored and only seeks documents and testimony which relate directly to both parties' claims and defenses.

The Opposition also forwards an impossibly broad definition of "protected matter" and appears to argue that otherwise-responsive material is not subject to discovery because it would expose "personal, family, [] medical, and other irrelevant protected matter." Dkt. 115 at 8:4-6. Needless to say, a conception of "protected material" that prohibits the production of responsive materials on the basis that it would expose "personal" matters runs completely askew to the liberal bounds of discovery. While Checkmate's subpoena does not seek the production of any genuinely privileged materials—for example, Mr. Varadarajan's concerns about any materials covered by the attorney-client privilege are remedied by the creation of a privilege log, which he has otherwise failed to provide—Mr. Varadarajan cannot be permitted to shield otherwise-responsive materials on the basis that they, in his personal view, implicate "personal" or "irrelevant" matters, especially as he provides no legal basis to support these assertions. Mr. Varadarajan has failed to provide any concrete evidence to support his claim that Checkmate's subpoena seeks materials protected by a recognized legal privilege or that his concerns would not be remedied by the creation of a privilege log. As such, he has failed to show that Checkmate's subpoena is impermissibly broad or improperly seeks protected materials.

## C. Mr. Varadarajan has Failed to Show Undue Burden

In arguing for a two-hour remote deposition and similarly unwarranted modifications to the subpoena, Mr. Varadarajan has failed to meet his burden to show that Checkmate's subpoena imposes an undue burden. While courts "are sensitive to the imposition of large discovery costs on non-parties and recognize the special need to protect them," the Ninth Circuit has declined to "read 'undue burden' differently just because a non-party was subpoenaed." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) (citation omitted); *Lee v. Glob. Tel\*Link Corp.*, No. CV 15-2495-ODW (PLAx), 2017 WL 10575166, at \*3 (C.D. Cal. Sept. 6, 2017) ("Undue burden in the context of third-party discovery is the same standard as used regarding discovery served on parties to the litigation.") (citation omitted). In order

"[t]o meet its burden, the objecting party *must provide specific facts that indicate the nature and extent of the burden*." *Lee*, 2017 WL 10575166, at *3 (emphasis added). Mr. Varadarajan provides little in the way of "specific facts," instead relying upon broad assertions that "health constraints and family obligations that require me to stay home are good cause to order [a remote deposition]." Dkt. 115 at 9:20-22. These vague assertions echo Mr. Varadarajan's "negotiations" with Checkmate's counsel, where he demanded without justification that Checkmate's valid subpoena be modified to only require a two-hour remote deposition and "5 keyword search terms with one month windows" from only "2024 onwards." Dkt. 101-16; *see also* Dkt. 115 at 10:22-25 (asking the Court to limit the location, time, and scope of the subpoena). The Opposition absurdly characterizes these prejudicial and unwarranted modifications as "concessions" and "proportional production tied to any conditional relevance." Dkt. 115 at 7:3-5; *see also id.* at 9:12-15 (reiterating the "conditional relevance" argument). In refusing to comply with his legal obligations under a lawful subpoena, thanks to his own purported "conditional relevance," Mr. Varadarajan substitutes the law with his own personal opinion. Mr. Varadarajan does not—and cannot—justify his requests to modify Checkmate's valid subpoena on "undue burden" grounds. As the Supreme Court has emphasized, "deposition-discovery rules are to be accorded a broad and liberal treatment." *Hickman*, 329 U.S. at 507, 67 S. Ct. 385. As detailed above, Checkmate is entitled to broad and relevant discovery. The subpoenaed documents and testimony from Mr. Varadarajan are directly related to the core issues of this case, including the authorship and ownership of the VoiceBite code, relevant contractual rights, and the VoiceBite merger transaction, and should not be limited in any respect. Because Mr. Varadarajan has failed to meet his burden to show any undue burden, the Court should enforce Checkmate's subpoena.

### D. Cost-Shifting Is Not Justified Under Rule 45

The Opposition argues that "Checkmate should bear the significant cost of any compelled compliance." Dkt. 115 at 7:12-13. However, courts are only required to shift a non-party's costs of compliance with a subpoena "if those costs are significant." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013). "[O]nly two considerations are relevant to the cost-shifting inquiry: (1) whether the subpoena imposes expenses on the non-party, and (2) whether those expenses are significant." *United States v. McGraw-Hill Cos., Inc.*, 302 F.R.D. 532, 536 (C.D. Cal. 2014) (internal quotations and citation omitted).

Mr. Varadarajan has provided ***no evidence*** identifying the extent of the costs associated with complying with Checkmate's subpoena and similarly fails to make a showing that any such costs would be "significant." As a result, Mr. Varadarajan has failed to show any basis on which the Court should order that Checkmate should bear any of the costs associated with Mr. Varadarajan's compliance with the subpoena. *See McGraw-Hill Cos., Inc.*, 302 F.R.D. at 536 ("Without knowing what the non-parties intend to claim, it would be premature for the Court to catalogue the types of expenses that fall on either side of the line between expenses and non-expenses.").

### E. Mr. Varadarajan's Objections Did Not Relieve Him of His Obligation to Comply with Checkmate's Subpoena for Deposition

Mr. Varadarajan further confuses his distinct obligations (a) to produce documents and (b) to sit for a deposition, ***both of which are required by Checkmate's subpoena***. Even assuming that Mr. Varadarajan has successfully shown that his obligation to produce documents was halted by his objections (Dkt. 115 at 5:8-10), those objections did ***not*** relieve his duty to appear at Checkmate's properly-noticed deposition. "While a nonparty may challenge a subpoena duces tecum via written objection, a deposition subpoena may only be challenged by moving to quash or modify the subpoena pursuant to Federal Rule of Civil Procedure 45(c)(3)(A), or by

moving for a protective order pursuant to Rule 26(c)." *HI.Q, Inc. v. ZeetoGroup, LLC*, Misc. Action No.: 22cv1440-LL-MDD, 2022 WL 17345784, at *5 (S.D. Cal. Nov. 29, 2022) (citing 9 James Wm. Moore, Moore's Federal Practice § 45.30 (2007) ("The written objection procedure is available only for a subpoena commanding production or inspection ...")).  Mr. Varadarajan was therefore obligated to appear at the noticed deposition—in failing to do, he is subject to contempt and sanctions.  *See Pac. Coast Surgical Ctr., L.P. v. Scottsdale Ins. Co.*, No. 2:19-mc-00049-PSG(KSx), 2019 WL 4267764, at *6-7 (C.D. Cal. July 31, 2019) ("A Rule 45 subpoena 'obligate[s] the nonparty to appear at the scheduled deposition at pain of being held in contempt.'") (quoting *Salt v. Corona Reg'l Med. Ctr.*, 884 F.3d 1218, 1224 (9th Cir. 2018)).

The Opposition's argument that the parties' negotiations as to the exact date of the deposition "undermined" the subpoena is absurd.  Dkt. 115 at 6:21-24.  The valid subpoena ordered Mr. Varadarajan to make himself available for deposition on September 22, 2025.  Dkt. 112-1 at ¶ 3, Ex. A.  He refused to appear and has thus far failed to provide ***any*** compelling reason to excuse his failure.   Mr. Varadarajan claims that his "offered concessions"—a two-hour remote deposition and "5 keyword search terms with one month windows" from only "2024 onwards" (Dkt. 101-16)— form part of a "back-and-forth [that] defeats any clear, unequivocal directive on date, format, or location" (Dkt. 115 at 7:1-2), and therefore exempt Mr. Varadarajan from his legal obligations.  Mr. Varadarajan appears to argue that the seeming lack of "any clear, unequivocal directive on date, format or location" prevents the valid subpoena from being sufficiently "specific and definite."  Dkt. 115 at 6:21-24, 7:1-12.  This argument should not be countenanced for multiple reasons.  First (as described in greater detail above), the terms that Mr. Varadarajan characterizes as "concessions" were in fact unwarranted and prejudicial roadblocks to Checkmate's right to broad discovery on relevant matters.  A valid subpoena cannot be defeated by the simple act of the subpoenaed party demanding a shorter deposition on a different date.

11

Second, the cases that Mr. Varadarajan cites in support of the above proposition are inapposite. In *Balla v. Idaho State Board of Corrections*, the Ninth Circuit found that a court order was not sufficiently "specific and definite" where it relied on overly "vague" standards. *Balla v. Idaho State Bd. Of Corrs.*, 869 F.2d 461, 465 (9th Cir. 1989) ("These terms ['sufficient' and 'basic'] are too general to be enforced through a contempt motion."). Unlike the "vague" terms in the *Balla* order, Checkmate's subpoena unequivocally informed Mr. Varadarajan of his obligation to appear at deposition. In *In re Dual-Deck Video Cassette Recorder*, also relied upon by Mr. Varadarajan, the Ninth Circuit reversed a contempt order based on its finding that the party held in contempt "substantially compl[ied]" with the underlying court order. *In re Dual-Deck Video Cassette Record Antitrust Litig.*, 10 F.3d 693, 695-96 (9th Cir. 1993). Here, by contrast, ***Mr. Varadarajan has not even attempted to comply with the subpoena***. As described above and in the papers before the Court, Mr. Varadarajan was informed of his clear obligations under the subpoena and nevertheless refused to appear, instead opting to negotiate prejudicial "concessions" in an effort to shirk his legal duty—a far cry from the "substantial compliance" found in *In re Dual-Deck*.

## F. In Addition to Confirming Mr. Varadarajan's Contempt Until He Purges Same, Sanctions Are Warranted

The Opposition argues that this Court lacks the authority to issue a contempt ruling in response to Mr. Varadarajan's flagrant violation. *See* Dkt. 115 at 5:14-21. The cases that the Opposition relies upon in support of this proposition are distinguishable from the present facts. In *Bingman v. Ward* (Dkt. 115 at 5:17-18), the Ninth Circuit ruled that "magistrate judges do not have the power to adjudicate ***criminal contempts***." *Bingman v. Ward*, 100 F.3d 653, 656 (9th Cir. 1996) (emphasis added); *see also id.* (explaining that a civil contempt fine is one that is "remedial" and "either coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained," while a criminal contempt fine

is one which is "not compensatory," "payable to the court," and carries with it the "whole purpose [] to punish.") (citations and internal quotation marks omitted).  As indicated in the Motion to Compel, Checkmate seeks a contempt and sanctions order for the express purpose of compensating Checkmate for the attorneys' fees it incurred in enforcing Mr. Varadarajan's compliance with the valid subpoena.  *See* Dkt. 101 at 18:22-27.  Therefore, under *Bingman*, Checkmate properly seeks a compensatory civil contempt fine.  Similarly, in *DeLorme v. Big Think Capital, Inc.* (Dkt. 115 at 5:18-21), while the court did decline to find contempt under 28 U.S.C. § 636(e), it based its decision in part on the fact that the subpoenaed party sought to be held in contempt did not have a chance "to be heard in a meaningful fashion" in advance of the order.  *See DeLorme v. Big Think Cap., Inc.*, Dkt. 11 at 3, Case No. 2:23-mc-00037-FLA-MAR (C.D. Cal. Apr. 26, 2023) ("The order to show cause is a crucial step when a party moves for contempt ex parte, because non parties are entitled to be heard in a meaningful fashion before the court takes the serious step of holding a nonparty in contempt.") (emphasis in original) (citations omitted); *see generally* Docket at *DeLorme*, Case No. 2:23-mc-00037-FLA-MAR (C.D. Cal.) (showing that the subpoenaed party failed to respond to the operative Motion to Compel Nonparty to Comply with Subpoena).  Unlike the subpoenaed party in *DeLorme*, Mr. Varadarajan has clearly been heard in a meaningful fashion through his Opposition to the Motion to Compel (Dkt. 115), his "Objection" (Dkt. 109), and his own Motion for Protective Order and to Quash or Modify Subpoena (Dkt. 106).  Therefore, the Court should find Mr. Varadarajan in contempt for his refusal to obey a clear and definite court order.  Alternatively, the Court should certify facts to the District Court in support of an order to show cause why Mr. Varadarajan should not be found in contempt.

Mr. Varadarajan's argument against sanctions is misguided.  Checkmate rejects Mr. Varadarajan's baseless claim that Checkmate's sanctions request is made for purposes of harassment or is irrational and notes that Mr. Varadarajan provides

no evidence in support of that accusation.  Mr. Varadarajan further appears to argue that Checkmate could have avoided the costs it incurred in litigating the Motion to Compel by agreeing to Mr. Varadarajan's "request for the costs of production or to narrow scope to limit costs."   Dkt. 115 at 9:25-10:1. As detailed above, Mr. Varadarajan has shown no basis for cost-shifting under Rule 45.  Moreover, Mr. Varadarajan's proposed "concessions" to narrow the scope of the subpoena are, for the reasons listed above, prejudicial to Checkmate.  Finally, Checkmate's costs do not stem from the scope of its subpoena, but rather from Mr. Varadarajan's unjustified failure to comply with the valid subpoena.  ***All costs*** would have been avoided had Mr. Varadarajan complied with the subpoena as noticed and served.  Mr. Varadarajan offers scant argument or evidence to rebut Checkmate's argument that he should be subject to sanctions sufficient to reimburse Checkmate for only a portion of the significant time and expense it has incurred in bringing the operative Motion to Compel.  Because Mr. Varadarajan has failed to comply with the subpoena and has failed to provide any justification sufficient to explain his failure, the Court should impose monetary sanctions. *See Bademyan v. Receivable Mgmt. Servs. Corp.*, No. CV 08-00519 MMM (RZx), 2009 WL 605789, at *3 (C.D. Cal. Mar. 9, 2009) ("Sanctions for civil contempt are imposed to coerce compliance with a court order, to compensate the party pursuing contempt for injuries resulting from the contemptuous behavior, or both.") (citing *U.S. v. United Mine Workers of Am.*, 330 U.S. 258, 303-04, 67 S.Ct. 677, 91 L.Ed. 884 (1947)); *see also* Dkt. 101 at 17:21-18:27.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant Checkmate's Motion to Enforce and Compel Compliance with Subpoena to Vasan Varadarajan and for Contempt.

1     Date: November 6, 2025          Respectfully Submitted,

2                               K&L GATES LLP

6                               Ryan Q. Keech (SBN 280306)
7                               Stacey Chiu (SBN 321345)
                                 Rebecca I. Makitalo (SBN 330258)
8                               Jacob R. Winningham (SBN 357987)
                                 10100 Santa Monica Boulevard, 8th Floor
9                               Los Angeles, California 90067
                                 Telephone: 310.552.5000
                                 Facsimile: 310.552.5001

10                             *Attorneys for Defendant and Counter-Claimant* CHECKMATE.COM IN

CHECKMATE'S REPLY TO VASAN VARADARAJAN'S OPPOSITION (DKT. 115) AND IN SUPPORT OF ITS MOTION TO COMPEL (DKT. 101)

## **CERTIFICATE OF WORD COUNT**

The undersigned, counsel of record for Checkmate certifies that this brief contains 4,876 words, which complies with the word limit of L.R. 11-6.1.

Date: November 6, 2025                    Respectfully submitted,

K&L GATES LLP

_____

Ryan Q. Keech (SBN 280306)
Stacey Chiu (SBN 321345)
Rebecca I. Makitalo (SBN 330258)
Jacob R. Winningham (SBN 357987)
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

*Attorneys for Defendant and Counter-Claimant CHECKMATE.COM INC.*

-1-

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California, over the age of eighteen years, and not a party of the within action.  My business address is 10100 Santa Monica Blvd. 8th Floor Los Angeles, CA 90067.

On **November 6, 2025** , I served the foregoing document(s) described as:

- **CHECKMATE.COM INC.'S REPLY TO VASAN VARADARAJAN'S OPPOSITION (DKT. 115) AND IN SUPPORT OF ITS MOTION TO ENFORCE AND COMPEL COMPLIANCE WITH SUBPOENA TO VASAN VARADARAJAN AND FOR CONTEMPT**
- **CHECKMATE'S REPLY TO ARJUN VASAN'S OPPOSITION TO CHECKMATE'S MOTION TO ENFORCE AND COMPEL COMPLIANCE WITH SUBPOENA TO VASAN VARADARAJAN AND FOR CONTEMPT**
- **DECLARATION OF REBECCA MAKITALO; EXHIBITS 1-2**

on the interested parties in this action as follows:

> Vasan Varadarajan
> 12615 193rd Street
> Cerritos, CA 90703
> Email: vsvconsult@gmail.com

☑    **(BY ELECTRONIC MAIL)**  Pursuant to C.R.C. 2.251 or agreement by all parties, I served the described document(s) by emailing it to each of the aforementioned electronic mail addresses and the transmission was reported as complete and without error.  My email address is Jacob.Winningham@klgates.com.

☑    **(VIA U.S. MAIL)**  In accordance with the regular mailing collection and processing practices of this office, with which I am readily familiar, by means of which mail is deposited with the United States Postal Service at Los Angeles, California that same day (or the following day if after business hours) in the ordinary course of business, I deposited such sealed envelope, with postage thereon fully prepaid, for collection and mailing on the following day following ordinary business practices, addressed as set forth above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on **November 6, 2025,** at Los Angeles, California.

  /s/ Jacob R. Winningham

Jacob R. Winningham