Vasan Varadarajan

vsvconsult@gmail.com

12615 193rd Street

Cerritos, CA 90703

562-448-2827

Non-Party Movant

FILED

CLERK, U.S. DISTRICT COURT

11/6/2025

CENTRAL DISTRICT OF CALIFORNIA

BY_____GSA_____DEPUTY

DOCUMENT SUBMITTED THROUGH THE
ELECTRONIC DOCUMENT SUBMISSION SYSTEM

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**Arjun Vasan**,

      Plaintiff and Counter-Defendant


      vs.


**Checkmate.com, Inc.**,

(dba "Checkmate"),

      Defendant and Counterclaimant

Case No.:  2:25−cv−00765−MEMF−ASx

Hon. Alka Sagar | DISCOVERY MATTER

**NON-PARTY VASAN VARADARAJAN'S REPLY IN SUPPORT OF HIS MOTION FOR A PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENA**

Complaint Filed: January 28, 2025
Hearing Date: November 20, 2025
Hearing Time: 11:00 A.M.
Courtroom: 540

TO THE HONORABLE COURT, ALL PARTIES AND COUNSEL OF RECORD:

    I, Non-party Vasan Varadarajan ("Movant"), respectfully reply to Checkmate.com, Inc. ("Defendant")'s opposition to my Motion for a Protective Order ("Mot.").

Dated: **November 6, 2025**

    In: **Cerritos, California**

**Respectfully submitted**,

/s/ **Vasan Varadarajan**

**Vasan Varadarajan**, Non-Party

i

## <u>TABLE OF CONTENTS</u>

**MEMORANDUM OF POINTS AND AUTHORITIES**...................................................... 1

   I.   INTRODUCTION .................................................................................... 1

   II.   BACKGROUND; NO CLEAR COMMAND OR DATE CERTAIN ............................... 2

   III.   ARGUMENT ........................................................................................ 2

      *A.*   *"Coordination" and "Interference" are Red Herrings*.................................... 2

      *B.*   *Good Cause Exists to Excuse Purported Untimeliness* .................................. 3

      *C.*   *The Subpoena is Disproportionate on its Face*........................................... 4

      *D.*   *Unintelligible Requests Create an Unknowable Burden* ................................ 5

      *E.*   *Defendant Must Bear the Costs of its Overly Broad Requests* ........................ 7

      *F.*   *Search Term Limited Scope is Standard and Reasonable* .............................. 8

      *G.*   *A Pending Dispositive Motion Warrants Temporary Adjournment* ............... 8

      *H.*   *The Subpoena is Unduly Burdensome for a Non-Party*................................. 9

   IV.   CONCLUSION.................................................................................... 10

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6** ..................................... 11

**DECLARATION OF VASAN VARADARAJAN** ......................................................... 12

REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.    INTRODUCTION

Defendant's Opposition (Dkt. 112, Opp.) largely repackages its Motion to Compel (Dkt. 101, MTC) and similarly sidesteps a critical 2015 Rule 26(b)(1) amendment limiting discovery to what is "relevant to any party's claim or defense and *proportional* to the needs of the case.". A text search finds variants of "relevant" 22 times (+20 in its motion), yet variants of "proportion" are not found *once* in either brief. The Opp. thus fails to engage the active governing standard.

Moreover, it wrongly asserts no difference between party and non-party, when the cases it cites recognize non-party protections—e.g. cost-shifting, which it rejects entirely. It defines key terms as only a party might comprehend: "proprietary code CHECKMATE acquired by way of the VOICEBITE transaction". Someone *who did not participate in that transaction* cannot reasonably respond. The only code I've seen and could have referred to is the exhibited code that bears my name—not unspecified "VoiceBite proprietary code" that only Defendant possesses.

Defendant continues to insist its requests are "tailored", while the Court has found them "overly broad". Dkt. 85, fn.2. It claims "private family communications" as fair game, as well as Plaintiff's health-related material. Of course, two years of "all communications" with my son *is* custom tailored for "annoyance, embarrassment and oppression". It also accuses me of selling the Court my version of events—while justifying disproportionate discovery with its own.

I acknowledge this motion was filed after the compliance date. Good cause exists for the Court to use its discretion and consider it. First, by advancing the hearing, the Court has already indicated it may do so. Second, I did not ignore the subpoena—I timely objected and negotiated in good faith for proportional limits to protect my and my family's privacy. Third, negotiations continued until and even after the return date passed. Resolution seemed on offer until it didn't.

Finally, its subpoena, conferrals and briefs appear less like discovery than harassment. Defendant has deposed no party witness; failed to compute any actual damages and to address a court finding of overbreadth. Its cries of "interference" and "coordination" ring hollow while it directs arguments at my son that only he can practically rebut. On this record, it is reasonable for the Court to quash, modify and/or adjourn the subpoena, which I respectfully request it do.

## II.    BACKGROUND; NO CLEAR COMMAND OR DATE CERTAIN

**On Sept. 19 at 1:39 p.m.**, three days before the compliance date, counsel purported a clear willingness to adjust scheduling and scopes to alleviate burden. Dkt. 101-11 at 1.

**At 2:18 p.m. the same day**, I accepted, offering a mid-November remote appearance and listed other concerns (scoping, time limits and so on). Dkt. 101-12 at 1–2.

**At 2:44 p.m.**, counsel rejects mid-November as "not acceptable," but provides no date in demanding an immediate in-person appearance and threatens contempt. Dkt. 101-13 at 1–2.

**On Sept. 21**, I offer a set date—Nov. 14, 2025—for a remote sitting and requested a fee advance if scope exceeded five search terms. Dkt. 101-14 at 1–3.

**On Sept. 23**, counsel accepted Nov. 14 but rejected *any* guardrails. I reasonably believed that negotiation was still ongoing. Dkt. 101-15 at 1–2; 101-16 at 1–3; 101-17 at 1.

**The Sept. 19–29 threads show my ongoing efforts**, but counsel remained hostile and volatile—alternating threats with "willingness" to accommodate. (Dkt. 101 at 1–2 (compare "he will not comply", e.g. *submit*) with 101-11 at 1; 101-12 at 1–2; 101-13 at 1–2; 101-14 at 1–3). In retrospect, counsel's real purpose may have been to create a contentious record for optics.

## III.    ARGUMENT

### A.    "Coordination" and "Interference" are Red Herrings

Defendant inveighs against "interference" or "coordination" by Plaintiff, but this is not a proper reason to deny relief here. After arguing my son lacked standing to quash my subpoena and winning, it cannot now assert that *his* actions—citing my declaration (filed in SDNY, not here), filing the *ex parte* motion, and emails to counsel—are a valid basis to deny relief to a non-party movant, especially since my son is unable to contest these arguments himself.

It is natural for Plaintiff to wish to avoid burdening his 70-year-old father—and "anger" is understandable without prior notice. Opp. at 10:1-2 concedes "less than 24 hours *after* [I was served the subpoena] – Plaintiff was provided with notice" but fails to note he had to ask before "notice" was provided. This clear defect undermines its refrain: "no reasonable dispute [the subpoena was] validly issued and served". Opp. at 7:3-4. In any case, my son's emails were not sent by *me*—the non-party movant. I "echo" him because he is my son and lives with me.

Defendant also uses *its own actions* as evidence of my "voluntarily insertion". But I did not send the "Notice of Claim" to my son (Dkt. 112 at 14:10-14) or publish my name and face in a New York complaint tied to inflammatory allegations against him. *Id.* at 13: 22-28. I did not judicially notice my declaration in this court (Dkt. 60, 67) or voluntarily dismiss in SDNY to file counterclaims here. Defendant avoids the testimony of Mr. Nessler, former *CEO* of VoiceBite, who declared in *both courts*. It never engaged his refutation of its fraud theory—and notion I was anything beyond a friendly advisor. See Ex. C. By targeting me, Defendant seeks to distract from the real issue: none of the five founders have been paid as promised—but only my son was sued.

The Court should disregard any argument premising denial of the motion on facts created by anyone but me—or otherwise ensure my son's arguments are fairly considered.

B.  Good Cause Exists to Excuse Purported Untimeliness

Defendant's timeliness objection embodies its sharp practice. Service on Aug. 14 with a Sept. 22 return date left a retired, unrepresented non-party with an untenable choice: burden the Court with a rushed motion or attempt good-faith negotiation and risk this objection. I attempted cooperation. This Court's discretion exists to prevent unjust results like what is demanded. And Rule 26(c) motions have no hard deadline; courts "look to all the circumstances" to consider a motion after return date. *Grund & Mobil Verwaltungs AG v. Amazon.com, Inc*., No. 2:23-mc-00056, Order at 10–11 (W.D. Wash. Aug. 28, 2023). The Court should consider this motion.

Good cause exists: (i) the Court advanced the hearing and already found the subpoena "overly broad"; (ii) I timely objected and negotiated for reasonable guardrails up to and past the return date; and (iii) the timeline precluded Defendant's standard—filing a motion "to be heard *and granted* before" the return date. Opp. at 17:8-14; *Conrey v. IBM Corp*., 2019 WL 5605214, at *3–4 (E.D. Pa. Oct. 30, 2019) (excusing untimeliness when parties attempted resolution).

Defendant's excuse for its own notice failure fits better here: reaching the merits causes no prejudice. But denial for untimeliness would unfairly prejudice a non-party by enforcing a party's "overly broad" procedural trap. If quashed, Defendant need only narrow and re-serve, giving me time to properly respond and for the District Judge to resolve a pending motion that may moot my subpoena. The cost/benefit calculus here heavily favors such relief.

3

Finally, even if a Rule 45(d)(3)(A) motion to quash is deemed "untimely," the Court may treat the filing as a Rule 26(c) request and impose tailored protections (scope limits, sequencing, privacy safeguards, remote appearance and cost allocation). *Grund & Mobil*, Order at 10–11 (rejecting argument that Rule 26(c) relief is categorically untimely post-return date).

C. <u>The Subpoena is Disproportionate on its Face</u>

<u>Defendant's fails to engage Rule 26(b)(1)'s post-2015 governing standard</u>. Notably, it cites no post-2015 cases to support its desired "broad scope"—a dispositive omission. The cited *Oppenheimer* standard is outdated. The Ninth Circuit now rejects discovery grounded only in 'relevance' rhetoric. <u>*Stevens v. CoreLogic, Inc.,*</u> 899 F.3d 666 (9th Cir. 2018) at 18–19 (citing 26(b)(1)[1]). District courts routinely deny 'the type of disproportionate demands' pressed here.[2]

<u>Rule 45(d)(1) affirms a duty to avoid undue burden on non-parties</u>, and Rule 26(b)(2)(C) requires direction to sources with the best, least burdensome access. See <u>*Nidec Corp. v. Victor Co. of Japan*</u>, 249 F.R.D. 575, 577–78 (N.D. Cal. 2007) ("no reason to burden nonparties when [in party possession]"); <u>*Moon v. SCP Pool Cor*</u>p., 232 F.R.D. 633, 637–38 (C.D. Cal. 2005) (weighs need, breadth, timespan, particularity, burden); <u>*Gonzales v. Google, Inc*</u>., 234 F.R.D. 674, 683–85 (N.D. Cal. 2006) (non-party extra protections).

<u>The Opp. concedes party witnesses are the primary sources</u>. It quotes me as "...advisor and collaborator of <u>Arjun Vasan</u>", who worked with "<u>every member of the VoiceBite founding team</u>" and witnessed <u>the founders</u> negotiating. Opp. at 13. It states my son "makes numerous representations" "characterizing <u>VoiceBite's negotiations with Checkmate</u> [which I] claim[ed] to have been a witness to". *Id*. at 14:1-15. Each citation to my declaration or my son's complaint refers to parties/actors *in the merger*—VoiceBite founders: Mr. Lam, Mr. Nessler and my son;

---

[1] *Hickman*'s "mutual knowledge" line is a general principle from 1947, before adoption of the modern form of Rule 26(b)(1); the Court in the same breath stressed discovery has "ultimate and necessary boundaries," including protection against annoyance/oppression and when inquiries are irrelevant or hit privilege. *Hickman v. Taylor*, 329 U.S. 495, 507 (1947); Fed. R. Civ. P. 26(b)(1) (scope is limited to material proportional to the needs of the case).

[2] ***This Court has emphasized proportionality***. See <u>*CoStar v. CREXI*</u>, No. CV 20-08819-CBM (ASx) (C.D. Cal. Feb. 18, 2022, Dkt. 111) (Sagar, Mag. J.) (finding "all communications" requests without recipient ***and*** topic qualifiers "to be overbroad and burdensome"), citing *Mfg. Automation & Software Sys., Inc. v. Hughes*, No. CV 16-8962, 2017 WL 5641120, at *5 (C.D. Cal. Sept. 21, 2017) (the proportionality requirement "is designed to avoid . . . sweeping discovery that is untethered to the claims and defenses in litigation.")

REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENA

and Defendant's executives: Mr. Bell and Mr. Agarwal. None of them have been deposed and
party discovery is yet to start. See Ex. C; Dkt. 114 ¶¶ 2-6. (Nessler Declarations (2)).

The quoted statements only confirm I am what I claim to be—a peripheral witness whose
minimal ties to this case are through other actors. *Id.* I do not say I have no possible relevance—
only that my purportedly central role is wildly ***out of proportion*** and there are many witnesses
more relevant than me. And to the extent Defendant raises Plaintiff's complaint, it disregards the
pleading's focus on employment—where I have no relevance, and which it finds inconvenient.
Compare Dkt. 10 to Dkt. 112 at 8, 9, 14, 15. Where, as here, the Court has found the subpoena
"overly broad" (e.g. disproportionate), any purported "entitlement" to fish through seven plus
years of my personal and professional life is clearly beyond the "needs of the case".

Finally, Defendant has not articulated a Rule 26(a)(1)(A)(iii) damages computation. In a
proportionality analysis under Rule 26(b)(1), "amount in controversy" is an express factor. Any
party that paid "millions of dollars" would have paperwork. But here it has not even produced
sworn testimony that a dollar was paid for the legacy code "at question", let alone "millions". Its
"initial disclosures" list no monetary amounts or supporting documentation. Defendant cannot
conjure *millions* from thin air to justify broad discovery. See Ex. A; Dkt. 113 § II.B at 10, Ex. C;

Defendant needs validation from third parties for its claims. I declined, so it targets me.
This Court should require party discovery to be substantially advanced; rules-compliant damages
be computed; and a clear definition provided for its core term, "THE VOICEBITE CODE", one
applicable to a non-party with no knowledge or access to understand it otherwise. If then, it finds
sufficient merit to enforce compliance, it may do so. See *Nidec*, 249 F.R.D. at 577.

D.  Unintelligible Requests Create an Unknowable Burden

In *Stevens v. CoreLogic*, the Ninth Circuit affirmed denial of a motion to compel where
the movant failed to connect the requested discovery to determinative issues. The same flaw
exists here: Defendant seeks material tied only to its rhetoric. A 2018 file bearing my name has
no relation to 2021–2023 employers, and Defendant misreads my declaration by recasting my
statement that I was the "coauthor … of the functional code at question" as "authorship and
ownership over the 'proprietary' code that VoiceBite sold to Checkmate" (in a merger I was not

involved with). See Dkt. 114 ¶¶ 2–6; Dkt. 112 at 12:25–26, 13:5–12. But this is clear overreach. I only attested to what it *exhibited*, as that is all Defendant made available to attest to.

A codebase consists of modules and scripts (e.g., "audio.py") and other file types—that can be added, removed, or modified over time. I coauthored the functional 2018 "audio.py"; I never worked on LLM code—what I understand was being "offered" in the merger, and I retired before LLM technology matured. The Opp. ties my statement to "VoiceBite's proprietary code" and "THE VOICEBITE CODE." Dkt. 112 at 8:16. But I distinguished (i) the LLM product being "offered" (in which I had no role) from (ii) co-authored personal code shown in its screenshots (for which I gave permission). Defendant may not rewrite my statements or invent "ownership" claims I never made, and the Court need not reach the merits to see that such imprecise labeling is self-serving; and to see "the code" is not a monolith, nor is "audio.py" a poison.

If "THE VOICEBITE CODE" is unintelligible, so is the subpoena. Nine topics feature it, and the rest rely on it for relevance. Ex. B ¶¶ 1-8, 20. Only Defendant knows what it constitutes and to proceed it must first produce. This includes the code files it disputes, and evidence like a bill of sale or schedule, listing what was acquired. Here is how it could meet that burden:

1.    **Relative access / party-first**. Defendant possesses the code repositories; I do not. Under Rule 26(b)(1) proportionality (inc. "the parties' relative access to relevant information") and Rule 45(d)(1), Defendant must first mine its party sources and identify with specificity what it cannot obtain before burdening a non-party. See *Nidec*, 249 F.R.D. at 577–78 ("no reason to burden nonparties when the documents sought are in possession of the party"). Here, in its *Initial Disclosures*, it "identifies" "the VoiceBite code", authorship, ownership, transfer, creation, and identification of authors, as well as the IP agreements and negotiations for the merger as within its control and/or possession. **Every topic that is listed in the subpoena, is directly listed in the disclosures**. This is a binding admission that party sources for what it seeks exist and are superior to mine. The Court may require Defendant produce what it has before unduly burdening me and at great expense. <u>Compare Ex. A at 9-10 (disclosures); Ex. B at 9-10 (subpoena)</u>. Even beyond burden, without these documents I am unable to understand what is being asked of me. That Defendant is likely aware of this reality should concern the Court.

REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENA

2.      **Chain-of-title**. Defendant must show: (a) what work(s) (by file) are at issue; (b) schedule and signed writing satisfying 17 U.S.C. § 204(a); and (c) that my name or contribution relates to *IP* that was actually transferred, not merely to configuration artifacts (domains, servers, accounts) or non-copyrightable elements. See 17 U.S.C. § 204(a); *Effects Assocs., Inc. v. Cohen*, 908 F.2d 555, 556–57 (9th Cir. 1990) (writing required for transfer); 17 U.S.C. § 102(b) (no protection for ideas, procedures, systems, or methods of operation); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 348–51 (1991) (original expression required).

Defendant has alleged no third-party demand letter or lawsuit, no itemized chain-of-title tying any identified code to transfer, and no reason why the parties who negotiated and executed the deal cannot supply what it seeks (and does not already possess). Ex. A at 8-9. On this record, non-party discovery is not just disproportionate—it is misdirected. The Court should require it to (i) proceed from party sources first, (ii) precisely identify the work(s) and transfer documents it relies on, and (iii) if any non-party discovery is later authorized, narrowly cabin it accordingly.

E.   Defendant Must Bear the Costs of its Overly Broad Requests

Defendant's refusal to bear the costs of its "pertinent discovery" confirms undue burden. My proposed cost-shifting was conditioned on "overly broad" requests. It reasonable and prudent for a requesting party to be constrained by the costs it would otherwise impose on a non-party.

Rule 45(d)(2)(B)(ii) requires the Court to protect a non-party from significant expense. *Legal Voice v. Stormans, Inc.*, 738 F.3d 1178, 1184–85 (9th Cir. 2013). A non-party cannot be expected to front unknown costs, and courts may properly condition compliance on an advance deposit. *United States v. CBS, Inc.*, 666 F.2d 364, 371–72 (9th Cir. 1982); see also *United States v. McGraw-Hill Cos*., 302 F.R.D. 532, 534–37 (C.D. Cal. 2014).

Any production expenses accrue to Defendant's benefit. I am not a corporation—this is post-tax money saved for retirement I cannot write off. It is fair, due to the toxic nature of this action in particular, that a reasonable deposit be advanced to avoid a moral hazard in Defendant gaining a tactical advantage by burdening the Plaintiff's father. If Defendant was truly willing to spend $15,000 moving to compel, it should not, if reasonable and acting in good faith, object to a $5,000 initial deposit. Accordingly, the Court may draw negative inferences if it refuses this.

REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENA

F.  Search Term Limited Scope is Standard and Reasonable

Courts routinely tailor ESI subpoenas with search-term limits, proximity operators, hit-count reporting, and iterative testing to satisfy Rule 26(b)(1) proportionality and Rule 45(d)'s heightened protection for non-parties. See *Gonzales v. Google, Inc*., 234 F.R.D. 674, 683–85 (N.D. Cal. 2006) (dramatically narrowing non-party subpoena; sampling/limitations to reduce burden); *William A. Gross Constr. Assocs. v. Am. Mfrs. Mut. Ins. Co*., 256 F.R.D. 134, 134–36 (S.D.N.Y. 2009) (word selection must be thoughtful and cooperative); *United States v. O'Keefe*, 537 F. Supp. 2d 14, 24 (D.D.C. 2008) (adequacy of keywords is a technical question; courts may require evidence-based term sets); *Progressive Cas. Ins. Co. v. Delaney*, No. 2:11-cv-00678, 2014 WL 2112927, at *7–10 (D. Nev. May 20, 2014) (cooperation and proportionality control search method and scope). These reflect proportionality factors added by Rule 26(b)(1) in 2015.

A search–scoped approach is suitable where, as here, sources intermingle personal and professional content. See Fed. R. Civ. P. 26(b)(1), 26(c)(1), 45(d)(1), 45(d)(3)(A); *Gonzales*, 234 F.R.D. at 684–85 (non-party burden warrants narrowing and protective measures). This targets potentially relevant items while minimizing intrusion and cost, with an audit trail the Court can use to fine-tune scope. Without objective limits, I will be unable to challenge claims that I have not produced "all" responsive material. This refusal to accept simple guardrails, like its refusal to bear any costs, is a troubling indication that relevant discovery is not all that it may be seeking.

G.  A Pending Dispositive Motion Warrants Temporary Adjournment

The Opp. relies on a disputed fact, that "VoiceBite's proprietary code" "includes the VoiceBite code authored and owned by Mr. Varadarajan." *Id*. at 14:15-19. Setting aside that I have never asserted *ownership* over any co-authored code, this question is asked by my son's pending motion to dismiss. The motion is fully briefed, with an update from the Court due Nov. 18. See Dkt. 92. Plaintiff argues that my *relevance* rides on a dispositive legal question: was *any* of the pre-VoiceBite code (including the exhibited audio.py) actually transferred? See Dkt 98.

I refer the Court to Dkts. 98 and 111 for a more thorough analysis. But regardless of the merits, no party is prejudiced if compliance is adjourned until a ruling on the pending motion. Discovery opened two months ago, with more than six months remaining. Defendant's feigned

alarm that me and my son both favor this relief is unpersuasive. I favor it because a ruling may

soon be at hand, and I will not recover time and money spent in a possibly moot exercise.

H.  The Subpoena is Unduly Burdensome for a Non-Party

Defendant cites *Mount Hope* to argue "undue burden" is not read differently for a non-

party. But this is in the context of *sanctions*, not scope or enforcement. The Ninth Circuit held

for Rule 45(d)(1) (pre-2013: 45(c)(1)) sanctions, "undue burden" means that associated with

compliance, and it cited *Mattel* as the paradigm of a sanctionable, facially overbroad subpoena

("all documents" about people/products/procedures). *Mount Hope Church v. Bash Back!*, 705

F.3d 418, 427 (9th Cir. 2012) (citing *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792,

813–14 (9th Cir. 2003)). *Mount Hope* also notes the Fifth Circuit's rule that sanctions may lie for

a "vexatiously overbroad subpoena," though it reversed since the requester made good-faith

efforts to narrow. *Id*. (citing *Tiberi v. CIGNA Ins. Co.*, 40 F.3d 110, 112 (5th Cir. 1994)).

The *Mount Hope* Court also "recognize[d] the special need to protect [non-parties]" but

declined sanctions since "the district court found" the subpoena was not the "result of a failure to

narrowly tailor requests." Here, the Court has already held the subpoena "overly broad." Dkt. 85

at fn.2. Rather than narrow, Defendant continues to press the original breadth—exactly what

*Mattel* condemns and what *Mount Hope* flags as sanctionable "facial defect." See *Mount Hope*,

705 F.3d at 427, 429–30; *Mattel*, 353 F.3d at 813–14. And unlike *Tiberi*, there were no good-

faith efforts by Defendant to narrow scope; the record shows the opposite.

Opp. at 7–8 (and throughout) says my "undue burden" showing is "baseless" and lacks

specifics. I am an unrepresented non-party. From the outset I offered to substantiate health issues

and caretaking duties in camera and under seal; Defendant has no right to my family or medical

information. In any event, the subpoena is facially overbroad (e.g., "all communications" with

my son since 2023, without topic limits) and unintelligible to a non-party as drafted (unspecified

"THE VOICEBITE CODE"), and former employer or business materials without any clear link

to this case. Defendant contends that because I worked at the same prior companies as my son,

"all communications" regarding those companies are fair game. ***This is overreach***, and further

reason to adjourn the subpoena until it is determined that the relevant claims even survive.

9

If the Court concludes that tailored relief turns on my personal circumstances—rather than on facial overbreadth, privacy, party-first sequencing, or a short adjournment pending the Rule 12(b)(6) ruling—I respectfully request leave to submit a short sealed declaration within 3 court days (including multiple letters from treating providers) for in camera review, with any compliance date adjusted accordingly. Otherwise, the Court can grant relief now by quashing or modifying the subpoena (sequenced; remote; time-limited; topic/date limits; ESI protocol; Rule 45 cost-shifting) without requiring disclosure of private medical and family details.

## IV.    CONCLUSION

The Opp. claims I "urge[s] the Court to accept [my] version of events". Dkt. 112 at 7:6-9. But it is *Defendant* who demands wholesale adoption of its narrative in substantial "statement of facts" sections. Dkt. 101 at 8-11; 112 at 8-9. My *five-page* motion does not take any position on the facts of its claims, touching upon any "version of events" only to dispute its *spin* on my own statements. Dkt. 106 at 6:8-16. And no reading can turn "the functional code at question" into "proprietary code VoiceBite sold to Checkmate" when I lack internal knowledge of the latter.

Defendant's Initial Disclosures admit it has such knowledge, and documents in the topics it seeks from me. Yet it has produced nothing. *This is dispositive as to party-first sequencing.*

Defendant purports the reason for this Motion is that I have something to hide, but seeks to drag from home a retired, non-party with health issues, invades my privacy and my family's and imposes substantial costs. The Court must weigh any benefits against burden in enforcing a subpoena it has found "overly broad". A party is not "entitled to" broad non-party discovery when it has: (1) not taken party discovery; (2) not produced compliant damages disclosures; (3) disregarded court-notice to narrow scope. Such a party has not met or even engaged its burden.

With the pending 12(b)(6) motion set to decide relevance and further weigh against the notion that its demands are proportional, Defendant would face little prejudice if the subpoena were held in abeyance. I would bear significant undue burden otherwise. That it fails to see this imbalance, or does and disregards it, weighs strongly against enforcement now.

Accordingly, I respectfully request the Court grant the motion and issue relief specified in the concurrently filed [Proposed] Order.

## <u>CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6</u>

Non-Party Vasan Varadarajan certifies that this 4,128-word brief complies with the limit of Local Rule 11-6.1 and the Court's Civil Standing Order dated Aug. 27, 2025.

**Respectfully submitted**,

Dated: **November 6, 2025**

In: **Cerritos, California**

/s/ *Vasan Varadarajan*

**Vasan Varadarajan**, Non-Party

REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENA

**DECLARATION OF VASAN VARADARAJAN**

I, Vasan Varadarajan, declare:

1. I am not a party to this action. I submit this declaration to authenticate exhibits supporting my Reply to Defendant Checkmate.com, Inc. ("Checkmate")'s Opposition to my Motion.

2. Exhibit A is a true and correct copy of Checkmate's Initial Disclosures, served on my son Plaintiff Arjun Vasan ("Arjun") on August 21, 2025., who forwarded me the PDF file.

3. Exhibit B is a true and correct copy of the subpoena served on me, which includes most of the very same categories as listed in the Initial Disclosures. The notice of subpoena was served on Arjun on or about August 15, and he forwarded me the PDF file.

4. Exhibit C contains true and correct copies of the Declaration of Robert Nessler filed in this action on October 23, 2025, and Mr. Nessler's earlier declaration filed in the SDNY Action on or about July 25, 2025. Arjun forwarded me the PDF files.

5. *I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.*


Executed on: **November 6, 2025**                    /s/ *Vasan Varadarajan*

    In: **Cerritos, California**                          **Vasan Varadarajan**, Non-Party

REPLY IN SUPPORT OF MOTION FOR A PROTECTIVE ORDER AND TO QUASH OR MODIFY SUBPOENA

# EXHIBIT A

Checkmate 26(f) Initial Disclosures

Ryan Q. Keech (SBN 280306)
 Ryan.Keech@klgates.com
Stacey Chiu (SBN 321345)
 Stacey.Chiu@klgates.com
Rebecca Makitalo (SBN 330258)
 Rebecca.Makitalo@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California  90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Defendant and Counter-Claimant*
*CHECKMATE.COM, INC.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN, | Case No. 2:25-CV-00765-MEMF-JPR |
| Plaintiff, | Hon. Maame Ewusi-Mensah Frimpong |
| v. | **DEFENDANT AND COUNTER-CLAIMANT CHECKMATE.COM, INC.'S INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1)** |
| CHECKMATE.COM, INC., | |
| Defendant. | **JURY TRIAL DEMANDED** |
| CHECKMATE.COM, INC., | |
| Counterclaim-Plaintiff, | Complaint Filed: January 28, 2025 |
| v. | Answer and Counterclaims Filed: July 9, 2025 |
| ARJUN VASAN, | |
| Counterclaim-Defendant. | |

1601358281.7

**DEFENDANT AND COUNTERCLAIMANT CHECKMATE.COM, INC.'S INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)**

Pursuant to Federal Rules of Civil Procedure Rule 26(a), Defendant and Counter-Claimant Checkmate.com, Inc. ("Defendant" or "Checkmate"), by and through its undersigned counsel hereby serves its Initial Disclosures on Plaintiff Arjun Vasan ("Plaintiff" or "Vasan") based upon the information readily available to Checkmate at this time.

## **PRELIMINARY STATEMENT**

In making these Initial Disclosures, Checkmate does not represent that it has identified every witness, document, or thing that it may use to support its claims or defenses in this action. Discovery is ongoing and these disclosures are based on information reasonably available to Checkmate at this time. Checkmate expressly reserves its rights: (a) to make subsequent revision, supplementation, or amendment to these disclosures based upon any information, evidence, documents, facts, or things that hereafter may be discovered, or the relevance of which hereafter may be discovered, and (b) to identify, produce, introduce, or rely upon additional or subsequently identified, acquired, or discovered writings, evidence, and information at trial or in any pretrial proceedings held in this case.

Checkmate objects to any disclosure of information or documents beyond that required by the Federal Rules of Civil Procedure, the Federal Rules of Evidence, the Local Rules of the United States District Court for the Central District of California, or other applicable law. Checkmate expressly preserves all of the protections afforded to it, and does not provide any information protected from disclosure, by the attorney-client privilege, the attorney work product doctrine, tax privilege, or any other privilege or immunity. Any information provided by Checkmate in connection with these disclosures remains subject to all objections as to competence, relevance, materiality, and admissibility, and to any other objections on any grounds that would require the exclusion thereof if such information were offered into evidence, and Checkmate expressly reserves all such objections and grounds.

1601358281.7

1

## INITIAL DISCLOSURES

1. **WITNESSES**

The following individuals are likely to have discoverable information that Checkmate may use to support its claims and defenses in this action:

**A. Vishal Agarwal**

Mr. Agarwal may be contacted through undersigned counsel.

Mr. Agarwal is the founder and CEO of Checkmate. Mr. Agarwal is likely to have knowledge of the VoiceBite transaction, pursuant to the Merger Agreement and related agreements, underlying Checkmate's counterclaims; the representations that Plaintiff made in relation to the VoiceBite transaction; the agreements underlying Plaintiff's claims; Plaintiff's communications and behavior throughout and thereafter employment at Checkmate, including Plaintiff's communications with a competitor of Checkmate; and other matters relevant to Checkmate's claims and defenses

**B. Michael Bell**

Mr. Bell may be contacted through undersigned counsel.

Mr. Bell is the Chief of Strategy of Checkmate. Mr. Bell is likely to have knowledge of the VoiceBite transaction, pursuant to the Merger Agreement and related agreements, underlying Checkmate's counterclaims; the representations that Plaintiff made in in relation to the VoiceBite transaction; the agreements underlying Plaintiff's claims; Plaintiff's communications and behavior throughout and thereafter employment at Checkmate, including Plaintiff's communications with a competitor of Checkmate; and other matters relevant to Checkmate's claims and defenses.

**C. Amy Brown**

Ms. Brown may be contacted through undersigned counsel.

Ms. Brown is the Vice President of Human Resources at Checkmate. Ms. Brown is likely to have knowledge of the VoiceBite transaction, pursuant to the Merger Agreement and related agreements, underlying Checkmate's counterclaims;

the agreements underlying Plaintiff's claims and related communications; Plaintiff's communications and behavior throughout and thereafter employment at Checkmate, including Plaintiff's communications with a competitor of Checkmate; and other matters relevant to Checkmate's claims and defenses.

### D. Christopher Lam

9 Lamay Crescent

Toronto, Ontario, M1X 1J2, Canada

Mr. Lam is a co-founder of VoiceBite.  Mr. Lam is likely to have knowledge of the VoiceBite transaction, pursuant to the Merger Agreement and related agreements, underlying Checkmate's counterclaims; Plaintiff's communications relating to the VoiceBite transaction; the authorship and ownership of the VoiceBite code; Plaintiff's communications and behavior throughout and thereafter Plaintiff's employment at Checkmate; and other matters relevant to Checkmate's claims and defenses.

### E. Robert Nessler

1149 Hollyhead Lane

Cupertino, CA 95014

Mr. Nessler is a co-founder of VoiceBite.  Mr. Nessler is likely to have knowledge of the VoiceBite transaction, pursuant to the Merger Agreement and related agreements, underlying Checkmate's counterclaims; the authorship and ownership of the VoiceBite code; agreements relating to the VoiceBite code; Plaintiff's previous company CyborgOPS and any agreements relating thereto; Plaintiff's agreements and communications with Presto Automation; agreements with VoiceBite and Plaintiff; communications relating to the VoiceBite transaction; Plaintiff's communications and behavior throughout and thereafter Plaintiff's employment at Checkmate; and other matters relevant to Checkmate's claims and defenses.

1601358281.7

3

**F. Arjun Vasan**

12615 193rd Street

Cerritos, CA 90703

Telephone: (562) 900-6541

Mr. Vasan is the Plaintiff and Counterclaim-Defendant in this action. Mr. Vasan was a co-founder of VoiceBite and was employed by Checkmate during the relevant time period. Mr. Vasan is likely to have knowledge of the VoiceBite transaction, pursuant to the Merger Agreement and related agreements, underlying Checkmate's counterclaims; the representations he made to Checkmate in connection with the VoiceBite transaction; any agreements relating to the VoiceBite code; his previous company CyborgOPS and any agreements relating thereto; Vasan Varadarajan's role at CyborgOPS; Vasan Varadarajan's authorship and ownership of the VoiceBite code; agreements and communications with Presto Automation; agreements between himself and VoiceBite; communications relating to the VoiceBite transaction; the agreements underlying Plaintiff's claims and related communications; own communications and behavior throughout and thereafter his employment at Checkmate, including his communications with a competitor of Checkmate; and other matters relevant to Checkmate's claims and defenses.

**G. Vasan Varadarajan**

12615 193rd Street

Cerritos, CA 90703

Mr. Varadarajan is Plaintiff's father and alleges that he worked in conjunction with Plaintiff in connection with the claims and defenses in this action. Mr. Varadarajan is likely to have knowledge of the authorship and ownership of the VoiceBite code; any agreements between himself and VoiceBite; documents and communications relating to the VoiceBite transaction; documents and communications regarding the VoiceBite code; his role at CyborgOPS; agreements

1601358281.7

4

and communications between CyborgOPS and Presto Automation; Plaintiff's employment with Checkmate; Plaintiff's communications and behavior throughout and thereafter his employment at Checkmate; Plaintiff's previous employment; and other matters relevant to Checkmate's claims and defenses.

**H. Latha Vasan**

12615 193rd Street

Cerritos, CA 90703

Ms. Vasan (possibly also known as "Latha Varadarajan") is Plaintiff's mother and, according to Plaintiff, is likely to have knowledge of the VoiceBite transaction and related communications, pursuant to the Merger Agreement and related agreements, underlying Checkmate's counterclaims; Vasan's prior employment history; documents and communications relating to CyborgOPS; documents and communications related to Presto Automation; Plaintiff's employment with Checkmate; Plaintiff's communications and behavior throughout and following his employment at Checkmate, including Plaintiff's communications with a competitor of Checkmate; and other matters relevant to Checkmate's claims and defenses.

**I.  Bill Healey**

Last known address:

985 Industrial Road, Suite 205

San Carlos, CA 94070

Mr. Healey is the current Chief Technology Officer at Presto (possibly also known as "Presto Automation").  Mr. Healey is likely to have knowledge of documents and communications relating to Presto's acquisition of CyborgOps; the authorship and ownership of the VoiceBite code; and other matters relevant to Checkmate's claims and defenses.

///

///

1601358281.7

5

1

**J.  Krishna Gupta**

2

Last known address:

3

307 Harvard Street,

4

Cambridge, MA 02139

5

Mr. Gupta is the Co-founder and Chairman of Presto.  Mr. Gupta is likely to

6

have knowledge of documents and communications relating to Presto's acquisition

7

of CyborgOps; the authorship and ownership of the VoiceBite code; and other

8

matters relevant to Checkmate's claims and defenses

9

**K. Adam Ahmad**

10

Last known address:

11

3790 El Camino Real, Unit #506

12

Palo Alto, CA 94306

13

Mr. Ahmad is the Founder and Chief Executive Officer of Kea.ai (possibly

14

also known as "Kea" or "Kea Cloud").  Mr. Ahmad is likely to have knowledge of

15

Plaintiff's prior employment history and Plaintiff's conduct, communications and

16

behavior during Plaintiff's employment and/or tenure at Kea.ai.

17

**L. Mansour Movahhedinia**

18

Mr. Movahhedinia may be contacted through undersigned counsel.

19

Mr. Movahhedinia is a Senior Legal AI/ML Engineer at Checkmate.  Mr.

20

Movahhedinia is likely to have knowledge of the VoiceBite code; Plaintiff's

21

employment with Checkmate; Plaintiff's communications and behavior throughout

22

and thereafter employment at Checkmate; and other matters relevant to Checkmate's

23

claims and defenses.

24

In addition to the individuals identified above, the following individuals may

25

have discoverable information that Checkmate may use to support its claims or

26

defenses: (i) persons deposed during this litigation and persons identified during such

27

depositions; (ii) persons identified in Plaintiff's Initial Disclosures, who may be

28

1601358281.7

6

contacted either through Plaintiff or any counsel eventually retained by Plaintiff; and (iii) other individuals employed by and/or affiliated with Checkmate or Plaintiff.

Checkmate will identify any testifying expert witnesses as required by Federal Rules of Civil Procedure Rule 26(a)(2) and the Scheduling Order issued in this case.

**2.    DOCUMENTS, ELECTRONICALLY STORED INFORMATION, AND TANGIBLE THINGS**

Based upon information reasonably available to Checkmate at this time, Checkmate identifies the following categories of documents, electronically stored information, and tangible things that are in the possession, custody, or control of Checkmate and which may be used to support its claims or defenses, unless solely for impeachment.   Checkmate reserves the right to supplement and/or amend this information.

1.  The Intellectual Property Acknowledgement entered into by the parties on April 30, 2024;

2.  The Assignment of IP and Other Assets entered into by the parties on April 30, 2024;

3.  The Non-Compete Agreement entered into by the parties;

4.  The Offer Letter and Bonus Agreement entered into by the parties;

5.  Any other contracts between the parties;

6.  Documents and communications relating to the negotiation of the above and any other contracts between the parties;

7.  The VoiceBite code;

8.  Plaintiff's employment records at Checkmate;

9.  Documents and communications relating to Plaintiff's employment with and at Checkmate;

10. Plaintiff's communications with a competitor or competitors of Checkmate;

11. Documents and communications relating to the authorship of the

VoiceBite code;

12. Documents and communications relating to the ownership of the VoiceBite code;

13. Documents and communications relating to the transfer of ownership of the VoiceBite code;

14. Documents and communications relating to the creation or development of the VoiceBite Code, including documents and communications relating to the purported creation or development of the VoiceBite Code as communicated to Checkmate during the relevant time period;

15. Documents and communications identifying the authors or creators of the VoiceBite Code;

16. Documents and communications relating to any agreements based on or involving the VoiceBite Code, including but not limited to licensing agreements, assignments of intellectual property, or any transfers of ownership; and

17. Documents and communications relating to the VoiceBite shareholders.

## 3.    **COMPUTATION OF DAMAGES**

Checkmate seeks damages for its claims of breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation. Checkmate further seeks a declaratory judgment that Plaintiff is disentitled to further compensation under the parties' agreements and relevant law and that Plaintiff is required to indemnify Checkmate for losses incurred as a result of Plaintiff's conduct; payment of the full costs of this action, including attorney's fees, to the fullest extent permitted by the relevant agreements and law; recovery of pre- and post-judgment interest; and any such other and further relief, in law or in equity, to which Checkmate may be entitled or which the Court may deem just and proper.

**4.**    **INSURANCE AGREEMENT**

To the best of Checkmate's current knowledge, it has no insurance coverage that could relate to the claims in this action. Checkmate's investigation is ongoing and Checkmate expressly reserves the right to amend, supplement, or modify this disclosure as appropriate, if it becomes aware of such a policy.

Date: August 21, 2025                    K&L GATES LLP

                                        */s/ Rebecca I. Makitalo*

                                        Ryan Q. Keech (SBN 280306)
                                        Stacey Chiu (SBN 321345)
                                        Rebecca I. Makitalo (SBN 330258)
                                        10100 Santa Monica Boulevard, 8th Floor
                                        Los Angeles, California 90067
                                        Telephone: 310.552.5000
                                        Facsimile: 310.552.5001

                                        *Attorneys for Defendant and Counter-Claimant CHECKMATE.COM INC..*

**DEFENDANT AND COUNTERCLAIMANT CHECKMATE.COM, INC.'S INITIAL DISCLOSURES PURSUANT TO RULE 26(A)(1)**

1

## PROOF OF SERVICE

2

I am employed in the County of Los Angeles, State of California, over the age of eighteen

3

years, and not a party of the within action. My business address is 10100 Santa Monica Blvd. 8th Floor Los Angeles, CA 90067.

4

On **August 21, 2025** , I served the foregoing document(s) described as:

5

6

- **DEFENDANT AND COUNTER-CLAIMANT CHECKMATE.COM, INC.'S INITIAL DISCLOSURES PURSUANT TO RULE 26(a)(1)**

7

on the interested parties in this action as follows:

8

Arjun Vasan

9

Email: arjun.vasan@gmail.com

10

*Plaintiff Pro Se*

11

12

☑        **(BY ELECTRONIC MAIL)** Pursuant to C.R.C. 2.251 or agreement by all parties, I served the described document(s) by emailing it to each of the aforementioned electronic mail addresses and the transmission was reported as complete and without error.

13

14

I declare under penalty of perjury under the laws of the State of California that the above is

15

true and correct. Executed on **August 21, 2025,** at Los Angeles, California.

16

17

*/s/Nicole Adasha*
Nicole Adasha

18

19

20

21

22

23

24

25

26

27

28

3

# EXHIBIT B

Ryan Q. Keech (SBN 280306)
 Ryan.Keech@klgates.com
Stacey Chiu (SBN 321345)
 Stacey.Chiu@klgates.com
Rebecca I. Makitalo (SBN 330258)
 Rebecca.Makitalo@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Defendant and Counter-Claimant*
*CHECKMATE.COM INC.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN, | Case No. 2:25-CV-00765-MEMF-JPR |
| Plaintiff, | Hon. Maame Ewusi-Mensah Frimpong |
| v. | **CHECKMATE.COM INC.'S NOTICE OF SUBPOENA FOR DEPOSITION OF VASAN VARADARAJAN AND REQUEST FOR PRODUCTION OF DOCUMENTS** |
| CHECKMATE.COM, INC., | |
| Defendant. | |
| CHECKMATE.COM, INC., | Date: September 22, 2025 |
| Counterclaim-Plaintiff, | Time: 11:00 a.m. |
| v. | Place: K&L Gates LLP |
| ARJUN VASAN, | 10100 Santa Monica Blvd. 8th Fl. |
| Counterclaim-Defendant. | Los Angeles, California 90067 |

1600698903.1

CHECKMATE.COM INC.'S NOTICE OF SUBPOENA FOR DEPOSITION OF VASAN
VARADARAJAN AND REQUEST FOR PRODUCTION OF DOCUMENTS

**PLEASE TAKE NOTICE** that pursuant to Federal Rules of Civil Procedure 30 and 45, at 11:00 a.m. on September 22, 2025, Defendant and Counter-Claimant Checkmate.com, Inc. ("Checkmate") by and through its attorneys of record, will take the deposition upon oral examination of Vasan Varadarajan ("Deponent") at the offices of K&L Gates LLP, 10100 Santa Monica Blvd., 8th Fl., Los Angeles, California 90067.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Federal Rule of Civil Procedure 30(b)(3) the deposition will take place before a notary public or other officer authorized to administer oaths, will be recorded by stenographic method through the instant visual display of testimony, audio means, and/or videotape, and will continue until complete consistent with the Federal Rules of Civil Procedure.

**PLEASE TAKE FURTHER NOTICE** that Checkmate reserves the right to use at trial the recording and/or transcript of the deposition. The deposition will be taken for the purposes of discovery, for use at trial, and for all other permissible purposes under the Federal Rules of Civil Procedure.

**PLEASE TAKE FURTHER NOTICE** that pursuant to Rule 30(b)(2) and Rule 45 Deponent is requested to bring the documents set forth in the attached Subpoena and Attachment A thereto at the above-noticed deposition.

Date: August 15, 2025                    K&L GATES LLP

*/s/ Rebecca I. Makitalo*
Ryan Q. Keech (SBN 280306)
Stacey Chiu (SBN 321345)
Rebecca I. Makitalo (SBN 330258)
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

*Attorneys for Defendant and Counter-Claimant CHECKMATE.COM INC.*

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Central District of California

| | |
|---|---|
| Arjun Vasan | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    2:25-cv-00765-MEMF-JPR |
| Checkmate.com, Inc. | ) |
| | ) |
| *Defendant* | ) |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                   Vasan Varadarajan
                              12615 193rd Street, Cerritos, CA 90703
                              *(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: K&L Gates LLP | Date and Time: |
|---|---|
| 10100 Santa Monica Blvd., 8th Fl.<br>Los Angeles, California 90067 | 09/22/2025 11:00 am |

The deposition will be recorded by this method:    testimony by videotape, audio, and stenographic

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Attachment A

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:        08/14/2025

             *CLERK OF COURT*
                                                        OR
                                                             /s/ Rebecca I. Makitalo
_____        _____
        *Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*  _____
Checkmate.com, Inc. _____, who issues or requests this subpoena, are:
Ryan Q. Keech, Stacey Chiu, Rebecca I. Makitalo; K&L GATES LLP, 10100 Santa Monica Blvd., 8th Fl., Los Angeles, CA; Ryan.Keech@klgates.com, Stacey.Chiu@klgates.com, Rebecca.Makitalo@klgates.com; 310 552-5502

**Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  2:25-cv-00765-MEMF-JPR

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $     0.00     .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2) *For Other Discovery.*** A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2) *Command to Produce Materials or Permit Inspection.***
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3) *Quashing or Modifying a Subpoena.***

    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Attachment A

### Definitions

"YOU" or "YOUR" refers to Vasan Varadarajan, an individual, together with any PERSON acting directly or indirectly by, through, under, or on YOUR behalf, including but not limited to YOUR current or former members, directors, officers, agents, attorneys, employees, partners, joint venturers, contractors, accountants, or representatives, and any other current or former corporation, partnership association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest of YOU and any other PERSON acting on YOUR behalf or subject to YOUR control.

"ARJUN VASAN" refers to Arjun Vasan, an individual, together with any PERSON acting directly or indirectly by, through, under, or on ARJUN VASAN's behalf, including but not limited to ARJUN VASAN's current or former members, directors, officers, agents, attorneys, employees, partners, joint venturers, contractors, accountants, or representatives, and any other current or former corporation, partnership association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest of ARJUN VASAN and any other PERSON acting on ARJUN VASAN's behalf or subject to his control.

"CHECKMATE" refers to Defendant and Cross-Complainant Checkmate.com, Inc. together with any PERSON acting directly or indirectly by, through, under, or on CHECKMATE's behalf, including but not limited to CHECKMATE's current or former members, directors, officers, agents, attorneys, employees, partners, joint venturers, contractors, accountants, or representatives, and any other current or former corporation, partnership association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest of CHECKMATE and any other PERSON acting on CHECKMATE's behalf or subject to CHECKMATE's control.

"VOICEBITE" refers to VoiceBite Corporation together with any PERSON acting directly or indirectly by, through, under, or on VOICEBITE's behalf, including but not limited to VOICEBITE's current or former members, directors, officers, agents, attorneys, employees, partners, joint venturers, contractors, accountants, or representatives, and any other current or former corporation, partnership association, trust, parent, subsidiary, division, affiliate, predecessor-in-interest and successor-in-interest of VOICEBITE and any other PERSON acting on VOICEBITE's behalf or subject to VOICEBITE's control.

"THE VOICEBITE TRANSACTION" refers to the transaction(s) closing in or about 2024 whereby CHECKMATE entered into the Merger Agreement and related transactional documents with ARJUN VASAN, Robert Nessler, Christopher Lam, Isamu Aoki and Paul Justin Garcia.

"THE VOICEBITE CODE" refers to the proprietary code CHECKMATE acquired from VOICEBITE by way of THE VOICEBITE TRANSACTION.

"THIS ACTION" refers to *Arjun Vasan. v. Checkmate.com Inc*. (Case No. 2:25cv765) (Central District of California).

"REFERRING OR RELATING TO," "REFER OR RELATE TO," "RELATING," "RELATING TO," or "REFERS TO" means any and all of the following terms and their synonyms: refer to, discuss, constitute, evidence, pertain to, mention, support, undermine, disprove, refute, contradict, negate, bear on, amend, revise, modify, touch on, contain, embody, reflect, identify, state, deal with, concern, comment on, summarize, respond to, relate to, or describe.

"DOCUMENT" or "DOCUMENTS" shall be construed in its broadest possible sense, to encompass all books, documents, data compilations, tangible things, or other evidentiary material, whether generated or stored in hard-copy, electronic media, or other format, which is discoverable under the Federal Rules of Civil Procedure. The term "DOCUMENT" includes, without limitation, the original and all file copies and other copies that are not identical to the original no matter how or by whom prepared, and all drafts prepared in connection with any DOCUMENTS, whether used or not. If the original of any DOCUMENT is not in YOUR possession, custody, or control, a copy of that DOCUMENT should be produced.

"COMMUNICATION(S)" means any transmittal and/or receipt of information, whether such was oral or written, and whether such was by chance, prearranged, formal or informal, and specifically includes, but is not limited to, conversations in person, telephone conversations, electronic mail (including instant messages and text messages), voicemail, letters, memoranda, statements, media releases, magazine and newspaper articles, and video and audio transmissions.

"PERSON," in the plural as well as the singular, means any natural person, association, partnership, corporation, joint venture, government entity, organization, limited liability company, trust, institution, proprietorship, or any other entity recognized as having an existence under law.

"IDENTIFY," "IDENTIFYING," "IDENTIFIED" or "IDENTITY" means the following:

    a. With reference to an individual, such individual's name, current or last known business title, current or last known business affiliation, current or last known relationship to YOU, current or last known residential and business address, and current or last known telephone number.

    b. With reference to an entity or entities, such entity's full name, state (or country) of incorporation or organization, present or last known address, and present or last known telephone number.

"INCLUDING" means including, but not limited to.

///

///

**Requests**

1.  All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR creation, authorship, or development of THE VOICEBITE CODE.

2.  All DOCUMENTS and COMMUNICATIONS IDENTIFYING the authors or creators of THE VOICEBITE CODE.

3.  All DOCUMENTS and COMMUNICATIONS RELATING TO the authors or creators of THE VOICEBITE CODE.

4.  All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR contributions to THE VOICEBITE CODE.

5.  All DOCUMENTS and COMMUNICATIONS RELATING TO the ownership of THE VOICEBITE CODE.

6.  All DOCUMENTS and COMMUNICATIONS RELATING TO any agreements for THE VOICEBITE CODE INCLUDING licensing agreements, intellectual property assignments, or any transfers of ownership.

7.  All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR involvement with VOICEBITE.

8.  All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR involvement with THE VOICEBITE TRANSACTION.

9.  All DOCUMENTS RELATING TO YOUR role at CyborgOPS.

10. All DOCUMENTS RELATING TO ARJUN VASAN's role at CyborgOPS.

11. All DOCUMENTS and COMMUNICATIONS RELATING TO any code authored by YOU at CyborgOPS.

12. All DOCUMENTS and COMMUNICATIONS RELATING TO any code authored by ARJUN VASAN at CyborgOPS.

13. All DOCUMENTS and COMMUNICATIONS RELATING TO any agreements for the sale of code at CyborgOPS INCLUDING licensing agreements, intellectual property assignments, or any transfers of ownership.

14. All DOCUMENTS and COMMUNICATIONS RELATING TO any agreements between CyborgOPS and VOICEBITE.

15. All DOCUMENTS and COMMUNICATIONS RELATING TO Presto Automation.

16. All DOCUMENTS and COMMUNICATIONS RELATING TO any agreements between CyborgOPS and Presto Automation.

17. All DOCUMENTS and COMMUNICATIONS with ARJUN VASAN, from January 1, 2023 to the present.

18. All DOCUMENTS and COMMUNICATIONS RELATING TO any agreements between YOU and ARJUN VASAN RELATING TO the transfer of any code owned by YOU.

19. All DOCUMENTS and COMMUNICATIONS RELATING TO any agreements between YOU and ARJUN VASAN RELATING TO the transfer of any code authored by YOU.

20. All DOCUMENTS and COMMUNICATIONS RELATING TO THE VOICEBITE CODE.

21. All DOCUMENTS and COMMUNICATIONS RELATING TO THE VOICEBITE TRANSACTION.

22. All DOCUMENTS and COMMUNICATIONS RELATING TO CHECKMATE.

23. All DOCUMENTS and COMMUNICATIONS RELATING TO THIS ACTION.

## PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California, over the age of eighteen years, and not a party of the within action.  My business address is 10100 Santa Monica Blvd. 8th Floor Los Angeles, CA 90067.

On **August 15, 2025** , I served the foregoing document(s) described as:

- **CHECKMATE.COM INC.'S NOTICE OF SUBPOENA FOR DEPOSITION OF VASAN VARADARAJAN AND REQUEST FOR PRODUCTION OF DOCUMENTS**

on the interested parties in this action as follows:

Arjun Vasan
Email: arjun.vasan@gmail.com

*Plaintiff Pro Se*

☑       **(BY ELECTRONIC MAIL)** Pursuant to C.R.C. 2.251 or agreement by all parties, I served the described document(s) by emailing it to each of the aforementioned electronic mail addresses and the transmission was reported as complete and without error.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.  Executed on **August 15, 2025,** at Los Angeles, California.

*/s/Nicole Adasha*
Nicole Adasha

1600698903.1

3

CHECKMATE.COM INC.'S NOTICE OF SUBPOENA FOR DEPOSITION OF VASAN
VARADARAJAN AND REQUEST FOR PRODUCTION OF DOCUMENTS

# EXHIBIT C

Nessler Declaration (SDNY, July 25, 2025)

Nessler Declaration (CD Cal, October 23, 2025)

**Arjun Vasan v. Checkmate.com, Inc.**

C.D. Cal.. No. 2:25-cv-MEMF-ASx;

Vasan Varadarajan

vsvconsult@gmail.com

12615 193rd Street

Cerritos, CA 90703

562-448-2827

Non-Party

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**Arjun Vasan**,

    Plaintiff and Counter-Defendant


vs.


**Checkmate.com, Inc.**,

(dba "Checkmate"),

    Defendant and Counterclaimant

Case No.:  2:25−cv−00765−MEMF−ASX

Hon. Alka Sagar | DISCOVERY MATTER


**DECLARATION OF ROBERT NESSLER**


Complaint Filed: January 28, 2025

Hearing Date: November 20, 2025

Hearing Time: 11:00 A.M.

Courtroom: 540

## DECLARATION OF ROBERT NESSLER

I, Robert Nessler, declare:

1.  I am the former CEO of VoiceBite Corporation, and its cofounder with Arjun Vasan and Christopher Lam. I submit this declaration to clarify Vasan Varadarajan's relation to VoiceBite. I am over 18 years of age, have personal knowledge of the facts asserted herein, and if called to testify, could and would do so competently.

2.  Mr. Varadarajan had no role in VoiceBite, was never paid by and held no equity in the company. He did not participate in our meetings, operations or product development.

3.  At most, Mr. Varadarajan, known to the team from prior work, was an informal advisor.

4.  Mr. Varadarajan observed parts of the VoiceBite-Checkmate negotiations, as Mr. Lam stayed with Arjun Vasan's family for a month leading up to closing, and Mr. Lam and Arjun Vasan attended the meetings together from Mr. Varadarajan's Cerritos residence.

5.  Several individuals, including the VoiceBite founders, Checkmate executives, and attorneys from both sides, have participatory knowledge of the negotiations and were operationally involved, unlike Mr. Varadarajan.

6.  To my knowledge, none of these individuals have been deposed.

7.  *I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed on: October 23, 2025

In Cupertino, California

*Robert Nessler*
_____

**Robert Nessler**, Former VoiceBite CEO

Doc ID: 471548a4f9e01b37207495269bcf175fcfdd1b08

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

\------------------------------------------------------- X

CHECKMATE.COM, INC.,

                      Plaintiff,

                -against-

ARJUN VASAN,

                   Defendant.

\------------------------------------------------------- X

**25-CV-03181** (JMF)

<u>DECLARATION OF ROBERT NESSLER IN SUPPORT OF DEFENDANT'S MOTION FOR POST-DISMISSAL COSTS, FEES AND SANCTIONS</u>

I, **Robert Nessler**, declare as follows:

<u>**Capacity and Authority**</u>

1. I am over 18 years of age, competent to testify, and the Holder Representative designated pursuant to Section 9.1 of the Merger Agreement dated April 30, 2024, between Checkmate.com, Inc. ("Checkmate") and VoiceBite Corporation. ("VoiceBite"). I submit this declaration in my official capacity as Holder Representative, fully authorized and empowered to act and speak on behalf of all pre-closing equity holders and founding team members of VoiceBite, including myself, Arjun Vasan, Christopher Lam, Isamu Aoki, and Paul Garcia, as expressly provided in the Merger Agreement.

<u>**Contradictions in Amended Complaint Allegations**</u>

-1-

2. **Paragraph 1 (**_"No matter what" and Alleged Fraudulent Intent_)

   **This statement is categorically false.** The phrase "no matter what" refers to a negotiating position shared by the three primary founders (myself, Arjun Vasan, and Christopher Lam) during joint negotiations. It referred specifically to the requirement for guaranteed retention bonuses for the founding team as a condition of the transaction—_not_ as a scheme for personal gain. The deal would not have proceeded absent these guaranteed bonuses, as all founders were giving up their upside in VoiceBite for what was represented as stability and security with Checkmate. No founder, including Mr. Vasan, stood to "ride off into the sunset" with "millions of dollars"; in fact, none of the founders, including myself, ever received these bonuses.

3. **Paragraph 2 (**_Vasan individually sought to convince Checkmate to pay "millions"_)

   **This statement is categorically false.** All negotiations were conducted jointly and at no point did "Vasan" individually attempt to convince Checkmate of anything. The negotiation team consisted of the three primary founders (myself, Vasan, and Lam), working for the benefit of all VoiceBite equity holders. At no time were "millions of dollars" at stake for any individual founder. Instead, $1.5 million in guaranteed retention bonuses were negotiated to be shared pro rata by all five pre-closing holders according to their percentage ownership in VoiceBite. This was transparent and discussed repeatedly.

4. Though not detailed here, several other paragraphs in Checkmate's complaint are categorically false or misleading.

**Facts and Statements**

5. At no point did Checkmate pay the Founding Team or other VoiceBite equity holders the $1.5 million in bonuses promised as part of the merger and employment agreements.

6. All material representations regarding were known to all founders prior to the merger and were discussed with legal counsel, and all material representations were in good faith determined to be true and accurate.

7. On November 14th, 2024, at 9AM, our team was informed that Arjun Vasan was terminated due to a breach of the non-solicitation clause in his non-competition agreement. Checkmate proceeded to interview the team after his termination.

8. At no point did Arjun Vasan attempt to recruit me, and to my knowledge, any of the "same employees sold to checkmate" to work for any competitor. No such employee reported any such solicitation to Checkmate leadership, as it did not occur. Therefore, the allegation in ¶50 is categorically and knowingly false.

9. On or about January 29, 2025, I was served a "Notice of Direct Claim" against the VoiceBite pre-closing shareholders, asserting forfeiture of more than $1.5 million in guaranteed employment bonuses and all equity pursuant to the parties' agreements.

10. The Notice alleged Fraud and misrepresentations by VoiceBite and its associates.

11. In my capacity as Holder Representative, I engaged counsel Grant Thomas of Thomas Whitelaw LLP to respond to the Notice of Direct Claim.

12. On or about February 7, 2025, after discussions with myself, Christopher Lam and Arjun Vasan, Mr. Thomas determined an appropriate response to the Notice, distinguishing the disputed functional code from VoiceBite's intellectual property.

13. *At no point did I authorize the joint response to be attributed to Arjun Vasan in his individual capacity* or agree to Checkmate doing so. Therefore ¶¶ 33-34 of the Complaint are knowingly and entirely false and these statements were never made by Arjun Vasan.

14. At no point did we or Mr. Thomas state, or imply, that VoiceBite's entire codebase was a "valueless non-asset". Indeed, the team continues to build on and evolve the codebase.

15. On or about February 14th, 2025, we were informed that Checkmate would be suing Arjun Vasan in his individual capacity.

16. Since then, the pre-closing shareholders of VoiceBite have been told that they will not receive their unpaid bonuses due to a "legal dispute".

17. At no point was I ever informed of any 3rd party claim against Checkmate due to any of the purported disputed code.

18. The Voice Project continues to progress and is actively deployed at Checkmate customers, including Popeye's Louisiana Kitchen. Checkmate stands to gain immensely from the work of Arjun Vasan and the rest of the VoiceBite team.

## Conclusion

19. I reserve all rights and authorities as Holder Representative under the Merger Agreement and make this declaration solely in that official capacity.

*I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

**Executed on**: Friday, July 25, 2025,

In Cupertino, CA

Signed by:

Robert Nessler

6F3B9EAD570B457...

*By:*    **Robert Nessler**
Holder Representative of the VoiceBite Pre-Closing Shareholders and former Chief Executive Officer of VoiceBite

-4-