Arjun Vasan

arjun.vasan@gmail.com

12615 193rd Street

Cerritos, CA 90703

(562) 900-6541

Plaintiff In Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Arjun Vasan**, <br><br> Plaintiff and Counter-Defendant <br><br> vs. <br><br> **Checkmate.com, Inc.**, <br> (dba "Checkmate"), <br> Defendant and Counterclaimant | Case No.: 2:25−cv−00765−MEMF−ASx <br> Hon. Alka Sagar \| DISCOVERY MATTER <br><br> **PLAINTIFF'S REPLY IN SUPPORT OF HIS MOTION TO COMPEL DISCOVERY, DETERMINE SUFFICIENCY AND FOR A PROTECTIVE ORDER; NOTICE OF FAILURE TO TIMELY OPPOSE; REQUEST TO GRANT AS UNOPPOSED; OR, IN THE ALTERNATIVE, ADVANCE ANY HEARING TO NOVEMBER 20, 2025** <br><br> Complaint Filed: January 28, 2025 <br> Hearing Date: December 2, 2025 <br> Hearing Time: 11:00 A.M. <br> Courtroom: 540 |

TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

    Plaintiff Arjun Vasan ("AV") hereby replies to support his motion to compel, determine sufficiency and for a protective order phasing discovery (Dkt. 113). AV respectfully requests the Court grant the motion as unopposed, as Defendant Checkmate.com, Inc. ("Checkmate") failed to timely file an opposition, despite clear notice and its own acknowledgment of the motion.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.      CHECKMATE ACKNOWLEDGES IT HAD NOTICE OF THE MOTION

On November 6, 2025, Checkmate filed a reply to AV's party opposition to its Motion to Compel (Dkts. 101; 111). The reply mentions AV's motion (Dkt. 113) multiple times, claiming (falsely) it was duplicative of his motions to dismiss its counterclaims and to strike its defenses:

Dkt. 116 at 6:14 writes: "...Plaintiff's … reiterates baseless and irrelevant arguments from [his] other pending motions". Pages 11 and 16 repeat the same. Setting aside merits, the reply—filed 6 days before it failed to timely oppose this motion—forecloses any assertion of "excusable neglect". AV respectfully requests the motion be granted for this alone—in whole or in part.

## II.     CHECKMATE'S REPEATED UNTIMELY OPPOSITION IS PREJUDICIAL

Checkmate's failure to oppose this motion is not an isolated mistake; rather it continues a pattern of disregarding deadlines for tactical advantage. It opposed AV's motions to dismiss its counterclaims and to strike its affirmative defenses *twenty days* late—without leave. See Dkts. 89, 91. When belatedly requesting leave, it did not concede any fault or propose any remedy for prejudice to AV—namely, delayed resolution of potentially case-dispositive motions. Dkt. 90. Instead, it took advantage of the uncertainty it created by pressing aggressive non-party discovery, in direct contravention of Court guidance. See Dkt. 88 at 2:15-17.

The Court's September 4, 2025, scheduling order asked the parties to seek guidance from the assigned magistrate judge with respect to phasing and limitations on discovery. AV is one of those parties. It is entirely proper for him to seek sequenced, proportional limits and compliance with Rules 26 and 37. AV repeatedly sought to confer accordingly but was rebuffed each time. Checkmate also mischaracterized the Court's order in its motion to compel, falsely claiming the Court had "denied" phasing. See Dkt. 101 at 12–13. AV's motion at Dkt. 113 is a direct response to the Court's invitation. Checkmate, not AV, disregards Hon. Judge Rosenbluth finding that AV "**is correct** that [the requests] **are overly broad**". See Dkt. 85 at 4, fn.2. Yet Checkmate refuses *any* guardrails—insisting its subpoena is "narrowly tailored" *as is*. See Dkt. 116 at 12:4-6.

Against that backdrop, Checkmate's decision to ignore the Local Rule 7-9 deadline here is not trivial. It goes to the heart of its strategy: to burden the Court, AV, and AV's *family* with

expansive, intrusive, and expensive discovery—*much* of which may be mooted by the pending 12(b)(6) motion—while disregarding rules that cabin discovery for everyone else. Humoring an untimely opposition here would reward this misconduct and encourage more of the same.

### III. THE COURT SHOULD COMPEL RULE 26 DAMAGES COMPUTATIONS

Checkmate has yet to put forth, let alone substantiate, any plausible theory of damages. Its opposition to the pending 12(b)(6) motion flippantly alleges that it was "duped into acquiring a valueless non-asset," and (past tense) "*paid* millions of dollars for it."—concluding this "met its pleading obligations." See Dkt. 94 at 19:2-3. Eight months since its allegations arose in New York—it has yet to disclose *any* document or sworn affadavit accounting for how any "millions" were paid, to whom and for what. Meanwhile, AV has catalogued the contracts Checkmate itself filed (across forums) to show—on the papers—no "millions" (1) payable to him; (2) ever paid to anyone; (3) or exchanged "for code". AV's analysis is backed by sworn testimony from Robert Nessler, Holder Rep. under the Merger Agreement purported to govern the parties' bargain. His own damages theory is supported and *computed with numbers* from the very same documents.

Rule 26(a)(1)(A)(iii) requires "a computation of each category of damages claimed" and the documents on which each computation is based. The Ninth Circuit is clear that this means an actual computation, not vague references to large round numbers. Here, Checkmate's disclosures lack any number at all (the "millions" are asserted only in the CCs and briefing). Prejudice to AV is clear—his well-supported wage claims are effectively on hold while Checkmate's unsupported fraud narrative survives on the basis of "millions of dollars" it promised *but never paid*.

Checkmate's "normal notice pleading" standard is not binding on this Court—contrary to its assertions, there is strong Ninth Circuit law favoring 9(b) specificity for damages. Where, as here, an imbalance exists between competing claims, the Court can and should use its discretion in the interests of justice. But its problems go beyond 8(b)/9(b) and reach Rule 11. While its CCs are cautious not to allege *completed* payment, its opposition pulls no punches, boldly and falsely alleging "millions" were actually paid. This confidence is curious, given its failure to support the number with an explanation of why AV's contrary evidence is unavailing. See Dkt. 98; 111. AV respectfully requests the Court compel Rule 26 compliant damages computations accordingly.

## IV. THE COURT SHOULD REQUIRE SUFFICIENT RFA RESPONSES

AV's motion also seeks an order determining the sufficiency of Checkmate's responses to his Requests for Admission and compelling compliant answers. Rule 36(a)(4) is explicit: if a matter is not admitted, "the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter," and where only part can be denied, the answer must specify what is admitted and deny the rest. Checkmate's responses fall far short. As set out in AV's opening brief, its responses are laced with boilerplate objections ("vague," "overbroad," "misleading"), "subject to and without waiving" formulations, and non-answers that neither admit nor deny instead recite argumentative narratives. On multiple key RFAs, Checkmate claims it "lacks information" or that "discovery is ongoing" while refusing to describe any actual inquiry, even though the information is squarely within its control (or provided to it by AV as an attachment). On others, it simply restates its own pleading rhetoric instead of responding to the specific admission requested.

Here, AV does not ask the Court to deem everything admitted. He asks the Court only to:

1. Find that Checkmate's current responses are insufficient under Rule 36(a)(4);

2. Order amended answers that (a) admit or deny each request, (b) fairly respond to the substance, and (c) state in detail any inability to admit or deny after a reasonable inquiry; and

3. Make clear that continued evasive answers may result in the Court deeming the matters admitted under Rule 36(a)(6) and *Asea*.

RFAs exist to narrow disputes and avoid trial by ambush. If Checkmate wishes to impose heavy discovery burdens on AV and his family, it must first give clear, rule-compliant answers to basic requests for admission about its own conduct and documents.

## V. THE COURT SHOULD PHASE DISCOVERY

This is not a close call. AV's claims are supported by documents, pled with specificity, and do not require "broad discovery". Even AV's fraud claims—not his current focus—are pled with extreme particularity: events tied to specific dates, source documents quoted verbatim (and often attached), with specific actors and context identified. Who, what, when, where, how are all spelled out. AV has not tried to meet the lowest common denominator of notice pleading; he has

shown his work. Checkmate has done the opposite. And beyond fraud—**AV's wage claims are undisputed**: Checkmate relies on declaratory relief and 45+ affirmative defenses to shield itself from liability for wage theft it *admits* and asks the Court to bless. Its proclaimed "entitlement" to "broad discovery" must cede to California Public Policy favoring prompt payment of wages.

The contrast between the parties' pleadings underscores why discovery should be phased. AV's Complaint anchors each claim in specific contracts, dated emails and Slack messages, and concrete dollar amounts—with detailed and itemized calculations. FAC ¶¶ 15–23, 24–32, 84–90, 92–96. By contrast, the counterclaims rely on conclusory tropes ("no matter what," "millions of dollars," "valueless non-asset") and simply allege "damages…in an amount to be proved at trial" CCs ¶¶ 1–2, 7, 33, 61, 46, 53, 57, 62, 68. Treating conclusory rhetoric with the same, or greater, deference as documented and quantified claims is fundamentally unjust. Phasing corrects that imbalance: a party with specific, testable allegations should not be forced to finance and endure heavy discovery burdens to disprove its opponent's unsupported narratives.

Requiring (a) Rule 26 damages computations, (b) proper RFA responses, and (c) targeted party discovery before broad non-party ESI minimizes undue burden until claims have survived scrutiny and been described with precision. Checkmate offers no explanation why it needs broad discovery from non-parties *now*, before it can even say what it supposedly paid or how exactly it was harmed. The Court should adopt the phased approach set out in Dkt. 113-1 and disregard any unbecoming assertions of "entitlement" in favor of modern Rule 26(b)(1) *proportionality*.

## VI.   THE REQUESTED RELIEF SHOULD BE GRANTED AS UNOPPOSED

AV's requested relief is non-dispositive. Checkmate still has opportunity to supplement its disclosures and supply compliant answers to AV's requests for admissions. Granting phasing does not prejudice its ability to conduct relevant discovery at the proper stage of this litigation. Doing so will streamline these proceedings—minimizing contentious motion practice such as that which is ongoing. See Dkts. 101; 106. Further, barring attorney's fees claims for discovery motion practice—outside a finding of bad faith—limits the gamesmanship seen here. At present, Checkmate faces no costs even for expressly violating rules—but can impose substantial costs on AV simply by prevailing on its own motions. This imbalance is seen in its refusal to confer on

the grounds for this motion, and now in its failure to timely oppose. Were it to face no penalties, this conduct would continue and likely exacerbate—unfairly prejudicing the proceedings.

## VII. GOVERNING STANDARD

As noted above, Local Rule 7-9 requires oppositions be filed "not later than twenty-one (21) days before the date designated for the hearing." C.D. Cal. L.R. 7-9. Local Rule 7-12 further provides: "The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." C.D. Cal. L.R. 7-12. The Ninth Circuit has affirmed enforcing local deadlines in this manner. In *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (per curiam), the court upheld dismissal per a local rule deeming a motion to be granted as proper relief for a non-moving party's failure to timely file an opposition.

Here, Checkmate had actual notice of AV's motion, referenced it in its briefing, and nonetheless failed to file an opposition by the Local Rule 7-9 deadline. Under L.R. 7-12 and the authority above, the Court may deem that failure consent to the granting of AV's motion.

AV's motion details Checkmate's failures to provide Rule 26(a)(1)(A)(iii) damages computations, evasive and non-responsive answers to Requests for Admission, and insistence on burdening non-parties before producing basic party discovery. Dkt. 113. Checkmate's decision not to oppose those Rule 37 arguments only underscores that relief is appropriate.

## VIII. PENDING MOTION FOR SANCTIONS

On November 17, 2025, AV moved for sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent powers (Dkt. 121), addressing litigation abuses that inform the posture seen here, including extortionate threats of "criminal liability," misstatement of contracts, and refusal to disclose key documents. AV respectfully submits that the conduct described therein is of such a nature that the Court should address it with rigor. Checkmate's failure to provide Rule 26 damage computations, evasive RFA responses, refusal to confer on phasing, and now its decision not to oppose this motion at all, fit the same pattern: disregarding substantive obligations while leveraging bare, inflammatory rhetoric to extract burdensome discovery and fee leverage.

AV does not ask the Court to prejudge the sanctions motion here. But the existence of that motion, and the record it describes, underscores why the relief requested is necessary. Where

1  serious questions have been raised about a party's good faith, it would be unfair to (1) indulge
2  missed deadlines, (2) permit burdensome non-party discovery on unsubstantiated damages, or (3)
3  award any fees for discovery motion practice against a *pro se* party. AV's proposed measures are
4  modest responses to the pattern of conduct addressed comprehensively in Dkt. 121.

### IX.   CHECKMATE'S AD HOMINEM ATTACKS SHOULD BE DISREGARDED

AV's right to self-representation under 28 U.S.C. § 1654 necessarily includes the ability to communicate with his own witnesses and explain his legal positions; non-party witnesses, in turn, may hear those explanations and make their own decisions, as Mr. Varadarajan has done. AV's zealous self-advocacy is a direct threat to Checkmate's litigation strategy. Aware that AV is not vulnerable to litigation pressure, it seeks to exert such pressure through his father, while undermining his positions with *ad hominem* attacks. It has followed this strategy from the onset of this action—repeatedly inserting unnecessary invective into procedural motions. Brief after brief, Checkmate seeks to persuade the Court that AV does not *deserve* a fair hearing.

In denying Checkmate's Motion to Dismiss or Transfer, this Court emphatically rejected such tactics. Indeed, in favoring AV's plain language reading of Labor Code § 925, the Court found his view *of legal representation* (and his authorities) more persuasive than Counsel's spin. Dkt. 67 at 15:9-27. It had opened by purporting, *inter alia*, that AV was "disruptive", "erratic", "unprofessional" and "insubordinate"—to argue for proper venue and forum clause validity. Dkt. 18. When none of these labels had a modicum of relevance, and before AV had filed any brief, this was its strategy. The Court was not persuaded and ruled for AV on every legal point.

Counsel's fixation on AV's use of AI has metastasized into a desperate obsession. This Court has given its accusations no moment, but it remains undeterred. AV is transparent that he uses AI as part of his workflow—just as many lawyers do. By contrast, K&L Gates attorneys including Mr. Keech here, were subject to a federal OSC not for *using* AI but failing to disclose such use upon questioning in federal court—with sanctions for the firm on May 5, 2025. The "AI generated" label is a transparently *ad hominem* attempt to bias this court against a *pro se* party. Its accusations should therefore be disregarded as irrelevant and, indeed, a projection. See *Lacey v. State Farm Gen. Ins. Co*. at 15 ¶ 18, No. 2:24-cv-05205-FMO (C.D. Cal., May 5, 2025).

## X. CONCLUSION AND REQUESTED RELIEF

AV has been attempting in good faith to raise these issues since August 2025, sending several L.R. 37-1 letters to no avail. See Dkt. 113. By moving to compel a non-party, Checkmate managed an end-run around the L.R. 37-1 process; permitting it to benefit would prejudice AV's discovery priorities. For the reasons set forth herein and in his opening brief, AV respectfully requests that the Court deem his Motion to Compel Discovery, Determine Sufficiency, and for a Protective Order (Dkt. 113) as unopposed and grant it (in whole or part) under Local Rule 7-12.

To the extent such relief is declined, AV respectfully asks the Court to advance the hearing on this motion to Nov. 20, 2025, so that it is heard with the pending motions at Dkts. 101 and 106. Coordination will permit the Court to efficiently address overlapping issues in a single sitting. Checkmate has had a full and unused opportunity to oppose under Local Rule 7-9 and would not be prejudiced. If an opposition is belatedly filed and considered despite untimeliness, AV respectfully requests leave to reply to any unaddressed arguments raised but maintains that any further delay in considering phasing would unfairly benefit Checkmate for its failure here.

AV finally asks the Court to disregard Checkmate's new and prejudicial accusations of the unauthorized practice of law and AI misuse (Dkt. 116). To be clear, AV has not: (1) drafted filed or signed papers on anyone else's behalf; (2) held himself out as an attorney; (3) provided any legal advice; or (4) filed papers without a reasonable inquiry under Rule 11. Any assistance to his father was limited to providing relevant documents, explaining his own positions, aiding in formatting and in *using technology*. AV has used AI responsibly and transparently. Should the Court wish to consider these allegations, AV respectfully requests leave for a short sur-reply.

Dated: **November 17, 2025**

In: **Cerritos, California**

**Respectfully submitted**,

/s/ *Arjun Vasan*

**Arjun Vasan**, Plaintiff *In Pro Per*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6

Plaintiff Arjun Vasan certifies that this brief contains 2,325 words, which complies with the 7000-word limit of L.R. 11-6.1 and the Court's Civil Standing Order dated Aug. 27, 2025.

Dated: **November 17, 2025**

In: **Cerritos, California**

**Respectfully submitted**,

/s/ *Arjun Vasan*

**Arjun Vasan**, Plaintiff *In Pro Per*