# **<u>EXHIBIT H</u>**

Arjun Vasan

12615 193rd Street

Cerritos, CA 90703

(562) 900-6541

arjun.vasan@gmail.com

Plaintiff In Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>    Plaintiff and Counter-Defendant,<br><br>v.<br><br>CHECKMATE.COM, INC<br>(dba "Checkmate"),<br><br>    Defendant and Counterclaimant. | Case No.: 2:25-CV-00765-MEMF-JPR<br><br>**JOINT REPORT PURSUANT TO FRCP 26(F) AND C.D. CAL. LOCAL RULE 26-1**<br><br>Scheduling Conference<br>Date: September 4, 2025,<br>Time: 10:00 a.m.<br>Courtroom: 8b<br><br>Complaint Filed: January 28, 2025 |

**TO THE HONORABLE COURT:**

    Pursuant to Federal Rule of Civil Procedure 26(f), Local Rule 26-1, and the Court's June 25, 2025, Scheduling Order (ECF No. 67), Plaintiff Arjun Vasan ("AV," "Vasan," or "Plaintiff") and DefendantCheckmate.com, Inc. ("Checkmate" or "Defendant"), by and through their counsel of record hereby submit this Joint Rule 26(f) Report following their conference held on August 7, 2025, and in advance of the Scheduling Conference to be held on September 4, 2025.

1

### A. STATEMENT OF THE CASE

**1. Plaintiff's Position**

This action arises from Checkmate's fraudulent inducement, wage theft, breach of contract and retaliation under state and federal law. AV joined Checkmate in 2024 as part of its acquihire of VoiceBite, a California-based startup he co-founded. To secure his agreement, Checkmate promised job security, team autonomy, guaranteed compensation and valuable equity. Those promises induced AV and his cofounders to enter exclusive negotiations and ultimately join Checkmate. On his first day, AV raised compliance concerns under Labor Code § 2802 (requiring employers to pay for or provide work equipment) and was met with threats, including: "We don't hire sticklers for the law" and "I'm happy to fire you if you're going to be a problem." This set a retaliatory tone that escalated as AV pressed for timely payments owed to him and his team, which Checkmate failed to deliver time and again.

Despite these repeated breaches, AV *delivered* — launching features weekly, deploying live AI phone-ordering customers, laying groundwork for AI drive-thru ordering, directing key investor and customer demos and leading his team with cofounders Christopher Lam and Robert Nessler. These achievements are documented, including on quarterly leadership slides. In July 2024, Checkmate announced a $10 million fundraising round internally but denied it triggered the team's negotiated retention bonus, claiming, without evidence, the funds were raised in contingent tranches. AV, alarmed, demanded overdue back pay, performance criteria, and bonuses. Checkmate agreed to pay half of the bonuses in early September in exchange for code transfer — confirmed in writing by CEO Agarwal, who represented the funds would be escrowed. VoiceBite complied in good faith, but proof of escrow never came. "Evasiveness" claims are dead on arrival — Checkmate was aware the founders, especially AV, were wary of its intentions — as its actions included withholding owed payments while urging more hiring.

When Mr. Lam left for a planned honeymoon in late September, Agarwal and Strategy Chief Michael Bell — AV's direct supervisor — increased pressure on AV, who was by then working nights and weekends — to cover for Lam's absence. Agarwal personally asked AV to prepare a "make or break" demo for Popeye's by the third week of October 2024.

For weeks, AV worked without rest, and his health deteriorated under pressure from Bell and Agarwal. On Oct 22nd, AV experienced panic attacks, required inpatient treatment and took medical leave. On Oct 23rd, the Popeye's demo was a *success*, and Checkmate publicly announced the $10 million dollar raise without caveat. AV was relieved, and expected the bonuses would soon follow. On Nov 3rd, AV requested his bonus, while under medical care. Bell replied after several emails, but conditioned bonus discussion on his return. AV was startled — and suspected Checkmate never intended pay: the "merger" was a sham. On Nov 14th, he was terminated via Zoom while still on leave; after offering to return part time to discuss the bonus. AV expected the agreements at issue to protect him: the founder's had negotiated severance and bonuses guaranteed if terminated, for any reason. Checkmate, it turns out, had buried terms that undermined these protections.

The retaliation AV experienced in employment was just a taste of what was to come. On Jan 28, 2025, he reluctantly filed this instant action after Checkmate refused to pay his earned and unpaid compensation. On Jan 29, Checkmate served a formal Notice on Mr. Nessler, the team's representative by contract, asserting that all their bonuses were forfeited. A few weeks later, after attempting to coerce Mr. Nessler and Mr. Lam into a "new deal", it then filed a plainly retaliatory lawsuit against AV in New York. Checkmate has never explained how it calculates the "millions of dollars" in damages it loudly alleges. The rest of the VoiceBite team remains employed, the drive thru product is now deployed at Popeye's and yet their bonuses too remain unpaid.

On June 26, 2025, this Court denied Checkmate's Motion to Dismiss — holding that § 925 applies to the Merger Agreement and any required to start employment. On July 10, after full briefing on AV's motion to dismiss in SDNY, Checkmate abruptly dismissed its own action, which it now brings here, *verbatim*, where its counterclaims now bind it to California law — under which none of the *three allegedly breached documents are valid or enforceable*, as Plaintiff will show.

AV seeks more than his own pay — he fights for his team and for future California founders of pre-seed, pre-revenue startups. This court has now held that *their* rights, in *acquihire* settings, are akin to those of *any* employee — a major win recognizing that leverage and artful contracting does not override public policy. In our state, *bargained-for* terms yield to *voted-for* laws. That's the California way. Checkmate's counterclaims tests that proposition, while AV aims to defend it.

3

**2. Defendant's Position**

This is a breach of contract and fraud case. Checkmate, a solutions-powered company with enterprise technology, sought to acquire VoiceBite, a company co- founded by Vasan, for its proprietary code ("VoiceBite Code") with the goal of expanding its voice ordering AI capabilities. In early 2024, by way of the Merger Agreement and related transactional documents including, but not limited to, Assignment of IP and Other Assets and Non-Competition Agreement (the "Transaction"). Throughout the Transaction, Vasan was evasive about allowing Checkmate to review the VoiceBite Code, so Checkmate ensured as part of the Transaction that it obtained certain representations and warranties regarding the VoiceBite Code from Vasan, including that the VoiceBite Code was original, authored, and owned by Vasan.

Vasan knew these representations were false and that Checkmate was relying on these representations in order to proceed with the Transaction. After the Transaction closed on April 30, 2024, Checkmate employed Vasan. Thereafter, Checkmate made repeated requests to access the VoiceBite Code, which went ignored. Around the same time, Vasan's behavior while employed with Checkmate became increasingly erratic and unprofessional. He also began looking to work for a competing company and contacted a competitor of Checkmate, mentioning the potential of bringing along two engineers from Checkmate with him on his departure. In these communications, he also attempted to pawn off the same VoiceBite Code he had just sold to Checkmate.

Once Checkmate gained access to the VoiceBite Code, it quickly realized that the code was riddled with references to Vasan's previous company, Cyborg – a company that was previously acquired by Presto Automation – and that the code pre-dated back to 2018, yeas before VoiceBite was even formed. Further, the VoiceBite Code also revealed references to an additional third-party author, "Vasan Varadarajan," Vasan's father who was a former "Founder & President" of CyborgOPS. Varadarajan's role was not disclosed in the Transaction, nor was his authorship acknowledged in the representations and warranties made by Vasan. Once Vasan was confronted with his fraudulent representations to Checkmate, he began characterizing these misrepresentations as "incidental" or that "Cyborg" was merely a commonly used English word. Even more boldly, Vasan claimed that the VoiceBite Code was not intellectual property, despite the fact that the entire

Transaction was premised upon the proprietary VoiceBite Code. Vasan has gone as far as to admit that he actually discussed the possibility of disclosing to Checkmate the fraudulent representations he made concerning the VoiceBite Code, with his VoiceBite co-founders, but ultimately decided not to disclose this information in order to ensure that Checkmate would move forward with the Transaction.

Defendant and Counter-Claimant Checkmate denies the allegations in Plaintiff's Amended Complaint. Following the VoiceBite Transaction, certain VoiceBite team members became employees of Checkmate. Checkmate employed Vasan as Vice President of AI Technology. Throughout his employment with Checkmate, Vasan's communications with team members and the public became increasingly erratic and unprofessional. Vasan received several written and verbal warnings in the fall of 2024, due to his disruptive and unprofessional workplace conduct, including threatening litigation against his colleagues and sending outbursts via Checkmate's internal slack channels.

In October 2024, Vasan indicated that he needed to be placed on leave. Around the same time Checkmate learned that Vasan began looking to work at a competing company, in violation of his non-compete agreement. On or around November 7 and 8, 2024, Vasan contacted a competitor of Checkmate and mentioned the possibility of leaving Checkmate and bringing two Checkmate engineers along with him in a potential hire by the competitor. In these communications, Vasan also alluded to pawning off the very same VoiceBite Code he sold to Checkmate. Thereafter, on November 14, 2024, Vasan notified Checkmate of his good reason resignation.

For these and other reasons, it is not Vasan who is entitled to recovery; it is, instead, Checkmate that has suffered significant damage as a result of Vasan's unlawful conduct.

### B. SUBJECT MATTER JURISDICTION

The Parties agree that this Court has subject-matter jurisdiction under 28 U.S.C. § 1332 because it involves parties who are all citizens of different states or foreign entities and the amount in controversy exceeds $75,000, exclusive of interest and costs.

**Plaintiff's Note**: Venue is proper in the Central District of California under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the claims occurred here, and because the Court has already determined California law governs under Labor Code § 925.

## C.  LEGAL ISSUES

### 3.  Plaintiff's Position

Plaintiff asserts claims for Wage Theft under the California Labor Code; Breach of Contract (Offer Letter and Bonus Agreement); Breach of the Covenant of Good Faith and Fair Dealing (or, in the alternative, Unjust Enrichment); Wrongful Termination in Violation of Public Policy (or, in the alternative, Constructive Discharge); Promissory Fraud/Estoppel; Fraudulent Inducement; Violation of the FMLA and CFRA; and Retaliation in violation of federal and state employment laws.

### 4.  Defendant's Position

Defendant has asserted claims for Breach of Contract of Intellectual Property Acknowledgement and Assignment of IP and Other Assets, Breach of Contract of Noncompete Agreement, Breach of the Implied Covenant of Good Faith and Fair Dealing, Fraud, Negligent Misrepresentation, and Declaratory Relief.

## D.  DAMAGES

### 5.  Plaintiff's Position

As set forth in his Amended Complaint, Plaintiff seeks:

- Unpaid severance: $120,000. See Offer Letter. (Wage Theft, Breach of Contract)
- Unpaid retention bonus: $500,000. See Bonus Agreement. (Same as Above)
- Back pay: (until judgment, est. $192,000 as of this filing). See Offer Letter. (Wrongful Termination in Violation of Public Policy, FMLA, CFRA)
- Waiting time penalties under Labor Code §§ 201–203 (to be determined). (Wage Theft)
- Lost Economic Opportunity (to be determined). (Promissory Fraud, Fraudulent Inducement)
- Reputational Damage (to be determined). (Retaliation)
- Additional statutory penalties and interest (to be determined).
- Emotional distress damages (to be determined).
- Punitive damages for willful and malicious conduct.

Total damages sought exceed $2 million, exclusive of punitive damages and attorneys' fees.

**6. Defendant's Position**

As set forth in its Answer and Counterclaims, Defendant seeks:

1. On the First through Fifth Claims for Relief, that Checkmate recover compensatory, consequential, incidental damages, and lost profits in an amount to be proved at trial in excess of the jurisdictional minimum of this Court;

2. On the Sixth Claim for Relief, that a declaratory judgment issue that Plaintiff is disentitled to further compensation under the parties' agreements and relevant law and that Plaintiff is required to indemnify Defendant for losses incurred as a result of the foregoing conduct.

3. That Plaintiff be ordered to pay punitive and exemplary damages in a sum sufficient to punish and deter him and others from similar wrongdoing;

4. That Plaintiff pay to Checkmate the full costs of this action, including attorney's fees, to the fullest extent permitted by the parties' agreements and relevant law;

5. That Checkmate recover pre- and post-judgment interest;

6. That Checkmate be granted such other and further relief, in law or in equity, to which Defendant may be entitled or as the Court may deem just and proper include compensatory, consequential, incidental damages, and lost profits. Damages have not yet been calculated.

### E. PARTIES AND EVIDENCE

**7. Plaintiff's Position**

As **to** Plaintiff's employment claims, the proper parties are presently before the Court. As to Defendant's counterclaims, additional parties may be required. Plaintiff expressly reserves rights under Rules **13(h), 14, 19, and 20** to add co-plaintiffs, counter-defendants, or third parties without slowing Phase-1 scheduling (see § K.1 Discovery Plan – Plaintiff's Position). The key documents for Phase I are already before the court, and include the agreements at issue, and other documents exhibited by the parties in this or the related SDNY action. Discovery has only just commenced. Plaintiff may require testimony from the following (phased appropriately): Vishal Agarwal, Michael Bell, Amy Brown, Robert Nessler, Christopher Lam, Rajat Suri, Christian Delsanto, Ryan Q. Keech, Griffin Schroeder and others and reserves all rights accordingly.

### 8. Defendant's Position

The proper parties are currently before this Court. Discovery has only just commenced. Key documents include, among others, the underlying contracts the Parties allege have been breached, the VoiceBite Code, Vasan's employment records, Vasan's communication with competing a competing company, transfers of ownership of the VoiceBite Code, documents relating to the authorship and ownership of the VoiceBite Code, together with related documents and communications.

Defendant may require testimony from the following percipient witnesses: Michael Bell, Vishal Agarwal, Amy Brown, Vasan Varadarajan, Latha Varadarajan, Bill Healy, Krishna Gupta, Adam Ahmad, Mansour Movahhedinia, and Robert Nessler.

## F. INSURANCE

### 9. Plaintiff's Position

Plaintiff is currently unaware of any applicable insurance coverage.

### 10. Defendant's Position

Defendant is currently unaware of any applicable insurance coverage covering liability in this action.

## G. MANUAL FOR COMPLEX LITIGATION

### 11. Plaintiff's Position

This is not a class action or MDL, but the Court may—and should—draw on the Manual for Complex Litigation (Fourth) (Federal Judicial Center) as persuasive authority for efficient case management. Consistent with Rules 1, 16, 26, 30, and 45, Plaintiff requests the MCL-endorsed techniques the Court routinely uses in ordinary civil cases:

(i) Phased discovery and issue sequencing (Phase-1: wage/bonus/retaliation/termination; Phase-2 only if needed);

(ii) Prioritizing party witnesses and Rule 30(b)(6) before any nonparty/apex depositions;

(iii) A proportional, native-first ESI protocol (with chat exports in JSON/CSV + readable render) and a Rule 502(d) clawback;

(iv) Rolling productions and early, targeted partial summary adjudication on paper-only

issues; and

(v) Early ADR immediately after Phase-1.

Plaintiff does not agree that MCL tools are "unnecessary"; they are precisely the proportional measures that streamline this case.

**12. Defendant's Position**

This case does not involve the type of complexity contemplated by the Manual for Complex Litigation and does not believe that any procedures from the manual are necessary.

### H. MOTIONS

**13. Plaintiff's Position**

a. Motion to Dismiss Counterclaims (pending, Plaintiff will amend by August 15, 2025.

b. Motion to Strike Affirmative Defenses (will be filed by August 15, 2025).

c. Motion to Bifurcate Employment Claims (see proposed phasing)

d. Motion for Sanctions Under Rule 11 (safe harbor notice to be sent August 15, 2025).

**14. Defendant's Position**

Defendant does not currently anticipate filing any motions to add parties, amend its pleadings, or transfer venue.

### I. DISPOSITIVE MOTIONS

**15. Plaintiff's Position**

As set forth above, Plaintiff anticipates filing a motion for partial summary judgment as to wage theft and other employment-based claims, to be heard by the end of 2025.

**16. Defendant's Position**

Defendant anticipates filing a motion for summary judgment as to all claims in this case at the earliest available opportunity, and as discovery in this action supports.

### J. STATUS OF DISCOVERY

To date, no discovery has been conducted by either party.

**17. Defendant's Position**

To date, no discovery has been conducted by Defendant. Plaintiff has improperly noticed the depositions of Michael Bell, Vishal Agarwal, Amy Brown, and Griffin Schroeder.

## K. DISCOVERY PLAN

**18. Joint Position**

    **a.**     **Initial Disclosures**

The Parties do not seek any changes in the form or requirement for disclosures under Rule 26(a) of the Federal Rules of Civil Procedure. The Parties shall serve their initial disclosures by August 21, 2025.

    **b.**     **Scope of Discovery**

The Parties expect to conduct discovery including requests for production of documents, electronics materials, and things, interrogatories, requests for admissions and deposition testimony.

    **c.**     **Privilege Log**

The Parties agree that all privileged materials requested in discovery shall be listed on a privilege log.

    **d.**     **Service of Discovery:**

The Parties have stipulated that written discovery requests and responses shall be served via e-mail to the following:

**For Plaintiff:**

    Arjun Vasan (arjun.vasan@gmail.com)

**For Defendant:**

    Ryan Q. Keech (Ryan.keech@klgates.com)

    Stacey Chiu (Stacey.chiu@klgates.com)

    Rebecca Makitalo (Rebecca.makitalo@klgates.com)

**19. Plaintiff's Position**

    **e.**     **Discovery Should Be Phased Appropriately**

Plaintiff requests phased discovery and issue sequencing consistent with Fed. R. Civ. P. 1, 16, 26, 30, and 45. Plaintiff proposes bifurcation into two phases to isolate legal and documentary issues that are ready for decision now (contracts, termination date, pay records, and policy/text evidence of negative-factor retaliation) and defers expensive, peripheral, or nonparty-burdensome

topics to Phase II only if necessary. Phasing promotes proportionality, reduces nonparty burden, and positions the Court to resolve clean, narrow questions by early motion while preserving the jury right on any remaining triable issues. Nothing in this proposal waives Plaintiff's claims or remedies; it simply sequences them for efficiency and fairness. Plaintiff has consistently maintained, in email communications, that he intends to seek bifurcation of his wage and breach claims, for which discovery needed is minimal, from his fraud claims as well as Defendant's counterclaims. The second bucket will likely require intensive and expensive third-party discovery.

**Interim Non-Party Stay**

Pending the Rule 16 Scheduling Conference, nonparty depositions (including family members, investors, and competitor-adjacent witnesses) shall be deferred. Phase-1 sequencing will prioritize party decision-makers and a focused Rule 30(b)(6) (wages/bonus/severance math; HR/IT; BYOD/leave policy; termination process). This interim stay avoids undue nonparty burden and preserves proportionality while the Court sets phasing. See Fed. R. Civ. P. 1, 16, 26(b)(1), 26(b)(2)(C), 45(d)(1).

**Phase I — Wages/Contract & Targeted Retaliation (120 days).** Scope: (i) wages, bonus, severance under the executed Offer Letter and Bonus Agreement; (ii) termination timing and payment/tender; (iii) BYOD and medical-leave issues limited to document-proved elements (protected activity, employer knowledge, and negative-factor use of leave); and (iv) records/retention. Discovery will prioritize party sources and a focused Rule 30(b)(6) (wages/bonus/severance math; HR/IT; BYOD/leave policy/application; termination process). Plaintiff will move for summary judgment on liability and damages on the wage/contract claims and seek entry of judgment (with §203 penalties/interest as warranted) and Rule 54(b) certification for immediate payment. Plaintiff will also seek partial summary adjudication on the discrete retaliation/leave elements proved by documents (with only authentication/metadata discovery). Private mediation will occur within 15–30 days after Phase-1 completion.

**Phase I Limits.** Up to 5 depositions per side, including one 30(b)(6) day. Party witnesses first (CEO/decision-makers/HR-IT). Nonparties (investors, competitor-adjacent, family) are deferred absent a topic-specific, non-duplicative proffer and leave of Court; if later allowed: remote, $\leq 2$

hours, document-anchored, and within the Rule 45(c) 100-mile place of compliance. Attendance/examination at an opponent-noticed deposition does not count against the cap.

Depositions of Plaintiff's family members are disproportionate for Phase-1 and duplicative of party/30(b)(6) sources. Absent leave upon a specific, non-duplicative proffer tied to a Phase-1 element, such depositions should be denied or deferred. If later allowed, the conditions above apply.

**Phase II**—Fraud, Promissory Fraud, Wrongful Termination and all Counterclaims (only if needed). If issues remain after Phase I rulings, Phase II will address discovery-heavy matters (e.g., fraudulent inducement, promissory fraud/estoppel, Wrongful Termination, as well as all counterclaims (including any IP-related claims). As the counterclaims have yet to survive a motion to dismiss, this phasing supports the interests of Judicial Economy.

### f. Electronically Stored Information

Native-first and pro-se accessible: emails .PST/.EML, office files native, PDFs text-searchable, chats JSON/CSV + readable render with message IDs and UTC timestamps; minimal CSV metadata (no .dat/.lfp/TIFF default). Rule 502(d) clawback; rolling productions every 30 days. BYOD limited to work accounts/workspaces; no device imaging of personal devices.

### g. Inadvertent Production

Plaintiff agrees to a Rule 502(d) clawback only for materials created and communicated after the commencement of this action; for avoidance of doubt, any document or communication dated before filing is outside clawback and remains discoverable/usable regardless of when produced here. Nothing herein revives any pre-suit privilege or work-product protection. Pre-suit communications exchanged between or shared with both sides (e.g., VoiceBite/its agents and Checkmate/its agents) — including emails that copy counsel — are not privileged as between these parties, and any later change of control or ownership does not retroactively restore privilege to materials already disclosed to the counterparty. If Defendant claims to control "VoiceBite's" privilege for internal, pre-suit, target-only communications, it must (a) identify the actual privilege holder and transactional basis for control; (b) serve a targeted log (date, authors/recipients with roles, subject, privilege basis); and (c) acknowledge that any pre-suit communication it has produced, quoted, or relied upon effects at least a fairness-based waiver sufficient to obtain full context (no cherry-picking). Any assertion of

common-interest protection over pre-suit buyer–seller negotiations must be supported by a contemporaneous written agreement reflecting a shared legal (not merely commercial) interest that predates the communication; absent that showing, disclosure to the other side waives privilege. For post-commencement items only, upon written notice under Rule 26(b)(5)(B) the receiving party will sequester the specified material, halt review/use pending resolution, and may submit it under seal for a ruling; the producing party will provide a targeted privilege log within 7 days, and the receiving party need not destroy attorney work product created before notice. The same limited protection applies to third-party productions in this litigation, and does not restore any pre-suit waiver.

**20. Defendant's Position**

Defendant has not yet begun written discovery, but expects to take discovery on the following issues:

    1. Vasan's communications with the VoiceBite shareholders regarding the VoiceBite code;

    2. Vasan's communications with Vasan Varadarajan regarding the VoiceBite Code;

    3. Authorship and ownership of the VoiceBite Code;

    4. Any transfers of ownership of the VoiceBite Code;

    5. Vasan's employment history;

    6. Vasan's communications with other companies while employed with Checkmate.

Defendant reserves its right to add additional subjects as the case develops and discovery proceeds. Checkmate's preliminary list of subjects is not intended to be inclusive or preclusive and is made without waiving its right to object to Plaintiff's discovery as necessary.

    **h.    Discovery Should Not Be Phased**

Defendant does not believe discovery should be phased in this matter. The claims, counterclaims, and defenses are sufficiently interrelated such that discovery should not be phased, and there is no basis to deviate from standard discovery procedures as set for the by the Federal Rules of Civil Procedure. During the conference, Plaintiff initially agreed to this approach; however, Plaintiff has since changed his position as stated in this report.

    **i.    Electronically Stored Information**

Defendant asks that all electronically stored information shall be produced with an acceptable

load file in .dat, .lfp, or other agreed-upon file type. Each load file shall be accompanied by .tif images with associated text searchable ("OCR") .txt files. Excel spreadsheets shall be produced in native format. All documents shall be Bates labeled in sequential order. All redactions shall be listed on an accompanying privilege log. The Parties' obligations for the production of ESI shall not otherwise extend beyond those imposed by the Federal Rules of Civil Procedure. During the conference, Plaintiff initially agreed to this approach; however, Plaintiff has since changed his position as stated in this report.

Each Party has acknowledged its ongoing duty to preserve discoverable ESI.

### j. Inadvertent Production

Defendant asks that the inadvertent or unintentional disclosure of any information subject to a claim of attorney-client privilege, work product immunity, or any other applicable privilege or substantive right (collectively, "Inadvertently Produced Information") shall not be deemed a waiver in whole or in part of the party's claim of privilege or work product immunity, either as to the specific information disclosed or as to any other information relating thereto or on the same subject matter. If a party or non-party has produced and/or otherwise disclosed Inadvertently Produced Information, the receiving party, upon request, or, on its own initiative at such time as the receiving party reasonably and in good faith believes itself to be in possession of Inadvertently Produced Information, whichever occurs first, shall promptly return the Inadvertently Produced Information, and all copies of said information that may have been made and any notes regarding said information shall be destroyed. The Parties will set forth more detail regarding the procedures for "clawing-back" any Inadvertently Disclosed Information in a mutually acceptable protective order. During the conference, Plaintiff initially agreed to this approach; however, Plaintiff has since changed his position as stated in this report.

### L. EXPERT DISCOVERY

The Parties agree that Expert Discovery shall be completed by April 8, 2026, as set forth in Exhibit A. Initial Expert Reports shall be disclosed by March 11, 2026. Rebuttal Expert Witness Reports shall be disclosed by March 25, 2026.

### M. SETTLEMENT CONFERENCE/ALTERNATIVE DISPUTE RESOLUTION (ADR)

The Parties have not had any settlement discussions since the filing of this lawsuit.

## N. TRIAL ESTIMATE

### 21. Plaintiff's Position

Plaintiff anticipates that a realistic estimate of trial time is three (3) court days. Plaintiff would prefer a bench trial, under the Merger Agreement § 9.8, should the counterclaims survive the Motion to Dismiss and Summary Judgment stages.

### 22. Defendant's Position

Defendant anticipates that a realistic estimate of trial time is four (4) court days. Trial is to be by jury. Defendant contemplates that it may need to call approximately ten witnesses at trial.

## O. TRIAL COUNSEL

### 23. Plaintiff's Position

Plaintiff reserves all rights to retain counsel if this action proceeds to trial.

### 24. Defendant's Position

Trial counsel for Defendant will be Ryan Q. Keech, Stacey Chiu, and Rebecca I. Makitalo.

## P. MAGISTRATE JUDGE

The Parties agree not to try the case before a Magistrate Judge.

## Q. INDEPENDENT EXPERT OR MASTER

The Parties do not presently anticipate the necessity of appointing a master.

## R. SCHEDULE WORKSHEET

The Parties completed Schedule Worksheet is attached to this Joint Report as Exhibit A.

## S. CLASS ACTIONS

The matter is not a class action case, and so this section is inapplicable.

## T. PATENT CASES

This matter is not a patent case, and so this section is inapplicable.

## U. OTHER ISSUES

Defendant will seek a protective order to protect the disclosure of its confidential, proprietary, and sensitive business information. During the conference, Plaintiff initially indicated agreement to stipulate to a protective order; however, at this stage, it is unclear whether Plaintiff

maintains this position. Plaintiff seeks to bifurcate his employment claims from the remaining claims, which Checkmate will oppose as it will only result in duplication of efforts, increased litigation costs, and decrease judicial efficiency. California Public Policy demands the prompt payment of wages, which Plaintiff believes should not have to wait for resolution of complex fraud, merger and intellectual property disputes.

**Separate Trials (Plaintiff's Position).**

Under **Fed. R. Civ. P. 42(b)**, Plaintiff requests **a separate trial** of Defendant's counterclaims (IP/assignment/non-compete/fraud) after the jury resolves Plaintiff's wage/contract/targeted-retaliation claims. Trying counterclaims alongside wages would inject source-code/authorship disputes, expert battles, and nonparty discovery that risk **juror confusion and unfair prejudice** and would **delay** adjudication of straightforward paycheck issues. Separate trials **avoid prejudice**, **expedite** resolution, and **economize** resources; any overlap can be handled with special verdicts. Upon a Phase-1 verdict, Plaintiff will seek **Rule 54(b)** judgment.

## V.  TRADE SECRET CASES

This matter is not a trade secret case, and so this section is inapplicable.

**Respectfully Submitted**,

Dated: **August 14, 2025**

In **Cerritos, CA**

/s/ *Arjun Vasan*

_____

**Arjun Vasan**

Plaintiff and Counter-Defendant In Pro Per

Date: August 14, 2025

K&L GATES LLP

*/s/ Rebecca I. Makitalo*

Ryan Q. Keech (SBN 280306)
Stacey Chiu (SBN 321345)
Rebecca I. Makitalo (SBN 330258)
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

*Attorneys for Defendant and Counter-Claimant Checkmate.com Inc.*

## **CERTIFICATE OF ATTESTATION**

Pursuant to Local Rule 5-4.3.4(a)(2)(i), I attest that the above signatories listed herein, concur in this document's content and have authorized the filing.

Dated: **August 14, 2025**             */s/ **Arjun Vasan***

  In **Cerritos, CA**

                                            **Arjun Vasan**

                                            Plaintiff and Counter-Defendant In Pro Per