# **EXHIBIT U**

ARJUN VASAN

PLAINTIFF IN PRO PER

ARJUN.VASAN@GMAIL.COM

(562) 900-6541

12615 193ʳᵈ STREET

CERRITOS, CA 90703

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>    Plaintiff and Counter-Defendant,<br><br>    v.<br><br>CHECKMATE.COM, INC.,<br>(dba "Checkmate")<br><br>    Defendant and Counterclaimant. | Case No.: CV-00765-MEMF-JPR<br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**PLAINTIFF'S THIRD SET OF REQUESTS FOR ADMISSION TO DEFENDANT CHECKMATE.COM, INC.; "BYOD (Bring Your Own Devices) Policy Dispute"**<br><br>Complaint Filed: January 28, 2025 |

**TO DEFENDANT CHECKMATE.COM, INC. AND ITS COUNSEL OF RECORD**:

Pursuant to Federal Rule of Civil Procedure 36, Plaintiff propounds the following Requests for Admission ("RFAs"). Each admission is to be answered in writing, under oath, within **30 days** after service unless the parties stipulate or the Court orders otherwise.

I.  **DEFINITIONS**

1. "**You/Checkmate**" = Defendant Checkmate.com, Inc., its executives, its agents, its counsel or any other person acting on its behalf.

2. "**Plaintiff**" = Plaintiff Arjun Vasan.

1

3. "**Michael Bell**" = Checkmate Chief of Strategy and Plaintiff's Supervisor
4. "**Vishal Agarwal**" = Checkmate CEO
5. "**Amy Brown**" = Checkmate Vice President of Human Relations
6. "**Robert Nessler**" = VoiceBite cofounder & VP of AI Operations at Checkmate
7. "**Christopher Lam**" = VoiceBite cofounder & VP of AI Product at Checkmate
8. "**#voicemate**" = Slack channel including Plaintiff, Christopher Lam, Robert Nessler, Michael Bell and Vishal Agarwal.
9. "**BYOD Policy**" = Checkmate's policy requiring use of a personal device for work and/or installation of monitoring or mobile device management (MDM) software.
10. "**May Slack Thread**" = the May 1–2, 2024 Slack exchange starting as a private thread between Plaintiff and CEO Vishal Agarwal, later escalating to a group thread.
11. "**Oct. 14 DM**" = Plaintiff's October 14, 2024, Slack direct message to Agarwal raising, *inter alia*, BYOD Policy.
12. "**Oct. 14 Meeting**" = the Zoom meeting later that day among Agarwal, Plaintiff, Michael Bell, and Robert Nessler.
13. "**HR Write-Up**" = the written disciplinary notice sent by Michael Bell on October 14, 2024, cc'ing Amy Brown.
14. "**Closing Spreadsheet**" = Spreadsheet of expenses to be reimbursed as well as back pay, provided by VoiceBite to Checkmate on merger close; referenced in the Merger Agreement.

II.   **INSTRUCTIONS**

A. Answer each RFA separately and fully as required by Rule 36. If Checkmate cannot admit or deny, state the reasons and describe the reasonable inquiry made.

B. If an RFA is admitted in part and denied in part, specify which part is admitted and which is denied.

C. These RFAs are continuing; if Checkmate later obtain information requiring amendment, promptly serve amended answers under Rule 26(e).

III.   **REQUESTS FOR ADMISSION**

**Background / Policy**

2

1. Admit that Vishal Agarwal was CEO between May-November 2024 and had authority over hiring, discipline, and termination decisions.
2. Admit that Michael Bell was Chief of Strategy between May-November 2024 and was Plaintiff's direct supervisor.
3. Admit that the BYOD Policy applied to Plaintiff in 2024.
4. Admit that under the BYOD Policy, Plaintiff was required to use his personal device for work and to install monitoring/MDM software.
5. Admit that during May-November 2024, Checkmate did not provide Plaintiff a company-owned laptop.
6. Admit that during May-November 2024, Checkmate did not reimburse Plaintiff for the purchase of a separate device for exclusive work use.
7. Admit that upon close of the merger, VoiceBite provided a Closing Spreadsheet that detailed, among other things, expenses of the VoiceBite founders to be reimbursed for VoiceBite property they personally purchased upon closing.
8. Admit that this spreadsheet listed VoiceBite laptops for Robert Nessler and Christopher Lam, but Plaintiff did not have a VoiceBite laptop and did not expense his personal laptop.

**Protected Activity**

9. Admit that on Plaintiff's first day as a Checkmate employee, he raised the issue of the BYOD Policy conflicting with California Law in a private Slack thread with Agarwal.
10. Admit that Plaintiff stated in the thread: "in california it's not even legal though… california employers must provide the work equipment for employees."
11. Admit that Plaintiff stated he was not comfortable installing monitoring software on his personal computer and raised concerns about privacy and exposure of personal devices.
12. Admit that Plaintiff requested a company device rather than installing monitoring software on his personal device.
13. Admit that in the follow-up email, Plaintiff again requested a company device and explained the basis for his request.

14. Admit that Amy Brown emailed or slacked Plaintiff stating that Michael Bell had stated that the entire VoiceBite's teams' laptops were reimbursed.

15. Admit that Plaintiff clarified that only Christopher Lam and Robert Nessler had VoiceBite company laptops and had been reimbursed for them.

16. Admit that Checkmate's management did not offer to purchase or reimburse a work laptop.

17. Admit that in the Oct. 14 DM, Plaintiff again raised BYOD legality/compliance and the need for a company device.

**Adverse Actions / Timing (May 1-2 Slack Thread)**

18. Admit Agarwal rejected Plaintiff's request for a work laptop, and stated, among other things "Alright then you can't work for the company.", "we won't hire people who are stickler for the law… Is that clear?".

19. Admit Agarwal escalated the private discussion to the #voicemate group channel.

20. Admit after escalating to #voicemate, Agarwal stated the following:
   @channel I'm moving a 1:1 conversation I am having with Arjun here and documenting it here for everyone. Arj's point is that we need to provision equipments and computers in order to hire good engineers. And that this is also a California law. We at this point cannot do that because we have over 300 employees and that cash outlay is huge. The tone from @arj is absolutely in the spirit of creating a problem and creating a confrontation, rather than having a mutual conversation and trying to find a solution with a company he just joined. I wanted to make sure everyone is aware and ask if everyone shares Arj's belief. If that continues to be the case, I won't mind having a difficult conversation with the individual at whatever stage of the company to make sure we build a cohesive company for long term benefits.

21. Admit Agarwal stated in the #voicemate channel "I can also promise if this is how it is going to be going ahead, I'd rather cut my losses right now. No employee is indispensable and I can put that in a formal notice."

22. Admit that Agarwal stated in the #voicemate channel "The situation is quite clear Arj - you don't want to use your personal computer for work reasons. We don't provide work computers. The only solution is for you to quit. Do you know of any other alternative?"

23. Admit Agarwal stated in the #voicemate channel "Sure, then we will consult with security and if there is no other alternative, then I am happy to fire you"

4

24. Admit that Plaintiff stated in response or shortly thereafter: "so you will terminate me for pointing out a violation of the law?"

25. Admit that Plaintiff continued, stating "i think there are laws against that"

26. Admit that Agarwal responded "sure, if that's the route you want to go I'd rather deal with that headache than the conversation we are having here"

**Adverse Actions / Timing (October 14 HR Write-Up**

27. Admit that Plaintiff re-raised the BYOD issue in a Slack DM to Agarwal on October 14, 2024.

28. Admit that Agarwal called a meeting with Plaintiff, Michael Bell and Robert Nessler.

29. Admit that this was a recorded Zoom meeting.

30. Admit that after the Oct. 14 Meeting, Bell issued the HR Write-Up to Plaintiff and cc'd HR.

31. Admit that the HR Write-Up demanded Plaintiff's signature.

32. Admit that the HR Write-Up used the word "rant" or stated that conduct "that could be construed as a rant" could lead to dismissal.

33. Admit that as of Oct. 14, 2024, Checkmate still had not provided Plaintiff a company laptop.

34. Admit that Plaintiff asked to defer responding to the HR Write-Up due to his workload preparing for the October 23 Popeyes demo.

35. Admit that Plaintiff mentioned that he hadn't slept in days and stated words to the effect that he was "going crazy" preparing for the demo.

36. Admit that you did not agree to postpone responding to the HR Write-Up.

37. Admit that you did not acknowledge or address Plaintiff's expressed health issues.

38. Admit that Plaintiff was terminated on November 14, 2024, within one month of the Oct. 14 DM and HR Write-Up.

**Judicial Admissions**

39. Admit that in Checkmate's Answer, you admitted that Plaintiff raised BYOD issues.

40. Admit that in declarations filed by Agarwal and/or Brown, you stated that the Oct. 14 meeting was convened due to a "barrage of over 40 Slack messages".

41. Admit that Plaintiff re-raised the BYOD issue in these Slack messages.

42. Admit that in declarations filed by Agarwal and/or Brown, you acknowledged issuance of a final warning / formal write-up to Plaintiff on October 14, 2024.

**Causation Adjacent**

43. Admit that the May Slack Thread termination statements immediately followed Plaintiff's message objecting to BYOD legality.

44. Admit that the HR Write-Up was issued the same day Plaintiff sent the Oct. 14 DM regarding BYOD.

45. Admit that Checkmate did not offer a company laptop or reimburse a separate device at any time between May 1 and October 14, 2024.

46. Admit that the attached Exhibit A is an accurate transcript of the May Slack threads.

## **VERIFICATION (for Responding Party)**

I am authorized to respond to these Requests for Admission on behalf of Defendant. I have read the foregoing responses and, based on a reasonable inquiry, the matters stated therein are true and correct to the best of my knowledge and belief.

Dated: _____   Signature: _____

Name: _____   Title: _____

for Defendant Checkmate.com, Inc.

# EXHIBIT A

**May 1-2nd, 2024 Slack Conversation**
- DM between Plaintiff and Defendant Agarwal and
- Group Conversation between VoiceBite founders, Defendants Bell and Agarwal

arj
  4:52 PM
hey
@vishal
 i understand your policy has been BYOD. but it will be very difficult to recruit engineers with this policy, it's pretty much a standard expectation in silicon valley that you get a top of the line laptop. i'm not going to fight it now, but perhaps lets change this after raising the round.

4:53
i'm already fretting over explaining this to pranav once we are able to onboard him as a full time

vishal
  6:59 PM
Hey Arj, we have recruited over 70 engineers over the last 7 years. It won't be a problem :slightly_smiling_face:
7:00
That is why we don't have to hire from Silicon valley. We can hire from literally anywhere in the world. And it's not a small consideration - it'll be a massive outlay for the company. Remember we have over 300 employees
7:01
If this is a deal breaker for some, what we can do is offer them a one time signing bonus of $1,500 or so but overall, this has not been a problem

arj
  7:37 PM
it's a massive outlay that most of our competitors are willing to make though. i don't think doordash thinks one second about this. they want the best and to provide the best tools for the job.

vishal
  7:38 PM
Not something we are considering right now Arj. We are different than others, we don't have to do what they do and we are still able to hire and retain the best. In the last 6 years, I have not had a problem with it. And like I said, if this is an absolute problem, we can add some initial signing bonus but not in all cases. Let's make sure to keep that as a last resort
7:39
*I'm willing to compete with others on this and I'm confident we will win. If someone does not want to join us for an initial expense of a few thousand dollars, I don't think they are the right fit anyway*

arj
  7:40 PM
**in california it's not even legal though, and it's a security risk. california employers must provide the work equipment for employees.**

vishal
  7:40 PM
*That's not true*

   7:40
We have hired tons of people in California

arj
  7:40 PM
yes but this is the law

vishal
  7:41 PM
It's a very serious cost consideration Arj, it can't be taken lightly

arj
  7:47 PM
https://www.employmentlawfirms.com/resources/can-my-employer-require-me-buy-my-own-laptop-work.htm
there are dozens of articles like this. it is the law, whether or not it is costly.

www.employmentlawfirms.comwww.employmentlawfirms.com
Can my employer require me to buy my own laptop for work?
Find out if employers can require employees to provide and work on their own laptops. Learn the meaning of BYOD policies and if they are legal in the workplace.

vishal
  7:47 PM
Got it

arj
  1:39 AM
even beyond this law, the types of people I want to hire are going to immediately be turned off if they knew they would have to use their personal computer for work. they will believe in strict separation between their personal projects and data and work projects and data. i know because I myself feel this way. i'm not comfortable putting monitoring software on my personal computer (neither are sam and paul, while robert and chris have voicebite computers separate from personal, so they don't mind as much). nor would we be comfortable with employer security going through our personal computer and clearing it out if we separate. nor are we ok with the possibility that our personal computers could be subpoenaed if there is a lawsuit or investigation of checkmate. all of these are real, legitimate fears and reasons not to mix work and personal.
it's also cleaner for checkmate to know it fully owns the work computer, and there is no liability, security risk etc.
instead of thinking of this as the employees getting a computer courtesy of checkmate, it would be better to think of it as an investment in checkmate employees, making sure they have the best tools for the job possible. rather than saying "If someone does not want to join us for an initial expense of a few thousand dollars, I don't think they are the right fit anyway", think of the flip side "If you aren't willing to invest a few thousand dollars in someone's productivity, are they a good fit for checkmate?"

vishal
  7:56 AM
Arj - noted on all points. Let's keep in mind that we have been running this way for 6 years with no problems in hiring and retaining employees.  You are coming on too strong on this without a realization about the larger business and cost impact. There is no intent to start providing equipment from our side as of now.
7:57

I'd like to end this conversation here for now. If anything changes in the future, I'll reconsider.

arj
  8:11 AM
So you are ok with us not installing this monitoring software.
8:13
Yes but you also did not hire the types of people i think are right for voicebite. Many great people but i need creative hackers
8:13
The cost impact for voicebite team alone is not that high

vishal
  8:14 AM
Sorry, there are no exceptions. I can't just allow for the AI team not to follow the company process or have equipment just for AI team
8:14
If you think you can't develop a great product with the company policies we have now, you are really restricting your thinking and scope

arj
  8:14 AM
Well then you have to follow california law and get us equipment to install the software on

vishal
  8:15 AM
Arj - I seriously can't continue to have this same conversation. Let's take everyone's opinion on the call we have coming up

arj
  8:15 AM
Bc we arent doing it on our personal computers as i explained above

vishal
  8:15 AM
Alright then you can't work for the company
8:15
We haven't had a problem up until now, so we are good

arj
  8:15 AM
its the law

vishal
  8:16 AM
**Alright, we can't afford to give out equipment so we won't hire people who are stickler for the law**
8:16
Is that clear?

arj
  8:16 AM
Employers have to follow the law

vishal
  8:16 AM
It's about what we can afford to do, and comparing us to DoorDash is ridiculous
8:17
Arj - I'm ending this conversation now

arj
  8:23 AM
Right so we can not install the software and you can provision us computers after the fundraiser

vishal
  10:11 AM
Noted Arjun. At this point you are just being difficult and looking to create problems rather than solutions for a company you just joined. I'm moving this conversation to the common channel so that everyone is aware. And I promise you I won't bother having a difficult conversation with you at whatever point in our journey. That is not the kind of conversation you have with a company you just joined and the tone is absolutely ridiculous

arj
  11:55 AM
why would you make this a group conversation. we could have figured it out. this is not the kind of conversation you should have with a company you just acquired either. you said before you would be empowering us.

[in group thread with my voicebite co-founders, vishal and mike]

@channel I'm moving a 1:1 conversation I am having with Arjun here, and documenting it here for everyone. Arj's point is that we need to provision equipments and computers in order to hire good engineers. And that this is also a California law. We at this point cannot do that because we have over 300 employees and that cash outlay is huge. The tone from
@arj
 is absolutely in the spirit of creating a problem and creating a confrontation, rather than having a mutual conversation and trying to find a solution with a company he just joined. I wanted to make sure everyone is aware and ask if everyone shares Arj's belief. If that continues to be the case, I won't mind having a difficult conversation with the individual at whatever stage of the company to make sure we build a cohesive company for long term benefits.
10:15
If there are any exceptions to be made with regards to installing company software, then it has to be run through Security. They are responsible for SOC2 compliance which is required to win large corporate accounts. If the individual can't comply, then they can't work with us. There is no grey area here.
10:16
Through multiple conversations, I have maintained that we cannot just decide on issuing equipments to a select group. It has to be for the entire company, and is a huge cash outlay which Arj is refusing to acknowledge and understand

arj
  10:16 AM
Yes, so buy us laptops to install the security software on

vishal
  10:17 AM
image.png

image.png

arj
  10:17 AM
Bc its an invasion of privacy
10:17
Otherwise

vishal
  10:17 AM
This is the last discussion, which is telling us what to do instead of having a constructive conversation
10:18
This is not going to be a discussion on this channel. If need be, we'll take a collective call and make a final decision. Rest of the team to chime in please

arj
  10:18 AM
Bc companies have to follow the law there are no exceptions to that either in california, just like you are saying there are no exceptions to the policy
10:19
You can double check the law, at the minimum employer has to reimburse purchase of equipment needed to do the job

Robert Nessler
  10:22 AM
I do not need a new computer and am fine without it. I did find it strange that there was no option to have a CM issued laptop that you return whenever you leave the company, but that isn't a  big deal to me.
Arjun does need more compute power and resources at his disposal but I would agree his way of going about it is not effective or tactful.  I'm not sure what the best solution moving forward is, I think we should meet with Luke and see what resources we have and then go from there.

arj
  10:23 AM
Yes but
@Robert Nessler
 has a voicebite work computer i didnt buy one
10:24
He has a separate personal computer

Chris L
  10:42 AM
I think this has blown up a little bit more than it should, but I can understand both viewpoints. Frankly speaking, I would not feel comfortable using my personal machine for work either (I like to make sure there's a separation), let alone install additional software on it. I'm not an expert on security/compliance implications, but having the physical separation is probably good for everyone. Luckily, I have a laptop from VoiceBite so I can maintain that separation.
On the other hand, I also understand the large commitment for Checkmate this represents. It wouldn't be fair to make exceptions just for the VoiceBite team as it wouldn't be fair to the rest of the employees. We also don't want to start off having the rest of the company look at us and wonder why we got special treatment with laptops, while everyone else gets neglected.

Feelings should be left aside, and we should consider the facts at hand. Does Arj need more compute power - probably, and future ML engineers we bring on may too. Is this a legal issue - in California, it might very well be. Can we afford to procure laptops for everyone - no. Do we want to start making exceptions at this point - probably not. Are there alternative solutions - possibly, and we should focus on brainstorming these.

arj
  10:45 AM
its not about being fair. there's a legitimate business use case for ML engineers to have high end work comptuers

Chris L
  10:45 AM
Arj, just to double check, are you asking for a machine for your own personal use or just for work use?

arj
  10:45 AM
work use only, it's to separate work from personal
10:45
obviously. i need to have my own personal computer for personal reasons.
10:48
and also, i'm ok waiting until fundraising finishes, but in the meanwhile not OK installing monitoring software on my personal computer.

Chris L
  10:56 AM
An idea… rather than calling it an exception for Arjun, can we position this as a business need and have Luke/IT review needs on a case-by-case basis? I'm sure cases like this have come up before and this probably won't be the last. Specialized roles may require specialized tools. For example, designers may need to procure an Adobe Photoshop or Illustrator license. Or a hardware engineer may need a soldering iron and other prototyping equipment to build a new product.
:white_check_mark:
1

vishal
  11:03 AM
Hi
@Chris L

@Robert Nessler
 thank you for engaging in a more civil and professional conversation, that is what I was hoping for. Arj's tone on Day 2 is absolutely the last thing I was expecting, giving me an ultimatum.
I agree, we have a situation and my main problem is the tone and confrontational nature instead of saying we are a team, let's solve this together. I have been going back and forth with Arj since last evening to try and answer his questions but there is nothing that I am saying is helping answer his question. And ultimately we are being given an ultimatum, which is not where we want to be.
When we joined the company, we knew this is a bring your own device company.
We are also talking about two different things. One is compute power for which we can absolutely provide a computer. But if we are simply asking for a company provided laptop on which you can do your basic job, that is not what we will be providing. **For the 7th time, I'm**

*repeating this - it is not funding dependent. Funding will not change this, but Arj keeps coming back to the same point.*
11:04
**I can also promise if this is how it is going to be going ahead, I'd rather cut my losses right now. No employee is indispensable and I can put that in a formal notice. This is not a problem solving approach**

arj
  11:06 AM
we understood bring your own device as relating to mobile phones
11:06
we have never heard of a tech company that does not provide work computers

vishal
  11:08 AM
*The situation is quite clear Arj - you don't want to use your personal computer for work reasons. We don't provide work computers. The only solution is for you to quit. Do you know of any other alternative?*

arj
  11:08 AM
yes you buy me a work computer so we can win voice ordering
11:09
that is the smart solution

vishal
  11:09 AM
Ok. And I'm saying No.
11:09
Anything else?

arj
  11:09 AM
then i'm saying no to installing monitoring software. i am not a quitter though.

vishal
  11:10 AM
**Sure, then we will consult with security and if there is no other alternative, then I am happy to fire you**
11:10
**We will resolve this one way or the other**
11:10
**And I promise you we will win Voice ordering one way or another. That is not dependent on you**

arj
  11:10 AM
I will win voice ordering one way or another
11:11
not dependent on checkmate

Robert Nessler

   11:11 AM
Maybe let's calm down a bit, go for a walk and revisit this in a few hours.

vishal
   **11:11 AM**
**Super. Next steps:**
**Going to reach out to Security to see what the policy is. If there are no other alternatives, then we go through HR and let you go**

Chris L
   11:12 AM
Perhaps I am speaking out of line here - but I think we should all take a breather and a step back. We've overcome much bigger issues in the past (I'm glad all the negotiation is done) while on other sides of the table. Now we're on the other side of the table and there's absolutely no reason we can't figure something out together
:white_check_mark:
1

vishal
   11:12 AM
Robert - I've been going back and forth in a loop since last night. I promise I'm calm, I just don't see an answer
11:12
I'll leave it up to you guys to suggest options, I'm at the end of my rope here

Chris L
   11:12 AM
Yah, just talk to Luke. We haven't even gone down that path yet.

vishal
   11:12 AM
Chris - you are an equal partner, nothing is out of line.

Chris L
   11:12 AM
*Luke / security

vishal
   11:13 AM
Sure. Not installing the software is not an option, so I'll wait for Security to let me know
11:13
Again - to be clear, we will provide compute power whether through cloud or a separate machine
11:13
What we will not be providing is a work laptop

arj
   **11:13 AM**
**so you will terminate me for pointing out a violation of the law?**
**11:13**
**i think there are laws against that**

Chris L

  11:13 AM
Well there's our solution. Talk to Luke, make a case, and see if we can get you a separate machine with more power.
:white_check_mark:
1

vishal
  11:13 AM
Cause that has bigger implications
11:14
@arj
 sure, if that's the route you want to go I'd rather deal with that headache than the conversation we are having here

Chris L
  11:23 AM
I've went ahead and sent a DM with Luke/Arj. Let's try exploring this path first

vishal
  12:32 PM
Noted Chris. I'm very clear on the rationale here and the final approval will have to go through me. Reposting this here
12:32
Again - to be clear, we will provide compute power whether through cloud or a separate machine
What we will not be providing is a work laptop









+ Add a bookmark

**Chris Lam**  11:12 AM                                    Today ⌄
Yah, just talk to Luke. We haven't even gone down that path yet.

**vishal**  11:12 AM
Chris - you are an equal partner, nothing is out of line.

**Chris Lam**  11:12 AM
*Luke / security

**vishal**  11:13 AM
Sure. Not installing the software is not an option, so I'll wait for Security to let me know

Again - to be clear, we will provide compute power whether through cloud or a separate machine

What we will not be providing is a work laptop

**arjun**  11:13 AM
so you will terminate me for pointing out a violation of the law?

11:13  i think there are laws against that

**Chris Lam**  11:13 AM
Well there's our solution. Talk to Luke, make a case, and see if we can get you a separate machine with more power.

✅ 1

**vishal**  11:13 AM
Cause that has bigger implications

@arjun  sure, if that's the route you want to go I'd rather deal with that headache than the conversation we are having here

**Chris Lam**  11:23 AM
I've went ahead and sent a DM with Luke/Arj. Let's try exploring this path first

**CERTIFICATE OF SERVICE (Rule 5(b)(2)(E))**

I certify that on **September 10, 2025**, I served **Plaintiff's Third Set** of Requests for Admission to Defendant Checkmate.com, Inc. (Set Three — "BYOD (Bring Your Own Devices) Policy Dispute") by sending a true and correct copy via email to counsel of record at the addresses below:

> Rebecca Makitalo
> K&L Gates LLP
> rebecca.makitalo@klgates.com
>
> Ryan Q. Keech
> K&L Gates LLP
> ryan.keech@klgates.com
>
> Stacey Chiu
> K&L Gates LLP
> stacey.chiu@klgates.com
>
> 10100 Santa Monica Blvd., 8th Floor
> Los Angeles, California 90067
> Phone: 310.552.5070

This Service was made by email pursuant to Fed. R. Civ. P. 5(b)(2)(E) (consent).

*I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.*

/s/ *Arjun Vasan*

Dated: **September 10, 2025**    _____

Arjun Vasan

Plaintiff In Pro Per

7