# EXHIBIT DD

Arjun Vasan

arjun.vasan@gmail.com

12615 193rd Street

Cerritos, CA 90703

(562) 900-6541

Plaintiff In Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Arjun Vasan**, | Case No.: 2:25−cv−00765−MEMF−ASx |
|    Plaintiff and Counter-Defendant | Hon. Alka Sagar \| DISCOVERY MATTER |
| | |
|    vs. | **JOINT STIPULATION REGARDING SUFFICIENCY OF CHECKMATE.COM, INC.'S RESPONSES TO REQUESTS FOR ADMISSION (SETS ONE−THREE) AND FOR RELATED RELIEF UNDER FRCP 36(A)(6) & 37** |
| **Checkmate.com, Inc.**, | |
| (dba "Checkmate"), | Complaint Filed: January 28, 2025 |
|    Defendant and Counterclaimant | Hearing Date: December 2, 2025 |
| | Hearing Time: 10:00 AM |
| | Courtroom: 540 |

TO COUNSEL FOR DEFENDANT:

     Plaintiff Arjun Vasan ("AV") respectfully requests Defendant Checkmate.com, Inc.

("Checkmate") complete and return the below [Draft] Joint Stipulation by October 31, 2025.

MOTION FOR PROTECTIVE ORDER AND TO QUASH/MODIFY SUBPOENA

**[DRAFT] JOINT STIPULATION**

## I.    INTRODUCTION

Plaintiff Arjun Vasan ("AV") moves under FRCP 36(a)(6) for an order determining the sufficiency of Defendant Checkmate.com, Inc.'s ("Checkmate") answers and objections to three RFA sets (Sets One–Three), overruling Checkmate's boilerplate objections, compelling Rule-compliant amended answers, and, as to narrow, objective items, deeming the matters admitted. Vasan also seeks fees/costs under FRCP 37(a)(5) (and reserves rights under FRCP 37(c)(2) if the denied matters are later proven true).

**Summary**: Checkmate answered dozens of straightforward, document-anchored RFAs with pages of boilerplate and "insufficient information" denials without describing any "reasonable inquiry" as Rule 36 requires—even where the underlying emails/attachments are in Checkmate's possession and even where Checkmate elsewhere admits the meeting date/time and attendees. See Checkmate's First-Set RFA responses (Sept. 15, 2025) (boilerplate preliminary statement and general objections; repeated "lack sufficient information" denials), Second-Set RFA responses (Sept. 16, 2025) (same pattern) (citations below)

AV's RFAs are self-contained, finite, and tied to the pleadings and filings in this action:

**Set One** ("Lunchbox Emails – Nov. 7–8, 2024") defines "Lunchbox Emails," "Attachment," and "Audio File," then asks binary MIME/filename/URL questions and evidentiary predicates.

**Set Two** ("November 14 Separation Meeting") asks narrow time-anchored facts about a recorded Zoom meeting Checkmate described in its declarations and internal communications (date/time/attendees/what was said).

**Set Three** ("BYOD Policy Dispute") asks about Slack messages (quoted and attached), the BYOD policy, and who said what when.

After receiving Checkmate's responses, AV served an L.R. 37-1 conference letter identifying core defects and offering times to confer; the letter specifically cited FRCP 36(a)(4) and Ninth Circuit authority (Asea) and requested amended, Rule-compliant answers.

MOTION FOR PROTECTIVE ORDER AND TO QUASH/MODIFY SUBPOENA

Counsel declined to confer unless first conferred on its own preferred issue. AV offered to discuss both parties' issues. Counsel refused to discuss any issues other than Checkmate's. In AV's understanding, this is not good faith cooperation in discovery matters.

Hon. Judge Sagar's Civil Procedures

Judge Sagar's procedures caution against discovery boilerplate and warn that conclusory burden/disproportionality objections "without any basis in fact shall be summarily rejected and/or deemed waived" (posted civil procedures). While that passage addresses Rules 33/34, the same no-boilerplate principle applies to Rule 36—which independently requires a reasonable inquiry described in the answer before pleading lack of information.

## II.     L.R. 37-1 STATEMENT OF CONFERENCE

On September 16, 2025, AV sent a detailed L.R. 37-1 letter identifying specific defects in Checkmate's responses to RFA Set One, proposing withdrawal of boilerplate and Rule compliant amended answers by September 19, 2025, and offering three meet-and-confer windows (Wed, Thu, Fri) by Zoom/Teams. Checkmate did not cure, and the dispute remains. On September 17, 2025, AV followed up with an email regarding RFA Set Two. Neither email was responded to. Checkmate continued to insist on meeting regarding purportedly "deficient witness disclosures", claiming that AV had not identified the witnesses he should rely on for his claims and defenses, and refused to meet on any issues AV raised, including the RFAs. Most recently, Checkmate (again demanding a single-issue meet and confer on the witness disclosures) stated that the meet and confer on its issues must happen at counsel's LA office. To date, neither side had proposed in-person meet-and-confers. Checkmate further declined to agree to parity—meetings on issues raised by AV being held in Cerritos, California; insisting on a "mutually agreeable location". See Exhibits A, B and C. AV determined that further attempts to meet and confer were unproductive and sent a request for an informal conference with Judge Sagar. Counsel has not replied. Ex. D.

## III.     ISSUES IN DISPUTE (Grouped for efficiency, L.R. 37-2.2)

**Remedy requested across all issues**: (a) overrule/strike boilerplate; (b) order Rule-compliant amended answers that either admit or deny and, if denying for lack of knowledge, describe the reasonable inquiry made (who/what records were consulted); and (c) as

MOTION FOR PROTECTIVE ORDER AND TO QUASH/MODIFY SUBPOENA

to the narrow, mechanical items below, deem the matters admitted under FRCP 36(a)(6). Fees under FRCP 37(a)(5).

**1. Boilerplate "Preliminary Statement" and "General Objections" (applies to all three sets of Requests for Admission)**

Moving Party's Contentions:

Checkmate precedes its answers with pages of generalized reservations and objections— "ongoing investigation," "not complete," "reserves the right to alter/supplement at any time," and omnibus "vague/ambiguous/overbroad/unduly burdensome" objections—then incorporates them into every single response. That is classic boilerplate and improper under Rule 36(a)(4), which demands a straight admit/deny or a specific qualification; it does not permit stock objections untethered to the particular RFA. See First-Set Responses ("PRELIMINARY STATEMENT," "GENERAL OBJECTIONS" ¶¶1–16, incorporated into each response); Second-Set Responses (same).

Rule 36 explicitly requires that if a party "lacks knowledge or information," it must state that it has made reasonable inquiry and that the information cannot be readily obtained—and the answer must describe that inquiry. Checkmate repeatedly writes "has made a reasonable inquiry and lacks sufficient information… therefore denies," but never describes any inquiry (what custodian, what mailbox, what e-mail export, what Slack archive, which counsel/vendor). See, e.g., First-Set RFAs 1–6, 10–12B, 14A–18A (serial "insufficient information" denials to binary MIME/filename questions).

This is precisely the evasiveness the Ninth Circuit condemned in Asea, Inc. v. S. Pac. Transp. Co., 669 F.2d 1242, 1245–47 (9th Cir. 1981): where a party equivocates and fails to make a good-faith effort to admit or deny matters that are plainly ascertainable from documents in its possession, the court may deem the matters admitted. (Cited in Vasan's L.R. 37-1 letter.)

Opposing Party's Contents (to be supplied by Checkmate):

[DEFENDANT'S STATEMENT HERE]:

**Relief on Issue 1**: Strike/overrule the boilerplate "preliminary statement" and "general objections," direct Checkmate not to incorporate omnibus objections into each RFA, and order Rule-compliant amended answers within 10 days or deem non-compliant answers admitted.

2. **Set One ("Lunchbox Emails") – Basic ESI/MIME/filename facts (RFAs 1–6, 10–12B, 14A–18A)**

Moving Party's Contentions.

**What the RFAs ask**: Whether the two named attachments are .wav audio files (not code); whether any repository archive or repo URL appears; whether any MIME indicates text/code; whether the email body uses the word "code"; and whether Checkmate has any analysis/document/hash identifying any attachment as source code. These are binary, mechanical facts tied to two e-mails that Checkmate itself filed and relies on in its counterclaims. Set One RFAs & definitions.

**How Checkmate answered**: With the boilerplate above plus serial assertions that terms like "Attachment," "Audio File," and even "MIME Content-Type beginning with audio/" are "vague/ambiguous/overbroad/unduly burdensome"; then either denies for "insufficient information" or says the request is "unintelligible." See First-Set Responses (e.g., RFAs 1–6, 10–12B, 14A–18A). That approach violates Rule 36(a)(4). There is no ambiguity in whether "lees-that-is-impressive.wav" and "MarcosRitaAmazing (1).wav" are audio files (the extensions themselves resolve it); whether a repo URL appears is obvious on the face of the email; whether a .zip/.tar/.gz archive is attached is a yes/no; whether any MIME begins with audio/ is ascertainable by opening the native or metadata. And Rule 36 does not require expert analysis to read a filename or MIME header. AV's L.R. 37-1 letter pinpointed these exact defects and gave Checkmate a no-prejudice clarification adopting neutral Sedona/RFC terms. Checkmate still refused to admit facially obvious facts—or to deny them without objection.

Opposing Party's Contentions (to be supplied by Checkmate):

[DEFENDANT'S STATEMENT HERE]

**Relief on Issue 2 (targeted):**

Deem admitted RFAs 1–4, 11, 12B, 14B, 18A (file type/filename/URL/body-term are objective face-of-document facts). As to RFAs 5–6, 8–10, 12A, 15, 16, 17, 19–21, overrule objections and order amended answers stating (a) admit/deny (b) if denial for lack of knowledge, describe the reasonable inquiry made (mailbox searched; native .eml reviewed; MIME checked; who performed it; what was "not readily obtainable"). Deadline: 10 days.

3.  **Set One ("Lunchbox Emails") – "No evidence" vs. unsupported denials (RFA 13, 20–21, 25–27)**

Moving Party's Contentions.

RFAs 13/20–21/25–27 ask whether Checkmate has any evidence beyond the two emails, or any comms where Vasan asked an employee to quit, etc. Checkmate answered with boilerplate and bare denials, again without describing any "reasonable inquiry" or stating what sources were checked. Rule 36(a)(4) requires that description. See the First-Set Responses (e.g., RFA 13 ("Deny" after boilerplate); RFA 21 ("Deny")).

Opposing Party's Contentions (to be supplied by Checkmate):

[DEFENDANT'S STATEMENT HERE]

**Relief on Issue 3**: Overrule objections and order amended answers that either admit (no evidence/communications) or, if denying, identify the evidence by Bates/description and describe the reasonable inquiry made. Deadline: 10 days. If Checkmate again refuses, deem admitted under FRCP 36(a)(6).

4.  **Set Two ("November 14 Separation Meeting") – Basic meeting facts vs. evasive denials (representative RFAs 3–7, 11–12, 16–22, 23–31, 35–40)**

Moving Party's Contentions.

These RFAs ask who attended, start time (8:00 a.m. PT), that it was recorded, whether certain statements were made, and related artifacts (Zoom/Fathom). Checkmate admits the date/time/attendance in a few places but then reverts to boilerplate and "unintelligible" or lack-of-knowledge denials—again without describing any inquiry—even though Checkmate controlled the Zoom and Fathom accounts and cited the meeting in its own filings. See

Second-Set Responses (examples: RFA 3, 4, 5 admit the meeting occurred at 8:00 a.m. with Bell/Agarwal/Brown/Vasan; but RFA 6, 7, 8, 11–12, 16–22, 23–31, 35–40 include serial boilerplate and evasions). The requests themselves are specific and self-contained.

Opposing Party's Contentions (to be supplied by Checkmate):

[DEFENDANT'S STATEMENT HERE]

**Relief on Issue 4 (targeted)**: Deem admitted the objective items already essentially conceded or document determinable (e.g., RFAs 3–5 (start time/attendees/recorded)). Overrule objections and compel amended answers on the remainder with a described reasonable inquiry (identify who reviewed the Zoom cloud recording, Fathom link, Zoom logs, Slack announcements, the Nessler declaration, etc.). Deadline: 10 days.

## 5. Set Three ("BYOD Policy Dispute") – Refusals to admit quoted Slack statements and policy facts (representative RFAs 3–6, 9–17, 18–26, 39–46)

Moving Party's Contentions.

Set Three anchors each request to specific Slack messages (screenshots and transcript attached) and basic policy facts (e.g., no company-owned laptop provided to Vasan; MDM required on personal devices). The RFAs quote verbatim lines like "Alright then you can't work for the company," "we won't hire people who are stickler for the law… Is that clear?", and "if there is no other alternative, then I am happy to fire you." See Set-Three RFAs & Exhibit A

Checkmate's pattern of generalized "vague/ambiguous/overbroad" objections and lack-of-knowledge denials—without describing any Slack export review, custodian check, or HR policy search—violates Rule 36(a)(4) for the same reasons.

Opposing Party's Contentions (to be supplied by Checkmate):

[DEFENDANT'S STATEMENT HERE]

**Relief on Issue 5**: Overrule boilerplate; order amended answers admitting/denying the quoted statements and policy facts, with reasonable inquiry described (Slack workspace/channel export; HR policy; custodian(s)). Deadline: 10 days. If Checkmate persists in evasions, deem admitted.

## IV.    AUTHORITY

**FRCP 36(a)(4)** — An answer must **admit or deny**; a denial must **fairly respond**; lacking knowledge is permitted **only after** a **reasonable inquiry** and the party must **state** that reasonable inquiry **and** that the information cannot be readily obtained.

**FRCP 36(a)(6)** — On motion, the court **determines the sufficiency**; if not sufficient, the court may **order that the matter is admitted** or that an amended answer be served.

**FRCP 37(a)(4)** — An **evasive or incomplete** answer is to be treated as a **failure to answer**.

**FRCP 37(a)(5)** — Fee-shifting on successful motion to compel.

**FRCP 37(c)(2)** — If a party fails to admit and the requesting party later proves the matter, the court **must** order expenses unless an exception applies.

• *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981) — Court may **deem admitted** where responses are not in good faith or are otherwise evasive; a party must make a **reasonable inquiry** to obtain information needed to admit or deny (cited in 37-1 letter).

## V.    REQUESTED RELIEF

- Overrule/strike Checkmate's omnibus preliminary statement and general objections as to all RFAs at issue; prohibit incorporation of boilerplate into each specific answer.

- Deem admitted the purely objective/document-determinable items identified above (Issue 2: RFAs 1–4, 11, 12B, 14B, 18A; Issue 4: RFAs 3–5), or, at minimum, require unqualified admissions.

- As to all remaining disputed RFAs in Sets One–Three, order amended, Rule-compliant answers within 10 days that either (a) admit or deny; (b) if denying for lack of knowledge, describe the reasonable inquiry made, identifying custodians/systems reviewed and why the information could not be readily obtained.

- Fees and costs for this motion under FRCP 37(a)(5) (and reserve FRCP 37(c)(2)).

- Any further relief the Court deems appropriate to deter continued discovery abuses (e.g., admonition regarding boilerplate, scheduling a compliance check).

**VI.    ATTESTATION (L.R. 37-2.1 Signatures)**

Dated: **October 24, 2025**

In: **Cerritos, California**

/s/ *Arjun Vasan*
_____

**Arjun Vasan**,

Plaintiff *In Pro Per*

Dated: **_____, 2025**

In: **_____**

_____

_____, 

Counsel for Checkmate

MOTION FOR PROTECTIVE ORDER AND TO QUASH/MODIFY SUBPOENA

### <u>DECLARATION OF ARJUN VASAN</u>

I, Arjun Vasan, declare:

1. I am the Plaintiff in this action. I submit this declaration in support of my Statement in Response to Checkmate's Motion to Compel and Enforce Subpoena against my father, non-party Vasan Varadarajan. I have personal knowledge of the facts herein, and if called to testify, could and would do so competently.

2. On August 14th, 2025, at around 10:00 P.M. I was informed by my father that a process server had served him outside our family residence. On August 15th, 2025, at around 9:00 A.M., Robert Nessler called and informed me that he too had just been served.

3. Both message streams (with Mr. Nessler and my father) contain years of personal or privileged information—including health, financial, attorney-client privileged matters.

4. I was not provided prior party notice of either subpoena.

5. Exhibit A is a true and correct copy of one of several email threads where Checkmate refuses to meet on any of the discovery matters, I have raised.

6. Exhibit B is a true and correct copy of a recent email thread, where Checkmate suddenly demands in-person meetings at counsel's office. All prior meet and confers were remote. I requested parity, but Checkmate has not followed up since this request.

7. Exhibit C is a table, compiled from my operative Complaint, counting appearances of relevant witnesses thereto, earlier filed in opposition to Checkmate's motion to dismiss.

8. *I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed on: October 23, 2025                    */s/ Arjun Vasan*

In Cerritos, California                              **Arjun Vasan**, Plaintiff In Pro Per

MOTION FOR PROTECTIVE ORDER AND TO QUASH/MODIFY SUBPOENA

## <u>DECLARATION OF ROBERT NESSLER</u>

I, Robert Nessler, declare:

1. I am the former CEO of VoiceBite, and its cofounder with Arjun Vasan and Christopher Lam. I submit this declaration to clarify Vasan Varadarajan's relation to VoiceBite. I am over 18 years of age, have personal knowledge of the facts asserted herein, and if called to testify, could and would do so competently.

2. Mr. Varadarajan had no role in VoiceBite, was never paid by and held no equity in the company. He did not participate in our meetings, operations or product development.

3. At most, Mr. Varadarajan, known to the team from prior work, was an informal advisor.

4. Mr. Varadarajan observed parts of the VoiceBite-Checkmate negotiations, as Mr. Lam stayed with Arjun Vasan's family for a month leading up to closing, and Mr. Lam and Arjun Vasan attended the meetings together from Mr. Varadarajan's Cerritos residence.

5. Several individuals, including the VoiceBite founders, Checkmate executives, and attorneys from both sides, have participatory knowledge of the negotiations and were operationally involved, unlike Mr. Varadarajan.

6. To my knowledge, none of these individuals have been deposed.

7. *I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.*

Executed on: October 23, 2025

_____

In Cupertino, California

**Robert Nessler**, Former VoiceBite CEO

MOTION FOR PROTECTIVE ORDER AND TO QUASH/MODIFY SUBPOENA