Arjun Vasan

arjun.vasan@gmail.com

12615 193rd Street

Cerritos, CA 90703

(562) 900-6541

Plaintiff In Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

**Arjun Vasan**,

      Plaintiff and Counter-Defendant


      vs.


**Checkmate.com, Inc.**,

(dba "Checkmate"),

      Defendant and Counterclaimant

Case No.:  2:25−cv−00765−MEMF−ASx

Hon. Alka Sagar | DISCOVERY MATTER

**PLAINTIFF'S OBJECTION TO LATE OPPOSITION; [PROPOSED] REPLY ISO MOTION TO COMPEL DISCOVERY, DETERMINE SUFFICIENCY AND FOR A PROTECTIVE ORDER; AND REQUEST TO GRANT AS UNOPPOSED; OR, IN THE ALTERNATIVE, ADVANCE ANY HEARING TO NOVEMBER 20, 2025**

Complaint Filed: January 28, 2025
Hearing Date: December 2, 2025
Hearing Time: 11:00 A.M.
Courtroom: 540

TO THE HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

      Plaintiff Arjun Vasan ("AV") **objects** to Checkmate.com, Inc. ("Checkmate")'s untimely opposition (Dkt. 124) and requests the Court grant his motion to compel discovery, determine sufficiency and for a protective order as unopposed (Dkt. 113). If the Court chooses to consider the untimely brief, AV herewith respectfully lodges a [proposed] reply to respond accordingly.

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................... **II**

TABLE OF AUTHORITIES ................................................................................... **II**

[PROPOSED] MEMORANDUM IN REPLY............................................................. 1

I.    THE OPPOSITION IS UNTIMELY UNDER JUDGE SAGAR'S PROCEDURES............ 1

II.   CHECKMATE ACKNOWLEDGES IT HAD NOTICE OF THE MOTION..................... 2

III.  CHECKMATE'S REPEATED UNTIMELY OPPOSITION IS PREJUDICIAL.............. 2

IV.   AV DECLINES A MEET AND CONFER RECORD HE-SAID/SHE-SAID .................. 3

V.    THE COURT SHOULD DISREGARD CHECKMATE'S 37-1 CHERRY PICKING ...... 3

VI.   THE COURT SHOULD COMPEL RULE 26 DAMAGES COMPUTATIONS............... 5

VII.  THE COURT SHOULD REQUIRE SUFFICIENT RFA RESPONSES ........................... 9

VIII.   THE COURT SHOULD PHASE DISCOVERY ............................................... 12

IX.   THE REQUESTED RELIEF SHOULD BE GRANTED AS UNOPPOSED ................... 13

X.    GOVERNING STANDARD .............................................................................. 14

XI.   PENDING MOTION FOR SANCTIONS ........................................................... 14

XII.  CHECKMATE'S AD HOMINEM ATTACKS SHOULD BE DISREGARDED ............ 15

XIII.   CONCLUSION AND REQUESTED RELIEF ................................................. 16

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6 ....................................... **18**

# TABLE OF AUTHORITIES

**CASES**

*Allstate Ins. Co. v. Nassiri,*
No. 2:08-cv-00369, 2010 WL 5248111, at *4 (D. Nev. Dec. 16, 2010) ..................................... 8

*Asea, Inc. v. S. Pac. Transp. Co.,*
669 F.2d 1242, 1247 (9th Cir. 1981) ....................................................................... 12

*City & Cnty. of S.F. v. Tutor-Saliba Corp.*,

  218 F.R.D. 219, 221–22 (N.D. Cal. 2003)......................................................................... 8

*Frontline Med. Assocs., Inc. v. Coventry Health Care*,

  263 F.R.D. 567, 569 (C.D. Cal. 2009) ........................................................................... 9

*Fuentes v. Knowles*,

  No. 2:05-cv-00675, 2007, at 1 (E.D. Cal. July 2, 2007)............................................ 12

*Jackson v. United Artists Theatre Circuit, Inc.*,

  278 F.R.D. 586, 593 (D. Nev. 2011)............................................................................. 9

*Ketab Corp. v. Mesriani Law Grp.*,

  No. 2:14-cv-07241, 2016 WL 5921767, at *2–3 (C.D. Cal. Mar. 18, 2016).............................. 8

*Lacey v. State Farm Gen. Ins. Co*. at 15 ¶ 18,

  No. 2:24-cv-05205-FMO (C.D. Cal., May 5, 2025). ...................................................... 18

*Open Text Inc. v. Northwell Health, Inc.*,

  2020 WL 6655922, at *2 (C.D. Cal. Oct. 23, 2020) .................................................. 13

*Safeco of Am. v. Rawstron*,

  181 F.R.D. 441, 445 (C.D. Cal. 1998) .......................................................................... 13

*Winfield v. Wal-Mart Stores, Inc*,

  320 F.R.D. 237, 241 (D. Nev. 2017)............................................................................. 10

*Spin Master, Ltd. v. Zobmondo Ent. LLC*,

  No. CV 06-3459 ABC (PLAx), 2011 WL 13127349, at *6–7 (C.D. Cal. Sept. 15, 2011) ......... 8

*Williams v. Cate*,

  No. 1:09-cv-00468, 2011, at 1 (E.D. Cal. Dec. 14, 2011) .......................................... 12

**[PROPOSED] MEMORANDUM IN REPLY**

## I.    THE OPPOSITION IS UNTIMELY UNDER JUDGE SAGAR'S PROCEDURES

This motion was noticed as a "DISCOVERY MATTER" before Hon. Judge Sagar, with a December 2, 2025, hearing date. Consistent with that designation, AV calculated deadlines under Local Rules 7-9 and 7-10, requiring oppositions "not later than twenty-one (21) days before the date designated for the hearing" and replies fourteen days before the hearing.

Checkmate asserts that its opposition is timely because Judge Frimpong's Standing Order provides that all oppositions "must be filed no later than fourteen (14) days after the filing of the initial Motion," and labels AV's filing at Dkt. 122 an "unauthorized sur-reply." Dkt. 124 at 5–6. That position is inconsistent with both the structure of this case and its own prior conduct.

First, its own motion to compel (Dkt. 101) was noticed before Judge Sagar 29 days prior to hearing and briefed under the standard timetable, not 42 days as required by Judge Frimpong's modified schedule. The same was true of Mr. Varadarajan's motion for protective order (Dkt. 106) and related briefing, all of which proceeded under the standard schedule.

Second, when Checkmate opposed AV's Rule 12 motions twenty days after the Standing Order deadline, it claimed "excusable neglect" for purported reliance on the Local Rule timeline. See Dkt. 113 at 2–3 & n.1 (recounting the August 29, 2025, lapse and untimely opposition).

Third, the instant opposition is itself captioned as a "DISCOVERY MATTER" and relies on Judge Sagar's "Law and Motion Schedule," which admonishes that "[s]trict compliance with Local Civil Rule 37 is required" for discovery motions. Dkt. 124 at 5; see Hon. Alka Sagar, Law and Motion Schedule. Yet in the very next subsection, it asks the Court to disregard L. R. 7-9 in favor of the Standing Order, solely to deem a six-day-late opposition "timely." Dkt. 124 at 5–6.

This is not a principled interpretation of the rules; it is a one-off attempt to rescue a late opposition. Under the Local Rules that ordinarily govern motions on this calendar, Checkmate's opposition, filed on November 17, 2025, was due Nov. 11 and is untimely. Dkt. 113 at 1; Dkt. 124 at 1. AV's reply at Dkt. 122, filed on Nov. 17 (now withdrawn), was timely under L. R. 7-10 and *also* timely under Judge Frimpong's "no later than seven (7) days after the Opposition" schedule. Dkt. 122 at 1–3. Relabeling it as an "unauthorized sur-reply" is an absurd misdirection.

## II. CHECKMATE ACKNOWLEDGES IT HAD NOTICE OF THE MOTION

On November 6, 2025, Checkmate filed a reply to AV's party opposition to its Motion to Compel (Dkts. 101; 111). The reply mentions AV's motion (Dkt. 113) multiple times, claiming (falsely) it was duplicative of his motions to dismiss its counterclaims and to strike its defenses:

Dkt. 116 at 6:14 writes: "[AV] … reiterates baseless and irrelevant arguments from [his] other pending motions … (Dkt. 113)". Pages 11 and 16 repeat. Setting aside merits, the reply—filed 6 days before it failed to timely oppose this motion—forecloses any assertion of "excusable neglect". AV respectfully requests the motion be granted for this alone—in whole or in part.

## III. CHECKMATE'S REPEATED UNTIMELY OPPOSITION IS PREJUDICIAL

Checkmate's failure to oppose this motion is not an isolated mistake; it previously had opposed AV's Rule 12 motions *twenty days* late. See Dkts. 89, 91. In belatedly requesting leave, it did not concede fault or propose any remedy for prejudice to AV—namely, delayed resolution of potentially case-dispositive motions. Dkt. 90. Instead, benefited from the uncertainty it created by pressing non-party discovery, in contravention of Court guidance. See Dkt. 88 at 2:15-17.

The Court's September 4, 2025, scheduling order asked the parties to seek guidance from the assigned magistrate judge with respect to phasing and limitations on discovery. AV is one of those parties. It is entirely proper for him to seek sequenced, proportional limits and compliance with Rules 26 and 37. AV repeatedly sought to confer accordingly but was rebuffed each time. Checkmate also mischaracterized the Court's order in its motion to compel, falsely claiming the Court had "denied" phasing. See Dkt. 101 at 12–13. AV's motion at Dkt. 113 is a direct response to the Court's invitation. Checkmate disregards Judge Rosenbluth's finding that AV "is **correct** that [the requests] are **overly broad**". See Dkt. 85 at 4, fn.2. Yet Checkmate still refuses *any* guardrails—insisting its subpoena is "narrowly tailored" *as is*. See Dkt. 116 at 12:4-6.

Against that backdrop, Checkmate's decision to ignore the Local Rule 7-9 deadline here is not trivial. It goes to the heart of its strategy: to burden the Court, AV, and AV's *family* with expansive, intrusive, and expensive discovery—*much* of which may be mooted by the pending 12(b)(6) motion—while disregarding rules that cabin discovery for everyone else. Humoring an untimely opposition here would reward this misconduct and encourage more of the same.

**IV.     AV DECLINES TO ENGAGE IN A MEET AND CONFER HE-SAID/SHE-SAID**

AV objects to Checkmate's characterization of the Rule 26(f) conference and meet and confer record and will not burden the Court with a line-by-line rebuttal but notes a first-time *pro se* litigant engaging in "calculated" gamesmanship is implausible on this record. For example, Ms. Makitalo asserts that AV represented he "plan[ned] to seek full bifurcation as well (in other issues), not just of discovery," and alleges a "bait-and-switch" for adding "an entire section on separate trials" to the Joint Rule 26(f) Report. Makitalo Decl. ¶¶ 14–18, Ex. G, Dkt. 124-1.

But "full bifurcation" *means* separate trials; the "entire section" did precisely what AV said it would. As Ms. Makitalo concedes, *AV reverted and filed the previously approved version anyway to avoid dispute*, upon objection. Dkt. 78. Makitalo Decl. ¶¶ 18–21, Exs. I–J, Dkt. 124-1. Counsel's attempt to re-label a concession as "gamesmanship" is unavailing and uncivil.

The Opp'n. declines to address counsel's bullying threats to "tell the court" if AV would not capitulate, baseless accusations of gender bias in Mr. Keech's post-meeting email or threat to block communications entirely. Dkt. 113-13 at 2. This is precisely why AV requested consent for mutual (cost-free) recording. Vasan Decl. ¶¶ 2–3, 10 & Exs. A, B, K, Dkt. 113-2. And refusing a Word doc to ensure verbatim copying, is a clear non-sequitur. As AV noted, he had to manually type several sections as the PDF was hard to copy. And when he returned a PDF, it demanded a Word doc for *its* edits—otherwise it would "tell the court", of course. Dkt. 113-3 at 7.

AV does not ask the Court to referee these issues here. What matters is that the parties' relationship has broken down, and private efforts have failed. Judge Sagar's procedures suggest an informal conference to resolve such intractable situations, but counsel refused to engage. AV respectfully suggests such a conference would benefit all parties and promote judicial economy.

**V.     THE COURT SHOULD DISREGARD CHECKMATE'S 37-1 CHERRY PICKING**

AV attempted to follow L. R. 37-1 in good faith and notes Judge Sagar's preference for that process. See C.D. Cal. L.R. 37-1, 37-2.4; Vasan Decl. ¶¶ 4–11 & Exs. D–G, I–J, Dkt. 113-2. The opposition cherry-picks from months of correspondence in attempting to paint AV as non-cooperative, while ignoring both the content and timing of his Local Rule 37-1 letters.

On Sept. 10, AV sent an L.R. 37-1 letter on two issues—(1) missing Rule 26(a)(1)(A)(iii) damages computations and supporting documents, and (2) phasing and party-first sequencing of discovery—citing the governing rules, stating the relief he would seek, and offering multiple dates and times to confer. Vasan Decl. ¶ 6 & Ex. E, Dkt. 113; see also Mot. at 6–7. Six days later, on Sept. 16, he sent a second L.R. 37-1 letter on the sufficiency of the first set of RFA responses—identifying the specific requests at issue, citing Rule 36(a)(4) and *Asea*, and proposing meet-and-confer windows. Vasan Decl. ¶ 7 & Ex. F. Checkmate did not agree to the proposed dates in either letter within ten days, did not offer alternate dates.

By contrast, its own Aug. 25 email about AV's disclosures did not cite any authority, specify relief sought, or identify which witnesses it believed were "missing." See Mot. at 6–7; Vasan Decl. ¶¶ 4–5 & Ex. D. Yet it now treats that bare email as fully compliant with L.R. 37-1 and dismisses AV's rule-based letters as "erratic correspondence." Opp'n 7-8, 12-13, Dkt. 124.

L. R. 37-1 does not create a "first to send a letter wins" priority; require a party to exhaust its opponent's issues before conferring on its own; or allow one-sided agendas to block meetings. See C.D. Cal. L.R. 37-1. Once AV served his Sept. 10 and 16 letters, Checkmate had ten days to meet and confer "on each issue and/or discovery request in dispute," not only the topics it unilaterally preferred. Id.; Vasan Decl. ¶¶ 6–8 & Exs. E–G. Instead, over several weeks, meeting were conditioned on addressing "your initial disclosures, not those of Checkmate" *first*, with in-person meetings at its office (and declined AV's request for reciprocity), refused to add AV's damages, RFA, or phasing issues to the agenda, and rejected neutral guardrails such as mutual recording. See Mot. at 2–3, 9–10; Vasan Decl. ¶¶ 5–9 & Exs. D, G–I, K.

L. R. 37-2.4 states when "counsel for the opposing party refuses to confer" or "willfully fails to cooperate in the preparation of a joint stipulation," the moving party may proceed by declaration. C.D. Cal. L.R. 37-2.4. AV's declaration sets out his L.R. 37-1 letters, follow-ups, proposed dates, and courtesy joint stipulation, and Checkmate's refusal to engage on his issues. Vasan Decl. ¶¶ 4–13 & Exs. B, D–J. That is what L.R. 37-2.4 authorizes.

Checkmate attempts to invoke L.R. 37 as both sword and shield—claiming AV's letters "do not count" while its own bare email does, demanding "priority" because it wrote first, and

PLAINTIFF'S OBJECTION TO UNTIMELY OPPOSITION AND [PROPOSED] REPLY

1   using that claimed priority to avoid ever conferring on AV's issues. This should be rejected. See

2   Opp'n 3–8, Dkt. 124. The Court has discretion to consider AV's motion even without a joint

3   stipulation. It should do so here, given a months-long impasse and detailed Rule 37(a)(1) / L.R.

4   37-1 certification provided. Mot. at 6–7, 13–14; Vasan Decl. ¶¶ 6–13.

5   **VI.    THE COURT SHOULD COMPEL RULE 26 DAMAGES COMPUTATIONS**

6          The Opposition to AV's 12(b)(6) motion flippantly alleges that Checkmate was "duped

7   into acquiring a valueless non-asset," and "*paid* millions of dollars for it.", concluding this "met

8   its pleading obligations." See Dkt. 94 at 19:2-3. Eight months since its allegations arose in New

9   York—it has yet to disclose *any* document or sworn affadavit accounting for how any "millions"

10  were paid, to whom and for what. Meanwhile, AV has catalogued the contracts Checkmate itself

11  filed (across forums) to show—on the papers—no "millions" (1) payable to him; (2) ever paid to

12  anyone; (3) in exchange "for code". AV's analysis is backed by sworn testimony from Robert

13  Nessler, Holder Rep. under the Merger Agreement purported to govern the parties' bargain. His

14  own damages theory is supported and *computed with numbers* from the very same documents.

15         Checkmate's Opposition does not dispute the core defect: it discloses no numbers at all—

16  only a wish-list of remedies and categories. (See Dkt. 113 at 10–11 (quoting Initial Disclosures).)

17  Instead, it leans on Rule 26's "reasonably available information" language, citing *Undiscovered*,

18  *Tutor-Saliba*, *Drayton*, *Spin Master*, and *Avago* to argue it may defer until discovery. It makes a

19  startling admission at Dkt. 124 at 21:17—it requires non-party witnesses to assert *any* damages.

20  Yet it has provided no *mechanism* by which his father or his co-founder could identify how it

21  "paid millions of dollars for code" (as it didn't). The Court should, at least, require that much.

22      **1. Rule 26 requires a number and methodology, not a bare list of categories**

23         Rule 26(a)(1)(A)(iii) requires "a computation of each category of damages" and the

24  documents on which each computation is based. Ninth Circuit courts have been clear that

25  "computation" "contemplates some analysis"—more than labels like "lost profits" or "fees" and

26  more even than a bare lump sum. *City & Cnty. of S.F. v. Tutor-Saliba Corp.*, 218 F.R.D. 219,

27  221–22 (N.D. Cal. 2003) (party must provide an assessment of damages with sufficient detail as

28  to the specific methodology and calculation so the opponent can understand the "contours of [its]

potential exposure"). *Allstate Ins. Co. v. Nassiri* holds that a plaintiff must, on information "then reasonably available," detail a computation sufficient for the defendant to understand exposure and make informed decisions; and that the computation and supporting documents are distinct obligations. No. 2:08-cv-00369, 2010 WL 5248111, at *4 (D. Nev. Dec. 16, 2010). *Spin Master* —one of Checkmate's own cases—rejects Rule 26(a) "compliance" if a party lists categories and raw revenue data but never explains how the numbers were derived; the court required disclosure of assumptions and methodology, not just categories. *Spin Master, Ltd. v. Zobmondo Ent. LLC*, No. CV 06-3459 ABC (PLAx), 2011 WL 13127349, at *6–7 (C.D. Cal. Sept. 15, 2011).

Courts in this District have called disclosures like Checkmate's—categories only, no numbers—"wholly insufficient." See *Ketab Corp. v. Mesriani Law Grp.*, No. 2:14-cv-07241, 2016 WL 5921767, at *2–3 (C.D. Cal. Mar. 18, 2016) (statement that plaintiff would seek "statutory or actual damages" without any computation violated Rule 26(a)(1)(A)(iii)). Checkmate's "computation" fits that description exactly. Dkt. 113 at 6–7.

**2. Here, the core numbers are in Checkmate's own files, not with non-parties**

Checkmate's main hook is *Undiscovered Corp. v. Heist Studios* and the 1993 advisory note, which state the computation requirement applies to "materials available to the party seeking monetary relief," and that a party is not expected to compute damages depending on information in someone else's possession (like an infringer's sales data in a patent case). But this is nothing like a patent case. Checkmate has not alleged AV is infringing its IP—it alleges that he "did not and could not" have assigned IP, and therefore it "paid millions" for a "worthless non-asset". It has not set forth a theory that plausibly requires any material obtainable only through discovery.

Even if it did, courts do not permit a party to disclose *nothing*; they require a best-effort computation based on information "reasonably available," and reject attempts to make Rule 26 "meaningless" by not obtaining or analyzing one's own records. *Allstate*, 2010 WL 5248111, at *4 ("Rule 26(a)(1)(A)(iii) would be rendered meaningless if a party could avoid its requirements by not obtaining the documents or information needed to prepare the damages computation," and a party must "diligently obtain the necessary information and prepare and provide its damages computation within the discovery period."); see *Frontline Med. Assocs., Inc. v. Coventry Health*

*Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009) (disclosure "should disclose a computation of each category of damages attributable to each cause of action," plus the evidence on which it relies); *Jackson v. United Artists Theatre Circuit, Inc*., 278 F.R.D. 586, 593 (D. Nev. 2011) (plaintiffs cannot shift to defendants the burden of reconstructing damages from raw documents).

Here, Checkmate's own theory is that it was "damaged by paying millions of dollars" "specifically" for "code." See Dkt. 113 at 7; Dkt. 98 § G. The underlying data—how much was paid, to whom, when, how and for what—are in Checkmate's bank, payroll, and transaction records, not in the memories or unique documents of AV, his father or his co-founder. The same is true of categories like "attorneys' fees," "costs," and time responding to alleged "misconduct," all of which live in its internal systems. Under *Tutor-Saliba*, *Allstate*, *Frontline*, and *Spin Master*, it must compute damages from those records "in light of the information currently available" and then supplement if genuinely new information arrives later. It cannot hold its own numbers hostage while blaming non-party discovery for its refusal to do basic math.

### 3. Supplementation is to correct or refine, not to compute for the first time

Checkmate leans on Rule 26(e) and *Tutor-Saliba*'s statement that an initial damages disclosure is "preliminary" and "subject to revision" to claim it can wait until some later date to provide any computation. Dkt. 124 at 15–16. But Rule 26(e) is not a loophole that lets a party skip the initial computation *entirely* and then disclose it for the first time whenever convenient.

*Winfield v. Wal-Mart Stores, Inc*. is explicit: Rule 26(e) "does not create a 'loophole' for a party who wishes to revise its initial disclosures to its advantage after the deadline has passed"; supplementation means correcting inaccuracies based on information that was not available at the time, not supplying required information for the first time months later. 320 F.R.D. 237, 241 (D. Nev. 2017). *Allstate* likewise holds that while a party "may not have all of the information necessary" early on, it must still "diligently obtain the necessary information and prepare and provide its damages computation within the discovery period." 2010 WL 5248111, at *4.

Here, the pattern is the opposite of what those cases allow: (1) no numbers at all in the initial disclosures; (2) when AV raised the issue in his September 10 L.R. 37-1 letter, Checkmate refused to give any schedule, merely saying it would supplement "as soon as a calculation … can

PLAINTIFF'S OBJECTION TO UNTIMELY OPPOSITION AND [PROPOSED] REPLY

be made"; and (3) months later, it still has not provided any number or methodology, yet asks the Court to declare it "fully complied" and deny relief. See Dkt. 113 at 6–7, 10–11; Vasan Decl. ¶¶ 4–6 & Exs. C–E. That is non-disclosure, not supplementation.

**4. There is real harm now; and in any event, Rule 37(c)(1) presumes preclusion unless they show harmlessness or substantial justification**

The real prejudice is not an eventual "surprise" number at trial; it is that Checkmate's refusal to put any number on its alleged "millions of dollars" allows counterclaims with no apparent damages to stay alive and be used as leverage against AV's wage claims and his family.

Checkmate's opposition to the Rule 12(b)(6) motion asserted that it was "duped into acquiring a valueless non-asset" and "paid millions of dollars for it," and touted those allegations as satisfying its pleading obligations. See Dkt. 94 at 19:2–3 (C.D. Cal.). AV's briefs walk through the very contracts Checkmate filed in New York and here to show there were no "millions" (1) promised to him; (2) paid to any founder; or (3) exchanged "for code" at all, and Nessler—the Holder Representative—has sworn that no founder received the supposed retention bonus. See Dkt. 113 at 10-11; Dkt. 98 § G; Dkt. 122 at 3; Nessler Decl. ¶¶ 2-9, Dkt. 97-6.

If Checkmate were forced to compute damages from its own bank and payroll records, it would either have to (a) admit there was no "out-of-pocket" loss matching its rhetoric, or (b) reveal an alternative theory that can be tested and, if necessary, attacked on summary judgment. By declining to compute anything at all, it keeps the "damages" element of fraud and contract claims on life support with nothing more than a slogan of "millions of dollars," which is used to justify broad discovery and to stall resolution of AV's wage claims. See Dkt. 113 at 3–8; Dkt. 122 at 3–5.  That is present-tense prejudice to case management, not only a future trial ambush.

The same is true of attorneys' fees. Checkmate's Rule 26 disclosure includes "attorney's fees" as a damages category but identifies no statute or contract that would entitle it to recover fees against AV in this wage case. See Dkt. 113 at 7 (discussing Cal. Lab. Code §§ 218.5(a), 1194(a) and Civ. Code § 1717).  On the present pleadings, its request for fees functions mainly as pressure on a pro se plaintiff, not as a supported remedy. Requiring Checkmate now to (1) identify the legal basis for any fee claim, and (2) compute whatever fees it truly intends to seek,

is not about protecting AV from "surprise"; it is about forcing Checkmate to show that its fee threats are tethered to actual law and actual numbers rather than rhetoric.

In short, compelling Rule 26-compliant damage computations will not just prevent later sandbagging; it will test whether Checkmate's counterclaims have any real economic content at all. If they do not, the Court and the parties should know now, before those claims continue to justify invasive discovery and continue to overshadow his documented, quantified wage claims.

## VII.    THE COURT SHOULD REQUIRE SUFFICIENT RFA RESPONSES

Checkmate spends pages arguing L.R. 37 to defend boilerplate RFA responses, which are the types of responses disfavored by Judge Sagar's procedures. Moreover, the Opp'n. complains AV fails to include "the full text of any of his Requests for Admission or Checkmate's fulsome responses thereto in the text of his Discovery Motion". But doing so would violate the Court's instruction to avoid "cutting and pasting those statements ad infinitum in their memorandum" and put "repetitive recitations of the challenged discovery" in an appendix, as AV has done here.

### A.  Procedural attacks are a sideshow; AV's motion is substantive

AV's motion walks through each set of RFAs (Lunchbox Emails, Separation Meeting, BYOD/Slack), explaining why each cluster is deficient under Rule 36(a)(4). Dkt. 113 at 3–6. Appendix A lists each (1) request, (2) objections/answer, and (3) Rule 36 defect. *Id*. That is not the "I'm dissatisfied, make them do better" rejected by *Williams v. Cate*, No. 1:09-cv-00468, 2011, at 1 (E.D. Cal. Dec. 14, 2011) (denying for failure to identify specific responses or why improper) and *Fuentes v. Knowles*, No. 2:05-cv-00675, 2007, at 1 (E.D. Cal. July 2, 2007).

On the meet-and-confer side, AV exhibits months of emails, multiple L.R. 37-1 letters, and a courtesy joint stipulation, contrasted with Checkmate's refusal to discuss AV's issues unless its own were taken "first" and at its office, without reciprocal conditions. Mot. 2–3; Vasan Decl. ¶¶ 6–12 & Exs. E–I. Local Rule 37-2.4 exists precisely for this stalemate—permitting a motion supported "by declaration" if "the opposing party refuses to participate in the preparation of a joint stipulation." AV is not trying to dodge Rule 37; he is using the escape hatch the Local Rule provides when the other side won't cooperate.

In any event, even if the Court were concerned by the procedural history, the ordinary remedy is to resolve the discovery on the merits—not to insulate non-compliant RFA answers forever. See *Asea, Inc. v. S. Pac. Transp. Co.*, 669 F.2d 1242, 1247 (9th Cir. 1981) (district court may order amended answers and, if noncompliance continues, deem matters admitted).

**B. Checkmate's "legal conclusion" and "unreliable" claims miss the mark**

Rule 36 permits requests about "facts, the application of law to fact, or opinions about either," and about "the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1)(A)–(B). The RFAs AV actually put in play fit squarely within that scope:

• **Document mechanics**. Set One asks whether Checkmate's own "Lunchbox" email attachments are audio rather than source code, what the file types are, and whether the emails include .zip/.tar files or repository URLs. Mot. 3–4 & Ex. L, Dkt. 113; see also Dkts. 18-4, 71. These are pure document-character questions.

• **Meeting logistics and recording**. Set Two asks who attended the November 14 Zoom "Separation Meeting," when it occurred, whether it was recorded and processed, and if specific transcribed quotes were made and are accurate. Mot. 4–5 & Ex. M, Dkt. 113.

• **BYOD / Slack content**. Set Three asks if Checkmate provided or reimbursed a work laptop and if quoted Slack messages from Checkmate's own workspace (e.g., "We don't provide work computers. The only solution is for you to quit.") are accurate. Id. at 5–6 & Ex. N.

RFAs are routinely used to confirm authenticity and content of a party's own documents, and to narrow factual disputes. *Safeco of Am. v. Rawstron*, 181 F.R.D. 441, 445 (C.D. Cal. 1998) (Rule 36 is "to narrow the issues for trial by identifying and eliminating those matters on which the parties agree," including genuineness of documents). *Open Text Inc. v. Northwell Health, Inc.*, 2020 WL 6655922, at *2 (C.D. Cal. Oct. 23, 2020), recognizes the same purpose while cautioning against using RFAs to force the other side to concede "essential elements."

Checkmate's reliance on *Music Group Macao*, *Holston*, and *Benson Tower* is misplaced. Those cases hold that RFAs may not seek pure legal propositions ("admit X accommodation was reasonable") but may ask a party to apply law to concrete facts. AV is not asking the Court to deem admitted any "ultimate issue" RFAs; any deemed-admitted relief he seeks is confined to

mechanical facts like file types, URLs, and meeting details. Mot. 10, Dkt. 113. For any mixed law-and-fact RFAs (e.g., using the term "solicit"), the proper remedy under those same cases is to order an amended answer, not to bless boilerplate non-answers.

Nor does the "unreliable transcripts" objection justify non-answers. Opp'n 12–13, Dkt. 124. Many RFAs attach screenshots and exports from Checkmate's own Slack and Zoom accounts and the Fathom.ai transcript Checkmate itself used. Mot. 7–9 & Exs. L–N, Dkt. 113. Rule 36 is the mechanism for resolving authenticity and content disputes: Checkmate must admit, deny, or explain—in detail—why it cannot do either after a reasonable inquiry. Fed. R. Civ. P. 36(a)(4). Simply labeling its own Slack and Zoom-derived records "unreliable" without saying what was actually reviewed does not satisfy the rule.

**C. Checkmate's boilerplate and "no information" responses violate Rule 36(a)(4); the Court should order amended answers and deem a narrow set admitted**

Rule 36(a)(4) requires that an answer (1) specifically deny or state in detail why it cannot admit or deny, (2) fairly respond to the substance, and (3) where lack of information is claimed, recite that a "reasonable inquiry" was made and information "known or readily obtainable" is insufficient. Fed. R. Civ. P. 36(a)(4). The Ninth Circuit has approved deeming matters admitted where a party "intentionally disregarded" these obligations, particularly when the relevant information is in its own files. Asea, 669 F.2d at 1245–47.

As AV's motion and Appendix A show, Checkmate's responses follow a consistent pattern: global boilerplate ("vague," "expert opinion," "overbroad"), denials that do not say what was checked (e.g., whether anyone opened the native .eml, ran a Slack export, or clicked the Fathom link), and "insufficient information" assertions even when the only possible sources are its own email, Slack, HR, Zoom, and billing systems. Mot. 7–10, Dkt. 113. That is precisely the "track the words, evade the substance" approach *Asea* condemns.

Consistent with Asea, AV asks for modest relief: (1) an order requiring Checkmate, within 10 days, to serve Rule-compliant answers to the RFAs identified in his motion and Appendix A—admitting or denying each, admitting in part where appropriate, and detailing any reasonable inquiry supporting a claimed inability to admit or deny; and (2) deeming admitted a

narrow set of mechanical/document RFAs (e.g., Set One RFAs 1–2, 11–12B, 16–18; Set Two RFAs 3–5) where the answer is apparent from Checkmate's own exhibits and its evasions have already required motion practice. Mot. 10, Dkt. 113.

That approach tracks Rule 36, fits the Ninth Circuit's guidance in Asea, and will narrow, rather than expand, what actually needs to be litigated later in summary judgment or at trial.

## VIII. THE COURT SHOULD PHASE DISCOVERY

This is not a close call. AV's claims are supported by documents, pled with specificity, and do not require "broad discovery". Even AV's fraud claims—not his current focus—are pled with extreme particularity: events tied to specific dates, source documents quoted verbatim (and often attached), with specific actors and context identified. Who, what, when, where, how are all spelled out. AV has not tried to meet the lowest common denominator of notice pleading; he has shown his work. Checkmate has done the opposite. And beyond fraud—**AV's wage claims are undisputed**: Checkmate relies on declaratory relief and 45+ affirmative defenses to shield itself from liability for wage theft it *admits* and asks the Court to bless. Its proclaimed "entitlement" to "broad discovery" must cede to California Public Policy favoring prompt payment of wages.

The contrast between the parties' pleadings underscores why discovery should be phased. AV's Complaint anchors each claim in specific contracts, dated emails and Slack messages, and concrete dollar amounts—with detailed and itemized calculations. FAC ¶¶ 15–23, 24–32, 84–90, 92–96. By contrast, the counterclaims rely on conclusory tropes ("no matter what," "millions of dollars," "valueless non-asset") and simply allege "damages…in an amount to be proved at trial" CCs ¶¶ 1–2, 7, 33, 61, 46, 53, 57, 62, 68. Treating conclusory rhetoric with the same, or greater, deference as documented and quantified claims is fundamentally unjust. Phasing corrects that imbalance: a party with specific, testable allegations should not be forced to finance and endure heavy discovery burdens to disprove its opponent's unsupported narratives.

Checkmate's Opp'n brushes off the requested phasing as "redundant," arguing that AV had sought "the same" relief in opposition to its motion to compel. Opp'n 20 (citing Dkt. 111 §§ IV.A–B and Dkt. 116 at 2–8). But phasing affects far more than a single non-party subpoena; it is a case-management issue that governs the overall sequence of party and non-party discovery.

As a party, AV plainly has standing to ask how discovery in his own case should be structured. And Checkmate has argued that AV lacks standing to obtain relief for a non-party. See Dkts. 101, 116. AV, a first-time *pro se* litigant, does not pretend certainty on the standing question and does not ask the Court to resolve it here. The Court need not reach phasing in every posture; it need only decide it once, in the most appropriate vehicle—this Rule 26/45 discovery motion brought by a party, as the Scheduling Order invited. See Dkt. 88 at 2; Dkt. 113 at 1, 8–9.

Checkmate also claims that AV's pending Rule 12 motions seek "the same" relief. Opp'n 20. That is incorrect on the face of the proposed orders. His Rule 12(b) motion seeks dismissal of counterclaims. Dkts. 81, 98. His Rule 12(f) motion seeks to strike affirmative defenses—a different pleading that survives even if the former are dismissed. Dkt. 79. Neither motion asks Judge Frimpong to enter a protective order phasing discovery, or to adopt a party-first sequence. Those are subjects of this discovery motion and its proposed order at Dkt. 113-1, brought before Magistrate Judge Sagar under Rules 26(c), 26(d)(3), and 45, exactly as Dkt. 88 contemplated.

AV does not re-argue proportionality as briefed in his opposition to Checkmate's motion to compel. See Dkt. 111 §§ IV.A–B. Instead, he asks the Court to (1) treat those arguments as incorporated by reference here, and (2) resolve phasing once, through this motion, where his standing is unquestioned. AV respectfully requests that the Court exercise its case-management authority to adopt the phased approach set out in Dkt. 113-1—party-first discovery, with a short adjournment of non-party subpoenas in the interim, and all discovery keyed to Rule 26(b)(1) proportionality—and to disregard any "entitlement" to "broad discovery" to the contrary.

## IX.    THE REQUESTED RELIEF SHOULD BE GRANTED AS UNOPPOSED

AV's requested relief is non-dispositive. Checkmate still has opportunity to supplement its disclosures and supply compliant answers to AV's requests for admissions. Granting phasing does not prejudice its ability to conduct relevant discovery at the proper stage of this litigation. Doing so will streamline these proceedings—minimizing contentious motion practice such as that which is ongoing. See Dkts. 101; 106. Further, barring attorney's fees claims for discovery motion practice—outside a finding of bad faith—limits the gamesmanship seen here. At present, Checkmate faces no costs even for expressly violating rules—but can impose substantial costs on

PLAINTIFF'S OBJECTION TO UNTIMELY OPPOSITION AND [PROPOSED] REPLY

AV simply by prevailing on its own motions. This imbalance is seen in its refusal to confer on the grounds for this motion, and now in its failure to timely oppose. Were it to face no penalties, this conduct would continue and likely exacerbate—unfairly prejudicing the proceedings.

## X.    GOVERNING STANDARD

As noted above, Local Rule 7-9 requires oppositions be filed "not later than twenty-one (21) days before the date designated for the hearing." C.D. Cal. L.R. 7-9. Local Rule 7-12 further provides: "The failure to file any required document, or the failure to file it within the deadline, may be deemed consent to the granting or denial of the motion." C.D. Cal. L.R. 7-12. The Ninth Circuit has affirmed enforcing local deadlines in this manner. In *Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995) (per curiam), the court upheld dismissal per a local rule deeming a motion to be granted as proper relief for a non-moving party's failure to timely file an opposition.

Here, Checkmate had actual notice of AV's motion, referenced it in its briefing, and nonetheless failed to file an opposition by the Local Rule 7-9 deadline. Under L.R. 7-12 and the authority above, the Court may deem that failure consent to the granting of AV's motion.

AV's motion details Checkmate's failures to provide Rule 26(a)(1)(A)(iii) damages computations, evasive and non-responsive answers to Requests for Admission, and insistence on burdening non-parties before producing basic party discovery. Dkt. 113. Checkmate's decision not to oppose those Rule 37 arguments only underscores that relief is appropriate.

## XI.    PENDING MOTION FOR SANCTIONS

On November 17, 2025, AV moved for sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent powers (Dkt. 121), addressing litigation abuses that inform the posture seen here, including extortionate threats of "criminal liability," misstatement of contracts, and refusal to disclose key documents. AV respectfully submits that the conduct described therein is of such a toxic nature that the Court should address it with rigor. Checkmate's failure to provide Rule 26 damage computations, evasive RFA responses, refusal to confer on phasing, and now its failure to timely oppose this motion, fit the same pattern: disregarding substantive obligations while leveraging bare, inflammatory rhetoric to extract burdensome discovery and fee leverage.

AV does not ask the Court to prejudge the sanctions motion here. But the existence of that motion, and the record it describes, underscores why the relief requested is necessary. Where serious questions have been raised about a party's good faith, it would be unfair to (1) indulge missed deadlines, (2) permit burdensome non-party discovery on unsubstantiated damages, or (3) award any fees for discovery motion practice against a *pro se* party. AV's proposed measures are modest responses to the pattern of conduct addressed comprehensively in Dkt. 121.

## XII.   CHECKMATE'S AD HOMINEM ATTACKS SHOULD BE DISREGARDED

AV's right to self-representation under 28 U.S.C. § 1654 necessarily includes the ability to communicate with his own witnesses and explain his legal positions; non-party witnesses, in turn, may hear those explanations and make their own decisions, as Mr. Varadarajan has done. AV's zealous self-advocacy is a direct threat to Checkmate's litigation strategy. Aware that AV is not vulnerable to litigation pressure, it seeks to exert such pressure through his father, while undermining his positions with *ad hominem* attacks. It has followed this strategy from the onset of this action—repeatedly inserting unnecessary invective into procedural motions. Brief after brief, Checkmate seeks to persuade the Court that AV does not *deserve* a fair hearing.

In denying Checkmate's Motion to Dismiss or Transfer, this Court emphatically rejected such tactics. Indeed, in favoring AV's plain language reading of Labor Code § 925, the Court found his view *of legal representation* (and his authorities) more persuasive than Counsel's spin. Dkt. 67 at 15:9-27. It had opened by purporting, *inter alia*, that AV was "disruptive", "erratic", "unprofessional" and "insubordinate"—to argue for proper venue and forum clause validity. Dkt. 18. Before AV had filed any brief, and when none of these labels had a *modicum* of relevance, *this was its strategy*. The Court was not persuaded and ruled for AV on every substantive point.

Counsel's fixation on AV's use of AI has metastasized into a desperate obsession. This Court has given its accusations no moment, but it remains undeterred. AV is transparent that he uses AI as part of his workflow—just as many lawyers do. By contrast, K&L Gates attorneys including Mr. Keech here, were subject to a federal OSC not for *using* AI but failing to disclose such use upon questioning in federal court—with sanctions for the firm on May 5, 2025. The "AI generated" label is a transparently *ad hominem* attempt to bias this court against a *pro se* party.

PLAINTIFF'S OBJECTION TO UNTIMELY OPPOSITION AND [PROPOSED] REPLY

Its accusations should therefore be disregarded as irrelevant and, indeed, a projection. See *Lacey v. State Farm Gen. Ins. Co.* at 15 ¶ 18, No. 2:24-cv-05205-FMO (C.D. Cal., May 5, 2025).

## XIII.    CONCLUSION AND REQUESTED RELIEF

AV has been attempting to raise these issues in good faith since August 2025, sending several L.R. 37-1 letters to no avail. See Dkt. 113. By moving to compel a non-party, Checkmate managed an end-run around the L.R. 37-1 process; permitting it to benefit would prejudice AV's discovery priorities. For the reasons set forth herein and in his opening brief, AV respectfully requests that the Court deem his Motion to Compel Discovery, Determine Sufficiency, and for a Protective Order (Dkt. 113) as unopposed and grant it (in whole or part) under Local Rule 7-12.

To the extent such relief is declined, AV respectfully asks the Court to advance the hearing on this motion to Nov. 20, 2025, so that it is heard with the pending motions at Dkts. 101 and 106. Coordination will permit the Court to efficiently address overlapping issues in a single sitting. Checkmate has had a full and unused opportunity to oppose under Local Rule 7-9 and would not be prejudiced. If an opposition is belatedly filed and considered despite untimeliness, AV respectfully requests leave to reply to any unaddressed arguments raised but maintains that any further delay in considering phasing would unfairly benefit Checkmate for its failure here.

AV finally asks the Court to disregard unsupported and prejudicial accusations of the unauthorized practice of law and AI misuse (Dkt. 116). To be clear, AV has not: (1) drafted filed or signed papers on anyone else's behalf; (2) held himself out as an attorney; (3) provided any legal advice; or (4) filed papers without a reasonable inquiry under Rule 11. Any assistance to his father was limited to sourcing relevant documents, explaining his own positions, aiding in formatting and in *using technology*. AV has used AI responsibly and transparently. Checkmate spent most of briefing *attacking a party's actions* while seeking to impose significant costs via contempt sanctions on a self-represented non-party—putting his *due process* at risk as the timing precluded a chance of securing proper representation. Should the Court wish to consider these allegations, AV respectfully requests leave for a short sur-reply.

Dated: **November 18, 2025**

In: **Cerritos, California**

**Respectfully submitted**,

/s/ *Arjun Vasan*

**Arjun Vasan**, Plaintiff *In Pro Per*

PLAINTIFF'S OBJECTION TO UNTIMELY OPPOSITION AND [PROPOSED] REPLY

1
2
3
4      <u>**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6**</u>
5          Plaintiff Arjun Vasan certifies that this brief contains 6,485 words, which complies with
6  the 7000-word limit of L.R. 11- 6.1 and the Court's Civil Standing Order dated Aug. 27, 2025.
7
8                                                   **Respectfully submitted**,
9    Dated: **November 17, 2025**
10       In: **Cerritos, California**                /s/ *Arjun Vasan*
11                                                   **Arjun Vasan**, Plaintiff *In Pro Per*
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OBJECTION TO UNTIMELY OPPOSITION AND [PROPOSED] REPLY

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFF'S OBJECTION TO UNTIMELY OPPOSITION AND [PROPOSED] REPLY