Ryan Q. Keech (SBN 280306)
Ryan.Keech@klgates.com
Stacey Chiu (SBN 321345)
Stacey.Chiu@klgates.com
Rebecca Makitalo (SBN 330258)
Rebecca.Makitalo@klgates.com
Jacob R. Winningham (SBN 357987)
Jacob.Winningham@klgates.com
K&L GATES LLP
10100 Santa Monica Boulevard
Eighth Floor
Los Angeles, California 90067
Telephone: +1 310 552 5000
Facsimile: +1 310 552 5001

*Attorneys for Defendant and Counter-Claimant*
*CHECKMATE.COM INC.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>Plaintiff,<br><br>v.<br><br>CHECKMATE.COM, INC.,<br><br>Defendant.<br>_____<br>CHECKMATE.COM, INC.,<br><br>Counterclaim-Plaintiff,<br><br>v.<br><br>ARJUN VASAN,<br><br>Counterclaim-Defendant. | Case No. 2:25-cv-00765-MEMF-AS<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**CHECKMATE.COM INC.'S OPPOSITION TO PLAINTIFF ARJUN VASAN'S MOTION FOR SANCTIONS; CHECKMATE'S REQUEST FOR SANCTIONS**<br><br>*[Filed concurrently herewith Declaration of Rebecca I. Makitalo]*<br><br>Hearing Date: January 8, 2026<br>Time: 10:00 A.M.<br>Courtroom: 8B<br><br>Complaint Filed: January 28, 2025<br>Amended Complaint Filed: February 21, 2025 |

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES............................................1

I.   INTRODUCTION........................................................................................1

II.  STATEMENT OF FACTS.............................................................................2

    A.   Checkmate Discovers Plaintiff's Fraud And Promptly Files Suit........2

    B.   Checkmate Voluntarily Dismisses The New York Action...................3

    C.   Plaintiff's Increasingly Vexatious And Harassing Conduct Towards Checkmate And Its Counsel ................................................4

    D.   Plaintiff's Post-Dismissal Motion for Sanctions Filing in New York......................................................................................6

    E.   Plaintiff's Pursues His Second Motion For Sanctions Against Checkmate In The Central District ....................................................6

III. ARGUMENT ............................................................................................7

    A.   There Is No Basis For Rule 11 Sanctions ...........................................7

    A.   Plaintiff Impermissibly Seeks To Use Sanctions As A Substitute For Litigating The Merits Of The Case .................................8

    B.   Plaintiff's Allegations Of Improper Use Of Settlement Communications Lack Merit ..............................................................10

    C.   28 U.S.C. § 1927 And Inherent-Authority Sanctions Are Unjustified....................................................................................11

IV.  SANCTIONS AND FEES SHOULD BE AWARDED AGAINST VASAN FOR HIS VEXATIOUS CONDUCT...........................................14

V.   CONCLUSION ........................................................................................17

1

2

# <u>TABLE OF AUTHORITIES</u>

3
                                                                        **Page(s)**

4

**Cases**

5

*Aetna Life Ins. Co. v. Alla Med. Servs., Inc.*,

6
    855 F.2d 1470 (9th Cir. 1988) ............................................................. 14

7
*Blixseth v. Yellowstone Mountain Club, LLC*,

8
    854 F.3d 626 (9th Cir. 2017) ............................................................... 17

9
*In re Carson*,

10
    510 B.R. 627 (Bankr. E.D. Cal. 2014) ................................................. 10

11
*Ctr. for Auto Safety v. Chrysler Grp., LLC*,
    809 F.3d 1092 (9th Cir. 2016) ............................................................. 16

12

13
*Christian v. Mattel, Inc.*,
    286 F.3d 1118 (9th Cir. 2002) ............................................................. 13

14

15
*Conn v. Borjorquez*,
    967 F.2d 1418 (9th Cir. 1992) ..........................................................7, 8

16

17
*Cont'l Recs., LLC v. Royalty Fam., Inc.*,
    No. CV 23-05797 PA (BFMx), 2023 WL 9319230 (C.D. Cal. Dec.
    13, 2023) ........................................................................................7, 8, 9

18

19
*Cooter & Gell v. Hartmarx Corp.*,

20
    496 U.S. 384 (1990) .......................................................................7, 9, 15

21
*Energy Monster v. Monster Energy Co.*,
    No. EDCV 20-2528 JGB (SPx), 2021 WL 3598862 (C.D. Cal. Apr.
    23, 2021) ............................................................................................... 9

22

23
*Golden Eagle Dist. Corp. v. Burroughs Corp.*,

24
    801 F.2d 1531 (9th Cir.1986) ............................................................... 7

25
*Havensight Cap. LLC v. Nike, Inc.*,

26
    891 F.3d 1167 (9th Cir. 2018) ........................................................16, 17

27
*Lahiri v. Universal Music & Video Distrib. Corp.*,
    606 F.3d 1216 (9th Cir. 2010) ............................................................. 12

28

*Malin v. Singer,*
    217 Cal. App. 4th 1283 (2013) ................................................................... 13

*Monex Deposit Co. v. Gilliam,*
    680 F. Supp. 2d 1148 (C.D. Cal. 2010) .................................................... 13

*Operating Eng'rs Pension Tr. v. A-C Company,*
    859 F.2d 1336 (9th Cir. 1988) ..................................................................... 7

*Perrin Bernard Supowitz, LLC v. Morales,*
    No. 2:22-cv-02120-MEMF-SK, 2024 WL 457142 (C.D. Cal. Feb.
    6, 2024) ............................................................................................... 11, 12

*Shoumin Zhang v. Am. Franchise Reg'l Ctr., LLC,*
    No. CV 15-9583-R, 2016 WL 9180439 (C.D. Cal. May 6, 2016) ...................... 9

*Terrebonne, Ltd. of California v. Murray,*
    1 F. Supp. 2d 1050 (E.D. Cal. 1998) ...................................................... 15

*Townsend v. Holman Consulting Corp.,*
    929 F.2d 1358 (9th Cir. 1990) ..................................................................... 7

*U.S. v. Mirama Enters., Inc.,*
    185 F. Supp. 2d 1148 (S.D. Cal. 2002) .................................................... 10

*Warren v. Guelker,*
    29 F.3d 1386 (9th Cir.1994) ..................................................................... 16

*Wilkins v. Heslop,*
    No. 2:20-cv-01622 DJC DB P, 2024 WL 1857211 (E.D. Cal. Apr.
    29, 2024) ................................................................................................... 9

*Woodrum v. Woodward County, Okla.,*
    866 F.2d 1121 (9th Cir.1989) ..................................................................... 7

**Statutes**

28 U.S.C. § 1927 ...................................................................................... *passim*

Cal. Civ. Code § 47(b) ................................................................................ 13

Fed. R. Civ. P. 11 ...................................................................................... *passim*

Fed. R. Civ. P. 11(b) ......................................................................... 7, 8, 11

Fed. R. Civ. P. 11(b)(3) ................................................................................. 8

Fed. R. Civ. P. 11(c)(3)............................................................................. 8, 11

Fed. R. Civ. P. 11(c)(4)................................................................................ 16

Fed. R. Civ. P. 12(b) .................................................................................... 9

Fed. R. Evid. 408 .................................................................................. 10, 11

Fed. R. Evid. 408(a).................................................................................... 10

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

At times brimming with anger, Plaintiff Arjun Vasan ("Plaintiff" or "Vasan")'s Motion for Sanctions (Dkt. 121) is nothing more than a continuation of his generative-AI fueled campaign to "humiliate[], destroy[] and eviscerate[]" Checkmate.com Inc. ("Defendant" or "Checkmate") and its counsel "on a personal level" for their failure to "surrender" to his claims.   Declaration of Rebecca I. Makitalo ("Makitalo Decl.") at ¶¶ 12-13, Ex. F; *id.* at ¶¶ 18-19, Ex. I.  Coming after multiple warnings from this Court and multiple other courts about the impropriety of his conduct, Plaintiff's latest motion **recycles another motion for sanctions**, filed months ago in New York, where Plaintiff assured that court (falsely, as it would turn out) that he had no intention of seeking the Rule 11 relief he seeks here. *See* Dkt. 66 at i, *Checkmate.com, Inc. v. Vasan*, Case No. 2-CV-02079 (VM) (GWG) (S.D.N.Y 2025) (the "New York Action") (withdrawing "any request for personal monetary compensation" and claiming Rule 11 relief is "solely as a guidepost"); *see also id.* at 13 (claiming that he "does not seek sanctions for any of this conduct"); *Id*. at 13 ("*here* is where the statements at issue arose – and where *this court* can sink them") (emphasis in original).

Plaintiff has identified no basis for sanctions.  Any minimally competent attorney would advise Plaintiff of this reality.  But Plaintiff has chosen – and continues to choose – the validation he receives from the generative AI platforms he continues to utilize over the urgent necessity of seeking and obtaining competent legal advice and representation.  And so it is that the parties and the Court find themselves here today, increasingly burdened with Plaintiff's smorgasbord of increasingly serious litigation abuses.  This behavior is, after all, Plaintiff's **express** plan, communicated **again and again**.  *See* Makitalo Decl. at ¶¶ 10-11, Ex. E; ("The next phase will be **exponentially costlier**.") (emphasis added); *Id.* at ¶¶ 12-13, Ex. F ("[U]nless you dismiss with prejudice I will hold your frivolous and abusive New

-1-

York action against you, and *you will pay for it*.") (emphasis added); *Id.* at ¶¶ 22-23, Ex. K ("Surrender now or expect complete annihilation."); *Id.* at ¶¶ 16-17, Ex. H ("My only goal after that will be to completely destroy and humiliate Checkmate."); *Id.* at ¶¶ 26-27, Ex. M (threatening "to *serve broader, more burdensome RFPs*. These will *impose a far greater burden on Checkmate*.") (emphasis added). Throughout this litigation, Plaintiff has vexatiously multiplied the proceedings with the aim of pressuring Checkmate into abandoning its legitimate claims through persistent harassment and threats directed at both Checkmate and its counsel. This course of conduct is barred by the Federal Rules and must stop.

The Court should not only reject Plaintiff's misuse of the sanctions process to litigate the merits of this case and deny his Motion for Sanctions, but it should grant Checkmate's Cross-Motion for Sanctions and award Checkmate its fees for opposing Plaintiff's baseless motion.

## II.     STATEMENT OF FACTS

### A.     Checkmate Discovers Plaintiff's Fraud And Promptly Files Suit

In early 2024, Plaintiff sold VoiceBite – an artificial intelligence company he claimed to have co-founded – to Checkmate on the basis of what turned out to be multiple material and false representations regarding the originality and ownership of its intellectual property.  Contrary to what Plaintiff had told Checkmate – that he and VoiceBite were the exclusive owners and authors of "proprietary" code owned by VoiceBite – Checkmate's post-close investigation revealed that Plaintiff had engaged in fraudulent conduct by peddling an asset that was effectively worthless and by then doing the same thing in attempting to sell identical code to others. *See generally* Dkt. 71 (the "Counterclaims").

Pursuant to the forum selection clause designating New York state or federal courts as the exclusive jurisdiction for any legal action relating to the parties' transaction, Checkmate filed suit against Plaintiff in New York state court on

February 14, 2025, asserting claims for breach of his obligations and for fraud. Plaintiff subsequently removed the case to the Southern District of New York Court on April 12, 2025. Dkt. 1, New York Action.  Plaintiff also filed suit separately against Checkmate in the Central District of California. *See* Dkt. 1 (the "Complaint"). Thereafter, on February 21, 2025, Plaintiff filed an Amended Complaint (Dkt. 10) against Checkmate.

### B.    Checkmate Voluntarily Dismisses The New York Action

On March 26, 2025, Checkmate filed a Motion to Dismiss or Transfer Plaintiff's claims in this action. Dkt. 18 ("Motion to Dismiss").  Thereafter, on June 2, 2025, Plaintiff filed a Motion to Dismiss, Transfer, or Stay ("New York Motion to Dismiss") in the New York Action. Dkt. 34, New York Action.  In his New York Motion to Dismiss, Plaintiff challenged the New York court's jurisdiction to adjudicate Checkmate's claims.  Specifically, he objected to the validity of the forum selection clause contained in the Merger Agreement and asserted that New York was an improper forum for Checkmate's claims. *Id*.  Plaintiff also opposed Checkmate's Motion to Dismiss Plaintiff's employment-related claims in this action on substantially the same basis. *See* Dkt. 27.

On June 24, 2025, this Court denied Checkmate's Motion to Dismiss, prompting Checkmate to dismiss its claims in the New York Action without prejudice in favor of proceeding against Plaintiff by way of counterclaim in California, primarily to avoid litigating in multiple fora and driving up legal costs. Dkt. 53, New York Action. On July 9, 2025, Checkmate filed its Answer and Counterclaims against Plaintiff in this action, asserting the same causes of action it voluntarily dismissed in its Amended Complaint before the New York court. *See* Dkt. 71 (the "Counterclaims").  On July 10, 2025, the New York court ordered that Checkmate's Voluntary Dismissal (Dkt. 53, New York Action) was "self-executing and effective immediately." Dkt. 55, New York Action.

1

2

         **C.**     **Plaintiff's Increasingly Vexatious And Harassing Conduct Towards Checkmate And Its Counsel**

3

4

5

6

7

8

9

10

11

      Unsatisfied with the parties' proceeding with their respective claims in the Central District of California forum, Plaintiff demonstrated increasingly vexatious conduct undertaken as part of an explicit effort to "force" Checkmate to submit to his demands and abandon its legitimate claims. Part of his efforts have involved improper attacks on and threats against Checkmate's counsel. On April 27, 2025, Plaintiff threatened to file an amended complaint in this action adding claims against K&L Gates, Ryan Keech and Charles Tea – K&L Gates' Deputy General Counsel – as defendants based in part on the filing of this action "immediately after" what he claimed to be his "protected activity in California." Makitalo Decl. at ¶¶ 2-3, Ex. A.

12

13

14

15

On July 20, 2025, Plaintiff sent an email addressed to Checkmate's counsel with the subject line "Carl von Clausewitz, On War (1832)" stating, "***The destruction of the enemy's forces is always the means by which the aim of war is achieved; the aim is the overthrow of the enemy and the compulsion of his will***." *Id*. at ¶ 24-25, Ex. L.

16

17

18

19

20

21

      Fueled by the validation provided by generative AI, Plaintiff's threatening behavior has only spiraled since then. On June 26, 2025, Plaintiff demanded that Checkmate "promptly and voluntarily dismiss, with prejudice" this action. *Id*. at ¶¶ 6-7, Ex. C. That same day, Plaintiff sent an email addressed to Checkmate's counsel with the subject line "unconditional surrender - I strongly recommend it while I retain the capacity for mercy." *Id*. at ¶¶ 8-9, Ex. D.

22

23

24

25

26

27

      On July 1, 2025, Plaintiff vowed that the "next phase" of this case would be "exponentially costlier" if he did not, "**by end of day Friday, July 4, 2025**" "receive written acceptance" of a proposal that Checkmate abandon its claims and pay him everything he claimed to be owed, including "motions for sanctions, adding [Checkmate executive] ***Michael Bell***, K&L Gates LLP (and ***Ryan Q. Keech*** and ***Charles Tea III*** as individual defendants), seeking injunctive relief, and pursuing

28

any further actions necessary to force a resolution." *Id*. at ¶¶ 10-11, Ex. E (emphasis in original).

The next day, apparently responding to Checkmate's notice of its intent to voluntarily dismiss in favor of proceeding in California, Plaintiff sent an email saying that "I see that you plan to **surrender** in New York" and threatening that "**unless you dismiss with prejudice I will hold your frivolous and abusive New York action against you, and you will pay for it**." *Id*. at ¶¶ 12-13, Ex. F (emphasis added).

Later that day, Plaintiff sent another email demanding that Checkmate "begin **apologizing**, immediately" and that "**each day that passes increases the cost your client will pay, and my resolve to hold their feet to the fire**." *Id*. at ¶¶ 14-15, Ex. G. (emphasis added).  Seven minutes later, Plaintiff wrote "**let me be absolutely clear. If I do not get a positive response by Friday, July 4, 2025, the 249th birthday of America, there will be no going back. My only goal after that will be to completely destroy and humiliate Checkmate**." *Id*. at ¶¶ 16-17, Ex. H (emphasis added).  Ten minutes later, Plaintiff wrote "**And messrs Bell, Keech and Tea will also be humiliated, destroyed and eviscerated on a personal level. I will have no mercy. NONE whatsoever. NONE**." *Id*. at ¶¶ 18-19, Ex. I (emphasis added).

The next afternoon, Plaintiff wrote under a subject line "**URGENT: last warning before actions on July 4, 2025**": "**If, by tomorrow, I do not see full and complete submission to my demands, I will consider this failure a statement of intent by your client and proceed accordingly**." *Id*. at ¶¶ 20-21, Ex. J (emphasis added).  He further claimed "**I do not care about holidays or weekends or for that matter hours, I work 24-7-365**." *Id*.

On July 4, 2025, Plaintiff sent another email addressed to both Checkmate and Checkmate's counsel with the subject line "Last Chance" stating "**Surrender now or expect complete annihilation**." *Id*. at ¶¶ 22-23, Ex. K (emphasis added).

**D.** **Plaintiff's Post-Dismissal Motion for Sanctions Filing in New York**

Following Plaintiff's ongoing series of threatening and harassing emails directed at Checkmate and its counsel, aimed at coercing Checkmate into abandoning its legitimate claims in this action and submitting to Plaintiff's demands, Plaintiff filed a motion for sanctions in the Southern District of New York. *See* Dkt. 58, New York Action ("New York Sanctions Motion"). He did so despite the New York court's express skepticism regarding any basis for such fees or sanctions. Dkt. 57, New York Action ("The Court is skeptical that there is a basis for fees or sanctions but will reserve judgment pending any such motion."). Thereafter, Checkmate opposed the motion and cross-moved for sanctions based on Plaintiff's ongoing harassing misconduct and baseless filings, including the very filing of his New York Sanctions Motion. Dkt. 59, New York Action. Plaintiff opposed Checkmate's cross-motion (Dkt. 66, New York Action ("Cross-Motion for Sanctions")), and Checkmate submitted a reply in support of its request (Dkt. 67, New York Action). Currently, both Plaintiff's New York Sanctions Motion and Checkmate's Cross-Motion for Sanctions remain pending.

**E.** **Plaintiff's Pursues His Second Motion For Sanctions Against Checkmate In The Central District**

Notwithstanding Checkmate's filing of its Cross-Motion for Sanctions in the New York Action detailing Plaintiff's repeatedly harassing communications and meritless filings, Plaintiff's misconduct persisted: issuing threats concerning Checkmate's entitlement to pursue lawful third-party discovery (Makitalo Decl. at ¶¶ 28-31, Exs. N-O), expressly vowing to drive up litigation costs by intentionally serving burdensome discovery (*id*. at ¶¶ 26-27, Ex. M) ("Continuing to deny indisputable facts—especially those recorded or admitted elsewhere—***will not only trigger avoidable motion practice but will compel me to serve broader, more burdensome RFPs. These will impose a far greater burden on Checkmate***")

(emphasis added)) and attempting for a second time to coerce Checkmate into abandoning its legitimate claims by threatening to file a second motion for sanctions before this Court. *Id*. at ¶¶ 32-33, Ex. P ("***If, by 5:00PM, Wednesday, November 12, 2025, Checkmate withdraws its counterclaims or amends to remove the allegations in Exhibit F, I will not file the motion***.") (emphasis added).  Following Checkmate's refusal to abandon its legitimate claims, Plaintiff's present Motion for Sanctions followed, largely reprising his prior baseless and improper New York Motion for Sanctions.

## III.   ARGUMENT

### A.   There Is No Basis For Rule 11 Sanctions

"Rule 11 requires the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Conn v. Borjorquez*, 967 F.2d 1418, 1420 (9th Cir. 1992) (citing *Operating Eng'rs Pension Tr. v. A-C Company*, 859 F.2d 1336, 1344 (9th Cir. 1988); *see also Cont'l Recs., LLC v. Royalty Fam., Inc*., No. CV 23-05797 PA (BFMx), 2023 WL 9319230, at *2 (C.D. Cal. Dec. 13, 2023) (citing *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990)) ("The central purpose of Rule 11 is to deter baseless filings.").  A motion is frivolous where "a filing [] is both baseless and made without a reasonable and competent inquiry." *Cont'l Recs., LLC*, 2023 WL 9319230, at *2 (citing *Townsend v. Holman Consulting Corp*., 929 F.2d 1358, 1362 (9th Cir. 1990)).

"The standard for determining the propriety of Rule 11 sanctions is one of objective reasonableness for determinations of frivolousness as well as of improper purpose." *Conn*, 967 F.2d at 1421 (citing *Woodrum v. Woodward County, Okla*., 866 F.2d 1121, 1127 (9th Cir.1989)).  "If, judged by an objective standard, a reasonable basis for the position exists in both law and in fact at the time the position is adopted, then sanctions should not be imposed." *Conn*, 967 F.2d at 1421 (citing *Golden Eagle Dist. Corp. v. Burroughs Corp*., 801 F.2d 1531, 1538 (9th Cir. 1986)).  "The pleader,

at a minimum, must have a good faith argument for his or her view of what the law is, or should be." *Cont'l Recs., LLC*, 2023 WL 9319230, at \*2.

A court may also "on its own" "order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)." Fed. R. Civ. P. 11(c)(3).   However, imposing sanctions under "Rule 11 is an extraordinary remedy, one to be exercised with extreme caution." *Conn*, 967 F.2d at 1421 (9th Cir. 1992) (internal quotation marks and citation omitted).   Accordingly, "[c]ourts have 'significant discretion' when determining whether to award sanctions." *Cont'l Recs., LLC*, 2023 WL 9319230, at \*2 (citing Fed. R. Civ. P. 11(b)).

### A.      Plaintiff Impermissibly Seeks To Use Sanctions As A Substitute For Litigating The Merits Of The Case

Plaintiff's Motion for Sanctions is entirely without merit under Rule 11. Plaintiff's claim that Checkmate's Counterclaims "implicate[] Rule 11(b)(3) as setting forth factual allegation without reasonable inquiry" is unfounded. Dkt. 121 at 12:9. Checkmate's Counterclaims, which ***remain pending***, were brought after a thorough investigation into Plaintiff's fraudulent misrepresentations to Checkmate. Specifically, contrary to Plaintiff's representations to Checkmate as part of the Merger Agreement and related transactional documents – that he and VoiceBite were the exclusive owners and authors of "proprietary" code owned by VoiceBite – Checkmate's post-close investigation revealed that Plaintiff had engaged in fraudulent conduct by, among other things, peddling a worthless asset that had come from and had already been sold to third parties.

Plaintiff's Motion for Sanctions improperly invites the Court to adjudicate the substantive merits of Checkmate's Counterclaims (Dkt. 71) under the guise of Rule 11 before those issues have been assessed on the merits and while Plaintiff is improperly attempting to block relevant discovery.  For example, Plaintiff's Motion for Sanctions asserts that Checkmate's "CCs fail to allege key fraud elements" (Dkt. 121 at 12:8) and improperly attempts to argue the invalidity of these Counterclaims.

Courts are clear, however, that "a rule 11 Motion should not be employed...to test the legal sufficiency or efficacy of allegations in the pleadings." *Cont'l Recs., LLC*, No., 2023 WL 9319230, at *3 (internal quotation marks and citation omitted); *see also Shoumin Zhang v. Am. Franchise Reg'l Ctr.*, LLC, No. CV 15-9583-R, 2016 WL 9180439, at *1 (C.D. Cal. May 6, 2016) ("If moving Defendants believe that Plaintiff has also failed to state a claim against them, the proper motion would be made under Rule 12(b), not Rule 11.").

In deciding Plaintiff's Motion for Sanctions, the Court would need to fully analyze the merits of Checkmate's Counterclaims to determine whether its claims are so outside the bounds of reason that the filing of its Counterclaims was frivolous and therefore sanctionable. But the parties ***dispute*** several legal and factual issues related to Plaintiff's representations as part of the Merger Agreement and related transactional documents. A Rule 11 motion is not a substitute for a trial, nor is it a substitute for a motion for summary judgment. It cannot be used as a substitute for adjudicating the merits of the action without the benefit of an evidentiary record. *See Cont'l Recs., LLC*, 2023 WL 9319230, at *3 ("The problem with Defendants' Motion for Sanctions is that it seeks the litigate the substantive validity of Plaintiff's claims before those issues have been assessed on the merits.); *Wilkins v. Heslop*, No. 2:20-cv-01622 DJC DB P, 2024 WL 1857211, at *1 (E.D. Cal. Apr. 29, 2024) ("[A] motion for sanctions is not the proper mechanism in which to litigate the merits of plaintiff's case."); *Cooter & Gell*, 496 U.S. at 396 ("[T]he imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate."); *Energy Monster v. Monster Energy Co.*, No. EDCV 20-2528 JGB (SPx), 2021 WL 3598862, at *7 (C.D. Cal. Apr. 23, 2021) (denying motion for sanctions that attempts to "dispose of [plaintiff's] claims").

The Court should reject Plaintiff's premature attempt to misuse the sanctions process to litigate the merits of this action and deny Plaintiff's Motion for Sanctions.

**B.**     **Plaintiff's Allegations Of Improper Use Of Settlement Communications Lack Merit**

Plaintiff's claim of improper use of communications during "[s]ettlement talks initiated during AV[] [on] Nov. 14, 202[4]"[1] (Dkt. 121 at 10:24) and subsequent communications, including notices from Checkmate's counsel, lack merit.  It is not true that slapping a "settlement communication" label on an email insulates it from scrutiny.  Quite the contrary: the law is that evidence of "settlement communications are not admissible "either to prove or disprove ***the validity or amount of a disputed claim*** or to impeach by a prior inconsistent statement or a contradiction." Fed.R.Evid. 408(a) (emphasis added).  "In order for the evidence of initial communications to be inadmissible under FRE 408, the communications must include reference to 'valuable consideration', and there must be a disputed 'claim' already existent.' *U.S. v. Mirama Enters., Inc.*, 185 F. Supp. 2d 1148, 1156 (S.D. Cal. 2002).  The Court "may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed.R.Evid. 408(a).  Thus, "[t]here is no bar when the underlying claim is not in dispute, does not protect other evidence disclosed during settlement communications, or does not exclude evidence when offered for a purpose other than proving the validity or amount of a disputed claim." *In re Carson*, 510 B.R. 627, 636 (Bankr. E.D. Cal. 2014) (citation omitted).

To begin, Plaintiff's November 14, 2024 meeting with Checkmate was to discuss the end of Plaintiff's employment with Checkmate, not a settlement communication.  Plaintiff's own motion confirms as much: "Strategy Chief Bell: "if you want to negotiate a settlement with us, then reach out directly." *Id*. at 10:25.

---

[1] Plaintiff incorrectly identifies the date of the meeting between Plaintiff and Checkmate as November 14, 2024.

Further, Plaintiff's communications with Checkmate following the end of his employment with Checkmate, including notices to Plaintiff and the shareholders' counsel, occurred before any disputed claim existed and no valuable consideration was involved. Moreover, Plaintiff's reference to Checkmate's Amended Complaint (Dkt. 71), quoting Plaintiff's "***no matter what***" threatening email to Checkmate, is not only ***not*** a settlement communication for purposes of Rule 408, but as with the other "settlement communications" claimed to be excluded, as set forth in Plaintiff's Motion for Sanctions, it is not presented as evidence by Checkmate to prove or disprove the validity of the parties' claims – it is referenced by Checkmate in its Counterclaims to illustrate Plaintiff's fraudulent scheme that led to Checkmate's claims against Plaintiff.

## C.    28 U.S.C. § 1927 And Inherent-Authority Sanctions Are Unjustified

Plaintiff's attempt to recycle his claim for sanctions under 1927 and the inherent authority of the Court is equally misguided. Federal Rule of Civil Procedure 11(c)(3) allows courts to initiate sanctions pursuant to their own inherent authority by issuing an order to show cause why specific conduct has not violated Rule 11(b). *See* Fed. R. Civ. P. 11(c)(3) ("On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b)."). Further, "[u]nder Section 1927, a court may award a party any 'excess costs, expenses, and attorneys' fees reasonably incurred because of' an attorneys unreasonable and vexatious behavior that '*multiplies the proceedings in any case.*'" *Perrin Bernard Supowitz, LLC v. Morales,* No. 2:22-cv-02120-MEMF-SK, 2024 WL 457142, at *6 (C.D. Cal. Feb. 6, 2024) (quoting 28 U.S.C. § 1927) (emphasis in original). "To impose sanctions under section 1927, a court must find that, at a minimum, the conduct at issue was reckless; however, 'sanctions imposed under [a] district court's inherent authority require a bad faith finding.'" *Perrin*

*Bernard Supowitz*, 2024 WL 457142, at *5 (quoting *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010)).

Plaintiff's Motion for Sanctions fails to demonstrate that Checkmate or its counsel acted recklessly or in bad faith in filing Checkmate's Counterclaims. As detailed above, Checkmate conducted a thorough investigation into Plaintiff's fraudulent misrepresentations, including his false claims of exclusive authorship and ownership of the VoiceBite code, before filing its Counterclaims. *See* Dkt. 71. Plaintiff has failed to set forth any evidence to suggest that the proceedings have been "unreasonably and vexatiously" multiplied as a result, as required by Section 1927.

The truth is that Checkmate pursued litigation in the Southern District of New York based on a good faith belief that the forum selection clauses contained in the Merger Agreement and Non-Compete Agreement required Checkmate's claims to be brought in a New York forum. After the Court denied Checkmate's Motion to Dismiss (Dkt. 67), Checkmate voluntarily dismissed its claims in the New York Action to proceed by way of counterclaim in California. Dkt. 53, New York Action. Thereafter, Checkmate filed its Counterclaims (Dkt. 71) in this action, asserting the same causes of action it voluntarily dismissed in New York, which Plaintiff expressly acknowledges. *See* Dkt. 121 at 17:15-16 ("This is how its New York complaint was made. The very same allegations are now before this forum."); *Id.* at 17:25-28 ("No changes have been made to the claims manufactured by the conduct described herein—initially filed in New York state court, later advocated in SDNY, only to be dismissed and now brought here."). Checkmate voluntarily dismissed its claims in New York (Dkt. 53, New York Action) to avoid litigating in multiple fora and to proceed efficiently in California. Accordingly, there is no basis to infer bad faith or vexatious conduct by Checkmate or its counsel.

Furthermore, Plaintiff's claim that Checkmate's "notices" (Dkt. 121 at 6:11-12, 6:12-7:7, 11:2-19) serve as grounds for sanctions lack any legitimate basis. Upon discovering multiple material misrepresentations by Plaintiff regarding the

-12-

originality and ownership of the VoiceBite intellectual property – specifically, his claim that he and VoiceBite were the exclusive owners and authors of valuable code – Checkmate issued these notices to Plaintiff and the remaining shareholders in good faith, as part of its post-close investigation.  Checkmate's "notices" are not "pleadings, written motions, or other papers" as required by Rule 11, nor do they provide a basis for the Court to issue sanctions under Section 1927. *See Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002) ("Rule 11 sanctions are limited to 'paper[s]' signed in violation of the rule. Conduct in depositions, discovery meetings of counsel, oral representations at hearings, and behavior in prior proceedings do not fall within the ambit of Rule 11.").

Moreover, Plaintiff's claim that Checkmate's January 22, 2025 pre-suit notice sent to Plaintiff (Dkt. 121 at 7:25-8:9, 11:8-13; Dkt. 121-6) constitutes criminal extortion and warrants post-filing sanctions is baseless.  Far from the outrageous campaign in which Plaintiff's own writings show that he is engaged, Checkmate has never made an "overt threat to report [Plaintiff] to prosecuting agencies" absent payment, let alone made demands so extreme and unconnected with the underlying dispute such as to constitute extortion.  *See Malin v. Singer*, 217 Cal. App. 4th 1283, 1299 (2013) (threat to file complaint alleging criminal embezzlement and theft absent settlement does not constitute extortion under California law).  There is simply no basis for Plaintiff's argument that Checkmate's truthful, pre-suit reference to investigating the prospect of criminal liability is wrong – let alone sanctionable – and it certainly does not equate to extortion.  Rather, Checkmate's January 22, 2025 notice was a good-faith communication sent after Checkmate's post-close investigation revealed Plaintiff's fraudulent misrepresentations in the Merger Agreement and related transactional documents – a communication protected by litigation privilege. *See* Cal. Civ. Code § 47(b); *see also Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1161 (C.D. Cal. 2010).

Plaintiff has failed to meet his burden to show that Checkmate or its counsel acted recklessly or in bad faith sufficient to justify sanctions under either Section 1927 or the Court's inherent authority.

**IV. Sanctions and Fees Should Be Awarded Against Vasan for His Vexatious Conduct**

Plaintiff's ongoing barrage of threatening emails and baseless motion practice – culminating in his latest Motion for Sanctions – is part of a deliberate campaign to harass Checkmate and its counsel, to unreasonably multiply proceedings, and to coerce abandonment of Checkmate's legitimate claims. The record reflects a sustained pattern of intimidation and improper harassment tactics that squarely warrant this Court's authority to impose sanctions. *Aetna Life Ins. Co. v. Alla Med. Servs., Inc*., 855 F.2d 1470, 1476 (9th Cir. 1988) (quoting Fed.R.Civ.P. 11.) ("By its terms Rule 11 requires courts to impose sanctions on a person who signs a paper that is 'interposed for any *improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation*.'").

Plaintiff has repeatedly sent harassing emails laced with improper threats directed at Checkmate and its counsel throughout this action. Makitalo Decl., ¶¶ 2–31, Exs. A–O. These communications are not legitimate advocacy – they are calculated to inflict burden and are explicitly designed to pressure Checkmate into "surrendering" its legitimate claims. *See Id*. ¶¶ 8-9, Ex. D (June 26, 2025 email addressed to Checkmate's counsel with the subject line "unconditional surrender - I strongly recommend it while I retain the capacity for mercy."); *Id*. ¶¶ 22-23, Ex. K (July 4, 2025, email addressed to both Checkmate and Checkmate's counsel with the subject line "Last Chance" stating "Surrender now or expect complete annihilation."). The tone, frequency, and content of these communications make plain that Plaintiff's objective is not to advance the merits, but to chill Checkmate's rights to pursue its valid Counterclaims through intimidation and needless expense. *See* Makitalo Decl., ¶¶ 2–31, Exs. A–O.

This pattern not only includes Plaintiff's harassing communications, it extends to his vexatious motion and discovery practice. *See Terrebonne, Ltd. of California v. Murray*, 1 F. Supp. 2d 1050, 1055 (E.D. Cal. 1998) ("[T]he term 'vexatious' has been defined as 'lacking justification and intended to harass.' ") (citation omitted). Plaintiff has flooded the docket with filings which are devoid of ***any*** factual or legal basis – including his current Motion for Sanctions reprising the same meritless and factually devoid arguments currently pending before the New York court – and aimed at maximizing burden rather than adjudicating any bona fide dispute and should be sanctioned.[2]  *See Cooter & Gell*, 496 U.S. at 393, ("[T]he central purpose of Rule 11

[2] *See, for example,* Dkts. 34-36 (Plaintiff's *Ex parte* Application for Relief from Protective Order, which was withdrawn after Checkmate pointed out in opposition that Plaintiff failed to properly meet-and-confer); Dkts. 76-77 (Plaintiff's *Ex parte* Application for an Order to Show Cause, which was withdrawn after Plaintiff admitted to misreading the Court's Scheduling Order); Dkts. 75, 81 (Plaintiff's Motions to Dismiss Counterclaims, which are legally baseless for the reasons shown in Checkmate's Opposition at Dkt. 94); Dkt. 79 (Plaintiff's Motion to Strike Affirmative Defenses, which is legally baseless for the reasons shown in Checkmate's Opposition at Dkt. 95); Dkts. 80, 85 (Plaintiff's *Ex parte* Application for Relief from Improper and Overbroad Subpoenas, which was denied by Magistrate Judge Jean P. Rosenbluth); Dkts. 97, 98, 98-1, 100 (Plaintiff's Reply in Support of his Motion to Dismiss Counterclaims and Plaintiff's "Notice of Errata," which improperly introduce new arguments and purported evidence previously omitted from his original Motion as described in Checkmate's Objection at Dkt. 99); Dkts. 104, 111 (Plaintiff's Oppositions to Checkmate's Motion to compel Compliance with subpoena to Vasan Varadarajan, which are legally baseless for the reasons shown in Checkmate's Reply at Dkt. 116); and Dkt. 113 (Plaintiff's omnibus "Discovery Motion," which is legally baseless for the reasons shown in Checkmate's Opposition at Dkt. 124).

Plaintiff has also repeatedly misrepresented the holdings of cases and outright invented citations in his briefing.  *See, for example*, Dkt. 94 at 4:13 n.3 (identifying non-existent cases relief upon in Plaintiff's briefing), Dkt. 32 at 4:16-23 (same), Dkt. 116 at 10:16-18 n.2 (identifying seemingly-hallucinated quotations in Plaintiff and Vasan Varadarajan's Oppositions to Checkmate's Motion to Compel Compliance with Subpoena), and Dkt. 127 at 6:24-28, 7:19-25, 10:20-22 (misquoting or inventing language that does not appear in the cited opinion).  Moreover, Plaintiff has repeatedly attempted to evade the Local Rules' word limit.  *See, for example*, Dkt. 94 at 3:26-4:9 (identifying that Plaintiff's Motion to Dismiss Counterclaims (Dkt. 81) had a word count of 12,000 words, almost double the word limit imposed by the Local Rules); *see also* Dkt. 99 at 1:21-26 (noting that Plaintiff filed a purported "errata" and attached exhibit (Dkts. 98 and 98-1) in an effort to smuggle improper new arguments into a Reply brief (Dkt. 97)); Dkt. 124 at 9:20-23 n.2 (noting that Plaintiff filed 41 pages of additional argument in the form of a purported "Exhibit" in support of his Discovery Motion (Dkt. 113 and 113-2)).

is to deter baseless filings."); *see also Havensight Cap. LLC v. Nike, Inc.*, 891 F.3d 1167, 1174 (9th Cir. 2018) ("District courts can use Rule 11 to impose sanctions on any party that files a motion for an improper purpose or who does so without a legal or factual basis.") (citing *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1102 (9th Cir. 2016)).

Despite Checkmate's opposition to Plaintiff's first New York Sanctions Motion and Cross-Motion for Sanctions (Dkt. 59, New York Action), premised on Plaintiff's harassing communications and frivolous filings, Plaintiff's misconduct continued unabated: issuing threats concerning Checkmate's entitlement to pursue lawful third-party discovery (Makitalo Decl. at ¶¶ 28-31, Exs. N-O), expressly vowing to drive up litigation costs by intentionally serving burdensome discovery (*id*. at ¶¶ 26-27, Ex. M ("Continuing to deny indisputable facts—especially those recorded or admitted elsewhere—***will not only trigger avoidable motion practice but will compel me to serve broader, more burdensome RFPs***. ***These will impose a far greater burden on Checkmate***") (emphasis added)) and attempting for a second time to coerce Checkmate into abandoning its legitimate claims by threatening to file a second motion for sanctions before this Court. *Id*. at ¶¶ 30-31, Ex. O ("If, by 5:00PM, Wednesday, November 12, 2025, Checkmate withdraws its counterclaims or amends to remove the allegations in Exhibit F, I will not file the motion.").

Plaintiff's misconduct is a clear, sanctionable abuse of the legal process. This Court is empowered to and should exercise its authority pursuant to Rule 11 to impose sanctions sufficient to halt this harassment campaign and award Checkmate its reasonable attorneys' fees and expenses incurred in responding to ***Plaintiff's second improper Motion for Sanctions***, in an amount and form the Court deems adequate to deter further misconduct. *See Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir.1994) ("Rule 11's express goal is deterrence."); *see also* Fed. R. Civ. P. 11(c)(4) ("A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated.

The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."); *Blixseth v. Yellowstone Mountain Club, LLC*, 854 F.3d 626, 630 n.4 (9th Cir. 2017) (noting that a court may award attorneys' fees and costs "associated with sanctions proceedings" under Rule 11); *Havensight Cap. LLC*, 891 F.3d at 1174  (affirming award of sanctions where "[plaintiff] filed numerous and voluminous motions despite specific warnings to desist filing these needless pleadings.").  The record here reflects a clear pattern of misconduct that has burdened Checkmate and this Court, necessitating the imposition of sanctions by this Court to deter future abuses by Plaintiff.

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Sanctions should be denied in its entirety, Checkmate's Cross-Motion for Sanctions should be granted, and attorneys' fees should be awarded to Checkmate for opposing Plaintiff's Motion for Sanctions.

Date: December 1, 2025               Respectfully Submitted,

K&L GATES LLP

_____

Ryan Q. Keech (SBN 280306)
Stacey Chiu (SBN 321345)
Rebecca I. Makitalo (SBN 330258)
Jacob R. Winningham (SBN 357987)
10100 Santa Monica Boulevard, 8th Floor
Los Angeles, California 90067
Telephone: 310.552.5000
Facsimile: 310.552.5001

*Attorneys for Defendant and Counter-Claimant CHECKMATE.COM INC.*

-17-

1

## CERTIFICATE OF WORD COUNT

2          The undersigned, counsel of record for Checkmate certifies that this brief

3    contains 5,573 words, which complies with the word limit of L.R. 11-6.1.

4

5    Date: December 1, 2025                    Respectfully submitted,

6                                             K&L GATES LLP

7

8

9                                             _____

10                                            Ryan Q. Keech (SBN 280306)
                                              Stacey Chiu (SBN 321345)
11                                            Rebecca I. Makitalo (SBN 330258)
12                                            Jacob R. Winningham (SBN 357987)
                                              10100 Santa Monica Boulevard, 8th Floor
13                                            Los Angeles, California 90067
14                                            Telephone: 310.552.5000
                                              Facsimile: 310.552.5001
15

16                                            *Attorneys for Defendant and Counter-*
                                              *Claimant CHECKMATE.COM INC.*
17

18

19

20

21

22

23

24

25

26

27

28