UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>                  Plaintiff,<br><br>      v.<br><br><br>CHECKMATE.COM, INC.<br><br>                 Defendant. | Case No.: 2:25-cv-00765-MEMF-AS<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS (DKT. NO. 121) AND DEFENDANT'S CROSS MOTION FOR SANCTIONS (DKT. NO. 130)** |
| CHECKMATE.COM, INC,<br><br>         Counterclaim-Plaintiff,<br><br>      v.<br><br>ARJUN VASAN,<br><br>         Counterclaim- Defendant. | |

Before the Court are Plaintiff's Motion for Sanctions (Dkt. No. 121) and Defendant's Cross Motion for Sanctions (Dkt. No. 130). For the reasons discussed below, the Court DENIES Plaintiff's Motion for Sanctions and DENIES Defendant's Cross Motion for Sanctions.

/ / /

/ / /

/ / /

1

## I.    Factual and Procedural History

### A.  Factual Background[1]

#### i.  Vasan's Allegations

Plaintiff Arjun Vasan co-founded VoiceBite Corporation ("VoiceBite") with Chris Lam and Robert Nessler in July of 2023. Compl. ¶¶ 2, 14. In April of 2024, VoiceBite merged with Defendant Checkmate.com, Inc. ("Checkmate"). *Id.* Post-merger, Vasan proceeded to be employed by Checkmate under the terms of an offer letter dated April 30, 2024, between the parties. *Id.* ¶ 20; Dkt. No. 18-4 ("Agarwal Decl."), Ex. D (the "Offer Letter"). The parties also entered into an agreement governing Vasan's bonus structure. Compl. ¶ 21; Agarwal Decl., Ex. C (the "Bonus Agreement"). Checkmate detailed a payment schedule for two months of back pay for VoiceBite employees' work during negotiations, to be paid after closing. Compl. ¶ 22. Despite Vasan's objections to reporting to Chief of Strategy Michael Bell, Checkmate's CEO Vishal Agarwal assigned Vasan to report directly to Bell. *Id.* ¶ 23

During his employment with Checkmate, Vasan encountered hostility in response to legal or contractual concerns he raised. *Id.* ¶ 24. Agarwal denied that Vasan's retention bonus had been triggered, and pressured Vasan to sign a "partial bonus acceleration" document stipulating to a specific payment schedule (which was not followed). *Id.* ¶ 31. On September 24, 2024, Lam went on a planned month-long leave, as Agarwal informed the team of a "make or break" customer demo scheduled for October 23, 2024. *Id.* ¶ 36. Vasan's workload doubled due to this, while the work he did was persistently undermined by Agarwal and Bell. *Id.* ¶ 37. On October 22, 2024, Vasan suffered a panic attack during a team meeting. *Id.* ¶ 39. Checkmate gave Vasan the ultimatum of either accepting a demotion or being terminated. *Id.* Vasan requested medical leave, and soon provided medical certification to Checkmate. *Id.* ¶¶ 39-40. Checkmate referred to Vasan's leave as

---

[1] All facts stated herein are taken from the allegations in Plaintiff's Updated Complaint, Dkt. No. 10 ("Compl."), and Defendant's Countercomplaint, Dkt. No. 71 ("Counter Compl."). At this stage of the litigation, the Court makes no finding on the truth of these factual allegations, and is therefore not—at this stage—finding that they are true.

"unpaid personal leave" and did not provide him notice of his rights under applicable law. *Id.* ¶¶ 42, 44, 45. On November 14, 2024, Checkmate terminated Vasan. *Id.* ¶ 48.

ii.   Checkmate's Allegations

Checkmate sought to acquire VoiceBite, a customer service-based company which leverages AI to automate the voice ordering process for restaurants. Counter Comp. ¶ 14. VoiceBite was co-founded by Vasan. *Id.* Vasan has previous experience in the voice AI space, because he had founded an earlier startup company called CyborgOPS, which was previously acquired in 2022 by Presto Automation. *Id.* Checkmate acquired VoiceBite, along with its intellectual property, in early 2024 by way of the Merger Agreement and related transactional documents. *Id.* ¶ 15.

Checkmate alleges that Vasan "represented himself – and thus VoiceBite – as the owner of proprietary code for VoiceBite's voice ordering AI application," and that Vasan falsely represented the ownership and authorship of VoiceBite's intellectual property. *See id.* ¶¶ 16-19. These representations were fundamental in Checkmate's decision to proceed with the acquisition of VoiceBite. *Id.* ¶ 19. After the merger, Vasan delayed in giving Checkmate access to the VoiceBite code. *Id.* ¶¶ 20-21. Vasan's communications also became increasingly erratic and unprofessional. *See id.* ¶ 22. Vasan began looking for work at another company around November 8, 2024. *Id.* ¶ 23.

Checkmate's investigation of the VoiceBite code showed that the code dated back to as early as 2018, even though VoiceBite was not formed until on or around August 2023, and it referenced "Cyborg," which was Vasan's previously founded company, CyborgOPS. *See id.* ¶¶ 24-26. Checkmate's investigation uncovered references to an additional third-party author, "Vasan Varadarajan," who was a former "Founder & President" of CyborgOPS. *Id.* ¶ 27. Varadarajan's role was not disclosed in the Transaction, nor was his authorship acknowledged in the representations and warranties made by Vasan. *Id.* ¶ 28. But, on or around January 23, 2025, Vasan admitted in writing that Varadarajan had developed the property that Vasan claimed to own. *Id.*

On December 6, 2024, Checkmate, through counsel, sent a letter to Vasan explaining the discrepancies in the code and how Vasan had misled Checkmate into acquiring VoiceBite under fraudulent representations. *Id.* ¶ 30. In January 2025, Vasan told Checkmate that it did not matter whether or not he made misrepresentations. *Id.* ¶ 32. And in February 2025, Vassan claimed the code

was not intellectual property, and that he did not disclose the representations concerning VoiceBite's AI technology due to fears of a hostile reaction. *See id.* ¶¶ 33, 35.

### B.  Procedural Background

On February 21, 2025, Vasan filed an amended complaint, alleging ten claims against Checkmate: (1) violation of the Family & Medical Leave Act ("FMLA"); (2) violation of the California Family Rights Act ("CFRA"); (3) retaliation; (4) wrongful termination; (5) constructive discharge; (6) wage theft; (7) breach of contract; (8) unjust enrichment; (9) promissory fraud and estoppel; and (10) civil conspiracy. *See generally* Compl.

On June 24, 2025, the Court denied Checkmate's Motion to Dismiss because venue was proper, the forum selection clauses were not valid under California Labor Code Section 925, and there were no other persuasive reasons to transfer the case. *See* Dkt. No. 67.

On July 9, 2025, Checkmate filed a countercomplaint, alleging six claims against Vasan: (1) breach of contract – intellectual property acknowledgement and assignment of IP and other assets; (2) breach of contract – noncompete agreement; (3) breach of the implied covenant of good faith and fair dealing; (4) fraud; (5) negligent misrepresentation; and (6) declaratory relief. *See generally* Counter Compl.

On November 17, 2025, Vasan filed a Motion for Sanctions under Federal Rule of Civil Procedure 11, 28 U.S.C. § 1927, and the Court's inherent powers. *See* Dkt. No. 121 ("Motion"). Vasan also filed exhibits in support of his Motion. *See* Dkt. Nos. 121-1 to 121-10. On December 1, 2025, Checkmate filed an Opposition to Vasan's Motion and a Cross Motion for Sanctions. Dkt. No. 130 ("Opposition"). Checkmate also filed exhibits in support of its Opposition. *See* Dkt. Nos. 130-1 to 130-17. On December 8, 2025, Vasan filed a Reply to the Opposition. Dkt. No. 133 ("Reply"). The Court held a hearing on the Motion and Cross-Motion on January 8, 2026.[2]

---

[2] The Court finds that Checkmate failed to comply with the meet and confer requirement under Local Rule 7-3 and the Court's Civil Standing Order prior to the filing of this Motion. *See* Motion at ii; Reply at 4; *see also* Appendix A, Dkt. No. 121-1 (Vasan's notice of service of Rule 11 motion). For the sake of judicial economy, the Court will address the Motion, but the Court ORDERS Checkmate to show cause in writing, no later than seven (7) days from the date of this order, why sanctions should not issue. The response shall explain

## II.    Applicable Law

Federal courts may impose various sanctions against parties under either their inherent power or various federal rules and statutes. *See Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1088 (9th Cir. 2021) (stating that federal courts have the inherent power to sanction conduct that abuses the judicial process); *Lahiri v. Universal Music & Video Distrib. Corp.*, 606 F.3d 1216, 1219 (9th Cir. 2010) (discussing a court's power to sanction parties under 28 U.S.C. § 1927). Sanctions may be appropriate where a court finds bad faith, and a court may award sanctions at its discretion. *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 961 (9th Cir. 2006). Under 28 U.S.C. § 1927, a court may sanction "[a]ny attorney . . . who so multiplies the proceedings in case unreasonably and vexatiously" by requiring said attorney to pay the costs incurred by the opposing party due to the attorney's conduct. 28 U.S.C. § 1927.

Rule 11 of the Federal Rules of Civil Procedure also allows for sanctions against a party. Rule 11(a) requires each application and other paper filed to be signed by an attorney, and Rule 11(b) establishes that the signature of an attorney on an application is that attorney's certification that:

(1) [the filing] is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. Proc. 11(b). "Rule 11 [thus] requires the imposition of sanctions when a motion is frivolous, legally unreasonable, or without factual foundation, or is brought for an improper purpose." *Conn v. Borjorquez*, 967 F.2d 1418, 1420 (9th Cir. 1992) (citing *Operating Engineers*

counsel's failure to meaningfully meet and confer, especially in light of Checkmate having received notice of the motion twenty-one days before it was filed. Failure to timely and adequately respond to this Order may result in the imposition of monetary sanctions.

*Pension Trust v. A–C Company*, 859 F.2d 1336, 1344 (9th Cir. 1988)). "[T]he central purpose of Rule 11 is to deter baseless filings." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

A party moving for sanctions under Rule 11 must first serve the motion at least twenty-one days before filing it with the Court. Fed. R. Civ. Proc. 11(c)(2). Local Rule 11-9 subjects a party who presents a frivolous motion to potential sanctions as provided for by Local Rule 83-7. L.R. 11-9.

To impose sanctions under Section 1927, a court must find that, at a minimum, the conduct at issue was reckless; however, "sanctions imposed under [a] district court's inherent authority require a bad faith finding." *Lahiri*, 606 F.3d at 1219. "[B]ad faith . . . includes a broad range of willful improper conduct." *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001). For the purposes of imposing sanctions, "a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees." *Id.* (quoting *Lipsig v. Nat'l Student Mktg. Corp.*, 663 F.2d 178, 182 (D.C. Cir. 1980) (internal quotations omitted)).

Sanctions are reserved "for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Operating Engineers Pension Tr.*, 859 F.2d at 1344.

### III.    Discussion

Vasan moves for sanctions under Rule 11, 28 U.S.C. § 1927, and the Court's inherent authority. *See generally* Motion. Checkmate also cross moves for sanctions under Rule 11, Section 1927, and the Court's inherent authority. *See* Opposition at 14-17. For the reasons discussed below, the Court DENIES Vasan's Motion for Sanctions but GRANTS IN PART's Checkmate's Cross Motion for Sanctions.

### A.  Sanctions Against Checkmate Are Not Warranted Under Rule 11.

Vasan contends that sanctions are warranted against Checkmate because: (1) Checkmate sent Vasan notices of claim ("notices") to extort Vasan and is thus using a filing "for an improper purpose" under Rule 11(b)(1); (2) Checkmate misrepresented several statements in its notices and

countercomplaint and thus lacks evidentiary support under Rule 11(b)(3); and (3) Checkmate improperly used settlement negotiations to prove its merits claims, which is not "warranted by existing law," in violation of Rule 11(b)(2). *See* Motion at 6-15; Reply at 4-14. The Court will address each argument below.

### i.    Checkmate did not violate Rule 11(b)(1).

First, the Court does not find that Checkmate criminally extorted Vasan with its notices in violation of Rule 11(b)(1). As a preliminary matter, Checkmate's notices in December 2024 and January 2025, *see* Motion at 6-7, do not fall under Rule 11, because "Rule 11 sanctions are limited to 'paper[s]' signed in violation of the rule." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1131 (9th Cir. 2002). Checkmate's complaint was filed on February 14, 2025, so the notices were not papers signed under Rule 11. Next, the notices "did not expressly threaten to disclose [Vasan's] alleged wrongdoings to a prosecuting agency or the public at large," so there was no criminal extortion. *See Malin v. Singer*, 159 Cal. Rptr. 3d 292, 303-04 (Cal. Ct. App. 2013) (finding that a demand letter accusing the defendant of wrongdoing that was "inextricably tied to [the plaintiff's] pending complaint" was not extortion); *see also* Reply at 12-13. Here, Checkmate simply alleged wrongdoing to a pending complaint, where Checkmate stated that "Vasan was either knowingly lying or was recklessly untruthful in a way that suggests not only breaches of the relevant agreements, but serious civil or even criminal misconduct," and that Checkmate was "intend[ing] to fully explore and potentially litigate claims of fraud, including both civil and criminal liability, and any other relevant claims arising from [Vasan's] egregious conduct." *See* Exs. D-2, D-4, Dkt. No. 121-6. Therefore, the Court finds that Checkmate did not send the notices for an "improper purpose" to criminally extort Vasan in violation of Rule 11(b)(1). *See* Opposition at 13.[3]

### ii.    Checkmate did not violate Rule 11(b)(3).

Second, the Court does not find that Checkmate violated Rule 11(b)(3). Vasan argues that Checkmate "fail[s] to allege key fraud elements" because its countercomplaint contains claims

---

[3] The Court need not address the litigation privilege argument, *see* Opposition at 11 (citing *Monex Deposit Co. v. Gilliam*, 680 F. Supp. 2d 1148, 1161 (C.D. Cal. 2010)), or the wage extortion argument, *see* Reply at 14-15, because the Court found that the notices were not criminal threats.

without factual support. *See* Motion at 12-15 (citing Dkt. No. 71 ¶¶ 1, 5, 29-35, 60). And Vasan argues the merits of each counterclaim by rebutting each allegation. *See id.* But a Rule 11 motion "should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." *See* Fed. R. Civ. P. 11, Advisory Committee notes to 1993 Amendments. "The imposition of a Rule 11 sanction is not a judgment on the merits of an action. Rather, it requires the determination of a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Cooter*, 496 U.S. at 396. "The key question in assessing frivolousness [under Rule 11] is whether a complaint states an *arguable* claim—not whether the pleader is *correct* in his perception of the law. Therefore, courts do not examine the complaint in the same manner as a court considering a Rule 12(b)(6) motion, because ultimate failure on the merits is irrelevant." *Hudson v. Moore Bus. Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987) (internal quotation marks omitted) (emphasis added).

It appears to the Court that rather than actually showing that Checkmate's counterclaims lack evidentiary support—which would be required to prevail on his Rule 11 Motion—Vasan has simply argued that the counterclaims are insufficiently pleaded. These arguments are properly the subject of Vasan's 12(b)(6) Motion, *see* Dkt. No. 81, and will be addressed in due time.

Moreover, Vasan attempts to argue how Paragraphs 33 and 34 of Checkmate's countercomplaint lack evidentiary support, because its allegation that Vasan "claimed that the software, the code . . . was not, in fact, intellectual property," was not attributable to him. *See* Motion at 13-14; *see also* Counter Compl. ¶¶ 33-34. But Vasan was a VoiceBite Shareholder and signed off on the letter in which the statement in Paragraph 33 was derived from, *see* Ex. B-1, Dkt. No. 121-4, and the letter was issued "on behalf of VoiceBite Shareholders," *see* Ex. B-3 Dkt. No. 121-4. Thus, the Court finds that the letter can be properly attributed to Vasan. And the letter states that the "code at issue . . . is not capable of being 'intellectual property' within the meaning of the VoiceBite merger agreement," *see* Ex. B-3, so the letter is proper evidentiary support for Paragraphs 33 and 34 of the Counter Complaint. Accordingly, there is no Rule 11(b)(3) violation as to Paragraphs 33 and 34.

Vasan also alleges that Checkmate's countercomplaint, *see* Dkt. No. 71 at 37-59, sets forth factual allegations without a reasonable inquiry into its evidentiary support. *See* Motion at 12. However, in Checkmate's counterclaim, Checkmate alleged that it engaged in an investigation, which uncovered support for its factual allegations, but Vasan does not provide any evidence to rebut Checkmate's investigation or show how there is no "reasonable opportunity for further investigation or discovery" to prove that Checkmate "likely has evidentiary support." *See* Opposition at 8; Motion at 12-15; Reply at 18; *see also* Dkt. No. 71 ¶¶ 25, 27; Fed. R. Civ. P. 11(b)(3). Rule 11(b)(3) is a low bar, and Vasan has not met its burden to show why sanctions are warranted under 11(b)(3).[4]

Vasan contends that Rule 11 may require courts "to consider issues of law and fact" related to the merits. *See* Reply at 4-5 (citing *Cooter*, 496 U.S. at 396-97). But *Cooter* does not say that, and as discussed above, addressing the merits in a Rule 11 motion is "irrelevant." *See Cooter*, 496 U.S. at 396-97; *Hudson*, 836 F.2d at 1159. Vasan then contends that his arguments into the "claims" and "defenses" and "factual contentions" are allowed under Rule 11. *See* Reply at 5 (citing *Hudson*, 836 F.2d at 1159-63). Again, as discussed above, Vasan is arguing the merits of the claims, which is not allowed. And the Ninth Circuit in *Hudson* upheld a frivolous damages amount due to the "absence of any reasonable support," *see* 836 F.2d at 1162, but unlike *Hudson*, Vasan does not show how there was no "reasonable support" for any of Checkmate's counterclaims.[5]

---

[4] Any references to misrepresentations in Checkmate's notices or pre-litigation communications, *see* Motion at 8-10, is not enough to support Rule 11 sanctions because they are not in a signed paper. *See Christian*, 286 F.3d at 1131. Also, Checkmate has not misrepresented its "theory of damages," *see* Motion at 9-10; Reply at 6-7, because Checkmate does not expressly claim to seek millions of dollars of damages, but in fact only seeks to "recover compensatory, consequential, incidental damages, and lost profits in an amount to be proved at trial in excess of the jurisdictional minimum of this Court," *see* Prayer for Relief at 58, Dkt. No. 71.

[5] Vasan's citation to the Nessler Declaration to show how there was no factual support for the counterclaims, *see* Motion at 12-13, is inapposite because the Nessler Declaration was taken after the New York Complaint and countercomplaint was filed. *See* Nessler Decl., Dkt. No. 97-6; Dkt. No. 71; *see also* Reply at 6; Opposition at 2-3.

And whether Vasan's misrepresentations were false goes to the merits of Checkmate's fraud claim. *See* Motion at 13-14. Vasan has not shown any evidence for how the statements in Paragraphs 33-34 were knowingly false before they were filed in the Southern District of New York. Vasan cites evidence regarding

In sum, there was no violation of Rule 11(b)(3) to warrant sanctions against Checkmate.

### iii.  Checkmate did not violate Rule 11(b)(2).

Third, the Court does not find that Checkmate violated Rule 11(b)(2) by improperly using settlement negotiations under Federal Rule of Evidence Rule 408(b). Rule 408 only bars the use of "conduct or a statement made during compromise negotiations about the claim" to "prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction." *See* Fed. R. Evid. 408. To begin, Vasan only cites to the alleged settlement negotiations being used in Checkmate's notices in December 2024 and January 2025, *see* Motion at 11; Reply at 11, but as discussed above, these notices are not proper filings for a Rule 11 sanction. And Vasan does not show any specific settlement communication used in any filing to "prove or disprove the validity or amount of a disputed claim," because the November 14, 2024 meeting was not to negotiate a settlement, nothing in the November 20, 2024 email was used in a filing against Vasan, and the January 25, 2025 email response to the Notice of Claim does not make clear that the email was part of a settlement negotiation. *See* Motion at 10-13; Opposition at 10-11; Reply at 8-11; *see also* Exs. D-1, D-3, D-5, Dkt. No. 121-6; Ex. K, Dkt. No. 121-10.[6] Accordingly, Vasan cannot show Checkmate violated Rule 11(b)(2) by improperly using settlement negotiations in its filings.

### B.  Sanctions Against Checkmate Are Not Warranted Under Any Other Grounds.

Vasan also moves for sanctions against Checkmate under 28 U.S.C. Section 1927 and the Court's inherent power. *See* Motion at 1, 3, 6. 17. The Court finds that sanctions are not warranted under Section 1927 or the Court's inherent power. First, Vasan has not alleged how Checkmate has

---

statements made by the lawyer for the VoiceBite Corporation on behalf of the VoiceBite Shareholders, but this does not go to whether Vasan *himself* claimed that the software "was not, in fact, intellectual property." *See* Dkt. No. 71 ¶¶ 33-34; Checkmate.com, Inc. v. Vasan, 1:25-cv-03181-JMF, Dkt. No. 59 at 6 (S.D.N.Y Aug. 8, 2025); Ex. B-3, Dkt. No. 121-4. Therefore, Vasan's arguments as to a Rule 11(b)(3) violation are unavailing. *See* Motion at 13-14; Reply at 6-7.

[6] Vasan's cited cases to support the proposition that "a pleading theory that depends on Rule 408-barred material to establish merits elements is not 'warranted by existing law'" do not analyze Rule 11 and Rule 408. *See* Motion at 11-12 (citing *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) and *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1362 (9th Cir. 1990)).

"multiplie[d] the proceedings in case unreasonably and vexatiously," 28 U.S.C. § 1927. Second, as discussed above, Vasan has not shown how any filing was based upon bad faith. *See* Motion at 8-10. Lastly, Vasan has not shown how Checkmate acted recklessly. *See Lahiri*, 606 F.3d at 1219; *Leon*, 464 F.3d at 961. Accordingly, Vasan has not met his burden under Section 1927 or the Court's inherent authority.

### C. Checkmate's Cross Motion for Sanctions against Vasan is Not Warranted Under Rule 11, Section 1927, or the Court's Inherent Authority.

Checkmate also moves to sanction Vasan under Rule 11, Section 1927, and the Court's inherent authority. *See* Opposition at 14-17.

First, Section 1927 sanctions are not available because Checkmate has not shown that Vasan has multiplied the proceedings under Section 1927. Plaintiff's Ex Parte Application for a Protective Order was withdrawn one day after filing it, and its other Ex Parte Application was also withdrawn two days after filing it. See Dkt. Nos. 34-36, 76-77. And just because Checkmate argues that Vasan's Motion to Dismiss Counterclaims, Motion to Strike Counterclaims, Errata, Motion to Compel, and Discovery Motion are "legally baseless," it does not mean that Vasan multiplied the proceedings. *See* Opposition at 15 n.2.; *see also* Dkt. Nos. 75, 79, 81, 97, 98, 100, 104, 111, 113. It is for the Court to determine if they are legally baseless.

Next, although a "party defending a Rule 11 motion need not comply with the separate document and safe harbor provisions when counter-requesting sanctions," *see Patelco Credit Union v. Sahni*, 262 F.3d 897, 913 (9th Cir. 2001), the Court declines to award sanctions under Rule 11 and its inherent authority because Checkmate itself has failed to comply with the meet and confer requirement under Local Rule 7-3 and the Court's Civil Standing Order prior to the filing of Vasan's Motion. *See* Motion at ii; Reply at 15; *see also* Appendix A, Dkt. No. 121-1. Checkmate did not contest this allegation in its briefing or at the hearing. *See generally* Opposition. It appears to this Court particularly inappropriate to use its inherent authority to sanction a pro se litigant when the party requesting sanctions does not comply with the Court's orders.

Moreover, at the hearing, Vasan contends that he experienced mental health problems during the time he was sending the emails at issue, and his problems have since been resolved. And

Checkmate has not cited to any questionable email since September 20, 2025 to show that Vasan has recently engaged in harassing behavior. *See* Ex. O, Dkt. No. 130-16. "Rule 11's express goal is deterrence," and the Court believes that Rule 11's purpose has been served as Vasan indicated at the hearing that he will not act like this in the future. *See Warren v. Guelker*, 29 F.3d 1386, 1390 (9th Cir. 1994); *see also* Opposition at 16. In light of this, the Court will not impose sanctions.

The Court does note, however, that the email communications from Vasan are numerous and that these communications are aggressive in tone. Vasan is hereby admonished from engaging in this sort of communication and is warned that persisting in this may result in a further motion for sanctions that may be granted.

### IV.    Conclusion

For the foregoing reasons, the Court hereby ORDERS as follows:

1. Plaintiff's Motion for Sanctions (Dkt. No. 121) is DENIED; and

2. Defendant's Cross Motion for Sanctions (Dkt. No. 130) is DENIED.

IT IS SO ORDERED.

Dated: March 25, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge