Arjun Vasan

arjun.vasan@gmail.com

12615 193rd Street

Cerritos, CA 90703

562-900-6541

Plaintiff in Pro Per

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Arjun Vasan**,<br><br>　　Plaintiff and Counter-Defendant<br><br><br>vs.<br><br><br>**Checkmate.com, Inc.**,<br>(dba "Checkmate"),<br><br>　　Defendant and Counterclaimant | Case No.:  2:25−cv−00765−MEMF−ASx<br><br>Hon. Maame Ewusi-Mensah Frimpong<br><br>**PLAINTIFF'S MOTION UNDER FED. R. CIV. P. 72 AND C.D. CAL. L.R. 72-2.1 FOR REVIEW AND RECONSIDERATION OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO RULE 26 DAMAGES DISCLOSURES**<br><br>Complaint Filed: January 28, 2025 |

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

Please take notice that on May 14, at 10:00AM, or as soon thereafter as the matter may be heard, in Courtroom 8B of the above-entitled Court, located at 350 West First Street, Los Angeles, CA 90012, Plaintiff Arjun Vasan will and hereby does move under Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1 for review and reconsideration of the Magistrate Judge's March 17, 2026, ruling denying meaningful relief as to Checkmate's deficient and untimely damages disclosures.

Plaintiff seeks the following relief:

1. Complete preclusion of Checkmate's March 16, 2026, damages computations and any Michael Bell opinions on which they rely;

2. Alternatively, partial preclusion of late-disclosed damages theories and figures that were never timely disclosed as Rule 26 categories, materially depart from Checkmate's prior damages theory, are facially unsupported by governing law, or rest on valuation positions inconsistent with Checkmate's own prior written positions; and

3. If any portion of the late damages disclosure survives, a Rule 37 cure at Checkmate's expense, including reopened discovery, Bell's deposition and expert fee if any, native-file production of the underlying models, a Rule 30(b)(6) deposition on damages, reasonable costs for deposition, rebuttal-expert and attorney's fees caused by the late disclosure.

This motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Declaration of Arjun Vasan and exhibits attached thereto, the records and papers on file in this action, and any argument the Court permits. The motion follows a telephonic conference of counsel pursuant to Local Rule 7-3. See Vasan Decl. ¶¶ 8-10.

**Dated**: March 30, 2026

In **Cerritos, California**

/s/ *Arjun Vasan*　　　　　　

**Arjun Vasan,** Plaintiff In Pro Per

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.       INTRODUCTION

On November 3, 2025, Plaintiff filed a discovery motion ("Motion") that sought, *inter alia*, relief for Checkmate's failure to supply a damages computation under Rule 26. However, the Magistrate Judge denied his requested relief on March 17, 2026, because:

(1) Checkmate's initial disclosures were supposedly "based on information that was reasonably available to Defendant at the time of disclosure";

(2) Checkmate had an ongoing duty to supplement;

(3) Plaintiff sought supplemental production and Checkmate eventually complied;

(4) the March 16, 2026, disclosure was "not untimely" because it came before the extended April 13, 2026, discovery cutoff; and

(5) the parties' stipulation to extend deadlines indicated that Checkmate needed time due to counsel substitution to complete its discovery obligations.

(6) Plaintiff had not shown sufficient prejudice. Dkt. 171 at 2–3.

That reasoning is contrary to Rules 26 and 37 and clearly erroneous on this record.

The core error is that the ruling conflates eventual production before the outer discovery cutoff with timely compliance with Rule 26(a)(1)(A)(iii). Rule 26 required Checkmate, in its initial disclosures, to provide "a computation of each category of damages claimed" based on the information "then reasonably available" to it, and expressly says a party is "not excused" because it has not fully investigated the case. Fed. R. Civ. P. 26(a)(1)(A)(iii), (E).

But Checkmate's initial disclosure did not provide *any* actual damages categories or computations. It offered only generic formulations: damages on certain claims, declaratory relief regarding compensation and indemnity, fees, interest, and "other and further relief." Ex. A at 9. Then, only after Michael Bell's March 11, 2026, expert disclosure said Checkmate would supplement its initial disclosures to "reflect[] Mr. Bell's opinions," Checkmate served what appears to be its first actual damages computation on March 16, 2026. Ex. B at 3; Ex. C at 4–5.

That was not a true supplement. There was nothing to supplement.

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

The ruling also failed to grapple with Checkmate's own contradiction. In opposing Plaintiff's motion to compel, Checkmate told the Court that third-party discovery was necessary to calculate damages. Dkt. 124 at 16–18. But the March 16 damages paper relied on only internal materials and Bell's opinions, not third-party discovery. Ex. C at 4–5. If the information was really "reasonably available" all along, Rule 26 required Checkmate to disclose it. If not, its opposition was false or materially misleading. Either way, the ruling's acceptance of its "reasonably available" argument without reconciling that contradiction was error.

Finally, the ruling understated prejudice. March 16 was not merely "before the April 13 cutoff." It came after the last practical date to serve ordinary written discovery and still obtain responses within the existing schedule. Under Rules 33, 34, and 36, responses to interrogatories, document requests, and requests for admission are due in 30 days absent stipulation or court order. Fed. R. Civ. P. 33(b)(2), 34(b)(2)(A), 36(a)(3). With an April 13 cutoff, March 14 was effectively the last day to serve ordinary written discovery and receive responses by the deadline. By waiting until March 16 to disclose actual categories and numbers, Checkmate cut off Plaintiff's ordinary discovery rights unless deadlines were extended.

That is concrete prejudice, not harmless delay. <u>The order should be set aside or modified.</u>

## II. BACKGROUND

### A. Checkmate's initial disclosure did not compute damages by category.

Checkmate's initial disclosure did not provide any computation, methodology, figures, or supporting documents for damages. [Initial Disclosures, Ex. A, at 9.] Instead, it stated only: "Checkmate seeks damages for its claims of breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation. Checkmate further seeks a declaratory judgment that Plaintiff is disentitled to further compensation under the parties' agreements and relevant law and that Plaintiff is required to indemnify Checkmate for losses incurred as a result of Plaintiff's conduct; payment of the full costs of this action, including attorney's fees, to the fullest extent permitted by the relevant agreements and law; recovery of pre- and post-judgment interest; and any such other and further relief, in law or in equity, to which Checkmate may be entitled or which the Court may deem just and proper." *Id*.

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

That is not a Rule 26 damages computation. It identifies causes of action and forms of relief, not actual categories of damages with computations.

**B. Plaintiff moved to compel timely Rule 26 damages disclosures.**

Plaintiff's motion to compel challenged Checkmate's failure to disclose any damages computations and supporting materials and sought relief under Rules 26 and 37. [Dkt. 113] At that time, Plaintiff proposed a two-week cure period, with preclusion for failure to comply, that in November 2025 might still have mitigated prejudice at that time. *Id*.

**C. Checkmate told the Court it needed third-party discovery to calculate damages.**

In opposing Plaintiff's motion, Checkmate argued that "[c]ritical information bearing on the nature and extent of Checkmate's damages is uniquely within the possession, custody, or control of third parties," and that such discovery was necessary to ascertain facts material to its counterclaims and that Plaintiff had impeded discovery by objecting to its non-party subpoenas and its "ability to calculate damages." Dkt. 124 at 16–18. Counsel further argued that it had "not yet obtained the information necessary to supplement its disclosure." *Id*. at 17.

**D. Checkmate Served Bell's Report and, Only Afterward, Served its First Real Damages Computation.**

On March 11, 2026, Checkmate disclosed Michael Bell as an expert and stated it would supplement its disclosures to "reflect[] Mr. Bell's opinions." [Bell Report, Ex. B, at 3.]

Bell then offered, *inter alia*, a theory that Checkmate should have generated $719,400 in 2024 "voice AI revenue," that the impact of that revenue is "best measured" through enterprise valuation, that 5x revenue would imply about $█ million in valuation impact, that a 10x "AI" multiple would imply about $█ million in valuation impact, and that the company's alleged missed voice-AI projections resulted in an approximately $█ million lost valuation due to a later █x financing option. [Bell Report, Ex. B, at 8–10.]

On March 16, 2026, Checkmate served its "First FRCP 26(e) Supplemental Disclosure," which for the first time asserted the following damages categories and figures:

- $100,685.27 in vendor/service-provider payments,
- $189,799.00 in "wages or other compensation" paid to Plaintiff,

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

- 107,601 shares allegedly worth $502,497.00,
- $███████ in lost revenue, and
- $████████████ in loss of value.

[Supp'l Disc., Ex. C, at 4–5.]

The March 16 paper then stated that the "computation of these amounts is further provided and specified" in CHECK00119620 through CHECK00119625, including internal Checkmate documents and Bell's work. [*Id*. at 5.]

### E. The Magistrate Judge denied preclusion on March 17, 2026

The ruling states:

"Plaintiff's request for preclusion of Defendant's damages disclosure is DENIED. As Defendant points out, the initial disclosures were based on information that was reasonably available to Defendant at the time of disclosure, Defendant acknowledged its ongoing duty to supplement its disclosure as discovery progressed, and Plaintiff's motion sought supplemental production which Defendant has complied with. Moreover, the supplemental production was not untimely because it was produced within the extended discovery cut-off date of April 13, 2026 … Finally, Plaintiff has not proffered sufficient evidence of harm or prejudice from Defendant's disclosures …." Dkt. 171 at 2–3.

That ruling is the subject of this motion.

### III.    STANDARD OF REVIEW

Under Rule 72(a), the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

Rule 26 required Checkmate to disclose "a computation of each category of damages claimed" and make available the documents or other evidentiary material on which each computation was based. Fed. R. Civ. P. 26(a)(1)(A)(iii). It also required Checkmate to make those disclosures based on the information then reasonably available and states that a party is not excused because it has not fully investigated the case. Fed. R. Civ. P. 26(a)(1)(E).

Rule 37(c)(1) provides that if a party fails to provide information required by Rule 26(a) or (e), the party is not allowed to use that information unless the failure was substantially

justified or harmless. The Ninth Circuit treats that sanction as the mechanism that gives "teeth" to Rule 26's disclosure requirements. *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1179–80 (9th Cir. 2008); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106–07 (9th Cir. 2001); *Merchant v. Corizon Health, Inc.*, 993 F.3d 733, 741–42 (9th Cir. 2021).

## IV.   ARGUMENT

### A. The Ruling Applied the Wrong Benchmark

The ruling treats the March 16 disclosure as timely because it preceded the extended April 13 cutoff. Dkt. 171 at 2–3. But that is not the Rule 26 question.

The Rule 26 question is whether Checkmate disclosed a computation of each damages category based on the information reasonably available at the time of its initial disclosures. Fed. R. Civ. P. 26(a)(1)(A)(iii), (E). Rule 26 further states that a party is not excused because it has not fully investigated the case. Fed. R. Civ. P. 26(a)(1)(E). A disclosure can be "before the cutoff" and still be untimely under Rule 26 if it comes months after the initial-disclosure obligation and only after expert disclosure. That is exactly what happened here.

The ruling therefore conflates two different issues:

1. if Checkmate eventually produced numbers before the outer edge of discovery; and

2. if Checkmate complied with its original Rule 26 duty when that duty arose.

Those are not the same question. The ruling answered the first and skipped the second.

Checkmate did not comply. Its initial disclosures did not identify actual categories such as salary recoupment, vendor payments, share value, lost revenue, or loss of enterprise value. [Checkmate Init. Disc., Ex. A, at 9.] Instead, it used phrases such as "losses incurred as a result of Plaintiff's conduct." [*Id.*] That is not Rule 26 damages. It is a theory or catch-all.

Only on March 16, 2026—after Bell's March 11 disclosure said Checkmate would supplement to "reflect[] Mr. Bell's opinions"—did Checkmate identify actual categories and actual numbers. [Ex. B, at 3; Ex. C, at 4–5.] That was the first attempt at a damages computation.

Rule 37(c)(1) therefore applies. Checkmate "is not allowed to use" that late-disclosed information unless the failure was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1); *Yeti by Molly*, 259 F.3d at 1106–07; *Merchant*, 993 F.3d at 741–42.

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

**B. The Record Shows the Information Was Available Prior to this Litigation**

The ruling accepts Checkmate's assertion that the initial disclosures were "based on information that was reasonably available to Defendant at the time of disclosure." Dkt. 171 at 2. But the March 16 computation itself shows that the eventual numbers were drawn from Checkmate's own materials: internal board materials, internal spreadsheets, internal compensation records, and Bell's own internal views. Ex. C at 5.

That is precisely why the ruling is wrong. If the eventual damages computations were based on Checkmate-controlled materials and an internal expert, Rule 26 required Checkmate to disclose those categories and figures earlier. Fed. R. Civ. P. 26(a)(1)(A)(iii), (E).

The ruling never reconciles this record with Checkmate's earlier position that it needed third-party discovery to calculate damages. Dkt. 124 at 16–18. That unresolved contradiction is fatal to the ruling's "reasonably available" conclusion.

**C. The Four-Month Delay in Ruling Magnified Prejudice and made Plaintiff's November Cure Proposal Obsolete.**

The ruling was issued on March 17, 2026, more than four months after the motion was filed and after the matter had been fully briefed in November 2025. Dkt. 171 at 1. What might have been curable by a short November deadline was no longer curable in March, after Bell's expert disclosure and after Checkmate served its first actual damages computations.

The problem is not judicial delay in the abstract. The problem is that the lapse of nearly four months materially changed the prejudice analysis. By the time the Court ruled, the case was in a different posture. The order nonetheless measured relief against Plaintiff's earlier November cure proposal rather than the prejudice that existed when the Court ruled.

That was error.

**D. The Magistrate Judge Erred by Failing to Consider the Content of the Actual March 16 Disclosure and Bell Report in Deciding Exclusion.**

Rule 37(c)(1) required the Court to determine whether Checkmate's late damages disclosure was substantially justified or harmless. That inquiry could not be performed in the abstract. It required the Court to examine what the March 16 disclosure actually introduced:

whether it was a true supplement or instead the first real damages computation, whether it disclosed new categories or theories, and whether its contents created concrete prejudice. The Ninth Circuit's Rule 37 cases confirm that exclusion turns on the significance and effect of the late disclosure. *Hoffman v. Constr. Protective Servs., Inc*., 541 F.3d 1175, 1179–80 (9th Cir. 2008); *Yeti by Molly, Ltd. v. Deckers Outdoor Corp*., 259 F.3d 1101, 1106–07 (9th Cir. 2001); *Merchant v. Corizon Health, Inc.,* 993 F.3d 733, 741–42 (9th Cir. 2021). Courts applying Rule 26 likewise require a meaningful computation of damages and some analysis supporting the figures, not just categories, lump sums, or references to documents. *EpicentRx, Inc. v. Bianco*, 2024 WL 511213, at 5–6 (S.D. Cal. Feb. 8, 2024). When a party claims to be "supplementing," courts examine whether the new material truly corresponds to an earlier disclosure and whether the supposedly new information was actually available at the time of the initial disclosure. *Burger v. Excel Contractors, Inc*., 2013 WL 12073836, at 2–3 (D. Nev. Oct. 25, 2013).

Here, Plaintiff specifically advised the Court at the hearing that Checkmate had served the March 16 disclosure the day before and that Plaintiff had the document available to share remotely. Yet the ruling did not engage the disclosure or Bell report themselves. That omission was consequential, because the March 16 paper was the best evidence that Checkmate was not merely refining an old computation, but unveiling massive new damages categories and figures after the expert deadline and after the last practical date for ordinary written discovery. The harmlessness analysis therefore proceeded without meaningful consideration of the very document that defined the magnitude and prejudice of the Rule 26 violation.

**E. Checkmate's Disclosure Contradicts its Earlier Representations.**

Throughout motion practice, Plaintiff has raised Checkmate's failure to provide a proper damage computation under Rule 26, pointing out that all potentially relevant evidence to support its proffered theories would necessarily be in its possession. In reply, Checkmate represented to the Court that it needed *third-party discovery* to calculate damages. [Dkt. 124 at 16–18.] But its eventual March 16 computation relied solely on its own records and Mr. Bell's opinions, not third-party discovery. [Supp'l Disc., Ex. C, at 4–5.] Moreover, the records in question not only pre-dated this dispute, but they are also records of the type that it necessarily possessed in the

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

ordinary course of business—its own board materials, acquisition memorandum, revenue-plan spreadsheets, and payroll/earnings records—all dated not just prior to the August due date for initial disclosures, but indeed well prior to this litigation. Indeed, Checkmate has itself filed the W2 in this case it now relies on to claim Plaintiff's salary as "damages." See Dkt. 18.

That contradiction matters. It shows the missing damages computation did not actually depend on uniquely third-party information. Checkmate's own March 16 paper demonstrates the relevant information was in its possession all along, supporting an inference that its November position was knowingly false or, at minimum, recklessly advanced for the tactical purpose of delaying disclosure of Checkmate's core damages case while pressing third-party discovery. See Fed. R. Civ. P. 37(c)(1); *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–46 (1991). Checkmate also cannot evade responsibility by pointing to prior counsel. A party is bound by the acts and omissions of its chosen attorneys. *Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962); *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 396–97 (1993); *Haeger v. Goodyear Tire & Rubber Co.*, 813 F.3d 1233, 1248–49 (9th Cir. 2016), rev'd on other grounds, 581 U.S. 101 (2017).

**F. Events in the Related Nessler Action Further Undermine the Damages Claims**

On January 26, 2026, Robert Nessler—Plaintiff's VoiceBite co-founder—filed an action in this district alleging similar claims as this instant action. On February 23, Judge Frimpong formally related and transferred the case. See *Robert Nessler v. Checkmate, Inc.*, 2:26-cv-00767-MEMF-As. On March 24, Checkmate moved *ex parte* for an extension to file its counterclaims against Mr. Nessler. Checkmate declared in its statement of good cause, that (a) it conferred with counsel for Mr. Nessler, whose analysis of *this* instant action indicated the counterclaims had no economic merit or plausible damages; (b) if Checkmate filed them, Mr. Nessler would seek Rule 11 relief; (c) that Checkmate counsel needed time to consider the Rule 11 implications of filing.

This last representation is key. Checkmate cannot reasonably assert $70 million of damages for its counterclaims in *this action*, while "considering" if the same damages were so untenable as to raise Rule 11 concerns in the *Nessler action*. Either its declaration in that action was tactical, or it failed to conduct a reasonable investigation prior to filing this instant action.

9

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

**G. The late March Disclosure Caused Concrete Prejudice that Cannot be Cured Without Meaningful Relief.**

The prejudice is concrete and case-specific.

The Bell report and March 16 damages paper created new discovery needs that Plaintiff could not fairly pursue within the existing schedule. Plaintiff would need:

- Bell's deposition on methodology, chronology, assumptions, and arithmetic;

- native-file production of the spreadsheets and models underlying the newly asserted figures, including formulas, metadata, linked files, and prior versions;

- a Rule 30(b)(6) deposition on damages categories, overlap or double counting;

- line-item discovery into the $100,685.27 vendor/service-provider figure and the basis for attributing team-wide expenses to Plaintiff alone;

- line-item discovery into the $189,799.00 salary figure and the basis for treating already-paid wages as recoverable damages;

- discovery into the 107,601-share / $502,497.00 figure, including the valuation date, per-share value, and Checkmate's inconsistent valuation positions;

- financing and investor discovery to test the ██x depressed-valuation theory and the claimed $██/$██ million loss-of-value theory; and

- time to determine whether a rebuttal damages/valuation expert is necessary.

That is exactly the kind of prejudice Rule 37(c)(1) is meant to address. Late damages disclosure is not harmless when it disrupts discovery, expert preparation, and the orderly litigation of the case. *Hoffman*, 541 F.3d at 1180; *Yeti by Molly*, 259 F.3d at 1106–07.

**F. Complete Preclusion is Warranted; at Minimum, Several Theories Should be Individually Precluded.**

Complete preclusion is a severe remedy, particularly where it is effectively dispositive, but it is warranted here because the record supports willfulness, fault, and bad faith, and lesser sanctions would not cure the prejudice. See *R & R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240, 1247–48 (9th Cir. 2012) (when Rule 37(c)(1) exclusion is dispositive, the court must consider willfulness, fault, or bad faith and the availability of lesser sanctions); *Ingenco Holdings, LLC v.*

10

*Ace Am. Ins. Co.*, 921 F.3d 803, 828–29 (9th Cir. 2019) (affirming exclusion where party never complied with Rule 26, waited until the eve of cutoff, and blamed the opposing party instead of justifying the failure); *Hoffman v. Constr. Protective Servs., Inc.*, 541 F.3d 1175, 1180 (9th Cir. 2008) (late disclosure was not harmless where it disrupts opposing party's preparation and court schedule). Here, Checkmate represented to Plaintiff and the Court that damages information was uniquely in third-party hands, yet its March 16 computation is based on materials it controlled and that were facially available all along. That false premise was used to secure advantage in discovery disputes, despite Plaintiff emphasizing that any genuine damages computation would necessarily come from internal records. The surprise was extreme: the first actual computations were served six days after the expert deadline and after the last enforceable date to serve written discovery, making any meaningful response impossible without extending the schedule. Plaintiff, by contrast, was diligent throughout: he repeatedly demanded a Rule 26 computation, moved to compel it, and flagged the tactic contemporaneously. [Vasan Decl. ¶¶ –; Exs. __, __.]. Under these circumstances, complete preclusion is not excessive; it is the only remedy that neutralizes the prejudice and prevents Checkmate from benefiting from its own strategic nondisclosure.

If, *arguendo*, the Court finds that full preclusion is not warranted on the record, it may alternatively evaluate the individual categories—none present in Checkmate's initial disclosures.

### 1. The speculative lost-revenue and enterprise-value theories should be precluded.

Checkmate's repeated merits framing has been that it allegedly paid actual money for allegedly worthless code or a valueless non-asset. Bell's report and the March 16 supplement materially depart from that framing. They assert speculative future-revenue and enterprise-value theories: at least $▉ in lost revenue, a 5x valuation impact, a 10x "AI" multiple, and a $▉/$▉ million loss-of-value theory. [Ex. B, at 8–10; Ex. C, at 4–5.]

These are new theories with predicates, assumptions, and needs; not timely disclosed as Rule 26 categories; and based on facially erroneous analysis by Michael Bell.

***Lost Revenue***:  Bell's "lost revenue" figure of $▉ is not actual 2024 revenue. It is the 2024 projected annualized run-rate (ARR) for the VoiceAI and DriveThru products. ARR

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

answers a different question: if the December 2024 customer base stayed in place for a full year, what would that base generate annually? It does not measure how much revenue would actually have been earned during 2024 as *locations ramped up over time*. Here, the rollout was projected to begin gradually during the year, with only a handful of locations live in the early months and larger deployment later. That means actual 2024 revenue would be the sum of monthly payments during the ramp, not the December annualized run-rate. Using Bell's own inputs, that cumulative 2024 revenue is about $████, not $████—an overstatement of roughly $████, or about 4.2x. See Ex. K. Bell then compounds that error by treating the inflated ARR figure as "lost revenue" and capitalizing it into still larger valuation numbers. And even apart from that math error, California business-loss law generally measures lost profits, not gross or annualized revenue. *Meister v. Mensinger*, 230 Cal. App. 4th 381, 397 (2014); *Kids' Universe v. In2Labs*, 95 Cal. App. 4th 870, 884 (2002); *Guntert v. City of Stockton*, 55 Cal. App. 3d 131, 149 (1976).

### 2. The $189,799.00 wages/salary category should be precluded.

Checkmate's March 16 paper seeks "wages or other compensation" paid to Plaintiff [Ex. C, at 4.], and attaching his W2. This is simply salary already paid for work performed.

This was not earlier disclosed. [Ex. A, at 9.] It is facially defective under California law.

California treats the full and prompt payment of wages as a fundamental public policy. *Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1206–07 (9th Cir. 2001). California likewise emphasizes that wages are not ordinary debts. *Pressler v. Donald L. Bren Co.*, 32 Cal. 3d 831, 837 (1982); *Kerr's Catering Serv. v. Dep't of Indus. Rels.*, 57 Cal. 2d 319, 326 (1962). Labor Code section 221 makes unlawful an employer "collect[ing] or receiv[ing] from an employee any part of wages theretofore paid." Lab. Code § 221. California holds that employers may not use wages as a setoff for amounts allegedly owed. *Barnhill v. Robert Saunders & Co.*, 125 Cal. App. 3d 1, 6 (1981); *Hudgins v. Neiman Marcus Grp., Inc.*, 34 Cal. App. 4th 1109, 1118, 1121 (1995). The exception for advances or unearned commissions under clear conditions does not apply to salary already earned and paid. *Steinhebel v. L.A. Times Commc'ns, LLC*, 126 Cal. App. 4th 696, 704–06 (2005); *Koehl v. Verio, Inc.*, 142 Cal. App. 4th 1313, 1329–38 (2006).

This newly disclosed salary-recoupment theory should therefore be precluded.

*3. The $100,685.27 vendor/service-provider category should be precluded to the extent it seeks team-wide expenses from Plaintiff alone.*

The March 16 paper seeks to recover vendor/service-provider payments allegedly made "on behalf of plaintiff, VoiceBite, and/or VoiceBite's co-founders or former shareholders other than plaintiff." [Ex. C, at 4.] As framed, that category is facially overbroad. These are business expenses borne by the entire founding team that accrued to Checkmate's express benefit. They include work computers for other founders—*still in use at Checkmate*. They include bills paid to vendors to develop VoiceBite's integration with Checkmate and its initial deployments. They include founders' legal expenses, for privilege/work-product that *it claims ownership of today*. It was not disclosed initially. Moreover, Labor Code § 2802 cuts the wrong way for Checkmate.

This category is supported by no documents or expert analysis justifying these costs as damages as opposed to ordinary expenses for which an employer is obligated to reimburse or to provide under the labor code. Notably, these are expenses Checkmate still benefits from. They supported the early deployments, product development, work equipment and similar. Nothing is personal or related in any way to claims or defenses. This category should be excluded.

*4. The $502,497.00 share-value category should be precluded to the extent it depends on an inflated valuation inconsistent with Checkmate's own documents.*

The March 16 paper claims 107,601 shares are worth at least $502,497.00, which implies roughly $4.67 per share. [Ex. C, at 4.] But the merger paperwork and Checkmate's own notice-of-claim use $0.41c/share when a lower number suited. [Vasan Decl. ¶¶ 5-6; Exs. D, E.]

Checkmate cannot disclose no share-value category in its initial Rule 26 disclosures, then later select a much higher per-share number for damages claims. At minimum, any share-value theory based on that inflated figure should be precluded absent a concrete explanation of the valuation date, methodology, and basis for Checkmate's irreconcilable valuation positions.

Notably, Checkmate has already asserted it will seek forfeiture of the shares in question, valued at 0.41c/share. [Notice of Claim 3, Ex. E]. If it can, through its corporate power forfeit shares, it cannot also convert the shares to cash at 10 times that cost for the purposes of damages.

**G. If any late theory survives, the cure should be entirely at Checkmate's expense.**

13

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

If the Court allows any part of Checkmate's untimely damages case to survive, the cure should be tailored and entirely at its expense under Rule 37(c)(1). That should include:

1. Bell's deposition, including any Rule 26(b)(4)(E) fee for any expert-opinion portion;

2. Native-file production of damages spreadsheets, models, formulas, workbooks, metadata;

3. A Rule 30(b)(6) deposition on damages, overlap, valuation inputs, and chronology;

4. Targeted financing and investor discovery related to the valuation theory;

5. Line-item damages discovery on the salary, vendor-expense, and share-value categories;

6. Reasonable costs of retaining an independent rebuttal expert limited to the damages/valuation subjects created by Bell and the March 16 supplement; and

7. Reasonable attorney's fees and deposition costs caused by the late disclosure, including fees for any counsel Plaintiff retains specifically to handle the damages depositions and review the late-disclosed damages materials.

This request is not for ordinary taxable costs. It is a tailored Rule 37 cure for expenses directly caused by untimely disclosures. Fed. R. Civ. P. 37(c)(1).

## V.    CONCLUSION

Perhaps the most prejudicial aspect of Checkmate's untimely damages supplement is the sheer scale of the numbers and breadth of its categories. Plaintiff could not reasonably anticipate $██ ██████ in damages would be asserted against him at the 11th hour of discovery. Such a vast sum changes the nature of this dispute and threatens to overwhelm Plaintiff's well-supported affirmative employment claims with unsupported, speculative and oppressive assertions. Neither could Plaintiff anticipate Checkmate might seek to recoup his already paid salary or VoiceBite expenses—from which it directly benefited well beyond transfer of code. The prejudice is not abstract. Without meaningful relief, Plaintiff will be seriously hindered in his ability to contest these claims as a *pro se* party, and to prosecute his own claims within the applicable deadlines.

Plaintiff respectfully requests that the Court set aside or modify the Magistrate Judge's March 17 ruling as to damages and order the following:

1. **Complete preclusion:** Checkmate may not rely on the March 16, 2026, damages computations or any Bell opinions dependent on them.

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

2. **Partial preclusion, in the alternative:** at minimum, Checkmate may not rely on:

   o [the speculative lost-revenue and enterprise-value theories, including the $██████, $██ million, $██ million, $██ million, and $██ million figures;]

   o [the $189,799.00 wages/salary category;]

   o [the $100,685.27 vendor/service-provider category to the extent it includes team-wide or non-Plaintiff expenses; or Plaintiff's ordinary business expenses]

   o [the $502,497.00 share-value category to the extent it rests on a valuation inconsistent with Checkmate's own prior written positions.]

3. **Curative relief, in the alternative:** if any late-disclosed damages theory survives, reopen limited damages discovery at Checkmate's expense, including Bell's deposition and fee if any, native-file production, a Rule 30(b)(6) damages deposition, reasonable rebuttal-expert costs, deposition costs, and attorney's fees caused by the late disclosure.


**Dated**: March 21, 2026                                    */s/ Arjun Vasan*_____

In **Cerritos, California**                                   **Arjun Vasan,** Plaintiff In Pro Per

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6

Plaintiff Arjun Vasan certifies that this brief contains 4,834 words, which complies with the 7000-word limit of L.R. 11- 6.1 and the Court's Civil Standing Order dated Aug. 27, 2025.

Respectfully submitted,

Dated: **March 30, 2026**

In: **Cerritos, California**

/s/ *Arjun Vasan*

**Arjun Vasan**,

Plaintiff *In Pro Per*

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES

## DECLARATION OF ARJUN VASAN & LOCAL RULE 7-3 COMPLIANCE

I, Arjun Vasan, declare:

1. I am the Plaintiff and Counter-Defendant in this action. I have personal knowledge of the facts stated herein, and if called to testify could and would do so competently.

2. Attached as Ex. A is a true and correct copy of Checkmate's initial disclosures.

3. Attached as Ex. B is a true and correct copy of Checkmate's March 11, 2026, Bell disclosure. The copy is redacted as per request of Checkmate counsel. The unredacted copy will be filed along with an application to file under seal.

4. Attached as Ex. C is a true and correct copy of Checkmate's March 16, 2026, supplemental disclosure.

5. Attached as Ex. D is a true and correct copy of the April 30, 2024, Merger Agreement, previously filed by Checkmate. The MA specifies a share value of 0.41c/share.

6. Attached as Ex. E is a true and correct copy of Checkmate's January 29, 2025, Notice of Claim served on Robert Nessler, corroborating the value for its stock as 0.41c/share.

7. Attached as Ex. K is a true and correct copy of my ARR / revenue calculation exhibit.

8. On March 17, 2026, after several emails regarding this matter, I met and conferred with counsel for Checkmate pursuant to Local Rule 7-3 regarding the relief sought in this motion. The conference was telephonic.

9. Attached as Ex. G is a true and correct copy of meet-and-confer correspondence.

10. The parties were unable to resolve the issues raised herein.

*I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.*

**Executed on**: March 30, 2026

*/s/ Arjun Vasan*_____

In **Cerritos, California**

**Arjun Vasan,** Plaintiff In Pro Per

17

MOTION FOR REVIEW OF MAGISTRATE JUDGE'S MARCH 17 RULING AS TO DAMAGES DISCLOSURES