# Exhibit B

## Makitalo, Rebecca I.

| | |
|---|---|
| **From:** | Arjun Vasan <arjun.vasan@gmail.com> |
| **Sent:** | Sunday, October 26, 2025 7:40 AM |
| **To:** | Keech, Ryan Q.; Chiu, Stacey G.; Makitalo, Rebecca I.; Winningham, Jacob R. |
| **Subject:** | Re: Arjun Vasan v. Checkmate.com, Inc. - 2:25-cv-00765-MEMF-ASx - Rule 11 Safe Harbor Notice |
| **Attachments:** | Exhibit F - Allegation to Source Map.pdf |

> **This Message Is From an External Sender**
> This message came from outside your organization.

Counsel,

Please see the attached corrected Exhibit F. This is a **courtesy update only**; it does not modify or supersede the Rule 11 motion I previously served, and it does not alter the November 12, 2025, 5:00 p.m. PT expiration of the safe-harbor period.

For the avoidance of doubt, the Ninth Circuit does not require the filed Rule 11 motion to be word-for-word identical to the served version; safe harbor is satisfied so long as the grounds and relief remain substantially the same and no prejudice results. The corrected Exhibit F simply clarifies the same paragraph mapping; it does not add grounds or change the requested relief. Withdrawing the listed allegations (whether as mapped in the earlier Exhibit F or this corrected one) would, as a practical matter, withdraw most of the counterclaims.

As before, I will not file if, by 5:00 p.m. PT on November 12, 2025, Checkmate:

1. Withdraws the counterclaims; or
2. Withdraws/Disavows CC ¶¶ 1, 4, 5, 6, 28, 29, 30, 31, 32, 33, 34, 35, 60 and the bullet-point "representations" in ¶¶ 59 and 65 (as itemized in Ex. F), or stipulates to strike them.

Please confirm by filing either (a) a short Notice of Disavowal, or (b) a stipulation to strike. Either approach cures Rule 11 without a Rule 15 amendment.

Best regards,
Arjun Vasan

On Wed, Oct 22, 2025 at 12:41 AM Arjun Vasan <arjun.vasan@gmail.com> wrote:
Counsel,

Pursuant to Fed. R. Civ. P. 11(c)(2), I am serving (not filing) the attached Plaintiff's Motion for Sanctions (with exhibits) directed to counterclaim contentions that (i) misuse settlement communications to prove liability/amount (FRE 408, 11(b)(2)), (ii) mischaracterize the Feb. 7 Holder-Rep response letter and miscast it as my personal "admission" (FRE 801(d)(2) failure), (iii) misquote/withhold contractual language in violation of Rule 11(b)(3)'s reasonable-inquiry requirement; (iv) crossed the *Flatley* line with extortionate demand letters leveraged to procure "admissions" (Rule 11(b)(1), Penal Code §§ 518–519).

If, by 5:00PM, Wednesday, November 12, 2025, Checkmate withdraws its counterclaims or amends to remove the allegations in Exhibit F, I will not file the motion.

Best regards,
Arjun Vasan
562-900-6541 | arjun.vasan@gmail.com

**Exhibit F – Allegation – Source Map**

| CCs ¶ | | Source | |
|---|---|---|---|
| 4, 6, 35 | 4. [AV] debated with his co-founders whether to disclose his concealment in fear he would be discovered and exposed by Checkmate…<br><br>6. [AV] has recently admitted that he intentionally concealed his misrepresentations concerning VoiceBite's technology to Checkmate in part because he allegedly feared an adverse response from Checkmate …<br><br>35. Then again in February 2025, Plaintiff brazenly made the excuse that he actually discussed with his co-founders the possibility of disclosing to Checkmate the fraudulent representations … | Cmpl. ¶ 16; (misrepresents source text) | 16. … Defendant utilized the one-sided exclusivity to pressure them to accept terms that undermined their interests (¶ 112):<br>• April 2, 2024: The founders agree on a plan to disclose personal legacy code —some of it co-authored by Plaintiff's father ("VV"), who had given his full consent to its use for VoiceBite. …<br>• April 3, 2024: During a meeting …<br>- Post-meeting, the founders debate disclosing the legacy code, citing Bell's hostility to changes and Agarwal's reassurances ….<br>….. (See Dkt. 10 at ¶ 16 for full context) |
| 30, 31 | 30. Checkmate confronted Plaintiff with its findings. On December 6, 2024, Checkmate, through counsel, sent a letter to Plaintiff's legal counsel, detailing…<br>31. Plaintiff's excuses became increasingly bizarre and implausible. He falsely characterized the numerous "Cyborg" references embedded in the VoiceBite application code. | Dec 6 "notice of claim" and AV's response Exhibit D-1, 2; (inadmissible under FRE 408/coerced) | The first notice lists the same reps/warranties as in CCs ¶¶ 59, 65; alleges "serious civil or even criminal misconduct"; claims to "disentitle" AV from the compensation he "claims to be owed"; demands AV immediately pay for its out of pocket merger costs; rejects AV's settlement outreach; misstates the IPAL (replacing "Checkmate" with "VoiceBite"), while refusing to provide the document for AV to review. |
| 1, 5, 32 60 | 1. "No matter what." These three words, written by Plaintiff …") in January 2025 …<br>5. …Plaintiff's "no matter what" expectations …<br>32. In January 2025, …. sought to negotiate payment … to himself "no matter what" while all the while hiding the true state … | Jan 22 "notice of claim"; AV's responses; Exhibit D-4; (inadmissible under FRE 408/coerced) | The second notice repeats the list of reps; threatens to "litigate" "both civil and criminal liability"; claims Checkmate will seek injunctive relief to enforce the non-compete; demands submission to an interview or detailed written response, "supported by evidence"; |

**Exhibit F – Allegation – Source Map**

| | | | |
|---|---|---|---|
| | 60. ... Plaintiff, who ==admits in writing that he intended at the time that he would be paid "no matter what,"== knew of their falsity ... | | client will not make payments—but is open to resolving the matter.<br><br>(See Ex. E (Nessler Declaration ¶ 2-3)) re "No Matter What" phrase—used by all founders to refer to retention bonuses being negotiated) |
| 28, 29 | 28. ... ==on or around January 23, 2025==, Plaintiff admitted in writing that Varadarajan ...– had developed the property ...<br>29. The truth was thus becoming clear: ==Arjun Vasan did not have the rights he claimed to have==. ...  VoiceBite ... could not assign: ... | *Id*. (inadmissible under FRE 408/coerced) | |
| 33, 34 | 33. ==In February 2025, Plaintiff's excuses shifted yet again. This time, he claimed that the software, the code – the heart of VoiceBite – was not, in fact, intellectual property== –emphasizing the stark and troubling reality that Checkmate had been duped by Plaintiff into acquiring a valueless non-asset.<br>34. ==Of course, Checkmate would not have agreed to acquire VoiceBite if its core technology was not, in fact "intellectual property."== Plaintiff's misrepresentations regarding the originality and ownership of the code were knowing falsehoods that he told with full awareness of their materiality to Checkmate's decision to acquire VoiceBite. | *Jan 29 "notice of direct claim"; served on Robert Nessler as Holder Rep under MA § 9.1; Exhibit B-1--3; (inadmissible under FRE 408), derives from Feb 7 response by Grant Thomas, Counsel for Mr. Nessler,* **misattributed to AV** | See Exhibit B.<br>VoiceBite owned all intellectual property identified in the VoiceBite Merger Agreement. VoiceBite's intellectual property was and is free of licenses, including at the time of transfer. VoiceBite is the author of all intellectual property VoiceBite transferred to Checkmate. Therefore, VoiceBite has not made any misrepresentations about ownership of intellectual property, including specifically no misrepresentations for which Purchaser Identified Parties seek indemnification, although none are specifically identified in the January 29, 2025 letter.<br>VoiceBite has been made aware that Purchaser Indemnified Parties have concerns about ownership of intellectual property based on newly discovered "comments" found in source code. After |

| | | | |
|---|---|---|---|
| | | | discussions with VoiceBite personnel, the code at issue was not owned, licensed, or transferred to any third party. Further, this code, to the extent that it is the source of Purchaser Indemnified Parties' claims to which purchaser Indemnified Parties' are seeking indemnification is not capable of being "intellectual property" within the meaning of the VoiceBite merger agreement. The code at issue is merely scènes à faire or API integrations not subject to copyright or intellectual property protection. As the code is functional in nature, the code itself is merely elements dictated by functionality, and therefore cannot be subject to protection and thus are not subject to claims for indemnification based violations of Sections 5.7, 5.9, and 5.19. |
| 59, 65; Bullet 1 | Plaintiff was "owner, inventor and/or author" of certain assigned intellectual property related to VoiceBite software (namely, a "comprehensive set of components of an AI voice ordering system") and that such intellectual property was not subject to "any dispute, claim, prior license or other agreement, assignment, lien or rights of any third party" or "any claim of any prior employer or third party client" of Plaintiff; | IPAA § 3 | 3. Assignor Representations and Warranties. The Assignor represents and warrants to the Company that, to the best of Assignor's knowledge, (a) the Assignor is the owner, inventor and/or author of, and can grant exclusive right, title and interest in and to, each of the Assigned Assets transferred by the Assignor hereunder; (b) none of the Assigned Assets are subject to any dispute, claim, prior license or other agreement, assignment, lien or rights of any third party, or any other rights that might interfere with the Company's use, or exercise of ownership |

**Exhibit F – Allegation – Source Map**

| | | | of, any of the Assigned Assets; (c) the Assigned Assets are free of any claim of any prior employer or third party client of the Assignor or any school, university or other institution the Assignor attended; and (d) the Assignor is not aware of any claims by any third party to any rights of any kind in or to any of the Assigned Assets. The Assignor agrees to immediately notify the Company upon becoming aware of any such claims. <span style="color:red">*Note – "comprehensive set of components of an AI voice ordering system" is not defined here, but in Exhibit D-2,4, (notices of claim), it is asserted this comes from the Company Disclosure Schedule – which remains undisclosed and was not attached. Nowhere is the comprehensive set detailed.</span> |
|---|---|---|---|
| Id. Bullet 2 | Plaintiff had provided to VoiceBite "all worldwide patents, patent applications, patent rights, copyrights, copyright registrations, moral rights, trade names, trademarks, service marks, domain names and registrations and/or applications for all of the foregoing, trade secrets, know-how, mask work rights, rights in trade dress and packaging, goodwill and all other intellectual property rights and proprietary rights relating in any way to the Technology, any Derivative or any Embodiment, whether arising under the laws of the United States of America or the laws of any other state, country or jurisdiction" related to VoiceBite's technology; | IPAA § 1(e) | (e) "Intellectual Property Rights" means, collectively, all worldwide patents, patent applications, patent rights, copyrights, copyright registrations, moral rights, trade names, trademarks, service marks, domain names and registrations and/or applications for all of the foregoing, trade secrets, know-how, mask work rights, rights in trade dress and packaging, goodwill and all other intellectual property rights and proprietary rights relating in any way to the Technology, any Derivative or any Embodiment, whether arising under the laws of the United States of |

**Exhibit F – Allegation – Source Map**

| | | | America or the laws of any other state, country or jurisdiction. |
|---|---|---|---|
| Id. Bullet 3 | That VoiceBite owned or had valid and enforceable right to use, all intellectual property used or proposed to be used in connection with its business; | MA § 5.9(c) | Qualified by Company Disclosure Schedule |
| Id. Bullet 4 | That neither VoiceBite "nor any of its current or proposed products or services have infringed upon, misappropriated or are currently infringing upon, misappropriating or otherwise violating any Intellectual Property rights of any Person;" | MA § 5.9(f) | Qualified by Company Disclosure Schedule |
| Id. Bullet 5 | That "no source code for any VoiceBite Proprietary Software has been delivered, licensed, or made available" to any person "who is not an employee" of VoiceBite; | MA § 5.9(h) | Qualified by Company Disclosure Schedule |
| Id. Bullet 6 | That Plaintiff had not "omitted to state a material fact necessary in order to make the statements and information contained herein or therein, not misleading;" and | MA § 5.19 | Neither this Agreement nor any agreement, attachment, schedule, exhibit, certificate or other statement delivered pursuant to this Agreement or in connection with the transactions contemplated hereby omits to state a material fact necessary in order to make the statements and information contained herein or therein, not misleading |
| Id. Bullet 7 | That Plaintiff "is not aware of any information necessary to enable a prospective purchaser of VoiceBite" to "make an informed decision with respect to the purchase of such Company Shares or business that has not been expressly disclosed herein." | Id. | The Company is not aware of any information necessary to enable a prospective purchaser of the Company Shares or the business of the Company and its Subsidiaries to make an informed decision with respect to the purchase of such Company Shares or business that has not been expressly disclosed herein. |

**Exhibit F – Allegation – Source Map**