MANNING CURTIS BRADSHAW
& BEDNAR PLLC
Mitch M. Longson, *Pro Hac Vice*
mlongson@mc2b.com
201 S. Main Street, Suite 750
Salt Lake City, Utah 84111
T. 801.303.0036
F. 801.364.5678

BARRIENTOS PC
J. Alejandro Barrientos, SBN 346676
Alejandro@bts.law
145 S. Fairfax Avenue, Suite 200-152
Los Angeles, CA 90036
T. 626.551.4564
F. 626.427.6753

Attorneys for Defendant-Counter Claimant
CHECKMATE.COM, INC.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ARJUN VASAN,<br><br>        Plaintiff,<br><br>   v.<br><br>CHECKMATE.COM, INC.,<br><br>        Defendant.<br><br>***Caption continued on next page*** | Case No. 2:25-cv-00765-MEMF-AS<br><br>JOINT STIPULATION RE: PENDING ORDER TO SHOW CAUSE,  PRIOR PROPOSED UNDER SEAL FILING; DISMISSAL WITH PREJUDICE PURSUANT TO SETTLEMENT AGREEMENT; [PROPOSED] ORDER |

1

CHECKMATE.COM, INC.,

          Counterclaim-Plaintiff,

    v.

ARJUN VASAN,

          Counterclaim-Defendant.

Plaintiff and Counter-defendant Arjun Vasan ("Plaintiff"), appearing pro se, and Defendant and Counter-claimant Checkmate.com, Inc. ("Defendant") (Plaintiff and Defendant collectively, the "Parties"), stipulate as follows:

## SETTLEMENT & STIPULATION FOR DISMISSAL

1. The Parties previously provided notice to the Court that the Parties reached an agreement in principle to settle this matter.

2. In light of that notice and other settlement-related filings, on May 4, 2026, the Court entered an order administratively closing this action and directing the Parties to file, within thirty (30) days of the date of the order, either (1) a stipulation and proposed order for dismissal of the action or judgment, or (2) a motion to reopen if settlement has not been consummated.

3. The Court further ordered that the Parties should address whether they reached an agreement as to whether the Court should discharge the pending order to show cause. ECF No. 172, at 4, n. 2

4. Pursuant to the Court's May 4th order, the Parties inform the Court that they have executed a written settlement agreement, effective May 6, 2026, to dispose of this action (the "Agreement").

5. Pursuant to the Agreement, the Parties request that the Court enter the attached proposed order, which expressly (i) incorporates by reference the terms of the Agreement, (ii) retains jurisdiction to enforce the terms of the Agreement, and (iii) otherwise dismisses all claims and counterclaims in this action with prejudice pursuant to FRCP 41(a)(1)(A)(ii). *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994).

6.      Alternatively, if the Court declines to incorporate the terms of the Agreement, or retain jurisdiction to enforce the Agreement in a dismissal order, the Parties request that this action be stayed indefinitely while the Parties perform their obligations under the Agreement, at the conclusion of which, the Parties will file another stipulation for dismissal with prejudice.

**PRIOR PROPOSED UNDER SEAL FILINGS**

7.      The parties previously sought to file the following under seal: (1) a copy of the Agreement (submitted as exhibit A to the application to file under seal), and (2) a joint statement of the Parties' positions on the pending order to show cause, ECF No. 172, at 4, n. 2, which quote or otherwise revealed the substance of certain terms of the Agreement, as exhibits to an anticipated stipulation for dismissal that also addressed the pending order to show cause (submitted as exhibit B to the application to file under seal).

8.      The Court denied the stipulation without prejudice, explaining that the Parties needed to show why such documents should be filed under seal "as opposed to not filed or considered at all."

9.      In light of the Court's order, and upon further consideration, the Parties agree that the Parties no longer wish to file under seal their joint statement of their positions on the pending order to show cause (submitted as exhibit B to the application to file under seal). Such statement is included as party this stipulation below.

10.     However, the parties were unable to agree on the need to file the Agreement and therefore submit their respective positions below:

      **a.**    **Defendant's position:** Upon further consideration, Defendant does not believe the Agreement needs to be filed

3

at all. Defendant previously agreed to request the under-seal filing of the Agreement at plaintiff's behest based on plaintiff's concern that the Agreement needed to be filed for the Court to retain jurisdiction to enforce its terms under *Kokkonen*. Defendant understands that Plaintiff may seek to file the Agreement partially under seal, which represents a change in plaintiff's prior agreement that the Agreement should be entirely sealed and which Defendant does not agree to. Plaintiff gave permission for Defendant to file the prior stipulation to file the Agreement entirely under seal via email on May 22, 2026, at approximately 2:11 p.m. Defendant reserves the right to dispute the appropriateness of any public filing of the Agreement by Plaintiff. Defendant does not waive any confidentiality rights under the Agreement through this filing.

b. **Plaintiff's position:** Plaintiff's consistent position has been that the Court must have the Agreement available to effectuate enforcement of its terms, and that confidentiality extends only to the narrow terms the Parties actually designated as confidential. The Agreement's own terms and the governing law of public access compel public filing of all but those narrow terms. While Plaintiff expected that the sealed version would include limited redactions, Defendant presented the document entirely redacted, when the vast majority is not, and was never intended to be confidential. Plaintiff's intention was for the Court to have the Agreement available—and so agreed to the fully sealed filing. The Court

4

denied the Application to file under seal and requested a showing of good cause as to why it should be filed. Therefore, Plaintiff intends to file within seven days an application for a minimally redacted version for the reasons below. Defendant indicated it will contest but will not object to such a filing.

**First**, the Agreement itself requires that it be placed before the Court. Section 14 obligates the Parties to jointly request that the Court's dismissal order "*incorporate this Agreement by reference*" and "*expressly provide that the Court retains jurisdiction to enforce the terms of this Agreement,*" and provides that the dismissal "*shall not be filed or become effective unless and until the Court enters an order expressly retaining jurisdiction.*" That is the bargained-for mechanism for the Court's continuing enforcement jurisdiction. A federal court retains such jurisdiction only where the dismissal order expressly retains it or incorporates the settlement's terms. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994). Incorporation by reference - the mechanism Section 14 specifies - requires the Agreement to be before the Court. Defendant's present position, that the Agreement "*does not need to be filed at all,*" cannot be reconciled with Section 14, which Defendant negotiated and signed. Adopting Defendant's position would strip the Court of any means to enforce the Agreement and relegate Plaintiff to a separate plenary action - the precise outcome Section 14 was drafted to prevent.

5

**Second**, once the Agreement is filed in connection with the Court's continuing jurisdiction and incorporated into a dispositive dismissal, it becomes a judicial record subject to a strong presumption of public access. *Kamakana v. City & County of Honolulu*, 447 F.3d 1172, 1178-79 (9th Cir. 2006); *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). Because the Agreement resolves the entire case and is incorporated into the dismissal, the request to seal is more than tangentially related to the merits, and the demanding "compelling reasons" standard governs. *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1096-99 (9th Cir. 2016). The party seeking to seal bears the burden, and conclusory assertions of confidentiality do not suffice. *Kamakana*, 447 F.3d at 1178-80. Any sealing must be "narrowly tailored to seal only the material for which good cause or compelling reasons exist." L.R. 79-5.2.2. Wholesale sealing of an entire negotiated agreement cannot satisfy that standard where the Parties themselves confined confidentiality to a discrete set of financial terms.

**Third**, the Agreement's own terms supply both the definition and the outer limit of any legitimate confidentiality interest. Section 12 makes confidential only *"[t]he specific payment terms of this Agreement, including the Settlement Amount and the payment schedule, and any non-public settlement discussions, negotiations, communications, and correspondence concerning those terms."* It reaches nothing else. To the contrary, Section 12 affirmatively permits the

6

Parties to refer to "*publicly filed allegations, publicly available facts, the existence of the Litigation, [and] the fact that the matter has been resolved*," and expressly authorizes Plaintiff to provide "*truthful declarations, affidavits, testimony, documents, or factual information to Robert Nessler or any other VoiceBite co-founder, or in support of any action brought by such person against Checkmate*," subject only to the narrow payment-terms carve-out. Section 13 confirms that Plaintiff's coordination with Robert Nessler in *Nessler v. Checkmate.com, Inc.* "*shall not constitute a breach*." The Parties thus knew how to restrict the Agreement's use and did so with precision: Section 11 bars the Agreement's use as evidence of liability, and Section 12 imposes confidentiality on the payment terms alone. Neither provision supports sealing the Agreement wholesale. A document that the Parties expressly agreed Plaintiff may share with a co-litigant, and use in support of related litigation, cannot simultaneously warrant concealment from the public record.

**Fourth**, the public interest in access is heightened because the Agreement bears directly on active, related litigation before this same Court. The Agreement repeatedly references *Nessler v. Checkmate.com, Inc.*, No. 2:26-cv-00767-MEMF-AS - in Section 5(f) (independence of Plaintiff's payments from the Nessler dispute), Section 12 (coordination with Nessler), and Section 13 (testimony and coordination in Nessler) - and Section 15 prescribes the procedure Defendant must follow before seeking any discovery from Plaintiff in that very action.

The released conduct, the parties, and the underlying transaction overlap substantially with the claims and counterclaims at issue in Nessler. The public, and the Court overseeing the related action, have a substantial interest in access to an agreement that defines the scope of the conduct purportedly released and that governs Plaintiff's obligations in the related case.

**Fifth**, narrow redaction is the tailored remedy that protects the only interest the Parties bargained for. Plaintiff proposes that the public version redact the Settlement Amount and payment schedule (Section 5 and its subparts), the allocation figures (Sections 7 and 8), and any quoted settlement communications, and that the Agreement otherwise be filed on the public record, with the complete unredacted Agreement lodged under seal. This approach honors Section 12 satisfies the presumption of public access and preserves the Court's enforcement jurisdiction under Section 14. See *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1137 (9th Cir. 2003) (sealing must be narrowly tailored to the interest served).

**Finally**, Defendant's shifting position undercuts any claim of a genuine confidentiality interest. Defendant first agreed to seek an under-seal filing at Plaintiff's request; it now contends the Agreement should not be filed at all; and it simultaneously reserves the right to oppose any public filing by Plaintiff. That migrating rationale - from sealing to non-filing, to opposing disclosure - suggests an objective other than protecting the discrete terms the Agreement actually makes

8

confidential. Where the Parties confined confidentiality to the payment terms and affirmatively authorized disclosure of the remainder, no basis exists to withhold the Agreement from the public record beyond the limited redactions Plaintiff proposes.

**Defendant's own words** confirm that its objection is tactical, not protective. Defendant asserts that it "*would be especially prejudiced by the public filing of the terms of the Agreement because it is engaged in ongoing litigation in the related*" Nessler matter, "*which has involved and will continue to involve separate settlement negotiations.*" [Def. Position 8.] That is not a legitimate form of prejudice. The harm that justifies sealing is the harm flowing from disclosure of genuinely protectable information - trade secrets, private financial or medical data, or information that would damage a party's competitive standing in the marketplace. *Kamakana*, 447 F.3d at 1179. Defendant identifies nothing of the kind. It identifies only the loss of a negotiating advantage in separate litigation against a third party. The Ninth Circuit has squarely held that the prospect that disclosure "*may lead to a litigant's . . . exposure to further litigation will not, without more, compel the court to seal its records.*" *Id.* A weakened settlement position in a related case is the paradigm of that non-compelling interest.

**Defendant's rationale is worse than insufficient**; it is affirmatively improper and self-defeating. Sealing is justified only to prevent court files from becoming "a vehicle for

9

improper purposes." *Id.* Defendant proposes the inverse - to use the Court's sealing power to deprive a co-litigant before this same Court of the terms on which Defendant resolved materially identical claims, in order to preserve Defendant's leverage against that litigant. A party may not invoke a sealing order to engineer an informational advantage in a related case, least of all one pending before the same judge; the integrity of the related Nessler proceeding is a matter of this Court's own concern, and that concern weighs against concealment. Defendant's admission is also self-defeating on relevance: by asserting that public access to "the terms of the Agreement" would affect its Nessler negotiations, Defendant concedes those terms are material to the related litigation, which heightens the public interest in access rather than diminishing it. And Defendant's objection runs to precisely the substantive terms - the scope of the release and the discovery limitations of Section 15 - that the Agreement's confidentiality provision does not cover. Defendant thus seeks to seal exactly the material the Parties agreed was not confidential, for a reason the Parties never bargained to protect. The releases in Sections 2 and 3 show that Defendant resolved the very conduct it now presses as counterclaims against Mr. Nessler; Section 15 shows that Defendant agreed to a structured discovery-exhaustion procedure to prevent the burdening of Plaintiff that Defendant has signaled it intends to pursue against Plaintiff and a non-party witness. Defendant's interest is in keeping those facts from the Court

10

and from a related litigant. The right of public access exists to enable that scrutiny, and Defendant's admission that disclosure would weaken its litigation position is a reason to grant access, not to deny it.

**For these reasons**, Plaintiff respectfully requests that the Court (i) enter the order retaining jurisdiction and incorporating the Agreement contemplated by Section 14; (ii) direct that the Agreement be filed on the public record with redactions limited to the Settlement Amount, the payment schedule and tax-allocation figures, and any quoted settlement communications; and (iii) permit the complete, unredacted Agreement to be lodged under seal pursuant to L.R. 79-5.

### POSITIONS ON ORDER TO SHOW CAUSE

11. Per the Court's order, the Parties submit their below respective positions on the pending order to show cause, ECF No. 172, at 4, n. 2, with the agreement that the public filing of such positions do not waive any confidentiality rights under the Agreement:

### a. Plaintiff's Position

Plaintiff respectfully declines to agree that the Court should discharge its Order to Show Cause in light of former counsel's persistent disregard for meet-and-confer requirements as established in this Court's docket. The sua sponte OSC issued by This Court is not Plaintiff's to release, nor Defendant's to demand released. Defendant's attempt to negate the Court's inherent authority to manage its docket should be denied. Plaintiff respectfully refers the Court to Dkts. 45, 113, 121, 178, and 178-1, which document former counsel's persistent use of the meet-

11

and-confer process as both sword and shield — invoked to frustrate Plaintiff's discovery while disregarded when convenient, as in the instant cross-motion. These tactics have caused substantial costs to Plaintiff and the Court. Plaintiff therefore defers to the Court's discretion in addressing the conduct of K&L Gates LLP and, in particular, its attorneys Ryan Q. Keech and Rebecca Makitalo; and Defendant's role as a party who freely chose and maintained such representation. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 633–34 (1962).

Defendant notes the "fully and finally" phrasing in the parties' agreement as an indication of the parties' mutual intent, notwithstanding its own filing of counterclaims in the related Nessler case that mirror the claims it purportedly has "released" via this settlement. Defendant's claim that the cases are "separate" is belied by the near verbatim pleading that it filed without leave and despite the Court's explicit denial of the right to file such claims. Despite the parties agreeing that neither party was found to have committed wrongdoing, Defendant appears to "reserve the right" to investigate via "third party discovery" (which by its own assertion of Plaintiff's centrality will necessarily be burdensome) if Plaintiff did indeed commit the same wrongdoings it claims to have released. This intent was concealed from Plaintiff until the end of settlement negotiations and undermines the value purportedly provided to Plaintiff by this settlement. Defendant has also refused to agree to pay for costs Plaintiff would incur, which belies any notion that it seeks a mutual cessation of litigation expenses.

Moreover, the Settlement Agreement's release runs from Plaintiff to Defendant; it does not, and cannot, purport to release the Court's authority over counsel appearing before it. Defendant's assertion that the

12

parties could be forced into further litigation if the Court declines to discharge its own OSC is disrespectful of the Court's authority and its Standing Order, which emphasizes meet-and-confer requirements as central to the orderly administration of its docket. The OSC was issued sua sponte to vindicate that Standing Order; the suggestion that it may now be discharged at Defendant's unilateral request — over Plaintiff's express objection — would permit Defendant to extinguish, through private settlement, this Court's own enforcement of its own rules. Indeed, this Court's invitation to the parties to address whether the OSC should be discharged necessarily presupposed that either party could disagree; had the Court intended automatic discharge upon settlement, no such invitation would have issued. Plaintiff exercises that right of disagreement here.

The Court's inherent authority to sanction conduct that abuses the judicial process is not subject to private waiver, and certainly not to the unilateral request of the party whose former counsel's conduct is at issue. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765–67 (1980). Neither party can release what only the Court may impose; one party acting alone certainly cannot.

For these reasons, Plaintiff respectfully requests that the Court decline to discharge the OSC and proceed to address the conduct of K&L Gates LLP, attorneys Ryan Q. Keech and Rebecca Makitalo, and Defendant's role in retaining and maintaining that representation, in whatever manner the Court deems appropriate.

### b.    Defendant's Position

Defendant respectfully submits that the Court should discharge the pending OSC in light of the Parties' settlement and the dismissal of this action with prejudice. Section 2 of the Parties' Settlement Agreement provides that Plaintiff agrees to release "any and all claims, counter-claims and rights that he may have against Company, and any of its officers, directors, employees, agents, affiliates, successors, heirs and assigns … resulting from anything that has happened up to the Effective Date with regard to any matter …." Such claims shall include "without limitation, all claims asserted in the California Litigation …, including but not limited to any claims for fees, sanctions or other non-final remedies …." (emphasis added). Plaintiff has therefore released any outstanding sanctions claims and any claim whatsoever against Checkmate and its counsel during any period in this litigation up through the Effective Date of the Agreement.

The Court's invitation for the Parties to address whether the OSC has been discharged presumes the Parties hold the right to discharge the OSC and sanctions issues connected to it. Moreover, Plaintiff's position— that the OSC remains viable and that sanctions should issue— contravenes the language and purpose of the Settlement Agreement to the effect that "the Parties desire to settle fully and finally all claims" the Parties have or may have against one another, without potential further litigation and expenditure related to sanctions issues. If Plaintiff's position is accepted and an order issues based on the OSC, then the Parties may be forced into yet further litigation over any sanctions or refusal to enter sanctions, which is precisely what the Parties intended to avoid with the Settlement Agreement.

14

It is so stipulated.


DATED: June 3, 2026                    BARRIENTOS PC

                                       */s/ J. Alejandro Barrientos*
                                       _____
                                       J. Alejandro Barrientos
                                       Attorney for Defendant-Counter
                                       Claimant Checkmate.com, Inc.


DATED: June 3, 2026

                                       */s/ with email authorization*[1]
                                       _____
                                       Arjun Vasan,
                                       Pro Se Plaintiff-Counter Defendant

---

[1] Pursuant to Local Rule 5-4.3.4(a)(2)(i), the filer, J. Alejandro Barrientos, attests that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

15