# Exhibit 1

## REDACTED VERSION OF THE PARTIES' SETTLEMENT AGREEMENT AND GENERAL RELEASE FOR PUBLIC FILING

<div align="center">**SETTLEMENT AGREEMENT AND GENERAL RELEASE**</div>

**THIS SETTLEMENT AGREEMENT AND GENERAL RELEASE** (this "**Agreement**") is hereby made and dated effective as of <u>May 6th, 2026</u> (the "**Effective Date**"), by and among:

**ARJUN VASAN** an individual having an address at 12615 193rd Street, Cerritos, CA 90703, as plaintiff and counter-defendant ("**Plaintiff**"),

and

**CHECKMATE.COM, INC.,** a Delaware corporation with its principal place of business located at 460 West 42nd Street, Suite 57B, New York, NY 10036 as defendant and counter-plaintiff (the "**Company**", the Company and Plaintiff hereinafter shall be referred to collectively as the "**Parties**," or individually, as a "**Party**"). For purposes of this Agreement, the term "Company" shall be deemed to include, where context permits and with respect to the obligations and representations of Company hereunder, Company's direct and indirect subsidiaries as of the time of execution hereof, including VoiceBite Corporation and any successor-in-interest thereto; and any successors-in-interest to the foregoing. Company covenants and agrees to cause each such entity to comply with the releases, covenants not to sue, non-disparagement obligations, and other provisions hereunder, and Company shall be liable for any breach by any such entity as if it were Company itself.

<div align="center">**RECITALS**</div>

**WHEREAS,** Plaintiff was a founder, officer and stockholder of VoiceBite Corporation, a Delaware corporation ("**VoiceBite**");

**WHEREAS,** the Company acquired all the outstanding capital stock of VoiceBite pursuant to a merger of a wholly-owned subsidiary of the Company with and into VoiceBite, with VoiceBite continuing as the surviving corporation and a wholly-owned subsidiary of the Company (the "**Merger**"), pursuant to an Agreement and Plan of Merger dated as of April 30, 2024;

**WHEREAS,** contemporaneously with the Merger, the Company and Plaintiff entered into, among other agreements, a letter agreement (the "**Bonus Agreement**"), an offer letter (the "**Offer Letter,**" pursuant to which Plaintiff was employed by Company) and a Non-Competition Agreement (the "**Non-Competition Agreement**"), each dated as of April 30, 2024, pursuant to which the Company agreed to make certain payments to Plaintiff;

**WHEREAS,** Plaintiff initiated litigation against the Company in the Central District of California (Arjun Vasan v. Checkmate.com, Inc., Case No. 2:25-CV-00765-MEMF-AS) (the "**California Litigation**");

**WHEREAS,** the Company initiated litigation against Plaintiff in the Southern District of

<div align="center">1</div>

New York (Checkmate.com Inc. v. Arjun Vasan, Case No. 25-CV-3181 (JMF)) (the "**New York Litigation**");

WHEREAS, the California Litigation and the New York Litigation are referred to herein collectively as the "**Litigation**";

WHEREAS, the Company asserted certain counterclaims against Plaintiff in the California Litigation;

WHEREAS, Plaintiff alleges that the Company fraudulently induced the VoiceBite team into the Merger and Employment agreements by misrepresenting the value of its equity and making false promises of job security, interfered with and denied Plaintiff's statutory rights, retaliated when he sought to enforce them and ultimately failed to make certain payments that Plaintiff alleges are due under the Bonus Agreement and Offer Letter;

WHEREAS, Company alleges that Plaintiff made certain fraudulent misrepresentations relating to VoiceBite in the Merger Agreement and otherwise and that Company relied on such fraudulent misrepresentations in entering into the Merger; Company also alleges Plaintiff breached the Parties' Non-Competition Agreement, Assignment of IP and Other Assets and IP Acknowledgement letter.

WHEREAS, the Company denies all of Plaintiff's claims and denies any liability to Plaintiff;

WHEREAS, Plaintiff denies all of the Company's counter-claims and denies any liability to the Company;

WHEREAS, there being issues in dispute between the Parties and the Parties have engaged in arms-length, good-faith negotiations in order to resolve the aforesaid disputes;

WHEREAS, the Parties desire to settle fully and finally all claims that Plaintiff has, had, or may have against the Company and that the Company has, had, or may have against Plaintiff;

NOW, THEREFORE, in consideration of the mutual promises contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.     **INCORPORATION OF RECITALS.**  The Parties adopt the above Recitals as being true and correct, and they are incorporated herein as material parts of this Agreement.

2.     **PLAINTIFF RELEASE.**  In consideration for the Settlement Payment discussed in Section 5 and for other good and valuable consideration, which consideration is a condition for the release hereunder, Plaintiff agrees to release, and such release shall become effective in accordance with the payment provisions of Section 5, any and all claims, counter-claims and rights that he may have against Company, and any of its officers, directors, employees, agents, affiliates, successors, heirs and assigns (all of whom are released individually and in their official capacities), resulting from anything that has happened up to the Effective Date with regard to any

2

504992885.3

matter, whether known or unknown, fixed or contingent, direct or indirect, through the Effective Date (collectively, the "**Plaintiff Released Claims**"). The Plaintiff Released Claims shall include, without limitation, all claims asserted in the California Litigation or the New York Litigation, including but not limited to any claims for fees, sanctions or other non-final remedies, as well as any potential claims of which Plaintiff is not aware and those not mentioned in this Agreement, and all claims under the Merger Agreement and Transaction Documents (as defined in the Merger Agreement).  In furtherance of the foregoing, and without limitation thereof, as part of the Plaintiff Released Claims, Plaintiff specifically releases:

> Any and all actions, causes of action, suits, debts, dues, sums of money, shares of stock or other equity-based awards, accounts, reckonings, bonds, bills, fees, penalties, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever in law or equity, which he may now have or hereafter can, shall, or may have, or may have had, for, upon, or by reason of any matter, cause, or thing whatsoever, relating specifically to the Plaintiff Released Claims, or claims under any federal, state, or local laws, rules and/or regulations, or public policy, tortious interference with actual or prospective contractual or economic relations, any claim arising under common law, or any other action, based upon any conduct from the beginning of the world to the Effective Date and shall not, from any source or proceeding, seek or accept any damages, award, or settlement therefrom, including without limitation, any claim for attorneys' fees.

(a)    **Reservation of Claim Amounts Upon Uncured Payment Default.** In the event, and only in the event, that Company fails to pay the full Settlement Amount following Acceleration (as defined below), Plaintiff expressly reserves—and this Agreement shall not be construed to waive, release, or limit—Plaintiff's right to seek recovery of the full underlying claim amounts alleged in the California Litigation, all of which Company contests in their entirety, including without limitation: (i) all alleged wage and breach of contract claims and penalties (as set forth in the California Litigation); (ii) FMLA and CFRA damages in amounts to be proven at trial; (iii) alleged retaliation, wrongful termination, and constructive discharge damages; (iv) alleged promissory fraud and civil conspiracy damages, including the full equity damages alleged in the Complaint; and (v) any other relief available under applicable law; provided, however, that Plaintiff may only do so following issuance of an order from an arbitrator pursuant to Section 5(e) hereof or a court of competent jurisdiction (including the court retaining jurisdiction under Section 15) that Checkmate failed to pay the accelerated balance in full within the ten (10)-business-day period specified in Section 5(d) and provided further that any amounts paid prior to any default and Acceleration under this Agreement shall offset any claimed damages for any of the foregoing claims in this Section 2(a). For the avoidance of doubt, Company's initiation, participation in, or pendency of any arbitration under this Section 2(a) or Section 5(e) shall not relieve Company of, suspend, stay, or otherwise affect Company's obligation to make all payments due under this Agreement on time and in full, including the accelerated balance under Section 5(d). In the event Plaintiff reasserts any claim listed under this Section 2(a), Company shall not be deemed to have waived or released any defense to such

504992885.3

claims, by virtue of this Agreement or otherwise. For the avoidance of doubt, the preservation of defenses in the preceding sentence shall not constitute a basis for any setoff, suspension, withholding, or delay of Company's payment obligations under this Agreement, which are independent covenants pursuant to Section 5(b), and the provisions of the last sentence of Section 5(e) regarding the pendency of separate actions shall apply equally to any litigation concerning the restored Plaintiff Released Claims. ▬▬▬▬▬ Settlement Amount represents an agreed compromise negotiated at arm's length by sophisticated parties with equal bargaining power and the active assistance of independent legal counsel, conditioned strictly on exact and timely compliance with the Payment Plan. Plaintiff shall execute an acknowledgement of full payment in substantially the form attached as **Exhibit C** no later than two (2) business days after receipt of the payment that together with other payments constitutes payment of the full Settlement Amount.  From the Effective Date through the date on which Company pays the Acceleration balance in full pursuant to Section 5(d) if Acceleration occurs or, if Company fails to do so, through the date on which the ten (10)-business-day period for payment of the Acceleration balance under Section 5(d) expires, all applicable statutes of limitations, laches periods, and repose periods with respect to the claims reserved in this Section 2(a) shall be tolled, and Company expressly waives any defense based on the passage of time during such period. If Acceleration occurs and Company fails to pay the accelerated balance in full within the ten (10)-business-day period specified in Section 5(d), the release set forth in Section 2 shall automatically and without further action be rescinded and rendered void ab initio, and all Plaintiff Released Claims shall automatically and immediately be restored to Plaintiff with the same force and effect as if such release had never been granted, provided that any amounts paid up through the date of Acceleration shall be an offset against any damages claimed by Plaintiff. Upon any such rescission, (i) Plaintiff shall be entitled to assert the Plaintiff Released Claims in any forum of competent jurisdiction, subject only to the offset provided in this Section 2(a) for amounts actually received by Plaintiff prior to Acceleration, and (ii) Company irrevocably waives, and shall not assert, res judicata, claim preclusion, release, accord and satisfaction, the dismissal entered pursuant to Section 14, or any similar defense premised on this Agreement, the release granted in Section 2, or any dismissal entered in connection with this Agreement. In lieu of, or in addition to, exercising the rescission remedy set forth in this Section 2(a), Plaintiff may at Plaintiff's sole election pursue entry of judgment pursuant to the Stipulated Judgment described in Section 18. Plaintiff's filing of the Stipulated Judgment shall not constitute an election of remedies, shall not waive or impair Plaintiff's rights under this Section 2(a), and the restored Plaintiff Released Claims shall not be deemed merged into any judgment entered on the Stipulated Judgment. Any amounts collected under the Stipulated Judgment shall be credited dollar-for-dollar against any recovery on restored Plaintiff Released Claims.

(b)    **CIVIL CODE § 1542 WAIVER BY PLAINTIFF:** Plaintiff expressly acknowledges that it has read and understands California Civil Code § 1542, which provides:

"A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

4

504992885.3

Plaintiff knowingly and voluntarily waives all rights and benefits afforded by California Civil Code § 1542 and any similar law of any other jurisdiction. Plaintiff understands and acknowledges that this waiver means the release set forth in this Section 2 extends to all claims described above, whether or not Plaintiff currently knows or suspects such claims to exist.

(c)        The Parties acknowledge that Plaintiff contends certain amounts may be characterized as wages and Company contends such amounts are not properly characterized as wages, and that the allocation set forth in Section 7 reflects a negotiated compromise for tax reporting purposes only. The allocation set forth in Section 7 shall not be construed as an admission by either Party regarding the underlying legal classification of any claimed amounts, and shall not be admissible as evidence of any such classification in any proceeding other than an action to enforce, interpret, or defend against an alleged breach of this Agreement.

3.        **COMPANY RELEASE.**  In consideration for the Settlement Payment discussed in Section 5 and for other good and valuable consideration, Company hereby releases and gives up any and all claims and rights that it may have against Plaintiff, and any of his officers, directors, employees, agents, successors, heirs and assigns (all of whom are released individually and in their official capacities), resulting from anything that has happened up to the Effective Date with regard to any matter, whether known or unknown, fixed or contingent, direct or indirect, through the Effective Date (collectively, the "**Company Released Claims**"). The Company Released Claims shall include, without limitation, all claims asserted in the California Litigation or the New York Litigation, including but not limited to any claims for fees, sanctions or other non-final remedies, as well as any potential claims of which Company is not aware and those not mentioned in this Agreement, and all claims against Plaintiff under the Merger Agreement, the Transaction Documents (as defined in the Merger Agreement), the Bonus Agreement, the Offer Letter, the Non-Competition Agreement, and any other agreement entered into between the Parties contemporaneously with or in connection with the Merger, including without limitation any claim under Sections 4, 5, 7, or 8 of the Merger Agreement, any Holder Fundamental Representation, any indemnification claim, and any Fraud claim arising from conduct occurring on or before the Effective Date. In furtherance of the foregoing, and without limitation thereof, as part of the Company Released Claims, Company specifically releases:

Any and all actions, causes of action, suits, debts, dues, sums of money, shares of stock or other equity-based awards, accounts, reckonings, bonds, bills, fees, penalties, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever in law or equity, which it may now have or hereafter can, shall, or may have, or may have had, for, upon, or by reason of any matter, cause, or thing whatsoever, relating specifically to the Company Released Claims, or claims under any federal, state, or local laws, rules and/or regulations, or public policy, tortious interference with actual or prospective contractual or economic relations, any claim arising under common law, or any other action, based upon any conduct from the beginning of the world to the

5

504992885.3

Effective Date and shall not, from any source or proceeding, seek or accept any damages, award, or settlement therefrom, including without limitation, any claim for attorneys' fees.

(a)     **CALIFORNIA CIVIL CODE § 1542 WAIVER BY COMPANY:** Company expressly acknowledges that it has read and understands California Civil Code § 1542, which provides:

> "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

Company knowingly and voluntarily waives all rights and benefits afforded by California Civil Code § 1542 and any similar law of any other jurisdiction. Company understands and acknowledges that this waiver means the release set forth in this Section 3 extends to all claims described above, whether or not Company currently knows or suspects such claims to exist.

(b)     **Non-Compete and Restrictive Covenants Null and Void.** Any non-compete, non-solicitation, no-moonlighting, or similar restrictive covenant provision contained in any prior agreement between the Parties—including but not limited to the Non-Competition Agreement, any employment agreement, offer letter, equity award agreement, or any other instrument—is hereby declared **NULL, VOID, AND UNENFORCEABLE IN ITS ENTIRETY** as of the Effective Date, with no further force or effect. Plaintiff is free to engage in any business, employment, entrepreneurial, or investment activity of his choosing, including in the restaurant technology, drive-through AI, or any other industry, without restriction by Company. Company shall take no action to enforce, threaten to enforce, or assert any such restrictive covenant provision against Plaintiff in any forum. Nothing in the foregoing shall (i) limit, terminate or amend in any way any provision in the Confidential Information and Inventions Agreement between Plaintiff and the Company dated as of May 1, 2024 (the "CIIA") or the Merger Agreement  or limit or restrict Plaintiff's obligations under the CIIA or Merger Agreement or Company's right or ability to enforce the CIIA or Merger Agreement solely with respect to alleged breaches of the CIIA or Merger Agreement occurring after the Effective Date (it being understood and agreed that all claims against Plaintiff under the CIIA, the Merger Agreement, and the Transaction Documents arising from any conduct, act, or omission occurring on or before the Effective Date are irrevocably released by Company pursuant to Section 3 hereof and shall not be enforced, asserted, or pursued by Company in any forum), or (ii) prohibit or restrict Company from enforcing applicable intellectual property rights, including any legal rights under trade secret misappropriation or other intellectual property laws in the event Plaintiff is alleged to have breached such laws after the Effective Date hereof. The Parties acknowledge and agree that the CIIA is subject to the provisions and restrictions of applicable California law, including California Business and Professions Code Section 16600. The Company explicitly waives any right to assert the 'inevitable disclosure' doctrine to restrict Plaintiff's future

6

504992885.3

employment or business ventures.

4.      **<u>NO RELEASE</u>**.  The Parties acknowledge and agree that this Agreement shall not serve to release any claims which arise under, or waive any rights and obligations of the Parties which derive from, this Agreement and documents executed in connection herewith, from and after the Effective Date. Further, the releases hereunder do not extend to any rights arising after the Effective Date.

5.      **<u>SETTLEMENT PAYMENT</u>.**  In consideration for this Agreement and other good and valuable consideration, the Company shall pay Plaintiff the total sum of ███████



(a)     ████████████████████████████████

(b)      **Payment Obligation and Limited Withholding Right.** Company's obligation to make all payments under this Agreement may not be withheld, offset, suspended, or reduced by Company for any reason—including any alleged breach of this Agreement by Plaintiff whatsoever, the CIIA, or any other obligation by Plaintiff—except as set expressly forth herein. The Company's obligation to remit the Settlement Amount is an independent covenant

7

and constitutes the consideration for the release of claims up to the Effective Date. No allegation, counterclaim, or affirmative defense shall permit Company to withhold or delay any payment absent an arbitrator's order as set forth below in Section 5(e). Company expressly waives any right of self-help, set-off, or counterclaim against the Settlement Amount or any installment thereof. Company shall bear all costs of any arbitration initiated by Company under Section 5(e); however, the prevailing Party may recover its attorney fees from the non-prevailing party.

(c)     **Liquidated Damages; Enforcement.** If Company fails to make any payment when due under this Agreement, and (i) Plaintiff provides written notice of such failure, and (ii) Company does not cure the failure within five (5) business days of receipt of such notice, Company shall pay Plaintiff a liquidated damages penalty of FIVE THOUSAND DOLLARS ($5,000.00) per violation, which shall be added to the Settlement Amount and is due and owing on the month following the violation together with the Payment Plan amount then due. Each missed or late payment constitutes a separate violation.  The Parties agree that actual damages arising from a delayed installment payment (including the administrative costs of collections, disruption of financial planning, and deprivation of the time-value of funds) are impracticable and extremely difficult to ascertain. The Parties have made a reasonable endeavor to estimate these damages and agree that $5,000 per violation represents fair average compensation for such loss, and is not a penalty. If Plaintiff is required to initiate any legal, arbitral, or court enforcement proceeding to compel payment under this Agreement and prevails, Company shall pay: (i) all amounts then due and unpaid; (ii) accrued interest; (iii) all per-violation liquidated damages; and (iv) Plaintiff's reasonable attorneys' fees and costs incurred in the enforcement action.

(d)     **Full Acceleration Upon Repeated Uncured Default.** In the event Company fails on two (2) occasions to make any payment when due and fails to cure such defaults within five (5) business days of written notice from Plaintiff (a "Repeat Default"), the entire unpaid balance of the Payment Plan, including all remaining installments and all accrued but unpaid interest, shall become IMMEDIATELY DUE AND PAYABLE IN FULL without further notice or demand ("Acceleration"). Upon Acceleration, Company shall remit the full outstanding balance within ten (10) business days.

(e)     **Expedited Arbitration.**     Prior to any payment withholding, Company must initiate an expedited arbitration under JAMS Streamlined Arbitration Rules. The arbitration shall commence within ten (10) calendar days of demand by Company, and the arbitrator shall issue a final, written order within sixty (60) calendar days. Any alleged act, omission, or breach by Plaintiff occurring before the Effective Date is permanently and irrevocably released by Company and shall not form the basis of any arbitration demand, withholding, set-off, claim, or defense under or in connection with this Agreement. For the avoidance of doubt, the expedited arbitration mechanism in this Section 5(e) and the withholding right conditioned upon it apply exclusively to alleged breaches of this Agreement. Any obligation of Plaintiff, or any alleged conduct or breach by Plaintiff, arising under any source other than this Agreement—including without limitation (i) any pre-existing agreement, such as any employment agreement, offer letter, confidentiality or non-disclosure agreement, intellectual property assignment agreement, merger agreement, the protective order in the California Litigation, or any merger-related document; (ii) any conduct, act, or omission relating to VoiceBite Corporation, its business,

8

504992885.3

operations, technology, representations, or affairs, or to the Merger or any transaction contemplated thereby, in each case occurring prior to the Effective Date; and (iii) any tort, statutory, fiduciary, or common-law claim of any kind based on conduct occurring prior to the Effective Date—may not serve as a basis for invoking the arbitration process under this Section or for withholding any payment due under this Agreement. If Company believes Plaintiff has breached any such separate, pre-existing obligation (other than the non-compete provisions, which are void pursuant to Section 3(b)), or seeks remedies other than a right to withhold payment hereunder, Company must pursue that claim in a separate, independent action filed exclusively in the United States District Court for the Central District of California, governed by California law, subject to all applicable statutes of limitation, defenses, and procedural requirements. The Parties hereby consent to the exclusive jurisdiction and venue of the Central District of California for any such action. The pendency, initiation, or outcome of any such separate action shall have no effect on Company's obligation to make all payments under this Agreement on time and in full. No award or finding in any such separate action shall authorize Company to withhold, offset, or reduce any payment due under this Agreement. To the extent any arbitral order issued in an arbitration initiated by Company, or any other provision of this Agreement, could be construed to authorize Company to withhold, offset, or reduce any payment due under this Agreement: (i) such authorization shall be strictly limited to arbitral orders that specify actual monetary damages owed by Plaintiff to Company in a certain dollar amount; (ii) any permitted withholding shall be capped, dollar-for-dollar, at the specified monetary damages amount and shall not exceed such amount; and (iii) no declaratory relief, injunctive relief, finding of breach unaccompanied by a specific monetary damages award, or any other form of non-monetary relief shall authorize any withholding, offset, or reduction of any payment due under this Agreement. Any withholding that exceeds the specified monetary damages amount, or that is based on any form of relief other than a monetary damages award, shall constitute a payment default under Section 5(c), subject to the cure period and liquidated damages provided therein, and shall count toward the threshold for Acceleration under Section 5(d). Plaintiff shall have the independent right, at Plaintiff's sole election, to initiate expedited arbitration under JAMS Streamlined Arbitration Rules or to file a motion or action in any court of competent jurisdiction (including the court retaining jurisdiction under Section 14) to compel payment of any amount due and unpaid under this Agreement that remains unpaid after the applicable cure period specified in Section 5(c) or, in the case of an accelerated balance under Section 5(d), after the ten (10)-business-day period specified therein. Any such arbitration shall commence within ten (10) calendar days of demand by Plaintiff, and the arbitrator shall issue a final, written order within sixty (60) calendar days of the Demand. The arbitrator or court (as applicable) shall have authority to award (i) all amounts then due and unpaid, (ii) accrued interest under Section 5(a), (iii) all per-violation liquidated damages under Section 5(c), (iv) the full accelerated balance if Acceleration has occurred, and (v) Plaintiff's reasonable attorneys' fees and costs. Company shall bear all costs of any arbitration initiated by Plaintiff under this Section 5(e), other than Plaintiff's attorneys' fees, which Plaintiff may recover as the prevailing Party. Any arbitral award issued in favor of Plaintiff under this Section 5(e) may be confirmed and entered as a judgment in the United States District Court for the Central District of California pursuant to 9 U.S.C. § 9, and the Parties hereby consent to the jurisdiction of such court for purposes of confirmation and entry of judgment. Plaintiff's exercise of the option to arbitrate under this Section 5(e) shall not constitute an election of remedies and shall not waive or impair any other remedy available to Plaintiff, including but not limited to (A) court enforcement of this

9

504992885.3

Agreement and (B) Plaintiff's rights under Section 2(a), including the right to rescission of the Section 2 release and restoration of the Plaintiff Released Claims in any forum of competent jurisdiction.

(f)     **Independence from Litigation or Disputes with Robert Nessler.** The Company's obligation to make payments to Plaintiff under this Agreement shall not be altered by any judgement, settlement, or other outcome of any litigation or other dispute between the Company and Robert Nessler, whether in his personal capacity or his capacity as Holder Representative under the Agreement and Plan of Merger dated as of April 30, 2024.

6.     **TAXES**. Each Party shall be solely responsible for any taxes, interest, or penalties assessed against that Party by any taxing authority with respect to amounts received or paid under this Agreement. Company shall issue all tax forms required by applicable law on the schedules required by applicable law. Except for such required withholding and reporting obligations, Company makes no representation or warranty regarding the federal, state, or local tax treatment of any payment made under this Agreement, including whether any agreed characterization or allocation will be accepted by the Internal Revenue Service or any other taxing authority, and Company shall bear no liability for Plaintiff's individual tax treatment or tax outcomes. It is expressly agreed that, except for taxes required to be withheld and remitted by Company under applicable law, any taxes due from Plaintiff as a result of amounts paid under this Agreement are Plaintiff's responsibility. The Parties further acknowledge that their respective counsel have made no representation or warranty regarding the tax consequences of any payment under this Agreement.

7.     ███████████████████████████████████████████
████████████████████████████████████████████████
█████████████████

███████████████████████████████████
████████████████████████████████████████████████
███████████████████████████

███████████████████████████████████
████████████████████████████████████████████████
████████████████████████

███████████████████████████████████
█████████████████████████

███████████████████████████████████
████████████████████████████████████████████████
██████████████

███████████████████████████████████
████████████████████████████████████
████████████████████████████████████████████████
██████████████████████

504992885.3



8.

504992885.3

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████

9.    **NO ATTORNEYS' FEES OR COSTS.** The Parties acknowledge that each Party is responsible for its attorneys' fees and costs incurred in connection with this dispute and the Plaintiff Released Claims and Company Released Claims, except as expressly provided in this Agreement, including but not limited to Sections 5(c), 5(d), 5(e), and 18 with respect to post-settlement enforcement proceedings. Plaintiff agrees that, except (i) as expressly set forth in this Agreement, (ii) for amounts owed and payable under this Agreement (including the Settlement Amount, accrued interest, and per-violation liquidated damages), and (iii) following any rescission of the Section 2 release pursuant to Section 2(a), Plaintiff will not seek any further payment from Company arising from the Plaintiff Released Claims and will not claim to be the prevailing party with respect to the Plaintiff Released Claims. For the avoidance of doubt, in the event of any rescission of the Section 2 release pursuant to Section 2(a), Plaintiff retains all rights to seek any and all relief, including attorneys' fees and costs, available under applicable law in connection with the restored Plaintiff Released Claims, and nothing in this Section shall be construed to waive, limit, or impair any such rights.

10.    **COVENANT NOT TO SUE.** Plaintiff represents and warrants to Company that, except for the California Litigation, there are no other pending lawsuits, charges, administrative proceedings, or other claims of any kind that he has filed against Company, in any state or federal court, before any agency or other administrative body, or with any other tribunal. Company represents and warrants to Plaintiff that, except for the New York Litigation and the counterclaims in the California Litigation, there are no other pending lawsuits, charges, administrative proceedings, or other claims of any kind that it has filed against Plaintiff, in any state or federal court, before any agency or other administrative body, or with any other tribunal. Further, Plaintiff agrees not to file any lawsuits, claims, charges, or other legal proceedings against Company, in any forum, based on any events, whether known or unknown, occurring on or before the Effective Date. Further, Company agrees not to file any lawsuits, claims, charges, or other legal proceedings against Plaintiff, in any forum, based on any events, whether known or unknown, occurring on or before the Effective Date. Notwithstanding the foregoing, Plaintiff's covenant not to sue set forth in this Section is expressly subject to the same condition subsequent set forth in Section 2(a). If the release set forth in Section 2 is rescinded and rendered void ab initio pursuant to Section 2(a), Plaintiff's covenant not to sue set forth in this Section shall be automatically and without further action rescinded and rendered void ab initio, and Plaintiff shall be entitled to assert the Plaintiff Released Claims in any forum of competent jurisdiction without breach of this Section. Company irrevocably waives, and shall not assert, breach of this covenant, theory of specific performance, injunctive relief, or claim for damages arising from Plaintiff's assertion of the restored Plaintiff Released Claims following any such rescission.

11.    **NO ADMISSION.** This Agreement is the result of a negotiated compromise of disputed claims and defenses and is entered into solely to avoid the burden, expense, and

12

504992885.3

uncertainty of further litigation. Nothing in this Agreement shall be construed as an admission by either Party of the truth or falsity of any allegation, the validity or invalidity of any claim or defense, or any liability, wrongdoing, or damages of any kind. Each Party expressly denies any such liability or wrongdoing. Neither this Agreement nor any statement, negotiation, or communication relating to it shall be offered, used, or considered as evidence in any proceeding, except in an action or proceeding to enforce, interpret, or defend against an alleged breach of this Agreement, or as otherwise required by law.

12.    **CONFIDENTIALITY.**   The specific payment terms of this Agreement, including the Settlement Amount and the payment schedule, and any non-public settlement discussions, negotiations, communications, and correspondence concerning those terms, shall be kept confidential by the Parties and shall not be disclosed to any third person except: (i) to a Party's accountants, attorneys, tax advisers, financial advisers, or immediate family members, provided such persons are informed of and agree to honor the confidentiality obligations of this Section; (ii) as reasonably necessary to enforce, interpret, or defend against an alleged breach of this Agreement; or (iii) as otherwise required by law, subpoena, court order, or regulatory process.

This Section does not prohibit either Party from referring to publicly filed allegations, publicly available facts, the existence of the Litigation, or the fact that the matter has been resolved. If either Party is asked about the Litigation or its resolution, that Party may state that the matter was "amicably resolved," but nothing in this Section requires that to be the exclusive response where a different response is otherwise permitted by this Agreement or required by law.

Nothing in this Section shall prohibit truthful testimony or compliance with lawful process. If a Party is required by subpoena, court order, or other legal process to disclose information covered by this Section, that Party shall, to the extent legally permitted, give prompt written notice to the other Party so that the other Party may seek appropriate relief.

For the avoidance of doubt, this Section does not restrict Plaintiff from voluntarily communicating with, coordinating with, or providing truthful declarations, affidavits, testimony, documents, or factual information to Robert Nessler or any other VoiceBite co-founder, or in support of any action brought by such person against Checkmate, so long as Plaintiff does not disclose the confidential settlement amount, payment schedule, or non-public settlement negotiations except as otherwise permitted by this Agreement or required by law, and provided further that Plaintiff otherwise complies with all other terms of this Agreement.

The Parties expressly acknowledge and agree that, as of the Effective Date, no confidentiality or non-disclosure agreement governed the Parties' settlement negotiations or any communications relating thereto. Accordingly, any disclosure of settlement negotiations, offers, demands, or related communications made by either Party prior to the execution of this Agreement cannot form the basis of any arbitration proceeding, claim, or withholding of payment under this Agreement. Plaintiff makes no representation, warranty, or guarantee as to whether he disclosed any information relating to these negotiations or this Agreement to any third party prior to execution. Plaintiff assumes no responsibility for, and shall bear no liability arising from, the independent actions or disclosures of any third party, including but not limited

13

504992885.3

to family members, advisors, or potential witnesses.

13. **TRUTHFUL TESTIMONY AND COORDINATION**. Nothing in this Section or elsewhere in this Agreement shall prevent, limit, or penalize either Party from testifying truthfully in any legal, administrative, regulatory, or arbitral proceeding, provided that such Party does not disclose confidential settlement terms except as permitted by this Agreement or required by law. For the avoidance of doubt, Plaintiff's provision of truthful testimony, declarations, affidavits, documents, or coordination with Robert Nessler in Nessler v. Checkmate.com, Inc. (Case No. 2:26-cv-00767, C.D. Cal.), or in any related proceeding, shall not constitute a breach of this Agreement.

14. **DISMISSAL OF LITIGATION.** Within three (3) business days of receipt of the Initial Payment in full, the Parties shall jointly file in the California Litigation a Stipulation of Dismissal with Prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii). The Stipulation shall become effective as of the date of filing; however, the Parties agree and stipulate that the Court shall retain jurisdiction over the enforcement of this Agreement after dismissal. The Parties shall include in their joint stipulation an express request that the Court's dismissal order: (i) incorporate this Agreement by reference; (ii) state that the dismissal is contingent upon entry of an order retaining jurisdiction; and (iii) expressly provide that the Court retains jurisdiction to enforce the terms of this Agreement. The Parties shall cooperate in good faith to obtain such an order from the Court prior to or concurrent with the filing of the stipulation. The Stipulation of Dismissal with Prejudice shall not be filed or become effective unless and until the Court enters an order expressly retaining jurisdiction to enforce the terms of this Agreement. If the Court declines such retention, the Parties shall instead jointly request that the California Litigation be stayed pending performance of the Payment Plan, and the Stipulation of Dismissal with Prejudice shall be filed only after Plaintiff's execution of the Exhibit C Acknowledgement of Full Payment.

15. **DISCOVERY IN OTHER LITIGATION BY COMPANY.** Before seeking any discovery from Plaintiff in any litigation with any person other than Plaintiff arising from, or related to, the Company's acquisition of VoiceBite, the Company shall exhaust reasonable alternative sources for the desired information through ordinary discovery procedures as follows and, in doing so, shall, consistent with FRCP 45, make good faith efforts to avoid imposing any undue burden on Plaintiff:

(a) For information that may be in the possession of any party to the litigation, the Company shall first serve appropriate discovery requests on the relevant party and, if the responses are inadequate, shall move to compel and obtain a ruling from the presiding court seeking the information from Plaintiff. The Company need not move to compel if there is not a good faith basis to do so.

(b) For information that may be in the possession of any non-party witness other than Plaintiff, Company shall first serve a subpoena on that non-party witness and, if compliance is inadequate, shall move to compel and obtain a ruling before seeking the information from Plaintiff. The Company need not move to compel if there is not a good faith basis to do so.

14

504992885.3

(c)    For information that may be in the Company's possession, the Company shall conduct a reasonable search of its own records for the information before seeking it from Plaintiff.

(d)    For publicly available information, Company shall attempt to obtain the information from public sources before seeking it from Plaintiff.

(e)    Before serving any subpoena or discovery request on Plaintiff, the Company must provide Plaintiff a meet and confer letter by email explaining its compliance with the requirements stated above, along with a copy of any relevant order on a motion to compel. Plaintiff reserves all rights under FRCP 26 and 45, as well as any other applicable statute or rule, to seek to quash, or to seek protection from, any subpoena or other form of discovery request from the Company, or, to the extent permitted by statute or rule, to seek reasonable expenses associated with his response to any subpoena or other form of discovery.

(f)    Should the Company seek discovery from Plaintiff, the Company shall stipulate with Plaintiff to a protective order which shall permit Plaintiff to designate certain material as "confidential," including but not limited to Plaintiff's personal financial information, medical information, and health information. The Company is relieved from this obligation if such a protective order is already in place.

(g)    In any single litigation, the Company will make reasonable efforts to ensure that Plaintiff is not subject to more than one seven-hour deposition.

16.    **<u>BINDING NATURE OF AGREEMENT; REPRESENTATIONS</u>.**  Each Party is bound by and shall benefit from this Agreement.  Anyone who succeeds to his rights and responsibilities, such as heirs and the executors of their estates, successors, and assigns, are also bound by, and shall also benefit from, this Agreement. Each Party represents and warrants to the other as of the Effective Date that: (i) it has full legal capacity, power, and authority to execute, deliver, and perform this Agreement; (ii) this Agreement has been duly authorized, executed, and delivered and constitutes a legal, valid, and binding obligation enforceable against such Party in accordance with its terms; (iii) the execution and performance of this Agreement do not violate any order, judgment, or agreement to which such Party is bound; and (iv) such Party enters into this Agreement knowingly, voluntarily, and without duress or coercion.

(a)    **Plaintiff's Representations.** Plaintiff represents and warrants that: (i) Plaintiff has not assigned, pledged, hypothecated, or otherwise transferred to any third party any of the claims released in Section 2 of this Agreement, and no other person or entity has any interest in such claims; (ii) no other action, charge, or proceeding asserting any released claim is currently pending by or on behalf of Plaintiff in any forum, other than the California Litigation itself; (iii) Plaintiff has had the opportunity to consult with legal counsel of his choosing regarding this Agreement and its terms and has had sufficient time to review the terms hereof prior to execution; (iv) Plaintiff owns and has all right, title and interest (legal and beneficial) in and to all of the Shares. The Shares are free and clear of any lien, pledge, claim, hypothecation, charge, mortgage, security interest, assessment, encumbrance, right of repurchase or restriction

15

504992885.3

of any nature, whether arising by agreement, operation of law or otherwise, other than restrictions on transfer arising under applicable securities laws or under the Company's certificate of incorporation, bylaws, or stock plan in effect on the Effective Date. At the Closing, Plaintiff's entire right, title and interest in and to the Shares shall be conveyed to the Company as set forth herein; and (v) Plaintiff acknowledges and agrees that he owns no equity securities of the Company other than the Shares and has no right or ability to acquire any equity securities of the Company.

(b)    **Company Representations.** Company represents and warrants that: (i) this Agreement has been authorized by all necessary corporate action, including approval by Company's board of directors or authorized officers; (ii) the individual signing on behalf of Company has full authority to bind Company to this Agreement; and (iii) Company is not aware of any bankruptcy, insolvency, receivership, or assignment for the benefit of creditors proceeding pending or threatened that would impair its ability to make the payments required hereunder.

17.    **STIPULATED JUDGMENT.** Concurrently with execution of this Agreement, the Parties shall execute a Stipulation for Entry of Judgment in the form attached as Exhibit D (the "Stipulated Judgment"), to be held by Plaintiff and filed in the California Litigation only upon Company's failure to pay the accelerated balance in full within the ten (10)-business-day period specified in Section 5(d) following Acceleration (an "Uncured Acceleration"). Upon such filing, the Parties consent to entry of judgment in favor of Plaintiff and against Company in the amount of the unpaid Settlement Amount, plus accrued interest under Section 5(a), all per-violation liquidated damages under Section 5(c), and Plaintiff's reasonable attorneys' fees and costs incurred in connection with enforcement. Company waives any opposition to entry of judgment on the Stipulated Judgment upon Uncured Acceleration. The Court's retention of jurisdiction under Section 14 shall extend to entry and enforcement of the Stipulated Judgment.

18.    **ENTIRE AGREEMENT.**  This Agreement and the terms, conditions, and provisions contained herein constitute the entire understanding and agreement between the Parties with respect to the settlement of (i) the claims asserted or unasserted by Plaintiff and (ii) the claims asserted or unasserted by Company, including any counterclaims in the Litigation. This Agreement supersedes any prior written or oral representations, agreements, or understandings with respect thereto. Each Party acknowledges that in executing this Agreement, such Party has not relied upon any statement, promise, or representation, oral or written, made by the other Party, other than as expressed herein. No changes or modifications of this Agreement shall be valid unless the same be in writing and signed by all Parties hereto.

19.    **MODIFICATION.**  This Agreement may be amended, revoked, changed or modified only upon a written agreement signed by the Parties affected.  No waiver of any provision of this Agreement will be valid unless it is in writing and signed by the party against whom the waiver is asserted.

20.    **GOVERNING LAW.**  This Agreement shall be governed and interpreted in all respects in accordance with the laws of the State of California.

504992885.3

21.    **HEADINGS.**  Headings for parts of the Agreement are for convenience only. They do not limit, modify, or change the text of this Agreement.

22.    **INTERPRETATION OF THE AGREEMENT**.  The Parties agree that the language of this Agreement has been negotiated, is a product of the draftsmanship of all of the Parties, and that the doctrine of *contra proferentem* shall not apply to the interpretation or construction of any provisions hereof.

23.    **SEVERABILITY.** If any provision of this Agreement is held to be invalid, illegal, or unenforceable by a court or arbitrator of competent jurisdiction, the remaining provisions shall remain in full force and effect.

24.    **NOTICES.** All notices, demands, requests, consents, approvals, payment confirmations, and other communications required or permitted under this Agreement (each, a "Notice") shall be in writing and shall be delivered to the email addresses specified in this Section. A Notice is deemed received upon confirmed delivery to the designated email address, or, if delivered by overnight courier or certified mail, upon confirmed delivery to the designated physical address. Email is the primary and preferred method of Notice under this Agreement. A Notice sent simultaneously to all designated email addresses for a Party shall be deemed delivered upon transmission, provided no automated delivery failure message is received by the sender within twenty-four (24) hours. For time-sensitive Notices (including default notices under Section 5(c) and acceleration notices under Section 5(d)), email delivery is sufficient and effective immediately upon transmission, subject to the same twenty-four (24)-hour bounce-back proviso. Either Party may update its notice information by written notice to the other Party. Notices shall be directed simultaneously to all listed contacts for the relevant Party:

**If to Plaintiff:**

Arjun Vasan
12615 193rd Street
Cerritos, California 90703
Email: arjun.vasan@gmail.com
Plaintiff may, by written notice to Company, designate counsel of record to receive a required copy (which shall not constitute notice) of any Notice hereunder, and upon such designation Company shall thereafter direct all Notices to Plaintiff and to such designated counsel simultaneously.

**If to Company:**

Checkmate.com, Inc.
Attn: Vishal Agarwal, CEO
1113 York Ave, #36E
New York, NY 10065
Email: vishal@itsacheckmate.com

17

504992885.3

With copies to:

Alejandro Barrientos
Barrientos PC
145 S. Fairfax Ave., Suite 200-152
Los Angeles, CA 90036
Email: alejandro@bts.law

Mitch M. Longson
Manning Curtis Bradshaw & Bednar PLLC
201 South Main Street, Suite 750
Salt Lake City, Utah 84111
Email: mlongson@mc2b.com

25.    **SIGNATURES**.  The Parties' understanding and agreement to the terms of this Agreement is evidenced by their signatures as given and witnessed below.  The signatures of the Parties below indicate they have had an opportunity to review this Agreement with the attorneys of their choosing, that they have read and understood the provisions, and that they have executed it voluntarily with full knowledge of the significance of all provisions.

26.    **EXECUTION IN COUNTERPARTS.**  This Agreement may be executed in two or more counterparts which, when taken together, shall constitute one Agreement. Signatures delivered by facsimile, PDF, or electronic signature platform (including DocuSign) shall have the same force and effect as original ink signatures.

**[SIGNATURE PAGE TO FOLLOW]**

18

504992885.3

**IN WITNESS WHEREOF**, and intending to be legally bound, the parties have executed this Agreement.

<div style="margin-left:50%">

**ARJUN VASAN**

/s/ *Arjun Vasan*

_____

Date: May 2, 2026


**CHECKMATE.COM, INC.**

_____

By: Vishal Agarwal
Its: Chief Executive Officer

Date:   May 6th, 2026

</div>

19

504992885.3

EXHIBIT A

STOCK POWER AND ASSIGNMENT

SEPARATE FROM STOCK CERTIFICATE

FOR VALUE RECEIVED, the undersigned, Arjun Vasan ("Transferor"), hereby sells, assigns and transfers unto Checkmate.com Inc. ███████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████ The undersigned does hereby irrevocably constitute and appoint the Company's transfer agent to transfer said stock on the books of the Company with full power of substitution in the premises.

Dated:

_____

Arjun Vasan

20

504992885.3

EXHIBIT B

ACKNOWLEDGEMENT OF PAYMENT

The undersigned hereby acknowledges receipt of the Initial Payment in the amount of ███ ████████████████████████████████████████████ as provided in the Settlement Agreement and General Release by and between the undersigned and Checkmate.com Inc.

_____

Arjun Vasan

21

EXHIBIT C

ACKNOWLEDGEMENT OF FULL PAYMENT

The undersigned hereby acknowledges receipt of payment of the full Settlement Amount in the amount of ███████████████████████████████ plus interest, fees, expenses, per-violation liquidated damages under Section 5(c) (if any), and any and all other amounts as provided in the Settlement Agreement and General Release by and between the undersigned and Checkmate.com Inc. ("Checkmate").  The undersigned acknowledges and agrees that Checkmate has satisfied all payment obligations and made all payments due or payable at any time to the undersigned.

_____

Arjun Vasan

504992885.3

## EXHIBIT D

### STIPULATION FOR ENTRY OF JUDGMENT

[The Parties shall attach as Exhibit D the form of Stipulation for Entry of Judgment referenced in Section 17, providing for entry of judgment in the amount of the unpaid Settlement Amount, accrued interest under Section 5(a), all per-violation liquidated damages under Section 5(c), and Plaintiff's reasonable attorneys' fees and costs, with Company's waiver of opposition, appeal, and motions to vacate, to be held by Plaintiff and filed in the California Litigation only upon an Uncured Acceleration as defined in Section 17.]

23

504992885.3