ARJUN VASAN

PLAINTIFF IN PRO PER

ARJUN.VASAN@GMAIL.COM

(562) 900-6541

12615 193RD STREET

CERRITOS, CA 90703

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ARJUN VASAN,

                  Plaintiff and Counter-Defendant,

         v.

CHECKMATE.COM, INC.,

(dba "Checkmate")

                Defendant and Counterclaimant.

Case No.: 2:25-cv-00765-MEMF-ASx

Hon. Maame Ewusi-Mensah Frimpong

**PLAINTIFF'S REPLY IN SUPPORT OF APPLICATION TO FILE THE PARTIES' SETTLEMENT AGREEMENT WITH LIMITED REDACTIONS**

Complaint Filed: January 28, 2025

## TABLE OF CONTENTS

**MEMORANDUM OF POINTS AND AUTHORITIES** ............................................................... 1

   I.     INTRODUCTION ................................................................................................ 1

   II.    ARGUMENT ....................................................................................................... 1

   III.   CONCLUSION .................................................................................................... 4

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6** ........................................... 5

i

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Checkmate's opposition does not even attempt to engage the standard that governs this Application. It identifies no compelling reason to withhold any portion of the Agreement beyond the payment terms Plaintiff has already redacted. It does not address *Kamakana*, *Foltz*, or *Center for Auto Safety*. And it asks the Court to remove a publicly filed judicial record from the docket — relief that is sealing by another name — without attempting the showing that relief requires. What the opposition offers instead is the same rationale Checkmate stated in the parties' stipulation: that public filing would prejudice its position in *Nessler v. Checkmate.com, Inc.*, No. 2:26-cv-00767-MEMF-AS. Dkt. 185 at 10; Dkt. 188 at 7–9. That rationale is not a compelling reason; it is the improper purpose. *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1179 (9th Cir. 2006); *Nixon* v. *Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978).

### II.    ARGUMENT

#### A. The Agreement is a judicial record now — not upon some future enforcement dispute.

Checkmate contends that no dispute requires the Agreement to be "filed or considered at all." Dkt. 188 at 7–8. But the Court has already considered the Agreement in the only sense that matters: its dismissal order incorporates the Agreement by reference and retains jurisdiction to enforce it, so that "a breach of the agreement would be a violation of the order." *Kokkonen* v. *Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 381 (1994); Dkt. 186 ¶¶ 1, 3. The Agreement therefore operates today as a term of this Court's order. A document the Court has adopted as its own disposition is "more than tangentially related to the merits" as a matter of course, *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1101 (9th Cir. 2016), and the presumption of access attaches when the court adopts the document — not when a party later breaches it. The alternative Checkmate proposes is an enforcement regime over an instrument the public cannot read: the Court would retain jurisdiction to enforce, as its own order, a secret. The right of access exists to prevent exactly that. Id. at 1096–97.

The Application accordingly does not ask the Court to resolve a hypothetical dispute, and Checkmate's suggestion that the Court has "implicitly" determined the Agreement need not be filed, Dkt. 188 at 8, reads the record backwards. The Court's order denying sealing expressly invited "a

proper Application addressing the deficiency noted" and directed that Dkt. 183 "remain under seal until the Court rules on the parties' subsequent submission." Dkt. 184. The parties' stipulation then placed their disagreement squarely before the Court: it records Plaintiff's position that the Agreement should be publicly filed with limited redactions and his intent to file this Application, and Checkmate's agreement to oppose the relief sought but not the filing itself. Dkt. 185 at 5–12. The Court entered dismissal on that stipulation without foreclosing the Application it had been told was coming. Dkt. 186. The question of public access was *reserved*, not resolved — and this Application is the "subsequent submission" the Court's order requested. The single open question is the scope of redaction in the public version, and Plaintiff's proposal — the payment terms only, tracking Section 12 — is the narrowest answer the record permits. Agreement § 12; Vasan Decl. ¶ 7, Dkt. 187-1.

B. Checkmate's request to remove Exhibit 1 is a sealing request that fails its own burden.

Checkmate asks the Court to strike a redacted public filing from the docket. Dkt. 188 at 9. Removal of a filed judicial record is relief from public access, and the party seeking it bears the burden of articulating compelling, specific, item-by-item reasons. *Kamakana*, 447 F.3d at 1178–81; *Foltz* v. *State Farm Mut*. *Auto*. *Ins*. *Co*., 331 F.3d 1122, 1135 (9th Cir. 2003); C.D. Cal. L.R. 79-5.2.2(b). The opposition attempts none. It identifies no provision of Exhibit 1 whose disclosure harms any cognizable interest — nor could it, because Exhibit 1 already redacts the only material the parties themselves designated confidential. Agreement § 12. The only interest the opposition advances is Checkmate's negotiating posture in Nessler. Dkt. 185 at 10. Using the Court's docket to preserve leverage in related litigation is the paradigm of an improper purpose, which forecloses secrecy rather than supplies it. *Kamakana*, 447 F.3d at 1179; *Nixon*, 435 U.S. at 598.

C. Checkmate's purpose argument is immaterial and runs against its own record.

Checkmate's accusation of improper purpose rests on its counsel's characterization of a single conference — the meet-and-confer this Court itself ordered the parties to conduct on the question of whether and how the Agreement should be filed. Dkt. 184. Plaintiff disputes that characterization, but Checkmate's own exhibit defeats its narrative: it shows Checkmate's counsel proposing the parties' course of action and soliciting the conference, and it shows Plaintiff stating in writing, four days before the conference, the same position he advances here — that "there were only specific

parts of the agreement that we agreed were to be confidential," namely the settlement amount. Dkt. 188-3 at 3–4. The dispute over counsel's characterization is in any event immaterial twice over. First, the parties' positions on filing predate the conference and are fixed in the record: Checkmate's view that the Agreement need not be filed at all, and Plaintiff's view that it should be filed with only the Section 12 payment terms withheld, are recorded in the stipulation. Dkt. 185 at 4–12. A discussion of possible compromise between positions the Court ordered the parties to confer about is the purpose of a meet-and-confer, not an abuse of it. Second, the purpose inquiry attaches to the filing, and Plaintiff's position has been constant before, during, and after the conference — in the parties' joint application, Dkt. 182, in the stipulation, Dkt. 185 at 5–12, and in this Application, Dkt. 187. A position held consistently in writing throughout negotiations was not manufactured or undermined by one party's characterization of single telephonic conversation. The only party whose stated rationale turns on leverage in *Nessler* is *Checkmate*. Dkt. 185 at 10; Dkt. 188 at 7–9.

D. The remaining material is resolved or is settlement correspondence.

The communications the opposition recites all predate the executed Agreement. Those previously presented to the Court were considered and resolved. Dkt. 172 at 11–12. The remainder is settlement-negotiation correspondence, and Checkmate's own exhibit supplies its context: the May 2, 2026, communications followed Checkmate's filing of counterclaims in Nessler referring to Plaintiff, during the parties' final settlement negotiations, and they state in writing Plaintiff's bargaining position and its basis — "I see that you filed the counterclaims against Robert . . . . The deal has changed materially. I cannot sign anymore unless the non-disparagement is dropped entirely, as I had asked for before." Dkt. 188-2 at 3. The executed Agreement reflects that outcome: it contains no non-disparagement provision. Dkt. 187-2. A written demand to remove a draft term, followed by an executed contract omitting that term, is the record of a negotiation, not of harassment. Positions taken in settlement correspondence, since superseded by the executed Agreement, have no bearing on the only question presented: the proper scope of public access to a judicial record.

3

**III.     CONCLUSION**

In summary, despite two opportunities, Checkmate has identified no compelling reason — and no reason at all beyond its *Nessler* posture — to withhold anything more than the payment terms Plaintiff has already redacted. Plaintiff respectfully requests that the Court grant the Application and the relief stated therein. Dkt. 187.

Dated: **June 12, 2026**

In: **Cerritos, California**

**Respectfully submitted**,

/s/ *Arjun Vasan*

**Arjun Vasan**,

Plaintiff *In Pro Per*

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6**

Plaintiff Arjun Vasan certifies that this brief contains 1,242 words, which complies with the 7000-word limit of L.R. 11-6.1 and the Court's Civil Standing Order dated Aug. 27, 2025.

Dated: **June 12, 2026**

In: **Cerritos, California**

**Respectfully submitted**,

/s/ *Arjun Vasan*

**Arjun Vasan**,

Plaintiff *In Pro Per*

5